UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FILED
DEC 0 1 2017
Clerk, U.S. District and
Bankruptcy Courts

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No.: |
| v. | Violation: 18 U.S.C. § 1001 (False Statements) |
| MICHAEL T. FLYNN, | |
| Defendant. | |

## STATEMENT OF THE OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America and the defendant, MICHAEL T. FLYNN, stipulate and agree that the following facts are true and accurate. These facts do not constitute all of the facts known to the parties concerning the charged offense; they are being submitted to demonstrate that sufficient facts exist that the defendant committed the offense to which he is pleading guilty.

1. The defendant, MICHAEL T. FLYNN, who served as a surrogate and national security advisor for the presidential campaign of Donald J. Trump ("Campaign"), as a senior member of President-Elect Trump's Transition Team ("Presidential Transition Team"), and as the National Security Advisor to President Trump, made materially false statements and omissions during an interview with the Federal Bureau of Investigation ("FBI") on January 24, 2017, in Washington, D.C. At the time of the interview, the FBI had an open investigation into the Government of Russia's ("Russia") efforts to interfere in the 2016 presidential election, including the nature of any links between individuals associated with the Campaign and Russia, and whether there was any coordination between the Campaign and Russia's efforts.

2. FLYNN's false statements and omissions impeded and otherwise had a material impact on the FBI's ongoing investigation into the existence of any links or coordination

between individuals associated with the Campaign and Russia's efforts to interfere with the 2016 presidential election.

*False Statements Regarding FLYNN's Request to the Russian Ambassador that Russia Refrain from Escalating the Situation in Response to U.S. Sanctions against Russia*

3.      On or about January 24, 2017, FLYNN agreed to be interviewed by agents from the FBI ("January 24 voluntary interview"). During the interview, FLYNN falsely stated that he did not ask Russia's Ambassador to the United States ("Russian Ambassador") to refrain from escalating the situation in response to sanctions that the United States had imposed against Russia. FLYNN also falsely stated that he did not remember a follow-up conversation in which the Russian Ambassador stated that Russia had chosen to moderate its response to those sanctions as a result of FLYNN's request. In truth and in fact, however, FLYNN then and there knew that the following had occurred:

> a.      On or about December 28, 2016, then-President Barack Obama signed Executive Order 13757, which was to take effect the following day. The executive order announced sanctions against Russia in response to that government's actions intended to interfere with the 2016 presidential election ("U.S. Sanctions").
>
> b.      On or about December 28, 2016, the Russian Ambassador contacted FLYNN.
>
> c.      On or about December 29, 2016, FLYNN called a senior official of the Presidential Transition Team ("PTT official"), who was with other senior members of the Presidential Transition Team at the Mar-a-Lago resort in Palm Beach, Florida, to discuss what, if anything, to communicate to the Russian Ambassador about the U.S. Sanctions. On that call, FLYNN and

       the PTT official discussed the U.S. Sanctions, including the potential impact of those sanctions on the incoming administration's foreign policy goals. The PTT official and FLYNN also discussed that the members of the Presidential Transition Team at Mar-a-Lago did not want Russia to escalate the situation.

d.   Immediately after his phone call with the PTT official, FLYNN called the Russian Ambassador and requested that Russia not escalate the situation and only respond to the U.S. Sanctions in a reciprocal manner.

e.   Shortly after his phone call with the Russian Ambassador, FLYNN spoke with the PTT official to report on the substance of his call with the Russian Ambassador, including their discussion of the U.S. Sanctions.

f.   On or about December 30, 2016, Russian President Vladimir Putin released a statement indicating that Russia would not take retaliatory measures in response to the U.S. Sanctions at that time.

g.   On or about December 31, 2016, the Russian Ambassador called FLYNN and informed him that Russia had chosen not to retaliate in response to FLYNN's request.

h.   After his phone call with the Russian Ambassador, FLYNN spoke with senior members of the Presidential Transition Team about FLYNN's conversations with the Russian Ambassador regarding the U.S. Sanctions and Russia's decision not to escalate the situation.

*False Statements Regarding FLYNN's Request that Foreign Officials Vote Against or Delay a United Nations Security Council Resolution*

4. During the January 24 voluntary interview, FLYNN made additional false statements about calls he made to Russia and several other countries regarding a resolution submitted by Egypt to the United Nations Security Council on December 21, 2016. Specifically FLYNN falsely stated that he only asked the countries' positions on the vote, and that he did not request that any of the countries take any particular action on the resolution. FLYNN also falsely stated that the Russian Ambassador never described to him Russia's response to FLYNN's request regarding the resolution. In truth and in fact, however, FLYNN then and there knew that the following had occurred:

    a. On or about December 21, 2016, Egypt submitted a resolution to the United Nations Security Council on the issue of Israeli settlements ("resolution"). The United Nations Security Council was scheduled to vote on the resolution the following day.

    b. On or about December 22, 2016, a very senior member of the Presidential Transition Team directed FLYNN to contact officials from foreign governments, including Russia, to learn where each government stood on the resolution and to influence those governments to delay the vote or defeat the resolution.

    c. On or about December 22, 2016, FLYNN contacted the Russian Ambassador about the pending vote. FLYNN informed the Russian Ambassador about the incoming administration's opposition to the resolution, and requested that Russia vote against or delay the resolution.

      d.      On or about December 23, 2016, FLYNN again spoke with the Russian Ambassador, who informed FLYNN that if it came to a vote Russia would not vote against the resolution.

*Other False Statements Regarding FLYNN's Contacts with Foreign Governments*

5.      On March 7, 2017, FLYNN filed multiple documents with the Department of Justice pursuant to the Foreign Agents Registration Act ("FARA") pertaining to a project performed by him and his company, the Flynn Intel Group, Inc. ("FIG"), for the principal benefit of the Republic of Turkey ("Turkey project"). In the FARA filings, FLYNN made materially false statements and omissions, including by falsely stating that (a) FIG did not know whether or the extent to which the Republic of Turkey was involved in the Turkey project, (b) the Turkey project was focused on improving U.S. business organizations' confidence regarding doing business in Turkey, and (c) an op-ed by FLYNN published in *The Hill* on November 8, 2016, was written at his own initiative; and by omitting that officials from the Republic of Turkey provided supervision and direction over the Turkey project.

ROBERT S. MUELLER, III
Special Counsel

By: _____
Brandon L. Van Grack
Zainab N. Ahmad
Senior Assistant Special Counsels
The Special Counsel's Office

## DEFENDANT'S ACCEPTANCE

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for my guilty plea to the charge against me. It does not include all of the facts known to me regarding this offense. I make this statement knowingly and voluntarily and because I am, in fact, guilty of the crime charged. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

I have read every word of this Statement of the Offense, or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorneys, I agree and stipulate to this Statement of the Offense, and declare under penalty of perjury that it is true and correct.

Date: 11/30/17

Michael T. Flynn
Defendant

## ATTORNEYS' ACKNOWLEDGMENT

I have read this Statement of the Offense, and have reviewed it with my client fully. I concur in my client's desire to adopt and stipulate to this Statement of the Offense as true and accurate.

Date: 11/30/17

Robert K. Kelner
Attorney for Defendant

Stephen P. Anthony
Attorney for Defendant