```
1                      UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLUMBIA
2

3    UNITED STATES OF AMERICA,        )
                                      )
4         v.                          )   Criminal No. 17-232
                                      )
5    MICHAEL T. FLYNN,                )
                                      )   Washington, D.C.
6              Defendant.             )   Friday, December 1, 2017
     _____
7
                       TRANSCRIPT OF PLEA HEARING
8             BEFORE THE HONORABLE RUDOLPH CONTRERAS
                    UNITED STATES DISTRICT JUDGE
9
                   APPEARANCES:
10

11      For the Government:        Brandon Lang Van Grack, Esq.
                                   Zainab N. Ahmad, Esq.
12                                 U.S. DEPARTMENT OF JUSTICE
                                   Special Counsel's Office
13                                 950 Pennsylvania Avenue, NW
                                   Washington, DC 20004
14
        For the Defendant:         Robert K. Kelner, Esq.
15                                 COVINGTON & BURLING
                                   1201 Pennsylvania Avenue, NW
16                                 Washington, DC 20004
                                       -and-
17                                 Stephen Pierce Anthony
                                   COVINGTON & BURLING LLP
18                                 One City Center
                                   850 Tenth Street, NW
19                                 Suite 326N
                                   Washington, DC 20001
20
        Also Present:        Special Agent William Barnett
21

22      Court Reporter:      PATRICIA KANESHIRO-MILLER, RMR, CRR
                             United States Courthouse
23                           333 Constitution Avenue, NW
                             Washington, D.C.  20001
24

25      Proceedings reported by stenotype shorthand.
        Transcript produced by computer-aided transcription.
```

1          P R O C E E D I N G S

2                    (10:34 a.m.)

3          THE DEPUTY CLERK:  This is Criminal Case 17-232,

4    United States v. Michael T. Flynn.

5          Counsel, please step forward to the podium and state

6    your appearances for the record.

7          MR. VAN GRACK:  Good morning, Your Honor.  Brandon

8    Van Grack and Zainab Ahmad on behalf of the United States.

9          THE COURT:  Good morning.

10          MR. VAN GRACK:  And with us at counsel table is

11    Special Agent William Barnett.

12          THE COURT:  Good morning.

13          MR. KELNER:  Good morning, Your Honor.  Robert Kelner

14    with Covington & Burling for the defendant, Michael T. Flynn.

15    I'm joined by Stephen Anthony from Covington & Burling.

16          THE COURT:  Good morning.

17          Give me a moment to look at the paperwork.

18          (Pause)

19          THE COURT:  Are we ready to get started?

20          MR. KELNER:  Yes, Your Honor.

21          MR. VAN GRACK:  Yes, Your Honor.

22          THE COURT:  Why don't you guys come to the podium.

23          I gather that Mr. Flynn wishes to enter a plea of

24    guilty; is that correct?

25          MR. KELNER:  Yes, Your Honor.

1          THE COURT:  Okay.  Mr. Flynn, I assume you have never

2     been through this process before.

3          THE DEFENDANT:  Never, Your Honor.

4          THE COURT:  Let me give you the most important

5     particulars of how we are going to proceed.

6          There are going to be a number of questions.  As part

7     of this process, you're going to be giving up a number of

8     your rights, both statutory and constitutional, so it is

9     critical that you understand everything that goes on here

10    because I have to determine at the end whether you have given

11    up those rights knowingly, voluntarily, and with the advice

12    of your counsel.

13          If there is anything I ask you that you don't

14    understand, feel free to ask me to clarify it or, better yet,

15    take a moment to discuss the issue with your counsel in

16    private, if necessary.

17          You got that?

18          THE DEFENDANT:  Thank you.

19          THE COURT:  Okay.  We're going to swear you in.

20              (Defendant sworn)

21          THE DEPUTY CLERK:  Can you please state your name for

22    the record.

23          THE DEFENDANT:  Michael Thomas Flynn.

24          THE COURT:  Mr. Flynn, do you understand that you're

25    now under oath?

1           THE DEFENDANT:  Yes, Your Honor.

2           THE COURT:  And that any answers that you give can be

3    later used against you in this or another proceeding?  Do you

4    understand that?

5           THE DEFENDANT:  Yes.

6           THE COURT:  And that if you do not answer my

7    questions truthfully, you could be prosecuted for perjury or

8    making a false statement?  Do you understand that?

9           THE DEFENDANT:  Yes.

10          THE COURT:  As I said, I'm going to ask you a number

11   of questions.  If you choose to enter a plea of guilty today,

12   I need to know that you're entering that plea of guilty

13   knowingly, voluntarily, and intelligently, with the advice of

14   your attorney.

