```
              UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA       :
                               :
         Plaintiff,            :   Criminal Action
                               :   No. 17-232
v.                             :
                               :
MICHAEL FLYNN,                 :   July 10, 2018
                               :   10:00 a.m.
                               :
                               :
         Defendant.            :   Washington, D.C.
                               :
.............................  :
```

**TRANSCRIPT OF STATUS CONFERENCE PROCEEDINGS
BEFORE THE HONORABLE EMMET G. SULLIVAN,
UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:       **Brandon Lang Van Grack, Assistant U.S. Attorney**
U.S. DEPARTMENT OF JUSTICE
Special Counsel's Office
950 Pennsylvania Avenue, NW
Washington, DC 20530
(202) 616-0800
Email: Bvg@usdoj.gov

**Zainab Naeem Ahmad, Assistant U.S. Attorney**
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Room B-103
Washington, DC 20530
(202) 616-0800
Email: Zna@usdoj.gov

```
APPEARANCES:   Cont.

For the Defendant:              Robert K. Kelner, Esq.
                                COVINGTON & BURLING LLP
                                850 Tenth Street N.W.
                                One City Center
                                Washington, DC 20001
                                (202) 662-5503
                                Fax: (202) 778-5503
                                Email: Rkelner@cov.com

                                Stephen Pierce Anthony, Esq.
                                COVINGTON & BURLING LLP
                                850 Tenth Street N.W.
                                One City Center
                                Washington, DC 20001
                                (202) 662-5105
                                Fax: (202) 778-5105
                                Email: Santhony@cov.com

For the Probation               Marsharia Holmon, Pretrial
Department:                     Services Officer

                                Renee Moses-Gregory, Pretrial
                                Services Officer

Court Reporter:                 Scott L. Wallace, RDR, CRR
                                Official Court Reporter
                                Room 6503, U.S. Courthouse
                                Washington, D.C. 20001
                                202.354.3196
                                scottlyn01@aol.com
```

Proceedings reported by machine shorthand, transcript produced by computer-aided transcription.

**MORNING SESSION, JULY 10, 2018**

(10:12 a.m.)

    THE COURTROOM CLERK:  Your Honor, this is criminal case 17-232, *United States of America versus Michael Flynn*.

    Will parties please come forward to this lectern and identify yourselves for the record.

    MR. VAN GRACK:  Good morning, Your Honor.  Brandon Van Grack and Zainab Ahmad on behalf of the government.

    THE COURT:  Good morning to you both.

    MS. AHMAD:  Good morning.

    MR. KELNER:  Good morning, Your Honor.  Robert Kelner with Covington & Burling for the defendant.  I'm joined by co-counsel Stephen Anthony and General Flynn.

    THE COURT:  Good morning, everyone.  Let me do this. There's an overflow room, and I was just informed that if people cannot speak into a microphone, then the people in the overflow room can't hear, and that would not be kind to them.  So let me invite principle counsel and Mr. Flynn to the microphone so we can have a discussion.

    Good morning.  How are you, Mr. Flynn?

    THE DEFENDANT:  Good, Judge.  Thank you.

    THE COURT:  You know, the minute orders could have -- I could have written other minute orders and posted them and there would be other responses.  It was easier to bring you in and have a discussion, especially since I've never had the occasion to

1  meet with this group, and there was a level of discomfort at the
2  thought of just appearing at a sentencing proceeding for someone
3  I've never met before, so I didn't want to do that.  So this
4  gives me an opportunity to engage with Mr. Flynn and with counsel
5  and to discuss the issue of sentencing, which is foremost.
6         Let me talk very generally about my process for sentencing
7  and what I've been doing for years.  Normally -- I mean, it's
8  very straightforward.  Normally the attorneys tell me maybe after
9  cooperation has been completed that they're ready for a
10 sentencing proceeding, and we'll pick a day 90 days forward, and
11 that affords the Probation Office an opportunity to prepare a
12 final presentence report, it affords the parties an opportunity
13 to file objections to the final presentence report, and for the
14 attorneys to file memoranda addressing points that they believe
15 are appropriate to raise at the time of sentencing.
16        That's what we normally do.  There are exceptions to every
17 rule.  Without mentioning names, I'll give you one example of an
18 exception, a recent exception to that rule wherein an individual
19 wanted a new attorney, a new attorney was appointed, a new
20 attorney promptly communicated with my office and said, Judge,
21 our client's been incarcerated for about six months and the
22 government has made a very generous offer that has a maximum of
23 six months' incarceration.  My client would like to take it.
24        So, in that case, you have an individual who's detained.
25 It makes no sense to say, okay, let's pick a sentencing date 90

days in the future. I could have done that, but makes absolutely no sense, and it's unfair to the defendant who's detained. So I reached out to the Probation Office and said, Look, we're going to have to streamline the process, and I promptly set a plea hearing. After an extensive colloquy, I was persuaded that the individual wanted to plead guilty because, indeed, he was guilty. I didn't promise a six-month sentence, but I pretty much did promise it by saying that unless something unforeseen is learned during the investigation process, in all likelihood the Court's going to sentence you to time served.

