UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | Crim. No. 17-232 (EGS) |
| : | |
| MICHAEL T. FLYNN, : | |
| : | Sentencing: December 18, 2018 |
| : | |
| Defendant. : | |

## GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through Special Counsel Robert S. Mueller, III, respectfully submits this memorandum in aid of sentencing defendant Michael T. Flynn. On December 1, 2017, the defendant pleaded guilty to one count of making materially false statements to the Federal Bureau of Investigation ("FBI"), in violation of 18 U.S.C. § 1001(a). As calculated by the United States Probation Office, the defendant's applicable Total Offense Level is 4, Criminal History Category I, resulting in an advisory guideline range of 0-6 months. That offense level and guideline range, however, do not account for a downward departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines reflecting the defendant's substantial assistance to the government, which the government has moved for contemporaneously. Given the defendant's substantial assistance and other considerations set forth below, a sentence at the low end of the guideline range—including a sentence that does not impose a term of incarceration—is appropriate and warranted.

The nature of the offense and the defendant's history and characteristics are set forth below. *See* 18 U.S.C. § 3553(a). In addition, the Addendum to this memorandum describes the

defendant's assistance to the government. Because the Addendum includes sensitive information about ongoing investigations, the government is seeking to partially seal the Addendum, and has filed publicly a redacted version of the document that excludes the sensitive information.

I.      Nature of the Offense: False Statements to the Department of Justice

The defendant's offense is serious. As described in the Statement of Offense, the defendant made multiple false statements, to multiple Department of Justice ("DOJ") entities, on multiple occasions. *See* Statement of Offense, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 1, 2017) (Doc. 4) ("SOF").

The first series of false statements occurred during an interview with the FBI on January 24, 2017. At the time of the interview, the FBI had an open investigation into the Russian government's efforts to interfere in the 2016 presidential election, including the nature of any links or coordination between the Russian government and individuals associated with the campaign of President Donald J. Trump. Days prior to the FBI's interview of the defendant, the *Washington Post* had published a story alleging that he had spoken with Russia's ambassador to the United States on December 29, 2016, the day the United States announced sanctions and other measures against Russia in response to that government's actions intended to interfere with the 2016 election (collectively, "sanctions"). *See* David Ignatius, *Why did Obama Dawdle on Russia's hacking?*, WASH. POST (Jan. 12, 2017). The *Post* story queried whether the defendant's actions violated the Logan Act, which prohibits U.S. citizens from corresponding with a foreign government with the intent to influence the conduct of that foreign government regarding disputes with the United States. *See* 18 U.S.C. § 953. Subsequent to the publication of the

*Post* article and prior to the defendant's FBI interview, members of President-Elect Trump's transition team publicly stated that they had spoken to the defendant, and that he denied speaking to the Russian ambassador about the sanctions. *See, e.g.*, *Face the Nation transcript January 15, 2017: Pence, Manchin, Gingrich*, CBS NEWS (Jan. 15, 2017).

When the FBI interviewed the defendant on January 24 about his interactions with the Russian ambassador, the defendant falsely stated that he did not ask the Russian ambassador to refrain from escalating the situation in response to the sanctions, and falsely disclaimed any memory of his subsequent conversation with the ambassador in which the ambassador stated that Russia had acceded to the defendant's request. *See* SOF at ¶ 3. In addition, the defendant made false statements to the FBI about his prior interactions with the Russian government in December 2016 concerning a pending United Nations Security Council resolution. *See id.* at ¶ 4. The defendant's false statements to the FBI about (i) his contacts with a Russian government emissary, (ii) the requests he conveyed to the Russian government through that emissary, and (iii) Russia's response to those requests, were material to the FBI's investigation into the nature of any links or coordination between the Russian government and individuals associated with the Trump campaign.

The defendant made a second series of false statements to the DOJ concerning his contacts with the Republic of Turkey. Specifically, on March 7, 2017, the defendant made materially false statements in multiple documents that he filed pursuant to the Foreign Agents Registration Act ("FARA") pertaining to a project he and his company had performed for the principal benefit of the Republic of Turkey ("Turkey project"). *Id.* at ¶ 5. In those filings, the defendant disclosed that he and his company began work on the Turkey project in August 2016,

soon after a coup d'état was attempted in Turkey. Ultimately, the project lasted approximately three months and the defendant and his company were paid $530,000 for their work.

The FARA filings omitted the material fact that officials from the Republic of Turkey provided supervision and direction over the Turkey project. *See id*. At the time, the defendant was a national security advisor and surrogate for the Trump campaign who opined publicly on foreign policy and national security issues. The defendant's business relationship with the Republic of Turkey was thus exactly the type of information FARA was designed to ensure was within the public sphere. The purpose of FARA is to ensure the United States government and the United States people are informed of the identity of foreign entities—in this case a foreign government—behind information or propaganda being used to influence public opinion, policy, and laws.

On election day in 2016, the defendant published an op-ed for the Turkey project that called for the removal of a cleric residing in the United States whom the President of Turkey blamed for the failed coup in that country. *See* Michael T. Flynn, *Our ally Turkey is in crisis and needs our support*, THE HILL (Nov. 8, 2016). The cleric's responsibility for the coup attempt was a subject of great debate, and the defendant's op-ed about the cleric's role was valuable to the Republic of Turkey's efforts to shape public opinion. The defendant falsely represented in his FARA filings that the op-ed was written at his own initiative, as opposed to for the Turkey project and the Republic of Turkey, and thus again deprived the public of the very transparency FARA was designed to ensure. *See* SOF at ¶ 5. The defendant's false statements impeded the ability of the public to learn about the Republic of Turkey's efforts to influence public opinion

about the failed coup, including its efforts to effectuate the removal of a person legally residing in the United States.

## II.     History and Characteristics of the Defendant

The defendant's history and characteristics present mitigating and aggravating circumstances. As detailed in the Presentence Investigation Report ("PSR"), the defendant's military and public service are exemplary. He served in the military for over 33 years, including five years of combat duty, led the Defense Intelligence Agency, and retired as a 3-star Lieutenant General. *See* PSR (Doc. 44) at ¶¶ 70-71. The defendant's record of military and public service distinguish him from every other person who has been charged as part the SCO's investigation. However, senior government leaders should be held to the highest standards. The defendant's extensive government service should have made him particularly aware of the harm caused by providing false information to the government, as well as the rules governing work performed on behalf of a foreign government.

The defendant deserves credit for accepting responsibility in a timely fashion and substantially assisting the government. As described in the Addendum, shortly after the SCO reached out to the defendant to seek his cooperation, the defendant accepted responsibility for his unlawful conduct and began cooperating with the government.

### III.     Conclusion

For the foregoing reasons, as well as those contained in the government's Addendum and Motion for Downward Departure, the government submits that a sentence at the low end of the advisory guideline range is appropriate and warranted.

        Respectfully submitted,

        ROBERT S. MUELLER, III
        Special Counsel

By:     /s/
        Brandon L. Van Grack
        Zainab N. Ahmad
        Senior Assistant Special Counsels
        Special Counsel's Office
        U.S. Department of Justice
        950 Pennsylvania Avenue NW
        Washington, D.C. 20530
        (202) 616-0800

**CERTIFICATE OF SERVICE**

I, Brandon L. Van Grack, certify that I caused to be served a copy of the foregoing by electronic means on counsel of record for defendant Michael T. Flynn on December 4, 2018.

/s/
Brandon L. Van Grack
U.S. Department of Justice
Special Counsel's Office
950 Pennsylvania Avenue NW
Washington, D.C. 20530
Telephone: (202) 616-0800

*Attorney for the United States of America*