UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Crim. No. 17-232 (EGS) |
| | : | |
| MICHAEL T. FLYNN, | : | |
| | : | Sentencing: December 18, 2018 |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S REPLY TO
DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through Special Counsel Robert S. Mueller, III, respectfully submits this reply to defendant Michael T. Flynn's sentencing memorandum. *See* Defendant's Memorandum in Aid of Sentencing ("Def. Sent. Mem."), *United States v. Flynn,* 17-cr-232 (D.D.C. Dec. 11, 2018) (Doc. 50). In his sentencing memorandum, the defendant cites circumstances surrounding his FBI interview on January 24, 2017, as a factor that mitigates the seriousness of his offense. *See id.* at 7-11. The circumstances of the defendant's interview, which are further described below, are not mitigating. Nothing about the way the interview was arranged or conducted caused the defendant to make false statements to the FBI on January 24.

The defendant chose to make false statements about his communications with the Russian ambassador weeks before the FBI interview, when he lied about that topic to the media, the incoming Vice President, and other members of the Presidential Transition Team. When faced with the FBI's questions on January 24, during an interview that was voluntary and cordial, the defendant repeated the same false statements. The Court should reject the defendant's attempt to minimize the seriousness of those false statements to the FBI.

-1-

## I.     Defendant's False Statements Prior to January 24, 2017

The defendant made his decision to lie about his communications with the Russian ambassador two weeks before his interview with the FBI. On January 12, 2017, *The Washington Post* published a story asserting that the defendant had spoken with the Russian ambassador on December 29, 2016, the day the United States announced sanctions and other measures against Russia in response to that government's actions intended to interfere with the 2016 election (collectively, "sanctions"). *See* David Ignatius, *Why did Obama Dawdle on Russia's hacking?,* WASH. POST (Jan. 12, 2017). The *Post* story asked whether the defendant had undercut the sanctions and whether his actions violated the Logan Act. The defendant asked a subordinate member of the Presidential Transition Team to contact the *Post* on the morning of January 13 and convey false information about the defendant's communications with the Russian ambassador. The "UPDATE" included at the end of the *Post* story later reported that two members of the Presidential Transition Team stated that the defendant "didn't cover" sanctions in his conversation with the Russian ambassador. *Id.*

Over the next two weeks, the defendant repeated the same false statements to multiple members of the Presidential Transition Team, including Vice President-Elect Michael Pence, incoming White House Chief of Staff Reince Priebus, and incoming White House Press Secretary Sean Spicer. Those officials then repeated the defendant's false statements on national television. *See, e.g., Face the Nation transcript January 15, 2017: Pence, Manchin, Gingrich,* CBS NEWS (Jan. 15, 2017) (Vice President Pence recounting that defendant told him he did not discuss sanctions with the Russian ambassador); *Meet The Press 01/15/17*, NBC NEWS (Jan. 15, 2017) (Priebus recounting that he had talked to the defendant and "[t]he subject matter of

sanctions or the actions taken by the Obama [sic] did not come up in the conversation [with the Russian ambassador.]"); *White House Briefing by Sean Spicer – Full Transcript, Jan. 23, 2017*, CBS NEWS (Jan. 24, 2017) (Spicer recounting that he had spoken with the defendant the day before, who again stated that he (the defendant) had not spoken to the Russian ambassador about the sanctions). Thus, by the time of the FBI interview, the defendant was committed to his false story.

## II.     The Circumstances of the Defendant's False Statements on January 24, 2017

The circumstances of the defendant's interview also show that his decision to make false statements was voluntary and intentional. The FBI Deputy Director, Andrew McCabe, informed the defendant about the topic of the interview. *See* Memorandum of Andrew McCabe dated January 24, 2017 ("McCabe Memo") (Attachment A) (McCabe called defendant to arrange the interview and explained that the FBI needed to talk to him in light of the "media coverage and public discussion about his recent contacts with Russian representatives."). When the defendant asked McCabe if the questions would concern "his contact with the Russian Ambassador to the United States," McCabe confirmed they would. *Id*. During the interview, the FBI agents gave the defendant multiple opportunities to correct his false statements by revisiting key questions. When the defendant said he did not remember something they knew he said, they used the exact words the defendant had used in order to prompt a truthful response. *See* FD-302 of Peter Strzok dated July 19, 2017 ("Strzok 302"), at 3 (Attachment B).[1] But the defendant never corrected his false statements.

