## IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Criminal Action No. 17-232-EGS** |
| **MICHAEL T. FLYNN,** | |
| **Defendant.** | |

## FLYNN BRIEF IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF BRADY MATERIAL AND FOR AN ORDER TO SHOW CAUSE

Michael T. Flynn files this brief in support of his Motion to Compel Production of Brady Material and for an Order to Show Cause. The motion was filed under seal because of references to information covered by the Protective Order.  However, Mr. Flynn will seasonably move to have it unsealed in the interest of justice and the public confidence in our judicial system.

### I.        Introduction

The government has a crushing 95% or higher conviction rate.[1]  It is virtually impossible to defend successfully when the might and power of the federal government focuses on the destruction of an individual, and the government holds all the cards.  The rule of *Brady v.*

---

[1]  This is one of the reasons, as Judge Rakoff wrote, "*Why Innocent People Plead Guilty*."  Jed S. Rakoff, *Why Innocent People Plead Guilty*, N.Y. REV. OF BOOKS (Nov. 20, 2014), http://www.nybooks.com.mutex.gmu.edu/articles/2014/11/20/why-innocent-people-plead-guilty/ ("How prevalent is the phenomenon of innocent people pleading guilty? The few criminologists who have thus far investigated the phenomenon estimate that the overall rate for convicted felons as a whole is between 2 percent and 8 percent. . . . let us suppose that it is even lower, say, no more than 1 percent. When you recall that, of the 2.2 million Americans in prison, over 2 million are there because of plea bargains, we are then talking about an estimated 20,000 persons, or more, who are in prison for crimes to which they pleaded guilty but did not in fact commit.").

*Maryland*, requiring the government to disclose evidence favorable to the defense, is probably the single most important underpinning of Due Process for a criminal defendant—yet it is often observed only in the breach. *Brady v. Maryland*, 373 U.S. 83 (1963). While prosecutors routinely recite their full knowledge of and compliance with their *Brady* obligations, in truth they often scoff at them and continue to play games to win convictions at all costs. Meanwhile, the defense does not know what the defense does not know.

This problem was demonstrated dramatically in the prosecution of United States Senator Ted Stevens. In fact, it was the prosecutorial misconduct in that case that led this Court to adopt the *Brady* order it now routinely enters in every criminal case.[2] Unfortunately, the government learned nothing from the rebukes in *Stevens*. It has engaged in even more malevolent conduct in the prosecution of Mr. Flynn.

The very reason this Court adopted its *Brady* Order was to impress upon prosecutors their most solemn obligations and to enable the contempt process to address the government's failure to comply, rather than leaving openings for any excuses or being hamstrung to consider criminal contempt charges as it was in *Stevens* by the absence of a preexisting order.[3] Indeed, this Court

---

[2]   Standing Order, Dec. 12, 2017, *U.S. v. Flynn*, No. 17-232-EGS; Order, Feb. 16, 2018, *U.S. v. Flynn*, No. 17-232-EGS.

[3]   "The investigation and prosecution of U.S. Senator Ted Stevens were permeated by the systematic concealment of significant exculpatory evidence which would have independently corroborated Senator Stevens's defense and his testimony, and seriously damaged the testimony and credibility of the government's key witness. Months after the trial, when a new team of prosecutors discovered, in short order, some of the exculpatory information that had been withheld, the Department of Justice ("DOJ") moved to set aside the verdict and to dismiss the indictment with prejudice. New prosecutors were assigned after U.S. District Judge Emmet G. Sullivan held two of the previous prosecutors in contempt for failing to comply with the Court's order to disclose information to Senator Stevens's attorneys and to the Court regarding allegations of prosecutorial misconduct which were made after trial by an FBI agent who had worked on the case." *Report to Hon. Emmet G. Sullivan of Investigation Conducted Pursuant to*

became a model for courts across the country when it adopted its *Brady* Order. While the defense does not yet request consideration of *criminal* contempt charges,[4] the suppression of *Brady* evidence by the government here is ripe for a finding of contempt of this Court's Standing Order, which mandated production of information favorable to the defense—regardless of Mr. Flynn's plea of guilty—from the time the case was transferred to its docket.

