UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **Plaintiff,** | : | Criminal Action |
| | : | No. 17-232 |
| **v.** | : | |
| | : | |
| **MICHAEL FLYNN,** | : | September 10, 2019 |
| | : | 11:00 a.m. |
| | : | |
| | : | |
| **Defendant.** | : | Washington, D.C. |
| | : | |

............................. :

**TRANSCRIPT OF STATUS CALL PROCEEDINGS**
**BEFORE THE HONORABLE EMMET G. SULLIVAN,**
**UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:          **Brandon Lang Van Grack, Assistant**
                                **U.S. Attorney**
                                U.S. DEPARTMENT OF JUSTICE
                                Special Counsel's Office
                                950 Pennsylvania Avenue, NW
                                Washington, DC 20530
                                (202) 616-0800
                                Email: Bvg@usdoj.gov


                                **Deborah A. Curtis, Assistant U.S.**
                                **Attorney**
                                U.S. ATTORNEY'S OFFICE FOR THE
                                DISTRICT OF COLUMBIA
                                555 Fourth Street, NW
                                Washington, DC 20530
                                (202) 252-6920
                                Email: Deborah.curtis@usdoj.gov

APPEARANCES:   Cont.

For the United States:          **Jocelyn S. Ballantine, Assistant**
                                **U.S. Attorney**
                                U.S. ATTORNEY'S OFFICE FOR THE
                                DISTRICT OF COLUMBIA
                                National Security Section
                                555 4th Street NW
                                Washington, DC 20530
                                (202) 252-7252
                                Email:
                                Jocelyn.ballantine2@usdoj.gov


For the Defendant:              **Sidney Powell, Esq.**
                                SIDNEY POWELL, P.C.
                                2911 Turtle Creek Blvd. #300
                                Dallas, TX 75219
                                (214)707-1775

                                **Jesse R. Binnall, Esq.**
                                HARVEY & BINNALL, PLLC
                                717 King Street
                                Suite 300
                                Alexandria, VA 22314
                                (703) 888-1943
                                Email: Jbinnall@harveybinnall.com

Court Reporter:                 **Scott L. Wallace, RDR, CRR**
                                Official Court Reporter
                                Room 6503, U.S. Courthouse
                                Washington, D.C. 20001
                                202.354.3196
                                scottlyn01@aol.com


Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

<u>**MORNING SESSION, SEPTEMBER 10, 2019**</u>

(11:06 a.m.)

THE COURTROOM CLERK:  Your Honor, this is Criminal Case 17-232, *United States of America versus Michael Flynn*.  Will parties please come forward to this lectern and identify yourselves for the record.

MS. POWELL:  Sidney Powell, Jesse Binnall, Molly McCann, and Mr. Flynn are present.

THE COURT:  All right.  Good morning.  Good morning to everyone.

MR. VAN GRACK:  Good morning, Your Honor.  Brandon Van Grack, Deborah Curtis, and Jocelyn Ballantine on behalf of the government.

THE COURT:  Good morning, everyone.  All right.

Just relax.  Make yourselves comfortable.  Let me talk for a minute or so, maybe more than a minute.  So, just to put some things on the record, so before the Court is Mr. Flynn's motion to compel production of *Brady* material and for an order to show cause, ECF Number 109.  The Court on its own scheduled this status conference to set a briefing schedule and schedule a date for the motion hearing.  And today the Court intends to schedule Mr. Flynn's sentencing as well, but we'll talk about that.  Don't get alarmed.

On June 24th the parties appeared before the Court for a status conferences.  The Court directed the parties to file, by

1   no later than August 30th, a joint status report to update the

2   Court on Mr. Flynn's cooperation.  That's the Court's minute

3   order of June 24th.

4        On August the 21st the Court ordered the parties to advise

5   the Court of the following topics in the joint status report:

6   One, the status of Mr. Flynn's cooperation; two, whether the case

7   is ready for sentencing; three, suggested dates for the

8   sentencing hearing, if appropriate; and four, whether there are

9   any issues that would require the Court's resolution prior to

10  Mr. Flynn's sentencing.

11       On August 30th the parties filled out the joint status

12  report.  That's ECF Number 107.  The parties advised the Court

13  that Mr. Flynn's cooperation has ended.  The parties disagreed on

14  whether the case is ready for sentencing.  Mr. Flynn stated that

15  the case is not ready for sentencing because his new counsel

16  recently received the entire file from his former counsel, and

17  his new counsel needs additional time within which to complete

18  the review of the entire client file.  Mr. Flynn requested an

19  additional 90 days before filing another status report.  He did

20  not suggest any dates for sentencing.

21       Mr. Flynn advised the Court that, "There are serious

22  issues to be addressed by the Court before the defense can

23  proceed further," and that's the joint status report, ECF Number

24  107 at 2.  He stated that the government's denial of the defense

25  counsel's request for security clearances requires the Court's

1    intervention.  Mr. Flynn also states that the government has

2    failed to produce certain *Brady* and classified material,

3    including the original or first draft of the FBI 302s of the

4    interview of Mr. Flynn on January the 24th and the 1-A file.

5         Mr. Flynn informed the Court that he intended to file

6    the appropriate motions to address those issues.  The government

7    stated that the case is ready for sentencing, and the government

8    proposed a sentencing hearing in October, and -- between October

9    21st and 23rd or November the 1st and 15th.  The government

10   advised the Court that it was not aware of any issues that

11   require the Court's resolution prior to sentencing.

12        The government further stated that it's informed defense

13   counsel of the procedures that govern discovery and disclosure of

14   classified national security information under the Classified

15   Information Procedures Act.  That's 18 U.S. Code F-3, CIPA, and

16   CIPA Section 4.  And the government also stated that Mr. Flynn

17   and his cleared counsel in a criminal prosecution may obtain

18   access to classified information from the U.S. government when

19   such information is deemed relevant and helpful to the defense,

20   relying upon this circuit's opinion in *United States v. Yunis*,

21   Y-U-N-I-S, 867 F.2d 617.

22        The government maintains that it's fulfilled its

23   obligations under *Brady v. Maryland*, 373 U.S. 83, and the Court's

24   standing *Brady* order dated February the 16th, 2018.

25        And let me just say -- and I think I said this at the last

1   hearing -- I issue *Brady* -- my standing *Brady* order in every

2   case.  I was not the judge who took the plea, but even after the

3   plea was entered, I issued a *Brady* order because that's what I

4   do.  I issue *Brady* orders in every case.  And it wasn't because I

5   thought anything, suggested anything, knew anything, it's just

6   because that's what I do, and no one should read anything else

7   into it.

8        The government stated that it has not provided any

9   classified information to Mr. Flynn or defense counsel, and that

10  the government is not aware of any classified information that

11  requires disclosure to Mr. Flynn and defense counsel pursuant to

12  *Brady* or the Court's standing *Brady* order.

13       On August 30th the Court, on its own, scheduled a status

14  conference for September the 10th.

15       On August 30th, Mr. Flynn filed a motion to compel

16  production of *Brady* material and for an order to show cause, and

17  that's ECF Number 109.

18       On September the 5th, the Court held a sealed *ex parte*

19  hearing with Mr. Flynn and defense counsel to consider Mr.

20  Flynn's request for the Court's intervention on counsel's request

21  for security clearances.  See the joint status report, ECF Number

22  107, pages 2 to 3.

23       In that regard, a court may conduct an *ex parte* hearing to

24  determine the need for a security clearance.  And that

25  principle's articulated in the case *United States versus Musa*,

1    M-U-S-A, 833 F.Supp 752.  It's an Eastern District of Missouri

2    case decided in 1993.

3            Following that hearing, the Court entered on the public

4    docket a minute entry indicating that the *ex parte* hearing had

5    been held, the reason for the hearing, and the legal authority

6    for holding an *ex parte* hearing on this topic.

7            Mr. Flynn stated in the joint status report that the

8    government -- and I quote -- "The government continues to deny

9    his requests for security clearances.  Mr. Flynn's attempts to

10   resolve that issue with the government have come to a dead-end,

11   thus requiring the intervention of this Court."

12           The Court advised Mr. Flynn and defense counsel that it

13   intends to resolve Mr. Flynn's motion to compel production of

14   *Brady* material and classified material before addressing --

15   strike that.

16           The Court advised Mr. Flynn and defense counsel that it

17   intends to resolve Mr. Flynn's motion to compel production of

18   *Brady* material before addressing any request for the Court's

19   intervention regarding security clearances for Mr. Flynn's

20   counsel.

21           On September the 5th, the Court entered a minute order

22   stating that the Court will set a briefing schedule and a motions

23   hearing date at today's hearing.  The Court will apply the

24   standards set forth in *United States v. Yunis* to resolve

25   Mr. Flynn's motion to compel production of *Brady* material.

1    Now, the Court understands that Mr. Flynn seeks certain

2    classified information, and that Mr. Flynn argues that the

3    government has failed to produce such information.  The

4    government maintains that it's not aware of any classified

5    information that requires disclosure to Mr. Flynn and defense

6    counsel pursuant to *Brady v. Maryland* or the Court's standing

7    *Brady* order.

8        And let me just refer to the plea agreement that says at

9    page 6 under Trial Rights, sentence 2:

10        "Your client" -- Mr. Flynn -- "agrees to forego the right

11    to any further discovery or disclosures of information not

12    already provided at the time of the entry of your client's guilty

13    plea."

14        And the Court emphasizes that's an agreement between the

15    parties.  This Court -- had this Court even taken the plea --

16    actually, the Court did take a plea, it took the second plea --

17    but had the Court taken the first plea, that provision is not

18    binding on the Court.  That's an agreement between the parties.

19        Notwithstanding that information in the plea agreement or

20    any statement therein or subsequent thereto that suggests

21    Mr. Flynn has waived his right to further discovery, the

22    government must comply with the Court's standing *Brady* order of

23    February the 16th, 2018, or at some point demonstrate why it

24    should not be required to comply with that.

25        To resolve -- and I'm not suggesting that the government

1    has not complied with it at all.  Don't read anything into it.

2    I'm just letting everyone know what the Court's position is,

3    because the Court's position supersedes any agreement between the

4    parties, and the Court's standing order controls.

5         To resolve Mr. Flynn's motion to compel production of

6    *Brady* material, the Court will follow the procedure articulated

7    in the *Yunis* decision, the leading case construing whether courts

8    can permit the government to withhold evidence from discovery

9    under CIPA.

10        In *Yunis*, the D.C. Circuit made clear that, "Classified

11   information is not discoverable on a mere showing of theoretical

12   relevance in the face of the government's classified information

13   privilege," and that's at page 623.

14        The D.C. Circuit in *Yunis* looked to three factors to

15   determine whether classified information should be disclosed.

16   First, "The Court must assess whether the information crosses the

17   low hurdle of relevance."  That's at 623.

18        Next, the Court must determine whether, "the assertion of

19   privilege by the government is at least a colorable one."

