# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**MICHAEL T. FLYNN,**

**Defendant**

**Crim. No. 17-232 (EGS)**

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO COMPEL THE PRODUCTION OF *BRADY* MATERIAL AND FOR AN ORDER TO SHOW CAUSE

On December 1, 2017, defendant Michael T. Flynn entered a plea of guilty to a single count of knowingly and willfully making material false statements to the Federal Bureau of Investigation ("FBI") regarding his contacts with the Government of Russia's Ambassador to the United States ("Russian Ambassador") during an interview with the FBI on January 24, 2017 ("January 24 interview"), in violation of 18 U.S.C. § 1001(a)(2).  Prior to his guilty plea, the government provided to the defendant information that could arguably be construed as exculpatory to that offense.  The defendant subsequently waived any right to additional discovery, as part of his guilty plea.  Thereafter, this case was reassigned to this Court, which issued a Standing Order governing disclosures to the defendant.  *See* Standing Order*, United States v. Flynn*, No. 17-cr-232 (D.D.C. Feb. 16, 2018) (Doc. 20) ("Standing Order").  Notwithstanding the defendant's waiver, the government provided more than 22,000 pages of additional discovery to the defendant.  On December 18, 2018, the Court engaged in an "extension … of the plea colloquy."  Hearing Transcript at 5, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 18, 2018) ("12/18/2018 Hearing Tr.").  During this inquiry, the defendant specifically denied having "any concerns that potential *Brady* material or other relevant material"

had not been provided to him.  *Id.* at 8.  The Court found that the defendant's earlier guilty plea

was entered "knowingly, voluntarily, intelligently, and with fulsome and satisfactory advice of

counsel."  *Id.* at 7.

The defendant now files a motion to compel production of alleged *Brady* material and

requests that the Court issue an order to show cause why the government should not be held in

contempt for failing to comply with the Court's Standing Order.  In so doing, the defendant

misstates the facts of the case and misrepresents the nature and extent of the discovery that the

government has provided.  The defendant likewise misapplies *Brady v. Maryland*, 373 U.S. 83

(1963), seeking information that goes well beyond what could be favorable and material to his

guilt or punishment.  The defendant predicates much of his request on conspiracy theories,

demanding that the government engage in a fishing expedition for documents that could offer

support for those theories.  Irrespective of whether such documents exist, a fact that the

government does not concede here, the defendant fails to establish that such information is

relevant—let alone favorable and material—in this criminal case.

Prior to addressing each of the defendant's requests in the body of this motion and

attached appendix (Appendix A), the government sets forth the scope of its disclosure

obligations, as appropriately cabined by the defendant's relevant conduct and the Court's

considerations at sentencing.  Next, as relevant to the defendant's requests and allegations of

misconduct, the government details the extent and nature of its discovery productions to the

defendant.  As described herein, far from engaging in misconduct in this case, the government

has complied, and will continue to comply, with its discovery and disclosure obligations,

including those imposed pursuant to *Brady* and the Court's Standing Order.  Therefore, the

motion should be denied, and this case should proceed to sentencing.

## BACKGROUND AND STATEMENT OF FACTS

A.  <u>Summary of the Defendant's Relevant Conduct</u>

The defendant's sweeping *Brady* demand mischaracterizes what constitutes favorable and material information in the context of the false statements charge to which the defendant has pleaded guilty, and the aggravating conduct on which the government intends to rely at sentencing. As described in the Statement of Offense, this case is about multiple false statements that the defendant made to multiple Department of Justice entities. *See* Statement of Offense, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 1, 2017) (Doc. 4) ("SOF"). Specifically, the defendant pleaded guilty to "willfully and knowingly" making material false statements about his communications with the Russian Ambassador during an interview with the FBI on January 24, 2017. Information, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Nov. 30, 2017) (Doc. 1). The defendant's false statements concerned (i) conversations with the Russian Ambassador beginning on December 29, 2016, about the defendant's request that Russia refrain from escalating the situation in response to U.S. Sanctions against Russia; and (ii) conversations with the Russian Ambassador beginning on December 22, 2016, regarding the defendant's request that Russia vote against or delay a United Nations Security Council resolution. *See* SOF at ¶ 3-4.

