**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL T. FLYNN,<br><br>                Defendant. |

Crim. Action No. 17-232 (EGS)

**MEMORANDUM OPINION**

## I.   Introduction

On December 1, 2017, Defendant Michael T. Flynn ("Mr. Flynn"), a retired United States Army Lieutenant General and the former National Security Advisor to the President of the United States, pled guilty to willfully and knowingly making materially false statements and omissions to the Federal Bureau of Investigation ("FBI"), in violation of 18 U.S.C. § 1001(a)(2). Mr. Flynn admitted to lying about his conversations with Russia's Ambassador to the United States ("Russian Ambassador") during his FBI interview on January 24, 2017. The case was originally assigned to Judge Rudolph Contreras. Judge Contreras accepted the guilty plea, finding that Mr. Flynn—who was represented by experienced attorneys—knowingly, voluntarily, and intelligently entered into the Plea Agreement.

Six days later, on December 7, 2017, the case was randomly reassigned to this Court, which scheduled a sentencing hearing

for December 18, 2018. During that hearing, the Court conducted
an extension of the plea colloquy in view of statements made in
Mr. Flynn's sentencing memorandum that raised questions as to
whether Mr. Flynn sought to challenge the circumstances of his
FBI interview. In response to the Court's questions, Mr. Flynn
maintained his plea of guilty upon the advice of counsel. Mr.
Flynn neither challenged the conditions of his FBI interview nor
expressed any concerns with the government's obligations
pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and this
Court's Standing *Brady* Order of February 16, 2018. According to
the government, Mr. Flynn's substantial assistance to law
enforcement authorities led to criminal charges against
individuals in the United States District Court for the Eastern
District of Virginia. Rather than imposing a sentence on
December 18, 2018, this Court permitted Mr. Flynn to continue
his cooperation with the government. Seven months later,
however, the government decided not to call Mr. Flynn as a
witness in its case-in-chief in the Eastern District of
Virginia. Before that trial, Mr. Flynn retained new counsel. Mr.
Flynn now asserts his innocence, claims prosecutorial
misconduct, prays for dismissal, and urges this Court to hold
the prosecutors in civil contempt for alleged *Brady* violations.

Pending before the Court are several motions filed by Mr.
Flynn: (1) Motion to Compel the Production of *Brady* Material and

2

for an Order to Show Cause, ECF Nos. 109 & 111; (2) Sealed

Motion to Compel the Production of *Brady* Material, ECF No. 112;

(3) Sealed Motion for an Order to Show Cause, ECF No. 113; and

(4) Motion to Compel the Production of Newly Discovered *Brady*

Evidence, ECF No. 124. Upon careful consideration of the

parties' submissions, the applicable law, the entire record

herein, and for the reasons explained below, the Court **DENIES**

Mr. Flynn's motions.

## II.   Background

The Court assumes the parties' familiarity with the factual

and procedural background in this case. The Court briefly

summarizes the relevant background—drawn from the parties'

submissions and the Statement of the Offense ("SOF")

accompanying the Plea Agreement—to resolve the pending motions.

*See* SOF, ECF No. 4 at 1-5; *see also* Plea Agreement, ECF No. 1 at

1 ¶ 2.[1]

Mr. Flynn served as a surrogate and national security

advisor for then-candidate Donald J. Trump during the 2016

presidential campaign. SOF, ECF No. 4 at 1 ¶ 1. After the

November 2016 election, Mr. Flynn became a senior member of the

President-Elect's Transition Team. *Id*. Mr. Flynn served as the

---

[1] When citing electronic filings throughout this Opinion, the
Court cites to the ECF page number, not the page number of the
filed document.

National Security Advisor to President Trump between January 22, 2017 and February 13, 2017. Def.'s Ex. 1, ECF No. 133-1 at 1-2.

### A. Mr. Flynn's Criminal Conduct

The criminal conduct underlying the offense, as set forth in the Information, was admitted to by Mr. Flynn when he entered his guilty pleas in this case. *See, e.g.*, Information, ECF No. 1 at 1-2; Plea Hr'g Tr. (Dec. 1, 2017), ECF No. 16 at 18-19; Sentencing Hr'g Tr. (Dec. 18, 2018), ECF No. 103 at 9-10. The Information, which was filed on November 30, 2017, charged Mr. Flynn with one count of willfully and knowingly making materially false statements to the FBI, in violation of 18 U.S.C. § 1001(a)(2), during his interview with two FBI agents on January 24, 2017 in the White House. *See* Information, ECF No. 1 at 1-2; *see also* Sentencing Hr'g Tr., ECF No. 103 at 32. Under oath and with the advice of counsel, Mr. Flynn pled guilty to the crime on December 1, 2017. Plea Hr'g Tr., ECF No. 16 at 30-31; *see also* Plea Agreement, ECF No. 3 at 10. The SOF sets forth the events relevant to this case. *See generally* SOF, ECF No. 4 at 1-5.[2]

---

[2] On November 30, 2017, Mr. Flynn affirmed: "I have read every word of this [SOF], or have had it read to me. Pursuant to Federal Rule of Criminal Procedure 11, after consulting with my attorneys, I agree and stipulate to this [SOF], and declare under penalty of perjury that it is true and correct." SOF, ECF No. 4 at 6. Mr. Flynn's attorney acknowledged the same. *Id.*

On December 21, 2016, Egypt introduced a resolution to the United Nations ("U.N.") Security Council regarding Israeli settlements, and the vote on the resolution was scheduled for December 22, 2016. *Id.* at 4 ¶ 4. On December 29, 2016, then-President Barack H. Obama imposed sanctions on Russia for its interference in the 2016 presidential election. *See id.* at 2 ¶ 3(a). Before the President-Elect was sworn into office, Mr. Flynn engaged in conversations with the Russian Ambassador between December 22, 2016 and December 31, 2016. *Id.* at 2-5 ¶¶ 3-4.

The FBI opened an investigation into Russia's efforts to interfere in the 2016 election, which included determining the existence of any links between Russia and individuals associated with the Trump campaign. *Id.* at 1 ¶ 1.[3] As part of the

_____

[3] On May 17, 2017, then-Acting Attorney General Rod J. Rosenstein appointed Robert S. Mueller, III to serve as Special Counsel for the United States Department of Justice and authorized the Special Counsel to investigate the Russian government's efforts to interfere in the 2016 election, including any matters arising from that investigation. Special Counsel Robert S. Mueller, III, U.S. Dep't of Justice, *Report On The Investigation Into Russian Interference In The 2016 Presidential Election*, Vol. I of II ("Mueller Report") (Mar. 2019), ECF No. 79-1 at 19. The Special Counsel was duly authorized to prosecute federal crimes arising from the investigation. *Id.* The Special Counsel concluded that Russia interfered in the 2016 presidential election in two principle ways: (1) carrying out a social media campaign favoring then-candidate Trump and disparaging then-candidate Hillary Rodham Clinton; and (2) "conduct[ing] computer-intrusion operations against entities, employees, and

investigation, Mr. Flynn made a series of materially false statements about his conversations with the Russian Ambassador. *Id.* at 1-2 ¶ 2 (stating that "[Mr.] FLYNN's false statements and omissions impeded and otherwise had a material impact on the FBI's ongoing investigation into the existence of any links or coordination between individuals associated with the [Trump] Campaign and Russia's efforts to interfere with the 2016 presidential election"); *see id.* at 2-5 ¶¶ 3-4; *see also* Information, ECF No. 1 at 1-2. Mr. Flynn admitted to lying to the FBI about his request on or about December 29, 2016 to the Russian Ambassador that Russia refrain from escalating the situation in response to the sanctions imposed by the United States against Russia, and the Russian Ambassador telling Mr. Flynn that Russia decided to moderate its response to the sanctions. SOF, ECF No. 4 at 2-3 ¶ 3. In addition, Mr. Flynn admitted to making false statements to the FBI about his request on or about December 22, 2016 to the Russian Ambassador that Russia vote against or delay Egypt's resolution to the U.N. Security Council, that the Russian Ambassador never described to Mr. Flynn Russia's response to his request, that Mr. Flynn did not request certain countries to take a particular position on

---

volunteers working on the Clinton Campaign and then releas[ing] stolen documents." *Id.* at 9. The Special Counsel's "investigation also identified numerous links between the Russian government and the Trump Campaign." *Id.*

the resolution, and that Mr. Flynn only asked the countries for their respective positions on the vote. *Id.* at 4-5 ¶ 4.

Mr. Flynn also admitted to making false statements in the documents that he submitted to the United States Department of Justice ("DOJ") on March 7, 2017 under the Foreign Agents Registration Act, 22 U.S.C. §§ 611–621 ("FARA"). *Id.* at 5 ¶ 5; *see also* Addendum to Gov't's Mem. in Aid of Sentencing, ECF No. 75 at 3 (stating that "[Mr. Flynn] stipulated and agreed that he violated FARA by making materially false statements" in the FARA filings). Those FARA filings concerned a project that Mr. Flynn and his company, Flynn Intel Group, Inc. ("FIG"), performed on behalf of the Republic of Turkey. SOF, ECF No. 4 at 5 ¶ 5. Mr. Flynn, however, was not charged with any FARA violations. *See* Information, ECF No. 1 at 1; *see also* Status Hr'g Tr. (Sept. 10, 2019), ECF No. 114 at 20. For purposes of sentencing, Mr. Flynn did not dispute the relevance of the FARA references in the government's description of the nature and circumstances of his offense. *See* Gov't's Mem. in Aid of Sentencing, ECF No. 46 at 3-5; *see also* Def.'s Mem. in Aid of Sentencing, ECF No. 50 at 12. Indeed, the government confirmed that Mr. Flynn could have been charged with making false statements in the FARA filings. Sentencing Hr'g Tr., ECF No. 103 at 28. Under the terms of the Plea Agreement, the government agreed not to further prosecute Mr. Flynn for the criminal conduct described in the SOF. Plea

Agreement, ECF No. 3 at 2 ¶ 3. In the final analysis, the government did not charge Mr. Flynn with violating the Logan Act, 18 U.S.C. § 953, or with being a foreign agent. *See* Information, ECF No. 1 at 1.

## B. The Government's Discovery and Disclosure Obligations

Prior to Mr. Flynn signing the Plea Agreement, the government, on November 22, 2017, provided Mr. Flynn's attorneys with the FBI's FD-302 (dated February 15, 2017), which summarized Mr. Flynn's January 24, 2017 FBI interview. Gov't's Notice of Disc. Correspondence, ECF No. 123 at 1; *see also* Def.'s Ex. 15, ECF No. 133-15 at 1. Mr. Flynn and defense counsel participated in post-January 24, 2017 interviews. *See* Gov't's Opp'n, ECF No. 122 at 4 n.1; *see also* Def.'s Ex. 15, ECF No. 133-15 at 1. During five of those interviews, the government provided "[Mr. Flynn] with dozens of relevant documents." Gov't's Surreply, ECF No. 132 at 3 n.2.

On November 30, 2017, before Mr. Flynn signed the Plea Agreement, the government made certain disclosures to Mr. Flynn's counsel. The government informed defense counsel that the DOJ's Inspector General ("IG") reviewed allegations involving certain electronic communications of Peter Strzok ("Mr. Strzok"), one of the FBI agents who interviewed Mr. Flynn on January 24, 2017, that showed a preference for a presidential candidate. Gov't's Opp'n, ECF No. 122 at 5-6. This included

8

information about certain text messages between Mr. Strzok and former FBI attorney Lisa Page ("Ms. Page"). *See id.* at 8-9; *see also* Gov't's Surreply, ECF No. 132 at 9 n.6. The government also disclosed to defense counsel "the IG's review, including the IG's assessment as to whether those communications constituted misconduct by [Mr.] Strzok." Gov't's Opp'n, ECF No. 122 at 5-6. The government then informed defense counsel that Mr. Strzok and the other interviewing FBI agent "had the impression *at the time* that [Mr. Flynn] was not lying" or that the FBI agents "did not think he was lying" during the January 24, 2017 FBI interview. *Id.* at 6 (emphasis added). The government answered defense counsel's questions after disclosing this information. *Id.* at 6. Those disclosures were provided prior to Mr. Flynn signing the Plea Agreement on November 30, 2017 and pleading guilty before Judge Contreras on December 1, 2017. *See* Def.'s Ex. 1, ECF No. 133-1 at 3.

After receiving the government's disclosures and productions, Mr. Flynn signed the Plea Agreement upon the advice of counsel. *See* Plea Agreement, ECF No. 3 at 10. Judge Contreras accepted Mr. Flynn's guilty plea on December 1, 2017, finding that Mr. Flynn entered the plea knowingly, voluntarily, and intelligently with the advice of counsel. Plea Hr'g Tr., ECF No. 16 at 4, 30-31. Mr. Flynn attested that his attorneys from Covington & Burling LLP rendered legal services to his

satisfaction as part of the Plea Agreement and the related
matters. Plea Agreement, ECF No. 3 at 10; *see also* Plea Hr'g
Tr., ECF No. 16 at 6.

On December 7, 2017, this case was randomly reassigned to
this Court. *See generally* Docket for Crim. Action No. 17-232.
This Court entered its operative Standing *Brady* Order on
February 16, 2018, requiring the government to produce any
evidence in its possession that was favorable to the defendant
and material to either the defendant's guilt or punishment. *See,
e.g.*, Order, ECF No. 20 at 1-4. On February 21, 2018, the Court
entered the Protective Order Governing Discovery pursuant to
Federal Rule of Criminal Procedure 16(d). Protective Order, ECF
No. 22 at 1-6. Shortly thereafter, the government produced
additional documents to Mr. Flynn and defense counsel to comply
with this Court's Standing *Brady* Order. *See* Gov't's Opp'n, ECF
No. 122 at 8, 18 n.9; *see also* Def.'s Ex. 15, ECF No. 133-15 at
1.

The government's production consisted of more than 22,000
pages of documents. *See* Joint Status Report, ECF No. 107 at 5
("Among those documents are all versions in the government's
possession of the FBI report of the January 24, 2017 interview
of [Mr. Flynn] and the interviewing agents' notes."); *see also*
Gov't's Notice of Disc. Correspondence, ECF No. 123 at 1-3
(providing an itemized inventory of discovery correspondence and

10

its productions). More than 21,000 pages of those documents related to Mr. Flynn's March 7, 2017 FARA filings, and the remainder related to his false statements to the FBI on January 24, 2017. Gov't's Opp'n, ECF No. 122 at 8, 8 n.3. The government contends that Mr. Flynn was not entitled to *Brady* material until he was charged on November 30, 2017, but the government nonetheless provided Mr. Flynn with materials before and during the voluntary interviews. Gov't's Surreply, ECF No. 132 at 3 n.2. According to the government, Mr. Flynn "agree[d] to forgo the right to any further discovery or disclosures of information not already provided at the time of the entry of [his] guilty plea." Plea Agreement, ECF No. 3 at 6 ¶ 9(C); *see also* Gov't's Opp'n, ECF No. 122 at 1, 5.

### C. The Continuance of Mr. Flynn's Sentencing

On December 18, 2018, this Court accepted Mr. Flynn's guilty plea a second time. Sentencing Hr'g Tr., ECF No. 103 at 5, 16. During that hearing, the Court extended the plea colloquy in view of Mr. Flynn's statements in his sentencing memorandum, which raised questions as to whether Mr. Flynn sought to challenge the conditions of the FBI interview. *See generally* Def.'s Mem. in Aid of Sentencing, ECF No. 50 at 6-18. In response to the Court's question, defense counsel did *not* express "any concerns that potential *Brady* material or other relevant material was not provided to [Mr. Flynn]." Sentencing

11

Hr'g Tr., ECF No. 103 at 10. Defense counsel affirmed to this Court that Mr. Flynn was *not* entitled to any additional information. *Id.* at 10-11. Under oath, Mr. Flynn confirmed that his rights were not violated as a result of the circumstances of his January 24, 2017 FBI interview and the allegations of misconduct against FBI officials. *Id.* at 11-12. And Mr. Flynn declined the Court's invitation for the appointment of independent counsel to advise him. *Id.* at 9-10.

