**APPENDIX**[1]

| No. | Def.'s Requests | Gov't's Responses |
|---|---|---|
| 1 | A letter delivered by the British Embassy to the incoming National Security team after Donald Trump's election, and to outgoing National Security Advisor Susan Rice (the letter apparently disavows former British Secret Service Agent Christopher Steele, calls his credibility into question, and declares him untrustworthy). | Not relevant. The government is not aware of information that Christopher Steele provided that is relevant to the defendant's false statements to the Federal Bureau of Investigation ("FBI") on January 24, 2017, or to his punishment. |
| 2 | The original draft of Mr. Flynn's 302 and 1A-file, and any FBI document that identifies everyone who had possession of it (parts of which may have been leaked to the press, but the full original has never been produced). This would include information given to Deputy Attorney General Sally Yates on January 24 and 25, 2017. | Already provided. The government has already provided responsive information to the defendant, including the January 24 interview report, all drafts of the interview report, and the handwritten notes of the interviewing agents. The government has also provided to the defendant reports of interviews with the second interviewing agent, who attests to the accuracy of the final January 24 interview report. |
| 3 | All documents, notes, information, FBI 302s, or testimony regarding Nellie Ohr's research on Mr. Flynn and any information about transmitting it to the DOJ, CIA, or FBI. Any drafts, electronic communications ("ECs"), emails, and texts related to Nellie Ohr's research on Mr. Flynn, and all CIA cables on the topic as well. | Not relevant. The government is not aware of any information that Nellie Ohr may have provided that is relevant to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. The government's response includes consideration of the defendant's September 23, 2019 amendment. |
| 4 | All payments, notes, memos, correspondence, and instructions by and between the FBI, CIA, or DOD with Stefan Halper—going back as far as 2014—regarding Michael Flynn, Svetlana Lokhova, Mr. Richard Dearlove (of MI6), and Professor Christopher Andrew (connected with MI5) and Halper's compensation through the DOD Office of Net Assessment as evidenced by the whistleblower complaint of Adam Lovinger, addressed in our brief. This includes David Shedd (former Deputy Director of DIA) and Mike Vickers, who were CIA officers; James H. Baker; former DIA Director LTG Stewart; former DIA Deputy Director Doug Wise; and the DIA Director of Operations (DOD). This should also include any communications or correspondence of any type arising from the investigation or alleged concerns about Mr. Flynn that contained a copy to (as a "cc" or "bcc") or was addressed directly to the DNI James Clapper and his senior staff; to CIA Director Brennan and his senior staff; or to FBI Director Comey, his Deputy Andrew McCabe and senior staff.  With respect to Col. (Ret.) James Baker, the current head of DOD Office of Net Assessment, production of Col. Baker's calendar showing his meetings with or any other communications with David Ignatius from July 1, 2015 through March 2017. | Not relevant. The government is not aware of information relating to the listed persons that is relevant to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. The government's response includes consideration of the defendant's September 23, 2019 amendment. |

---

[1] This Appendix provides the verbatim language from Mr. Flynn's Motion to Compel the Production of *Brady* Material and For An Order to Show Cause, ECF No. 111, and his Amendment to the *Brady* Motion, ECF No. 116.  It also includes the verbatim language from the government's responses in its Appendix A, ECF No. 122-1.

