# Attachment 5



UNCLASSIFIED//FOUO

FEDERAL BUREAU OF INVESTIGATION

Date of entry   07/17/2018

**DOCUMENT RESTRICTED TO CASE PARTICIPANTS**
This document contains information that is restricted to case participants.

(U//FOUO) On 6/21/2018 Brian SMITH of Covington & Burling LLP, was interviewed at Covington & Burling LLP, 850 10th st NW, Washington, DC 20001. Present for and conducting the interview were Trial Attorney Counterintelligence and Export Control Section Evan Turgeon, Assistant United States Attorney (AUSA) James P. Gillis, Senior Assistant Special Counsel Brandon Van Grack, and Special Agent (SA) Bryan T. Alfredo. SMITH was represented by his attorneys Bruce A. Baird and Roger Pollack of Covington & Burling LLP. After being advised of the identities of the interviewing Agent and the nature of the interview, SMITH provided the following information and were based on the best of his recollection:

**Sources of products used by Covington to complete the Flynn Intelligence Group (FIG) FARA filing**

(U//FOUO) The sources of products used by Covington to complete the March 2017 Flynn Intel Group (FIG) Foreign Agent Registration Act (FARA) filing consisted of separate interviews of Bijan RAFIEKIAN and Michael T. FLYNN. FLYNN's attorney, Kristen VERDERAME conducted the interview of RAFIEKIAN and she had spoken to FLYNN about gathering facts for FIG's FARA filing. SMITH previously interviewed RAFIEKIAN once and believed RAFIEKIAN was interviewed on another occasion. SMITH did not interview Michael BOSTON {project lead for the INOVO project} but believed he was interviewed by someone at Covington. SMITH thought Rob KELNER and Alexandra LANGTON of Covington conducted the interview of BOSTON. Both FLYNN and RAFIEKIAN supplied FIG documents and emails to Covington for FIG's FARA filing. These documents were handed over to Covington by VERDERAME who received the documents from FLYNN's son, Michael G. FLYNN JR. SMITH had spoken to Ekim ALPTEKIN's attorney {Mathew NOLAN of Arent Fox LLP} many times. However, SMITH never spoke directly with ALPTEKIN. SMITH and KELNER started working with FIG approximately on 1/2/2017. Covington attorneys Stephen ANTHONY and LANGTON eventually joined the team which represented FIG. Eventually Covington's Technical Support Team (Litigation Support)

UNCLASSIFIED//FOUO

| | | |
|---|---|---|
| Investigation on | 06/21/2018 at | Washington, District Of Columbia, United States (In Person) |
| File # | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ | Date drafted  06/21/2018 |
| by | Bryan T. Alfredo | |

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

Continuation of FD-302 of (U//FOUO) Interview of Brian Smith , On 06/21/2018 , Page 2 of 6

assisted Covington and processed emails provided by FIG for FIG's FARA filing. SMITH did not recall having outside assistance for encrypted related issues Covington had with processing FIG's work products /documents. FIG hired, VIRTRU, an iCloud service provider. VIRTRU provided an application to Covington in order for Covington to analyze and decrypt the encrypted documents supplied to Covington by FIG. SMITH recalled he talked to two brothers, the Chief Executive Officers (CEO) of VIRTRU. VIRTRU'S CEOs were the sons of a former Covington partner. SMITH did not recall having spoken with VIRTRU's legal counsel. Some of FIG's emails /documents provided to Covington could not be decrypted. At some point during Covington's email analysis, VIRTRU stopped cooperating and assisting Covington with the decryption of FIG documents/emails.

(U//FOUO) SMITH and Covington had extensive conversations with Sphere Consulting and Sphere Government Relations (SGR) General Counsel, Benjamin GINSBERG and Grayson YEARGIN of Jones Day. SMITH did not speak with James CORTOVICH [founder and operator of SGR] or Graham MILLER [employed by SGR].

