# UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | Criminal Action No. 17-232-EGS |
| **MICHAEL T. FLYNN,** | |
| **Defendant.** | |

## MR. FLYNN'S MOTION TO WITHDRAW PLEA OF GUILTY
## AND UNOPPOSED MOTION FOR CONTINUANCE

Sidney Powell
Molly McCann
Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, Florida 32162
Tel: (352) 399-0531
Fax: (352) 240-3489
Admitted *Pro Hac Vice*

Jesse R. Binnall
Lindsay R. McKasson
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted *Pro Hac Vice*

**Attorneys for Lt. General Michael T. Flynn (USA) (Retired)**

**TABLE OF CONTENTS**

A.  Background and Facts Relevant to the Issues Herein…………………………………..1

B.  The Government's December 15, 2019 Extraordinary
    Production, the December Report of the Inspector
    General, this Court's Opinion Denying All *Brady* Requests,
    and the Government's New Sentencing Position and Memo
    Warrant This Continuance…………………………………………………………12

    1.  The 478-Page IG Report Disclosed Stunning New
        Information About the Second Agent Who
        Interviewed Mr. Flynn…………………………………………………...13

    2.  On December 15, 2019, the Government Finally
        Produced 637 Pages of Long-Promised 302s and
        Handwritten Notes of Agents……………………………………………13

    3.  This Court's Ninety-Two Page Decision………………………………...13

    4.  The Government Obtained Two Extensions Before
        Filing Its Sentencing Memoranda Seeking to Revise
        History and Imprison Mr. Flynn……………………………………......14

C.  The Government's Sentencing Memo Dramatically
    Changed Its Position, Seeks to Withdraw Its Prior
    Motion and Recommendation, and Triggers the
    Necessity to File this Motion Now to Withdraw the Plea………………………..15

D.  *Puckett Requires* Mr. Flynn Move to Withdraw His Plea………………………17

E.  Conclusion………………………………………………………………………20

Michael T. Flynn ("Mr. Flynn") hereby moves to withdraw his plea because of the government's bad faith, vindictiveness, and breach of the plea agreement. *See* ECF No. 150. Mr. Flynn also requests a continuance of the sentencing date set for January 28, 2020, for thirty days or until February 27, 2020, or such other subsequent day that is convenient to the Court and counsel, and a corresponding extension of time to file any supplemental sentencing memorandum (from January 22, 2020, to February 21, 2020). The continuance is requested to allow time for the government to respond to the most recent aspects of this Motion and for Mr. Flynn to provide the additional briefing he needs to protect the record and his constitutional rights in light of significant developments in the last thirty days.

Mr. Flynn's counsel conferred with the government about the continuance requested herein beginning the morning of January 10, 2020, and provided a letter yesterday to include as the Certificate of Conference. The government's timely response is attached as the Certificate of Conference. Since that conference, Mr. Flynn has instructed counsel to request withdrawal of his plea because of the government's breach of the plea agreement. Accordingly, pursuant to *Puckett v. United States*, 556 U.S. 129 (2009),[1] Mr. Flynn files this Motion now in the interest of justice.

### A.  Background and Facts Relevant to the Issues Herein

By way of reminder, the small team of new counsel appeared for Mr. Flynn for the first time on June 17, 2019.[2] ECF No. 90, 91. Mr. Flynn and his defense team (past and current) spent

---

[1]  This Motion to Withdraw addresses the issues and facts relevant to issues triggered by *Puckett* analysis. Mr. Flynn has substantial alternative reasons to move to withdraw his plea, and counsel will brief those for the court as soon as possible.

[2]  By August 15, 2019, Mr. Flynn's new counsel received eighteen hard drives from former counsel at Covington & Burling LLP ("Covington"), which contained more than 330,000 documents. Present counsel has been working as diligently as possible since first appearing in June 2019. Present counsel provided the Court new and extensive briefings and motions on issues important to Mr. Flynn's defense—based primarily on information the government only began

hundreds of hours trying to cooperate with the government in accordance with Mr. Flynn's plea agreement which requires him to provide truthful testimony.

Only after new counsel appeared, did the government *for the first time* demand an *admission and testimony* from Mr. Flynn that he *knew* and *intended* when he signed the FARA registration form that it contained several material false statements.[3] Not only was that demanded testimony a lie, but also, the prosecutors knew it was false, and would induce a breach.

That assertion/question/demand had not been raised nor made by the government in the previous year and a half—during any of Mr. Flynn's sixteen or more lengthy sessions with Mr. Van Grack and the EDVA prosecutors. Prosecutors did not raise it in preparation for his grand jury testimony the previous summer, nor did they raise it before the grand jury. ECF No. 150-2. The prosecutors did not raise this issue in his countless hours spent with the Special Counsel's Office ("SCO"). And, even more stunning, the prosecutors' new assertion that Mr. Flynn knew the statements in the FARA application were "false" when he authorized Covington to file the form, is squarely refuted by the draft of the plea agreement Covington negotiated with Mr. Van Grack himself which specifically struck from the "Statement of Offense" the language "as he then and there knew" with respect to the FARA filing.[4]

---

dribbling out over the last year or so—since its first *Brady* production of March 4, 2018, and the Inspector General's Reports. We are a small team working on a shoe-string budget funded by thousands of hard-working patriots across the country who are making non-tax-deductible contributions primarily in amounts from $1 to $100 to www.MikeFlynnDefenseFund.com.

[3] Notably, Mr. Flynn hired the nationally known FARA experts at Covington who then billed hundreds of thousands of dollars to investigate independently and prepare the FARA filing in full and extensive coordination with David Laufman, Heather Hunt, and multiple members of the DOJ.

[4] Ex. 1 (Red-lined Statement of Offense).