15          As I said, if you don't understand my question or

16   anything else about these proceedings, please tell me, and I

17   will try to explain.  But most importantly, you may consult

18   with your attorney privately, if necessary, at any point in

19   time.

20          I'm going to start with the routine questions.  How

21   old are you, sir?

22          THE DEFENDANT:  58.

23          THE COURT:  I assume you can read and write English.

24          THE DEFENDANT:  Yes.

25          THE COURT:  How far did you go in school?

1           THE DEFENDANT:  Master's level.

2           THE COURT:  Okay.  And I assume you were born in this

3     country.

4           THE DEFENDANT:  Yes.

5           THE COURT:  All right.  Have you ever been treated

6     for any type of mental illness or psychological or emotional

7     problem?

8           THE DEFENDANT:  No.

9           THE COURT:  All right.  Have you ever been treated

10    for addiction to narcotic drugs or alcohol?

11          THE DEFENDANT:  No.

12          THE COURT:  Are you, in fact, addicted to narcotic

13    drugs or alcohol?

14          THE DEFENDANT:  No.

15          THE COURT:  Are you under the influence today of any

16    medicine or other narcotic that might impact your ability to

17    understand what's going on here today?

18          THE DEFENDANT:  No, Your Honor.

19          THE COURT:  Are you ill in any way that might impact

20    your ability to understand what's going on here today?

21          THE DEFENDANT:  I'm not.

22          THE COURT:  Does defense counsel have any question

23    whatsoever as to the defendant's competency to pled at this

24    time?

25          MR. KELNER:  No, Your Honor.

1          MR. ANTHONY:  No, Your Honor.

2          THE COURT:  Mr. Flynn, have you had sufficient time

3     to consult with your attorneys about this case?

4          THE DEFENDANT:  I have.

5          THE COURT:  Are you satisfied with the services that

6     they have provided you?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you had the opportunity to discuss

9     with them the charge against you and whether or not you

10    should enter a plea of guilty?

11         THE DEFENDANT:  I have.

12         THE COURT:  Counsel, have you had sufficient time to

13    review and investigate the law and the facts of this case?

14         MR. KELNER:  Yes, Your Honor.

15         THE COURT:  In your opinion, does the defendant

16    understand the nature of the charge pending against him?

17         MR. KELNER:  Yes, Your Honor.

18         THE COURT:  Do you believe that he is mentally

19    competent to enter this plea?

20         MR. KELNER:  Yes, Your Honor.

21         THE COURT:  Mr. Flynn, as I mentioned earlier, before

22    I accept your plea, I need to explain to you certain rights.

23    You have to make sure that you understand them because you're

24    going to be waiving a significant number of them.

25         THE DEFENDANT:  Uh-huh.

1          THE COURT:  Please listen closely.  Be patient

2     because it is going to take a little bit of time.  And again,

3     let me know if you do not understand anything.  And finally,

4     again, at any point in time, if you need to consult with your

5     attorneys, please take the time to do that.

6          Do you understand that the charge against you is a

7     felony charge?

8          THE DEFENDANT:  I do.

9          THE COURT:  Because it is a felony charge, you have a

10    constitutional right to have the members of a grand jury

11    indict and charge you with that felony.  A federal grand jury

12    is composed of at least 16 and not more than 23 citizens of

13    the District of Columbia.  In order to charge you, at least

14    12 of them must find that there is probable cause to believe

15    that a crime has been committed and that you were the person

16    that committed that crime.  And if they charged you, they

17    would list the charges in a written indictment.  If you do

18    not give up your right to be charged by grand jury

19    indictment, the government cannot file felony charges against

20    you on its own.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  In this case, the felony charges against

24    you have been brought by the Special Counsel's Office by the

25    filing of an Information.

1           If you do not give up your right to be charged by

2     grand jury indictment, the government may present the case to

3     the grand jury and ask them to indict you, and a grand jury

4     might indict you, but then there is always the possibility

5     that they won't.

6           Do you understand that?

7           THE DEFENDANT:  I do.

8           THE COURT:  Okay.  If you do give up your right to be

9     charged by a grand jury in an indictment, the case will

10    proceed against you on the Special Counsel's Office

11    Information, just as though you had been indicted.  Do you

12    understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Mr. Flynn, do you understand your right

15    to indictment by a grand jury?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Have you discussed giving up your right

18    to indictment by the grand jury with your attorneys?

19          THE DEFENDANT:  I have.

20          THE COURT:  Have any threats or promises other than

21    the promises made in the plea agreement been made to you to

22    induce you to give up your right to the indictment?