The parties wanted me -- the defense counsel wanted me to waive the presentence report. I could not do that. That's unfair to the community, and the community has a stake in these proceedings as well, and you never know what's out there in -- on the record. I didn't waive that, but I asked the Probation Department to accelerate it because there were cogent reasons to do so, and it was accelerated at warp speed, and there will be a sentencing very soon. And, again, I don't want to mention any names, but there will be a sentencing very soon, and I'm deeply appreciative of the efforts of the Probation Office.

There are a lot of demands on our Probation Office. For instance, I learned in a recent discussion with a supervisory probation officer that there's been an upsurge with respect to requests for criminal guideline calculations because defense attorneys want to know and defendants want to know where they

*1* fall on the advisory range, and that makes all the sense in the
*2* world.  If you want to make a decision about accepting
*3* responsibility of going to trial, you want to know at least what
*4* the best case scenario is for where someone appears on the
*5* voluntary Sentencing Guidelines.  There's been an increase, a
*6* significant increase in those requests over the last month, so
*7* I'm mindful of that.  I don't have any problems extending time
*8* for sentencing, none whatsoever, but I do have some concern about
*9* departing from the norm.
*10*     Now, maybe there are cogent reasons in Mr. Flynn's case, I
*11* don't know, which is the reason why I wanted to bring you in and
*12* to hear from counsel, because although the request was to refer
*13* Mr. Flynn's case for a presentence investigation and to expedite,
*14* there were no reasons articulated.  So -- and maybe there are
*15* some reasons, so go for it, Counsel.  Maybe there's a reason to
*16* do that.
*17*     MR. KELNER:  Your Honor, thank you, and I understand the
*18* Court's concerns.
*19*     THE COURT:  The main concern is the drain on our Probation
*20* Department and the Probation Department is an employee of the
*21* Court.
*22*     MR. KELNER:  Understood.  The government came to us,
*23* indicated that they were not yet prepared to proceed to
*24* sentencing.
*25*     THE COURT:  And that's fine, and I don't have any problems

1  with that whatsoever, none whatsoever.
2          MR. KELNER:  General Flynn is eager to proceed to
3  sentencing when that is possible.  Under the cooperation
4  agreement, it is really up to the government to make that
5  recommendation.
6          In the meantime, the government had proposed to us asking
7  the Court to begin the presentence investigation report process
8  so that when they are ready to schedule sentencing, it might be
9  possible for the Court to schedule sentencing more promptly.
10 That was an appealing offer to us because General Flynn does very
11 much want to bring this chapter of his life to a conclusion.
12         THE COURT:  As does everyone facing a sentencing.
13         MR. KELNER:  Of course, of course, Your Honor.
14         THE COURT:  Right.
15         MR. KELNER:  So if it were possible to proceed with the
16 preinvestigation report, that would be appealing.  In terms of
17 the burden, our thinking was, Your Honor, that in this situation
18 the facts are not likely to change in any material way, so that
19 if the presentencing investigation report were prepared now by
20 the Probation Office, that when the government is ready to
21 schedule sentencing, it would be ready to go.  We don't
22 anticipate -- and we certainly defer to the Court's judgment on
23 this -- we don't anticipate that there would be factual changes
24 that would require the Probation Office to repeat the process or
25 to advise --

*1*     THE COURT: But they have to go back through that process
*2* in any event because they have an obligation to the community,
*3* and things happen. There are extenuating circumstances in the
*4* other case that I don't need to discuss, but there were -- there
*5* were other extenuating circumstances and reasons for not waiving
*6* the presentence report, something we rarely do. I understand,
*7* and I don't really have any reason to doubt what you're saying,
*8* Counsel, but our Probation Office is going to have to replicate
*9* that process again, and that's where that drain on resources is.
*10*     MR. KELNER: Right.
*11*     THE COURT: I'm willing to work with you and the
*12* government towards a date that we can proceed on to offer some
*13* finality in this proceeding to Mr. Flynn and his family.
*14*     MR. KELNER: Let me be clear. We don't look to burden the
*15* Probation Office or the Court in any way, and so we would readily
*16* withdraw the proposal if the Court felt it would burden the
*17* process or the community. With that said, we are eager to
*18* identify a sentencing date when it's possible to do so.
*19*     THE COURT: Sure, that's fine. And no pressure on me to
*20* do that -- for you to do that.
*21*     MR. KELNER: Thank you, Your Honor.
*22*     THE COURT: Here's what I'm thinking, and I want you to
*23* respond to this. You've asked for leave to file another status
*24* report August 24th, and that's fine, and it may well be that
*25* August 24th may come and go and you need more time, and that's