The interview was voluntary, and lacked any indicia of coercion. When arranging the

---

[1] Strzok was interviewed on July 19, 2017, in relation to other matters, *not* as part of the investigation of the defendant or any investigation of Strzok's conduct.

interview, McCabe asked the defendant if he would be willing to speak with two FBI agents, and the defendant agreed. *Id.* They agreed to conduct the interview at the defendant's office in the White House. *Id.* As the interviewing agents noted, the defendant was "relaxed and jocular" during their interactions with him. *Id.*

### III. The Circumstances of the Defendant's Interview Do Not Lessen the Seriousness of the Offense

The defendant submits that multiple aspects of the January 24 interview lessen the seriousness of his offense "relative to the circumstances of witness interviews in typical cases charged under 18 U.S.C. § 1001," including two cases this Office has prosecuted—Alex Van der Zwaan and George Papadopoulos. Def. Sent. Mem. at 7-11. While there are factors that distinguish the defendant from those individuals, including the defendant's cooperation and military service, the circumstance of his interview is not a meaningful difference.

A sitting National Security Advisor, former head of an intelligence agency, retired Lieutenant General, and 33-year veteran of the armed forces knows he should not lie to federal agents. He does not need to be warned it is a crime to lie to federal agents to know the importance of telling them the truth. The defendant undoubtedly was aware, in light of his "many years" working with the FBI, that lying to the FBI carries serious consequences. *See* Def. Sent Mem. at 8. He, unlike Van der Zwaan and Papadapoulous, was a senior national security official with extensive federal government experience, had led an intelligence agency, had worked with the FBI, and was steeped in the importance of accurate information to decision making in areas of national security.

The defendant agreed to meet with the FBI agents, without counsel, and answer their questions. His obligation to provide truthful information came with that agreement; it did not

turn on the presence of counsel. Moreover, as the defendant has admitted, weeks after the January 24 interview, he made materially false statements in filings he provided to another branch of the Department of Justice pursuant to the Foreign Agents Registration Act ("FARA"). *See* Statement of Offense at ¶ 5, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 1, 2017) (Doc. 4). The defendant made those false statements while represented by counsel and after receiving an explicit warning that providing false information was a federal offense. *See, e.g.,* FARA Registration No. 6406, Flynn Intel Group (March 7, 2017), available at https://efile.fara.gov/docs/6406-Registration-Statement-20170307-1.pdf. The defendant was equally responsible for telling the truth to both Department of Justice entities, and under both circumstances he chose to make false statements.

Finally, the interviewing agents did not observe indicia of deception and had the impression at that time that the defendant was not lying or did not think he was lying. *See* Strzok 302 at 4. Members of the Presidential Transition Team were likewise misled by the defendant's false denials. Those misimpressions do not change the fact—as the defendant has admitted in sworn testimony to this District Court—that he was indeed lying, and knowingly made false statements to FBI agents in a national security investigation. Those false statements were material, including by raising the question of why he was lying to the FBI, the Vice President, and others.

### IV.   Conclusion

The seriousness of the defendant's offense cannot be called into question, and the Court should reject his attempt to minimize it. While the circumstances of the interview do not present mitigating considerations, assuming the defendant continues to accept responsibility for his

actions, his cooperation and military service continue to justify a sentence at the low end of the guideline range.

                Respectfully submitted,

                ROBERT S. MUELLER, III
                Special Counsel

By:         /s/
                Brandon L. Van Grack
                Zainab N. Ahmad
                Senior Assistant Special Counsels
                Special Counsel's Office
                U.S. Department of Justice
                950 Pennsylvania Avenue NW
                Washington, D.C. 20530
                (202) 616-0800

**Certificate of Service**

      I, Brandon L. Van Grack, certify that I caused to be served a copy of the foregoing by electronic means on counsel of record for defendant Michael T. Flynn on December 14, 2018.

/s/
Brandon L. Van Grack