The prosecutors in this case have repeatedly failed to produce *Brady* evidence despite (i) the clarity of this Court's Order, (ii) their ethical and constitutional obligations, (iii) specific requests for documents the prosecutors know are exculpatory, and (iv) those requests being made multiple times.  Not only have the prosecutors thumbed their noses at this Court's Order, they have ignored the rules of ethical conduct for the D.C. Bar.  *See Imbler v. Pachtman*, 424 U.S. 409, 427 n. 25 (1976) (stating that "the prosecutor also is bound by the ethics of his office to inform the appropriate authority of after-acquired or other information that casts doubt upon the correctness of the conviction").[5]

## II.    Background

---

the Court's Order dated Apr. 7, 2009 ("Schuelke Report") at 1, *In re Special Proceedings*, No. 09-mc-00198-EGS, (D.D.C. Nov. 14, 2011).

[4]   18 U.S.C. Section 401(3); *see* Schuelke Report at 507.

[5]   *See generally* the D.C. Rules of Prof. Conduct, Rule 3.8(e): The prosecutor in a criminal case shall not . . . (e) Intentionally fail to disclose to the defense, upon request and at a time when use by the defense is reasonably feasible, any evidence or information that the prosecutor knows or reasonably should know *tends to* negate the guilt of the accused or to mitigate the offense, or in connection with sentencing, intentionally fail to disclose to the defense upon request any unprivileged mitigating information known to the prosecutor and not reasonably available to the defense, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal. Significantly, unlike the constitutional rule set out in *Brady v. Maryland*, the applicable ethical rule in the District of Columbia contains—by design—no "materiality" requirement; see *In re Kline*, 113 A.3d 202 (D.C. 2015).

The prosecutors here—at the time including Mr. Van Grack, Ms. Zainab Ahmad, and members of the Special Counsel team under the direction and supervision of Mr. Andrew Weissmann—engaged in conduct even more pernicious than failing to comply with their legal and ethical obligations under *Brady* and the D.C. Rules of Professional Conduct.

They affirmatively suppressed evidence (hiding *Brady* material) that destroyed the credibility of their primary witness, impugned their entire case against Mr. Flynn, while at the same time putting excruciating pressure on him to enter his guilty plea and manipulating or controlling the press to their advantage to extort that plea.  They continued to hide that exculpatory information for months—in direct contravention of this Court's Order—and they continue to suppress exculpatory information to this day.

It is equally concerning that Mr. Weissmann and Ms. Ahmad while at DOJ in 2016-17 were working with Bruce Ohr (then the fourth highest ranking member of DOJ) to feed information from his wife Nellie at FusionGPS and British citizen Christopher Steele to the FBI through his secret back-channel.   This was happening after the FBI terminated Mr. Steele as a paid informant because he was keeping the press informed of his "findings."  FusionGPS, Steele, and Ms. Ohr were all working for the Clinton campaign. In addition, Ms. Ohr worked for the CIA.  The entire operation is further compromised by the fact that the second agent who interviewed Mr. Flynn along with former agent Strzok, was Bruce Ohr's contact with the FBI and conducted numerous debriefings of Mr. Ohr—passing along to the FBI the corrupted and false information from the Ohrs, Steele, and FusionGps  That agent may also have joined Special Counsel's team.

Weissmann and Ahmad were not in the DOJ chain of command to be informed by Mr. Ohr at all.  They had no legitimate reason to be privy to his operation with FusionGPS and

Christopher Steele. Remarkably, despite this involvement, Mr. Weissmann and Ms. Ahmad then went directly to the Special Counsel team, along with Strzok and possibly the second agent, thereby calling into question the entire investigation with their illicit involvement with Ohr and Steele. Closing the circle, Ahmad was co-counsel with Van Grack in the prosecution of Mr. Flynn.  It is imperative the defense obtain the Bruce Ohr 302s and notes—unredacted—and all evidence of this circuitous and illicit operation.

When the prosecutors did produce any information that was exculpatory to the defense, they denied it was such—making it clear to any reasonable attorney that they are unwilling or unable to recognize and identify *Brady* information at all.  This leaves the public, criminal defendants, and courts with no trust whatsoever in the willingness or ability of the government even to identify *Brady* material, much less produce it.