20        And, finally, because classified information is not

21   discoverable on a mere showing of theoretical relevance, the

22   threshold for discovery in this context further requires that the

23   information is at least "helpful to the defense of an accused,"

24   citing the longstanding Supreme Court decision in *Roviaro versus*

25   *United States*, 353 U.S. 60.

1     Now, the information in this case charges Mr. Flynn with

2 one count of making a false statement in violation of 18 U.S.

3 Code 1001(a)(2).  Mr. Flynn has twice pled guilty to this charge.

4 First, on December 1, 2017 he pled guilty before my colleague,

5 Judge Rudolph Contreras.  In that regard, see the minute entry of

6 December 1, 2017, the plea agreement -- that's ECF Number 3 --

7 the statement of the offense, ECF Number 4.

8     On December 18, 2018, the Court accepted Mr. Flynn's plea

9 of guilty after a second colloquy.  And the Court at that time

10 afforded him an opportunity and his attorneys an opportunity,

11 because of matters set forth in the sentencing memorandum that

12 the Court addressed fully on the record, the Court afforded

13 Mr. Flynn and his attorneys an opportunity to seek to withdraw

14 the plea at that point if they wanted to, and the Court was

15 informed that he stood by his plea of guilty and accepted

16 responsibility for the criminal offense.

17     Now, the Court therefore anticipates that assuming there

18 are such classified materials, the analysis will focus on whether

19 they are relevant and helpful with regard to Mr. Flynn's

20 sentencing.

21     Now, assuming the government says there are no materials,

22 then the parties need to focus on what are the next steps, if

23 any, that the Court needs to embark on, but that's -- that's for

24 the future.

25     The Court's minute order of September the 5th stated it

1    would set a briefing schedule and a date for the motion hearing.

2    The Court is inclined to schedule the motion hearing on

3    Mr. Flynn's *Brady* motion on October 31st at 2 p.m.

4         Now, I want to hear from government counsel first.  The

5    Court would like to know the government's proposal for a

6    suggested deadline for filing its opposition brief and whether

7    the government would like to put anything on the record at this

8    time.  The Court will then hear from defense counsel.  The Court

9    would like to know from Mr. Flynn's -- from defense counsel what

10   Mr. Flynn's proposal is for a suggested deadline for filing his

11   reply brief, and whether the defendant would like to put

12   anything -- through counsel would like to put anything on the

13   record at this time.

14        The Court is looking at -- and I think there needs to be a

15   tentative or a proposed trial [sic] date.  And what the Court is

16   inclined to do is schedule the -- schedule Mr. Flynn's sentencing

17   for December the 18th at 11 a.m. in this courtroom.

18        So that's all I have to say right now.  I really feel

19   strongly about having a targeted sentencing date to bring some

20   finality to this case.  And it's interesting that December 18th

21   was the original sentencing date a year ago, so it's time to

22   bring some finality to this case.

23        I'll hear from government counsel first.

24        MR. VAN GRACK:  With respect to the briefing schedule, the

25   government thinks two weeks would be sufficient for it to file

1    its opposition.  To the extent that affects the hearing date that

2    the Court just proposed, the government is fine with moving that

3    up accordingly.

4         And then with respect to the October -- excuse me, the

5    December 18th date for sentencing, that date works for the

6    government.  And the government agrees that it would be

7    appropriate to schedule a sentencing date and to use that as a

8    vehicle for, you know, progressing with --

9         THE COURT:  Right.  I mean, it may -- it may be changed, I

10   don't know, but there should be -- it just shouldn't be held in

11   abeyance at this point, so -- and it may be changed, Ms. Powell.

12   So that's why I said "don't get alarmed," but there should be a

13   targeted sentencing date.

14        Thank you, Counsel.  Anything else you want to put on the

15   record?

16        MR. VAN GRACK:  Not at this time, Your Honor.

17        THE COURT:  All right.  Okay.

18        Ms. Powell, good morning.  How are you?

19        MS. POWELL:  Good morning.  Good, thank you.

20        THE COURT:  Good.

21        MS. POWELL:  There is far more at stake here than

22   sentencing.  As new counsel, we have an ethical obligation to

23   review everything that has happened in the case or not happened,

24   as the case may be, and that is why we filed the motion to compel

25   production of *Brady* material.  There have been stunning failures

1    to produce *Brady* in this case, going back as far as July 2017

2    when the government had the Page/Strzok text messages -- and

3    special counsel was informed of that -- sufficient to cause the

4    removal of Mr. Strzok and Ms. Page, yet not a single Page/Strzok

5    text message was produced to the defense until --

6         THE COURT:  Do you contend that that information is

7    exculpatory insofar as Mr. Flynn is concerned?

8         MS. POWELL:  Yes.

9         THE COURT:  All right.  I'm tempted to ask you:  How so?

10        MS. POWELL:  Well, we can address that more in our reply

11   brief, but obviously --

12        THE COURT:  All right.  That's fine.  That's fine.  All

13   right.

14        MS. POWELL:  Obviously, those agents were completely

15   impaired by bias.  That's been documented by the report of the

16   Inspector General and sufficient enough to require them to be

17   fired from the Special Counsel's team and, ultimately, from the

18   FBI and the Department of Justice --

19        THE COURT:  All right.

20        MS. POWELL:  -- so it's a huge factor.

21        We've also learned that there was a letter dated January

22   30th, 2017, or an internal memo from the Department of Justice,

23   that completely exonerates Mr. Flynn of being an agent of Russia,

24   and that document has not been produced to us yet.

25        THE COURT:  All right.  You're going to address the

1    relevance to that in your reply, right?

2           MS. POWELL:  Yes.

3           THE COURT:  All right.  Okay.  Because he's not pled

4    guilty to --

5           MS. POWELL:  -- but as new counsel --

6           THE COURT:  -- any offense in this --

7           MS. POWELL:  -- our ethical obligation requires us to go

8    back and look at everything.

9           THE COURT:  All right.

10          MS. POWELL:  So there is a lot more to this case than

11   proceeding to sentencing.  We have --

12          THE COURT:  Keep in mind what Yunis says.  Yunis says it

13   has to be more than just theoretical relevance.

14          MS. POWELL:  Oh, yes, sir.

15          THE COURT:  Right.

16          MS. POWELL:  Yes.  I think exonerating Mr. Flynn of being

17   an agent of Russia on January 30th, 2017 -- and just from the

18   news last night we learned that there's a memo or something from

19   Mr. McCabe also saying there's no Logan Act violation for

20   Mr. Flynn as of February 8th.  So that means that Mr. Comey lied

21   to the face of the president, among other things, on February 14,

22   just a few days later, and then started a whole obstruction of

23   justice narrative based on what was said about Mr. Flynn in that

24   meeting with the president.

25          THE COURT:  I didn't see the news last night, but there's

1    never been a Logan Act charge in this case either.

2        MS. POWELL:  Oh, no, but Mr. Van Grack stood here on

3    December 18th last year and implied to the Court that was one of

4    his, you know, possibilities for liability, when Mr. McCabe had

5    ruled it out in January/February 2017.

6        THE COURT:  So I guess your argument would be that, in

7    that regard, at sentencing the Court should not consider that a

8    benefit to Mr. Flynn because there would have been no factual or

9    legal basis for that charge?

10        MS. POWELL:  No.  I think the point is going to be that

11    there is egregious government misconduct and long-time

12    suppression of crucial *Brady* material that should have been

13    provided to the defense before there ever was a plea.  But

14    Mr. Van Grack told counsel that he didn't have an ethical or

15    legal obligation to produce anything pre-plea, and then post-plea

16    he's maintained that he has no obligation to produce it because

17    he pled guilty.

18        So I'm trying to figure out how the government conceives

19    of its *Brady* obligation in this case, because it seems to be that

20    it doesn't have one.  And it views evidence that is exculpatory

21    as inculpatory -- as this Court knows from the *Stevens* case --

22    more often than not.  So not just the February -- January 30th

23    memo exonerating him of being an agent of Russia, there's one

24    thing after the other that we can document that exonerates

25    Mr. Flynn in any number of ways.

1    THE COURT:  Well, you say exonerates him, but -- so you're

2  suggesting that a basis exists to file a motion to withdraw his

3  plea?  Is that what you're -- is this what -- is that where this

4  is headed towards?

5    MS. POWELL:  I can't say right now exactly where it's

6  headed, but I don't think it's going to be a motion to withdraw

7  the plea.

8    THE COURT:  All right.  But just -- but exonerates,

9  though, that's --

10    MS. POWELL:  Yes, exonerate.

11    THE COURT:  To show what, that he's innocent of this

12  charge?

13    MS. POWELL:  To show that the entire prosecution should be

14  dismissed for egregious government misconduct and long-time

15  suppression of *Brady* material.

16    THE COURT:  I follow you.  All right.  Well, the

17  government, I'm sure, will address its *Brady* obligation -- I have

18  no doubt the government will -- and its obligations under the

19  Court's standing order.

20    And just as I've not pestered you to tell me about your

21  reply, I'm not going to do that to the government either.  We'll

22  anxiously await the government's response and your reply.  I

23  think that's a fair way to proceed.

24    I didn't mean to cut you off.  Anything else you want to

25  place on the record?

1      MS. POWELL:  Yes.

2      THE COURT:  Sure.  Go ahead.

3      MS. POWELL:  For the record, *Yunis* only applies to

4  classified information, and much of the information we're

5  requesting is *Brady*.  It's not classified.  For example, we're

6  asking for the full documents, as opposed to summaries of

7  things --

8      THE COURT:  You're referring to the 302s in that regard,

9  right?

10      MS. POWELL:  The 302s and the notes underlying the 302s.

11  We've already, for example, identified material differences

12  between the agents' notes from their interviews of Mr. Flynn on

13  the 24th and the 302 they produced.  We're missing the original

14  302 by Mr. Pientka, which according to FBI rules had to have been

15  written within five days of their interview of Mr. Flynn.  That

16  has never been produced to this Court.  They say they don't have

17  it, but it would certainly be in the FBI's computer system.

18  Things don't disappear like that.  So that still needs to be

19  produced.

20      And Sally Yates was obviously briefed on something akin to

21  that, if not given a copy of it on the 24th or the 25th, before

22  she went to the White House to talk to White House counsel.  So

23  that information is out there.  It has not been produced.

24      But *Yunis* only applies to the information that is

25  classified, not only the summaries, but we need the materials

1    unredacted.

2         THE COURT:  And relevant, though, and relevant, more than

3    theoretical relevance, demonstrated relevance to --

4         MS. POWELL:  With respect to classified information, yes.

5         THE COURT:  Right.

6         MS. POWELL:  But in terms of the information they're still

7    suppressing that's not classified, *Yunis* does not apply at all.

8    Only *Brady* and this Court's standing order apply to that.

9         THE COURT:  All right.

10        MS. POWELL:  And I might point out also that the *Brady*

11   obligation continues even after somebody's been convicted.

12        THE COURT:  And it should continue, even if a judge

13   doesn't enter a *Brady* order --

14        MS. POWELL:  Exactly.

15        THE COURT:  -- because *Brady* is a Supreme Court

16   precedence.