In addition, in the Statement of Offense, the defendant admitted making other false statements on multiple documents that he filed on March 7, 2017, with the Department of Justice pursuant to the Foreign Agents Registration Act ("FARA"), which pertained to a project that he and his company worked on, beginning in July 2016, for the principal benefit of the Republic of Turkey. *See* SOF at ¶ 5. As the defendant acknowledged, in the filings he omitted the material fact that officials from the Republic of Turkey provided supervision and direction over the project, and made materially false statements. *See id.* Although the Information to which the defendant pleaded guilty did not reference FARA, the conduct was included because of its

relevance for sentencing, as described in the Statement of Offense, Presentence Investigation

Report, and in the parties' sentencing submissions. *See* Government's Memorandum in Aid of

Sentencing at 3-4, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 4, 2018) (Doc. 46)

("Gov't Sent'g Memo"); Defendant's Memorandum in Aid of Sentencing at 7, *United States v.*

*Flynn*, No. 17-cr-232 (D.D.C. Dec. 11, 2018) (Doc. 50) ("General Flynn does not take issue with

the description of the nature and circumstances of the offense contained in the Government's

sentencing memorandum and the Presentence Investigation Report").

There is no other criminal conduct to which the defendant has admitted guilt or on which

the government intends to rely at sentencing.[1] This case does not involve, and the government

does not ask that the Court consider at sentencing, an allegation that the defendant was "an agent

of Russia." *See, e.g.,* Motion to Compel the Production of *Brady* Material and for an Order to

Show Cause at 2, 6 (Request ##18, 20), *United States v. Flynn*, 17-cr-232 (D.D.C. Aug. 30,

2019) ("Mot. to Compel"). It does not involve conduct or communications before July 2016.

*See, e.g.,* Mot. to Compel at 4-6 (Request ##8, 15, 16, 27). It does not involve allegations that

the defendant *always* lied to the government about his foreign contacts. *Cf., e.g.,* Mot. to

Compel at 2-3. It does not involve National Security Agency databases. *See* Flynn Brief in

Support of Motion to Compel Production of *Brady* Material and for an Order to Show Cause at

8, *United States v. Flynn*, 17-cr-232 (D.D.C. Aug. 30, 2019) (Doc. 109) ("Brief in Support").

And it does not involve allegations about leaking classified information—by the defendant or

others. *See, e.g.,* Mot. to Compel at 7 (Request #35); Brief in Support at 8.

---

[1]    Based on filings and assertions made by the defendant's new counsel, the government
anticipates that the defendant's cooperation and candor with the government will be contested
issues for the Court to consider at sentencing. Accordingly, the government will provide the
defendant with the reports of his post-January 24, 2017 interviews. The government notes that
the defendant had counsel present at all such interviews.

B.     The Government Complied with *Brady* and the Standing Order, and Disclosed Arguably Exculpatory Information Before the Defendant Pleaded Guilty

The defendant's motion mischaracterizes what, how, and when discovery has been provided, and the nature of that discovery.  It ignores that the government provided arguably exculpatory information to the defendant before his guilty plea on December 1, 2017, omits that the defendant waived the right to additional discovery as part of that guilty plea, and avoids mention that the defendant and his counsel represented to the Court—moments before he was scheduled to be sentenced—that the government had satisfied its *Brady* obligations.  As detailed below, the government has fully complied with its disclosure obligations under *Brady* and the Court's Standing Order.

*Brady* requires the government to disclose all evidence that is "favorable to an accused . . . where the evidence is material either to guilt or punishment."  *See, e.g., United States v. Bagley*, 473 U.S. 667, 667 (1985).  Before the defendant first pleaded guilty, the government provided the defendant and his counsel information in its possession that could arguably be construed as exculpatory—some of the very information that the defendant now claims is being withheld.  In late November 2017, the government provided the defendant with the FBI report for the defendant's January 24 interview.  On November 30, 2017, before the defendant signed the plea agreement, the government made additional disclosures.  It disclosed that as part of the Department of Justice ("DOJ") Inspector General's ("IG") review of allegations regarding actions by the DOJ and FBI in advance of the 2016 election, the IG identified electronic communications of one of the agents who interviewed the defendant on January 24, 2017, former Deputy Assistant Director ("DAD") Peter Strzok, that showed a preference for one of the candidates for President.  The government further relayed to defense counsel that those communications were part of the IG's review, including the IG's assessment as to whether those

communications constituted misconduct by DAD Strzok.  Additionally, the government

informed defense counsel that DAD Strzok said that the defendant had a sure demeanor and did

not give any indicators of deception during the January 24 interview, and that both of the

interviewing agents had the impression at the time that the defendant was not lying or did not

think he was lying.  In response to these disclosures, the government answered questions from

defense counsel.

With all of this information, the defendant and his counsel signed the plea agreement on

November 30, 2017.  In other words, before the defendant and his counsel signed the plea

agreement, they knew that that IG was investigating one of the interviewing agents for

misconduct, they knew that the interviewing agents believed the defendant did not give

indicators of deception during the interview, and they possessed the January 24 interview report.