Noting that the Court's usual practice is to impose a sentence after the completion of a defendant's cooperation, the Court granted Mr. Flynn's request to continue the sentencing hearing to allow him to further cooperate with the government after considering defense counsel's representations that Mr. Flynn was prepared to continue his cooperation in the criminal case in the Eastern District of Virginia. *Id.* at 47-48. The trial in that case was scheduled to begin in July 2019. *See* Joint Status Report, ECF No. 71 at 1; *see also* Status Hr'g Tr. (June 24, 2019), ECF No. 94 at 5-6. In June 2019, Mr. Flynn retained new counsel. *See* Min. Order of June 14, 2019. Mr. Flynn did not testify at the trial in the Eastern District of Virginia. *See, e.g.*, Min. Order of July 9, 2019; Gov't's Resp. to Order of the Court, ECF No. 97 at 1-2; Def.'s Resp. to Order of the Court, ECF No. 98 at 1-11; Def.'s Suppl. Status Report,

ECF No. 121 at 1.[4] Motions practice ensued.

### D. Mr. Flynn's *Brady* Motions

Mr. Flynn moved to compel the production of *Brady* material on August 30, 2019, and October 15, 2019, respectively. *See generally* Def.'s Br. in Supp. of Def.'s Mot. to Compel Produc. of Brady Material & Mot. for Order to Show Cause ("Def.'s Br."), ECF No. 109; Def.'s Redacted Mot. to Compel & Mot. for Order to Show Cause, ECF No. 111 ("Def.'s Mot."); Def.'s Sealed Mot. to Compel Produc. of Brady Material, ECF No. 112; Def.'s Suppl., ECF No. 116; Def.'s Mot. to Compel Newly Discovered Brady Evid.,

---

[4] As previously stated, Mr. Flynn admitted that he made materially false statements and omissions in the FARA filings. SOF, ECF No. 4 at 5 ¶ 5. Months later, however, Mr. Flynn's new counsel represented that she "advised the prosecutors [in the Eastern District of Virginia] that Mr. Flynn did not know and did not authorize signing the FARA form believing there was anything wrong in it. [Mr. Flynn] honestly answered the questions his former counsel posed to him to the best of his recollection, and some with the benefit of hindsight." Def.'s Mem. Opposing Coconspirator Designation of Non-Party Witness Michael T. Flynn, *United States v. Rafiekian*, Crim. Action No. 18-457 (E.D. Va. July 8, 2019), ECF No. 270 at 6; *see id.* ("As for the final filing, Mr. Flynn recalls only reading the cover letter. Regardless of what he read, he did not intend to or knowingly make any false statements, and this is a complex area of law about which he knew nothing."); *see also* Def.'s Resp. to Order of the Court, ECF No. 98 at 7 (stating that "Mr. Flynn accepted responsibility in the [SOF] for [the] inaccuracies" in the FARA filing, but "nowhere . . . did he sign or recite that he willfully allowed the filing to proceed—knowing and intending it to deceive or mislead"). The government sought to designate Mr. Flynn as a co-conspirator. *United States v. Rafiekian*, No. 1:18-CR-457-AJT-1, 2019 WL 4647254, at *5 (E.D. Va. Sept. 24, 2019) (granting defendant's motion for acquittal), *appeal filed*, No. 19-4803 (4th Cir. Oct. 31, 2019).

ECF No. 124. Defense counsel's theory is that "[t]he evidence
the defense requests, if produced, would defeat the factual
basis for the plea." Def.'s Reply, ECF No. 133 at 27 (footnote
omitted).

Thereafter, the government filed its opposition briefs,
arguing that it has satisfied its obligations under *Brady* and
this Court's Standing *Brady* Order. *See* Gov't's Opp'n, ECF No.
122 at 2; *see also* Gov't's Opp'n, ECF No. 124 at 1-2. According
to the government, Mr. Flynn "fails to establish that [the
requested] information is relevant—let alone favorable and
material—in this criminal case." Gov't's Opp'n, ECF No. 122 at
2. Mr. Flynn filed his reply briefs. *See* Def.'s Reply, ECF No.
133; *see also* Def.'s Reply, ECF No. 134. Because Mr. Flynn
raised issues for the first time in one of his reply briefs, *see*
Gov't's Notice of Claims Raised for the First Time in Reply, ECF
No. 131 at 1-4, the Court directed the parties to submit sur-
replies, *see* Min. Order of Oct. 29, 2019. The briefing is now
complete, and the Court exercised its discretion to cancel the
previously-scheduled motions hearing. *See* Min. Order of Oct. 28,
2019; *see also* LCrR 47(f). The motions are ripe and ready for
the Court's adjudication.

## III.  Legal Standard

Pursuant to *Brady* and its progeny, the government has "an
affirmative duty to disclose exculpatory evidence to the

defense, even if no request has been made by the accused." *United States v. Borda*, 848 F.3d 1044, 1066 (D.C. Cir.), *cert. denied*, 137 S. Ct. 2315 (2017). In *Brady*, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. "Impeachment evidence, . . . as well as exculpatory evidence, falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985) (citing *United States v. Giglio*, 405 U.S. 150, 154 (1972)). However, "the Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *United States v. Ruiz*, 536 U.S. 622, 633 (2002).

To prove a *Brady* violation, a movant must establish three elements: "[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the [government], either willfully or inadvertently; and [3] prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). "To satisfy the prejudice component, the defendant must show that 'there is a reasonable probability that, had the evidence been disclosed to the defense, the result

15

of the proceeding would have been different.'" *United States v. Sitzmann*, 893 F.3d 811, 826 (D.C. Cir. 2018) (quoting *Bagley*, 473 U.S. at 682). "The defendant bears the burden of showing a reasonable probability of a different outcome." *United States v. Gale*, 314 F.3d 1, 4 (D.C. Cir. 2003) (citing *Strickler*, 527 U.S. at 291).

## IV.  Analysis

Mr. Flynn moves to compel the production of alleged *Brady* material under several theories, claiming that newly discovered evidence and the government's suppression of evidence will exonerate him. *See* Def.'s Br., ECF No. 109 at 4, 12. Mr. Flynn contends that "[t]he only way to achieve justice in this case is to provide transparency and the full disclosure of all information relevant to the defense of Mr. Flynn." Def.'s Mot., ECF No. 111 at 9. Mr. Flynn accuses the government of suppressing certain information and alleges improprieties regarding the circumstances leading up to his guilty plea— including allegations of misconduct by the FBI, DOJ, and the Special Counsel's Office—that, in his view, call into question the entire investigation, raise ethical concerns, warrant findings of civil contempt, and demand dismissal. *See* Def.'s Br., ECF No. 109 at 4-17; *see also* Def.'s Reply, ECF No. 134 at 2-5. Mr. Flynn, however, fails to explain how most of the requested information that the government has not already

provided to him is relevant and material to his underlying offense—willfully and knowingly making materially false statements and omissions to the FBI, in violation of 18 U.S.C. § 1001(a)(2)—or to his sentencing. *See generally* Def.'s Br., ECF No. 109 at 4-17.

The Court first considers Mr. Flynn's requests and the parties' arguments, then analyzes Mr. Flynn's request for classified information, and concludes that Mr. Flynn has failed to establish a single *Brady* violation. Before turning to the specific requests, the Court will address the ethical concerns with Mr. Flynn's brief and Mr. Flynn's misapplication of *Brady* and its progeny.

### A. Ethical Concerns with Mr. Flynn's Brief

The Court notes that Mr. Flynn's brief in support of his first *Brady* motion lifted verbatim portions from a source without attribution. *Compare* Def.'s Br., ECF No. 109 at 11-12, 15-16, 15 n.21, *with* Brief of the New York Council of Defense Lawyers et al. as Amici Curiae Supporting Petitioner, *Brown v. United States*, 566 U.S. 970 (2012) (No. 11-783), 2012 WL 242906 at *5-6, *8, *12-13, *12 n.6. In a footnote, Mr. Flynn's brief merely provides a hyperlink to the "excellent briefing by Amicus [sic] in support of the Petition for Writ of Certiorari in Brown v. United States." Def.'s Br., ECF No. 109 at 16 n.22.

The District of Columbia Rules of Professional Conduct apply to the proceedings in this Court. *See* LCrR 57.26. Rule 8.4(c) provides that "[i]t is professional misconduct for a lawyer to . . . [e]ngage in conduct involving dishonesty, fraud, deceit, or misrepresentation." D.C. Rules of Prof'l Conduct R. 8.4(c); *see In re Ayeni*, 822 A.2d 420, 421 (D.C. 2003) (per curiam) (lawyer's plagiarized brief violated Rule 8.4(c)). "[C]itation to authority is absolutely required when language is borrowed." *United States v. Bowen*, 194 F. App'x 393, 402 n.3 (6th Cir. 2006); *accord* LCrR 47(a). "The [C]ourt expects counsel to fully comply with this [C]ourt's rules and submit work product befitting of pleadings [and briefs] in a federal court." *Kilburn v. Republic of Iran*, 441 F. Supp. 2d 74, 77 n.2 (D.D.C. 2006).

### B. Mr. Flynn Misconstrues *Brady* and its Progeny

Mr. Flynn misconstrues *Brady* and its progeny in two fundamental ways. First, Mr. Flynn asserts that he was "entitled to all the *Brady* evidence in the government's possession well before November 2017." Def.'s Reply, ECF No. 133 at 24. The government responds that "*Brady* imposes no such requirement for uncharged individuals." Gov't's Surreply, ECF No. 132 at 2. Mr. Flynn cites no controlling precedent holding that an uncharged individual is entitled to *Brady* evidence during an ongoing criminal investigation. *See* Def.'s Sur-Surreply, ECF No.

18

135 at 1; *see also* Gov't's Surreply, ECF No. 132 at 2. This Court's Standing *Brady* Order requires the government to produce any evidence in its possession that is favorable to the defendant and material to either the defendant's guilt or punishment, Order, ECF No. 20 at 1-4, notwithstanding Mr. Flynn's waiver of his right to any further discovery or disclosures of information, *see* Plea Agreement, ECF No. 3 at 6 ¶ 9(C). Contrary to Mr. Flynn's assertion, however, "[t]he holding in *Brady v. Maryland* requires disclosure only of evidence that is both favorable to the *accused* and 'material either to guilt or to punishment.'" *Bagley*, 473 U.S. at 674 (quoting *Brady*, 373 U.S. at 87) (emphasis added); *cf. D'Angio v. United States*, No. 3:07-CV-474, 2007 WL 9757556, at *4 (M.D. Pa. Nov. 6, 2007) ("Premature disclosure of *Brady* material could impede and/or frustrate a federal criminal investigation.").[5] Accordingly, the

---

[5] Mr. Flynn cites *United States v. Nelson*, 979 F. Supp. 2d 123, 135-36 (D.D.C. 2013) in which the court held that a guilty plea was not voluntary and knowing because the prosecution suppressed exculpatory evidence before the defendant pled guilty. Def.'s Sur-Surreply, ECF No. 135 at 13-14. Consistent with *Nelson*, this Court's Standing *Brady* Order requires the government to "produc[e], during plea negotiations, any exculpatory evidence in the government's possession." Order, ECF No. 20 at 2-3 (footnote omitted). *Nelson*, however, lends no support to Mr. Flynn's position that he was entitled to *Brady* evidence before he was formally charged in this case. Moreover, Mr. Flynn does not deny that the government provided him with documents before he signed the Plea Agreement, and Mr. Flynn and defense counsel participated in five voluntary interviews with the government in November 2017. *See* Gov't's Surreply, ECF No. 132 at 1-2, 3 n.2; *see generally* Def.'s Sur-Surreply, ECF No. 135 at 13-14.

Court agrees with the government that *Brady* and its progeny does not require the disclosure of exculpatory or impeachment material to an uncharged individual during an ongoing criminal investigation.

Next, Mr. Flynn claims that he is entitled to inculpatory evidence "to evaluate the government's allegations against him and to determine how to proceed." Def.'s Br., ECF No. 109 at 7. Under *Brady*, however, "the Government has no duty to disclose evidence that is neutral, speculative, or inculpatory, or evidence that is available to the defense from other sources." *United States v. Pendleton*, 832 F.3d 934, 940 (8th Cir. 2016); *cf. United States v. Martinez*, 764 F. Supp. 2d 166, 169 (D.D.C. 2011) (observing that "a defendant only has a right to receive from the government exculpatory information, not inculpatory information").

The government's *Brady* obligations are separate and distinct from its obligations under Rule 16 of the Federal Rules of Criminal Procedure, *see* Fed. R. Crim. P. 16, which mandates the disclosure of any evidence that is material to the preparation of a defense. *United States v. Marshall*, 132 F.3d 63, 67 (D.C. Cir. 1998) ("[Rule 16] as written does not compel the conclusion that inculpatory evidence is immune from disclosure."); *cf. United States v. Libby*, 429 F. Supp. 2d 1, 5 (D.D.C. 2006) ("Rule 16 provides for the pre-trial disclosure by

20

the government of [,*inter alia*,] . . . the defendant's oral,
written or recorded statements[.]"). Rule 16 has certain
recognized exceptions, *see United States v. Armstrong*, 517 U.S.
456, 463 (1996) ("[U]nder Rule 16(a)(2), [a defendant] may not
examine Government work product in connection with his case."),
and the Court retains the discretion under Rule 16 to "for good
cause, deny, restrict, or defer discovery or inspection, or
grant other appropriate relief[,]" Fed. R. Crim. P. 16(d)(1).

### C. Mr. Flynn's *Brady* Requests

The Court next considers Mr. Flynn's fifty separate
requests for information in which he seeks multiple documents in
various categories. *See, e.g.*, Def.'s Mot., ECF No. 111 at 3-9;
Def.'s Mot. to Compel Newly Discovered Brady Evid., ECF No. 124
at 1-2; Gov't's Opp'n, ECF No. 122 at 14-17. To evaluate Mr.
Flynn's requests, the Court divides them into six categories,
acknowledging that there is some overlap within certain
categories: (1) information that does not exist; (2) information
that is not within the government's possession; (3) information
that Mr. Flynn concedes he is not entitled to; (4) information
that the government has already provided to Mr. Flynn;
(5) information that is unrelated to the charges against
Mr. Flynn in this case or to his sentencing; and (6) remaining
requests. For ease of reference, the Court has attached an
Appendix to this Memorandum Opinion, which includes the exact

language from Mr. Flynn's requests and the government's
responses thereto.

### 1. Information that Does Not Exist

Request 5—"[t]he Flynn 302 dated January 19, 2017,
mentioned in the Mueller Report," Def.'s Mot., ECF No. 111 at 4—
does not exist as the year of 2017 in the relevant portion of
the Mueller Report was a typographical error. *See* Gov't's App.
A, ECF No. 122-1 at 2 (clarifying that "January 19, 2017" is a
typographical error, and that Mr. Flynn's interview took place
on January 19, 2018). Mr. Flynn does not dispute the
government's response. *See generally* Def.'s Reply, ECF No. 133
at 5-36.

### 2. Information the Government Does Not Possess

Request 13—"[a]n unredacted copy of all of [former FBI
Director] James Comey's testimony before any Congressional
committees," Def.'s Mot., ECF No. 111 at 5—is not within the
government's possession. *See* Gov't's App. A, ECF No. 122-1 at 3.
The government responds that to the extent Mr. Flynn seeks
unredacted copies of Director Comey's Congressional testimony
after he was fired, the government does not possess them. *Id*.
Mr. Flynn does not dispute the government's response. *See
generally* Def.'s Reply, ECF No. 133 at 5-36.

### 3. Information Mr. Flynn Concedes He Is Not Entitled to

Mr. Flynn concedes the government's responses to Request 39—seeking all communications between DOJ officials regarding the FARA registration for Mr. Flynn and FIG, *see* Def.'s Mot., ECF No. 111 at 7—that DOJ's communications are deliberative in nature and former defense counsel possesses his own notes from his interactions with DOJ, *see, e.g.*, Gov't's App. A, ECF No. 122-1 at 6; Def.'s Reply, ECF No. 133 at 15 n.9 (noting that former counsel had an "extensive meeting" and a "follow-up call" with DOJ).