| 5 | The Flynn 302 dated January 19, 2017, mentioned in the Mueller Report. | Item does not exist. The reference in the Report of the Special Counsel on Russian Interference in the 2016 Election ("Special Counsel Report") to an interview of the defendant dated January 19, 2017, is a typographical error. It should read "January 19, 2018," which is an interview of the defendant at which the defendant's counsel were present. |
|---|---|---|
| 6 | All and unredacted Page-Strzok text messages. Mr. Van Grack's October 4, 2018, letter asserts: "To the extent the text messages appear to be incomplete or contain gaps, we do not possess additional messages that appear to fill such gaps." The government should be compelled to identify to whom "we" refers, where the originals are, and whether any of the gaps have been filled or accounted for. | Already provided. The government has already provided the defendant with access to text messages between former FBI attorney Lisa Page and former FBI Deputy Assistant Director ("DAD") Peter Strzok, including text messages pertaining to the defendant that are not publicly available. |
| 7 | All documents, reports, correspondence, and memoranda, including any National Security letter or FISA application, concerning any earlier investigation of Mr. Flynn, and the basis for it. (The existence of these earlier investigations was disclosed in the Mueller Report; see Vol. II at pp. 24, 26.) | Already provided. The government has already provided any information that could reasonably be construed as favorable and material to sentencing. |
| 8 | All transcripts, recordings, notes, correspondence, and 302s of any interactions with human sources or "OCONUS lures" tasked against Mr. Flynn since he left DIA in 2014.  And electronic communications in addition to human sources. | Not relevant. The topic is not relevant to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. The government's response includes consideration of the defendant's September 23, 2019 amendment. |
| 9 | The unredacted Page-Strzok text messages as well as text messages, emails and other electronic communications to, from, or between Andrew McCabe, James Comey, Rod Rosenstein, Bruce Ohr, Nellie Ohr, John Carlin, Aaron Rouse, Carl Ghattas, Andrew Weissmann, Tashina Gauhar, Michael Steinbach, [REDACTED], and Zainab Ahmad, regarding Mr. Flynn or the FISA applications or any surveillance (legal or illegal) that would have reached Mr. Flynn's communications. | Already provided. The government has already provided the defendant with access to any text messages between Page and DAD Strzok that could reasonably be construed as favorable and material to sentencing. |
| 10 | All evidence concerning notification by the Inspector General of the DOJ to the Special Counsel of the Strzok-Page text messages, including the actual text of any messages given to the Special Counsel, and the dates on which they were given. Although the Inspector General notified Special Counsel of the tens of thousands of text messages between Peter Strzok and Lisa Page no later than July 2017—the prosecutors did not produce a single text message to the defense until March 13, 2018. | Already provided. The government has already provided the defendant with access to text messages between Page and DAD Strzok that could reasonably be construed as favorable and material to the sentencing. The government's production to the defendant on March 13, 2018, occurred shortly after the Court issued the Protective Order Governing Discovery, *United States v. Flynn*, 17-cr-232 (D.D.C. Feb. 21, 2018) (Doc. 22), and over eight months before the defendant reaffirmed his guilt before this Court. |
| 11 | All evidence of press contacts between the Special Counsel Office, including Andrew Weissmann, Ms. Ahmad, and Mr. Van Grack from the departure of Peter Strzok from Special Counsel team until December 8, 2017, regarding Mr. Flynn. | Not relevant. The topic is unrelated to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 12 | Unredacted copies of all memos created by or other communications from James Comey that mention or deal with any investigation, surveillance, FISA applications, interviews, or use of a confidential human source or "OCONUS lures" against Mr. Flynn. | Already provided/not relevant. The government has already provided any information from interview reports of former FBI Director James Comey that could reasonably be construed as favorable and material to sentencing. |