(U//FOUO) SMITH spoke with Brian MCCAULEY [employed by FIG] likely after the FARA filing. SMITH did not interview Tim NEWBERRY [founder of the White Canvass Group (WCG), who provided open source research for FIG]. VERDERAME possibly spoke to and interviewed NEWBERRY.

(U//FOUO) SMITH received a memo from NOLAN, who stated the memo was based on facts given to him by his client ALPTEKIN. NOLAN expressed he did have contact with ALPTEKIN. ALPTEKIN however, had most of his contact with Nolan's contract lawyer. SMITH did not have a Joint Defense Agreement with NOLAN. SMITH communicated with NOLAN primarily via phone and emails were used for scheduling conversations. VERDERAME participated in the emails and phone calls between SMITH and NOLAN. During Covington's data collection of FIG documents, SMITH was informed by FLYNN JR and VERDERAME certain FIG computer systems were shut down once FIG closed its operations. Some of FIG's data and email accounts were archived and some were not once FIG closed operations and the computer systems were shut down. SMITH received RAFIEKIAN's archived FIG email mailbox from FLYNN JR. FLYNN JR searched for certain items in FLYNN's archived email before providing them to Covington. FLYNN JR did not go through RAFIEKIAN's email account prior to handing the archived records to Covington.

### INOVO BV and FIG Contract

(U//FOUO) SMITH was aware, fairly early on around 1/2/2017 during the process of gathering FIG documents for FIG's FARA, of a contract between ALPTEKIN/INOVO and FIG. RAFIEKIAN informed SMITH about this agreement. SMITH did not think the topic of how funds transferred from FIG to INOVO

Continuation of FD-302 of (U//FOUO) Interview of Brian Smith , On 06/21/2018 , Page 3 of 6

was mentioned in the 1/2/2017 meeting he had with RAFIEKIAN. SMITH received information from either VERDERAME, or from the materials given to Covington by FLYNN JR, which depicted the expenses from FIG to INOVO. SMITH, KELNER, FLYNN, VERDERAME and FLYNN JR were present for the 1/2/2017 meeting at Covington. RAFIEKIAN was not present for the 1/2/2017 meeting. SMITH did not recall an agreement between FIG and INOVO haven been mentioned at the 1/2/2017 meeting. VERDERAME did explain three money transfers between FIG and INOVO.

(U//FOUO) During a 1/5/2017 interview of RAFIEKIAN, RAFIEKIAN informed SMITH the payments sent from FIG to INOVO were refunds for FIG not providing lobbying or public relations services for Project Confidence (PC). RAFIEKIAN opined the second contract was not fully executed as agreed upon between FIG and INOVO, thus the reason to refund INOVO. RAFIEKIAN informed SMITH the refunds were exchanged between FIG to INOVO because the main contract between FIG and INOVO was not amended to reflect the lack of lobbying and public relations services. RAFIEKIAN did not explain why the payments from INOVO to FIG decreased in each transaction.

(U//FOUO) RAFIEKIAN did not explain to SMITH why the contract between INOVO and FIG depicted a backdated start date [contract was signed/ dated 9/8/2016 with a project start date of 8/15/2016]. SMITH was aware FIG was primarily focused on forming a team for PC in July and August 2016.

(U//FOUO) NOLAN informed SMITH that according to ALPTEKIN, the money sent from FIG to INOVO was for refunds. RAFIEKIAN informed NOLAN the expenses shown on FIG's accounting records to ALPTEKIN, which were depicted as consulting fees, were inaccurate. FIG's accounting records should have depicted the fees listed as refunds and not consulting fees. SMITH was unaware of who uploaded the information into FIG's accounting records. RAFIEKIAN had asked FLYNN to sign the agreement between FIG and INOVO. FLYNN never mentioned to SMITH the payments from FIG to INOVO. FLYNN was busy with the Trump Campaign and left a lot of the details regarding FIG's contract with ALPTEKIN/INOVO to RAFIEKIAN.