Among undersigned counsel's responses, during a heated exchange with Mr. Van Grack, defense counsel informed him he was demanding that Mr. Flynn lie.  Counsel requested the government to identify any prior statement of Mr. Flynn's to that effect.[5]  The prosecutors merely told counsel to check the hundreds of pages of Covington's notes, many of which were raw, the plea colloquy, and whatever information counsel could find regarding the plea negotiations. *Id.*

Prior to this unexpected and outrageous demand (by Mr. Van Grack and DOJ NSD Attorney Evan Turgeon ("Mr. Turgeon") in particular), the *Rafiekian* EDVA prosecutors had stated on the record in open court, and repeatedly told Mr. Flynn and new counsel, that they were not asserting in any way that Mr. Flynn was a co-conspirator in *United States v. Rafiekian*.[6]  AUSA James Gillis advised in cooperation sessions with new counsel and Mr. Flynn that whatever the outcome of the *Rafiekian* trial, it would not adversely affect Mr. Flynn's sentencing recommendation.[7]  Significantly, as counsel reminded the prosecutors, Mr. Flynn's plea agreement requires that he tell the truth in any testimony,[8]  and he was fully prepared and willing to do so.

---

[5]  Ex. 2 (McKasson declaration).

[6]  *See* Judge Trenga's Memorandum Opinion, *United States v. Rafiekian*, Case No. 1:18-cr-00457, ECF No. 372 at 11 ("Neither the original nor superseding indictment in this case references Flynn as a member of the alleged conspiracy or as an agent of the Turkish government; and in response to the Court's explicit questioning, the Government stated in open court that Flynn, who it planned to call as a witness, was not a member of the charged conspiracy and that it would not rely upon his testimony to establish the foundation for the admission of Alptekin's hearsay statements under Fed. R. Evid. 801(d)(2)(E))."  *See also,* Ex. 3 excerpt from *United States v. Rafiekian*, Case No. 1:18-cr-00457, ECF No. 213, June 13, 2019 Hearing Tr. 65:9-22. ("…we do not contend that General Flynn was part of that conspiracy.").

[7]  Memorandum Opposing Co-conspirator Designation of Non-Party Witness Michael T. Flynn. *United States v. Rafiekian*, 1:18-cr-00457, ECF 270, n.4.  ("Mr. Gillis informed undersigned counsel and Mr. Flynn twice on June 6 alone that Mr. Flynn was not charged in this conspiracy, and they did not intend to charge him.").

[8]  Ex. 4 (Flynn Plea Agreement).

He rightly refused to lie for the government, and his new counsel would not allow him to do so, nor allow the government to bully him into acquiescence.

Remarkably, on June 26, 2019, in a preparation session for Mr. Flynn's likely testimony in *Rafiekian*, Mr. Van Grack, Mr. Turgeon, and EDVA prosecutors insisted that Mr. Flynn had lied to Covington lawyers about who wrote the opinion piece that appeared in *The Hill* on election day, November 8, 2016.[9]  That was also false, as the defense team explained to the government with documentation.  In fact, new counsel spent days scouring Covington's notes and other documents that unequivocally demonstrated that Mr. Flynn told them the truth. Emails, notes, and documents in the possession of Covington from January 2, 2017, prove that it had the information to make a correct FARA filing, *and* that the filing was substantially correct in all material respects.[10]  If there were mistakes in the filing, they were the result of Covington's interviews of multiple people—including several lawyers; Covington's consultation with and demands from David Laufman, Heather Hunt, and multiple people with DOJ in and around the FARA section; and, Covington's own judgment calls and choices as it navigated this inscrutable area of the law.

---

[9]  *See* Judge Trenga's Memorandum Opinion, *United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 372 at 31 ("Finally, the Government points to the op-ed published by Flynn on November 8, 2016 and Rafiekian's statement to Alptekin that 'a promise made is a promise kept' as sufficient evidence that Rafiekian was a Turkish agent. But there is no evidence that the op-ed had been requested by the Turkish government, either directly or through Alptekin; or that it was Rafiekian, as opposed to Flynn, who decided to have the op-ed published at that time.").

[10]  Ex. 5 (Kelner Testimony and Defense Exhibits from *Rafiekian* trial). Moreover, the cover letter to the FARA filing must be read as part of the filing.  Read together, it gives a reasonable and correct picture of the relationship, and it certainly identifies Turkey as a "principal beneficiary"—the primary purpose of the filing—the making of which was itself a judgment call. *See* Ex.6 (March 7, 2017 Covington Cover Letter for FARA Filing). *See* Ex.7 (Covington email before meeting with FARA section).  Notably, the form itself contemplates amendment upon finding new information. *See* ECF No. 150-1.  Covington never amended the filing. *See* Ex. 12 (Smith notes of January 2, 2017 meeting with Kelner, Kristen Verderame, and Mr. Flynn, including M. Flynn Jr.).