23          THE DEFENDANT:  No.

24          THE COURT:  I gather there's a written waiver.  Let

25    me get that in front of me.

1          Could you just confirm that that is your signature on

2     that document?

3          Is that a "yes"?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Okay.  The signature on that document

6     waiving your right to a grand jury, it's yours; correct?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Counsel, is there any reason the

9     defendant should not waive his right to a grand jury?

10          MR. KELNER:  No.

11          THE COURT:  I find that the waiver of indictment by

12     grand jury is knowingly and voluntarily made, and it is

13     accepted, and the signed waiver will be filed.

14          Mr. Flynn, you have the right to plead not guilty to

15     any offense charged against you.  Do you understand that?

16          THE DEFENDANT:  Yes.

17          THE COURT:  You would have the right to challenge the

18     government's case against you by seeking to have the charges

19     dismissed or having the evidence against you suppressed or

20     thrown out.  Do you understand you would have that right if

21     you did not waive them?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Under the Constitution and

24     the laws of the United States, you have the right to a jury

25     trial in this case.  That means that 12 citizens of the

1    District of Columbia would sit as the jury and determine

2    whether you are guilty or not guilty based upon evidence

3    presented in this courtroom.

4            Do you understand your right to a jury trial?

5            THE DEFENDANT:  I do, Your Honor.

6            THE COURT:  If you choose to go to trial, you would

7    have a right to be represented by your attorneys at that

8    trial.  Do you understand that?

9            THE DEFENDANT:  I do.

10           THE COURT:  At a trial, you would have the right

11   through your lawyers to confront and cross-examine any

12   witnesses against you.  Do you understand that?

13           THE DEFENDANT:  Yes.

14           THE COURT:  You would also have the right to present

15   your own witnesses, and you would have the right to subpoena

16   them to require them to testify in your defense at trial.  Do

17   you understand that?

18           THE DEFENDANT:  Yes.

19           THE COURT:  At a trial you would have the right to

20   testify yourself and to present evidence on your behalf if

21   you wanted to, but you would not have to testify or present

22   any evidence if you did not want to because you cannot be

23   forced to incriminate yourself, that is, to present evidence

24   of your own guilt.  Do you understand that?

25           THE DEFENDANT:  Yes.

1          THE COURT:  If you chose not to testify or to put on

2     any evidence at a trial, those choices could not be used

3     against you to infer or suggest your guilt.  Do you

4     understand that?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Unless and until I accept your guilty

7     plea, if you choose to enter one today, you are presumed by

8     the law to be innocent because it is the government's burden

9     through competent evidence to prove your guilt beyond a

10    reasonable doubt, and until it does, you cannot be convicted

11    at trial.  Do you understand that?

12         THE DEFENDANT:  Yes.

13         THE COURT:  If you went to trial and you were

14    convicted, you would have the right to appeal your conviction

15    to the Court of Appeals and to have a lawyer help you prepare

16    that appeal.  Do you understand that?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you understand that by pleading

19    guilty, you will be generally giving up your rights to

20    appeal?  Do you understand that?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Now, to summarize, do you understand that

23    if you plead guilty in this case and I accept your guilty

24    plea, you will give up all the rights I just explained to you

25    because there will not be any trial and there will probably

1    be no appeal and you will waive your right not to incriminate

2    yourself, because in order for me to accept your plea, you

3    have to admit your guilt.  Do you understand that?

4              THE DEFENDANT:  I do.

5              THE COURT:  Mr. Flynn, do you wish to give up your

6    rights to a trial, your right to an appeal in most

7    circumstances, and all of the rights I have explained that

8    you have if your case went to trial?  Do you wish to do that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  All right.  And there is a signed waiver

11   of trial by jury.  If you could confirm that that is your

12   signature on that page.

13             It is?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Counsel, is there any reason the

16   defendant should not waive a jury trial and his right against

17   self-incrimination as to the charge to which a plea of guilty

18   will be made?

19             MR. KELNER:  No, Your Honor.

20             MR. VAN GRACK:  No, Your Honor.

21             THE COURT:  I find that the waiver is knowingly and

22   voluntarily made, and it is accepted, and the signed waiver

23   will be filed, as well.

24             Mr. Flynn, have you and your attorney received a copy

25   of the Information in this case, which contains the written

1    charges against you?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Have you read that document and has your

4    lawyer explained it to you, the charges contained therein?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Have you had the opportunity to discuss

7    the charges and the case in general fully with your

8    attorneys?