1   fine as well.  The Court's not going to pressure the parties to
2   proceed to sentencing.  I have other cases on my docket, and I
3   have -- you know, I'm not going to micromanage what's going on
4   with the parties in this case vis-à-vis cooperation, et cetera.
5        Let's assume, hypothetically, that on August 24th you're
6   ready to proceed to sentencing.  Suppose the Court were to at
7   that time, in an effort to try to accommodate the parties,
8   schedule sentencing for maybe 60 days out as opposed to the
9   traditional 90 days out -- but then I would have to speak to the
10  probation department to see what kind of drain that is -- but
11  give you a date certain, give the Probation Office a date
12  certain, and give the parties dates certain for the filing of
13  memoranda because I am going to want memoranda --
14       MR. KELNER:  -- of course --
15       THE COURT:  -- that addresses scope of cooperation and --
16  Does the government have to go through -- to its Departure
17  Guideline Committee?
18       MR. VAN GRACK:  Well, in this case --
19       THE COURT:  Well, wait a minute.  If I'm getting into --
20  all right.  Forget I asked that question.  At some point, the
21  government's going to be in a position where it agrees to
22  sentencing, I assume, all right.  Suppose on August 24th, if you
23  tell me you want to proceed to sentencing, suppose the Court were
24  to hypothetically then say, all right, let's pick a date 60 days
25  out, and if that's not a hardship to the probation department,

*1* give me a date certain, require the filing of objections and
*2* sentencing memoranda, and proceed along those lines, would
*3* that --
*4*      MR. KELNER:  Yes.  Your Honor, that would be very welcome.
*5*      THE COURT:  All right.  I understand what you're saying
*6* about the pressure of getting this over, but if in another
*7* hypothetical you said, Judge, August 24th we're ready to go to
*8* sentencing next week, then that deprives the Court of an
*9* opportunity to review sentencing memoranda prior to -- and you
*10* having an opportunity to make your best efforts to persuade the
*11* Court that your client's entitled to the benefit of a 5K, et
*12* cetera.
*13*      MR. KELNER:  Right.
*14*      THE COURT:  So, if that's agreeable, maybe we can proceed
*15* along those lines, as opposed to the 90 days; maybe 60 days.
*16*      MR. KELNER:  We would certainly welcome that, Your Honor.
*17*      THE COURT:  All right.  Okay.  Let me hear from government
*18* counsel.
*19*      MR. VAN GRACK:  And the government would welcome that as
*20* well, Your Honor.
*21*      THE COURT:  All right.  Okay.  Let me just huddle with my
*22* staff.  You can stay there.  Let me just huddle with my staff for
*23* just one second, if I can find the husher button here.
*24*      (Brief pause in proceedings.)
*25*      THE COURT:  All right.  I'm not going to pick any dates

*1* now because you're not ready to go, and if August 24th comes and
*2* you want more time, that's fine with me, you're not going to get
*3* any argument from me about that.  And I'm sure the Probation
*4* Department appreciates your sensitivity towards the drain on its
*5* resources, its very precious resources.
*6*      I can respond to any questions you have, if you have any,
*7* or if anyone else wants to put anything else on the record.
*8*      MR. KELNER:  Thank you, Your Honor.  We have no questions.
*9*      MR. VAN GRACK:  No questions from the government, Your
*10* Honor.
*11*      THE COURT:  All right.  I've read the transcript.  I was
*12* deprived of the opportunity to engage you at the plea sessions,
*13* the case was before another judge.  It's difficult to discern
*14* demeanor, but I read the transcript.  We'll have discussions on
*15* the sentencing date, and I'm sure I'll have some questions for
*16* you or your attorney.  I don't have anything further to say, I
*17* don't think.  Do I?  All right.  Have a nice day.
*18*      MR. VAN GRACK:  Thank you very much.
*19*      THE COURT:  The parties are excused.  Thank you.
*20*      (Proceedings adjourned at 10:25 a.m.)
*21*
*22*
*23*
*24*
*25*

*Scott L. Wallace, RDR, CRR, Official Court Reporter*
*(202)354-3196 * scottlyn01@aol.com*

**C E R T I F I C A T E**

          I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Scott L. Wallace                 7/10/18
-----------------------------    ----------------
**Scott L. Wallace, RDR, CRR**         **Date**
**Official Court Reporter**

*Scott L. Wallace, RDR, CRR, Official Court Reporter*
*(202)354-3196 * scottlyn01@aol.com*