For example, just two weeks ago, Mr. Van Grack, Ms. Curtis, and Ms. Ballantine produced 330 pages of documents with an abject denial the production included any *Brady* material.[6] Yet that production reveals significant *Brady* evidence that we include and discuss in our accompanying Motion (filed under seal because the prosecutors produced it under the Protective Order).

Any reasonable attorney familiar with the allegations against Mr. Flynn would recognize that this evidence contradicts and undermines the prosecutors' "theories" of any wrongdoing. The production of August 16, 2019, also proves that the government has long had this information in its possession, all while the government has made an exhaustive effort to

---

[6] "[T]he government makes this production to you as a courtesy and not because production of this information is required by either *Brady v. Maryland*, 373 U.S. 83 (1963), or the Court's Standing Order dated February 16, 2018." Letter from Mr. Brandon Van Grack to Sidney K. Powell, Aug. 16, 2019.

prosecute Mr. Flynn for three years or more. Indeed, the prosecutors spent countless hours

interrogating Mr. Flynn on multiple subjects and cases, yet they chose not to disclose this until

now.[7]  This conduct demonstrates contempt for the most solemn obligations of these prosecutors

and for this Court's longstanding order.   Nothing will force the government to take its

obligations seriously until individual prosecutors are held to account with findings of contempt

and dismissals of prosecutions.

### III.    The Government's Disregard for Its *Brady* Obligations Is Longstanding.

The government has long demonstrated a strong predisposition to view essentially

everything as "inculpatory."  If something appears on its face to be favorable to the defense, such

as Senator Ted Stevens's note that he wanted to pay his bill to his contractor, the government

will claim it was said "with a wink and a nod," and therefore it showed the defendant's guilt after

all.   This "heads we win, tails we win" perspective infected and corrupted the prosecution of

United States Senator Ted Stevens, four Merrill Lynch executives, and untold others across the

country. *See, e.g.*, *Report to Hon. Emmet G. Sullivan of Investigation Conducted Pursuant to the

Court's Order dated April 7, 2009* ("Schuelke Report"), *In re Special Proceedings*, No. 09-mc-

00198-EGS, (D.D.C. Nov. 14, 2011); *see generally Weary v. Cain*, 136 S.Ct. 1002 (2016);

*United States v. Brown*, 650 F.3d 581, 591 (5th Cir. 2011) (holding "favorable information was

plainly suppressed"); *United States v. Kohring*, 637 F.3d 895 (9th Cir. 2010); *United States v.

Kott*, 423 Fed. Appx. 736 (9th Cir. 2011).

It is well documented that systematic, intentional misconduct has been pervasive in the

Department of Justice. *See* Schuelke Report ("The investigation and prosecution of U.S. Senator

---

[7]   One would think that anyone investigating a person who had served our country for thirty-
three years would first obtain his full government file, which as to Mr. Flynn—who had worked
for James Clapper and then headed the DIA—should and would likely include everything the
DIA possessed.

Ted Stevens were permeated by the systematic concealment of significant exculpatory evidence."). But the government learned nothing from the excoriating action this Court took in *Stevens*. In the related cases of *Kott* and *Kohring*, shortly thereafter, the prosecutors tried again to avoid any consequences for their egregious misconduct—claiming the same violations they committed in *Stevens* were not "material" to those defendants. The Ninth Circuit vehemently disagreed. Judge Betty Fletcher wrote a blistering concurring decision. She called out the government's "reckless disregard" for the rights of the defendants and would have dismissed the indictment because the prosecutors' "unrepentant attitude indicates that no lesser remedial action would be effective." *Kohring*, 637 F.3d at 913. Judge Fletcher wrote that only the extreme remedy of dismissal would "impress upon the government the reprehensible nature of its acts and omissions." *Id*. at 914.

Yet, the government's conduct has only worsened. Its abuse of power has spread and deepened. The recent reports of the Inspector General demonstrate that constitutional, ethical, and legal violations infected the FBI, the Department of Justice and perhaps other agencies.[8] Even if the government deems the evidence it is withholding to be *inculpatory*, it is imperative that new counsel for Mr. Flynn be able to see the allegedly inculpatory information to evaluate the government's allegations against him and to determine how to proceed.[9]

---

[8] *See* U.S. Dept. of Justice, Office of the Inspector General*, A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election*. Redacted Ed. Washington, D.C. (2018), https://www.justice.gov/file/1071991/download.