17        MS. POWELL:  Yes.  Yes, exactly.

18        THE COURT:  But I want both sides to focus on next steps.

19   I mean, I'm going to -- I'm making an assumption, I think an

20   informed assumption, that the government's going to say, "There's

21   no classified and we've complied with our *Brady*."  That's an

22   assumption, and --

23        MS. POWELL:  Oh, yes, that's what they always say --

24        THE COURT:  -- then --

25        MS. POWELL:  -- But yet they just produced a few weeks ago

1    additional *Brady* information, including that Mr. Flynn had passed

2    a polygraph test in April of 2016 while they're still claiming

3    he's an agent of Russia.  There's possibly evidence of a

4    pre-existing investigation that we don't know about that would

5    either had to have been pretextual or they got information

6    illegally using the NSA database, as we know as documented by

7    Judge Collyer's decision.  That's another thing that's classified

8    that we need to see.

9         THE COURT:  The polygraph examination, I'll await your

10   reply, but that -- does that pertain to the underlying offense to

11   which he pled guilty?

12        MS. POWELL:  It pertains to their whole notion that he was

13   any sort of agent of any foreign country.  And they also reported

14   in that that he had briefed the DIA before his meeting with the

15   Turkish officials in New York, that they then wanted to claim was

16   a FARA violation and goes to some of the statements in the

17   Statement of Offense.

18        So there is just a plethora of information out there that

19   we know we've got little tidbits of that we need the actual

20   documents to support and the notes to support.

21        THE COURT:  You know, it's interesting, the arguments that

22   you're making, because at the time of sentencing it's not unusual

23   for judges to say, "All right, this matter pertains to a plea of

24   guilty entered whatever date or the offense of whatever," and

25   trying to determine what a fair and reasonable sentence is, the

1    Court, this Court, will often, if not every time, look at what

2    quote-unquote, benefits the defendant has already received.  And

3    it's significant.  And the Court didn't lose focus on this fact

4    that for the last sentencing hearing that didn't result in a

5    sentencing, but the Court was probably in a position to say

6    there's already been some benefits conferred on the defendant

7    because, for instance, he was not charged with a FARA violation.

8         So, if you're saying there was no factual predicate for

9    that FARA violation, then it should not have been mentioned at

10   all as a potential, quote-unquote, benefit, because that's

11   something that the Court will take into consideration.

12        MS. POWELL:  Exactly.

13        THE COURT:  So that's -- that's a good point.

14        MS. POWELL:  Among other things, yes.

15        THE COURT:  All right.  So I'll wait for your reply to

16   find out what the other things are, unless you want to tell me

17   today.

18        MS. POWELL:  Oh, I could go through a long list, but --

19        THE COURT:  It's up to you.

20        MS. POWELL:  -- we should -- we should probably wait for

21   the reply brief.

22        THE COURT:  All right.

23        MS. POWELL:  I can tell the Court that, you know, there is

24   also the -- the government has known since November 15 of 2017

25   that Mr. Comey set up the ambush interview of Mr. Flynn but

1  didn't disclose that until four days before the sentencing

2  hearing in this Court, and only then because Mr. Comey had

3  already talked about it, bragged about it on national television.

4  So there is just --

5      THE COURT:  Let's assume that's true -- and I don't -- I

6  have no reason to doubt what you're saying.  So I guess the

7  question would be:  So what?  I mean, this was raised by previous

8  counsel in their motion that, essentially, Mr. Flynn had been

9  ambushed, and that's when I started thinking, look, I'm not going

10  to force you to stand here for sentencing.  If you want to try

11  and withdraw it, I'll give you ample opportunity to file a

12  motion.

13      MS. POWELL:  Only with respect to the sentencing hearing

14  itself then.  You know, there was so much water under the bridge

15  by that time, one of my points is, there never would have been a

16  plea to begin with if the government had met its *Brady* obligation

17  disclosing what it knew before Mr. Flynn entered a plea and,

18  frankly, before he even made a proffer.

19      So they had a lot of information that they didn't

20  disclose.  They also have knowledge of a letter from the British

21  Embassy that completely discredits Christopher Steele and undoes

22  the whole Steele dossier debacle.

23      THE COURT:  All right.

24      MS. POWELL:  And I believe I mentioned we've also

25  identified already material differences in the agents' notes and

1    the 302s.

2          THE COURT:  Yes, you did.

3          MS. POWELL:  Yes.  All right.

4          THE COURT:  All right.

5          MS. POWELL:  Thank you.

6          THE COURT:  Thank you, Ms. Powell.

7          Anything further, Counsel?

8          MR. VAN GRACK:  Yes, Your Honor.  Certainly the government

9    intends to respond to all of the allegations just made in the

10   allegations in the motion, but I'd like to make a few points

11   since they were just raised at this particular hearing --

12         THE COURT:  Sure.  No, no.  Sure.

13         MR. VAN GRACK:  -- which is, first and foremost, the

14   Court's standing *Brady* order and *Brady* itself have been the

15   guidelines that the government has pursued, and the government

16   has never made an indication to the Court or defense counsel that

17   it believes its obligations under *Brady* have been waived in any

18   way, shape or form.  And the Court didn't imply that, but I'd

19   like to state that on the record.

20         Second, long list of documents and sort of representations

21   in terms of omissions and *Brady* violations, and this will be

22   addressed in our opposition, but I would like to address a few of

23   them.

24         THE COURT:  Sure.

25         MR. VAN GRACK:  In particular, the first one that defense

1   counsel raised was that the defendant was unaware of the text

2   messages between Agent Strzok and Lisa Page that were made

3   available or disclosed in 2017.  Two points on that.  First,

4   before the defendant signed his guilty plea, before his first

5   plea of guilty before Judge Contreras, the government had

6   notified the defendant and his counsel that such communications

7   existed in which the agent, Peter Strzok, had showed a preference

8   for one of the president's -- candidates for president.  So they

9   were aware that communications existed before the public was

10  aware of them and signed the first plea agreement and took a plea

11  before Judge Contreras.

12          Then, before the second time he pled guilty before this

13  Court, the defendant was made aware of the remaining text

14  messages that existed, and the government provided text messages

15  that were not available to the public that the government

16  believed were relevant to this particular proceeding.  That's the

17  first point.

18          Second point:  The allegations made with respect to the

19  Logan Act and being an agent of Russia.  The government has not

20  alleged in any filings in this Court or before the Court that the

21  defendant is an agent of Russia.  That is not part of this case.

22  That is not part of the act that he has pled guilty to.  It was

23  lying to the FBI about particular communications involving

24  Russia, not being an agent of Russia.

25          With respect to being an agent -- with respect to FARA,

1   again, it was false statements that the defendant made in his

2   FARA filings with respect to the government of Turkey.  The Court

3   specifically asked at the sentencing hearing about the Logan Act,

4   and the government was very clear that it did not -- even if the

5   elements had been met and the government believed that they

6   likely may have been met, the government at no point, ultimately,

7   in terms of the benefit of the bargain, had considered the Logan

8   Act as part of the benefit of the bargain.

9        With respect to the 302s, the interview reports, as the

10  government has made clear to defense counsel multiple times and

11  made clear in the status report that it filed with this Court, it

12  has provided all drafts of that interview report of which it is

13  in possession, and that's the same claim we made before.  It's

14  the same claim we made today.  And the defendant was in

15  possession of all of the drafts of that interview report before

16  he pled guilty in this Court a second time.

17       THE COURT:  I think, Counsel, not to interrupt you, but I

18  think Ms. Powell also made reference to notes.

19       MR. VAN GRACK:  And -- thank you, Your Honor.  And the

20  government has provided the interview notes of those agents to

21  defense counsel, and they had possession of those and were aware

22  of those before he pled guilty a second time.

23       There was also a reference to the summary provided with

24  respect to an interview of Director James Comey, and two quick

25  points on that, which is, when the government provided the

1    information to the Court and to defense counsel, the government

2    believes the first comment that the Court made on the bench on

3    that day on December 18th, 2018, was to bring that disclosure to

4    the attention of defense counsel and ask whether they had any

5    concerns or any issues with that disclosure.  And the defendant

6    and his counsel indicated that they did not.  It's the same

7    document that defense counsel now indicates is a *Brady* violation.

8         THE COURT:  Was that -- was that -- I'm just trying to jar

9    my recollection.  Was that the document that was filed "sealed"

10   that morning?

11        MR. VAN GRACK:  That's correct, Your Honor.

12        THE COURT:  All right.  I recall that.  All right.

13        MR. VAN GRACK:  And the last point --

14        THE COURT:  And I disclosed that, didn't I, made it a

15   public record?

16        MR. VAN GRACK:  Public record.

17        THE COURT:  Right.

18        MR. VAN GRACK:  But what I just represented is on the

19   public record.  It's probably page 2 or 3 of the sentencing

20   hearing transcript from December 18, 2018.

21        THE COURT:  Right.

22        MR. VAN GRACK:  And the final point I'll raise is, all of

23   the documents and references and summaries and drafts that

24   defense counsel has just discussed with this Court were part of

25   the government's disclosures, the 22,000 pages of documents that

1    the government provided and that defendant and his counsel had

2    before he pled guilty before this Court a second time on December

3    18th, 2018.

4         THE COURT:  All right.  Thank you very much.  I have to

5    ask you:  Does the government stand by its sentencing

6    recommendation, or is that something that the Court should just

7    wait to receive in writing?

8         MR. VAN GRACK:  It should -- it is -- in terms of the

9    government's position at sentencing, it's something that the

10   government intends to refile, the appropriate paperwork at that

11   time --

12        THE COURT:  All right.

13        MR. VAN GRACK:  -- but not the decision to proceed to

14   sentencing.

15        THE COURT:  Right.  So maybe it's -- maybe it's

16   appropriate -- and I need to huddle with my staff for a second.

17   Maybe it's appropriate for the Court to -- since the Court has

18   put in place a targeted sentencing date that may change, is it

19   appropriate or not to put in place a briefing schedule for

20   supplemental sentencing materials for both sides?

21        MR. VAN GRACK:  Yes, Your Honor, that would be

22   appropriate.

23        THE COURT:  What -- let me just huddle with my staff just

24   for a second.  Give me your suggestion for a timeline, and I want

25   Ms. Powell's suggestion, too, before I huddle with my staff.

1   See, if the motions hearing --

2        MR. VAN GRACK:  The 1st of December would be an

3   appropriate time.

4        THE COURT:  All right.

5        MR. VAN GRACK:  I think that's --

6        THE COURT:  I think that's right.  All right.  Maybe the

7   1st of December, and maybe --

8        MR. VAN GRACK:  Excuse me.  That's a Sunday.  December

9   2nd, Monday, would be appropriate.

10        THE COURT:  All right.  And maybe ten days after that,

11   Ms. Powell?  And, again, these are just proposed dates.  They may

12   change, but would that be fair or not, ten days thereafter?

13        MS. POWELL:  That's fine, Your Honor.

14        THE COURT:  All right.

15        MS. POWELL:  Although, of course, we oppose setting any

16   sentencing date at this point.