The defendant and his counsel subsequently agreed to "waive certain rights afforded by the

Constitution of the United States and/or by statute or rule," including "the right to any further

discovery or disclosures of information not already provided at the time of the entry of your

client's guilty plea."  Plea Agreement at 6, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 1,

2017) (Doc. 3) ("Plea Agmt").  The defendant also affirmed that "I am pleading guilty because I

am in fact guilty of the offense identified in this Agreement."  *Id.* at 10.

On December 1, 2017, the defendant pleaded guilty before the Honorable Rudolph

Contreras, pursuant to the signed plea agreement.  At the start of the hearing, Judge Contreras

explained to the defendant that as part of his plea he was "going to be giving up a number of

your rights, both statutory and constitutional, so it is critical that you understand everything that

goes on here because I have to determine at the end whether you have given up those rights

knowingly, voluntarily, and with the advice of your counsel."  Hearing Transcript at 3, *United

States v. Flynn*, 17-cr-232 (D.D.C. Dec. 1, 2017) ("12/1/2017 Hearing Tr."); *see also id.* at 9

("You would have the right to challenge the government's case against you by seeking to have the charges dismissed or having the evidence against you suppressed or thrown out.  Do you understand you would have that right if you did not waive them?").  The defendant was then sworn in, and indicated that he wished to waive those rights.  *Id.* at 3, 12.  The defendant also affirmed that he accepted and agreed to the terms of the plea agreement.  *Id.* at 19.  At the end of the hearing, the defendant pleaded "[g]uilty," because he is "guilty and for no other reason[.]" *Id.* at 30.

Following the defendant's guilty plea before Judge Contreras, the case was randomly reassigned to this Court, which entered an initial Standing Order.  On February 16, 2018, the Court entered a new Standing Order because the earlier order was a "prior version" that had been inadvertently entered.  *See* Standing Order.  In its February 16 Order, the Court explained that it entered the Standing Order because it does so "in every criminal case."  *Id.*  The Standing Order requires the government to produce "any evidence in its possession that is favorable to the defendant and material to either the defendant's guilt or punishment."  Standing Order at 2.  With respect to cases that are resolved pursuant to a guilty plea, such as this one, the Court ordered the government to produce "any exculpatory evidence in the government's possession."  *Id.* at 2-3. That obligation does not extend to impeachment evidence.  *See id.* at 3 n.1; *United States v. Ruiz*, 536 U.S. 622, 633 (2002) (government not required "to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant").[2]

---

[2]    While the government is not contesting the applicability of the Standing Order here, it notes that "[c]riminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver." *United States v. Mabry*, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted); *accord United States v. Guillen*, 561 F.3d 527, 530 (D.C. Cir. 2009); *see also Ruiz*, 536 U.S. at 629-30 (2002) ("A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel ....").  *See also United States v. Taylor,* 254 F. Supp. 3d 145, 159-60 (D.D.C. 2017) (concluding that the defendant could not rescind his otherwise-enforceable waiver of a

Five days after the Standing Order was issued, on February 21, 2018, the Court entered a

Protective Order Governing Discovery. *United States v. Flynn*, No. 17-cr-232 (D.D.C. Feb. 21,

2018) (Doc. 22).  A few weeks later, on March 13, 2018, the government began its extensive

production of additional documents to the defendant.  The government's production of materials

comprises over 22,000 pages of documents, the overwhelming majority of which (over 21,000

pages) [3] pertain to the defendant's false statements on his March 7, 2017 FARA filing.  The

remainder are disclosures relating to the defendant's false statements to the FBI on January 24,

2017.

Contrary to defendant's assertions, the government has provided and will continue to

provide all information in its possession favorable and material to guilt and punishment.  The

government is not in possession of *Brady* evidence that we "have repeatedly failed to produce."

Brief in Support at 3.  Nor has the government "affirmatively suppressed evidence (hiding *Brady*

material)."  *Id.* at 4.  Remarkably, the supposed "suppressed" evidence cited by the defendant

concerns Strzok's text messages with former FBI attorney Lisa Page.  *Id.* at 12.  The defendant's

motion, however, conspicuously fails to mention that the government informed the defendant

about those text messages and their import on November 30, 2017, *before* the defendant signed

the plea agreement and before that information was publicly available.  Later, the government

informed the defendant that it had learned that there were additional text messages that it did not

have at that time, and pledged to provide the defendant access to the messages when they

became available.  When those new text messages became available, the government ensured the

---

right to further discovery where he had failed to demonstrate a valid reason to set aside his plea
agreement), *appeal dismissed,* No. 17-3055, 2018 WL 4099683 (D.C. Cir. July 23, 2018).