### 4. Information that Has Already Been Provided

#### a. Requests 18 and 20

Mr. Flynn seeks certain alleged "exculpatory" statements in then-Acting Assistant Attorney General Mary McCord's ("Ms. McCord") FD-302s or interviews, and a January 30, 2017 internal DOJ memorandum exonerating him of being an agent of Russia. *E.g.*, Def.'s Mot., ECF No. 111 at 5-6; Def.'s Reply, ECF No. 133 at 14; Def.'s Ex. 1, ECF No. 133-1 at 2. The government responds—and Mr. Flynn does not dispute—that this information has already been provided to him, Gov't's App. A, ECF No. 122-1 at 4; *see generally* Def.'s Reply, ECF No. 133 at 5-36, and the government notes that the information in the internal DOJ document is irrelevant because Mr. Flynn was not charged with

being an agent of Russia, Gov't's App. A, ECF No. 122-1 at 4.
Indeed, "*Brady* only requires disclosure of information *unknown*
to the defendant." *United States v. Derr*, 990 F.2d 1330, 1335
(D.C. Cir. 1993) (emphasis added). This information was known to
Mr. Flynn. *See* Gov't's App. A, ECF No. 122-1 at 4. For that
reason alone, Mr. Flynn has failed to demonstrate that he is
entitled to the requested information.

Nonetheless, the government's response to Request 18
indicates that it has not disclosed *all* of the requested
information in Ms. McCord's FD-302s or interviews because
summaries of the relevant FD-302s and interviews were provided
to Mr. Flynn. *See id*. at 4 ("The government has already provided
[Mr. Flynn] with information from [Ms.] McCord's interview
report that could reasonably be construed as favorable and
material to sentencing."). To the extent he seeks information in
addition to what has already been provided, Mr. Flynn has failed
to establish the first component of his *Brady* claim:
favorability. *See Strickler*, 527 U.S. at 281-82.

"Evidence is favorable to the accused under *Brady* if it has
either exculpatory or impeachment value." *United States v.
Sitzmann*, 74 F. Supp. 3d 128, 134 (D.D.C. 2014), *aff'd*, 893 F.3d
811 (D.C. Cir. 2018). Without offering a specific legal argument
as to the exculpatory value of such information, Mr. Flynn
appears to request that information and other documents to

defend against an alleged smear campaign that he is a foreign
agent. *See, e.g.*, Def.'s Mot., ECF No. 111 at 5-6; Def.'s Reply,
ECF No. 133 at 14; Def.'s Reply, ECF No. 134 at 3. The
government argues that Requests 18 and 20 are irrelevant,
immaterial, and not favorable to Mr. Flynn, *see* Gov't's Opp'n,
ECF No. 122 at 15; *see also* Gov't's App. A, ECF No. 122-1 at 6,
because "[t]his case does not involve, and the government does
not ask that the Court consider at sentencing, an allegation
that [Mr. Flynn] was 'an agent of Russia'[,]" Gov't's Opp'n, ECF
No. 122 at 4. Mr. Flynn is entitled to evidence that is
"*relevant* to the punishment to be imposed." *California v.
Trombetta*, 467 U.S. 479, 485 (1984) (emphasis added). Because
the Court agrees that the requested information is irrelevant to
Mr. Flynn's underlying offense and it is not favorable to his
guilt or punishment, the Court need not consider the other two
elements. *See Sitzmann*, 74 F. Supp. 3d at 137 (declining to
consider each element where defendant failed to identify the
favorability element).

### b. Requests 6, 9, 10, 30 and 31

Mr. Flynn seeks all of the Strzok-Page text messages,
information concerning those text messages, and information
concerning the destruction of the Strzok-Page cell phones and
eradication of cell phone data. *See* Def.'s Mot., ECF No. 111 at

4-5, 7.[6] Mr. Flynn requests all of Mr. Strzok's unredacted electronic communications with various individuals and government employees regarding Mr. Flynn, as well as applications under the Foreign Intelligence Surveillance Act ("FISA"), 50 U.S.C. § 1801 *et seq.*, "or any surveillance (legal or illegal) that would have reached Mr. Flynn's communications." *Id.* at 5. Citing to the IG's three published reports, *see* Def.'s Br., ECF No. 109 at 12 n.14, 13 n.15, Mr. Flynn seeks all evidence concerning the IG's notification to the Special Counsel about the Strzok-Page text messages, the "gaps" in those text messages, and the destruction of their cell phones, *see* Def.'s Mot., ECF No. 111 at 5, 7.

Mr. Flynn first argues that the government's "belated" production of the text messages did not comply with its *Brady*

---

[6] In Request 6, Mr. Flynn asserts that the government should identify "we" in its October 4, 2018 letter to defense counsel. Def.'s Mot., ECF No. 111 at 4. The government uses "we" to refer to itself in its opposition brief, and the Court will assume that "we" refers to "the government." *See* Gov't's Opp'n, ECF No. 122 at 8. "In the Court's view, 'the government' includes any and all agencies and departments of the Executive Branch of the government and their subdivisions." *United States v. Safavian*, 233 F.R.D. 12, 14 (D.D.C. 2005). In Request 10, Mr. Flynn asserts that "the prosecutors did not produce a single text message to the defense until March 13, 2018." Def.'s Mot., ECF No. 111 at 5. Mr. Flynn ignores that the government informed him of the Strzok-Page text messages, including their import, before he signed the Plea Agreement on November 30, 2017, *see* Gov't's Opp'n, ECF No. 122 at 8, and the fact that defense counsel raised no issues with that production at the sentencing hearing on December 18, 2018, *see* Sentencing Hr'g Tr., ECF No. 103 at 10-11.

obligations because that information was not disclosed in time for him to use it, *see* Def.'s Br., ECF No. 109 at 12; he then contends that he could not download certain text messages from the government's hyperlink, Def.'s Reply, ECF No. 133 at 10; and he goes on to argue that the government's production was "long after the actual evidence would have made a material difference" to him, *id*. Mr. Flynn selectively quotes from a batch of the text messages, *see id*. at 11-17, and he points to one, dated January 10, 2017, that states: "Sitting with Bill watching CNN. A TON more out . . . We're discussing whether, now that this is out, we can use it as a pretext to go interview some people." *Id*. at 11. According to Mr. Flynn, the government suppressed that text message, *id*., the word "pretext" means that the entire investigation of him had no basis, *id*., and Mr. Strzok admitted that he had "many meetings" with former FBI Deputy Director Andrew McCabe ("Mr. McCabe") to decide whether to interview Mr. Flynn, Def.'s Sur-Surreply, ECF No. 135 at 3 n.3.[7] Mr. Flynn posits that the "belatedly-disclosed Strzok-Page texts" support

---

[7] The Court notes that Mr. Flynn mischaracterizes the "many meetings" reference in Mr. Strzok's sworn statement (dated July 26, 2017). *See* Def.'s Ex. 5, ECF No. 133-5 at 4. Mr. Strzok, the then-FBI Deputy Assistant Director in the Counterintelligence Division, stated: "I have attended *many meetings* with [Mr.] McCabe regarding *Russian influence investigations*, including meetings which discussed whether to interview former National Security Advisor Michael Flynn and if so, what interview strategies to use." *Id*. (emphasis added).

his new claim that he was "honest with the agents to the best of his recollection at the time, and the agents knew it." Def.'s Reply, ECF No. 133 at 27. Mr. Flynn claims that the government is "still hid[ing] countless" text messages that are "exculpatory and material." *Id.* at 10.

The government disagrees. The government notes—and Mr. Flynn does not challenge—that it "informed [him] about the existence of the text messages and their import on November 30, 2017" before Mr. Flynn signed the Plea Agreement and pled guilty on December 1, 2017, and it "later informed [him] that it had learned there were additional text messages that it did not have access to at that time[.]" Gov't's Surreply, ECF No. 132 at 9 n.6; *see generally* Def.'s Sur-Surreply, ECF No. 135 at 1-17. On March 13, 2018, the government produced to Mr. Flynn certain Strzok-Page text messages after this Court entered the Standing *Brady* Order and the Protective Order in this case. *See* Gov't's App. A, ECF No. 122-1 at 3; *see also* Def.'s Mot., ECF No. 111 at 5. Neither does Mr. Flynn dispute that the government provided him with hard-copy text messages when it became known that those documents were inaccessible at the hyperlink, *see* Gov't's Surreply, ECF No. 132 at 9 n.6, nor does Mr. Flynn deny the government's representation that the text messages are impeaching of Mr. Strzok rather than exculpatory as to Mr. Flynn, *see* Gov't's Opp'n, ECF No. 122 at 17. The government

28

represents that the "CNN" reference in the January 10, 2017 text message concerns a "discussion to conduct interviews based on the public release of a report from Christopher Steele." Gov't's Surreply, ECF No. 132 at 9; *cf*. Mueller Report, ECF No. 79-6 at 14 ("On January 10, 2017, the media reported that [then-FBI Director] Comey had briefed the President-Elect on the Steele reporting[.]").

The Court is not persuaded by Mr. Flynn's arguments. Although there is no exact deadline for the production of *Brady* material, it is a "longstanding constitutional principle that as long as a defendant possesses *Brady* evidence in time for its effective use, the government has not deprived the defendant of due process of law simply because it did not produce the evidence sooner." *United States v. Coppa*, 267 F.3d 132, 144 (2d Cir. 2001).[8] And *Brady* does not extend to information that is not

---

[8] Mr. Flynn relies on *United States v. Pasha*, 797 F.3d 1122, 1139 (D.C. Cir. 2015) and *United States v. Quinn*, 537 F. Supp. 2d 99, 108 (D.D.C. 2008) to support his position that the government failed to produce *Brady* evidence in time for him to use it. *See, e.g.*, Def.'s Reply, ECF No. 133 at 23-24. *Pasha* and *Quinn* are factually distinguishable from this case. In *Quinn*, the court found that the government's actions violated *Brady* for the nondisclosure of information before and after trial that "went to the heart of [the defendant's] defense," 537 F. Supp. 2d at 109, which included failing to: (1) inform the defense that a potential government witness lied about material matters during an investigation; (2) disclose that the government did not intend to call the potential witness as a witness because he was the target of an investigation; and (3) inform the defense about its ongoing plea negotiations with the potential witness before sentencing, *id*. at 108. In *Pasha*, the United States Court of

within the government's possession, *see United States v. Pollack*, 534 F.2d 964, 975 (D.C. Cir. 1976), or information that the government is not aware of, *see United States v. Turner*, 104 F.3d 217, 220 (8th Cir. 1997). Here, the government maintains that, before the parties entered into the Plea Agreement, it disclosed to Mr. Flynn the existence of, but not the actual, Strzok-Page electronic communications of which it was aware at that time and responded to former defense counsel's questions regarding those communications. *See, e.g.*, Gov't's Opp'n, ECF No. 122 at 6; Gov't's App. A, ECF No. 122-1 at 3; Def.'s Ex. 1, ECF No. 133-1 at 3 (stating that "[l]ate afternoon [on November 30, 2017], prosecutors ma[d]e [a] last minute telephonic disclosure of electronic communications" and "[Mr.] Flynn sign[ed] [the] [P]lea [A]greement"). The government provided Mr. Flynn with the Strzok-Page text messages in its possession in

---

Appeals for the District of Columbia Circuit ("D.C. Circuit") upheld the district court's finding that there was a *Brady* violation where "[t]he prosecutor waited over eight months until the eve of *trial* to reveal [*Brady* evidence]." 797 F.3d at 1133 (emphasis added). The prosecutor in that case "acknowledged to the District Court that he had violated [DOJ] policy to provide *Brady* information as soon as he became aware of it." *Id*. at 1127. Nothing of the kind has been acknowledged in this case. Further, Mr. Flynn does not dispute that the government provided him with *Brady* material, relevant documents, and information before and on November 30, 2017. *See* Gov't's Surreply, ECF No. 132 at 3 n.2; *see also* Def.'s Sur-Surreply, ECF No. 135 at 1. The government made additional productions before Mr. Flynn reaffirmed his guilty plea in December 2018. *See* Def.'s Ex. 15, ECF No. 133-15 at 1; *see also* Gov't's Notice of Disc. Correspondence, ECF No. 123 at 1-2.

Case 1:17-cr-00232-EGS   Document 144   Filed 12/16/19   Page 31 of 92

March 2018 and October 2018, and at the December 18, 2018
sentencing hearing, both Mr. Flynn and former defense counsel
stated that they had no "concerns that potential *Brady* material
or other relevant material was not provided to [Mr. Flynn]."
Sentencing Hr'g Tr., ECF No. 103 at 10.

Mr. Flynn argues that information in the Strzok-Page text
messages is exculpatory. *See* Def.'s Reply, ECF No. 133 at 10.
Assuming, without deciding, that the Strzok-Page text messages
contain exculpatory material, Mr. Flynn must establish the other
two elements: suppression and materiality. *See United States v.
Pettiford*, 627 F.3d 1223, 1227 (D.C. Cir. 2010). Mr. Flynn
cannot demonstrate that the government suppressed the allegedly
exculpatory material in the Strzok-Page text messages if he had
access to them. *See United States v. Ballestas*, 795 F.3d 138,
150 (D.C. Cir. 2015) ("Because [the petitioner] had access to
[the *Brady* material] 'in time to make effective use of it,' he
[could not have] show[n] that the government suppressed the
document.") (citation omitted). It is uncontested that Mr. Flynn
and former defense counsel were aware of the existence and
import of the text messages before he accepted the plea offer
and before he pled guilty before Judge Contreras. *See* Gov't's
Surreply, ECF No. 132 at 9 n.6. It is also undisputed that Mr.
Flynn confirmed his plea of guilty before he, along with former
defense counsel, confirmed to this Court that they had no

"concerns that potential *Brady* material or other relevant material was not provided to [Mr. Flynn]." Sentencing Hr'g Tr., ECF No. 103 at 10. Moreover, assuming, *arguendo*, that the text messages were exculpatory and suppressed, Mr. Flynn cannot overcome the materiality threshold for the reasons explained below. *See Strickler*, 527 U.S. at 296 (concluding that petitioner "satisfied two of the three components of a constitutional violation under *Brady*," but petitioner failed to demonstrate that "there [was] a reasonable probability that his conviction or sentence would have been different had [those] materials been disclosed").

Mr. Flynn pled guilty to the underlying offense with knowledge of: (1) the import of the Strzok-Page text messages, *see* Gov't's Surreply, ECF No. 132 at 9 n.6; and (2) the IG's reports concerning the text messages, which were released before Mr. Flynn's original sentencing hearing in 2018, *see* Def.'s Br., ECF No. 109 at 12 n.14. Prior to Mr. Flynn's acceptance of the Plea Agreement, the government informed Mr. Flynn that Mr. Strzok said that Mr. Flynn had a "sure demeanor and did not give any indicators of deception during the interview" and "both interviewing agents had the impression *at the time* that [Mr. Flynn] was not lying or did not think he was lying." Gov't's Opp'n, ECF No. 122 at 16 (emphasis added). Those impressions, however, do not "exonerate" Mr. Flynn of his crime in this case.

*See, e.g.*, Def.'s Ex. 1, ECF No. 133-1 at 1 (Mr. Strzok described to Ms. Page that Mr. Flynn was "denying it all" during the January 24, 2017 interview); Def.'s Ex. 12 (Ms. Page's FD-302), ECF No. 133-12 at 1 (stating that "[i]dications of deception by [Mr.] Flynn in [the interviewing agents'] interaction with [Mr. Flynn] had been hard to see"); *id.* at 2 (stating that Mr. Strzok's text "'denying it all' pertained to [Mr.] Flynn's response to questions in his interview as to whether his conversation with the Russian Ambassador pertained to sanctions").

The government points out—and Mr. Flynn does not dispute—that he made false statements to the FBI about his conversations with the Russian Ambassador, and those same false statements were repeated to the Vice President of the United States, the White House Chief of Staff, the White House Press Secretary, and *The Washington Post*. *See* Gov't's Surreply, ECF No. 132 at 7-8; *see generally* Def.'s Sur-Surreply, ECF No. 135 at 1-17. As noted by the government, those high-ranking government officials then repeated Mr. Flynn's false statements on national television. Gov't's Surreply, ECF No. 132 at 8-9; *cf.* Def.'s Reply, ECF No. 133 at 14-15. Furthermore, Mr. Flynn received the government's productions of the actual Strzok-Page text messages after the entry of the Standing *Brady* Order and before he reaffirmed his guilty plea to this Court on December 18, 2018. Mr. Flynn

33

maintained his guilty plea following the government's disclosures. *See* Gov't's App. A, ECF No. 122-1 at 3. The Court therefore finds that Mr. Flynn has failed to demonstrate there is a reasonable probability that, had the government disclosed the actual Strzok-Page text messages prior to the parties entering into the Plea Agreement, the disclosure would have led to a different result. Accordingly, Mr. Flynn has failed to establish all three elements of a *Brady* violation as to these requests.