| 13 | An unredacted copy of all of James Comey's testimony before any Congressional committees. | To the extent the defendant is referring to Director Comey's congressional testimony after he was fired, the government does not possess unredacted copies of such testimony that is not publicly available. |
|----|----|----|
| 14 | The James Comey 302 for November 15, 2017, and all Comey 302s that bear on or mention Mr. Flynn. | Already provided. The government has already provided any information from the interview of Director Comey dated November 15, 2017, that could reasonably be construed as favorable and material to sentencing. |
| 15 | Notes and documents of any kind dealing with any briefings that Mr. Flynn provided to DIA after he left the government. | The government is not aware of any information in possession of the Defense Intelligence Agency that is favorable and material to sentencing, including the information that the government provided on August 16, 2019. Specifically, the information of which the government is aware, including that August 16 production, is either inculpatory or has no relevance to the defendant's false statements to the FBI on January 24, 2017, or to the FARA Unit. |
| 16 | Any information, including recordings or 302s, about Joseph Mifsud's presence and involvement in engaging or reporting on Mr. Flynn and Mifsud's presence at the Russia Today dinner in Moscow on December 10, 2015. | Not relevant. The topic is unrelated to the defendant's false statements to the FBI on January 24, 2017, or to its punishment. The government appreciates the correction included in the defendant's September 23, 2019 amendment. |
| 17 | All notes, memoranda, 302s, and other information about the McCabe-Strzok meeting or meetings with Vice President-Elect or Vice President Pence (these meetings were referenced in the Mueller Report at Vol II, p. 34). | Not relevant. Any briefings or meetings that occurred after January 24, 2017, among the listed individuals are not relevant to whether defendant made false statements to the FBI on January 24, 2017, or to his punishment. |
| 18 | All Mary McCord 302s or interviews, including when she knew that Mr. Flynn did not have "a clandestine relationship with Russia." | Already provided. The government has already provided the defendant with information from former National Security Division Acting Assistant Attorney General Mary McCord's interview report that could reasonably be construed as favorable and material to sentencing. |
| 19 | Any Sally Yates 302s or other notes that concern Mr. Flynn, including treatment of her meetings with FBI Agents on January 24 and 25, 2017, her meetings with anyone in the White House, and the draft 302 of the Flynn interview on January 24 she reviewed or was read into. | Already provided. The government has already provided the defendant with information from former Department of Justice ("DOJ") Deputy Attorney General Sally Yates' interview report that could reasonably be construed as favorable and material to sentencing. The meetings Deputy Attorney General Yates had with persons in the White House after the January 24 interview are not relevant to whether defendant made false statements to the FBI on January 24, 2017, or to his punishment. The government has already provided the defendant with all drafts in its possession of the January 24 interview. |
| 20 | An internal DOJ document dated January 30, 2017, in which the FBI exonerated Mr. Flynn of being "an agent of Russia." | Already provided/not relevant. The government has already provided the defendant with information from the internal DOJ document about the defendant not being "an agent of Russia." That information, however, is not relevant to whether defendant made false statements to the FBI on January 24, 2017. The defendant is not charged with and has not been accused by the government in this case of being "an agent of Russia." |
| 21 | All information provided by Kathleen Kavalec at the Department of State to the FBI regarding Christopher Steele prior to the first FISA application. | Not relevant. The government is not aware of information that Department of State Deputy Assistant Secretary Kathleen Kavalec may have provided that is relevant to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |

| 22 | Any and all evidence that during a senior-attended FBI meeting or video conference, Andrew McCabe said "First we fuck Flynn, then we fuck Trump," or words to that effect. | Already provided. The government has already provided extensive evidence to the defendant disproving this allegation, including statements from both interviewing agents. The government is not aware of evidence that former FBI Deputy Director Andrew McCabe said "First we f**k Flynn, then we f**k Trump," or words to that effect. |
|----|----|----|
| 23 | The two-page Electronic Communication (EC) that allegedly began the "Russia Collusion" investigation. | Not relevant. The topic is unrelated to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 24 | All information that underlies the several FISA applications, including any information showing that any of the assertions in the applications were false, unverified, or unverifiable. | The request is overly broad, and does not pertain to information that would be favorable and material to sentencing. |
| 25 | All documents, notes, information, FBI 302s, or testimony regarding any debriefing that Bruce Ohr gave to anyone in the FBI or Department of Justice regarding Christopher Steele. | Not relevant. The government is not aware of information relating to DOJ attorney Bruce Ohr that is relevant to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 26 | Testimony, interviews, 302s, notes of interviews of all persons who signed FISA applications regarding Mr. Flynn or anyone that would have reached Mr. Flynn's communications, without regard to whether those applications were approved or rejected. | The request is overly broad, and does not pertain to information that would be favorable and material to sentencing. |
| 27 | All FISA applications since 2015 related to the Russia matter, whether approved or rejected, which involve Mr. Flynn or reached his communications with anyone. | The request is overly broad, and does not pertain to information that would be favorable and material to sentencing. |
| 28 | Information identifying reporters paid by Fusion GPS and/or the Penn Quarter group to push "Russia Collusion," communications regarding any stories about Mr. Flynn, and any testimony or statements about how the reporters were used by the government regarding Mr. Flynn. | The request is unrelated to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 29 | FBI 302s of KT McFarland, notes of interviews of her or her own notes, and text messages with Mr. Flynn from approximately December 27, 2016, until Flynn's resignation. | As described in the Special Counsel Report, after the defendant pleaded guilty on December 1, 2017, former Deputy National Security Advisor K.T. McFarland stated in an interview that the defendant relayed to her that he had conversations with the Russian Ambassador in December 2016, about which the defendant made false statements to the FBI on January 24, 2017. *See* SPECIAL COUNSEL ROBERT S. MUELLER III, REPORT ON THE INVESTIGATION INTO RUSSIAN INTERFERENCE IN THE 2016 PRESIDENTIAL ELECTION (Mar. 2019) ("Special Counsel Report"), Vol. I. at 169–73. |
| 30 | Any information regarding the SCO's and DOJ's destruction of the cell phones of Peter Strzok and Lisa Page (after being advised of the thousands of text messages that evidenced their bias) that has been classified or otherwise not available to the public from the published Inspector General Report. | Not relevant. The topic is unrelated to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 31 | Any information regarding [REDACTED] eradication of cell phone data, texts, emails, or other information belonging to Peter Strzok and Lisa Page that created the "gap" identified by the IG. | Not relevant. The request is unrelated to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 32 | Information about any parts of any polygraph examinations failed by Peter Strzok after Mr. Flynn was first the subject of any FBI investigation—authorized or unauthorized. | Not helpful. Whether or not such information exists, it does not pertain to information that would be favorable and material to sentencing. |
| 33 | *Brady* or *Giglio* material newly discovered by the government (and by the Inspector General in his separate investigations) in the last two years. | Already provided. The government has already provided the defendant with all *Brady* material; it is not obligated to provide *Giglio* material pursuant to the Court's Standing Order, *United States v. Flynn*, 17-cr-232 (D.D.C. Feb. 16, 2018) (Doc. 20). |