(U//FOUO) SMITH did not recall having seen RAFIEKIAN's or ALPTEKIN'S emails which referred to ALPTEKIN having received twenty percent of contract payments between FIG and INOVO. RAFIEKIAN did not explain to SMITH why payments went to INOVO and not directly to ALPTEKIN. It was never explained to SMITH why multiple payments were sent to INOVO from FIG.

(U//FOUO) SMITH discussed Lobbying Disclosure Act (LDA) with RAFIEKIAN. SMITH recalled RAFIEKIAN having said that CORTOVICH suggested to him he get advice on LDA/FARA. RAFIEKIAN called KELNER who referred RAFIEKIAN to another attorney. RAFIEKIAN had not retained another firm and had talked

Continuation of FD-302 of (U//FOUO) Interview of Brian Smith , On 06/21/2018 , Page 4 of 6

to Bob [Robert] KELLY, General Counsel for FIG, about LDA. KELLY informed RAFIEKIAN if there is not a foreign government or political party involved, then FIG can file under LDA. RAFIEKIAN opined FIG should file the LDA as an abundance of caution. RAFIEKIAN wanted to talk to members of Congress and FIG filed under LDA.

### Declaration of Robert K. Kelly

(U//FOUO) SMITH was not directly involved with KELLY's Declaration. SMITH did not know the name of the investigator hired by Covington who helped KELLY put together the Declaration. SMITH reviewed a draft of the Declaration and may have provided comments to it. SMITH was not aware of any factual outside feedback on the draft of the Declaration.

### September 2016 New York City meeting

(U//FOUO) SMITH was aware of the September 2016 meeting in New York City (NYC) where FLYNN and RAFIEKIAN met with Turkish government officials. Separately, NOLAN, RAFIEKIAN and FLYNN informed SMITH about the meeting in NYC. FLYNN described the meeting as being set-up by ALPTEKIN. The meeting in NYC was late at night and very short. The meeting involved Turkish government officials, FLYNN, RAFIEKIAN, ALPTEKIN and {James} WOOLSEY {member of FIG's advisory board}. The meeting primarily focused on radical Islam. Briefly during the meeting, FIG described their business for ALPTEKIN/INOVO. FLYNN did not talk about the control or direction the Turkish government had on PC. The topic of GULEN was brought up by Turkish officials at the meeting.

(U//FOUO) Other than the September 2016 meeting in NYC, RAFIEKIAN informed SMITH there were no other contacts with Turkish government officials prior to FIG's FARA filing. RAFIEKIAN and FLYNN never told SMITH about Turkey's involvement with PC. RAFIEKIAN and FLYNN did not indicate to SMITH they received feedback from the Turkish government officials on PC. NOLAN did not indicate to SMITH Turkey was involved with providing feedback on PC or ALPTEKIN received feedback from the Turkish government. NOLAN characterized to SMITH Turkey was not involved with PC. NOLAN informed SMITH, ALPTEKIN was adamant he did not receive money from Turkey or that Turkey was involved with PC.

(U//FOUO) RAFIEKIAN informed SMITH the September 2016 meeting in NYC was similar to what FLYNN had recollected about the meeting. RAFIEKIAN said the meeting had nothing to do with PC and the conversations during the meeting were primarily focused on radical Islam. The purpose of the meeting was for everyone to get to know each other. The conversation at the meeting was generalized as being one way, where FLYNN asked most of

UNCLASSIFIED//FOUO

Continuation of FD-302 of  (U//FOUO) Interview of Brian Smith  , On  06/21/2018  , Page  5 of 6

the questions to the Turkish officials. The meeting was not to update Turkish officials on PC. RAFIEKIAN informed SMITH the "Truth Project" was different from PC.