Mr. Flynn was honest with his attorneys and provided all his documentation.  He had spent

tens of thousands of dollars to hire the FARA experts at Covington and allowed (and paid) them

to conduct a full investigation.  The registration was completed with substantial input from DOJ—

including a very lengthy meeting, many phone calls, and DOJ's review and feedback on the draft

filing.  As Mr. Kelner admitted on the witness stand in *Rafiekian*, Covington added parts to the

filing and exercised its judgment in what to include or exclude.  *Id.*

Covington's "virtual transcripts" of Mr. Flynn's many interviews in his cooperation with

Mr. Van Grack and the EDVA—and even 302s just attached to the government's sentencing memo

but never produced by the government to Mr. Flynn—prove that Mr. Flynn repeatedly told

Covington before the filing (from their first meeting onward), and the prosecutors knew:

- about Turkey's knowledge and "involvement in the project," providing emails and documents with Alptekin claiming to be communicating with government officials;[11]

- the focus of the project was to document concerns and any wrongdoing on the part of Fetullah Gulen who was believed to support radical Islam and cause problems in Turkey from his base in the United States.  Everyone on the brief project knew that—as did

---

[11] Remarkably, this was *not* the assertion of the FARA filing. The actual FARA registration said that "Flynn Intel Group does not know whether or the extent to which the Republic of Turkey was involved *with its retention by INOVO* for the three-month project." ECF No. 150-1 at 44 (emphasis added). The representation in the FARA registration was true. The prosecutors manufactured the "false statement" by omitting the key words ["*with its retention by INOVO*"].  The government's omission completely changes the meaning of what was a correct statement in the FARA registration. To this day, there is no evidence of the extent of the involvement of the Republic of Turkey in *hiring INOVO*.  Everyone knew they were being told about the "project."  That was clear from the "green-light" email Covington had from early January. Ex. 5 (Kelner *Rafiekian* testimony).

As Judge Trenga found: "There is no evidence, not even in the hearsay statements from Alptekin to Rafiekian, that Alptekin, Inovo, or anyone associated with the Turkish government directed or controlled the work performed by FIG or Sphere personnel." *United States v. Rafiekian*, No. 1:18-cr-457, ECF No. 372 at 29.

Covington.  Documents show the two issues of Gulen and confidence in the business environment in Turkey to be inextricably intertwined and virtually synonymous;[12]

- Mr. Rafiekian *wrote* the first draft of the opinion piece published by *The Hill* as reflected in the notes of Covington FARA expert Brian Smith from Covington's first meeting with Mr. Flynn—confirmed by the recently filed (never produced) FBI 302 of Smith's interview in mid-2018;[13]

- Mr. Flynn could not testify that any Turkish government official gave him any instructions or had any control over the project.[14]  Notably, neither could anyone else.

_____

[12]   ECF No. 150-4 and 6; ECF No. 98-3 at Ex. 7 (Entitled Statement of the Problem: How do we restore confidence in the government of the Republic of Turkey and expose the Fethullah Gulen cult in the United States"); ECF No. 98-3 at Ex. 8 and 8-A (Covington Feb. 22, 2017 Notes: Commercial Activity→Crystalized → Gulen); ECF No. 150-5 at 4; 150-6 at 2.

[13]   ECF No. 150-5, FBI 302 of Brian Smith on June 21, 2018, never produced by the government to Mr. Flynn (yet clear *Brady* evidence long exonerating Mr. Flynn of one of the prosecution's most ridiculous allegations regarding the "initiation" of the only op-ed written and published in connection with the project).  Even the recently filed, never produced FBI 302s prove that **the FBI and prosecutors knew** in mid-2018 from Covington lawyer Brian Smith that he: "was aware of the September 2016 meeting in New York City (NYC) where FLYNN and RAFIEKIAN met with Turkish government officials." ECF No.150-5 at 5.  "The meeting primarily focused on radical Islam. Briefly during the meeting, FIG described their business for ALPTEKIN/INOVO." *Id.* "The topic of GULEN was brought up by Turkish officials at the meeting." *Id.* The prosecutors' knowledge of Smith's true testimony did not stop them from trying to coerce Mr. Flynn into testifying differently a year later.

[14]   Ex. 8 (June 25, 2018 Notes).  This virtually verbatim transcript of Mr. Flynn's interview with Mr. Van Grack, Mr. Turgeon, and EDVA prosecutors in the presence of the FBI on June 25, 2018, is especially instructive.  This interview was long before the government filed its motion for downward departure because of Mr. Flynn's substantial assistance and made its judicial admissions about his numerous contributions to this Court on December 18, 2017.  Mr. Flynn was represented by Covington at the time; the firm did the transcription (to which the EDVA prosecutors referred new counsel for its accuracy); and, it preceded new counsel by one year.

Moreover, as Judge Trenga wrote: "On September 19, 2016, in a meeting arranged by Alptekin, Rafiekian, Flynn, and Brian McCauley met with Alptekin, MC, and then-Turkish Minister of Energy and Natural Resources Berat Albayrak ("BA"), President Erdogan's son-in-law, in New York City. *See* Trial Tr. 405:20-24, [Doc. No. 330] (McCauley). The meeting lasted about twenty-five to thirty minutes, *id.* at 409:13-14, 440:11-13, and mostly consisted of the Turkish officials expressing their negative opinions regarding Gulen, *see id.* at 440:18-441:8. During that meeting, there was no discussion concerning any work that FIG was doing or of FIG's relationship with Inovo or the Turkish government, nor was there any request from the Turkish officials or Alptekin for FIG to do anything.  *Id.* at 440:14-17,442:1-3." *United States v. Rafiekian*, No. 1:18-cr-457, ECF No. 372 at 8.

- Former FBI official Brian McCauley attended the New York meeting with the Turks. As McCauley testified in *Rafiekian*, the Turks gave no one instructions in that meeting, and Alptekin was not happy with any of FIG's work. McCauley slapped down most of his ideas. *See* Ex. 10.

- Significantly, Flynn also told Covington in their first meeting, that he briefed DIA before meeting the Turks in New York in September 2016.

In truth, it is Mr. Van Grack's "Statement of Offense" that is false or wrong—as Mr. Van Grack knew no later than June 21, 2018, when the FBI interviewed Brian Smith and created a 302 that proves Mr. Smith told the FBI that Flynn told Covington Rafiekian *wrote* the opinion piece.[15] Yet a year later, June 2019, Mr. Van Grack exploded at defense counsel because Mr. Flynn would not testify under oath that he made a "false statement" that was not false.