9              THE DEFENDANT:  I have.

10             THE COURT:  You understand that the Information

11   charges you with the offense of making false statements in a

12   matter within the jurisdiction of the Executive Branch of the

13   Government of the United States, in violation of

14   18 U.S.C. § 1001?  Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  Before I accept your guilty plea, I must

17   make a determination that there's a factual basis for that

18   plea.

19             I'm going to have the government come up and make a

20   presentation as to what it believes it can prove beyond a

21   reasonable doubt at trial.  I know that there is a written

22   signed statement of offense, as well.  So if you can just

23   confirm that that is your signature on page 6 of that

24   document.

25             It is?

1           THE DEFENDANT:  It is.

2           THE COURT:  The government's presentation is going to

3     largely duplicate that, but I still need you to listen

4     closely, and at the end of it, if you disagree with anything

5     they have said -- I will give you another opportunity to

6     disagree with anything in the written document -- you need to

7     tell me.  So please listen carefully, okay?

8           THE DEFENDANT:  Yes.

9           THE COURT:  Go ahead and have a seat.

10          Let me hear from the government.  Why don't you start

11    with the elements of the charges.

12          MR. VAN GRACK:  Your Honor, the elements for

13    violating 18 U.S.C. § 1001 are that the defendant made a

14    false statement that was material, the defendant acted

15    knowingly and willfully, and the statement pertained to a

16    matter within the jurisdiction of the Executive Branch of the

17    United States Government.

18          THE COURT:  Why don't you go through the facts that

19    you think you can prove at trial.

20          MR. VAN GRACK:  That the defendant made material

21    false statements and omissions during an interview with the

22    Federal Bureau of Investigation on January 24, 2017, in

23    Washington, D.C.

24          At the time of the interview, the FBI had an open

25    investigation into Russia's efforts to interfere in the 2016

1     presidential election, including the nature of any links or

2     coordination between individuals associated with Russia and

3     the campaign of President Donald Trump.

4     Specifically, during that January 24th interview, the

5     defendant falsely stated that he did not ask Russia's

6     Ambassador to the United States to refrain from escalating

7     the situation in response to sanctions that the United States

8     had imposed against Russia.  The defendant also falsely

9     stated that he did not remember a follow-up conversation in

10    which the Russian Ambassador stated that Russia had chosen to

11    moderate its response to those sanctions as a result of the

12    defendant's request.  In truth and in fact, the defendant

13    then and there knew that:

14         On or about December 29, 2016, the day sanctions

15    against Russia were announced, the defendant called a senior

16    official of the Presidential Transition Team, who was with

17    other senior members of the Presidential Transition Team at

18    the Mar-a-Lago resort, to discuss what to communicate to the

19    Russian Ambassador about sanctions.  On that call, the

20    defendant and the official discussed sanctions, including

21    that members of the transition team at Mar-a-Lago did not

22    want Russia to escalate the situation.

23         Immediately after that phone call, the defendant

24    called the Russian Ambassador and requested that Russia not

25    escalate the situation and only respond to the U.S. sanctions

1    in a reciprocal manner.

2         Shortly after his phone call with the Russian

3    Ambassador, the defendant spoke again with the senior

4    official to report on the substance of his call with the

5    Russian Ambassador, including their discussion of sanctions.

6    Two days later, the Russian Ambassador called the defendant

7    and informed him that Russia had chosen not to retaliate in

8    response to the defendant's request.  After that phone call,

9    the defendant spoke with senior members of the transition

10   team about his conversations with the Russian Ambassador

11   regarding sanctions and Russia's decision not to escalate the

12   situation.

13        During that same January 24th interview with the FBI,

14   the defendant made additional false statements about his

15   calls to Russia and other countries regarding a resolution

16   submitted to the United Nations Security Council on

17   December 24, 2016.  The defendant falsely stated that he only

18   asked the countries' positions on the resolution and that he

19   did not request that any of the countries take any particular

20   action on the resolution.  The defendant also falsely stated

21   that the Russian Ambassador never described to him Russia's

22   response to his request.  In truth and in fact, the defendant

23   then and there knew that:

24        On or about December 22, 2016, a very senior member

25   of the transition team directed the defendant to contact

1    officials from foreign governments, including Russia, to

2    learn where each government stood on the resolution and to

3    influence those governments to delay the vote or defeat the

4    resolution.

5         On or about December 26, 2016, the defendant

6    contacted the Russian Ambassador about the pending vote.  The

7    defendant requested that Russia vote against or delay the

8    resolution.

9         The next day the defendant again spoke with the

10   Russian Ambassador, who informed him that if it came to a

11   vote, Russia would not vote against the resolution.