[9] Mr. Flynn may also have other defenses that prior counsel did not explore. Although it is obvious that the government's discretion to pursue a prosecution is broad, it is not without constraint. *United States v. Armstrong,* 517 U.S. 456, 464 (1996). It has often been repeated that "it is unconstitutional to administer the law with an evil eye and an unequal hand so as practically to make unjust and illegal discrimination between persons in similar circumstances." *United States v. Napper,* 574 F. Supp. 1521, 1523 (D.D.C. 1983) (quoting *Yick Wo v. Hopkins*, 118 U.S. 356, 373-74 (1886)). Selective prosecution requires that a defendant show (1) he was

**IV.     There Are Serious Fourth Amendment Violations.**

In addition, there are egregious Fourth Amendment violations at issue in this case.  Either Mr. Flynn was (i) the subject of a pretextual counter-intelligence investigation apparently resulting from an FBI/CIA operation routed and funded through the Office of Net Assessment in the Department of Defense, using Stefan Halper to smear him as an "agent of Russia;" (ii) part of the documented abuses of the NSA database; (iii) the subject of a criminal leak of classified information regarding his conversations with Ambassador Kislyak; (iv) illegally unmasked; or (v) some combination of the above.

Judge Rosemary Collyer, Chief Judge of the FISA court, has already found serious Fourth Amendment violations by the FBI in areas that likely also involve their actions against Mr. Flynn.  Much of the NSA's activity is in direct violation of the Fourth Amendment. Not only did the last administration—especially from late 2015 to 2016—dramatically increase its use and abuse of "about queries" in the NSA database, which Judge Collyer has noted was "a very serious Fourth Amendment issue," it also expanded the distribution of the illegally obtained information among federal agencies.[10] Judge Collyer determined that former FBI Director Comey gave illegal unsupervised access to raw NSA data to multiple private contractors.  The

---

singled out for prosecution from among others similarly situated, and (2) that his prosecution was motivated by a discriminatory purpose. *Armstrong*, 517 U.S. at 465; *United States v. Palfrey*, 499 F. Supp. 2d 34 (D.D.C. 2007).  It is highly likely this is such a case.  Some of the *Brady* material we identify in our motion speaks directly to these issues.

[10]  *See also* Charlie Savage, *NSA Gets More Latitude to Share Intercepted Communications*, THE N.Y. TIMES (Jan. 12, 2017) (reporting that Attorney General Loretta Lynch signed new rules for the NSA that permitted the agency to share raw intelligence with sixteen other agencies, thereby increasing the likelihood that personal information would be improperly disclosed), https://www.nytimes.com/2017/01/12/us/politics/nsa-gets-more-latitude-to-share-intercepted-communications.html; *See also* Exec. Order No. 12,333, 3 C.F.R. 200 (1982), as amended by Exec. Order No. 13,284, 68 Fed. Reg. 4075 (Jan. 23, 2003).

court also noted that "the improper access granted the [redacted] contractors was apparently in place [redacted] and seems to have been the result of deliberate decision making" including by lawyers.[11, 12]

## V.     This Court Should Issue an Order to Show Cause and Hold Government Counsel in Contempt For Their Disregard of This Court's *Brady* Order.

While the defense is reviewing the massive file counsel does have, it is what we do not have that is crucial. A finding of contempt by this Court will trigger the appointment of new prosecutors—unrelated to the Special Counsel investigation or the U.S. Attorney's Office for the District of Columbia, which is now equally implicated in the suppression of evidence favorable to the defense.[13] As in *Stevens*, counsel expects that in a matter of weeks, new and untainted counsel for the government could find and produce the evidence the current team has hidden.

"Courts have the inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). "A civil contempt action is characterized as remedial in nature, used to obtain compliance with a court order or to compensate for damages sustained as a result from noncompliance." *United States v. Shelton*,

---

[11] *FISC Mem. and Order*, p. 19, 87 (Apr. 26, 2017)
www.dni.gov/files/documents/icotr/51117/2016_Cert_FISC_Memo_Opin_Order_Apr_2017.pdf
(noting that 85% of the queries targeting American citizens were unauthorized and illegal).