17        THE COURT:  I know you do.  Still, we just need to have

18   these targeted dates.  I think that's the proper way to proceed.

19   Let me just huddle with my staff just for one second.

20        (Brief pause in proceedings.)

21        THE COURT:  All right.  Ms. Powell, I didn't put in -- I

22   didn't put on the record a date for your reply.  The government

23   has suggested, if I recall correctly, two weeks from today.

24   That's the 24th.  I would propose to give defense counsel two

25   weeks also, until the 8th.  Yom Kippur is coming up.  I don't

1    want to interfere with anyone's religious observations either, so

2    if that's not a good date -- I don't know anyone's religion, but

3    I'm also always sensitive to imposing deadlines on religious

4    observation dates.

5         MS. POWELL:  Certainly.  I think the reply brief is going

6    to be extremely important.  If we might have three weeks to do

7    that, that would be helpful.

8         THE COURT:  Sure, that's fine.  That would be the 15th.

9    That's fine.  I don't have any problems with that.

10        MS. POWELL:  Okay.  Thank you very much.

11        THE COURT:  And let's just say noon for all the filings

12   going forward, noon on any date.  Even if I omit saying that,

13   noon is better than receiving something at 11:30 at night.

14        So you don't have to respond to government's -- if you

15   want to, I'll certainly give you an opportunity, if you want to

16   say something.

17        MS. POWELL:  Yes.

18        THE COURT:  All right.

19        MS. POWELL:  For one thing, I keep noticing that the

20   government talks about not having the original 302 in their

21   possession.  Was it destroyed?  Because there had to have been

22   one under FBI regulations and other information that I've

23   received, that there was an original 302 written by Mr. Pientka.

24   So it would have to be in the FBI's computer system.  It can be

25   retrieved even if it had been destroyed, so that is a point we

1    will be discussing further.

2         THE COURT:  The government, I'm sure, will address that.

3    I don't want to focus on any other cases before the Court, but

4    you know, sometimes throughout the best efforts, notwithstanding

5    the best efforts of everyone, things happen and documents are

6    lost.  I mean, it just happens, and so -- but we'll wait for the

7    government's submission.

8         MS. POWELL:  And, additionally, with respect to Mr. Comey

9    and the production of his information that was produced four days

10   before the sentencing, the train was already pretty far down the

11   tracks at that time.  The serious *Brady* violation is not

12   producing it to begin with when it was made known.  In fact, if

13   they had looked at everything and thought of everything in the

14   right way, they never would have brought this case in the first

15   place, but they were too busy working on what they wanted to

16   accomplish by convicting Mr. Flynn than they were in seeking the

17   truth or seeking justice, and I think that's going to be apparent

18   when we get the *Brady* information we've requested.

19        THE COURT:  All right.  Thank you, Ms. Powell.

20        Last word.

21        MR. VAN GRACK:  Yes.

22        THE COURT:  No, not the last word, but the next word.

23        MR. VAN GRACK:  Not the last word, Your Honor.  One matter

24   of housekeeping, which is defendant had filed their motion to

25   compel under seal because some of the information was reflective

1    of information we had provided in our protective order.  That was

2    a sealing that was consistent with the protective order.

3            The government has now reviewed that filing and made

4    redactions that we believe would allow the document to be filed

5    publically.  We have not previously provided this to defense

6    counsel, and so they have not reviewed it, but for the parties

7    and for the Court, there's only redactions to a name -- the names

8    of a few FBI employees who are not in the Senior Executive

9    Service.  The substance of the motion is otherwise unredacted,

10   and if the Court would be --

11           THE COURT:  Sure.

12           MR. VAN GRACK:  Whatever procedure the Court and defendant

13   would like to follow, but this is a document that the government

14   would have no objection to being filed in public.

15           THE COURT:  All right.  Any objections, Counsel?

16           MS. POWELL:  May I --

17           THE COURT:  Sure, absolutely.  Would you like to take a

18   look at it?

19           MS. POWELL:  Yes, sir.

20           THE COURT:  Sure.

21           MS. POWELL:  I'd like to look at it first, but I'll get

22   back to government counsel tomorrow.

23           THE COURT:  All right.  That's fine.  Thank you very much.

24   Thank you, Counsel.

25           And for the record, Mr. Van Grack just passed up a copy of

1    the proposed motion to -- a copy of the unredacted document.

2         MR. VAN GRACK:  Yes, Your Honor.

3         THE COURT:  All right.  That's fine.  We'll hold onto

4    this.

5         I've run out of things to talk about.  Anything you want

6    to put on the record?

7         MR. VAN GRACK:  No, Your Honor.

8         THE COURT:  All right.  Ms. Powell, at all?

9         MS. POWELL:  No, Your Honor.  Thank you.

10        THE COURT:  All right.  Everyone, have a wonderful day.

11   Anything else?  Anything?  Okay.  Have a nice day.  No need to

12   stand.  Thank you.

13        (Proceedings adjourned at 11:44 a.m.)

14                 **C E R T I F I C A T E**

15

16             I, Scott L. Wallace, RDR-CRR, certify that
     the foregoing is a correct transcript from the record of
17   proceedings in the above-entitled matter.

18        /s/ Scott L. Wallace                9/10/19
          ---------------------------       ----------------
19        **Scott L. Wallace, RDR, CRR           Date**
          **Official Court Reporter**

20

21

22

23

24

25

| # | 2nd | A |
|---|---|---|

**2nd** [1] - 27:9

## #

**#300** [1] - 2:9

## /

**/s** [1] - 31:18

## 1

**1** [2] - 10:4, 6
**1-A** [1] - 5:4
**10** [2] - 1:6; 3:1
**1001(a)(2)** [1] - 10:3
**107** [3] - 4:12, 24; 6:22
**109** [2] - 3:19; 6:17
**10th** [1] - 6:14
**11** [1] - 11:17
**11:00** [1] - 1:6
**11:06** [1] - 3:2
**11:30** [1] - 28:13
**11:44** [1] - 31:13
**14** [1] - 14:21
**15** [1] - 20:24
**15th** [2] - 5:9; 28:8
**16th** [1] - 5:24; 8:23
**17-232** [2] - 1:4; 3:4
**18** [4] - 5:15; 10:2, 8; 25:20
**18th** [6] - 11:17, 20; 12:5; 15:3; 25:3; 26:3
**1993** [1] - 7:2
**1st** [3] - 5:9; 27:2, 7

## 2

**2** [5] - 4:24; 6:22; 8:9; 11:3; 25:19
**20001** [1] - 2:16
**2016** [1] - 19:2
**2017** [8] - 10:4, 6; 13:1, 22; 14:17; 15:5; 20:24; 23:3
**2018** [6] - 5:24; 8:23; 10:8; 25:3, 20; 26:3
**2019** [2] - 1:6; 3:1
**202** [3] - 1:16, 21; 2:5
**202.354.3196** [1] - 2:17
**20530** [3] - 1:16, 21; 2:5
**214)707-1775** [1] - 2:10
**21st** [2] - 4:4; 5:9
**22,000** [1] - 25:25
**22314** [1] - 2:13
**23rd** [1] - 5:9
**24th** [6] - 3:24; 4:3; 5:4; 17:13, 21; 27:24
**252-6920** [1] - 1:21
**252-7252** [1] - 2:5
**25th** [1] - 17:21
**2911** [1] - 2:9

## 3

**3** [3] - 6:22; 10:6; 25:19
**300** [1] - 2:12
**302** [4] - 17:13; 28:20, 23
**302s** [6] - 5:3; 17:8, 10; 22:1; 24:9
**30th** [7] - 4:1, 11; 6:13, 15; 13:22; 14:17; 15:22
**31st** [1] - 11:3
**353** [1] - 9:25
**373** [1] - 5:23

## 4

**4** [2] - 5:16; 10:7
**4th** [1] - 2:4

## 5

**555** [2] - 1:20; 2:4
**5th** [3] - 6:18; 7:21; 10:25

## 6

**6** [1] - 8:9
**60** [1] - 9:25
**616-0800** [1] - 1:16
**617** [1] - 5:21
**623** [2] - 9:13, 17
**6503** [1] - 2:16

## 7

**703** [1] - 2:13
**717** [1] - 2:12
**752** [1] - 7:1
**75219** [1] - 2:9

## 8

**83** [1] - 5:23
**833** [1] - 7:1
**867** [1] - 5:21
**888-1943** [1] - 2:13
**8th** [2] - 14:20; 27:25

## 9

**9/10/19** [1] - 31:18
**90** [1] - 4:19
**950** [1] - 1:15

## A

**a.m** [4] - 1:6; 3:2; 11:17; 31:13
**abeyance** [1] - 12:11
**above-entitled** [1] - 31:16
**absolutely** [1] - 30:17
**accepted** [2] - 10:8, 15
**access** [1] - 5:18
**accomplish** [1] - 29:16
**according** [1] - 17:14
**accordingly** [1] - 12:3
**accused** [1] - 9:23
**Act** [6] - 5:15; 14:19; 15:1; 23:19; 24:3, 8
**act** [1] - 23:22
**Action** [1] - 1:4
**actual** [1] - 19:19
**additional** [3] - 4:17, 19; 19:1
**additionally** [1] - 29:8
**address** [6] - 5:6; 13:10, 25; 16:17; 22:22; 29:2
**addressed** [3] - 4:22; 10:12; 22:22
**addressing** [2] - 7:14, 18
**adjourned** [1] - 31:13
**advise** [1] - 4:4
**advised** [5] - 4:12, 21; 5:10; 7:12, 16
**affects** [1] - 12:1
**afforded** [2] - 10:10, 12
**agent** [10] - 13:23; 14:17; 15:23; 19:3, 13; 23:7, 19, 21, 24
**Agent** [1] - 23:2
**agents** [2] - 13:14; 24:20
**agents'** [2] - 17:12; 21:25
**ago** [1] - 11:21; 18:25
**agreement** [7] - 8:8, 14, 18-19; 9:3; 10:6; 23:10
**agrees** [2] - 8:10; 12:6
**ahead** [1] - 17:2
**aided** [1] - 2:19
**akin** [1] - 17:20
**alarmed** [2] - 3:23; 12:12
**Alexandria** [1] - 2:13
**allegations** [3] - 22:9; 23:18
**alleged** [1] - 23:20
**allow** [1] - 30:4
**ambush** [1] - 20:25
**ambushed** [1] - 21:9
**AMERICA** [1] - 1:3
**America** [1] - 3:4
**ample** [1] - 21:11
**analysis** [1] - 10:18
**anticipates** [1] - 10:17
**anxiously** [1] - 16:22
**apparent** [1] - 29:17
**APPEARANCES** [2] - 1:12; 2:1
**appeared** [1] - 3:24
**applies** [2] - 17:3, 24
**apply** [3] - 7:23; 18:7