[3]      Most of the over 21,000 pages are productions that the government received from
individuals connected to the defendant's FARA filings.

defendant had access to them.  And when the government later came in possession of still more text messages, it provided text messages pertaining to the defendant that were not available to the public.  Accordingly, far from suppressing evidence, the government provided timely and continuous information about the text messages—all of which the defendant and his counsel had in their possession before the proceeding on December 18, 2018, at which the defendant confirmed his guilty plea.

The defendant's complaints and accusations are even more incredible considering the extensive efforts the government has made to respond to numerous defense counsel requests, including to some of the very requests repeated in the defendant's motion.  For instance, the defendant alleges that former FBI Deputy Director Andrew McCabe said, "'First we f**k Flynn, then we f**k Trump,' or words to that effect;" and that Deputy Director McCabe pressured the agents to change the January 24 interview report.  *See* Mot. to Compel at 4, 6 (Request ##2, 22). Defense counsel first raised these allegations to the government on January 29, 2018, sourcing it to an email from a news reporter.  Not only did the government inform defense counsel that it had no information indicating that the allegations were true, it conducted additional due diligence about this serious allegation.  On February 2, 2018, the government disclosed to the defendant and his counsel that its due diligence confirmed that the allegations were false, and referenced its interview of the second interviewing agent,[4] who completely denied the allegations. Furthermore, on March 13, 2018, the government provided the defendant with a sworn statement from DAD Strzok, who also denied the allegations.

Nevertheless, on July 17, 2018, the defense revived the same allegations.  This time, the defense claimed that the source was a staff member of the House Permanent Select Committee

_____

[4]        The name of the second interviewing agent remains under seal.

on Intelligence ("HPSCI").  The HPSCI staff member allegedly told the defendant that the

second interviewing agent had told the staff member that after a debrief from the interviewing

agents, Deputy Director McCabe said, "F**k Flynn."  Once again, the government reviewed

information and conducted interviews, and once again confirmed that the allegations were

completely false.  And after defendant and his counsel raised the accusation for a third time, on

October 15, 2018, the government responded by producing interview reports that directly

contradicted the false allegations.  Despite possessing all of this information, defense counsel has

again resurrected the false allegations, now for a fourth time.  *See* Mot. to Compel at 4, 6

(Request ##2, 22).

Tellingly, the defendant's motion makes no mention of the defendant's scheduled

sentencing hearing on December 18, 2018, which occurred after the government's voluminous

production described above.  That omission could be explained by the fact that the defendant and

his counsel indicated at that hearing that they did not believe that the government had failed to

provide *Brady* or helpful information.  At the outset of the hearing, the Court indicated that it

needed to "first ask Mr. Flynn certain questions to ensure that he entered his guilty plea

knowingly, voluntarily, intelligently, and with fulsome and satisfactory advice of counsel."

12/18/2018 Hearing Tr. at 7.  The defendant was then sworn in, and answered a series of

questions from the Court.  For instance, when asked by the Court, the defendant declined to

withdraw his plea based on the fact that DAD Strzok was being investigated for misconduct

(which the defendant knew before his initial guilty plea).  *Id.* at 8-9.  And when the Court asked

if the defendant had "any concerns that you entered your guilty plea before you or your attorneys

were able to review information that could have been *helpful* to your defense," the defendant

responded, "No, Your Honor."  *Id.* at 8 (emphasis added).  The defendant also declined the

Court's invitation to speak with his attorneys in a private room about the Court's questions or to

have the Court appoint "an independent attorney to speak with [the] defendant, review the

defendant's file, and conduct necessary research to render a second opinion for [the defendant]."

*Id.* at 9.

The Court then asked specific questions of the defendant's counsel about discovery.  The

Court queried whether his counsel had "any concerns that potential *Brady* material or other

relevant material was not provided to you," to which counsel responded, "No, Your Honor."  *Id.*

at 10.  And when the Court questioned whether the defendant was "entitled to any additional

information that has not been provided to you," counsel again responded, "No, Your Honor."  *Id.*

at 10-11.  Only after the Court exhaustively questioned the defendant and his counsel about

discovery, did the Court ask the defendant if he would like to proceed to sentencing, "[b]ecause

you are guilty of this offense," to which the defendant responded, "Yes, Your Honor."  *Id.* at 16.