### c. Requests 2, 19, 40, a-g, and i

Mr. Flynn requests the disclosure of the FBI's discussions about conducting the January 24, 2017 interview, the debriefings from the interviewing FBI agents after the interview, the interviewing agents' notes from the interview, and other information pertaining to the interview and investigation. *See* Def.'s Mot., ECF No. 111 at 4, 6, 8-9. Specifically, Request 2 seeks "[t]he original draft of Mr. Flynn's 302 and 1A-file, and any FBI document that identifies everyone who had possession of it (parts of which may have been leaked to the press, but the full original has never been produced)." *Id.* at 4. Request 19 seeks "[a]ny [Ms.] Yates 302s or other notes that concern Mr. Flynn, including treatment of her meetings with FBI Agents on January 24 and 25, 2017, her meetings with anyone in the White House, and the draft 302 of the Flynn interview on January 24

34

she reviewed or was read into." *Id.* at 6. Request 40 seeks "[u]nredacted notes of the [REDACTED] and [Mr.] Strzok from the interview of Mr. Flynn on January 24, 2017." *Id.* at 8. Finally, Mr. Flynn requests "the unredacted 302 reports and any notes or recordings in any form of the following meetings or interviews":

> a. [Mr.] McCabe, regarding Mr. Flynn, his calls with Ambassador Kislyak, members of the White House discussing those, and his discussions, planning session, and debriefing session with agents before and after the Flynn interview on January 24, 2017.
>
> b. Recordings, notes, and memoranda by any and all persons who participated in the planning session for the interview of Mr. Flynn, at which it was decided that the agents would not inform him that it was an actual interview or that he was under investigation—so as to keep him "relaxed.". (These persons include David Bowdich, Jen Boone, [REDACTED], [Mr.] Strzok, [Ms.] Page, Trish Andersen, and [Mr.] McCabe.)
>
> c. Recordings, notes, and memoranda by any and all persons who participated in the debriefing sessions following the interview of Mr. Flynn, including [REDACTED], [Mr.] Strzok, Jon Moffa, [Mr.] McCabe, Bill Priestap, David Bowdich, [REDACTED], Trish Andersen, and James Comey.
>
> d. Former Principal Associate Deputy Attorney General Matthew Axelrod regarding Mr. Flynn.
>
> e. [Ms.] McCord regarding the FBI's decision not to give Mr. Flynn a Title 18, Section 1001 warning, and the decision not to re-interview him despite the general practice of the FBI to give subjects that opportunity.
>
> f. [Ms.] Yates, regarding her opinion that the January 24, 2017, surprise interview of Mr. Flynn was problematic and her lack of clarity of the FBI's purpose in investigating Mr.

> Flynn.
>
> g. White House and transition officials
> regarding Mr. Flynn's conversations with
> Ambassador Kislyak.
>
> *    *    *
>
> i. The entire report of the SCO's interview of
> James Comey, provided *in camera* to the Court,
> but only summarized to defense counsel in the
> SCO's letter of December 14, 2018.

*Id.* at 8-9. Mr. Flynn requests this information to "defeat the

factual basis for the plea." Def.'s Reply, ECF No. 133 at 27.

The government responds that Mr. Flynn has already received

the relevant information about the pre-interview discussions and

the post-interview debriefs, including: (1) the interviewing

agents' interview reports; (2) Mr. McCabe's memorandum

describing his telephone conversation with Mr. Flynn on January

24, 2017; (3) the interviewing agents' notes; (4) drafts of the

January 24, 2017 interview reports in its possession; and

(5) summaries of the interviews from the FBI and DOJ officials

who participated in the discussions and debriefs. *E.g.*, Gov't's

Opp'n, ECF No. 122 at 15; Gov't's App. A, ECF No. 122-1 at 2, 4,

6-7. The government argues that any communications between the

FBI and DOJ before and after Mr. Flynn's January 24, 2017 FBI

interview has no bearing on his false statements to the FBI, and

the discussions are not favorable and material to sentencing.

Gov't's Opp'n, ECF No. 122 at 16. The Court agrees.

With respect to Request 2, the government has provided Mr. Flynn with "the January 24 interview report, all drafts of the interview report, and the handwritten notes of the interviewing agents" and the "reports of interviews with the second interviewing agent, who attest[ed] to the accuracy of the final January 24 interview report." Gov't's App. A, ECF No. 122-1 at 2. As to Request 19, the government has already provided Mr. Flynn with "information from [Ms.] Yates' interview report that could reasonably be construed as favorable and material to sentencing" and "all drafts in its possession of the January 24 interview." *Id*. at 4. The only exception to the government's disclosures with regard to Request 19 is the information pertaining to Ms. Yates' meetings with persons in the White House, which is irrelevant to Mr. Flynn's charges in this case or his sentencing. *Id*. Indeed, the Supreme Court has held that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances." *Ruiz*, 536 U.S. at 630.

With respect to Request 40, the government has provided Mr. Flynn with "the interviewing agents' handwritten notes of the January 24 interview," and "[t]he limited redactions of those notes do not refer to information that would be favorable and material to sentencing." Gov't's App. A, ECF No. 122-1 at 6. As to Requests a through f and Request i, the government has

37

provided Mr. Flynn with: (a) "information from interviews with
[Mr.] McCabe that could reasonably be construed as favorable and
material to sentencing"; (b) "information that could reasonably
be construed as favorable and material to sentencing about such
pre-interview discussions, including the language quoted in the
request"; (c) "information about such post-interview debriefings
that could reasonably be construed as favorable and material to
sentencing"; (d) "information from former [Principal] Associate
Deputy Attorney General Matthew Axelrod's interview report that
could reasonably be construed as favorable and material to
sentencing"; (e) "information from [Ms.] McCord's interview
report that could reasonably be construed as favorable and
material to sentencing, including the information quoted in the
request"; (f) "information from [Ms.] Yates' interview report
that could reasonably be construed as favorable and material to
sentencing, including the information quoted in the request";
and (i) "information from the interview of Director Comey dated
November 15, 2017, that could reasonably be construed as
favorable and material to sentencing." *Id*. at 6-7.

Based on an *in camera* review of the government's sealed
submissions to the Court on December 14, 2018, *see, e.g.*, Min.
Order of Dec. 17, 2018; Gov't's Opp'n, ECF No. 122 at 16 n.8;
Gov't's Notice of Disc. Correspondence, ECF No. 123 at 3, the
Court agrees with the government that the requested information

in Requests a through f and Request i has already been provided
to Mr. Flynn in the form of appropriate summaries, *see* Gov't's
App. A, ECF No. 122-1 at 6-7. As to Request g, which seeks the
unredacted FD-302s and notes or recordings of the White House
and transition officials regarding Mr. Flynn's conversations
with the Russian Ambassador, the Court agrees with the
government that to the extent it exists the requested
information is inculpatory and not helpful to Mr. Flynn. *See id*.
at 7.

Unsatisfied with the government's productions, Mr. Flynn
advances several arguments. Mr. Flynn contends that the
interviewing FBI agents' "characterizations" of his statements
in the January 24, 2017 "ambush interview" and their interview
notes "do not support the factual basis" for Mr. Flynn's guilty
plea. Def.'s Reply, ECF No. 133 at 26.[9] He argues that the
interviewing FBI agents' handwritten notes "differ materially
from the 302s" and "there were material alterations to the 302s

---

[9] Mr. Flynn's argument—that Mr. Strzok's handwritten notes do not
appear to have been taken contemporaneously during the January
24, 2017 FBI interview because he was the FBI agent handling the
interview and his notes are more detailed than the other
interviewing agent's notes—is moot. *See* Def.'s Reply, ECF No.
133 at 26-29. The government confirmed that it previously
misidentified the authorship of the agents' handwritten notes
from the January 24, 2017 FBI interview. Gov't's Notice of Disc.
Correspondence, ECF No. 136 at 1. Accordingly, the Court finds
as moot Mr. Flynn's request for Mr. Strzok's handwriting
samples. *See* Def.'s Reply, ECF No. 133 at 29; *see also* Def.'s
Sur-Surreply, ECF No. 135 at 6-7.

to set up the 'false statements'[.]" *Id.* at 20. Acknowledging that the government provided defense counsel with redacted notes and summaries of the FBI's interviews, Mr. Flynn contends that the summaries of certain documents are "insufficient," Def.'s Br., ECF No. 109 at 13, because the redacted notes and summaries cannot replace the "actual documents, notes, 302s, and A-1 files" and "other actual documents, notes, emails, texts or other materials that are exculpatory or might lead to exculpatory evidence," *id.* at 16. Mr. Flynn further argues that the interviewing FBI agents' "notes do not even match each other" and "[t]he notes do not say that he made any false statements at all." Def.'s Sur-Surreply, ECF No. 135 at 8.

Mr. Flynn speculates that the government is suppressing the "original 302" of the January 24, 2017 interview, Def.'s Reply, ECF No. 133 at 28; he claims that the lead prosecutor "made it sound like there was only one 302," *id.* at 29; and he makes a separate request for the FBI to search for the "original 302" in one of the FBI's databases, *id.* at 28-30. In Mr. Flynn's view, the "original 302"—if it exists—may reveal that the interviewing FBI agents wrote in the report "their impressions that [Mr.] Flynn was being truthful." *Id.* at 28. Mr. Flynn claims that the FBI destroyed the "original 302" to the extent that it was stored in the FBI's files. *Id.* at 30. Comparing draft FD-302s of Mr. Flynn's January 24, 2017 interview to the final version, Mr.

Flynn claims that the FBI manipulated the FD-302 because "substantive changes" were made after reports that Mr. Flynn discussed sanctions with the Russian Ambassador "contrary to what Vice President Pence had said on television previously." *Id.* at 14-15. Mr. Flynn points to the Strzok-Page text messages the night of February 10, 2017 and Ms. Page's edits to certain portions of the draft FD-302 that were "material." Def.'s Sur-Surreply, ECF No. 135 at 8-9.

To the extent Mr. Flynn has not already been provided with the requested information and to the extent the information exists, the Court is not persuaded that Mr. Flynn's arguments demonstrate that he is entitled to the requested information. For starters, the Court agrees with the government that there were no material changes in the interview reports, and that those reports track the interviewing FBI agents' notes. *See, e.g.*, Gov't's Surreply, ECF No. 132 at 4; Def.'s Reply, ECF No. 133 at 20. Mr. Flynn ignores that FBI agents rely on their *notes* and *memory* to draft the interview reports after the completion of an interview. *See United States v. DeLeon*, 323 F. Supp. 3d 1285, 1290 n.4 (D.N.M. 2018) (discussing the drafting process for FD-302s). While handwritten notes may contain verbatim statements, the notes of FBI agents are not verbatim transcripts of the interview. *United States v. Forbes*, No. CRIM.302CR264AHN, 2007 WL 141952, at *3 (D. Conn. Jan. 17, 2007). And persuasive

authority holds that the government's production of summaries of notes and other documents does not constitute a *Brady* violation. *See, e.g.*, *United States v. Grunewald*, 987 F.2d 531, 535 (8th Cir. 1993) (finding no Jencks Act or *Brady* violations where the government produced summaries of handwritten notes instead of the actual notes); *United States v. Van Brandy*, 726 F.2d 548, 551 (9th Cir. 1984) (holding that the government fulfilled its *Brady* obligations by producing summaries of the FBI's file because *Brady* "does not extend to an unfettered access to the files").

As an initial matter, the Court notes that the government has provided Mr. Flynn with the relevant FD-302s and notes rather than summaries of them. *See, e.g.*, Gov't's Surreply, ECF No. 132 at 6-7; Gov't's Opp'n, ECF No. 122 at 10, 15; Gov't's App. A, ECF No. 122-1 at 2; Gov't's Notice of Disc. Correspondence, ECF No. 123 at 1-3. And the government states that it will provide Mr. Flynn with the FD-302s of his post-January 24, 2017 interviews. Gov't's Opp'n, ECF No. 122 at 4 n.1. Having carefully reviewed the interviewing FBI agents' notes, the draft interview reports, the final version of the FD-302, and the statements contained therein, the Court agrees with the government that those documents are "consistent and clear that [Mr. Flynn] made multiple false statements to the [FBI] agents about his communications with the Russian Ambassador on

42

January 24, 2017." Gov't's Surreply, ECF No. 132 at 4-5. The
Court rejects Mr. Flynn's request for additional information
regarding the drafting process for the FD-302s and a search for
the "original 302," *see* Def.'s Sur-Surreply, ECF No. 135 at 8-
10, because the interviewing FBI agents' notes, the draft
interview reports, the final version of the FD-302, and Mr.
Flynn's own admissions of his false statements make clear that
Mr. Flynn made those false statements. Perhaps realizing that
his various arguments would not prevail, Mr. Flynn argues that
his false statements were not material. Def.'s Reply, ECF No.
133 at 31-32. The Court will address the remaining arguments in
turn.

### i. Mr. Flynn's False Statements Regarding His Request to the Russian Ambassador That Russia Refrain From Escalating the Situation in Response to the U.S. Sanctions

As to Mr. Flynn's first set of false statements, *see* SOF,
ECF No. 4 at 2-3 ¶ 3, the interviewing FBI agents' handwritten
notes, draft interview reports, and the final FD-302 confirm
that Mr. Flynn falsely stated that he had no recollection about
his request to the Russian Ambassador to refrain from escalating
the situation in response to U.S. sanctions, and that Mr. Flynn
falsely stated that he did not have a long conversation about

that issue.[10] The final version of the FD-302, in relevant part, provides:

> The interviewing agents asked FLYNN if he recalled any conversation with KISLYAK in which the expulsions were discussed, where FLYNN might have encouraged KISLYAK not to escalate the situation, to keep the Russian response reciprocal, or not to engage in a "tit-for-tat." FLYNN responded, "Not really. I don't remember. It wasn't, 'Don't do anything.'" The U.S. Government's response was a total surprise to FLYNN. FLYNN did not know about the Persona Non-Grata (PNG) action until it was in the media.

> \* \* \*

> The interviewing agents asked FLYNN if he recalled any conversation with KISLYAK in which KISLYAK told him the Government of Russia had taken into account the incoming administration's position about the expulsions, or where KISLYAK said the Government of Russia had responded, or chosen to modulate their response, in any way to the U.S.'s actions as a result of a request by the incoming administration. FLYNN stated it was possible that he talked to KISLYAK on the issue, but if he did, he did not remember doing so.

> \* \* \*

---

[10] The government attached as exhibits to its surreply brief the drafts of the FD-302 from Mr. Flynn's January 24, 2017 FBI interview. Gov't's Ex. 3, ECF No. 132-3 at 2-16. Each draft FD-302 is identified by the unique document numbers on each page: (1) the first draft FD-302 is numbered DOJSCO-700022293 through DOJSCO-700022297, *id*. at 2-6; (2) the second draft FD-302 is numbered DOJSCO-700022303 through DOJSCO-700022307, *id*. at 7-11; and (3) the third draft FD-302 is numbered DOJSCO-700022308 through DOJSCO-700022312, *id*. at 12-16. Mr. Flynn attached the final FD-302 as an exhibit to his reply brief. Def.'s Ex. 11, ECF No. 133-11 at 10-14.

> FLYNN reflected and stated he did not think he
> would have had a conversation with KISLYAK
> about the matter, as he did not know the
> expulsions were coming. FLYNN stated he did
> not have a long drawn out discussion with
> KISLYAK where he would have asked him to
> "don't do something."

Def.'s Ex. 11, ECF No. 133-11 at 14. The interviewing FBI

agents' handwritten notes and draft interview reports provide

ample support for the final FD-302's description of Mr. Flynn's

false statements. *See, e.g.*, Gov't's Ex. 1 (Other FBI Agent's

Notes), ECF No. 132-1 at 4 ("Ø recollection? Not really, I don't

remember. Hey don't do anything"; "Ø long drawn out about don't

do something"); Gov't's Ex. 2 (Mr. Strzok's Notes), ECF No. 132-

2 at 5 ("Spoke on 29th"; "Expectations"; "Surprise"; "No

recollection of that"); Gov't's Ex. 3 (Draft FD-302s), ECF No.

132-3 at 5-6 ("FLYNN was asked . . . if he recalled any

conversation with KISLYAK in which the expulsions were

discussed, where FLYNN might have encouraged KISLYAK to not

escalate the situation, to keep the Russian response reciprocal,

to not engage in a 'tit-for-tat.' FLYNN responded, 'Not really.