| 34 | A full unredacted and copies of the recordings of Mr. Flynn's calls with Ambassador Kislyak or anyone else that were reviewed or used in any way by the FBI or SCO in its evaluation of charges against Mr. Flynn. | Not helpful. Whether or not such information exists, it does not pertain to information that would be favorable and material to sentencing. |
|---|---|---|
| 35 | All FBI 302s, notes, memoranda of James Clapper regarding Mr. Flynn, and the cell phone and home phone records of Mr. Clapper and David Ignatius between December 5, 2016, and February 24, 2017. | Not relevant. Former Director of National Intelligence James Clapper had no role in the criminal investigation of the defendant, and the government is not aware of information relating to Director Clapper that is relevant to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 36 | Unredacted scope memos written for the Special Counsel and any requests by Special Counsel that mention Mr. Flynn or his son. | Not helpful. The request does not pertain to information that would be favorable and material to sentencing. The government also notes that the Special Counsel Report states that the Acting Attorney General confirmed, in memoranda, the Special Counsel's authority to investigate the defendant. *See* Special Counsel Report, Vol. I at 11–12. |
| 37 | All FBI 302s or any notes of interviews of David Ignatius or any other reporter regarding the publication of information concerning Mr. Flynn and/or the reporters' contacts with James Clapper, Andrew McCabe, John Brennan, Michael Kortan, or anyone in the FBI, DNI, DOD, DOJ, or CIA regarding Mr. Flynn. | Not relevant/not helpful. The request is unrelated to the defendant's false statements to the FBI on January 24, 2017, or to his punishment. |
| 38 | FBI 302s and interview notes of Jim Woolsey, including notes by SCO members of conversations with Woolsey about Mr. Flynn, Flynn Intel Group, the Turkey project, and his separate meeting with officials of Turkey after the meeting that was the subject of the FIG FARA filing. | Not helpful. The government is not aware of information from Jim Woolsey that would be favorable and material to sentencing. |
| 39 | All communications between Mr. David Laufman, Ms. Heather Hunt and any other member of the National Security Division regarding the FARA registration for Mr. Flynn and FIG and notes, reports or recordings of their interaction with Covington & Burling with regards to the filing and its contents. See Def.'s Resp. to the Ct.'s Order of July 9 & Gov.'s Filing of July 10, Ex. D, July 11, 2019, No. 17-232-EGS. | The first part of the request concerns internal, deliberative Department of Justice communications that are not discoverable. As for notes of the interactions between the Department of Justice and the defendant's counsel, defendant's counsel participated in those interactions and possess their own notes. |
| 40 | Unredacted notes of the [REDACTED] and Strzok from the interview of Mr. Flynn on January 24, 2017. | Not helpful. The government has already provided the defendant with the interviewing agents' handwritten notes of the January 24 interview. The limited redactions of those notes do not refer to information that would be favorable and material to sentencing. |
| a. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: Former Deputy Director Andrew McCabe, regarding Mr. Flynn, his calls with Ambassador Kislyak, members of the White House discussing those, and his discussions, planning session, and debriefing session with agents before and after the Flynn interview on January 24, 2017. | Already provided. The government has already provided any information from interviews with Deputy Director McCabe that could reasonably be construed as favorable and material to sentencing. |
| b. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: Recordings, notes, and memoranda by any and all persons who participated in the planning session for the interview of Mr. Flynn, at which it was decided that the agents would not inform him that it was an actual interview or that he was under investigation—so as to keep him "relaxed.". (These persons include David Bowdich, Jen Boone, [REDACTED], Peter Strzok, Lisa Page, Trish Andersen, and Andrew McCabe.) | Already provided/not helpful. As discussed above, debriefings/meetings that occurred before the January 24 interview are not favorable and material to sentencing for making false statements to the FBI on January 24, 2017. Nevertheless, the government has already provided to the defendant any information that could reasonably be construed as favorable and material to sentencing about such pre-interview discussions, including the language quoted in the request. |