(U//FOUO) Through multiple conversations with NOLAN, NOLAN discussed with SMITH whether the meeting constituted a reason for FIG to file FARA. ALPTEKIN informed NOLAN the meeting in NYC was to bring people together and there was not an agent of a foreign government involved. NOLAN did not think this required a FARA filing on FIG's behalf, according to ALPTEKIN's views of the meeting. In addition to who is listed on the FARA filing, NOLAN informed SMITH the Turkish Minister of Foreign Affairs was present at the meeting.

**{Note: SMITH was shown three emails dated 2/21/2016, 3/30/2016 10:43am and 3/30/2016 10:34am}**

(U//FOUO) SMITH recalled having seen the 2/21/2016 and the 3/30/2016 10:43 emails. SMITH did not recall seeing the 3/30/2016 10:34am email. SMITH only recalled talking about these emails internal to Covington.

**Lobbying**

(U//FOUO) SMITH received, from RAFIEKIAN, information about RAFIEKIAN's lobbying activities with FIG. Through emails, RAFIEKIAN relayed particular facts about his lobbying details which ended up in FIG's FARA filing. RAFIEKIAN confirmed dates, contacts and locations in the materials provided to SMITH. The contacts listed in the FARA filing included a Homeland Security Committee Staffer and contacts from FIG and SGR. SMITH recalled RAFIEKIAN mentioned conversations he had with Congressman ROHRABACHER. However SMITH, did not recall the specifics of the conversations. FLYNN had informed SMITH the meetings conducted by RAFIEKIAN on behalf of FIG were considered lobbying efforts. NOLAN did not inform SMITH of any lobbying activities conducted by RAFIEKIAN on behalf of FIG.

**Funding for PC**

(U//FOUO) RAFIEKIAN said he knew ALPTEKIN to be someone coming from means and who was a successful businessman. ALPTEKIN was synonymous with INOVO. Other than ALPTEKIN, RAFIEKIAN did not inform SMITH of other sources of funding for PC. FLYNN did not mention PC funding with SMITH.

(U//FOUO) NOLAN informed SMITH of the details which pertained to the FIG and INOVO contract. NOLAN knew of details of the contract but would not provide the contract to SMITH. NOLAN implied the money for PC came from

UNCLASSIFIED//FOUO

Ratio and Leviathan. RAFIEKIAN informed SMITH he had not heard about Ratio until it was mentioned in the press.

### Opinion editorial (op-ed)

(U//FOUO) RAFIEKIAN informed SMITH on the origin of the op-ed. It was FLYNN's idea to write an op-ed. FLYNN and RAFIEKIAN talked periodically about creating an op-ed. RAFIEKIAN had written an op-ed previously with WOOLSEY. RAFIEKIAN worked with an editor, Hank COX, to write the op-ed on GULEN. RAFIEKIAN expressed to SMITH the op-ed was not related to PC.

(U//FOUO) FLYNN informed SMITH it was his idea to write an op-ed. However RAFIEKIAN, wrote the first draft of the op-ed about GULEN. FLYNN had wanted to write an op-ed for a long time. FLYNN thought the U.S. was losing efforts in Turkey because of Russia.

### FARA filing

(U//FOUO) When asked who else reviewed the FARA filing other than Covington, SMITH identified VERDERAME as having shown the draft to RAFIEKIAN for review. FLYNN, the General Counsel for SGR and 4-5 people from the FARA processing unit reviewed the filing. RAFIEKIAN provided his legal name, nationality, several comments, characterized consulting payments and references to business conferences as factual comments used for the FARA filing draft. RAFIEKIAN informed SMITH he did not attend these business conferences. RAFIEKIAN objected to the language on the FARA form regarding "kickbacks". RAFIEKIAN informed SMITH, he rejected his political contributions to be considered "kickbacks." RAFIEKIAN corrected the statement on the FARA filing and indicated he was not a dual citizen. SMITH did not recall FLYNN having had edits or corrections for FIG's FARA filing. SGR made edits and corrections to FIG's FARA filing and a suggested to edit the terminology regarding Gulenoploy, which Covington did not change.