The prosecutors concocted the alleged "false statements" by their own misrepresentations, deceit, and omissions.[16]  It is beyond ironic and completely outrageous that the prosecutors have persecuted Mr. Flynn, virtually bankrupted him, and put his entire family through unimaginable stress for three years.  Mr. Flynn had long told the prosecutors that he had learned much with the

---

[15]  Even the FBI 302 of Brian Smith, recently filed, never produced to Mr. Flynn by the government, shows that Mr. Smith informed the government in 2018: "The topic of GULEN was brough up by Turkish official at the meeting." ECF No. 150-5 at 5.  FLYNN had informed SMITH the meetings conducted by RAFIEKIAN on behalf of FIG were considered lobbying efforts." ECF No. 150-5 at 7. "RAFIEKIAN worked with an editor, Hank COX, to write the op-ed on GULEN**.**" *Id.* "FLYNN informed SMITH it was his idea to write an op-ed. However, RAFIEKIAN, wrote the first draft of the op-ed about GULEN." *Id.* ECF No. 150-6 at 6.  Further, "when asked what facts were provided to Covington about PC [Project Confidence], which contradict FIG's FARA filing, Kelner explained according to *Rafiekian*, GULEN was the problem and was destroying the confidence in Turkey. In order to increase confidence in Turkey, GULEN had to be stopped." ECF No. 150-6 at 6-7.

[16]  Ex. 9 (Charts of Government's alleged "false statements" juxtaposed with actual FARA filing and evidence).  Prosecutors created the "false statements" by omissions and distortions which changed the meaning of the actual filing or depended on judgment calls made by Covington.

benefit of hindsight,[17] and that any problems with the FARA filing were not known to him at the time. On *June 25, 2018,* while represented by Covington—months before the government filed its sentencing motion and bragged about Mr. Flynn's full cooperation and special assistance at his scheduled sentencing in December 2018—Mr. Flynn specifically told them:

> I told this to you the other day, I don't go over the FARA filing with Bijan [Rafiekian] at all.  I don't know if that makes any different to you all. But it wasn't . . . learn a lot of things in hindsight.  Would it have adjusted what I, how I stated, how I filled out, can't say that it may have adjusted what I filled out; can't say it would or would not have.[18]

In short, the government has long known—from its "star cooperating witness" in the *Rafiekian* case:

- there was no conspiracy with Rafiekian;[19]

- there was no evidence that Turkish officials directed, controlled, or gave "instructions" to anyone at FIG for the project;[20]

---

[17]  Ex. 8 (June 25, 2018 Notes, page 10: "learn a lot of things in hindsight.").

[18]  Ex. 8 (June 25, 2018 Notes, page 10).

[19]  *See* Judge Trenga's Memorandum Opinion, *United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 372 at 34-35 ("the Government claims "the three co-conspirators [Rafiekian, Flynn, and Alptekin] again gave substantially identical explanations [in the FARA filings] that the jury plainly deemed false and used as further evidence of a concerted agreement to lie. [Doc. No. 365 at 20]. But that contention ignores the lack of evidence to establish the presumed conspiracy, or any agreement, among these three individuals concerning the FARA filing, as discussed above. In fact, until the eve of trial, the Government contended that Flynn was not part of the alleged conspiracy." [Footnotes omitted].

Trenga also noted, "The Government's position with respect to Flynn is particularly telling… with full knowledge of Flynn's involvement, the Government told the Court as recently as June 13, 2019, that Flynn was not a member of the alleged conspiracy, *see* June 13, 2019 hearing TR 65:9-22, [Doc. No. 213], only to notify the Court of its change in position on July 3, 2019, *see* [Doc. No. 261], not because of Flynn's known involvement as outlined above, or any other involvement, but because it no longer planned to call Flynn as a witness pursuant to his cooperation agreement with the Government, even though Flynn was prepared to testify."). *Id*. at n.44.

[20]  Judge Trenga heard the government's best evidence. *See* Judge Trenga's Memorandum Opinion, *United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 372 at 8.  That evidence

- Mr. Flynn was speaking in many cases with the benefit of hindsight; and

- Mr. Flynn could not even say that he would have answered questions any differently now than he did when Covington filed the FARA registration.[21]

Still the government was satisfied with Mr. Flynn's cooperation as of December 2018—so

satisfied that it filed its motion recommending probation because of his substantial assistance, and

Mr. Van Grack was profuse in praising Mr. Flynn in open court.  ECF No. 46, 47, and December

18, 2018 Hearing Tr. at 25:20- 27:22.

---

included testimony from *government* witnesses: Alptekin was not pleased with the scope or substance of what was presented to him, which included a presentation by McCauley summarizing the findings of the investigation into Gulen and a mockup of the Gulenopoly board game conceived by Sphere. *See* Trial Tr. 720:2-8, 720:19-721:4, [ECF No. 333] (Courtovich); 526:25-527:8, [ECF No. 331] (Boston).

[21]    Ex. 8 (June 25, 2018 Notes). Further, government witness former FBI Deputy Assistant Director Brian McCauley also proved there was no "direction or control" even by Alptekin—the Turkish businessman in *Rafiekian*.  He testified: "Alptekin was angry and dissatisfied with everything FIG had done, including the report FIG gave him. FIG had not even done what Alptekin wanted or expected—at any juncture.  There was no evidence of any particular act being requested by any of the Turkish ministers at the only brief "meet and greet" they had in NY late one night. (This is consistent with Flynn's grand jury testimony).   McCauley further debunked the government's fictitious conspiracy when he testified that Flynn told Rafiekian to file with "DOJ.". Ex. 10 (McCauley *Rafiekian* testimony).