12        In addition, on March 7, 2017, the defendant filed

13   multiple documents with the Department of Justice pursuant to

14   the Foreign Agents Registration Act pertaining to a project

15   performed by him and his company for the principal benefit of

16   the Republic of Turkey.  In those filings, the defendant made

17   materially false statements and omissions, including by

18   falsely stating that his company did not know whether or the

19   extent to which the Republic of Turkey was involved in the

20   project; that the project was focused on improving U.S.

21   business organizations' confidence regarding doing business

22   in Turkey; and an op-ed by the defendant published on

23   November 8, 2016 was written at his own initiative.  In

24   addition, the defendant omitted in those filings that

25   officials from the Republic of Turkey provided supervision

1    and direction over the project.

2              THE COURT:  Thank you.

3              MR. VAN GRACK:  Your Honor, I want to correct two

4    dates that I read:  That the resolution before the United

5    States Security Council was submitted on December 24, 2016;

6    and that the second call that the defendant made with the

7    Russian Ambassador about that UN vote was on December 23rd.

8              THE COURT:  All right.  Thank you.

9              Mr. Flynn, if you could come back to the podium,

10   please.

11             Are those dates correct in the written statement?

12             MR. VAN GRACK:  Yes, they are, Your Honor.

13             THE COURT:  So they don't need to be corrected there,

14   as well.

15             MR. VAN GRACK:  No, Your Honor.

16             THE COURT:  Okay.

17             Mr. Flynn, now that you've read the written statement

18   of facts, you've heard the government's oral presentation,

19   are there any corrections or errors that you need to point

20   out?

21             THE DEFENDANT:  Nothing that I heard, Your Honor, no.

22             THE COURT:  Or that you read?

23             THE DEFENDANT:  Or that I read.

24             THE COURT:  Is that factual summary true and correct?

25             THE DEFENDANT:  It is.

1          THE COURT:  Did you, in fact, do what the government

2     has stated that it can prove at trial?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Mr. Flynn, there is a written letter

5     outlining the plea agreement in this case.  Do you have a

6     copy of that agreement?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you read it carefully?

9          THE DEFENDANT:  Yes.

10          THE COURT:  Have you had the chance to discuss it

11     fully with your attorneys?

12          THE DEFENDANT:  I have.

13          THE COURT:  Do you understand it?

14          THE DEFENDANT:  I do.

15          THE COURT:  If you can confirm that that is your

16     signature on page 10 of that document.

17          It is?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Okay.  By signing that agreement, are you

20     accepting and agreeing to the terms of the agreement?

21          THE DEFENDANT:  I am.

22          THE COURT:  Okay.  Is your willingness to plead

23     guilty here today the result of the discussions you had with

24     the government through your attorneys?

25          THE DEFENDANT:  Yes.

1          THE COURT:  Okay.  Does that written agreement

2     represent the entire understanding you have with the

3     government?

4          THE DEFENDANT:  Yes, I believe it does.

5          THE COURT:  Okay.  There are no side oral agreements?

6          THE DEFENDANT:  None.

7          THE COURT:  Does the government counsel agree that

8     that is correct?

9          MR. VAN GRACK:  Yes, Your Honor.

10          THE COURT:  Okay.  Does government counsel wish to

11     summarize it or file the written agreement and rely upon it?

12          MR. VAN GRACK:  File the written agreement and rely

13     on it.

14          THE COURT:  Okay.  We will go ahead and do that and

15     get that filed.

16          Mr. Flynn, as I understand it, you're proposing to

17     plead guilty to the offense of making false statements in a

18     matter within the jurisdiction of the Executive Branch of the

19     Government of the United States, in violation of

20     18 U.S.C. § 1001.

21          Do you understand that if I accept your guilty plea

22     in this case, you could receive a maximum sentence of

23     5 years' imprisonment.  Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Do you also understand that I can impose

1    a fine of up to $250,000?

2            THE DEFENDANT:  I do.

3            THE COURT:  Do you also understand that I could

4    impose a fine sufficient to pay the government the cost of

5    any imprisonment, term of supervised release, or period of

6    probation?

7            THE DEFENDANT:  Yes.

8            THE COURT:  Do you also understand that although no

9    restitution issues have been brought to my attention that I

10   have an independent duty to determine whether any restitution

11   needs to be made if anyone has sustained a loss as a result

12   of your actions, and I would be required by law to impose

13   that amount of restitution?

14           Do you understand that?

15           THE DEFENDANT:  Yes.

16           THE COURT:  Do you understand, also, that you would

17   be obligated to pay any applicable interest or penalties on

18   fines or restitution that are not timely made?  Do you

19   understand that?