[12]    This classified and heavily redacted opinion is one of the documents for which defense counsel requests a security clearance and access.

[13]    "DOJ assigned a new team of prosecutors after District Judge Emmet G. Sullivan held William Welch, the Chief of the Public Integrity Section, Brenda Morris, his Principal Deputy Chief, and another senior DOJ attorney, in contempt on February 13, 2009, for failing to comply with the Court's order to provide certain information to Senator Stevens's attorneys, Williams & Connolly, and to the Court regarding a complaint filed by FBI Agent Chad Joy in December 2008 which "raised serious allegations of prosecutorial and governmental misconduct in the investigation and trial of Senator Stevens." *Stevens*, Mem. Op., Oct. 12, 2010, at 2 (Dkt. No. 421); *see also id.*, Mem. Op. & Order, Dec. 19, 2008 (Dkt. No. 255); *id.*, Order, Dec. 22, 2008 (Dkt. No. 256); *id.*, Order, Jan. 14, 2009 (Dkt. No. 261); *id.*, Op. & Order, Jan. 21, 2009 (Dkt. No. 274); Schuelke Report at 32.

539 F. Supp. 2d 259, 262 (D.D.C. 2008) (citing *Evans v. Williams*, 206 F.3d 1292, 1294-95 (D.C. Cir. 2000)). Indeed, this Court utilized a contempt order against the government to compel it to produce documents responsive to the Court's earlier order. *See In re Contempt Finding in United States v. Stevens*, 744 F. Supp. 2d 253 (D.D.C. 2010) (*aff'd by United States v. Stevens*, 663 F.3d 1270 (D.C. Cir. 2011)).

The "moving party for a civil contempt finding . . . bears the initial burden of demonstrating by clear and convincing evidence that: (1) there was a clear and unambiguous court order in place; (2) that order required certain conduct by [the nonmoving party]; and (3) [the nonmoving party] failed to comply with that order." *United States v. Latney's Funeral Home, Inc.*, 41 F. Supp. 3d 24, 29-30 (D.D.C. 2014). "In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred." *Phillips v. Mabus*, 894 F. Supp. 2d 71, 91 (D.D.C. 2012).

"Once the court determines that the movant has made the above three-part showing, the burden shifts to the [non-moving party] to justify the noncompliance." *Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F. Supp. 2d 35, 38 (D.D.C. 2010). The alleged contemnor must justify its noncompliance "categorically and in detail." *Id.* at 40. The court "need not find that [the] failure to comply with the orders was willful or intentional because the party's intent is irrelevant when making a civil contempt determination." *Latney's Funeral Home, Inc.*, 41 F. Supp. 3d at 30 (citing *SEC v. Bilzerian*, 112 F. Supp. 2d 12, 16 (D.D.C. 2000)).

This Court's Order could not be more clear.  It specifically required the government to: "produce to defendant in a timely manner any evidence in its possession that is favorable to defendant and material either to defendant's guilt or punishment. This government responsibility

includes producing, during plea negotiations, [the same evidence]." Likewise, it is clear that the government has refused to comply with that order, despite requests by the defense that it do so.

## VI.    This Court Should Compel the Production of All *Brady* Material Requested by The Defense.

Under *Brady*, prosecutors have an "affirmative duty to disclose evidence favorable to a defendant." *Kyles v. Whitley*, 514 U.S. 419, 432 (1995). That duty is broad and automatic. It applies equally to "exculpatory and impeachment evidence." *Id.* at 433. Further, it applies "regardless of request" by the defendant. *Ibid.* This obligation exists because of "the special role played by the American prosecutor in the search for truth in criminal trials." *Strickler v. Greene*, 527 U.S. 263, 281 (1999). The prosecutor is not just another advocate. Rather, he or she represents "a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all," and he or she shares its "interest…not that it shall win a case, but that justice shall be done." *Id.* (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). Where the government withholds favorable evidence, the Supreme Court has said, the prosecutor abandons that role and assumes "the role of an architect of a proceeding that does not comport with the standards of justice." *Brady*, 373 U.S. at 87-88; *Kyles*, 514 U.S. at 433.