**appropriate** [10] - 4:8; 5:6; 12:7; 26:10, 16-17, 19, 22; 27:3, 9
**April** [1] - 19:2
**argues** [1] - 8:2
**argument** [1] - 15:6
**arguments** [1] - 19:21
**articulated** [2] - 6:25; 9:6
**assertion** [1] - 9:18
**assess** [1] - 9:16
**Assistant** [3] - 1:13, 18; 2:2
**assume** [1] - 21:5
**assuming** [2] - 10:17, 21
**assumption** [3] - 18:19, 22
**attempts** [1] - 7:9
**attention** [1] - 25:4
**Attorney** [3] - 1:14, 19; 2:2
**ATTORNEY'S** [2] - 1:19; 2:3
**attorneys** [2] - 10:10, 13
**August** [5] - 4:1, 4, 11; 6:13, 15
**authority** [1] - 7:5
**available** [2] - 23:3, 15
**Avenue** [1] - 1:15
**await** [2] - 16:22; 19:9
**aware** [7] - 5:10; 6:10; 8:4; 23:9, 13; 24:21

**B**

**Ballantine** [2] - 2:2; 3:12
**bargain** [2] - 24:7
**based** [1] - 14:23
**basis** [2] - 15:9; 16:2
**BEFORE** [1] - 1:11
**begin** [2] - 21:16; 29:12
**behalf** [1] - 3:12
**believes** [2] - 22:17; 25:2
**bench** [1] - 25:2
**benefit** [4] - 15:8; 20:10; 24:7
**benefits** [2] - 20:2, 6
**best** [2] - 29:4
**better** [1] - 28:13
**between** [6] - 5:8; 8:14, 18; 9:3; 17:12; 23:2
**bias** [1] - 13:15
**binding** [1] - 8:18
**Binnall** [2] - 2:11; 3:7
**BINNALL** [1] - 2:11
**Blvd** [1] - 2:9
**Brady** [40] - 3:18; 5:2, 23-24; 6:1, 3-4, 12, 16; 7:14, 18, 25; 8:6, 22; 9:6; 11:3; 12:25; 13:1; 15:12, 19; 16:15, 17; 17:5; 18:8, 10, 13, 15, 21; 19:1; 21:16; 22:14, 17, 21; 25:7; 29:11, 18
**bragged** [1] - 21:3
**Brandon** [2] - 1:13; 3:11
**bridge** [1] - 21:14
**brief** [5] - 11:6, 11; 13:11; 20:21; 28:5
**Brief** [1] - 27:20
**briefed** [2] - 17:20; 19:14

**briefing** [5] - 3:20; 7:22; 11:1, 24; 26:19
**bring** [3] - 11:19, 22; 25:3
**British** [1] - 21:20
**brought** [1] - 29:14
**busy** [1] - 29:15
**bvg@usdoj.gov** [1] - 1:17

**C**

**CALL** [1] - 1:10
**candidates** [1] - 23:8
**case** [21] - 4:6, 14-15; 5:7; 6:2, 4, 25; 7:2; 9:7; 10:1; 11:20, 22; 12:23; 13:1; 14:10; 15:1, 19, 21; 23:21; 29:14
**Case** [1] - 3:3
**cases** [1] - 29:3
**certain** [2] - 5:2; 8:1
**certainly** [4] - 17:17; 22:8; 28:5, 15
**certify** [1] - 31:15
**change** [2] - 26:18; 27:12
**changed** [2] - 12:9, 11
**charge** [4] - 10:3; 15:1, 9; 16:12
**charged** [1] - 20:7
**charges** [1] - 10:1
**Christopher** [1] - 21:21
**CIPA** [3] - 5:15; 9:9
**Circuit** [2] - 9:10, 14
**circuit's** [1] - 5:20
**citing** [1] - 9:24
**claim** [3] - 19:15; 24:13
**claiming** [1] - 19:2
**classified** [19] - 5:2, 14, 18; 6:9; 7:14; 8:2, 4; 9:12, 15, 20; 10:18; 17:4, 25; 18:4, 7, 21; 19:7
**Classified** [2] - 5:14; 9:10
**clear** [4] - 9:10; 24:4, 10
**clearance** [1] - 6:24
**clearances** [4] - 4:25; 6:21; 7:9, 19
**cleared** [1] - 5:17
**CLERK** [1] - 3:3
**client** [2] - 4:18; 8:10
**client's** [1] - 8:12
**Code** [2] - 5:15; 10:3
**colleague** [1] - 10:4
**colloquy** [1] - 10:9
**Collyer's** [1] - 19:7
**colorable** [1] - 9:19
**COLUMBIA** [3] - 1:1, 20; 2:3
**Comey** [5] - 14:20; 20:25; 21:2; 24:24; 29:8
**comfortable** [1] - 3:15
**coming** [1] - 27:25
**comment** [1] - 25:2
**communications** [3] - 23:6, 9, 23
**compel** [8] - 3:18; 6:15; 7:13, 17, 25; 9:5; 12:24; 29:25
**complete** [1] - 4:17
**completely** [3] - 13:14, 23; 21:21

**complied** [2] - 9:1; 18:21
**comply** [2] - 8:22, 24
**computer** [3] - 2:19; 17:17; 28:24
**computer-aided** [1] - 2:19
**conceives** [1] - 15:18
**concerned** [1] - 13:7
**concerns** [1] - 25:5
**conduct** [1] - 6:23
**conference** [3] - 3:20; 6:14
**conferences** [1] - 3:25
**conferred** [1] - 20:6
**consider** [2] - 6:19; 15:7
**consideration** [1] - 20:11
**considered** [1] - 24:7
**consistent** [1] - 30:2
**construing** [1] - 9:7
**Cont** [2] - 2:1
**contend** [1] - 13:6
**context** [1] - 9:22
**continue** [1] - 18:12
**continues** [2] - 7:8; 18:11
**Contreras** [3] - 10:5; 23:5, 11
**controls** [1] - 9:4
**convicted** [1] - 18:11
**convicting** [1] - 29:16
**cooperation** [3] - 4:2, 6, 13
**copy** [3] - 17:21; 30:25; 31:1
**correct** [2] - 25:11; 31:16
**correctly** [1] - 27:23
**Counsel** [5] - 12:14; 22:7; 24:17; 30:15, 24
**counsel** [37] - 4:15-17; 5:13, 17; 6:9, 11, 19; 7:12, 16, 20; 8:6; 11:4, 8-9, 12, 23; 12:22; 13:3; 14:5; 15:14; 17:22; 21:8; 22:16; 23:1, 6; 24:10, 21; 25:1, 4, 6-7, 24; 26:1; 27:24; 30:6, 22
**Counsel's** [2] - 1:15; 13:17
**counsel's** [2] - 4:25; 6:20
**count** [1] - 10:2
**country** [1] - 19:13
**course** [1] - 27:15
**Court** [81] - 2:15; 3:17, 19, 21, 24-25; 4:2, 4-5, 12, 21-22; 5:5, 10; 6:13, 18; 7:3, 11-12, 16, 21-23; 8:1, 14-18; 9:6, 16, 18, 24; 10:8, 12, 14, 17, 23; 11:2, 5, 8, 14-15; 12:2; 15:3, 7, 21; 17:16; 18:15; 20:1, 3, 5, 11, 23; 21:2; 22:16, 18; 23:13, 20; 24:2, 11, 16; 25:1, 24; 26:2, 6, 17; 29:3; 30:7, 10, 12; 31:19
**court** [1] - 6:23
**Court's** [17] - 4:2, 9, 25; 5:11, 23; 6:12, 20; 7:18; 8:6, 22; 9:2-4; 10:25; 16:19; 18:8; 22:14
**Courthouse** [1] - 2:16
**COURTROOM** [1] - 3:3
**courtroom** [1] - 11:17
**courts** [1] - 9:7
**Creek** [1] - 2:9
**criminal** [2] - 5:17; 10:16

**Criminal** [2] - 1:4; 3:3
**crosses** [1] - 9:16
**CRR** [3] - 2:15; 31:15, 19
**crucial** [1] - 15:12
**Curtis** [2] - 1:18; 3:12
**cut** [1] - 16:24

# D

**D.C** [4] - 1:8; 2:16; 9:10, 14
**Dallas** [1] - 2:9
**database** [1] - 19:6
**Date** [1] - 31:19
**date** [17] - 3:20; 7:23; 11:1, 15, 19, 21;
12:1, 5, 7, 13; 19:24; 26:18; 27:16, 22;
28:2, 12
**dated** [2] - 5:24; 13:21
**dates** [4] - 4:7, 20; 27:11, 18; 28:4
**days** [7] - 4:19; 14:22; 17:15; 21:1;
27:10, 12; 29:9
**DC** [3] - 1:16, 21; 2:5
**dead** [1] - 7:10
**dead-end** [1] - 7:10
**deadline** [2] - 11:6, 10
**deadlines** [1] - 28:3
**debacle** [1] - 21:22
**Deborah** [2] - 1:18; 3:12
**deborah.curtis@usdoj.gov** [1] - 1:22
**December** [13] - 10:4, 6, 8; 11:17, 20;
12:5; 15:3; 25:3, 20; 26:2; 27:2, 7
**decided** [1] - 7:2
**decision** [4] - 9:7, 24; 19:7; 26:13
**deemed** [1] - 5:19
**defendant** [14] - 11:11; 20:2, 6; 23:1,
4, 6, 13, 21; 24:1, 14; 25:5; 26:1; 29:24;
30:12
**Defendant** [2] - 1:8; 2:8
**defense** [25] - 4:22, 24; 5:12, 19; 6:9,
11, 19; 7:12, 16; 8:5; 9:23; 11:8; 13:5;
15:13; 22:16, 25; 24:10, 21; 25:1, 4, 7,
24; 27:24; 30:5
**demonstrate** [1] - 8:23
**demonstrated** [1] - 18:3
**denial** [1] - 4:24
**deny** [1] - 7:8
**DEPARTMENT** [1] - 1:14
**Department** [2] - 13:18, 22
**destroyed** [2] - 28:21, 25
**determine** [4] - 6:24; 9:15, 18; 19:25
**DIA** [1] - 19:14
**differences** [2] - 17:11; 21:25
**directed** [1] - 3:25
**Director** [1] - 24:24
**disagreed** [1] - 4:13
**disappear** [1] - 17:18
**disclose** [2] - 21:1, 20
**disclosed** [3] - 9:15; 23:3; 25:14
**disclosing** [1] - 21:17
**disclosure** [5] - 5:13; 6:11; 8:5; 25:3, 5

**disclosures** [2] - 8:11; 25:25
**discoverable** [2] - 9:11, 21
**discovery** [5] - 5:13; 8:11, 21; 9:8, 22
**discredits** [1] - 21:21
**discussed** [1] - 25:24
**discussing** [1] - 29:1
**dismissed** [1] - 16:14
**DISTRICT** [5] - 1:1, 11, 20; 2:3
**District** [1] - 7:1
**docket** [1] - 7:4
**document** [7] - 13:24; 15:24; 25:7, 9;
30:4, 13; 31:1
**documented** [2] - 13:15; 19:6
**documents** [6] - 17:6; 19:20; 22:20;
25:23, 25; 29:5
**dossier** [1] - 21:22
**doubt** [2] - 16:18; 21:6
**down** [1] - 29:10
**draft** [1] - 5:3
**drafts** [3] - 24:12, 15; 25:23