Even after the Court's thorough inquiry into the voluntary nature of the defendant's

guilty plea, the government has continued to produce information to the defendant and his

counsel beyond the scope of the Court's Standing Order.  When the government learned that

another government agency intended to produce to Congress documents pertaining to the

defendant, it provided 330 pages of those documents to the defendant as a courtesy.  The

production largely consisted of the defendant's questionnaires to obtain a security clearance and

Department of Defense directives, and included no new information that was relevant to the

defendant's false statements to the FBI on January 24, 2017.[5]

Additionally, when the defendant's counsel demanded a security clearance, the

government informed counsel about the Classified Information Procedures Act ("CIPA") and

---

[5]    The fact that the defendant passed a polygraph test in 2016, which the defendant and his counsel highlight in their motion, is not relevant to the defendant's false statements in this case, all of which occurred after that test was administered.  *See* Mot. to Compel at 3.

*United States v. Yunis*, 867 F.2d 617, 623-24 (D.C. Cir. 1989) ("classified information is not discoverable on a mere showing of theoretical relevance . . . discovery in this context further requires that a defendant . . . [demonstrate] that [it] is at least 'helpful to the defense.'"), and invited defense counsel to make a specific request for classified information pursuant to *Yunis*. While the government was still awaiting a response to that email, defense counsel filed the instant motion and requested that the government be held in contempt.  *See* Brief in Support at 3.

As the above history of discovery makes clear, far from engaging in misconduct in this case, the government has gone above and beyond its obligations to comply with the Court's Standing Order and to respond to the defendant's questions and requests.[6]

## ARGUMENT

Notwithstanding his valid and enforceable waiver of discovery, the defendant now seeks 49 additional categories of information, none of which he is entitled to under the law.  As described below, the majority of his requests are either irrelevant, or seek information that has already been provided to him.  Ultimately, the motion is a fishing expedition.  *See* Mot. to Compel at 9 ("The only way to achieve justice in this case is to provide transparency and *full disclosure of all information relevant to the defense of Mr. Flynn*.") (emphasis added); *see also* Brief in Support at 13 n.15 (seeking access to a classified information that may be "relevant" to the defendant).  But *Brady* does not require an open file policy.  *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("We have never held that the Constitution demands an open file policy (however such a policy might work out in practice)"); *United States v. Caro-Muniz*, 406 F.3d 22,

---

[6]     In separate filings, the defendant has alleged other instances of government misconduct that likewise have no basis in fact. *See, e.g.*, Supplemental Status Report, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Sept. 30, 2019) (Doc. 121).  The government will respond to each such allegation at the appropriate time.

29 (1st Cir. 2005) ("*Brady* does not permit a defendant to conduct an *in camera* fishing expedition through the government's files . . . ."); *Kasi v. Angelone*, 300 F.3d 487, 504 (4th Cir. 2002) ("Nor does the *Brady* right to obtain exculpatory evidence equate to a right to rummage through governmental files."). "Criminal discovery is not a game. It is integral to the quest for truth and the fair adjudication of guilt or innocence." *Taylor v. Illinois,* 484 U.S. 400, 419 (1988) (Brennan, J., dissenting).

To the extent the defendant's request concerns information that is favorable and material to his guilt or punishment, the government has already provided the requisite information. At this point in the proceedings, the defendant's guilt is not at issue. *See, e.g.,* Status Conference Transcript at 16, *United States v. Flynn*, 17-cr-232 (D.D.C. Sept. 10, 2019) ("9/10/2019 Status Conf. Tr.") ("I can't say right now exactly where it's headed, but I don't think it's going to be a motion to withdraw the plea"). He has pleaded guilty before one federal judge, and affirmed his guilty plea before a second federal judge (this Court). Accordingly, as the Court stated on September 10, 2019, the operative question is whether the requests would produce information helpful to the defendant's punishment at sentencing. 9/10/2019 Status Conf. Tr. at 10 ("analysis will focus on whether [the materials] are relevant and helpful with regard to Mr. Flynn's sentencing"). Once again, the government has provided, and will continue to provide, all such information.

A number of the defendant's requests seek access to classified information that may or may not exist. The discovery standard for classified information largely reflects the standard imposed in the Standing Order—it must be helpful to the defense. The discovery of classified information is governed by Section 4 of CIPA, 18 U.S.C., appx. III (2000). Although this "Section creates no new rights of or limits on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal

cases to the classified information based on the sensitive nature of the classified information."
*Yunis*, 867 F.2d at 621.  Accordingly, to the extent that a defendant seeks documents and information that are classified, the District of Columbia Circuit imposes an additional requirement.  Specifically, the court has held "that classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege, but that the threshold for discovery in this context further requires that a defendant seeking classified information . . . [demonstrate] that [it] is at least 'helpful to the defense.'"  *Id.* at 623 (citation omitted).