I don't remember. It wasn't, 'Don't do anything.' The U.S.

Government response was a total surprise to FLYNN. FLYNN didn't

know about the Persona Non-Grata (PNGs) action it [sic] until it

was in the media."); *id.* at 11 ("FLYNN stated it was possible

that he talked to KISLYAK on the issue, but if he did, he did

not remember doing so"; "FLYNN stated he did not have a long

Case 1:17-cr-00232-EGS   Document 144   Filed 12/16/19   Page 46 of 92


drawn out discussion with KISLYAK where he would have asked him to 'don't do something.'"); *id.* at 16 (same).

Mr. Flynn points to an inconsistency between the final FD-302 and the interviewing FBI agents' notes, *see* Def.'s Reply, ECF No. 133 at 30-31, as to whether Mr. Flynn remembered making calls to the Russian Ambassador during his vacation in the Dominican Republic in late December 2016. *Compare* Def.'s Ex. 11 (Final FD-302), ECF No. 133-11 at 14 ("FLYNN remembered making four to five calls that day about this issue, but that the Dominican Republic was a difficult place to make a call as he kept having connectivity issues."), *with* Gov't's Ex. 1 (Other FBI Agent's Notes), ECF No. 132-1 at 4 ("I Ø remember making 4-5 calls"; "If I did lousy place to call.") *and* Gov't's Ex. 2 (Mr. Strzok's Notes), ECF No. 132-2 at 5 ("4-5 calls that day? If so, don't remember. If so, lousy place to make phone calls"). However, any inconsistency is inconsequential because the SOF excludes any references to Mr. Flynn's memory of the four or five calls made from the Dominican Republic. *See generally* SOF, ECF No. 4 at 1-5.

Accordingly, the Court finds that the notes, draft FD-302s, and final FD-302 are both consistent and clear that Mr. Flynn made false statements to the FBI about his communications with the Russian Ambassador regarding his request that Russia refrain from escalating the situation in response to the U.S. sanctions

against Russia.

### ii. Mr. Flynn's False Statements Regarding His Request That Countries Vote Against or Delay a U.N. Security Council Resolution

As to Mr. Flynn's second set of false statements, *see* SOF, ECF No. 4 at 4-5 ¶ 4, the handwritten notes, draft FD-302s, and the final FD-302 confirm that Mr. Flynn falsely stated that he did not request certain countries to take any action on Egypt's resolution on Israeli settlements to the U.N. Security Council, that he only asked the countries for their respective positions, and that the Russian Ambassador never described Russia's response to Mr. Flynn's request regarding the resolution. The final FD-302, in pertinent part, states:

> The interviewing agents asked FLYNN if he recalled any discussions with KISLYAK about a United Nations (UN) vote surrounding the issue of Israeli settlements. FLYNN quickly responded, "Yes, good reminder." On the 22nd of December, FLYNN called a litany of countries to include Israel, the UK, Senegal, Egypt, maybe France and maybe Russia/KISLYAK.
>
> * * *
>
> FLYNN stated he conducted these calls to attempt to get a sense of where countries stood on the UN vote, specifically, whether they intended to vote or abstain. The interviewing agents asked FLYNN if he made any request of KISLYAK to vote in a particular way or take any action. FLYNN stated he did not.
>
> * * *
>
> FLYNN stated his calls were about asking where countries would stand on a vote, not any

  requests of, "hey if you do this." The
  interviewing agents asked FLYNN if he made any
  comment to KISLYAK about voting in a certain
  manner, or slowing down the vote, or if
  KISLYAK described any Russian response to a
  request by FLYNN. FLYNN answered, "No." FLYNN
  stated the conversations were along the lines
  of where do you stand, and what's your
  position. FLYNN heard through other channels
  that Egypt did not like the vote, and believed
  the Egyptians of their own accord delayed the
  vote a day.

Def.'s Ex. 11, ECF No. 133-11 at 12-13. Mr. Flynn's false

statements, as described in the final FD-302, are supported by

the interviewing FBI agents' notes and the draft FD-302s. *See,*

*e.g.*, Gov't's Ex. 1 (Other FBI Agent's Notes), ECF No. 132-1 at

3 ("UN Vote – Settlements. Yes good reminder. Yeah so 22nd

December. Litany Countries get sense where stood on that vote.

UK. Senegal. Egypt, Israel, maybe France. Maybe Kislyak."); *id.*

("Get a sense abstain, veto. This very"; "More where they stand.

I Ø believe we would change anything"; "Only US Abstain. US.

Wasn't hey if you do this it will be that kind of thing, hey

where do you stand;" "Ø please consider voting this way?"; "No.

Where do you stand? What's position."); Gov't's Ex. 2 (Mr.

Strzok's Notes), ECF No. 132-2 at 4 ("That's a good reminder";

"22 Dec UN"; "Egypt"; "Israel"; "Senegal"; "France"; "Called a

bunch"; "UK"; "Don't know if called K maybe I did"; "14 total 5

+ x Need to abstain"; "What is your position"; "No: hey if you

do this"; "Any vote this way, slow down"; "No"; "Appreciate you

reminding me that was another convo"); Gov't's Ex. 3 (Draft FD-302s), ECF No. 132-3 at 4-5, 9-10, 14-15 (substantially similar). The Court therefore finds that the notes, draft FD-302s, and final FD-302 provide ample support that Mr. Flynn made false statements to the FBI about his communications with the Russian Ambassador regarding his request that foreign officials vote against or delay the U.N. Security Council resolution.

### iii. Mr. Flynn's False Statements Were Material

Mr. Flynn argues that his false statements to the FBI were not "material" for two reasons. *See* Def.'s Reply, ECF No. 133 at 31-32. First, Mr. Flynn contends that his conversations with the Russian Ambassador were unrelated to the FBI's investigation into Russia's efforts to interfere in the 2016 presidential election because the interviewing FBI agents did not ask him a single question about election interference or any coordination between Russia and the Trump campaign. *See id*. Next, Mr. Flynn argues that the FBI had recordings and transcripts of his conversations with the Russian Ambassador, arguing that the FBI "knew exactly what was said" and "nothing impeded [the FBI's] purported investigation." Def.'s Sur-Surreply, ECF No. 135 at 12. The government responds that Mr. Flynn's false statements were "absolutely material" because his false statements "went to the heart" of the FBI's "counterintelligence investigation into whether individuals associated with the campaign of then-

candidate Donald J. Trump were coordinating with the Russian government in its activities to interfere with the 2016 presidential election." Gov't's Surreply, ECF No. 132 at 10.

Mr. Flynn advances these new arguments without citation to any legal authority. *See* Def.'s Reply, ECF No. 133 at 31-32; *see also* Def.'s Sur-Surreply, ECF No. 135 at 11-12. Although Mr. Flynn's arguments were raised for the first time in his reply brief, *see* Gov't's Notice of Claims Raised for the First Time in Reply, ECF No. 131 at 1-3, the Court will consider them because the government had the opportunity to address them in its Surreply, *see Permapost Prod., Inc. v. McHugh*, 55 F. Supp. 3d 14, 18 n.1 (D.D.C. 2014) (considering additional arguments raised in reply and surreply briefs). Mr. Flynn's first argument fails to appreciate the FBI's strategic decisions and investigative techniques. *Cf. United States v. VanMeter*, 278 F.3d 1156, 1159 (10th Cir. 2002) (FBI uses "a variety of conventional investigation techniques" to "unearth[] numerous leads"). Mr. Flynn's second argument is foreclosed by D.C. Circuit precedent. *See United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010) (holding that "a statement is material if it has a natural tendency to influence, or is capable of influencing, either a discrete decision or any other function of the agency to which it was addressed").

Mr. Flynn has a fundamental misunderstanding of the law of

materiality under 18 U.S.C. § 1001(a)(2), which requires a false statement to be "material." *United States v. Stone*, 394 F. Supp. 3d 1, 12 (D.D.C. 2019) (materiality is a necessary element to establish a violation of the false statements statute). The Supreme Court has instructed that "[t]he statement must have 'a natural tendency to influence, or [be] capable of influencing, the decision of the decisionmaking body to which it was addressed.'" *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)); *accord United States v. Diggs,* 613 F.2d 988, 999 (D.C. Cir. 1979) ("Proof of actual reliance on the statement is not required; the Government need only make a reasonable showing of its potential effects."). But "a statement need not actually influence an agency in order to be material." *Moore*, 612 F.3d at 701.

As a matter of law, the government need not prove that Mr. Flynn's false statements impeded the FBI's investigation in order to establish the materiality element. *See id*. at 702 (holding that defendant's false statement "was capable of affecting the Postal Service's general function of tracking packages and identifying the recipients of packages entrusted to it" and defendant's false information "could have impeded the ability of the Postal Service to investigate the trafficking of narcotics through the mails"). And Mr. Flynn's multiple false

statements were material regardless of the interviewing FBI
agents' knowledge of any recordings and transcripts of his
conversations with the Russian Ambassador—the existence or non-
existence of which have neither been confirmed nor denied by the
government, *see* Gov't's App. A, ECF No. 122-1 at 5—and whether
the FBI had knowledge of Mr. Flynn's exact words during those
conversations. *See United States v. Safavian*, 649 F.3d 688, 691
(D.C. Cir. 2011) (rejecting defendant's argument that his false
statements were not material where the interviewing FBI agent
"knew, based upon his knowledge of the case file, that the
incriminating statements were false when [the defendant] uttered
them").

Mr. Flynn's other argument—that his false statements about
his conversations with the Russian Ambassador were not related
to the investigation into Russia's efforts to interfere in the
election—is unavailing. "Application of § 1001 does not require
judges to function as amateur sleuths, inquiring whether
information specifically requested and unquestionably relevant
to the department's or agency's charge would really be enough to
alert a reasonably clever investigator that wrongdoing was
afoot." *United States v. Hansen*, 772 F.2d 940, 950 (D.C. Cir.
1985). Here, Mr. Flynn's false statements to the FBI about his
conversations with the Russian Ambassador were relevant to the
FBI's inquiry. *See* SOF at 1 ¶ 1. It is undisputed that the FBI

52

had already opened the investigation to, among other things,
investigate the "nature of any links between individuals
associated with the [Trump] Campaign and Russia" at the time of
Mr. Flynn's January 24, 2017 interview. *Id.* A "lie distorting an
investigation already in progress" could impact the FBI's
decision to act and follow leads. *Hansen*, 772 F.2d at 949;
*accord United States v. Stadd*, 636 F.3d 630, 639 (D.C. Cir.
2011) (defendant's false statements were material because the
truth "would have raised red flags that would have led [the
agency's ethics advisor] to inquire further"). As Judge Amy
Berman Jackson has noted, "it is axiomatic that the FBI is not
precluded from following leads and, if warranted, opening a new
investigation based on those leads when they uncover information
in the course of a different investigation." *Kelley v. FBI*, 67
F. Supp. 3d 240, 287 n.35 (D.D.C. 2014). The Court therefore
finds that Mr. Flynn's false statements were material within the
meaning of 18 U.S.C. § 1001(a)(2).

### d. Requests 7, 12, and 14

Request 7 seeks "[a]ll documents, reports, correspondence,
and memoranda, including any National Security letter or FISA
application, concerning any earlier investigation of Mr. Flynn,
and the basis for it." Def.'s Mot., ECF No. 111 at 4. Request 12
seeks "[u]nredacted copies of all memos created by or other
communications from James Comey that mention or deal with any

investigation, surveillance, FISA applications, interviews, or use of a confidential human source or 'OCONUS lures' against Mr. Flynn." *Id.* at 5; *see* Def.'s Reply, ECF No. 134 at 2 (defining "OCONUS lures" as "'outside continental U.S.' persons tasked by American intelligence . . . to spy on Americans or lure them into contacts with Russians"). Request 14 seeks the "Comey 302 for November 15, 2017, and all Comey 302s that bear on or mention Mr. Flynn." Def.'s Mot., ECF No. 111 at 5.

The government responds—and Mr. Flynn does not deny—that it has already provided Mr. Flynn with the information in Requests 7, 12, and 14 that "could reasonably be construed as favorable and material to sentencing." Gov't's App. A, ECF No. 122-1 at 2-3. And Mr. Flynn attaches the "Relevant Comey Memos," Def.'s Reply, ECF No. 133 at 4, as exhibits to his reply brief, *see* Def.'s Ex. 3, ECF No. 133-3 at 1-4. The Court therefore finds that Mr. Flynn has failed to demonstrate that he is entitled to the requested information in Requests 7, 12, and 14 to the extent it has not already been provided to him.

### e. Request 22

Request 22 seeks "[a]ny and all evidence that during a senior-attended FBI meeting or video conference, [Mr.] McCabe said 'First we f[**]k Flynn, then we f[**]k Trump,' or words to that effect." Def.'s Mot., ECF No. 111 at 6. The government responds that this request falls into the "already provided"

category because the government has "provided extensive evidence

to [Mr. Flynn] disproving this allegation, including statements

from both interviewing agents." Gov't's App. A, ECF No. 122-1 at

4. And the government contends that it is unaware of evidence

that Mr. McCabe made the alleged statements. Gov't's Opp'n, ECF

No. 122 at 9. Mr. Flynn does not challenge the government's

evidence, and his exhibits to his reply brief refute the alleged

statements. *See, e.g.*, Def.'s Ex. 12, ECF No. 133-12 at 1 (Ms.

Page: "At no point in time did [Mr.] McCabe say 'F[**]k [Mr.]

Flynn.'"); Def.'s Ex. 133-5 at 3 (Mr. Strzok: "[M]y impression

of the [alleged statements] is that it is ludicrous."). Because

the Court agrees that the government has already provided Mr.

Flynn with information to disprove the alleged statements, the

Court therefore finds that Mr. Flynn has not established that he

is entitled to the information in Request 22, to the extent it

has not already been provided to him.

### f. Request 33

Request 33 seeks "*Brady* or *Giglio* material newly discovered

by the government (and by the [IG] in his separate

investigations) in the last two years." Def.'s Mot., ECF No. 111

at 7. Mr. Flynn does not explain how this requested information

is non-duplicative of the *Brady* motions themselves. *See id.* The

government responds that it has already provided Mr. Flynn with

the information requested in Request 33. Gov't's App. A, ECF No.

55

122-1 at 5. The Court therefore finds that Mr. Flynn has failed
to demonstrate that he is entitled to the requested information
in Request 33 to the extent it has not already been provided to
him.

### g. Request h

Request h—seeking the unredacted FD-302s, notes, or
recordings of the meetings or interviews with "Michael Boston,
Phil Oakley, Carl Pilgrim, Graham Miller, regarding [FIG] and
Mr. Flynn, and Brian McCauley, regarding Mr. Flynn's desire to
file FIG's FARA registration 'the right way' with the DOJ,"
Def.'s Mot., ECF No. 111 at 9—falls within the "already
provided" category. Although it is undisputed that the
government did not bring criminal charges against Mr. Flynn for
willfully failing to register under FARA, *see, e.g.*, Gov't's
App. A, ECF No. 122-1 at 7; Def.'s Reply, ECF No. 133 at 21, the
government responds that it "had previously provided information
from the interview reports of the listed persons pertaining to
[Mr. Flynn's] desire to register 'the right way' with the DOJ"
and that "[t]he only listed person who made such a statement was
Brian McCauley," Gov't's App. A, ECF No. 122-1 at 7. Mr. Flynn
does not deny the government's response to this request. *See
generally* Def.'s Reply, ECF No. 133 at 21. The Court therefore
finds that Mr. Flynn has not satisfied his burden of
demonstrating that he is entitled to the requested information

in Request h to the extent it has not already been provided to him.