| | | |
|---|---|---|
| c. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: Recordings, notes, and memoranda by any and all persons who participated in the debriefing sessions following the interview of Mr. Flynn, including [REDACTED], Peter Strzok, Jon Moffa, Andrew McCabe, Bill Priestap, David Bowdich, [REDACTED], Trish Andersen, and James Comey. | Already provided/not helpful. The government has already provided any information about such post-interview debriefings that could reasonably be construed as favorable and material to sentencing. |
| d. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: Former Principal Associate Deputy Attorney General Matthew Axelrod regarding Mr. Flynn. | Already provided. The government has already provided any information from former Principle Associate Deputy Attorney General Matthew Axelrod's interview report that could reasonably be construed as favorable and material to sentencing. |
| e. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: Former Acting Assistant Attorney General Mary McCord regarding the FBI's decision not to give Mr. Flynn a Title 18, Section 1001 warning, and the decision not to re-interview him despite the general practice of the FBI to give subjects that opportunity. | Already provided. The government has already provided any information from Acting Assistant Attorney General McCord's interview report that could reasonably be construed as favorable and material to sentencing, including the information quoted in the request. |
| f. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: Former Acting Attorney General Sally Yates, regarding her opinion that the January 24, 2017, surprise interview of Mr. Flynn was problematic and her lack of clarity of the FBI's purpose in investigating Mr. Flynn. | Already provided. The government has already provided any information from Deputy Attorney General Yates' interview report that could reasonably be construed as favorable and material to sentencing, including the information quoted in the request. |
| g. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: White House and transition officials regarding Mr. Flynn's conversations with Ambassador Kislyak. | The requested information pertains to information that is inculpatory, and not helpful to the defendant. As the government communicated to the defendant on May 25, 2018, the Special Counsel's Office ("SCO") conducted interviews and reviewed documents that referenced statements the defendant made to White House and transition officials about the defendant's conversations with the Russian Ambassador. That investigative activity yielded information consistent with the defendant's publicly reported statements and his statements to the SCO, in which the defendant initially denied having discussed sanctions with the Russian Ambassador. Those are the same denials that the defendant made to the FBI on January 24, 2017. After February 8, 2017, however, the defendant stated that he could not be certain that sanctions never came up in his conversations with the Russian Ambassador. |
| h. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: Michael Boston, Phil Oakley, Carl Pilgrim, Graham Miller, regarding Flynn Intel Group and Mr. Flynn, and Brian McCauley, regarding Mr. Flynn's desire to file FIG's FARA registration "the right way" with the DOJ. | Already provided/not helpful. The government had previously provided information from the interview reports of the listed persons pertaining to the defendant's desire to register "the right way" with the DOJ. The only listed person who made such a statement was Brian McCauley; the quoted language in the request comes from a government disclosure about McCauley. That prior disclosure is consistent with McCauley's public testimony at trial in *United States v. Rafiekian*, 18-457 (E.D. Va. July 23, 2019), as well as interviews conducted by prosecutors in the Eastern District of Virginia. To the government's knowledge, McCauley is the only listed person who indicated that the defendant expressed a desire to register "the right way." The government, however, has not accused the defendant of willfully failing to register under FARA. Rather, the defendant willfully made false statements and omissions in his FARA |

|   |   | filings. |
|---|---|---|
| i. | [U]nredacted 302 reports and any notes or recordings in any form of the following meetings or interviews: The entire report of the SCO's interview of James Comey, provided *in camera* to the Court, but only summarized to defense counsel in the SCO's letter of December 14, 2018. | Already provided/not helpful. The government has already provided any information from the interview of Director Comey dated November 15, 2017, that could reasonably be construed as favorable and material to sentencing. |