It is undisputed that Rafiekian sought legal advice for that very purpose—even from Covington.  When Flynn received the FARA letter from DOJ, he was stunned.  Mr. Flynn told the prosecutors in one of his many cooperation sessions: "I assumed Bob Kelley was briefed by Bijan on what was going on. Fast forward, I learned that Bijan had called here [Covington] to ask about FARA filing. I didn't know about that. He asked a couple of stupid questions that had nothing to do with FARA, but just political nonsense. I didn't find out about that until later on. Number one, that irritated me because he thought about that. He knew what FARA was. I've never talked to him about this. Other [than] sticking the document I got from DOJ in his chest was one of the last times I spoke to him. I was irritated that he had called up about FARA. For the cost of 10K to file FARA [to begin with] we're now sitting here," and "I'm not sure if we talked about that. You're scraping at cobwebs.  I told Bijan that I had this conversation going on.  I don't know what depth I discussed with him…" Again, this conversation was June 15, 2018, --long before new counsel appeared and before SCO expressed its delight with his substantial assistance. Ex. 11 (June 14, 2018 Covington Interview Notes).

The only thing that changed in Mr. Flynn's case was the appearance of new, unconflicted counsel on Mr. Flynn's behalf, and Mr. Flynn's refusal to lie for the prosecution of Rafiekian with the representation, protection, and advocacy of his new defense team.

Defense counsel recently again advised the government that redlined edits to the "statement of offense," negotiated with Mr. Van Grack on November 30, 2017, specifically removed the language "as he then and there knew" regarding the allegedly "false" FARA statements.[22]  Not only did Mr. Van Grack demand false testimony from Mr. Flynn about the alleged "false statements" in the FARA filing, but Mr. Van Grack also knew it was false because Mr. Flynn had explained it to him on June 25, 2018,[23] in preparation for his testimony to the grand jury for the *Rafiekian* indictment for which Mr. Van Grack touted Mr. Flynn's "substantial assistance."[24]

Undersigned counsel walked the prosecutors through notes and documents that proved the truth of the defense's statements on June 27, 2019.  Instead of reevaluating the situation, Mr. Van Grack flew into a rage.[25]  As the defense explained in *United States v. Rafiekian*, the prosecutors responded to this information from counsel for Mr. Flynn by doubling-down.[26]  They scheduled an interview by the FBI with Mr. Kelner at Covington & Burling, which they later moved to the U.S.

---

[22]  Ex. 1 (Redlined Statement of Offense at page 6, yellow-highlighted language).

[23]  Ex. 8 (June 25, 2018 Notes).

[24]  A clear "shot across the bow" to Flynn and Covington, the government obtained the Rafiekian indictment only days before the scheduled sentencing before this Court.  It worked—just in time to leverage it to confirm his plea of guilty in front of Judge Sullivan.  Mr. Van Grack used the possibility of indicting Flynn in the *Rafiekian* case at the sentencing hearing to raise the specter of all the threats he had made to secure the plea a year earlier— including the indictment of Mr. Flynn's son.

[25]  Ex. 2 (McKasson Declaration).

[26] *See, United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 270.

Attorney's office in Alexandria on July 3, 2019. Also, on July 3, 2019, an FBI Agent called the younger Michael Flynn directly to question him—despite knowing that he was represented by counsel. The Agent persisted in speaking with him even after he said to call his attorney. *See, United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 270.

The prosecutors told the new defense lawyers that they would question Mr. Kelner in his July 3, 2019, interview about the Covington notes new counsel had just provided to the government—showing that Mr. Flynn had been fulsome with his counsel—but Mr. Turgeon did not do so. Instead, Mr. Turgeon carefully worded his questions to elicit responses from former counsel that were misleading at best, if not directly contradicted by the notes by Covington's notetaker and partner Brian Smith. *See, United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 270.

Within minutes of concluding the interview of Mr. Kelner, AUSA James Gillis called defense counsel only to notify us that he would not be calling Mr. Flynn as a witness, and that counsel would be receiving a gag order that prohibited counsel from disclosing that fact. He did not even mention that the government had made the remarkable decision to re-cast Mr. Flynn as a co-conspirator—contrary to many prior representations—and that they would seek a ruling from this Court finding him to be a co-conspirator by a preponderance of the evidence in the high-profile *Rafiekian* proceeding in which he could not defend himself.[27] *See, United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 270.

---

[27] *See, United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 270 for the full discussion of this information.  As Judge Trenga wrote: "Then on July 3, 2019, the Government filed a Notice of Correction to the Record in which it advised the Court that it no longer planned to call Flynn as a witness in its case in chief. The Government also took the position for the first time, contrary to its earlier in-court statements, that Flynn was regarded as a co-conspirator and that it would seek to have his out-of-court statements introduced pursuant to Fed. R. Evid. 801(d)(2)(E)." (Citations Omitted) *See* Judge Trenga's Memorandum Opinion, *United States v. Rafiekian,* Case No. 1:18-cr-457, ECF No. 372 at 11.

The prosecution has shown abject bad faith in pure retaliation against Mr. Flynn since he retained new counsel.  This can only be because with new, unconflicted counsel, Mr. Flynn refused to lie for the prosecution.  In pure spite, the government retaliated and sought to rescind its judicial admissions that Mr. Flynn was not a co-conspirator, obtained an *ex parte* emergency order from Judge Trenga, including a gag order, and moved up the date of a hearing on the issues without notice to counsel for Mr. Flynn.[28]  An agent improperly contacted Michael Flynn Jr., see *supra*. The prosecutors placed him on the witness list solely to harass him and to raise the threat and anxiety of the family at this crucial time.  The prosecutors completed the trial without calling him as a witness.