20           THE DEFENDANT:  I do.

21           THE COURT:  Do you also understand that you would be

22   subject to a term of supervised release not to exceed

23   3 years?  Do you understand that?

24           THE DEFENDANT:  Yes.

25           THE COURT:  And what that means is that if you're

1    sent to prison that upon your release you will be on

2    supervision under certain circumstances and rules with which

3    you must comply.  And if you violate those conditions and

4    rules, you could be sent back to prison for an additional

5    period of time.  Do you understand --

6              THE DEFENDANT:  Yes.

7              THE COURT:  -- how supervised release works?

8              THE DEFENDANT:  Yes.

9              THE COURT:  Do you also understand, although no prior

10    criminal history has been brought to my attention, that if

11    the probation office determines you have two or more

12    convictions for a crime of violence or felony drug offenses,

13    you may be subject to higher penalties provided in the career

14    offender statutes in the sentencing guidelines?  Do you

15    understand that?

16              THE DEFENDANT:  Yes.

17              THE COURT:  Do you also understand that you would be

18    subject to a special assessment of $100 for a felony offense,

19    as required by statute?  Do you understand that?

20              THE DEFENDANT:  I do, Your Honor.

21              THE COURT:  And again, although no forfeiture issues

22    have been brought to my attention, do you understand that if

23    they are applicable, the Court can require you to forfeit

24    certain property to the government?  Do you understand that?

25              THE DEFENDANT:  I do.

1          THE COURT:  Mr. Flynn, do you understand all of these

2     possible consequences of your plea agreement?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  I'm going to review something with you

5     that I'm sure your counsel has discussed with you, and that

6     is the sentencing guidelines.

7          This case falls within the Sentencing Reform Act of

8     1984, by which Congress created the United States Sentencing

9     Commission.  The Sentencing Commission has issued detailed

10    guidelines for judges such as myself to consider in

11    determining the sentence in a criminal case like this.  The

12    Commission has set sentencing ranges for specific offenses,

13    and those ranges are contained in the guidelines manual.

14    However, in light of Supreme Court decisions, the sentencing

15    guidelines are not mandatory, they are advisory, but they

16    must be consulted by the Court in the first instance in

17    determining the appropriate sentence.  Hence, I will assess

18    and determine the proper sentence in this case by reference

19    to and in consideration of the guidelines.  And while the

20    Court, prosecutor, your counsel, and even you have some idea

21    of what that guidelines range will be based on the charge and

22    based upon your prior criminal history, nothing will be

23    certain until the probation office conducts its investigation

24    and advises me what they believe the sentencing guideline

25    range is.

1             Do you understand that process?

2             THE DEFENDANT:  I do.

3             THE COURT:  The probation office will create a

4  presentence report that contains their conclusions as to what

5  the range is.  That report will come to me, and it would also

6  go to both sets of attorneys, and all of you will have a

7  chance to make objections to portions of it or request

8  changes.  Your attorney will go over it with you, and then at

9  the time of the sentencing I will hear from both sets of

10  attorneys, and it is only then that I will make a

11  determination what your advisory sentence and guidelines

12  range is.

13            Do you understand that?

14            THE DEFENDANT:  Yes.

15            THE COURT:  Once I do that in accordance with the

16  sentencing guidelines, I'm still permitted, however, to

17  impose a sentence outside of that range, either above or

18  below that range.

19            Do you understand that?

20            THE DEFENDANT:  Yes, Your Honor.

21            THE COURT:  However, I cannot sentence you to more

22  than the statutory period which I explained a little earlier.

23            Have you and your attorney talked about the

24  sentencing guidelines and how they might apply to your case?

25            THE DEFENDANT:  Yes, Your Honor.

1        THE COURT:  Do you understand that I cannot determine

2   what the sentence would be under the guidelines until I have

3   received a presentence report from the probation office and

4   the government and your attorneys have had the opportunity to

5   challenge the facts reported by the probation officer?

6        Do you understand that?

7        THE DEFENDANT:  Yes, I understand that.

8        THE COURT:  Do you understand that after I have

9   decided what guidelines range applies in your case, I still

10  have the authority in my discretion to impose a sentence that

11  is more severe or less severe than the sentence called for by

12  the guidelines?  Do you understand that?

13        THE DEFENDANT:  I do, Your Honor.

14        THE COURT:  Do you also understand that parole has

15  been abolished for federal charges and that if you are

16  sentenced to prison that you will serve the sentence I

17  impose, with a possible modest reduction for good time

18  credit, but that you will not be released early on parole as

19  used to be the case?  Do you understand that?