Moreover, in this District, and under the rules of the D.C. Bar, a prosecutor cannot avoid *Brady* by asserting that information is not "material" to the defense.  The prosecutor is in no position to make that determination.  As this Court knows, "prosecutors are neither neutral…nor prescient, and any such judgment [about whether evidence would affect a trial's outcome]necessarily is speculative on so many matters that simply are unknown or unknowable before trial begins." *United States v. Safavian*, 233 F.R.D. 12, 16 (D.D.C. 2005). Accordingly, this District and others require disclosure of all favorable evidence, "without regard to whether the failure to disclose it likely would affect the outcome of the upcoming trial." *Id.*; see also

*United States v. Acosta*, 357 F. Supp. 2d 1228, 1233 (D. Nev. 2005); *United States v. Carter*, 313 F. Supp. 2d 921, 924-925 (E.D. Wis. 2004); *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1198-1199 (C.D. Cal. 1999).

The government has not complied with its *Brady* obligations. In their belated letters and productions, Mr. Van Grack and his team have admitted they are in possession of evidence favorable to the defense, but they have steadfastly refused to produce the actual evidence. This includes FBI 302s specifically requested, information identified in the Mueller Report, and information specifically exonerating Mr. Flynn.

The government's most stunning suppression of evidence is perhaps the text messages of Peter Srzok and Lisa Page. In July of 2017, (now over two years ago), the Inspector General of the Department of Justice advised Special Counsel of the extreme bias in the now infamous text messages of these two FBI employees. Mr. Van Grack did not produce a single text messages to the defense until March 13, 2018, when he gave them a link to then-publicly available messages.[14]

---

[14] There have been additional belated productions. Each time more text messages are found, produced, or unredacted, there is more evidence of the corruption of those two agents. John Bowden, *FBI Agent in Texts: 'We'll Stop' Trump From Becoming President*, THE HILL (June 14, 2018), https://thehill.com/policy/national-security/392284-fbi-agent-in-texts-well-stop-trump-from-becoming-president; *see also* U.S. Dept. of Justice, Office of the Inspector General*, A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election*. Redacted Ed. Washington, D.C. (2018) (https://www.justice.gov/file/1071991/download). But the situation is even worse. After being notified by the Inspector General of the Department of Justice of the extraordinary text communications between Strzok and Page (more than 50,000 texts) and of their personal relationship, which further compromised them, Special Counsel and DOJ destroyed their cell phones. U.S. Dept. of Justice, Office of the Inspector General*, Report of Investigation: Recovery of Text Messages From Certain FBI Mobile Devices*, Redacted Ed. Washington, D.C. (2018), https://www.justice.gov/file/1071991/download. This is why our Motion also requests a preservation order like the one this Court entered in the *Stevens* case.

Mr. Van Grack and Ms. Ahmad, among other things, did not disclose that FBI Agent Strzok had been fired from the Special Counsel team as its lead agent almost six months earlier because of his relationship with Deputy Director McCabe's Counsel—who had also been on the Special Counsel team—and because of their text messages and conduct. One would think that more than a significant subset of those messages had to have been shared by the Inspector General of the Department of Justice with Special Counsel to warrant such a high-level and immediate personnel change. Indeed, Ms. Page left the Department of Justice because of her conduct, and Agent Strzok was terminated from the FBI because of it.

Likewise, the prosecutors did not produce evidence of Weissmann's and Ahmad's relationship and work with Bruce Ohr on transmitting the corrupt information to the FBI, and the numerous 302s resulting from the interviews of Bruce Ohr by the second agent.

Counsel for Mr. Flynn has repeatedly requested the unredacted messages between Strzok and Page, the unredacted 302s of Bruce Ohr, as well as details of the information the Department and Special Counsel had of their messages prior to Mr. Flynn's plea. Mr. Van Grack has refused to provide it.[15]

## VII.    The Government Must Be Required to Produce the Actual Evidence—Not Meager "Summaries."

The government must be compelled to produce the actual evidence. Its purported "summaries" or references to information it possesses is insufficient. This Court has consistently