# E

**Eastern** [1] - 7:1
**ECF** [7] - 3:19; 4:12, 23; 6:17, 21; 10:6
**efforts** [1] - 29:4
**egregious** [2] - 15:11; 16:14
**either** [4] - 15:1; 16:21; 19:5; 28:1
**elements** [1] - 24:5
**Email** [4] - 1:17, 22; 2:6, 14
**embark** [1] - 10:23
**Embassy** [1] - 21:21
**EMMET** [1] - 1:11
**emphasizes** [1] - 8:14
**employees** [1] - 30:8
**end** [1] - 7:10
**ended** [1] - 4:13
**enter** [1] - 18:13
**entered** [5] - 6:3; 7:3, 21; 19:24; 21:17
**entire** [3] - 4:16, 18; 16:13
**entitled** [1] - 31:16
**entry** [3] - 7:4; 8:12; 10:5
**Esq** [2] - 2:8, 11
**essentially** [1] - 21:8
**ethical** [3] - 12:22; 14:7; 15:14
**evidence** [3] - 9:8; 15:20; 19:3
**ex** [4] - 6:18, 23; 7:4, 6
**exactly** [4] - 16:5; 18:14, 17; 20:12
**examination** [1] - 19:9
**example** [2] - 17:5, 11
**exculpatory** [2] - 13:7; 15:20
**excuse** [2] - 12:4; 27:8
**Executive** [1] - 30:8
**existed** [3] - 23:7, 9, 14
**existing** [1] - 19:4
**exists** [1] - 16:2
**exonerate** [1] - 16:10
**exonerates** [4] - 13:23; 15:24; 16:1, 8

**exonerating** [2] - 14:16; 15:23
**extent** [1] - 12:1
**extremely** [1] - 28:6

# F

**F-3** [1] - 5:15
**F.2d** [1] - 5:21
**F.Supp** [1] - 7:1
**face** [2] - 9:12; 14:21
**fact** [2] - 20:3; 29:12
**factor** [1] - 13:20
**factors** [1] - 9:14
**factual** [2] - 15:8; 20:8
**failed** [1] - 5:2; 8:3
**failures** [1] - 12:25
**fair** [3] - 16:23; 19:25; 27:12
**false** [2] - 10:2; 24:1
**far** [3] - 12:21; 13:1; 29:10
**FARA** [5] - 19:16; 20:7, 9; 23:25; 24:2
**FBI** [6] - 5:3; 13:18; 17:14; 23:23;
28:22; 30:8
**FBI's** [2] - 17:17; 28:24
**February** [5] - 5:24; 8:23; 14:20; 15:22
**few** [4] - 14:22; 18:25; 22:10, 22; 30:8
**figure** [1] - 15:18
**file** [8] - 3:25; 4:16, 18; 5:4; 11:25;
16:2; 21:11
**filed** [7] - 6:15; 12:24; 24:11; 25:9;
29:24; 30:4, 14
**filing** [4] - 4:19; 11:6, 10; 30:3
**filings** [3] - 23:20; 24:2; 28:11
**filled** [1] - 4:11
**final** [1] - 25:22
**finality** [2] - 11:20, 22
**finally** [1] - 9:20
**fine** [4] - 12:2; 13:12; 27:13; 28:8;
30:23; 31:3
**fired** [1] - 13:17
**first** [15] - 5:3; 8:17; 9:16; 10:4; 11:4,
23; 22:13, 25; 23:3, 10, 17; 25:2; 29:14;
30:21
**five** [1] - 17:15
**FLYNN** [1] - 1:6
**Flynn** [38] - 3:4, 8; 4:14, 18, 21; 5:1,
4-5, 16; 6:9, 11, 15, 19; 7:7, 12, 16; 8:1,
5, 10, 21; 10:1, 3, 13; 13:7, 23; 14:16,
20, 23; 15:8, 25; 17:12, 15; 19:1; 20:25;
21:8, 17; 29:16
**Flynn's** [19] - 3:17; 22; 4:2, 6, 10, 13;
6:20; 7:9, 13, 17, 19, 25; 9:5; 10:8, 19;
11:3, 9-10, 16
**focus** [5] - 10:18, 22; 18:18; 20:3; 29:3
**follow** [3] - 9:6; 16:16; 30:13
**following** [2] - 4:5; 7:3
**FOR** [3] - 1:1, 19; 2:3
**force** [1] - 21:10
**forego** [1] - 8:10
**foregoing** [1] - 31:16

**foreign** [1] - 19:13
**foremost** [1] - 22:13
**form** [1] - 22:18
**former** [1] - 4:16
**forth** [2] - 7:24; 10:11
**forward** [2] - 3:5; 28:12
**four** [3] - 4:8; 21:1; 29:9
**Fourth** [1] - 1:20
**frankly** [1] - 21:18
**fulfilled** [1] - 5:22
**full** [1] - 17:6
**fully** [1] - 10:12
**future** [1] - 10:24

## G

**General** [1] - 13:16
**given** [1] - 17:21
**govern** [1] - 5:13
**government** [61] - 3:13; 5:1, 6-7, 9, 12, 16, 18, 22; 6:8, 10; 7:8, 10; 8:3, 22, 25; 9:8, 19; 10:21; 11:4, 7, 23, 25; 12:2, 6; 13:2; 15:11, 18; 16:14, 17-18, 21; 20:24; 21:16; 22:8, 15; 23:5, 14-15, 19; 24:2, 4-6, 10, 20, 25; 25:1; 26:1, 5, 10; 27:22; 28:20; 29:2; 30:3, 13, 22
**government's** [9] - 4:24; 9:12; 11:5; 16:22; 18:20; 25:25; 26:9; 28:14; 29:7
**Grack** [5] - 1:13; 3:12; 15:2, 14; 30:25
**GRACK** [23] - 3:11; 11:24; 12:16; 22:8, 13, 25; 24:19; 25:11, 13, 16, 18, 22; 26:8, 13, 21; 27:2, 5, 8; 29:21, 23; 30:12; 31:2, 7
**guess** [2] - 15:6; 21:6
**guidelines** [1] - 22:15
**guilty** [16] - 8:12; 10:3, 9, 15; 14:4; 15:17; 19:11, 24; 23:4, 12, 22; 24:16, 22; 26:2

## H

**HARVEY** [1] - 2:11
**headed** [2] - 16:4, 6
**hear** [3] - 11:4, 8, 23
**hearing** [22] - 3:21; 4:8; 5:8; 6:1, 19, 23; 7:3-6, 23; 11:1; 12:1; 20:4; 21:2, 13; 22:11; 24:3; 25:20; 27:1
**held** [3] - 6:18; 7:5; 12:10
**helpful** [4] - 5:19; 9:23; 10:19; 28:7
**hold** [1] - 31:3
**holding** [1] - 7:6
**Honor** [12] - 3:3, 11; 12:16; 22:8; 24:19; 25:11; 26:21; 27:13; 29:23; 31:2, 7, 9
**HONORABLE** [1] - 1:11
**House** [2] - 17:22
**housekeeping** [1] - 29:24
**huddle** [4] - 26:16, 23, 25; 27:19

**huge** [1] - 13:20
**hurdle** [1] - 9:17

## I

**identified** [2] - 17:11; 21:25
**identify** [1] - 3:5
**illegally** [1] - 19:6
**impaired** [1] - 13:15
**implied** [1] - 15:3
**imply** [1] - 22:18
**important** [1] - 28:6
**imposing** [1] - 28:3
**inclined** [2] - 11:2, 16
**including** [2] - 5:3; 19:1
**inculpatory** [1] - 15:21
**indicated** [1] - 25:6
**indicates** [1] - 25:7
**indicating** [1] - 7:4
**indication** [1] - 22:16
**information** [34] - 5:14, 18-19; 6:9; 8:2, 5, 11, 19; 9:11, 15-16, 20, 23; 10:1; 13:6; 17:4, 23-24; 18:4, 6; 19:1, 5, 18; 21:19; 25:1; 28:22; 29:9, 18, 25; 30:1
**Information** [1] - 5:15
**informed** [5] - 5:5, 12; 10:15; 13:3; 18:20
**innocent** [1] - 16:11
**insofar** [1] - 13:7
**Inspector** [1] - 13:16
**instance** [1] - 20:7
**intended** [1] - 5:5
**intends** [5] - 3:21; 7:13, 17; 22:9; 26:10
**interesting** [2] - 11:20; 19:21
**interfere** [1] - 28:1
**internal** [1] - 13:22
**interrupt** [1] - 24:17
**intervention** [4] - 5:1; 6:20; 7:11, 19
**interview** [8] - 5:4; 17:15; 20:25; 24:9, 12, 15, 20, 24
**interviews** [1] - 17:12
**investigation** [1] - 19:4
**involving** [1] - 23:23
**issue** [3] - 6:1, 4; 7:10
**issued** [1] - 6:3
**issues** [5] - 4:9, 22; 5:6, 10; 25:5
**itself** [2] - 21:14; 22:14

## J

**James** [1] - 24:24
**January** [4] - 5:4; 13:21; 14:17; 15:22
**January/February** [1] - 15:5
**jar** [1] - 25:8
**jbinnall@harveybinnall.com** [1] - 2:14
**Jesse** [2] - 2:11; 3:7

**Jocelyn** [2] - 2:2; 3:12
**jocelyn.ballantine2@usdoj.gov** [1] - 2:6
**joint** [6] - 4:1, 5, 11, 23; 6:21; 7:7
**Judge** [4] - 10:5; 19:7; 23:5, 11
**JUDGE** [1] - 1:11
**judge** [1] - 6:2; 18:12
**judges** [1] - 19:23
**July** [1] - 13:1
**June** [2] - 3:24; 4:3
**justice** [2] - 14:23; 29:17
**Justice** [1] - 13:18, 22
**JUSTICE** [1] - 1:14

## K

**keep** [2] - 14:12; 28:19
**King** [1] - 2:12
**Kippur** [1] - 27:25
**knowledge** [1] - 21:20
**known** [2] - 20:24; 29:12
**knows** [1] - 15:21

## L

**Lang** [1] - 1:13
**last** [9] - 5:25; 14:18, 25; 15:3; 20:4; 25:13; 29:20, 22
**leading** [1] - 9:7
**learned** [2] - 13:21; 14:18
**least** [2] - 9:19, 23
**lectern** [1] - 3:5
**legal** [3] - 7:5; 15:9, 15
**letter** [2] - 13:21; 21:20
**letting** [1] - 9:2
**liability** [1] - 15:4
**lied** [1] - 14:20
**likely** [1] - 24:6
**Lisa** [1] - 23:2
**list** [2] - 20:18; 22:20
**Logan** [2] - 14:19; 15:1; 23:19; 24:3, 7
**long-time** [2] - 15:11; 16:14
**longstanding** [1] - 9:24
**look** [5] - 14:8; 20:1; 21:9; 30:18, 21
**looked** [2] - 9:14; 29:13
**looking** [1] - 11:14
**lose** [1] - 20:3
**lost** [1] - 29:6
**low** [1] - 9:17
**lying** [1] - 23:23