I.    <u>Material Requested by the Defendant That Is Favorable and Material to Punishment Has Been and Will Continue to be Produced</u>

As described above, the foundation for identifying *Brady* material is the defendant's guilt and punishment.  *See* Standing Order at 2.  With respect to guilt, the relevant criminal conduct concerns the defendant's false statements to the FBI on January 24, 2017.  With respect to punishment, the relevant criminal conduct includes the defendant's false statements in his FARA filings about the Turkey project.  Additionally, information that undermines the defendant's knowing and willful state of mind when he made those false statements are pertinent to punishment.  With that foundation, the government below categorically addresses the defendant's requests.  The government also attaches an appendix responding to each individual request.  *See* Appendix A.[7]

A majority of the defendant's requests pertain to materials that are not relevant to his false statements to the FBI on January 24, 2017, his false FARA filings about the Turkey project, or other legitimate sentencing considerations.  For example, numerous requests involve

---

[7]    The government's responses to the defendant's requests are not intended to, and should not be read to, concede the existence of such information in the government's holdings or attest to the veracity of the statements or allegations in the requests.

individuals who are not connected to the criminal case, such as Christopher Steele and Bruce

Ohr.  The report from Steele does not involve allegations connected to the defendant's criminal

conduct; it contains allegations that occurred before the defendant ever spoke with the Russian

Ambassador in December 2016.  Similarly, the defendant's requests for information pertaining to

whether he was an agent of Russia are irrelevant.  *See, e.g.,* Mot. to Compel 5-6 (Request ##18,

20).  The defendant is not charged with being an agent of Russia and the government has never

alleged in this case that he was an agent of Russia.  His criminal conduct pertains to false

statements about his communications with Russian officials, not his affiliation with that country.

Nevertheless, even if the allegation were relevant, the government has already provided the

defendant with information in discovery that would undermine the contention that he was an

agent of Russia.

Many of the requests pertain to information in interview reports about meetings or

discussions that occurred before or after the January 24 interview.  In particular, some requests

concern discussions at the FBI about conducting the interview, *see, e.g.,* Mot. to Compel at 5-9

(Request ##18, a., b., i.), and debriefs from the interviewing agents that occurred after the

interview, *see, e.g., id.* (Request ##19, a., c., d., e., f.).  The government has already provided the

defendant with relevant information about those discussions and debriefs.  Those disclosures

include interview reports of DAD Strzok and the second interviewing agent, a memorandum

from Deputy Director McCabe describing his call with the defendant on January 24, 2017, and

interview summaries of persons who participated in the discussions or debriefs.[8]  The

---

[8]     As previously communicated to the Court and raised by the defendant as an issue for the
first time, in some instances the government provided summaries of interviews, rather than the
interview reports themselves.  *See* Brief in Support at 13.  Many of those interview reports
contain privileged material, including classified information.  Additionally, the majority of the
interview reports are either not relevant to this case or could not reasonably be construed as
favorable and material to the defendant's guilt or punishment.  Information in those reports that

government also communicated to the defendant on November 30, 2017, before he signed the plea agreement, that DAD Strzok said that the defendant had a sure demeanor and did not give any indicators of deception during the interview, and that both interviewing agents had the impression at the time that the defendant was not lying or did not think he was lying.  The documents provided by the government also show that the FBI asked the defendant for permission to conduct the interview, informed the defendant about the topic of the interview, interviewed the defendant in his own office, and afforded him multiple opportunities to correct his false statements by revisiting key questions.  *See* Memorandum of Andrew McCabe dated January 24, 2017 (Doc. 56-1); FD-302 of Peter Strzok dated July 19, 2017 (Doc. 56-2).

While the government has thus already provided discovery relating to these requests for information about meetings or discussions that occurred before or after the January 24 interview, they are not—either collectively or individually—favorable and material to the defendant's sentencing.  Whether or not the FBI or DOJ contacted members of the White House before the defendant's January 24 interview has no bearing on whether the defendant lied to the agents during that interview.  Nor do any communications that the FBI or DOJ had with members of the White House after the interview, since by then the crime had already occurred.

Multiple requests pertain to the text messages between DAD Strzok and Page.  *See, e.g.,* Mot. to Compel at 4-7 (Request ##6, 9, 10, 30, 31).  As described in detail above, the government informed the defendant about the text messages and their import before he signed the plea agreement on November 30, 2017, including the fact that one of the agents, DAD Strzok, was under investigation for misconduct because of those text messages.  The government

could reasonably be construed as favorable and material to the defendant's guilt or punishment has been provided to the defendant in the form of summaries.  Those summaries were provided to the Court on December 14, 2018; at that same time, the government provided the full interview reports to the court for *in camera* review.

has subsequently provided the defendant with access to the text messages, to the extent that they could reasonably be considered favorable and material to his sentencing. The text messages, however, are not exculpatory; they are impeaching of DAD Strzok. Moreover, both interviewing agents have been clear, since the beginning and in their documentation, that the defendant made false statements to them on January 24, 2017, about multiple topics.