### 5. Information that Is Unrelated to the Charges Against Mr. Flynn or to His Sentencing

#### a. Requests 8, 15, 16, and Mr. Flynn's *Brady* Motion, ECF No. 124

In Requests 8, 15, 16, and Mr. Flynn's motion for newly-discovered *Brady* evidence, ECF No. 124, Mr. Flynn seeks information, including documents and communications, regarding: (1) human resources or "OCONUS lures against Mr. Flynn since his departure as the Director of the United States Defense Intelligence Agency ("DIA") in 2014; (2) "[n]otes and documents of any kind dealing with any briefings that Mr. Flynn provided to DIA after he left the government"; (3) information "about Joseph Mifsud's [("Mr. Mifsud")] presence and involvement in engaging or reporting on Mr. Flynn" and Mr. Mifsud's presence at a dinner in Russia in December 2015; and (4) data and metadata in Mr. Mifsud's two Blackberry devices. *E.g.*, Def.'s Mot., ECF No. 111 at 4-5; Def.'s Suppl., ECF No. 116 at 1; Def.'s Mot. to Compel Newly Discovered Brady Evid., ECF No. 124 at 1-2. The government responds that this case "does not involve conduct or communications before July 2016." Gov't's Opp'n, ECF No. 122 at 4. The government contends that these requests—concerning Mr. Mifsud, documents about Mr. Flynn's briefings to DIA, and the human resources or "OCONUS lures" since Mr. Flynn's tenure at

DIA—cover topics that are irrelevant and unrelated to either Mr. Flynn's false statements to the FBI on January 24, 2017 or to his punishment. *See* Gov't's App. A, ECF No. 122-1 at 31; *see also* Gov't's Opp'n, ECF No. 130 at 1-2.

For his part, Mr. Flynn argues that his requests for information about the DIA briefings and debriefings will "exonerate him of being any kind of foreign agent." Def.'s Reply, ECF No. 133 at 34. Mr. Flynn asserts that the reference to "OCONUS lures" in the Strzok-Page text messages means that there is some evidence that Mr. Mifsud was one of the people outside the United States used to either "spy on Americans or lure them into contacts with Russia . . . ." Def.'s Reply, ECF No. 134 at 2. That theory, however, has no relation to Mr. Flynn's false statements or his sentencing, and Mr. Flynn does not explain how it satisfies the favorability element. *See* Def.'s Reply, ECF No. 134 at 2; *see also* Def.'s Reply, ECF No. 133 at 19 n.12. Rather, Mr. Flynn attacks the impetus of the criminal investigation, arguing that Mr. Mifsud's devices "may" provide evidence that the government "concoct[ed] a pretext" to investigate Mr. Flynn. Def.'s Reply, ECF No. 134 at 3.

The government argues that "[Mr.] Mifsud is connected to the criminal activity of George Papadopoul[o]s," a person who pled guilty to lying to the FBI about his interactions with Mr. Mifsud. Gov't's Opp'n, ECF No. 130 at 2 (citing SOF, *United*

58

*States v. Papadopoulos*, Crim. Action No. 17-182 (D.D.C. Oct. 5, 2017), ECF No. 19). The government points out that the Mueller Report contains no references connecting Mr. Flynn and Mr. Mifsud. Gov't's Opp'n, ECF No. 130 at 2. By not responding to those points, Mr. Flynn has conceded them. *See* Def.'s Reply, ECF No. 134 at 1-4. Nonetheless, the Court agrees with the government that those requests are unrelated to Mr. Flynn's false statements and sentencing and are outside of the relevant time period in this case. And Mr. Flynn has failed to demonstrate that the DIA information is favorable to his false statements. *See Sitzmann*, 74 F. Supp. 3d at 134-35.

The Court therefore finds that Mr. Flynn has failed to establish the requisite elements of a *Brady* claim as to Requests 8, 15, 16, and Mr. Flynn's *Brady* motion, ECF No. 124.[11]

---

[11] The Court rejects Mr. Flynn's argument that the government's August 16, 2019 production—a total of 330 pages of documents provided in response to a Congressional inquiry and as a courtesy to Mr. Flynn—constitutes a *Brady* violation. *See* Def.'s Mot., ECF No. 111 at 2-3; *see also* Gov't's Notice of Disc. Correspondence, ECF No. 123 at 2. Mr. Flynn contends that the government withheld this production, which shows the renewal of his security clearance and that he passed a polygraph test in 2016. Def.'s Mot., ECF No. 111 at 3. According to the government, the production consisted of Mr. Flynn's "questionnaires to obtain a security clearance and Department of Defense directives, and included no new information that was relevant to the defendant's false statements to the FBI on January 24, 2017." Gov't's Opp'n, ECF No. 122 at 11. Mr. Flynn does not challenge the government's representations. *See generally* Def.'s Reply, ECF No. 133 at 5-36. The Court agrees with the government that such information is irrelevant to Mr. Flynn's false statements in this case and his sentencing.

**b. Requests 1, 3, 4, 11, 17, 21, 25, 28, and 35**

Mr. Flynn requests certain information regarding the circumstances that led to his January 24, 2017 FBI interview, the events surrounding his prosecution, and any earlier investigations into him. *See* Def.'s Mot., ECF No. 111 at 3-7. Specifically, Request 1 seeks a letter from the British Embassy to the National Security team for the incoming Trump Administration after the November 2016 election that allegedly discredits reporting by former British intelligence officer Christopher Steele ("Mr. Steele"). *Id.* at 3-4; *see also* Def.'s Reply, ECF No. 133 at 35 (arguing that the letter "undermines the entire 'Russian-collusion' fable that [the then-FBI Director and other government officials] used to justify their unlawful conduct").[12] Request 3 seeks "[a]ll documents, notes, information, FBI 302s, or testimony regarding Nellie Ohr's research on Mr. Flynn and any information about transmitting it to the DOJ, CIA, or FBI." *Id.* at 4; *see* Def.'s Suppl., ECF No.

---

[12] "The word 'collusion' does not even appear in the [then-Acting Attorney General's] Appointment Order, and the Special Counsel was tasked with taking over the existing investigation, 'including' 'any links and/**or** coordination.'" *United States v. Manafort*, 312 F. Supp. 3d 60, 72 (D.D.C. 2018) (citation omitted); *cf.* Mueller Report, ECF No. 79-1 at 10 ("[C]ollusion is not a specific offense or theory of liability found in the United States Code, nor is it a term of art in federal criminal law."). The Special Counsel identified several links between the Russian government and the Trump campaign. Mueller Report, ECF No. 79-1 at 9.

116 at 1 ("Any drafts, electronic communications ('ECs'),
emails, and texts related to Nellie Ohr's research on Mr. Flynn,
and all CIA cables on the topic as well."). Request 4 seeks
"[a]ll payments, notes, memos, correspondence, and instructions
by and between the FBI, CIA, or DOD with Stefan Halper—going
back as far as 2014—regarding [Mr.] Flynn," and several other
individuals. Def.'s Mot., ECF No. 111 at 4; *see also* Def.'s
Suppl., ECF No. 116 at 1.

Request 11 seeks "[a]ll evidence of press contacts between
the Special Counsel Office, including Andrew Weissmann, Ms.
Ahmad, and Mr. Van Grack from the departure of [Mr.] Strzok from
[the] Special Counsel team until December 8, 2017, regarding Mr.
Flynn." Def.'s Mot., ECF No. 111 at 5. Request 17 seeks "[a]ll
notes, memoranda, 302s, and other information about the McCabe-
Strzok meeting or meetings with Vice President-Elect or Vice
President Pence . . . ." *Id*. Request 21 seeks "[a]ll information
provided by Kathleen Kavalec at the Department of State to the
FBI regarding [Mr.] Steele prior to the first FISA application."
*Id*. at 6. Request 25 seeks "[a]ll documents, notes, information,
FBI 302s, or testimony regarding any debriefing that Bruce Ohr
gave to anyone in the FBI or Department of Justice regarding
[Mr.] Steele." *Id*. Request 28 seeks "[i]nformation identifying
reporters paid by Fusion GPS and/or the Penn Quarter group to
push 'Russia Collusion,' communications regarding any stories

about Mr. Flynn, and any testimony or statements about how the reporters were used by the government regarding Mr. Flynn." *Id*. Request 35 seeks "[a]ll FBI 302s, notes, memoranda of James Clapper regarding Mr. Flynn, and the cell phone and home phone records of Mr. Clapper and David Ignatius between December 5, 2016, and February 24, 2017." *Id*. at 7.

The government responds—and the Court agrees—that each request is not relevant to Mr. Flynn's false statements during his January 24, 2017 FBI interview or to his sentencing. Gov't's App. A, ECF No. 122-1 at 2-5. Mr. Flynn fails to make out a *Brady* claim for the requested information regarding any earlier investigations, the circumstances that led to the January 24, 2017 FBI interview, or the events surrounding his prosecution because Mr. Flynn fails to establish the favorability element. Even assuming, *arguendo*, that the information regarding the circumstances that led to Mr. Flynn's January 24, 2017 FBI interview, the events surrounding his prosecution, and any earlier investigations were both exculpatory and suppressed, Mr. Flynn bears the burden of showing a reasonable probability of a different outcome. *Strickler*, 527 U.S. at 291. "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley*, 473 U.S. at 682 ("A 'reasonable probability' is a probability sufficient to

undermine confidence in the outcome."). Mr. Flynn cannot overcome this hurdle.

Mr. Flynn appears to seek this information to: (1) support his claims of government misconduct; and (2) cast doubt on the legal basis for the FBI's investigation. *See* Def.'s Reply, ECF No. 133 at 19, 19 n.13, 34-35. Mr. Flynn also asserts, without support, that the Special Counsel's Office was "manipulating or controlling the press to their advantage to extort the plea." Def.'s Br., ECF No. 109 at 4. Regardless of Mr. Flynn's new theories, he pled guilty twice to the crime, and he fails to demonstrate that the disclosure of the requested information would have impacted his decision to plead guilty.

To be sure, Mr. Flynn was aware of the circumstances of the January 24, 2017 interview, and the allegations of misconduct against the FBI officials before he entered his guilty pleas. Sentencing Hr'g Tr., ECF No. 103 at 8-9. Mr. Flynn did not challenge those circumstances, and he stated, under oath, that he was aware that lying to the FBI was a crime. *Id*. In response to this Court's questions, Mr. Flynn maintained his guilty plea. *Id*. at 9-10. None of Mr. Flynn's arguments demonstrate that prejudice ensued. *See Strickler*, 527 U.S. at 291. The Court therefore finds that there was no reasonable probability that Mr. Flynn would not have pled guilty had he received the requested information in Requests 1, 3, 4, 11, 17, 21, 25, 28,

and 35.

### c. Requests 24, 26, and 27

Mr. Flynn seeks all FISA applications relating to him and the "Russia matter," and other information concerning the FISA applications since 2015. Def.'s Mot., ECF No. 111 at 6. Request 24 seeks "[a]ll information that underlies the several FISA applications, including any information showing that any of the assertions in the applications were false, unverified, or unverifiable." *Id*. Request 26 seeks "[t]estimony, interviews, 302s, notes of interviews of all persons who signed FISA applications regarding Mr. Flynn or anyone that would have reached Mr. Flynn's communications, without regard to whether those applications were approved or rejected." *Id*. Request 27 seeks "[a]ll FISA applications since 2015 related to the Russia matter, whether approved or rejected, which involve Mr. Flynn or reached his communications with anyone." *Id*.

The government responds that Requests 24, 26, and 27 are overly broad, Gov't's App. A, ECF No. 122-1 at 4-5, and the requested information regarding the FISA applications do not "pertain to information that would be favorable and material to sentencing." *Id*. Mr. Flynn fails to offer a specific response to the government's arguments; instead, he posits that "the FBI and DOJ had no legal basis to obtain a FISA warrant against Carter Page or to investigate Mr. Flynn." Def.'s Reply, ECF No. 133 at

19.[13] Mr. Flynn has tailored numerous requests under the theory that his crime should not be viewed in a "vacuum" because his "improper interview," the interviewing FBI agents' conduct, and the "broader landscape" of the "unjust prosecution are all relevant to Mr. Flynn's alleged guilt." *Id.* at 26.

Mr. Flynn hypothesizes that the government has suppressed evidence that could support his Fourth Amendment defenses, *id.*, citing Judge Rosemary Collyer's redacted opinion in a separate proceeding, Def.'s Mot., ECF No. 109 at 8. Under Mr. Flynn's theory, "[i]nformation was obtained against [him] either through the illegal FISA warrant on Carter Page, baseless National Security Letters, an undisclosed FISA warrant, or the abuses of the [National Security Agency ("NSA")] database documented in the heavily redacted opinion of Judge Rosemary Collyer." Def.'s Reply, ECF No. 133 at 19 n.13. Mr. Flynn contends that there

---

[13] Mr. Page was a foreign policy advisor to then-candidate Trump, and the Special Counsel investigated Mr. Page as part of the investigation into Russia's interference in the 2016 election. *See* Mueller Report, ECF No. 79-2 at 1, 30. As Judge Mehta has observed, the President declassified "information concerning the 'Dossier'—the 35-page compilation of memoranda prepared by [Mr.] Steele concerning Russian efforts to influence the 2016 presidential election and alleged ties between Russia and then candidate Trump." *James Madison Project v. Dep't of Justice*, 320 F. Supp. 3d 143, 145 (D.D.C. 2018); *see id.* at 147 (stating a Congressman revealed that "in October 2016, the FBI relied in part on portions of the Dossier's contents to secure a [FISA] warrant as to [Mr.] Page"). In his reply brief, Mr. Flynn provides two pages of the Dossier that mentions him, Mr. Page, and other individuals. *See* Def.'s Ex. 7, ECF No. 133-7 at 1-2.

have been "egregious Fourth Amendment violations" in this case based, in part, on Judge Collyer's redacted opinion finding "Fourth Amendment violations by the FBI in areas that *likely* involve [the FBI's] actions against Mr. Flynn." Def.'s Br., ECF No. 109 at 8 (emphasis added).

The government argues that Mr. Flynn "makes no mention of [his] plea agreement" in which he waived his right to challenge the admissibility of the evidence against him. *See* Gov't's Opp'n, ECF No. 122 at 20 n.11. The government correctly notes that a criminal defendant may waive his constitutional and statutory rights under certain circumstances so long as it is a knowing and voluntary waiver. *Id*. at 7 n.2 (collecting cases). Indeed, "a guilty plea results in the defendant's loss of any meaningful opportunity he might otherwise have had to challenge the admissibility of evidence obtained in violation of the Fourth Amendment." *Haring v. Prosise*, 462 U.S. 306, 320 (1983). Mr. Flynn offers no opposition to the government's argument that his guilty plea forecloses his Fourth Amendment challenges. Buried in a footnote, however, Mr. Flynn asserts that "[t]he government's *Brady* violations have suppressed evidence of Fourth Amendment defenses [he] was entitled to pursue, especially if that evidence also shows government misconduct." Def.'s Reply, ECF No. 133 at 19 n.13.

A plea of guilty "represents a break in the chain of events

which has preceded it in the criminal process." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). "[W]hen a criminal defendant enters a guilty plea, 'he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.'" *Blackledge v. Perry*, 417 U.S. 21, 29 (1974) (quoting *Tollett*, 411 U.S. at 266). "A valid guilty plea also renders irrelevant . . . related government conduct that takes place before the plea is entered." *Class v. United States*, 138 S. Ct. 798, 805 (2018). As the D.C. Circuit has observed, "[a] knowing and voluntary guilty plea ordinarily waives all constitutional claims, including those arising under the Fourth Amendment, relating to the deprivation of rights occurring prior to the entry of the plea." *United States v. Fincham*, No. 99-3062, 2000 WL 274210, at *1 (D.C. Cir. Feb. 15, 2000) ("By entering an unconditional guilty plea, appellant waived his right to object to the constitutionality of the search and seizure.").

With these principles in mind, Mr. Flynn's guilty pleas support the government's waiver argument. *See, e.g.*, Gov't's Opp'n, ECF No. 122 at 20 n.11; Plea Agreement, ECF No. 3 at 6 ¶ 9(C) ("[B]y pleading guilty in this case [Mr. Flynn] agrees to waive certain rights afforded by the Constitution of the United States" including "to challenge the admissibility of evidence offered against [him]"); Plea Hr'g Tr., ECF No. 16 at 9. Because

67

his guilty pleas effectively bar him from raising claims based
on any evidence obtained in violation of the Fourth Amendment,
Mr. Flynn is not entitled to the information in Requests 24, 26,
and 27 on that ground.