Justice is not a game, and there should be no room for such gamesmanship in the Department of Justice.

**B.  The Government's December 15, 2019 Extraordinary Production, the December Report of the Inspector General, this Court's Opinion Denying All *Brady* Requests, and the Government's New Sentencing Position and Memo Warrant This Continuance.**

There have been extraordinary developments in this case in the last thirty days.  In addition, in the process of preparing for sentencing, we found information we have not seen previously— despite our team's most diligent efforts. Due to the multiple issues, filings, productions, and developments outlined herein, however, the defense must have additional time to zealously provide their client the quality of representation to which he is entitled.

---

[28]   Only then did Mr. Flynn's unconflicted new defense counsel file a motion to oppose his designation as a co-conspirator.  *United States v. Rafiekian*, 1:18-cr-00457, ECF No. 270.

### 1. The 478 Page IG Report Disclosed Stunning New Information About the Second Agent Who Interviewed Mr. Flynn.

On December 9, 2019, the Inspector General ("IG") for the Department of Justice issued the 478-page Report on FISA abuses.  At the government's request on November 26, 2019, the parties agreed, and this Court issued an order, approving a delay for this Court's decision on Mr. Flynn's Motion to Compel because that Report was expected to "examine topics related to several matters raised by the defendant."[29] It certainly does.

### 2. On December 15, 2019, the Government Finally Produced 637 Pages of Long-Promised 302s and Handwritten Notes of Agents.

The government produced an additional 637 pages of discovery to Mr. Flynn only three weeks ago. Mr. Flynn's counsel has notified the government of problems with that production.[30] The production, consisting of 302s and notes requested multiple times since Oct. 11, 2019, includes crucial documents such as sixteen 302s consisting of 113 pages, as well as 206 pages of handwritten FBI notes. Mr. Flynn's counsel is still reviewing and digesting these documents as the handwritten notes are particularly difficult to read.

### 3. This Court's Ninety-Two Page Decision

The next day, on December 16, 2019, this Court issued a 92-page decision in which it rejected every request in Mr. Flynn's motion for exculpatory evidence, including requesting the required production of the inexplicably "missing" original 302 by the fired and infamous former

---

[29]   ECF No. 140 at 2.

[30]  In the government's cover letter with its most recent production, it claims that it is producing documents with the Bates range of 700022699-23460; however, the production was missing the following Bates ranges: 700022699-22756, 23173-23213, 23247-23258, and 23267-23282. The production was also not produced in Bates order, making it very confusing to review. For example, Bates stamp 22953 appears before Bates stamp 22890. Ms. Ballantine promptly responded over the weekend with an effort to correct this, and the parties expect to resolve any issues.

FBI Agent Peter Strzok. ECF No. 144.  Despite the Court's grant of the parties' request for delay

of that Order until the Report issued, the 92-page decision did not address the IG Report, and the

Court did not afford the parties any time to brief the remarkable new information revealed in the

IG Report and the effect of that information on Mr. Flynn's case. Mr. Flynn needs additional time

to review and present information from that Report that does indeed bear on his case and to protect

his constitutional rights.

### 4.   The Government Obtained Two Extensions Before Filing Its Sentencing Memoranda Seeking to Revise History and Imprison Mr. Flynn.

Per the Court's Order, the government was to provide its supplemental sentencing

memorandum on December 30, 2019.  Unexpectedly, on December 20, 2019, the government

requested from Mr. Flynn a letter outlining "the facts and circumstances that the defendant believes

should be taken into consideration by the Departure Committee when determining whether the

defendant merits a downward departure motion pursuant to USSG Section 5K1.1, 18 U.S.C.

§ 3553(e), and/or Fed. R. Crim. P. 35(b)."  The government gave a deadline of noon, December

24, 2019 (Christmas Eve).  Mr. Flynn replied and requested an extension to December 27, 2019.

The government denied the request to the 27th, but it granted the defense an extension to 5 p.m.

on December 26, 2019.  This required the defense team to work through Christmas Eve and

Christmas Day, only to receive "out-of-office for the week" replies from government lawyers to

whom we sent the letter.

Mr. Flynn provided his letter to the government by its requested deadline of 5 p.m. on

December 26, 2019.  The government notified Mr. Flynn that it was likely unable to meet its

deadline to this Court of December 30, 2019, due to "the holidays" and requested an extension to

January 7, 2020.  Mr. Flynn agreed with government's request despite having just been forced by

the prosecutors to work through Christmas and Hanukkah themselves.  Thus, the government

sought and obtained an extension from this Court for its "supplemental" sentencing memorandum. On January 4, 2020, the government moved again to continue the sentencing deadline by 24 hours—again because of holiday schedules. ECF No. 149. The defense also agreed to this extension. Despite its multiple extension requests, the government still filed past this Court's noon deadline. ECF No. 150.

### C. The Government's Sentencing Memo Dramatically Changed Its Position, Seeks to Withdraw Its Prior Motion and Recommendation, and Triggers the Necessity to File this Motion Now to Withdraw the Plea.[31]

In its "supplemental" sentencing memorandum, the government reverses its position on Mr. Flynn's sentencing.[32] It seeks to "withdraw" its motion filed a year ago pursuant to U.S.S.G. § 5K1.1 and to withdraw its recommendation that he receive probation. The prosecution seeks to rewrite history and send Mr. Flynn to prison. This about-face places the government in breach of the plea agreement and triggers application of the ramifications of the Supreme Court's decision in *Puckett*, 556 U.S. 129. *Puckett* requires any competent defense counsel in these circumstances to move to withdraw Mr. Flynn's guilty plea for this reason alone. *Id.* It would constitute ineffective assistance of counsel to fail to move to withdraw his plea now in light of the government's breach and change in sentencing recommendation.