20        THE DEFENDANT:  Yes.

21        THE COURT:  Do you also understand that the offense

22  to which you are proposing to plead guilty is a felony

23  offense; and that if your plea is accepted and you're found

24  guilty of that offense, then, depending upon the specific

25  circumstances and the jurisdiction in which you reside, such

1     a finding may deprive you of valuable civil rights, such as

2     the right to vote, the right to hold public office, the right

3     to serve on a jury, and the right to possess any kind of

4     firearm?

5          Do you understand that?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Do you also understand that under some

8     circumstances, not only you, but also the government may have

9     the right to appeal any sentence that I impose if the

10    government believes that the sentence is improper or

11    unlawful?  Do you understand that?

12         THE DEFENDANT:  I do.

13         THE COURT:  Do you understand that under this plea

14    agreement you are generally giving up your right to appeal

15    any conviction or sentence I impose?  Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  There's very limited exceptions to what

18    you can appeal in this matter.  Do you understand that?

19         THE WITNESS:  Yes.

20         THE COURT:  And you've specifically discussed with

21    your attorneys the waiver of the right-to-appeal rights?

22         THE DEFENDANT:  Yes.

23         THE COURT:  All right.  Do you understand that if the

24    proper guideline range that I determine is higher than you

25    expected, as I warn you it could be, or the sentence I impose

1    is more severe than you expected -- again, I warn you it

2    could be -- you will still be bound by your guilty plea and

3    will have no right to withdraw it?  Do you understand that?

4            THE DEFENDANT:  Yes.

5            THE COURT:  Do you understand that if I do not accept

6    any sentencing recommendations made in the plea agreement or

7    made by the lawyers at the time of sentencing, you will still

8    be bound by your guilty plea and will have no right to

9    withdraw it?  Do you understand that?

10            THE DEFENDANT:  I do.

11            THE COURT:  The plea agreement includes an agreement

12    by you to cooperate with the United States and an agreement

13    by the U.S. to make a motion pursuant to Sentencing Guideline

14    5K1.1 if, but only if, the United States determines that you

15    have provided substantial assistance in the investigation or

16    prosecution of another person.

17            Do you understand that the decision whether that

18    motion under 5K is filed is within the sole discretion of the

19    United States, and neither you nor the Court can require the

20    government to file that motion?  Do you understand that?

21            THE DEFENDANT:  Yes.

22            THE COURT:  So if the government decides that your

23    cooperation is not enough to justify them filing that motion,

24    that is their call, it is not mine and it is not yours.  Do

25    you understand that?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Do you also understand that the Court is

3    not required to reduce your sentence even if the government

4    files that motion?  That is my decision to make, not theirs.

5    Do you understand that?

6          THE DEFENDANT:  I do.

7          THE COURT:  Finally, to repeat again, do you

8    understand that under the law, I must consider and take into

9    account the sentencing guidelines, along with all the other

10   relevant factors, but that the guidelines are advisory,

11   they're not binding on me, and ultimately the appropriate

12   sentence will be determined in my discretion, considering the

13   sentencing guidelines and all of the other relevant factors

14   under the statute?

15         Do you understand that?

16         THE DEFENDANT:  I do, Your Honor.

17         THE COURT:  Mr. Flynn, has anyone, including your

18   attorney, the federal agents, the prosecutor, or any other

19   person in which you have come in contact promised or

20   suggested to you that merely because you are pleading guilty

21   I will give you a lighter sentence?

22         THE DEFENDANT:  No.

23         THE COURT:  Has anyone made any promises to you as to

24   what sentence I will impose in this case if I accept your

25   guilty plea?

1          THE DEFENDANT:  They have not.

2          THE COURT:  Do you understand that at this time I do

3     not know what sentence I will impose in your case since I

4     have not yet heard from the lawyers or from the probation

5     office?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Has anyone made any promises to you in

8     connection with your guilty plea other than those that are

9     contained in the written plea agreement?

10          THE DEFENDANT:  They have not.

11          THE COURT:  Has anyone forced, threatened, or coerced

12     you in any way into entering this plea of guilty?

13          THE DEFENDANT:  No.

14          THE COURT:  Mr. Flynn, has there been anything about

15     your plea agreement or these proceedings that you do not

16     understand or that you wish to consult with your attorneys

17     about?

18          THE DEFENDANT:  There isn't.

19          THE COURT:  Is there anything that you want to ask me

20     before you make a decision whether or not you want to plead

21     guilty or go to trial?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Counsel for both sides, is there anything

24     else we need to cover before taking the plea?

25          MR. KELNER:  No, Your Honor.

1          MR. ANTHONY:  No, Your Honor.

2          MR. VAN GRACK:  No, Your Honor.

3          THE COURT:  Mr. Flynn, are you now ready to make a

4    decision about whether you wish to enter a plea of guilty or

5    whether you, instead, wish to go to trial?