---

[15]    Since our initial request to the Department by confidential letter dated June 6, 2019, we have identified additional documents that we specify in our Motion. Now, with the impending and just-released reports of the Inspector General, there may be more. The Report of the Inspector General regarding James Comey's memos and leaks is replete with references to Mr. Flynn, and some information is redacted. There may also be a separate classified section relevant to Mr. Flynn. U.S. Dept. of Justice, Office of the Inspector General, *Report of Investigation of Former Federal Bureau of Investigation Director James Comey's Disclosure of Sensitive Investigative Information and Handling of Certain Memoranda, Oversight and Review Division Report 19-02* (Aug. 29, 2019), https://oig.justice.gov/reports/2019/o1902.pdf.

described prosecutors' *Brady* obligation as an "affirmative duty to disclose *evidence*." *Kyles*, 514 U.S. at 432 (emphasis added). *See Connick v. Thompson*, 131 S. Ct. 1350, 1358 (2011) (crime lab report); *Cone v. Bell*, 129 S. Ct. 1769, 1777 n.10 (2009) ("'statements of'" six witnesses and "'statements contained in official police re-ports'"); *Id*. at 1783-1784 ("documents" and "undisclosed notes"); *Id*. at 1784 (referring to "the quantity and quality of the suppressed evidence"); *Brady*, 373 U.S. at 84 (co-defendant's "extrajudicial statements").

In yet another recent demonstration of egregious government misconduct, the government completely changed the meaning of exculpatory information in a declassified version of a report—by omitting the word "not." This case, involving Adam Lovinger, is related to issues involving Mr. Flynn, as Mr. Lovinger was wrongly charged (and secretly cleared) after blowing the whistle on the fraudulent payments to FBI/CIA/DOD operative Stefan Halper—a central figure in the government's targeting and intelligence abuses of the last several years—including against Mr. Flynn.

Mr. Lovinger had been an analyst at the Pentagon for more than ten years when he was detailed to the White House at then-National Security Advisor Flynn's request. Mr. Lovinger voiced concerns internally regarding the Pentagon's Office of Net Assessment for prioritizing academic reports (one of which was written by Stefan Halper) at the expense of real threat assessments. He was recalled to the Pentagon, accused of mishandling sensitive information, stripped of his security clearance, and suspended. As it turned out, the Naval Criminal Investigative Service conducted a thorough examination of his electronic devices, but "[a]gents found no evidence he leaked to the press, as charged, or that he was a counterintelligence risk."[16]

---

[16] Rowan Scarborough, *EXCLUSIVE: Probe clears pro-Trump Pentagon analyst, report withheld from defense team*, THE WASHINGTON TIMES (Aug. 14, 2019),

Even though the investigation *exonerated* Mr. Lovinger of these charges *a full month before Mr. Lovinger's hearing*, the government did not reveal to Mr. Lovinger's attorneys that this investigation occurred.[17] Even worse, the declassified version of the NCIS left out a crucial "not". It read that the investigation "did yield any classified or sensitive information,"[18] when the truth was the investigation "did *not* yield any classified or sensitive information."[19] The declassified version omitted the word "*not*."[20]

Accordingly, the government must be compelled to produce the actual 302s, text messages, notes, and all actual documents the defense has requested—and we must see them unredacted. Summaries are not evidence. Thus, disclosure via a summary cannot satisfy *Brady*.[21] Even in ideal circumstances, summaries present unnecessary risks of mistake and

---

http://amp.washingtontimes.com/news/2019/aug/14/investigation-clears-analyst-accused-of-leaking-da/ .

[17] *Id.*

[18] "A review of the contents of S/LOVINGER's NIPR and SIPR Joint Service Provider (JSP) accounts was conducted and did not reveal any potential CI concerns. *** An interview of former ONA contractor [redacted] ClIV, did not yield any information of concern. A review of the case by NCISHQ and NCISRA Washington, DC determined all logical investigative steps have been completed and the investigation could be closed. ONA was apprised of the status of the investigation. As this investigation has not disclosed indicators S/LOVINGER leaked sensitive information to members of the media and all logical investigative steps were completed, this case is now closed." Naval Criminal Investigative Service, Records Management Division, Lovinger, Adam, https://tinyurl.com/y6l85hsg.

[19] *Id.* (emphasis added).

[20] *Id.* at p. 2 ("[redacted] conducted a key word search of the hard drive maintained in S/LOVINGER's USG-issued Dell "0ptiPlex 9020" computer tower, which did yield any classified or sensitive information.")