## M

**machine** [1] - 2:18
**maintained** [1] - 15:16
**maintains** [2] - 5:22; 8:4
**Maryland** [2] - 5:23; 8:6

**material** [13] - 3:18; 5:2; 6:16; 7:14, 18, 25; 9:6; 12:25; 15:12; 16:15; 17:11; 21:25
**materials** [4] - 10:18, 21; 17:25; 26:20
**matter** [3] - 19:23; 29:23; 31:16
**matters** [1] - 10:11
**McCabe** [2] - 14:19; 15:4
**McCann** [1] - 3:7
**mean** [5] - 12:9; 16:24; 18:19; 21:7; 29:6
**means** [1] - 14:20
**meeting** [2] - 14:24; 19:14
**memo** [3] - 13:22; 14:18; 15:23
**memorandum** [1] - 10:11
**mentioned** [2] - 20:9; 21:24
**mere** [2] - 9:11, 21
**message** [1] - 13:5
**messages** [4] - 13:2; 23:2, 14
**met** [3] - 21:16; 24:5
**Michael** [1] - 3:4
**MICHAEL** [1] - 1:6
**might** [2] - 18:10; 28:6
**mind** [1] - 14:12
**minute** [7] - 3:16; 4:2; 7:4, 21; 10:5, 25
**misconduct** [2] - 15:11; 16:14
**missing** [1] - 17:13
**Missouri** [1] - 7:1
**Molly** [1] - 3:7
**Monday** [1] - 27:9
**MORNING** [1] - 3:1
**morning** [7] - 3:9, 11, 14; 12:18; 25:10
**motion** [19] - 3:17, 21; 6:15; 7:13, 17, 25; 9:5; 11:1-3; 12:24; 16:2, 6; 21:8, 12; 22:10; 29:24; 30:9; 31:1
**motions** [3] - 5:6; 7:22; 27:1
**moving** [1] - 12:2
**MR** [23] - 3:11; 11:24; 12:16; 22:8, 13, 25; 24:19; 25:11, 13, 16, 18, 22; 26:8, 13, 21; 27:2, 5, 8; 29:21, 23; 30:12; 31:2, 7
**MS** [49] - 3:7; 12:19, 21; 13:8, 10, 14, 20; 14:2, 5, 7, 10, 14, 16; 15:2, 10; 16:5, 10, 13; 17:1, 3, 10; 18:4, 6, 10, 14, 17, 23, 25; 19:12; 20:12, 14, 18, 20, 23; 21:13, 24; 22:3, 5; 27:13, 15; 28:5, 10, 17, 19; 29:8; 30:16, 19, 21; 31:9
**multiple** [1] - 24:10
**Musa** [1] - 6:25
**MUSA** [1] - 7:1
**must** [3] - 8:22; 9:16, 18

## N

**name** [1] - 30:7
**names** [1] - 30:7
**narrative** [1] - 14:23
**national** [2] - 5:14; 21:3
**National** [1] - 2:4
**need** [8] - 6:24; 10:22; 17:25; 19:8, 19; 26:16; 27:17; 31:11
**needs** [4] - 4:17; 10:23; 11:14; 17:18
**never** [5] - 15:1; 17:16; 21:15; 22:16; 29:14
**New** [1] - 19:15
**new** [4] - 4:15, 17; 12:22; 14:5
**news** [2] - 14:18, 25
**next** [4] - 9:18; 10:22; 18:18; 29:22
**nice** [1] - 31:11
**night** [3] - 14:18, 25; 28:13
**noon** [3] - 28:11
**notes** [6] - 17:10, 12; 19:20; 21:25; 24:18, 20
**noticing** [1] - 28:19
**notified** [1] - 23:6
**notion** [1] - 19:12
**notwithstanding** [2] - 8:19; 29:4
**November** [2] - 5:9; 20:24
**NSA** [1] - 19:6
**number** [1] - 15:25
**Number** [7] - 3:19; 4:12, 23; 6:17, 21; 10:6
**NW** [3] - 1:15, 20; 2:4

## O

**objection** [1] - 30:14
**objections** [1] - 30:15
**obligation** [8] - 12:22; 14:7; 15:15, 19; 16:17; 18:11; 21:16
**obligations** [5] - 5:23; 16:18; 22:17
**observation** [1] - 28:4
**observations** [1] - 28:1
**obstruction** [1] - 14:22
**obtain** [1] - 5:17
**obviously** [3] - 13:11, 14; 17:20
**October** [4] - 5:8; 11:3; 12:4
**OF** [6] - 1:1, 3, 10, 14, 20; 2:3
**offense** [5] - 10:7, 16; 14:6; 19:10, 24
**Offense** [1] - 19:17
**Office** [1] - 1:15
**OFFICE** [2] - 1:19; 2:3
**Official** [2] - 2:15; 31:19
**officials** [1] - 19:15
**often** [2] - 15:22; 20:1
**omissions** [1] - 22:21
**omit** [1] - 28:12
**one** [14] - 4:6; 6:6; 9:19; 10:2; 15:3, 20, 23; 21:15; 22:25; 23:8; 27:19; 28:19, 22; 29:23
**opinion** [1] - 5:20
**opportunity** [5] - 10:10, 13; 21:11; 28:15
**oppose** [1] - 27:15
**opposed** [1] - 17:6
**opposition** [3] - 11:6; 12:1; 22:22
**order** [18] - 3:18; 4:3; 5:24; 6:1, 3, 12, 16; 7:21; 8:7, 22; 9:4; 10:25; 16:19; 18:8, 13; 22:14; 30:1

**ordered** [1] - 4:4
**orders** [1] - 6:4
**original** [5] - 5:3; 11:21; 17:13; 28:20, 23
**otherwise** [1] - 30:9
**own** [2] - 3:19; 6:13

## P

**P.C** [1] - 2:8
**p.m** [1] - 11:3
**Page** [1] - 23:2
**page** [4] - 8:9; 9:13; 13:4; 25:19
**Page/Strzok** [2] - 13:2, 4
**pages** [2] - 6:22; 25:25
**paperwork** [1] - 26:10
**part** [4] - 23:21; 24:8; 25:24
**parte** [4] - 6:18, 23; 7:4, 6
**particular** [4] - 22:11, 25; 23:16, 23
**parties** [12] - 3:5, 24-25; 4:4, 11-13; 8:15, 18; 9:4; 10:22; 30:6
**passed** [2] - 19:1; 30:25
**pause** [1] - 27:20
**Pennsylvania** [1] - 1:15
**permit** [1] - 9:8
**pertain** [1] - 19:10
**pertains** [2] - 19:12, 23
**pestered** [1] - 16:20
**Peter** [1] - 23:7
**Pientka** [2] - 17:14; 28:23
**place** [4] - 16:25; 26:18; 29:15
**Plaintiff** [1] - 1:4
**plea** [25] - 6:2; 8:8, 13, 15-17, 19; 10:6, 8, 14-15; 15:13, 15; 16:3, 7; 19:23; 21:16; 23:4, 10
**pled** [10] - 10:3; 14:3; 15:17; 19:11; 23:12, 22; 24:16, 22; 26:2
**plethora** [1] - 19:18
**PLLC** [1] - 2:11
**point** [13] - 8:23; 10:14; 12:11; 15:10; 18:10; 20:13; 23:17; 24:6; 25:13, 22; 27:16; 28:25
**points** [4] - 21:15; 22:10; 23:3; 24:25
**polygraph** [2] - 19:2, 9
**position** [4] - 9:2; 20:5; 26:9
**possession** [4] - 24:13, 15, 21; 28:21
**possibilities** [1] - 15:4
**possibly** [1] - 19:3
**post** [1] - 15:15
**post-plea** [1] - 15:15
**potential** [1] - 20:10
**Powell** [10] - 2:8; 3:7; 12:11, 18; 22:6; 24:18; 27:11, 21; 29:19; 31:8
**POWELL** [50] - 2:8; 3:7; 12:19, 21; 13:8, 10, 14, 20; 14:2, 5, 7, 10, 14, 16; 15:2, 10; 16:5, 10, 13; 17:1, 3, 10; 18:4, 18, 20, 23; 21:13, 24; 22:3, 5; 27:13, 15; 28:5, 10, 17, 19; 29:8; 30:16, 19,

21; 31:9
**Powell's** [1] - 26:25
**pre** [2] - 15:15; 19:4
**pre-existing** [1] - 19:4
**pre-plea** [1] - 15:15
**precedence** [1] - 18:16
**predicate** [1] - 20:8
**preference** [1] - 23:7
**present** [1] - 3:8
**president** [3] - 14:21, 24; 23:8
**president's** [1] - 23:8
**pretextual** [1] - 19:5
**pretty** [1] - 29:10
**previous** [1] - 21:7
**previously** [1] - 30:5
**principle's** [1] - 6:25
**privilege** [2] - 9:13, 19
**problems** [1] - 28:9
**procedure** [2] - 9:6; 30:12
**procedures** [1] - 5:13
**Procedures** [1] - 5:15
**proceed** [4] - 4:23; 16:23; 26:13; 27:18
**proceeding** [2] - 14:11; 23:16
**PROCEEDINGS** [1] - 1:10
**proceedings** [2] - 27:20; 31:16
**Proceedings** [2] - 2:18; 31:13
**produce** [5] - 5:2; 8:3; 13:1; 15:15
**produced** [9] - 2:18; 13:5, 24; 17:13, 16, 19, 23; 18:25; 29:9
**producing** [1] - 29:12
**production** [8] - 3:18; 6:16; 7:13, 17, 25; 9:5; 12:25; 29:9
**proffer** [1] - 21:18
**progressing** [1] - 12:8
**proper** [1] - 27:18
**proposal** [2] - 11:5, 10
**propose** [1] - 27:24
**proposed** [5] - 5:8; 11:15; 12:2; 27:11; 31:1
**prosecution** [2] - 5:17; 16:13
**protective** [2] - 30:1
**provided** [11] - 6:8; 8:12; 15:13; 23:14; 24:12, 20, 23, 25; 26:1; 30:1, 5
**provision** [1] - 8:17
**public** [7] - 7:3; 23:9, 15; 25:15, 19; 30:14
**publically** [1] - 30:5
**pursuant** [2] - 6:11; 8:6
**pursued** [1] - 22:15
**put** [10] - 3:16; 11:7, 11-12; 12:14; 26:18; 27:21; 31:6