Some of the remaining requests appear to be a blanket request for information, untethered on their face to any exculpatory information. *See, e.g.,* Mot. to Compel at 5-7 (Request ##9, 24, 26, 27, 33, 34, 36). Other requests pertain to information that does not exist. *See, e.g.,* Mot to. Compel at 4-5 (Request ##5, 11). Where possible, the government has attempted to respond to the requests by assuming that they are intended to obtain exculpatory information among the listed materials, to the extent such materials exist. For all such requests, the government is not aware of any information that would be favorable and material to the defendant at sentencing.[9]

---

[9]    The defendant's requested relief, that the government be held in civil contempt, must be denied because the defendant has failed to demonstrate through clear and convincing evidence that the government failed to comply with the Court's Standing Order.

"[C]ourts have the inherent power to enforce compliance with their lawful orders through civil contempt." *Shillitani v. United States*, 384 U.S. 364, 370 (1966). The civil contempt power "is essential to the enforcement of the judgments, orders, and writs of the courts, and consequently to the due administration of justice." *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006) (citation and quotation omitted). As the party moving for a civil contempt finding, the defendant bears the initial burden of demonstrating by clear and convincing evidence that: (1) there was a clear and unambiguous court order in place; (2) that order required certain conduct by the government; and (3) the government failed to comply with that order. *See Int'l Painters & Allied Trades Indus. Pension Fund v. ZAK Architectural Metal & Glass LLC*, 736 F.Supp.2d 35, 38 (D.D.C. 2010) (*citing Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993); *SEC v. Bilzerian*, 112 F.Supp.2d 12, 16 (D.D.C. 2000)). "'In the context of civil contempt, the clear and convincing standard requires a quantum of proof adequate to demonstrate a reasonable certainty that a violation occurred.'" *Phillips v. Mabus*, 894 F.Supp.2d 71, 91 (D.D.C. 2012) (quoting *Breen v. Tucker*, 821 F.Supp.2d 375, 383 (D.D.C. 2011)).

The defendant has failed to meet his burden. As detailed here, the defendant has not even demonstrated that the government failed to comply with the Court's Standing Order, let alone

II.     The Defendant's Objective Is Dismissal of this Case, Not to Identify Information that
        Would Be Favorable and Material to His Sentencing

Finally, it bears emphasis that the defendant's filings—although captioned as a motion to

compel production of *Brady* material—are in fact an effort by the defendant to have his case

dismissed.  Since the beginning of their involvement, the defendant's new counsel have sought to

get the charges dropped, professed their client's actual innocence, and perpetuated conspiracy

theories, all while stating that the defendant does not intend to withdraw his guilty plea.

Certainly, true and credible *Brady* violations in a case could justify sanctions and other remedies,

to include dismissal.  In *this* case, however, nothing could be further from the truth.

From the beginning, the defendant's new counsel have sought to get the charges against

the defendant dropped.  His new counsel's first outreach to the government was an effort to get

the Department of Justice to dismiss the case.  Before even entering an appearance in the case,

new counsel sent a letter to the Attorney General and Deputy Attorney General requesting that

the Attorney General "dismiss the prosecution of General Flynn" and remove the prosecutors

from the case.  *See* 6/6/2019 Defense Counsel Letter to the Attorney General at 2 ("June 6

Letter") (Attachment 1).  Defense counsel then made some of the same discovery requests that

they made in the instant motion.  Despite recently professing to the Court that they still need "a

significant amount of time" to complete their review of information, *see* Joint Status Report,

*United States v. Flynn*, No. 17-cr-232 (D.D.C. Aug. 30, 2019) (Doc. 107), defendant's new

counsel needed no time to request that the case be dismissed and the prosecutors removed.