Even if Mr. Flynn did not waive his Fourth Amendment
claims, Mr. Flynn must establish that the requested information
is favorable. To determine whether Mr. Flynn has or has not
established the favorability element of *Brady*, the Court need
not express a view on the validity of any FISA warrants obtained
from the Foreign Intelligence Surveillance Court. Mr. Flynn
fails to demonstrate that any information related to the FISA
warrant that he has identified is favorable to his guilt or
punishment. Based on the government's representations, *see*
Gov't's Surreply, ECF No. 132 at 12, FISA warrants are separate
and apart from the FBI's investigation, *see id.*; *see also* SOF,
ECF No. 4 at 1 ¶ 2 (stating that Mr. Flynn's "false statements
and omissions impeded and otherwise had a material impact on the
FBI's *ongoing investigation*") (emphasis added). The government
correctly points out—and Mr. Flynn does not contest—that
"[o]btaining a FISA warrant . . . is entirely different from the
FBI interviewing an individual as part of an ongoing
counterintelligence investigation." Gov't's Surreply, ECF No.
132 at 12; *see generally* Def.'s Sur-Surreply, ECF No. 135 at 1-
17. The government argues that the FBI had "multiple bases" to

interview Mr. Flynn, including his false statements to White
House officials about his conversations with the Russian
Ambassador. Gov't's Surreply, ECF No. 132 at 12. Furthermore,
Mr. Flynn does not explain the relevance of the FISA information
or any earlier investigations to the charges in this case or his
sentencing. *See* Def.'s Br., ECF No. 109 at 8. The Court
therefore finds that Mr. Flynn has failed to demonstrate that he
is entitled to the information in Requests 24, 26, and 27.

### d. Request 32

Request 32 seeks "[i]nformation about any parts of any
polygraph examinations failed by [Mr.] Strzok after Mr. Flynn
was first the subject of any FBI investigation—authorized or
unauthorized." Def.'s Mot., ECF No. 111 at 7. The government
neither confirms nor denies the existence of this information.
Gov't's App. A, ECF No. 122-1 at 5. The government responds that
such information—"[w]hether or not [it] exists"—is not helpful
to Mr. Flynn because it is not favorable and material to
sentencing. *Id.* Mr. Flynn fails to establish the favorability
element or the materiality element. *See Sitzmann*, 74 F. Supp. 3d
at 134.

To the extent that Mr. Flynn seeks such information under
Rule 16, Mr. Flynn must show that the requested information is
material to the preparation of his defense. *See Marshall*, 132
F.3d at 67-69. Mr. Flynn does not move to compel the production

69

of the requested information under Rule 16. *See generally* Def.'s
Mot., ECF No. 111 at 1-9; Def.'s Br., ECF No. 1-17. Nonetheless,
"Rule 16 . . . requires the government to disclose, upon
request, *inter alia*, statements by the defendant and documents
and objects in the government's control where 'the item is
material to preparing the defense,' Fed. R. Crim. P.
16(a)(1)(E)(i), or the government intends to use the item in its
case in chief, *id.* 16(a)(1)(E)(ii)." *United States v. Williams
Cos.*, 562 F.3d 387, 396 (D.C. Cir. 2009) (citations omitted).
"[I]n the context of Rule 16, 'the defendant's defense' means
the defendant's response to the Government's case in chief."
*Armstrong*, 517 U.S. at 462. Here, Mr. Flynn fails to demonstrate
that the polygraph results would have been material to preparing
his defense against his false statements to the FBI on January
24, 2017 or that the government intended to introduce any
polygraph results in its case-in-chief. Accordingly, the Court
finds that Mr. Flynn is not entitled to the information in
Request 32.

### e. Request 37

Request 37 seeks "[a]ll FBI 302s or any notes of interviews
of David Ignatius or any other reporter regarding the
publication of information concerning Mr. Flynn and/or the
reporters' contacts with James Clapper, [Mr.] McCabe, John
Brennan, Michael Kortan, or anyone in the FBI, DNI, DOD, DOJ, or

CIA regarding Mr. Flynn." Def.'s Mot., ECF No. 111 at 7. The government responds that this information is irrelevant and not helpful because it is unrelated to Mr. Flynn's false statements to the FBI in this case or his sentencing. Gov't's App. A, ECF No. 122-1 at 6. The Court agrees with the government because Mr. Flynn has neither established the *Brady* elements for the requested information in Request 37, *see Strickler*, 527 U.S. at 281-82, nor the relevance of such information, *see Trombetta*, 467 U.S. at 485.

### f. Request 38

Request 38 seeks "FBI 302s and interview notes of Jim Woolsey, including notes by SCO members of conversations with Woolsey about Mr. Flynn, [FIG], the Turkey project, and his separate meeting with officials of Turkey after the meeting that was the subject of the FIG FARA filing." Def.'s Mot., ECF No. 111 at 7. The government responds that this requested information is not helpful to Mr. Flynn, and asserts that it is unaware of information from Mr. Woolsey that is favorable and material to Mr. Flynn's sentencing. Gov't's App. A, ECF No. 122-1 at 6. Because Mr. Flynn has failed to demonstrate the relevance, favorability, and materiality of the requested information, the Court therefore finds that Mr. Flynn has not established that he is entitled to the information in Request 38.

### g. Request 36

Request 36 seeks "[u]nredacted scope memos written for the Special Counsel and any requests by Special Counsel that mention Mr. Flynn or his son." Def.'s Mot., ECF No. 111 at 7. The government responds that such information is not helpful, unfavorable, and not material to sentencing. Gov't's App. A, ECF No. 122-1 at 6. The government notes that the then-Acting Attorney General granted the Special Counsel with authority to investigate individuals, including Mr. Flynn. *Id.* Mr. Flynn does not explain how this information satisfies the favorability or materiality elements. The Court therefore finds that Mr. Flynn has failed to demonstrate that he is entitled to the requested information in Request 36.

### 6. Remaining Requests

### a. Request 23

Request 23 seeks "[t]he two-page Electronic Communication (EC) that allegedly began the 'Russia Collusion' investigation." Def.'s Mot., ECF No. 111 at 6. The government responds that this topic is irrelevant and unrelated to Mr. Flynn's false statements to the FBI on January 24, 2017 and his sentencing. Gov't's App. A, ECF No. 122-1 at 4. The Court agrees. Mr. Flynn has failed to establish the relevance of this requested information to his guilt and punishment in this case.

**b. Request 29**

Request 29 seeks the "FBI 302s of KT McFarland, notes of interviews of her or her own notes, and text messages with Mr. Flynn from approximately December 27, 2016, until Flynn's resignation." Def.'s Mot., ECF No. 111 at 6. The government responds that the pertinent portion of the Mueller Report describes that "former Deputy National Security Advisor K.T. McFarland stated in an interview that [Mr. Flynn] relayed to her that he had conversations with the Russian Ambassador in December 2016, about which [Mr. Flynn] made false statements to the FBI on January 24, 2017." Gov't's App. A, ECF No. 122-1 at 5.

The Mueller Report provides a comprehensive summary of Mr. Flynn's communications with individuals working on the Trump Transition Team, including his communications with Ms. McFarland, regarding Mr. Flynn's conversations with the Russian Ambassador. *See* Mueller Report, ECF No. 79-3 at 26-30. Mr. Flynn does not challenge the sufficiency or accuracy of the Mueller Report's description. *See generally* Def.'s Reply, ECF No. 133 at 5-36. Mr. Flynn does not deny that he has access to the requested information in another form (*i.e.* the Mueller Report). *See id.*; *see also United States v. Harris*, No. CRIM. 06-00124 (ESH), 2006 WL 2882711, at *2 (D.D.C. Oct. 5, 2006) (finding no *Brady* violation where "defendant [said] nothing to contradict

the government's representation that the information contained therein [was] cumulative of information to which she already ha[d] access"). Mr. Flynn has not demonstrated that the requested information is favorable. Even if the requested information was exculpatory and suppressed, Mr. Flynn has neither demonstrated that there is a reasonable probability that the requested information would have led to a different outcome, nor shown that the information he seeks would not be cumulative. *See Harris*, 2006 WL 2882711, at *2.

### c. Request 34

Request 34 seeks "[a] full unredacted and copies of the recordings of Mr. Flynn's calls with Ambassador Kislyak or anyone else that were reviewed or used in any way by the FBI or SCO in its evaluation of charges against Mr. Flynn." Def.'s Mot., ECF No. 111 at 7. The government responds that "[w]hether or not such information exists, it does not pertain to information that would be favorable and material to sentencing." Gov't's App. A, ECF No. 122-1 at 5. Without specifically addressing the government's response, Mr. Flynn appears to seek such information about the existence or non-existence of any recordings between him and the Russian Ambassador because: (1) "[o]ne would imagine there are differences between the recordings of the calls and what Mr. Flynn recalled to the agents who stopped by his office that day, but that is not

74

evidence that he lied, and he did not"; and (2) "[a]s the agents themselves realized when they spoke to him, he may have been wrong, but he was honest to the best of his recollection at the time." Def.'s Sur-Surreply, ECF No. 135 at 7 n.6. Because Mr. Flynn has failed to establish that the requested information, whether or not it exists, is exculpatory, he has failed to establish a *Brady* claim. The Court therefore finds that Mr. Flynn has failed to demonstrate that he is entitled to the information in Request 34.

### D. **Mr. Flynn's Request for Classified Information**

The Court next considers Mr. Flynn's request for classified information. *See* Def.'s Br., ECF No. 109 at 13-16; *see also* Gov't's Opp'n, ECF No. 122 at 13 ("A number of the defendant's requests seek access to classified information that may or may not exist."). Mr. Flynn also seeks access to his statements in the DIA briefings and debriefings, which he claims have been classified. Def.'s Reply, ECF No. 133 at 34. Mr. Flynn seeks access to the unredacted information in certain documents and summaries of the interviews. *Id*. at 32-34. Acknowledging that "[m]any of those interview reports contain privileged material, including classified information[,]" the government maintains that "[i]nformation in those reports that could reasonably be construed as favorable and material to [Mr. Flynn's] guilt or punishment has been provided to [Mr. Flynn] in the form of

75

summaries." Gov't's Opp'n, ECF No. 122 at 15-16 n.8. The government argues that Mr. Flynn has failed to demonstrate that the requested information is helpful to the defense under the standard set forth in *United States v. Yunis*, 867 F.2d 617, 623-24 (D.C. Cir. 1989). *Id*. at 13-14.

Section 4 of the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3 § 4, governs the discovery of classified information. *Libby*, 429 F. Supp. 2d at 7. "Although this 'Section creates no new rights of or limits on discovery of a specific area of classified information . . . [,] it contemplates an application of the general law of discovery in criminal cases to the classified information based on the sensitive nature of the classified information.'" *Id*. (quoting *Yunis*, 867 F.2d at 621). "A more stringent, three-part test applies where the Defendant seeks classified information from the Government[.]" *United States v. Kim*, No. CRIM. 10-255 CKK, 2013 WL 3866545, at *2 (D.D.C. July 24, 2013). First, the Court must determine whether the information "crosse[s] the low hurdle of relevance." *Yunis*, 867 F.2d at 623. Second, the Court must evaluate whether "the assertion of privilege by the government is at least a colorable one." *Id*. Third, "the threshold for discovery in this context further requires that [the information] . . . is at least 'helpful to the defense of [the] accused.'" *Id*. (quoting *Roviaro v. United States*, 353 U.S. 53,

60-61 (1957)). In *Yunis*, the D.C. Circuit held that "classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege." *Id.*

Mr. Flynn relies on *Yunis* for the proposition that he is entitled to his own statements in the DIA briefings and debriefings. *See* Def.'s Reply, ECF No. 133 at 34 (citing *Yunis*, 867 F.2d at 621). Mr. Flynn's reliance on *Yunis* is misplaced. While the D.C. Circuit in *Yunis* observed that Federal Rule of Criminal Procedure 16(a)(1)(A) "entitles a defendant to discover 'any relevant written or recorded statements made by the defendant,'" 867 F.2d at 621, Mr. Flynn ignores the D.C. Circuit's guidance that "CIPA, on the other hand, as noted above, provides procedures governing the defendant's access to classified information sought to be discovered from the government," *id.* at 622. According to the government, Mr. Flynn elected not to follow the CIPA procedures. *See* Gov't's Opp'n, ECF No. 122 at 12; *see also* Joint Status Report, ECF No. 107 at 4.

"Federal Rule of Criminal Procedure 16(a)(1)(A) and (B) provide that the Government, upon a defendant's request, must disclose certain of defendant's oral, written, and recorded statements, but *this right is not absolute*." *United States v. Hausa*, 232 F. Supp. 3d 257, 261 (E.D.N.Y. 2017) (emphasis

added); *accord United States v. Libby*, 429 F. Supp. 2d 46, 48

(D.D.C. 2006) (Rule 16(d)(1) permits the Court to deny or

restrict discovery to protect national security).[14] Mr. Flynn

does not address or cite Rule 16(d)(1). *See* Def.'s Reply, ECF

No. 133 at 32-35. Even if Mr. Flynn did so, the D.C. Circuit in

*Yunis* held that the district court abused its discretion in

ordering the disclosure of transcripts of classified audio

recordings of conversations between the defendant and the FBI's

informant under CIPA because the disclosure would have harmed

national security and the statements "were no more than

theoretically relevant and were not helpful to the presentation

of the defense or essential to the fair resolution of the

cause." 867 F.2d at 625.

By any conceivable measure, Mr. Flynn's requested

information is neither helpful nor relevant to the defense. *See

id*. at 623. Despite this Court's discussion of *Yunis* and the

need for the analysis to focus on whether the requested

information is relevant and helpful with regard to Mr. Flynn's

---

[14] Rule 16(d)(1) provides:
> At any time the court may, for good cause, deny,
> restrict, or defer discovery or inspection, or grant
> other appropriate relief. The court may permit a party
> to show good cause by a written statement that the court
> will inspect ex parte. If relief is granted, the court
> must preserve the entire text of the party's statement
> under seal.

Fed. R. Crim. P. 16(d)(1).

sentencing, *see* Status Hr'g Tr. (Sept. 10, 2019), ECF No. 114 at
7, 10, 14, Mr. Flynn fails to show how the requested information
meets the "relevant and helpful" standard, *see* Def.'s Reply, ECF
No. 133 at 32-33. To the extent that the information in the DIA
briefings and debriefings are classified, Mr. Flynn fails to
explain how his statements in those records are relevant to his
false statements in this case or sentencing. *See id*. at 34.
Mr. Flynn's main argument for those records—that the "DIA
reports the defense requests will not only exonerate him of
being any kind of foreign agent but evince that the FBI/DOD knew
this all along," *id*.—does not meet the relevancy threshold, *see*
*Yunis*, 867 F.2d at 623, given that the government has not
charged Mr. Flynn with being a foreign agent.

Neither does Mr. Flynn demonstrate that he is entitled to a
letter from the former United Kingdom's National Security
Advisor regarding the Steele reporting or the information beyond
the summaries that the government has provided to him. *See*
Def.'s Reply, ECF No. 133 at 33-35. The government provided Mr.
Flynn with summaries of the documents because some of the
information contains privileged material, including classified
information. *See* Gov't's Opp'n, ECF No. 122 at 15-16, 16 n.8;
*see also* 18 U.S.C. app. 3 § 4. And the government submitted the
full interview reports under seal for the Court's *in camera*
review. Gov't's Opp'n, ECF No. 122 at 16 n.8. Having carefully

reviewed those submissions, the Court agrees with the government

that the summaries of the interviews contain the relevant

information. Mr. Flynn's requests for additional information are

based on speculation and theoretical relevance. *See Yunis*, 867

F.2d at 623-25. Furthermore, the credibility of the Steele

reporting is irrelevant and not helpful to Mr. Flynn's defense.

*See id*. The Court therefore finds that Mr. Flynn has failed to

satisfy the requirements as set forth in *Yunis*.[15] Accordingly,

the Court need not address Mr. Flynn's requests for a

preservation order and a finding of civil contempt against the

prosecutors because Mr. Flynn has not established the elements

for a *Brady* claim. *See* Def.'s Br., ECF No. 109 at 12 n.14, 17.

### E. Remaining Issues

Having found that Mr. Flynn did not demonstrate that he is

entitled to the requested information under *Brady* and *Yunis*, the

---

[15] Mr. Flynn seeks the Court's intervention for defense counsel's request for security clearances. *See, e.g.*, Joint Status Report, ECF No. 107 at 2-3 (stating that "the government continues to deny our request for security clearances. Our attempts to resolve that issue with the government have come to a dead end, thus requiring the intervention of this Court"); Def.'s Br., ECF No. 109 at 9 n.12 ("This classified and heavily redacted opinion is one of the documents for which defense counsel requests a security clearance and access."); Def.'s Mot., ECF No. 111 at 3 (stating that "the prosecutors exude arrogance in their flat denials of both our request for security clearances"). On September 5, 2019, the Court held a sealed and *ex parte* hearing concerning Mr. Flynn's request for the Court's intervention. *See* Min. Entry of Sept. 5, 2019. To the extent that Mr. Flynn continues to press for the Court's intervention, the request is moot in light of the Court's denial of his *Brady* motions.