---

[31] The government's letter just received yesterday by way of "Certificate of Conference" which agrees to the Continuance requested, tries "to have its cake and eat it too." The government breached the plea agreement when it filed the new sentencing memo. Mr. Flynn now also needs time to brief many alternate reasons for the withdrawal of his plea.

[32] The government's "supplemental" memorandum is thirty-two pages in length (its original memorandum was merely six). ECF No. 150 and 46, respectively. It also contains 136 pages of exhibits, including 302s of Mr. Flynn's interview of June 25, 2018 as well as Mr. Flynn's previous counsel, Robert Kelner's (on June 21, 2018 and July 3, 2019) and Brian Smith's (June 21, 2018) interviews. Counsel was provided Mr. Flynn's interviews in the production on December 15, 2019. Counsel had not previously seen the attorney 302s or the more than 200 pages of handwritten notes of the agents that must be deciphered. ECF No. 150-1 – 150-6.

Mr. Flynn has instructed counsel to file *this* Motion to withdraw his plea now.  The defense must file a Supplemental Motion to Withdraw for alternative additional reasons as soon as possible.  Mr. Flynn will not plead guilty.  Furthermore, he will not accede to the government's demand that he "disavow" any statements made in his filings since he obtained new, unconflicted counsel.  Michael T. Flynn is innocent.  Mr. Flynn has cooperated with the government in good faith for two years.  He gave the prosecution his full cooperation.  "He held nothing back."  He endured massive, unnecessary, and frankly counterproductive demands on his time, his family, his scarce resources, and his life.  The same cannot be said for the prosecution which has operated in bad faith from the inception of the "investigation" and continues relentlessly through this specious prosecution.[33]

Because of the government's special role in the justice system and its extraordinary bargaining power, a plea agreement is strictly construed against the government.  Unless the plea agreement reserves the government's right to withdraw a filed Section 5K1.1 motion and specifies the conduct that would trigger the government's right to withdraw, the government may not request withdrawal of the motion.  *United States v. Padilla*, 183 F.3d 136, 141 (2nd Cir. 1999).  The Flynn plea agreement contains no such reservation or specification, and the government is in breach.

The Department of Justice, specifically the Office of United States Attorney for the District of Columbia, reversed its sentencing position despite the many judicial admissions of the

---

[33]  Notably, the first interview of Mr. Flynn was conducted surreptitiously by the FBI by the unprecedented and never-to-be repeated maneuver of slipping an agent into a sample presidential daily briefing to nominee Trump, Mr. Flynn, and a third person on August 17, 2016—two days after Strzok and Page texted about "the insurance policy discussed in McCabe's office and one day after they supposedly "opened" and investigation of Mr. Flynn.  Office of the Inspector General, U.S. Dept. of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, 340-41, 426 (December 2019, revised).

prosecutors from DOJ and EDVA, and despite the fact that virtually every premise undergirding the prosecutors' original memorandum still holds true. Compare ECF No. 150 to ECF No. 46-47.

Mr. Flynn has spent approximately one hundred hours cooperating with the government and has provided it thousands of documents, incurring millions of dollars in legal fees and expenses—requiring him to sell his home in Alexandria—all to cooperate with the government. As the government noted in its original memorandum, Mr. Flynn's "early cooperation was particularly valuable because he was one of the few people with long-term and firsthand insight regarding events at issue under investigation by the SCO…[which] likely affected the decisions of related firsthand witness to be forthcoming with the SCO and cooperate." ECF No. 46-1 at 5. Nothing reasonable or rational explains the government's breach.

Furthermore, as the government admitted, Mr. Flynn's "military and public service are exemplary. He served in the military for over 33 years, including five years in combat duty, led the Defense Intelligence Agency, and retired as a 3-star general. The Defendant's record of military and public service distinguish him from every other person who has been charged as part [of] the SCO's investigation." ECF No. 46 at 5. This all remains true today.

### D. *Puckett Requires* Mr. Flynn Move to Withdraw His Plea.

The government's new Supplemental Memorandum in Aid of Sentencing recommends that this Court impose on Mr. Flynn a period of incarceration, and it specifically seeks to withdraw its previous motion. ECF No. 150. The government's position not only breaches the plea agreement, but it also violates Mr. Flynn's Due Process rights. It magnifies and further proves the government's abject bad faith and vindictiveness.

The terms of that agreement clearly state:

If the government determines that your client has provided such substantial assistance, this Office *shall* file a departure motion pursuant to Section 5K1.1 of

17

the Sentencing Guidelines, which would afford your client an opportunity to persuade the Court that your client should be sentenced to a lesser period of incarceration and/or fine than indicated by the Sentencing Guidelines.[34]

Consistent therewith, on December 4, 2018, the government submitted its recommendation to this Court which concluded  that "[g]iven the defendant's substantial assistance and other considerations . . . a sentence at the low end of the guideline range—including a sentence that does not impose a term of incarceration—is appropriate and warranted."   ECF No. 46 at 1.   In the December 18, 2018, sentencing hearing, the government represented to this Court that Mr. Flynn should receive probation and confirmed his "substantial assistance."   The government based its decision on Mr. Flynn's cooperation both with the SCO, which was, according to the government, "very largely complete, completed at this point," and the extensive cooperation Mr. Flynn provided to the EDVA.  Mr. Van Grack thoroughly praised Mr. Flynn, telling the Court: "I'd like to highlight that General Flynn has held nothing back, nothing in his extensive cooperation with the Special Counsel's Office. He's answered every question that's been asked. I believe they feel that he's answered them truthfully, and he has. He's complied with every request that's been made, as has his counsel. Nothing has been held back."[35]   The government told the Court that Mr. Flynn "provided substantial assistance to the attorneys in the Eastern District of Virginia in obtaining th[e] charging document"[36] for its prosecution of Bijan Rafiekian and Ekim Alptekin.