6          THE DEFENDANT:  I am.

7          THE COURT:  Mr. Flynn, how do you plead to the charge

8    in Count One of the Information, making false statements, in

9    violation of 18 U.S.C. § 1001; do you plead guilty or not

10   guilty?

11         THE DEFENDANT:  Guilty, Your Honor.

12         THE COURT:  Are you entering this plea of guilty

13   voluntarily and of your own free will?

14         THE DEFENDANT:  I am.

15         THE COURT:  Are you entering this plea of guilty

16   because you are guilty and for no other reason?

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Defense counsel, do you know of any

19   reason why the defendant should not plead guilty to the

20   charge?

21         MR. KELNER:  No, Your Honor.

22         MR. VAN GRACK:  No, Your Honor.

23         THE COURT:  It is the finding of this Court in the

24   case of *United States v. Michael T. Flynn*, Criminal Number

25   17-232, that the defendant, Michael Flynn, is fully competent

1    and capable of making a decision today and entering an

2    informed plea; that he understands the nature of the charges

3    against him and the consequences of what he is doing; that he

4    is acting voluntarily and of his own free will; and that

5    there is an adequate factual basis for his plea.  Therefore,

6    the plea of guilty is accepted, and I find you guilty as

7    charged in Count One of the Information.

8         Mr. Flynn, as I explained to you a little bit

9    earlier, there is going to be a presentence investigation

10   conducted and a report prepared by the probation office to

11   assist me in the sentencing.  You are going to be interviewed

12   by a probation officer, and you are required to give truthful

13   information for that report.  Your attorney may be present if

14   you wish -- and that is generally a good idea -- and then you

15   and your attorney will be permitted to read the presentence

16   report, a draft of it, before the sentencing hearing, and

17   make any objections to any errors that you believe are in

18   that report.  And then at the sentencing hearing, both you

19   and your attorney will be given an opportunity to speak on

20   your behalf.

21        Do you understand that process?

22        THE DEFENDANT:  I do.

23        THE COURT:  I assume that we're deferring sentencing

24   for the time being?

25        MR. VAN GRACK:  Yes, Your Honor.

1    THE COURT:  Okay.  How do you want to proceed as far

2    as setting a status report --

3    MR. VAN GRACK:  Yes, Your Honor, we've spoken with

4    defense counsel, and we would like to schedule a status date

5    in three months.

6    THE COURT:  Okay.  And defer the presentence

7    investigation?

8    MR. VAN GRACK:  Yes, Your Honor.

9    THE COURT:  Okay.

10   THE DEPUTY CLERK:  Status date is February 1, 2018.

11   THE COURT:  10 a.m.

12   A status report or status hearing?

13   Mr. VAN GRACK:  A status report.

14   THE COURT:  Okay.  Status report, February 1, 2018.

15   I assume the government is not requesting that we

16   hold him prior to that?

17   MR. VAN GRACK:  No, Your Honor.

18   THE COURT:  Okay.  I will agree with that.

19   I'm going to have you report weekly by phone, and to

20   live at the address that is in the pretrial materials.  Is

21   that correct?

22   MR. ANTHONY:  Yes, that's the address, Your Honor.

23   THE COURT:  I have signed the booking documents.

24   The one last thing I need to advise you, Mr. Flynn,

25   is when we do finally set a sentencing date, you are required

1    to appear for that sentencing, and the failure to appear as

2    required is a separate criminal offense for which you could

3    be sentenced to imprisonment.  All the conditions that you

4    will be released upon now apply, and the penalties for

5    violating those conditions can be severe, and that committing

6    a crime while on release can subject you to more severe

7    punishment than would otherwise be the case if you were not

8    under the release conditions.

9            Do you understand that?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Counsel, is there anything else we need

12   to cover?

13           MR. KELNER:  No, Your Honor.

14           Government?

15           MR. VAN GRACK:  No, Your Honor.

16           THE COURT:  Thank you.  You're excused.

17               (Proceedings adjourned at 11:16 a.m.)

18

19

20

21

22

23

24

25

1          CERTIFICATE OF OFFICIAL COURT REPORTER

2

3          I, Patricia A. Kaneshiro-Miller, certify that the

4     foregoing is a correct transcript from the record of

5     proceedings in the above-entitled matter.

6

7

8     /s/ Patricia A. Kaneshiro-Miller          December 1, 2017
      ------------------------------------     ----------------------
9     PATRICIA A. KANESHIRO-MILLER                     DATE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25