[21] "Evidence" need not be admissible to fall within *Brady*; it is enough that it "could lead to admissible evidence" or "be an effective tool in disciplining witnesses during cross-examination." *United States v. Gil*, 297 F.3d 93, 104 (2d Cir. 2002) (collecting cases). Likewise, favorable evidence is not exempt from disclosure simply because it is in some way a "summary" of facts, e.g., contemporaneous notes of a witness interview. Rather, *Brady* requires the

misrepresentation. They pose the same cognitive-bias problems that arise whenever the government is afforded discretion over what it discloses to defendants. In fact, they compound the problem in several ways. The prosecutor must ask himself not only which items to disclose, but which aspects of those items to describe—adding another filter between favorable evidence and the defendant and amplifying the risk that favorable evidence will be suppressed. Written summaries require characterization of the evidence that a prosecutor—even the most well-intentioned—has no business making. The prosecutor assumes the role not merely of compiler, but of editor.[22] Summaries license the prosecutor to put his or her own spin on evidence. Even "[s]ubtle shifts in tone" can have a significant impact on how a document is interpreted. *United States v. Omni Int'l Corp.*, 634 F. Supp. 1414, 1425 (D. Md. 1986). "Minor modifications today could be become significant alterations tomorrow, based on the judgment of the reviser." *Id*. at 1426.

As this Court noted in *Stevens:* "[t]he use of summaries is an opportunity for mischief and mistake." Tr. of Mot. Hr'g 9, *United States v. Stevens*, No. 08-231 (D.D.C. Apr. 7, 2009) (dismissing indictment against former Senator Ted Stevens for *Brady* violations). Summaries present prosecutors with dangerous opportunities—and temptations—to selectively cull and frame the "favorable" evidence they choose to disclose. Accordingly, the government must be compelled to provide the actual documents, notes, 302s, and A-1 files the defense has requested and any other actual documents, notes, emails, texts or other materials that are exculpatory or might lead to exculpatory evidence.

---

government to give defendants the same raw material that prosecutors possess—whatever its form—rather than reprocessing that material into summaries prepared for the purpose of disclosure.

[22]    The insufficiency and myriad problems of using summaries is the subject of excellent briefing by Amicus in support of the Petition for Writ Of Certiorari in Brown v. United States, available at  https://federalappeals.com/wp-content/uploads/2018/05/Enron_2_OnPetition.pdf.

## VIII.    Conclusion

Sunlight is the best disinfectant, and no court can do justice until it knows the truth.  To restore any measure of trust and credibility in our law enforcement institutions, the government must be held to the highest standards. *See, e.g.*, *United States. v. Harvey*, 791 F.3d 294, 300 (4th Cir. 1986) (citation omitted).  "[C]oncerns for the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government" demand it. *Id*.

For these reasons, Mr. Flynn requests that this Court (i) issue an order to show cause why the government should not be held in contempt because of their violation of this Court's Standing Order and their legal and ethical duties to produce exculpatory and impeachment evidence to the defense; (ii) thereafter find the prosecutors in contempt of this Court's *Brady* order;  (iii) issue an order to them and to the Department of Justice to preserve all evidence, emails, notes, documents, texts, cell phones—including those of the Special Counsel team—and (iv) order the Department of Justice to produce all evidence the defense requests in our accompanying Motion and any and all other *Brady* information in the government's possession.

Dated: August 30, 2019

Respectfully submitted,


/s/ Sidney Powell
Sidney Powell
Molly McCann
**Sidney Powell, P.C**.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com

Admitted *Pro Hac Vice*

/s/ Jesse R. Binnall
Jesse R. Binnall
Lindsay R. McKasson
**Harvey & Binnall, PLLC**
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted *Pro Hac Vice*

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, Florida 32162
Tel: (352) 399-0531
Fax: (352) 240-3489
Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on Friday, August 30, 2019, I filed a copy of the above and foregoing in the office of the Clerk via the CM/ECF system, which will provide notice to all counsel of record.

Jessie K. Liu, U.S. Attorney for the District of Columbia
Brandon L. Van Grack, Special Assistant U.S. Attorney
Deborah Curtis, Assistant U.S. Attorney
Jocelyn Ballantine, Assistant U.S. Attorney
555 4th Street, NEW
Washington, D.C. 20530

/s/ Sidney Powell
Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*