## Q

**quick** [1] - 24:24
**quote** [3] - 7:8; 20:2, 10
**quote-unquote** [2] - 20:2, 10

## R

**raise** [1] - 25:22
**raised** [3] - 21:7; 22:11; 23:1
**RDR** [3] - 2:15; 31:15, 19
**RDR-CRR** [1] - 31:15
**read** [2] - 6:6; 9:1
**ready** [4] - 4:7, 14-15; 5:7
**really** [1] - 11:18
**reason** [2] - 7:5; 21:6
**reasonable** [1] - 19:25
**receive** [1] - 26:7
**received** [3] - 4:16; 20:2; 28:23
**receiving** [1] - 28:13
**recently** [1] - 4:16
**recollection** [1] - 25:9
**recommendation** [1] - 26:6
**record** [16] - 3:6, 17; 10:12; 11:7, 13; 12:15; 16:25; 17:3; 22:19; 25:15, 19; 27:22; 30:25; 31:6, 16
**redactions** [2] - 30:4, 7
**refer** [1] - 8:8
**reference** [2] - 24:18, 23
**references** [1] - 25:23
**referring** [1] - 17:8
**refile** [1] - 26:10
**reflective** [1] - 19:25
**regard** [5] - 6:23; 10:5, 19; 15:7; 17:8
**regarding** [1] - 7:19
**regulations** [1] - 28:22
**relax** [1] - 3:15
**relevance** [7] - 9:12, 17, 21; 14:1, 13; 18:3
**relevant** [5] - 5:19; 10:19; 18:2; 23:16
**religion** [1] - 28:2
**religious** [2] - 28:1, 3
**relying** [1] - 5:20
**remaining** [1] - 23:13
**removal** [1] - 13:4
**reply** [10] - 11:11; 13:10; 14:1; 16:21; 19:10; 20:15, 21; 27:22; 28:5
**report** [11] - 4:1, 5, 12, 19, 23; 6:21; 7:7; 13:15; 24:11, 15
**reported** [2] - 2:18; 19:13
**Reporter** [2] - 2:15; 31:19
**reports** [1] - 24:9
**representations** [1] - 22:20
**represented** [1] - 25:18
**request** [4] - 4:25; 6:20; 7:18
**requested** [2] - 4:18; 29:18
**requesting** [1] - 17:5
**requests** [1] - 7:9
**require** [3] - 4:9; 5:11; 13:16
**required** [1] - 8:24
**requires** [5] - 4:25; 6:11; 8:5; 9:22; 14:7
**requiring** [1] - 7:11
**resolution** [2] - 4:9; 5:11

**resolve** [6] - 7:10, 13, 17, 24; 8:25; 9:5
**respect** [11] - 11:24; 12:4; 18:4; 21:13; 23:18, 25; 24:2, 9, 24; 29:8
**respond** [2] - 22:9; 28:14
**response** [1] - 16:22
**responsibility** [1] - 10:16
**result** [1] - 20:4
**retrieved** [1] - 28:25
**review** [2] - 4:18; 12:23
**reviewed** [2] - 30:3, 6
**Rights** [1] - 8:9
**Room** [1] - 2:16
**Roviaro** [1] - 9:24
**Rudolph** [1] - 10:5
**ruled** [1] - 15:5
**rules** [1] - 17:14
**run** [1] - 31:5
**Russia** [8] - 13:23; 14:17; 15:23; 19:3; 23:19, 21, 24

## S

**Sally** [1] - 17:20
**schedule** [11] - 3:20; 7:22; 11:1, 16, 24; 12:7; 26:19
**scheduled** [2] - 3:19; 6:13
**Scott** [4] - 2:15; 31:15, 18
**scottlyn01@aol.com** [1] - 2:17
**seal** [1] - 29:25
**sealed** [2] - 6:18; 25:9
**sealing** [1] - 30:2
**second** [11] - 8:16; 10:9; 22:20; 23:12, 18; 24:16, 22; 26:2, 16, 24; 27:19
**Section** [2] - 2:4; 5:16
**security** [6] - 4:25; 5:14; 6:21, 24; 7:9, 19
**Security** [1] - 2:4
**see** [5] - 6:21; 10:5; 14:25; 19:8; 27:1
**seek** [1] - 10:13
**seeking** [2] - 29:16
**seeks** [1] - 8:1
**Senior** [1] - 30:8
**sensitive** [1] - 28:3
**sentence** [2] - 8:9; 19:25
**sentencing** [36] - 3:22; 4:7, 10, 14-15, 20; 5:7, 11; 10:11, 20; 11:16, 19, 21; 12:5, 7, 13, 22; 14:11; 15:7; 19:22; 20:4; 21:1, 10, 13; 24:3; 25:19; 26:5, 9, 14, 18, 20; 27:16; 29:10
**September** [5] - 1:6; 6:14, 18; 7:21; 10:25
**SEPTEMBER** [1] - 3:1
**serious** [2] - 4:21; 29:11
**Service** [1] - 30:9
**SESSION** [1] - 3:1
**set** [6] - 3:20; 7:22, 24; 10:11; 11:1; 20:25
**setting** [1] - 27:15
**shape** [1] - 22:18

shorthand [1] - 2:18
show [4] - 3:18; 6:16; 16:11, 13
showed [1] - 23:7
showing [2] - 9:11, 21
sic [1] - 11:15
sides [2] - 18:18; 26:20
Sidney [2] - 2:8; 3:7
SIDNEY [1] - 2:8
signed [2] - 23:4, 10
significant [1] - 20:3
single [1] - 13:4
sometimes [1] - 29:4
sort [2] - 19:13; 22:20
Special [2] - 1:15; 13:17
special [1] - 13:3
specifically [1] - 24:3
staff [4] - 26:16, 23, 25; 27:19
stake [1] - 12:21
stand [3] - 21:10; 26:5; 31:12
standards [1] - 7:24
standing [9] - 5:24; 6:1, 12; 8:6, 22; 9:4; 16:19; 18:8; 22:14
started [2] - 14:22; 21:9
state [1] - 22:19
statement [3] - 8:20; 10:2, 7
Statement [1] - 19:17
statements [2] - 19:16; 24:1
states [1] - 5:1
STATES [3] - 1:1, 3, 11
States [7] - 1:13; 2:2; 3:4; 5:20; 6:25; 7:24; 9:25
stating [1] - 7:22
status [12] - 3:20, 25; 4:1, 5-6, 11, 19, 23; 6:13, 21; 7:7; 24:11
STATUS [1] - 1:10
Steele [2] - 21:21
steps [2] - 10:22; 18:18
Stevens [1] - 15:21
still [4] - 17:18; 18:6; 19:2; 27:17
stood [2] - 10:15; 15:2
Street [3] - 1:20; 2:4, 12
strike [1] - 7:15
strongly [1] - 11:19
Strzok [3] - 13:4; 23:2, 7
stunning [1] - 12:25
submission [1] - 29:7
subsequent [1] - 8:20
substance [1] - 30:9
sufficient [3] - 11:25; 13:3, 16
suggest [1] - 4:20
suggested [5] - 4:7; 6:5; 11:6, 10; 27:23
suggesting [2] - 8:25; 16:2
suggestion [2] - 26:24
suggests [1] - 8:20
Suite [1] - 2:12
SULLIVAN [1] - 1:11
summaries [3] - 17:6, 25; 25:23
summary [1] - 24:23

Sunday [1] - 27:8
supersedes [1] - 9:3
supplemental [1] - 26:20
support [1] - 19:20
suppressing [1] - 18:7
suppression [2] - 15:12; 16:15
Supreme [2] - 9:24; 18:15
system [2] - 17:17; 28:24

**T**

talks [1] - 28:20
targeted [4] - 11:19; 12:13; 26:18; 27:18
team [1] - 13:17
television [1] - 21:3
tempted [1] - 13:9
ten [2] - 27:10, 12
tentative [1] - 11:15
terms [4] - 18:6; 22:21; 24:7; 26:8
test [1] - 19:2
text [5] - 13:2, 5; 23:1, 13
theoretical [4] - 9:11, 21; 14:13; 18:3
thereafter [1] - 27:12
therefore [1] - 10:17
therein [1] - 8:20
thereto [1] - 8:20
thinking [1] - 21:9
thinks [1] - 11:25
three [3] - 4:7; 9:14; 28:6
threshold [1] - 9:22
throughout [1] - 29:4
tidbits [1] - 19:19
timeline [1] - 26:24
today [4] - 3:21; 20:17; 24:14; 27:23
today's [1] - 7:23
tomorrow [1] - 30:22
took [3] - 6:2; 8:16; 23:10
topic [1] - 7:6
topics [1] - 4:5
towards [1] - 16:4
tracks [1] - 29:11
train [1] - 29:10
TRANSCRIPT [1] - 1:10
transcript [3] - 2:18; 25:20; 31:16
transcription [1] - 2:19
Trial [1] - 8:9
trial [1] - 11:15
true [1] - 21:5
truth [1] - 29:17
try [1] - 21:10
trying [3] - 15:18; 19:25; 25:8
Turkey [1] - 24:2
Turkish [1] - 19:15
Turtle [1] - 2:9
twice [1] - 10:3
two [6] - 4:6; 11:25; 23:3; 24:24; 27:23
TX [1] - 2:9

**U**

U.S [12] - 1:14, 18-19; 2:2, 16; 5:15, 18, 23; 9:25; 10:2
ultimately [2] - 13:17; 24:6
unaware [1] - 23:1
under [9] - 5:14, 23; 8:9; 9:9; 16:18; 21:14; 22:17; 28:22; 29:25
underlying [2] - 17:10; 19:10
undoes [1] - 21:21
UNITED [3] - 1:1, 3, 11
United [7] - 1:13; 2:2; 3:4; 5:20; 6:25; 7:24; 9:25
unless [1] - 20:16
unquote [2] - 20:2, 10
unredacted [3] - 18:1; 30:9; 31:1
unusual [1] - 19:22
up [5] - 12:3; 20:19, 25; 27:25; 30:25
update [1] - 4:1

**V**

VA [1] - 2:13
Van [5] - 1:13; 3:11; 15:2, 14; 30:25
VAN [23] - 3:11; 11:24; 12:16; 22:8, 13, 25; 24:19; 25:11, 13, 16, 18, 22; 26:8, 13, 21; 27:2, 5, 8; 29:21, 23; 30:12; 31:2, 7
vehicle [1] - 12:8
versus [3] - 3:4; 6:25; 9:24
views [1] - 15:20
violation [7] - 10:2; 14:19; 19:16; 20:7, 9; 25:7; 29:11
violations [1] - 22:21

**W**

wait [4] - 20:15, 20; 26:7; 29:6
waived [2] - 8:21; 22:17
Wallace [4] - 2:15; 31:15, 18
Washington [5] - 1:8, 16, 21; 2:5, 16
water [1] - 21:14
ways [1] - 15:25
weeks [5] - 11:25; 18:25; 27:23, 25; 28:6
White [2] - 17:22
whole [3] - 14:22; 19:12; 21:22
withdraw [4] - 10:13; 16:2, 6; 21:11
withhold [1] - 9:8
wonderful [1] - 31:10
word [4] - 29:20, 22
works [1] - 12:5
writing [1] - 26:7
written [2] - 17:15; 28:23

| **Y** |
| --- |

**Yates** [1] - 17:20
**year** [2] - 11:21; 15:3
**Yom** [1] - 27:25
**York** [1] - 19:15
**yourselves** [2] - 3:6, 15
**Yunis** [10] - 5:20; 7:24; 9:7, 10, 14;
14:12; 17:3, 24; 18:7
**YUNIS** [1] - 5:21