Defense counsel did not need to complete their review of the facts to make their request, because

---

that any such non-compliance was clear and convincing.  The government has made every effort
to comply with the Court's Standing Order, tendering more than 22,000 pages of material,
including material directly in response to the defendant's questions.  Accordingly, the
defendant's request should be summarily denied.

their request did not rely on facts.  With the same set of facts in December 2018, the defendant

and his former counsel represented to the Court that they did not believe any other helpful

information needed to be produced.  *See* 12/18/2018 Hearing Tr. at 8-9.  Confirming that the

defendant and his new counsel are in search of a result, not the facts, defense counsel was

recently interviewed on television and exclaimed, "I'm expecting, frankly, that we find evidence

that warrants dismissal of the case for egregious government misconduct."  Interview by Lou

Dobbs Tonight with Sidney Powell, Fox Bus. (Aug. 30, 2019),

https://video.foxbusiness.com/v/6081729582001/#sp=show-clips at 6:09.  Defense counsel made

the same admission to the Court at the Status Conference on September 10, 2019.  *See* 9/10/2019

Status Conf. Tr. at 16 ("To show that the entire prosecution should be dismissed for egregious

government misconduct and long-time suppression of *Brady* material.")

Lest there be any doubt about the defendant and his counsel's objective, the Court need

only read the first page of their Brief in Support, which references an article, "*Why Innocent*

*People Plead Guilty*."  Brief in Support at 1 n.1; *see also id.* at 7 n.9 ("Mr. Flynn may also have

other defenses that prior counsel did not explore.").  In that same Fox Business interview,

defense counsel protested that the defendant, "I believe, from everything I've seen now, should

be completely exonerated."  Interview by Lou Dobbs Tonight with Sidney Powell, Fox Bus.

(Aug. 30, 2019), https://video.foxbusiness.com/v/6081729582001/#sp=show-clips at 6:50.  All

this despite the fact that the defendant has twice admitted his guilt, before two federal judges.

Relatedly, the defendant's arguments are premised on conspiracy theories.  *See, e.g.*, June

6 Letter at 3 ("[I]t is increasingly apparent that General Flynn was targeted and taken out of the

Trump administration for concocted and political purposes"); Brief in Support at 2 ("While

prosecutors routinely recite their full knowledge of and compliance with their *Brady* obligations,

in truth they often scoff at them and continue to play games to win convictions at all costs").[10]
The motion's most frequent target is the Special Counsel's Office.  For example, the defendant
and his counsel allege that the Special Counsel's Office manipulated or controlled the press.  *See*
Brief in Support at 4; June 6 Letter at 5-6 ("The General's plea was heavily manipulated while
Brady evidence was suppressed, and the press was complicit").  The claim is divorced from facts
and reality.  The motion even attacks attorneys in the Special Counsel's Office who had no role
in the criminal investigation of the defendant.  *See* Brief in Support at 4.  Similarly, the defendant
spends more time citing irrelevant cases, such as Ted Stevens and Adam Lovinger, than
reviewing the facts of this case.  *See id.* at 2, 6, 7, 9, 10, 14-16.  The defendant even alleges that
there have been "egregious" Fourth Amendment violations,[11] but makes a list of claims
unconnected to this case or the evidence on which the government relies.  *Id.* at 8.

---

[10]      Tellingly, one of the defendant's requests was suggested by the aforementioned HPSCI
staff member, "to get it out there on Fox."  *See* Email from Barbara Ledeen to Robert Kelner
(Dec. 13, 2018, 12:21 AM EST), "Re: From Derek Harvey from HIPSI [sic]" (Attachment 2);
Mot. to Compel at 5 (Request #13).

[11]      Unsurprisingly, the defendant's discussion of the Fourth Amendment makes no mention
of the defendant's plea agreement, where the defendant waived the right "to challenge the
admissibility of evidence offered against [him]," Plea Agmt at 6, or Judge Contreras' warning to
the same effect during the defendant's first guilty plea.  12/1/2017 Hearing Tr. at 9 ("You would
have the right to challenge the government's case against you by seeking to have the charges
dismissed or having the evidence against you suppressed or thrown out.  Do you understand you
would have that right if you did not waive them?").

## CONCLUSION

The defendant's motion is not a search for *Brady* material.  It is a fishing expedition in hopes of advancing conspiracy theories related to the U.S. government's investigation into Russian interference in the 2016 presidential election.  The government has already provided any evidence that could reasonably be construed as favorable and material for the defendant at sentencing.  Accordingly, the motion should be denied.

Respectfully submitted,

JESSIE K. LIU
United States Attorney
D.C. Bar No. 472845

By: _____/s/_____

Brandon L. Van Grack
Special Assistant U.S. Attorney
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 233-0968

Jocelyn Ballantine
Assistant United States Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 252-7252

Dated:  October 1, 2019

## **CERTIFICATE OF SERVICE**

I, Brandon L. Van Grack, certify that I caused to be served a copy of the foregoing by electronic means on counsel of record for the defendant on October 1, 2019.


_____/s/_____
Brandon L. Van Grack
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 233-0968

*Attorney for the United States of America*