Court next considers Mr. Flynn's remaining arguments. First, Mr.
Flynn argues that the government failed to move to disqualify
his former counsel due to an "intractable conflict of interest."
Def.'s Reply, ECF No. 133 at 21. Next, Mr. Flynn contends that
he was "ambush[ed]" during his January 24, 2017 FBI interview
and "trapp[ed]" into "making statements they could allege as
false." *Id.* at 5. The Court will address each argument in turn.

### 1. Conflict of Interest

The Sixth Amendment to the United States Constitution
guarantees "[i]n all criminal prosecutions, the accused shall
enjoy the right . . . to have the [a]ssistance of [c]ounsel for
his defense." *United States v. Celis*, 608 F.3d 818, 828 n.3
(D.C. Cir. 2010) (quoting U.S. Const. amend. VI). The Supreme
Court has recognized that there is a strong "presumption in
favor of counsel of choice," *Wheat v. United States,* 486 U.S.
153, 161 (1988), but there is also a "right to representation
that is free from conflicts of interest," *Wood v. Georgia,* 450
U.S. 261, 271 (1981). "[T]he Sixth Amendment right to conflict-
free representation is subject to knowing and voluntary waiver."
*United States v. Lopesierra-Gutierrez*, 708 F.3d 193, 200 (D.C.
Cir. 2013). Furthermore, the Court has "an independent interest
in ensuring that criminal trials are conducted within the
ethical standards of the profession and that legal proceedings
appear fair to all who observe them." *Wheat*, 486 U.S. at 160.

According to Mr. Flynn, he "paid [Covington & Burling] more than $1 million to investigate, prepare, and then defend the FARA registration in response to NSD/FARA section's and David Laufman's demands." Def.'s Reply, ECF No. 133 at 21. Mr. Flynn argues that his former attorneys were obligated to withdraw their representation even if he was fully informed in writing of the potential conflict. *Id.* at 21 (footnote omitted). According to Mr. Flynn, his former attorneys had an un-waivable conflict of interest by representing him for: (1) the charge stemming from the false statements that he made during his January 24, 2017 FBI interview; and (2) the potential criminal charges as to the false statements in his FARA filings. *Id.* Mr. Flynn argues that he pled guilty without access to the information requested in his *Brady* motions, *id.* at 20, but he stops short of arguing that his guilty pleas were invalid, *id.* at 21. Neither does Mr. Flynn allege ineffective assistance of counsel. *See generally id.* at 20-22. Rather, Mr. Flynn contends that the government "harvested a guilty plea" without bringing to the Court's attention the conflict-of-interest issue, *id.* at 22, and Mr. Flynn waived the potential conflict of interest without being adequately informed, Def.'s Sur-Surreply, ECF No. 135 at 16.

The government responds that it raised the potential conflict of interest with Mr. Flynn's former counsel on November 1, 2017, and November 16, 2017. Gov't's Surreply, ECF No. 132 at

11. The lead prosecutor memorialized both conversations, and Mr. Flynn's former counsel explained to the government on November 1, 2017 that "they (Covington) were aware of the potential conflict, had previously discussed it with [Mr. Flynn], and that [Mr. Flynn] was interested in nevertheless continuing to be represented by Covington." Gov't's Ex. 5, ECF No. 132-5 at 2. On November 16, 2017, former counsel confirmed to the government that Mr. Flynn "waived any such conflict" after "they had 'thoroughly discussed' the issue with [him], including that they (Covington) could be fact witnesses and have differing interests from [Mr. Flynn] on issues relating to the alleged false statements." *Id.* Indeed, Mr. Flynn's former attorneys testified in a criminal trial in a different federal district court regarding the FARA filings. *See* Def.'s Sur-Surreply, ECF No. 135 at 16.[16] As the government correctly points out, Mr. Flynn

---

[16] The Court takes judicial notice of the existence of a news article concerning the testimony of Mr. Flynn's former attorney in *United States v. Rafiekian*, Crim. Action No. 18-457 (E.D. Va.). *See Sandza v. Barclays Bank PLC*, 151 F. Supp. 3d 94, 113 (D.D.C. 2015) ("Taking judicial notice of the *existence* of [news] articles is entirely proper."). On July 16, 2019, Mr. Flynn's former counsel testified that Mr. Flynn "reviewed and approved a filing to [DOJ] that he has admitted contains false statements but claims he did not read." Rachel Weiner, *Michael Flynn Reviewed FARA Filing He Later Called False, Ex-lawyer Testifies*, Wash. Post. (July 16, 2019, 10:34 PM), https://www.washingtonpost.com/local/public-safety/michael-flynns-ex-lawyer-testifies-on-the-former-national-security-advisers-consulting-work/2019/07/16/f317b28a-a801-11e9-86dd-d7f0e60391e9_story.html.

declined this Court's invitation for the appointment of "an
independent attorney to speak with [the] defendant, review the
defendant's file, and conduct necessary research to render a
second opinion for [the] defendant." Gov't's Surreply, ECF No.
132 at 11 (quoting Sentencing Hr'g Tr., ECF No. 103 at 9). Mr.
Flynn, however, contends that the government was obligated to
alert the Court of the potential conflict of interest. Def.'s
Sur-Surreply, ECF No. 135 at 16-17.

The Court is not persuaded by Mr. Flynn's arguments for two
reasons. First, Mr. Flynn's reliance on *Wheat*, a case that
involved multiple and successive joint representation, is
misplaced. In that case, the Supreme Court addressed the issue
of whether "a criminal defendant's right under the Sixth
Amendment to his chosen attorney is qualified by the fact that
the attorney has represented other defendants charged in the
same criminal conspiracy." *Wheat*, 486 U.S. at 159. Because there
is "an independent duty to ensure that criminal defendants
receive a trial that is fair" and there is a "need to
investigate potential conflicts" in cases involving joint
representation, *id.* at 161, the Court explained that "where a
court justifiably finds an actual conflict of interest, there
can be no doubt that it may decline a proffer of waiver, and
insist that defendants be separately represented," *id.* at 162.
The Supreme Court upheld the district court's disqualification

of a defense attorney who sought to represent a defendant after
representing co-defendants in the same complex drug distribution
case because the decision to disqualify was within the trial
judge's discretion and it did not violate the defendant's Sixth
Amendment right to counsel of choice. *Id*. at 163-64. Although
the government brought the "potential for serious conflict of
interest" to the district court's attention, *id*. at 156, the
Supreme Court's holding in *Wheat* does not compel the government
to raise potential conflicts of interest with the Court, *see id.*
at 163-164. Contrary to Mr. Flynn's assertion, *Wheat* did not
require the government to move for disqualification of his
former counsel.

Next, Mr. Flynn's argument—that he was not fully informed
of the conflict of interest—is unavailing. *See* Def.'s Sur-
Surreply, ECF No. 135 at 16; *see also* Def.'s Reply, ECF No. 133
at 21 n.14 (citing D.C. Rules Prof'l Conduct R. 1.7(c)(2)). Mr.
Flynn cites Rule 1.7(c)(2) of the District of Columbia Rules of
Professional Conduct, which provides that "[a] lawyer may
represent a client with respect to a matter in the circumstances
described in [Rule 1.7(b)] if . . . "[t]he lawyer reasonably
believes that the lawyer will be able to provide competent and
diligent representation to each affected client." D.C. Rules
Prof'l Conduct R. 1.7(c)(2). Rule 1.7(b) provides that "a lawyer
shall not represent a client with respect to a matter if" the

lawyer takes or will likely take adverse positions or if the "lawyer's professional judgment on behalf of a client will be or reasonably may be adversely affected by the lawyer's responsibilities to or interests in a third party or the lawyer's own financial, business, property, or personal interests." *Id*. R. 1.7(b). Rule 1.7(a) provides that "a lawyer shall not advance two or more adverse positions in the same matter." *Id*. R. 1.7(a).

Conflicts of interest under Rule 1.7(b) may be waived by the client with informed consent. *See, e.g.*, D.C. Rules Prof'l Conduct R. 1.7(c)(1) (lawyer may represent the client if the "potentially affected client provides informed consent to such representation after full disclosure of the existence and nature of the possible conflict and the possible adverse consequences of such representation"); *id*. R. 1.0(e) (defining "informed consent" as "the agreement by a person to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct"). Unlike a conflict under Rule 1.7(b), "a conflict arising [under 1.7(a)] from the lawyer's advancing adverse positions in the *same matter* cannot be waived in advance or otherwise." *Id*. R. 1.7 cmt. 32 (emphasis added); *see id*. R. 1.0(h) (defining "matter" as "any litigation, administrative proceeding, lobbying

86

activity, application, claim, investigation, arrest, charge or accusation, the drafting of a contract, a negotiation, estate or family relations practice issue, or any other representation, except as expressly limited in a particular rule").

Rule 1.7(a)'s "absolute prohibition" on conflicting representations in the *same* matter is "inapplicable" where "the adverse positions to be taken relate to different matters." D.C. Rules Prof'l Conduct R. 1.7(a) cmt. 3. Here, Mr. Flynn does not argue that his former counsel advanced adverse positions in this criminal matter. *See* Def.'s Reply, ECF No. 133 at 21; *see also* Def.'s Surreply, ECF No. 135 at 16. Instead, Mr. Flynn contends that his former counsel was an adverse witness in the case in the Eastern District of Virginia—a *different* jurisdiction and a *different* matter involving a *different* defendant. Furthermore, the government did not bring criminal charges based on the FARA filings against Mr. Flynn in this case or in the separate case in the Eastern District of Virginia. Thus, the Court will assume that Mr. Flynn relies on Rule 1.7(b) because he cites to Rule 1.7(c)(2), Def.'s Reply, ECF No. 133 at 21 n.14, and "FIG and [Mr.] Flynn subsequently retained Covington to represent them in connection with any potential FARA filing," *Rafiekian*, 2019 WL 4647254, at *5.

The gravamen of Mr. Flynn's argument concerns the "decisive issue" of waiver. *Lopesierra-Gutierrez*, 708 F.3d at 200. The

D.C. Circuit has explained that "a court may decline to accept a waiver if the conflict of interest jeopardizes the integrity of the proceedings." *Id.* "In making this determination, a court balances the defendant's right to choose his representative against *both* the defendant's countervailing right to conflict-free representation *and* the court's independent interest in the integrity of criminal proceedings." *Id.* And "[t]he outcome of that balance turns on the nature and extent of the conflict." *Id.*

In *Lopesierra-Gutierrez*, the D.C. Circuit held that the district court acted within its discretion in finding that the defendant knowingly, intelligently, and voluntarily waived any conflict of interest where: (1) his attorney was implicated in criminal activity for accepting laundered funds that were purportedly the product of the defendant's drug conspiracy; and (2) "a stipulation bar[red] presentation of incriminating testimony" at the jury trial. *Id.* at 202. In doing so, the D.C. Circuit rejected the defendant's argument that his waiver was not knowing or voluntary. *Id.* The D.C. Circuit reasoned that the defendant assured the district court that he had waived any potential conflict of interest despite being advised that his attorney would have adverse interests as the subject of a criminal investigation. *Id.* The D.C. Circuit explained that the defendant was "represented by an independent attorney" and he

"was fully aware of the nature of the conflict and the consequences of waiver." *Id.* The D.C. Circuit concluded that the defendant "made a rational and informed decision that, given the stipulation and the limited nature of his attorney's conflict, he wanted to proceed. That he now wishes he had chosen differently gives us no reason to doubt the validity of that choice." *Id.*

Here, it is undisputed that this Court did not have the opportunity to address the conflict-of-interest issue, determine whether an actual conflict existed at the time, or decide whether Mr. Flynn's waiver of the potential conflict of interest was knowing and voluntary. *Cf. Iacangelo v. Georgetown Univ.*, 710 F. Supp. 2d 83, 94 (D.D.C. 2010) (scheduling a hearing to determine whether a client gave his "informed consent" to determine whether a law firm had a waivable conflict of interest). Mr. Flynn cites no controlling precedent to support the proposition that the government was required to bring the conflict-of-interest issue to the Court's attention. *See* Def.'s Reply, ECF No. 133 at 22. And Mr. Flynn does not ask this Court to find—and the Court cannot find—that his waiver was neither knowing nor voluntary.

## 2. Mr. Flynn's Other Theories

Finally, the Court summarily disposes of Mr. Flynn's arguments that the FBI conducted an ambush interview for the

89

purpose of trapping him into making false statements and that
the government pressured him to enter a guilty plea. The record
proves otherwise. *See, e.g.*, Def.'s Br., ECF No. 109 at 4
(arguing that the government was "putting excruciating pressure
on [Mr. Flynn] to enter his guilty plea"); Def.'s Reply, ECF No.
133 at 5 (arguing that "high-ranking FBI officials orchestrated
an ambush-interview . . . for the purpose of trapping him into
making false statements they could allege as false"); *id.* at 6
(asserting that the FBI and others "plot[tted] to set up an
innocent man and create a crime"); *id.* at 18 (contending that
"[t]he FBI had no factual or legal basis for a criminal
investigation" and that the FBI's investigation was a "pretext
for investigating Mr. Flynn"); *id.* at 27 (arguing that "Mr.
Flynn was honest with the [FBI] agents to the best of his
recollection at the time, and the [FBI] agents knew it").

The sworn statements of Mr. Flynn and his former counsel
belie his new claims of innocence and his new assertions that he
was pressured into pleading guilty to making materially false
statements to the FBI. *E.g.*, Sentencing Hr'g Tr., ECF No. 103 at
11 (affirming it was not his "contention that Mr. Flynn was
entrapped by the FBI"); *id.* (affirming that "Mr. Flynn's rights
were [not] violated by the fact that he did not have a lawyer
present for the interview"); Plea Agreement, ECF No. 3 at 10 ("I
fully understand this [Plea] Agreement and agree to it without

reservation. I do this voluntarily and of my own free will, intending to be legally bound."); Plea Hr'g Tr., ECF No. 16 at 29 (affirming that no one "forced, threatened, or coerced [Mr. Flynn] in any way into entering this plea of guilty"). And it is undisputed that Mr. Flynn not only made those false statements to the FBI agents, but he also made the same false statements to the Vice President and senior White House officials, who, in turn, repeated Mr. Flynn's false statements to the American people on national television. *See* Gov't's Surreply, ECF No. 132 at 8.

\*     \*     \*

Mr. Flynn's requested relief is dismissal of this case. *See* Def.'s Reply, ECF No. 133 at 36; *see also* Def.'s Sur-Surreply, ECF No. 135 at 17. He seeks dismissal of the charges against him and the entire prosecution for government misconduct. *E.g.*, Def.'s Reply, ECF No. 133 at 7, 23 n.15, 36; Def.'s Sur-Surreply, ECF No. 135 at 17. The government disagrees. *See* Gov't's Surreply, ECF No. 132 at 12-15. This case is not *United States v. Theodore F. Stevens*, Criminal Action No. 08-231(EGS), the case that Mr. Flynn relies on throughout his briefing. In that case, the Court granted the government's motion to dismiss, and the government admitted that it had committed *Brady* violations and made misrepresentations to the Court. *In re Special Proceedings*, 825 F. Supp. 2d 203, 204 (D.D.C. 2011)

(Sullivan, J.). Even if Mr. Flynn established a *Brady* violation in this case, dismissal would be unwarranted because "[t]he remedy for a *Brady* violation is retrial, not dismissal." *United States v. Borda*, 941 F. Supp. 2d 16, 19 n.1 (D.D.C. 2013) (citing *Pettiford*, 627 F.3d at 1228). "[D]ismissal is appropriate only as a last resort, where no other remedy would cure prejudice against a defendant." *Pasha*, 797 F.3d at 1139.

## V.   Conclusion

For the reasons set forth above, the Court **DENIES** Mr. Flynn's Motion to Compel the Production of *Brady* Material and for an Order to Show Cause, ECF Nos. 109 & 111; Mr. Flynn's Sealed Motion to Compel the Production of *Brady* Material, ECF No. 112; Mr. Flynn's Sealed Motion for an Order to Show Cause, ECF No. 113; and Mr. Flynn's Motion to Compel the Production of Newly Discovered *Brady* Evidence, ECF No. 124. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

Signed:    **Emmet G. Sullivan**
           **United States District Judge**
           **December 16, 2019**