Mr. Flynn was ready, willing, and able to testify consistently with his grand jury testimony. As late as June 2019, government prosecutors were still assuring current counsel that Mr. Flynn's

---

[34]  *See* Exhibit 4 (Plea Agreement) (emphasis added).

[35]  Hr'g Tr. 46:8-14, Dec. 18, 2018.

[36]  Hr'g Tr. 27:20-22, Dec. 18, 2018.

cooperation would not be affected by the outcome of the *Rafiekian* case.   The government's stunning and vindictive reversal of its earlier representations to this Court are incredible, vindictive, in bad faith, and breach the plea agreement.

Mr. Van Grack's obsession with attempting (and failing) to bully Mr. Flynn into testifying consistently with the government's fictional theory of the case in the *Rafiekian* matter—and admit guilt to "false statements" the government knows he did not make—is repugnant to the search for justice which cannot be found without first finding truth.   His attempt to punish Mr. Flynn for standing firm for the truth is unlawful. *See Wade v. United States*, 504 U.S. 181 (1992) (review for an "unconstitutional motive").   The government's tactics in retaliation for Mr. Flynn's refusal to "compose" for the prosecution is also a due process violation that can and should be stopped dead in its tracks by this Court.  *See United States v. Paramo,* 998 F.2d 1212, 1218-20 (3d Cir. 1993) (reversing a district court that refused to consider a prosecutorial vindictiveness claim when the prosecution withheld a 5K1.1 because the defendant decided to plead not guilty and proceed to trial).   By attempting to punish Mr. Flynn for pushing back at Mr. Van Grack's attempts to coerce him into giving false testimony in the *Rafiekian* case, the prosecutor's retaliatory motive shows "actual vindictiveness." *Id.* at 1220.

"Long ago, the Supreme Court instructed that '(t)he right to counsel guaranteed by the Constitution contemplates the services of an attorney devoted solely to the interests of his client,' an admonition which we ourselves have had occasion to observe. 'Undivided allegiance and faithful, devoted service to a client,' the Court declared, 'are prized traditions of the American lawyer. It is this kind of service for which the Sixth Amendment makes provision.'" *United States v. Hurt*, 543 F.2d 162 (D.C. Cir. 1976) (citing *Von Moltke v. Gillies*, 332 U.S. 708, 725 (1948)).   Effective assistance of counsel requires counsel for Mr. Flynn to move to withdraw his

plea, and Mr. Flynn has instructed counsel to do so now—for the reasons stated herein and for many alternate reasons we will present in a supplemental filing. *Puckett v. United States*, 556 U.S. 129 (2009). [37] In *Puckett*, the majority wrote: "such a breach is *undoubtedly* a violation of the defendant's rights"[38] and that if the government's "obligations are not met" under the plea agreement, "the defendant is entitled to seek a remedy"—which includes "allowing him to withdraw his plea."[39] The government is "obligated to uphold its side of the bargain"[40] in a plea agreement, and its failure to do so is grounds for withdrawal of the defendant's guilty plea. *Id.* Here the government breached the contract with its request to withdraw its motion and for incarceration of Mr. Flynn.

### E. Conclusion

Accordingly, Mr. Flynn moves to withdraw his plea of guilty. The government breached the plea agreement, and future briefing will establish additional reasons. The government has agreed to a thirty-day continuance. He requests the continuance be granted in the interest of justice and to allow Mr. Flynn and his counsel to process, respond, and reply to the many ramifications from the significant developments and new information that has been disclosed in the last thirty days.

---

[37] In *Puckett,* the Supreme Court applied the "plain error" standard and ruled against Puckett because defense counsel did not move to withdraw his plea in the district court when the Government defaulted on its plea-agreement obligations and sought additional incarceration— even though Mr. Puckett had committed an additional crime in the three years between his guilty plea and his sentencing. *Puckett*, 556 U.S. at 133.

[38] *Id.* at 136 (emphasis added).

[39] *Id.* at 137.

[40] *Id.* at 138.

Dated: January 14, 2020

Reviewed, understood, and agreed,

Respectfully submitted,

/s/ Michael T. Flynn
_____
Lt. General Michael T. Flynn (Ret.)

/s/ Sidney Powell
_____
Sidney Powell
Molly McCann
Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, Florida 32162
Tel: (352) 399-0531
Fax: (352) 240-3489
Admitted *Pro Hac Vice*

/s/ Jesse R. Binnall
_____
Jesse R. Binnall
Lindsay R. McKasson
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF CONFERENCE</u>

The government's response to the Motion for Continuance is attached in the form of the letter Ms. Ballantine requested attached.  Defense counsel contacted the government shortly before filing this Motion to Withdraw the Plea. The government had not replied at the time of filing.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 14, 2020, a true and genuine copy of Mr. Flynn's Motion

for Leave for Continuance of Sentencing was served via electronic mail by the Court's CM/ECF

system to all counsel of record, including:

      Jessie K. Liu, U.S. Attorney for the District of Columbia
      Brandon L. Van Grack, Special Assistant U.S. Attorney
      Jocelyn Ballantine, Assistant U.S. Attorney
      555 4th Street, NW
      Washington, D.C. 20530

                Respectfully submitted,

                */s/*  Jesse R. Binnall
                Jesse R. Binnall, VSB# 79272
                HARVEY & BINNALL, PLLC
                717 King Street, Suite 300
                Alexandria, VA 22314
                Tel: (703) 888-1943
                Fax: (703) 888-1930
                jbinnall@harveybinnall.com