# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Criminal Action No. 17-232-EGS** |
| **MICHAEL T. FLYNN,** | |
| **Defendant.** | |

## MR. FLYNN'S SUPPLEMENTAL SENTENCING MEMORANDUM

Sidney Powell
Molly McCann
Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, Florida 32162
Tel: (352) 399-0531
Fax: (352) 240-3489
Admitted *Pro Hac Vice*

Jesse R. Binnall
Lindsay R. McKasson
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted *Pro Hac Vice*

**Attorneys for Lt. General Michael T. Flynn (USA) (Retired)**

This Court should swiftly reject the government's brazen attempt to punish Mr. Flynn for refusing to *compose* rather than *sing*.[1] The reversal of its sentencing position is not only unjust, it is unlawful. If left unchecked, it will send a dangerous message to cooperators – give testimony consistent with the government's theory of the case, regardless of veracity, *or* pay the price with your freedom.

The government also continues its campaign to hold Mr. Flynn responsible for false statements in a FARA filing. It ignores the facts in its possession as well as the decision of another court. Any misstatements in the March 2017 FARA filing at issue were not the fault of Mr. Flynn. He gave his lawyers complete and accurate documents and information. Moreover, he did his part to make sure any FARA filing was accurate. The FARA statements listed in the Statement of Offense (ECF No. 4) are either not false or not attributable to Mr. Flynn.[2]

Mr. Flynn dedicated his life to serving his country. While the defendants in other cases cited by the government were working to benefit themselves, Mr. Flynn wrote a blank check on his life and put himself in harm's way for more than five years in foreign deployments and thirty-three years of service to protect all Americans. He has touched the lives of countless people in the process, many of whom wrote letters to the Court on his behalf. For the reasons set forth in this supplemental memorandum and Mr. Flynn's initial sentencing brief (ECF No. 50), Mr. Flynn should receive a sentence, if any,[3] of probation and community service.

---

[1] Paraphrasing an expression that Alan Dershowitz has used for decades. *See* Alan Dershowitz, *Federal Judge Rightly Rebukes Muller for Questionable Tactics*, The Hill, May 7, 2018, https://thehill.com/opinion/judiciary/386508-federal-judge-rightly-rebukes-muller-for-questionable-tactics.

[2] *See* Ex. 1 (comparing the government's allegations with the actual FARA filing and showing that any FARA falsehood were by the government).

[3] Pursuant to ECF No. 151 and Mr. Flynn's forthcoming motions there should be no sentencing.

## RELEVANT FACTS

Since November 2017 (and before), Mr. Flynn told the government the truth about every question it asked him, including what he knows concerning the Flynn Intel Group's ("FIG") involvement with Inovo BV, Ekim Altepkin, and the Government of Turkey. When the government decided to charge his former business partner, Bijan Rafiekian, *U.S. v. Rafiekian*, 1:18-cr-00457 (E.D. Va. 2019), concerning that relationship, Mr. Flynn continued to provide the government the truth, the whole truth, and nothing but the truth. At the beginning of his cooperation, Mr. Flynn's then-counsel and the government drafted a Statement of Offense. The government's original draft contained language that would have Mr. Flynn claim that he "then and there knew" that the FARA filing made by Covington in March of 2017 was false. Mr. Flynn could not sign that assertion because it was not true. Instead, the parties agreed to remove that language. One red-lined draft specifically shows that the language "then and there knew" relating to the FARA statements was removed and did not make it into the final version. *Compare* ECF No. 153-1 to ECF No. 4. Since that time, Mr. Flynn and his counsel have spent over one-hundred hours cooperating with the SCO and the EDVA, giving them truthful accounts about what he witnessed.

After twenty interviews, the government tried to pressure Mr. Flynn to change his testimony by saying that he knowingly authorized, made, or caused false statements in the FARA filing despite the clear written (redlined Statement of Offense) and transcribed record (notes of interviews plus his grand jury testimony) evidence to the contrary. After Mr. Flynn refused to "compose," the government began retaliating. They started by attempting to name Mr. Flynn as a co-conspirator in the EDVA matter. *U.S. v. Rafiekian*, 1:18-cr-00457, ECF No. 270 ("the government's reversal also sounds an alarm of possible retaliation and may have ramifications for Mr. Flynn beyond this trial. Mr. Flynn is still willing to cooperate with the government and provide

testimony consistent with his grand jury testimony and prior interviews."). During the trial, they continued to retaliate by claiming Mr. Flynn was a co-conspirator. Judge Trenga was not impressed:

> The Government's position with respect to Flynn is particularly telling…the Government did not allege in either the original indictment or the superseding indictment that Flynn was a member of the conspiracy…Nor did the Government allege that Flynn was a member of the alleged conspiracy in its response to a court-ordered Bill of Particulars…With full knowledge of Flynn's involvement, the Government told the Court as recently as June 13, 2019, that Flynn was not a member of the alleged conspiracy, *see* June 13, 2019 Hearing Tr. 65:9-22, [Doc. No. 213], only to notify the Court of its change in position on July 3, 2019, *see* [Doc. No. 261], not because of Flynn's known involvement as outlined above or any other involvement, but because it no longer planned to call Flynn as a witness pursuant to his cooperation agreement with the Government, even though Flynn was prepared to testify.

*U.S. v. Rafiekian*, 1:18-cr-00457, ECF No. 372 at 35 (emphasis added).

But the prosecutors did not stop there. They continued their campaign of retaliation when they filed the recent supplemental memorandum in aid of sentencing. ECF No. 150. The comparison of that brief to its previous sentencing filings, ECF Nos. 46 and 47, and statements made at the December 2018 hearing is telling.

The government's sentencing briefs from December 2018 detailed Mr. Flynn's cooperation. The government recommended a sentence of probation after it also moved for a downward departure. ECF Nos. 46 and 47. During the hearing the government posited: it only "remain[ed] a possibility that General Flynn is continuing to cooperate with the government." Dec. 18, 2018 Hearing Tr., 25:20-22. The government also stated, at that time, that:

> [B]ased on the totality of the assistance that the defendant had provided at that point. We believe that it did merit substantial assistance in the filing of a motion for a downward departure, and we made a submission summarizing that. Related to that is, based on the government's view of not only the assistance he provided, but the nature of the investigations he provided, that the defendant had provided the vast majority of cooperation that could be considered.

*Id.* at 27:6-13. Thus, if Mr. Flynn's cooperation was considered "substantial assistance" barely a year ago, it cannot be cast as anything but "substantial assistance" now regardless of Mr. Flynn's participation in the *Rafiekian* matter.

That the government now tries to walk back its position regarding Mr. Flynn is purely retaliation and vindictiveness by the prosecution. Its current position cannot stand and it should be bound by the previous judicial admissions it made to this Court.

## ARGUMENT

### I.   Mr. Flynn upheld his end of the bargain under the Cooperation Agreement; the government failed to do so.

The government's attempt to withdraw its request for a downward departure pursuant to U.S.S.G. § 5K1.1 is inappropriate, unlawful, and a breach of the plea agreement. It is not based on a legitimate purpose but rather because it could not convince Mr. Flynn to give false testimony in *United States v. Rafiekian*, 1:18-cr-00457 (E.D. Va. 2019). As Mr. Flynn discussed at length in his Motion to Withdraw Plea of Guilty and Unopposed Motion for Continuance (ECF No. 151, ("Withdrawal Motion I")), Mr. Van Grack sought to force Mr. Flynn to lie for the government's benefit. This failed attempt to cause Mr. Flynn to perjure himself and make false statements is repugnant and should be soundly rejected by this Court. It is especially ironic that in this case, a high profile § 1001 prosecution, that the prosecutor involved would attempt (and fail) to cause Mr. Flynn to make false statements. As explained in Withdrawal Motion I, the government's breach is cause for Mr. Flynn to withdraw his guilty plea. ECF No. 151. Additionally, the government's request should be ignored by this Court for sentencing purposes. Instead, the original Motion for a Downward Departure (ECF No. 47) should stand unaltered and the agreed sentence of probation should be imposed.

"In interpreting the terms of a plea agreement, we look to principles of contract law. In evaluating whether a plea agreement has been breached, we look to the reasonable understanding of the parties and construe any ambiguities in the agreement against the government." *United States v. Murray*, 897 F.3d 298, 304 (D.C. Cir. 2018); see also *United States v. Jones*, 58 F.3d 692 (D.C. Cir. 1995) (a "plea agreement is a contract" and subject to the principles of contract law in its enforcement); *Santobello v. New York*, 404 U.S. 257, 262 (1971) (applying contract principles to plea agreements); and *United States v. Padilla*, 186 F.3d 136, 140 (2d Cir. 1999) (because of the government's "overwhelmingly superior bargaining power," plea agreements are strictly construed against the government). Like any other contract, the government must abide by its implied duty of good faith and fair dealing in performing its obligations under the sentencing agreement. *Murray,* 897 F.3d at 305.

When the government files a motion for a downward departure pursuant to USSG § 5K1.1 and a plea agreement, it can only be withdrawn if the plea agreement specifically provides for the withdrawal. *Padilla,* 186 F.3d at 141. Here, there was no such provision for a withdrawal, the government's request to do so is invalid. *See* ECF No. 3.

Moreover, the failure of the government to recommend a downward departure for a constitutionally infirm reason is subject to judicial review. *See Wade v. United States,* 504 U.S. 181 (1992). As Mr. Flynn previously explained,[4] the government attempted to coerce Mr. Flynn to lie in the *Rafiekian* case, and the prosecutors knew the statements they demanded Mr. Flynn make were contradicted by the Smith FD-302 of June 2018, the edited Statement of Offense, and other information Covington lawyers provided to the government. Indeed, Mr. Flynn presented

---

[4] *See* Withdrawal Motion I (ECF No. 151 at 22) and Mr. Flynn's Supp. Brief in Support of Motion to Withdraw Plea of Guilty (ECF 154).

substantial evidence, first to the government and then to this Court, that the government's theory

that Mr. Flynn purposefully caused a false statement to be filed with the FARA unit in March 2017

is pure fiction.

The government's attempt to punish Mr. Flynn for pushing back against requests to give

false evidence violates the very essence of due process and should be rejected. *See United States*

*v. Paramo,* 998 F.2d 1212, 1218-20 (3d Cir. 1993) (holding that it is reversible error when a district

court does not consider a prosecutorial vindictiveness claim when the prosecution withholds a

5K1.1 motion because the defendant chooses to exercise a constitutional right). Mr. Van Grack's

attempt to punish Mr. Flynn for rejecting his insistence to commit perjury is a pedagogical example

of "actual vindictiveness." *Id.* at 1220.

In considering an appropriate sentence, factors like deterrence are considered; the Court

thinks about the message it sends to others not before it. Here, the Court should applaud Mr.

Flynn's courage to stand firm against attempted coercion. If other cooperators know that they will

be rewarded for testifying truthfully, not testifying to please prosecutors, the search for justice will

be enhanced. Conversely, attempts by prosecutors to use their extraordinary leverage in an attempt

to change the facts to meet their *theory*, rather than the truth, should be overtly chastised.

Otherwise, the message will be heard loud and clear by others seeking a 5K1.1 motion: the facts

are whatever prosecutors want them to be, regardless of actual veracity.

## II.     The government is asking the Court to consider behavior that is neither criminal nor culpable in regards to the March 2017 FARA filing.

Not to be dissuaded by the facts, the government continues its attempt to saddle Mr. Flynn

with allegations of misconduct regarding the FARA filing submitted by his former lawyers in

March 2017. As argued *supra*, this is despite the government's knowledge and agreement to

remove the language of intent (that Mr. Flynn "then and there knew" the relevant statements to be

false) from paragraph five of the Statement of Offense. ECF No. 4. Moreover, the FARA filing read as a whole with the accompanying cover letter is overwhelmingly accurate. Any inaccuracy was caused by Covington, not Mr. Flynn (he did not know what his lawyers' two-month investigation uncovered).

There are three primary reasons why Mr. Flynn received no advantage for the inclusion of the FARA paragraph in his statement of offense: (1) Mr. Flynn never intentionally made or caused any false statements and omissions in the FARA filing, (2) prosecutors have made judicial admissions exculpating Mr. Flynn, and (3) another court has determined that the alleged acts were not unlawful; as a matter of documents and proof, the statements that the Government purports to be false are either not false or not attributable to Mr. Flynn. *See U.S. v. Rafiekian*, 1:18-cr-00457, ECF No. 372.

### A. Flynn did not make or cause false FARA statements

The Foreign Agents Registration Act ("FARA") requires that "no person shall act as an agent of a foreign principal unless he has filed with the Attorney General a true and complete registration statement and supplements thereto. 22 U.S.C. § 612. A violation of FARA applies to any person who: (1) **willfully** violates any provision of this subchapter or any registration thereunder, or, (2) in any registration statement or supplement thereto or in any other document filed with or furnished to the Attorney General under the provisions of this subchapter **willfully makes a false statement of a material fact or willfully omits any material fact required to be stated therein or willfully omits a material fact**. 22 U.S.C. § 618 (emphasis added). Thus, a FARA violation requires willful conduct.

Here, by omitting the language "then and there knew," the government omitted any willful conduct by Mr. Flynn, an element of a FARA offense. This is putting aside that Mr. Flynn did in

fact register his company not just once, but twice (FIG first registered under the Lobbying Disclosure Act through attorney Robert Kelley). Moreover, Mr. Flynn hired the ostensibly elite legal team at Covington to investigate and (if necessary) file under FARA. The FARA filing (ECF 150-1 at 35-68) is substantially correct—especially when considered with the cover letter Covington included with the filing. ECF No. 151-6 ("because of the subject matter of Flynn Intel Group's work for Inovo BV, which focused on Mr. Fethullah Gulen, whose extradition is sought by the Government of Turkey, the engagement could be construed to have principally benefitted the Republic of Turkey.").

B. *The government should be held to its judicial admissions.*

On a number of occasions, the government admitted that Mr. Flynn was not culpable for false FARA statements or conspiring to cause false FARA statements.[5] When this Court questioned it regarding Mr. Flynn's exposure relating to the FARA filing, which was "part of the indictment filed in the Eastern District of Virginia," Mr. Van Grack stated, "under those false statements, now that I think about it, Your Honor, pertain to Ekim Alptekin, and I don't believe the defendant had exposure to the false statements from that individual." Dec. 18, 2018 Hearing Tr., 27:23-28:24.

In the *Rafiekian* case, Judge Trenga asked the government point blank whether it was asserting that Mr. Flynn was part of a conspiracy to cause a false FARA statement. The government was clear, "we do not contend that General Flynn was a part of that conspiracy." ECF No. 151-3. It only changed its tune when they decided to retaliate against him for refusing to give false evidence.

---

[5] *See* ECF No. 151 at 8 n. 14; *see also* judicial admissions ECF Nos. 46 and 47.

*C. The alleged conduct was not culpable.*

The Inovo BV contract was the brainchild of Mr. Flynn's partner, Mr. Rafiekian. After the *Rafiekian* trial, Judge Trenga explained in reasoned detail why the government failed to meet its burden as he entered a judgment of acquittal or, in the alternative, a new trial. *Rafiekian,* 1:18-cr-00457, ECF No. 372. If Mr. Rafiekian's conduct was not unlawful, then neither were any acts by Mr. Flynn. Indeed, government witnesses in the *Rafiekian* trial made clear that Flynn was less involved than Mr. Rafiekian.

The government alleges three false statements and one omission in the FARA filing. ECF No. 150 at 12-13. It misconstrues each statement.

The government first alleges that Mr. Flynn provided the following alleged false statement: "The filings affirmatively stated that FIG did not know whether or the extent to which the Republic of Turkey was involved in the Turkey Project." ECF No. 150 at 12. The <u>actual</u> FARA filing states "Flynn Intel Group does not know whether or the extent to which the Republic of Turkey was involved <u>with its retention by Inovo</u> for the three-month project. Flynn Intel Group is aware that Mr. Alptekin consulted with officials of the Republic of Turkey regarding potential work by Flynn Intel Group, and Mr. Alptekin introduced officials of the Republic of Turkey to Flynn Intel Group officials at meeting on September 19, 2016 in New York." ECF No. 150-1 at 35-68 (emphasis added). In short, the government excised the language "with its retention by Inovo" and omitted all language relating to the Government of Turkey. When looking at the actual FARA disclosure, any alleged false statement regarding Turkey's involvement is simply splitting hairs, especially in light of Covington's cover letter discussed *supra*.

On this point, Judge Trenga's memorandum opinion holding that the evidence against Mr. Rafiekian was insufficient as a matter of law is instructive:

There was no competent evidence from which a jury could find that Alptekin acted as the type of "intermediary" the Government contends. In fact, the only evidence of any association between Alptekin and the Turkish government in connection with FIG's retention is reflected in the hearsay statements of Alptekin to Rafiekian, which were admitted not as proof of Alptekin's relationship or role relative to Turkey, but solely as evidence of what Alptekin told Rafiekian. Accordingly, the jury had no evidence of what Alptekin's actual relationship or role was relative to the Turkish government, and because of that absence could not find for its purposed in deciding the case that Alptekin was, in fact, operating as an agent, alter ego, representative, "cut-out", or any other type of "intermediary for the Turkish government.

*U.S. v. Rafiekian*, 1:18-cr-00457, ECF No. 372 at 26. This point is crucial because Mr. Flynn could similarly not provide any competent evidence regarding Mr. Alptekin's alleged connection to the Turkish government. He had no personal knowledge of these alleged facts. Everything he knew was told to him by either Mr. Rafiekian or Mr. Alptekin. Indeed, the first time he met Mr. Altpekin was during the New York meeting in September 2016. To ensure that FIG complied with its legal duties, Mr. Flynn provided his lawyers with the information he knew and the documents he possessed—which was exactly what is disclosed above (*e.g.* that FIG "does not know whether or the extent to which the Republic of Turkey was involved with its retention by Inovo for the three-month project. Flynn Intel Group is aware that Mr. Alptekin consulted with officials of the Republic of Turkey regarding potential work by Flynn Intel Group, and Mr. Alptekin introduced officials of the Republic of Turkey to Flynn Intel Group officials at a meeting on September 19, 2016 in New York.").

The second statement the government takes issue with is "the filings omitted that officials from the Republic of Turkey provided supervision and direction over the Turkey project." ECF No. 150 at 12. This was omitted because Mr. Flynn has no idea, other than the hearsay statements of Mr. Alptekin, what Turkey's alleged role was in the project. Mr. Flynn does not believe that

Turkish officials "supervised" or provided "direction or control" over the project. On this too, Judge Trenga's opinion provides guidance:

> [T]he only contact between Rafiekian and any Turkish official occurred during the September 19, 2016 meeting, and there is no evidence concerning anything said at that meeting from which a rational juror could find that Rafiekian had agreed to operate at the direction or control of the Turkish government. Nor do any of the actual agreements in evidence reflect any involvement by the Turkish government or any agreement by Rafiekian to operate subject to its direction and control; in fact, they all explicitly disclaim any agency relationship. The Government's entire case therefore substantially boils down to Rafiekian's interactions with Alptekin and its contention that Alptekin and Inovo were "intermediaries" for the Turkish government, through whom the Turkish government obtained Rafiekian's agreement to operate subject to its direction and control.

*U.S. v. Rafiekian*, 1:18-cr-00457, ECF No. 372 at 25-26. Because Judge Trenga found there was no evidence of direction or control exercised by or through anyone for the Government of Turkey, the government's entire theory of the case fell apart. *Id.* This holding is as applicable to Mr. Flynn as it is to Mr. Rafiekian. Indeed, Mr. Flynn spent significantly less time working on this project than did Mr. Rafiekian, because Mr. Flynn was busy working on a presidential campaign and on promoting the release of his best-selling book during the relevant timeframe (August 2016-November 2016).

The third alleged false statement the government cites is: "The filings affirmatively stated that FIG "understood the engagement to be focused on improving U.S. business organizations' confidence regarding doing business in Turkey." ECF No. 150 at 12. While the FARA filing did state this, the cover letter of the FARA filing also stated "because of the subject matter of Flynn Intel Group's work for Inovo BV, <u>which focused on Mr. Fethullah Gulen.</u>" ECF No. 151-6 (emphasis added). Thus, the FARA filing disclosed that FIG's work focused on Gulen. Any drafting error is that of Covington's and not Mr. Flynn's. Indeed, Covington's notes make clear that Mr. Flynn told Covington on February 22, 2017 that initially the work involved commercial

activity, but that the work "crystalized" to focusing on Gulen. ECF No. 98-3 at Ex. 8 and Ex. 8A (Covington February 22, 2017 notes: Commercial Activity → Crystalized → Gulen).

Finally, the government takes issue with "the filings affirmatively stated that the defendant published the op-ed "on his own initiative" and it was not undertaken at the direction or control of a foreign principal." ECF No. 150 at 13. It should first be noted that the Statement of Offense actually only states "[a]n op-ed by Flynn published in *The Hill* on November 8, 2016, was written at his own initiative." It does not mention a foreign principal. The actual FARA filing states "Although not taken at the direction or control of a foreign principal, it is possible that such activities may have had an indirect benefit to a principal. On his own initiative, Michael T. Flynn published an op-ed in the *The Hill* on November 8, 2016, that related to the same subject matter as the Flynn Intel Group work for Inovo. Neither Inovo BV, nor any other person requested or directed publication of the op-ed." ECF No. 150-1.

The government appears to conflate "write" with "publish" and "initiate." Mr. Flynn has never maintained that he first drafted the subject op-ed, but he did agree to publish it under his name, after making a few edits. Indeed, Covington lawyers knew the truth. Mr. Smith's June 21, 2018 FD-302 states Mr. "RAFIEKIAN worked with an editor, Hank COX, to write the op-ed on GULEN" and "FLYNN informed SMITH it was his idea to write an op-ed. However, RAFIEKIAN wrote the first draft of the op-ed about GULEN." ECF No. 150-5. This is confirmed in Covington's notes of January 2, 2017. ECF No. 151-12. Moreover, the FARA cover letter states "We also believe that the op-ed may have been prepared in the context of FIG's representation of Inovo BV, as the draft op-ed was shared with a representative of Inovo BV prior to publication and the op-ed related to subject matters overlapping with FIG's representation of Inovo BV." ECF No. 151-6.

Here again, any drafting error is the fault of Covington and not Mr. Flynn. Regardless, none of these false statements appear to be actually false; further, none of them appear to be *material* in light of the overwhelming amount of correct information found in the entirety of the FARA filing in which Gulen and the Government of Turkey are both disclosed.

**III.     Sentencing Factors support a sentence of probation and community service.**

The Court shall impose "a sentence sufficient, but not greater than necessary." 18 USC § 3553(a). In making its determination, the Court considers various factors, including: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range; (5) any pertinent policy statement; and (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. *Id.* These factors support Mr. Flynn's (and the government's previous recommendation – *see* ECF No. 46 and 47) request for probation and community service.

**(1) The nature and circumstances of the offense and the history and characteristics of the defendant.** Mr. Flynn is alleged to have violated 18 U.S.C § 1001. Mr. Flynn previously briefed the unique circumstances of the January 24, 2017 FBI "interview" at issue. ECF No. 50 at 7-9. More importantly, Mr. Flynn's extraordinary history and character distinguish him.

As shown by the <u>fifty</u> (50) letters in support of Mr. Flynn (including thirty-five relating to his military service) as well as his many accolades[6] from his distinguished career, Mr. Flynn is a man of exemplary character. ECF No. 50. He served his country for more than thirty-three years.

---

[6] Including but not limited to: The Army Commendation Medal; The Meritorious Service Level; The Joint Service Commendation Medal; The Legion of Merit (2002, 2004); The Bronze Star (2002, 2005, 2006, 2007); The Defense Superior Service Medal (2007, 2008, 2009, 2010); and The Defense Distinguished Service Medal (2014).

His family up and down and across the generations proudly served and still serve now. Indeed, after filing its vindictive brief earlier this month, the government recently acknowledged that "the Court should take into account your client's timely assistance to the Special Counsel's Office (SCO) on a range of issues through the course of 20 interviews as well as his initial cooperation in the *Rafiekian* case, which we describe in detail in our December 2018 addendum [ECF No. 46-1]…Further, as we acknowledged in our filing, your client's lengthy history of military service to the United States is an additional important mitigating factor that we have asked the Court to consider in determining where within the applicable Guidelines range to sentence your client." ECF No. 151-13 (government's January 13, 2020 letter "clarify[ing]" its "position" on sentencing). The government's language and tone may change from brief to brief and letter to letter but one truth remains unassailably clear: few have served as honorably as Michael T. Flynn.

Mr. Flynn is also involved in charitable work such as working with Special Operations Warrior Foundation, Operation 300, McJunkin Family Charitable Foundation, as well as providing support to Gold Star families. His countless hours of work on behalf of this country must be factored into any sentence his receives. He has selflessly helped others throughout his life—as the moving tribute letter from his sister Clare Eckert shows. ECF No. 50 at 23-32.

The Court should weigh Mr. Flynn's military service substantially and favorably. His choice to dedicate his career to protecting Americans, by putting himself in harm's way, distinguishes him from the vast majority of all Americans and almost anyone else who appears before this Court for sentencing, and certainly more than anyone else prosecuted by the SCO.

 **(2) The need for the sentence imposed.** The second sentencing factor has sub-factors that the Court considers: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal

conduct; (C) to protect the public from further crimes of the defendant; (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective way." 18 USC § 3553(a)(2). These factors also support probation and community service.

There is no need for a term of imprisonment. Mr. Flynn has already been on probation for over two years without issue. His case is among the highest profile § 1001 cases of all time. No one would want to go through what Mr. Flynn has been through as a result of the § 1001 charge – constant media scrutiny, having to sell his house, having to seek permission to leave the country, or, for a period, even to travel more than 50 miles away from his home in Rhode Island or Washington, DC. The deterrence effect of this case is unmistakable; there is no need for a term of imprisonment.

**(3) The kinds of sentences available, (4) the kinds of sentence and sentencing range, and (5) any pertinent policy statement.** The government's clarifying sentence position states: "[w]e believe that a sentence within the applicable Guidelines range – which includes a possible sentence of probation – is appropriate in this case." ECF No. 151-13. Pursuant to USSG § 2B1.1(a), a § 1001 violation provides for a base offense level of six. Mr. Flynn's criminal offense category is I (no criminal points). Therefore, Mr. Flynn is squarely within "Zone A" of the guidelines range, which is zero to six months imprisonment and the applicable guideline range fine is $500 to $9500.[7] A sentence of probation is authorized if the applicable guidelines range is in Zone A. USSG § 5B1.1. For the reasons set forth above and below, Mr. Flynn submits a term of probation and community service is an appropriate sentence and fits within the Guidelines.

---

[7] This is true regardless of the Court's ruling on the government's motion for downward departure (ECF Nos. 46, 47, and 150), discussed *supra* in Section I.

**(6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.** When compared to other § 1001 cases, a sentence of probation is well within the norm. According to the United States Sentencing Commission, for fiscal year 2018, the median sentence imposed for "Other Miscellaneous Offenses" (which includes 18 U.S.C. § 1001) with a criminal history category of I is **<u>zero months</u>**.[8] The mean for the same category was one month. *Id.* The total amount of "Other Miscellaneous Offenses" in the fiscal year 2018 was 1,022.[9] Of that figure, **<u>42.5% received probation</u>**, 30.5% received imprisonment, and 27% received a fine only. *Id.* Additionally, 91.6% of "Other Miscellaneous Offenses" were sentenced according to the Guideline range.[10] In the same category ("Other Miscellaneous Offenses") that were sentenced in the Guidelines range, 71.2% were sentenced in the "Guideline Minimum," 22.6% were in the "Lower Half of Range," 2.4% were in the "Upper Half of Range," and 2.4% were in the "Guideline Maximum."[11] Finally, the largest percentage of reasons given by sentencing courts for downward variances from the guideline range were "the history and characteristics of the defendant pursuant to 18 U.S.C. § 3553(a)(1)" at 10.9% (acceptance of responsibility was only 2.2%).[12]

Within this District, a sentence of probation is common for § 1001 offenses with an offense level of four or six. *See* EFC No. 50 at 10 (identifying only two out of thirteen cases (ten with a base level of four; three with a base level of six) in which judges in the District Court for the District of Columbia sentenced defendants imprisonment instead of probation). The two

---

[8] U.S. Sentencing Commission, Sourcebook of Federal Sentencing Statistics, Table 27 (2018).

[9] U.S. Sentencing Commission, Sourcebook of Federal Sentencing Statistics, Table 13 (2018)

[10] U.S. Sentencing Commission, Sourcebook of Federal Sentencing Statistics, Table 31 (2018).

[11] U.S. Sentencing Commission, Sourcebook of Federal Sentencing Statistics, Table 34 (2018).

[12] U.S. Sentencing Commission, Sourcebook of Federal Sentencing Statistics, Table 44 (2018).

exceptions were *U.S. v. Van Der Zwaan* (1:18-cr-00031)[13] and *U.S. v, Papadopolous* (1:17-cr-00182).[14] Those matters were previously distinguished from the present matter in Mr. Flynn's initial sentencing memorandum. ECF No. 50 at 11.

In addition to Mr. Van Der Zwaan and Mr. Papadopolous, the government also points to Mr. Gates (*U.S. v. Gates, III*, 1:17-cr-00201[15]) and Mr. Wolfe (*U.S. v. Wolfe*, 1:17-cr-00170[16]) as cases that may be similar to Mr. Flynn's for sentencing purposes. These cases are also easily distinguishable.

Mr. Gates' total offense level was twenty-three (Mr. Flynn's is four or six). *U.S. v. Gates, III*, 1:17-cr-00201, ECF No. 643 at 7. In addition to a § 1001 charge for lying to the SCO, Mr. Gates also pled guilty to conspiring to commit multiple offenses, including tax fraud. *Id.* at ECF No. 206 at 2 ("caused millions of dollars of wire transfers to be made from offshore nominee accounts…"). While Mr. Flynn was overseas protecting our country and supporting his family on a military salary, Mr. Gates was conspiring to make himself and Mr. Manafort millions through tax evasion.

Mr. Wolfe's sentence is also distinguishable. Mr. Wolfe knowingly lied to the FBI during an investigation for which he knew was ongoing. *U.S. v. Wolfe*, 1:17-cr-00170, ECF No. 37 at 3.

Other than the obvious distinctions between Mr. Wolfe and Mr. Flynn (that Mr. Flynn is a decorated veteran who was charged with one offense compared to Mr. Wolfe who "repeatedly

---

[13] Received thirty days in prison and $20,000 fine.

[14] Received fourteen days in prison, $9,500 fine, one year of supervised release, two hundred hours of community service.

[15] Mr. Van Der Zwaan never served his country, yet he received forty-five days of intermittent confinement in prison, three years of probation, and $20,000 fine.

[16] Received two months in prison, four months supervised release, twenty hours of community service, and $7,500 fine.

disclosed non-public, SSCI-sensitive information relating to national security investigations[17]" to the media and then "repeatedly lying to the FBI"[18] about it during a known, ongoing investigation for which he was given a § 1001 warning), there are other differences as well. The most significant of which is the government's motion for upward departure for Mr. Wolfe. *U.S. v. Wolfe*, 1:18-cr-00170, ECF No. 44.

The government's motion for upward departure was based on two grounds – (1) that Mr. Wolfe's alleged conduct "resulted in the significant disruption of an important governmental function" under U.S.S.G. § 5K2.7 (*Id.* at 19); and (2) that his conduct "significantly impacted the national security" under U.S.S.G. § 5K2.14 (*Id.* at 21). These arguments are based on facts alleged by the government, including that Mr. Wolfe's position involved being "specifically tasked to make sure that the SSCI – including its SCIF – was not compromised by anyone, whether that be foreign agents or media who wished to report on sensitive information…[Thus,] Wolfe's conduct had the potential to significantly disrupt the government function he performed." *Id.* at 19. Further, Mr. Wolfe "was in a unique position…with keeping and protecting highly classified information." *Id.* at 21.

The government did not move such an upward departure here. Indeed, it actually originally moved for a downward departure, only to change its mind recently in an unlawful one hundred-eighty degree turn from its position approximately one year ago (discussed *supra* in 'Relevant Facts' at 3). Admittedly, Mr. Flynn was a high-ranking government official, as was Mr. Wolfe who was charged with a § 1001violation. That is the only similarity. Mr. Flynn did not participate in any "repeated" conduct. He did not use his position to participate in illegal conduct.

---

[17] *U.S. v. Wolfe*, 1:18-cr-00170, ECF No. 44 at 22.

[18] *Id.*

Additionally, Mr. Flynn's alleged false statement did not result in the "significant disruption of an important governmental function" nor did it "significantly impact national security."

After the government discusses the above defendants, it concludes that it "acknowledges that the defendant's history of military service, and his prior assistance to the government, though not substantial, may distinguish him from these other defendants." ECF No. 150 at 31. Mr. Flynn asserts that his military service and assistance to the government absolutely distinguish him. As the government wrote, Mr. Flynn's "early cooperation was particularly valuable because he was one of the few people with long-term and firsthand insight regarding events and issues under investigation by the SCO. Additionally, the defendant's decision to plead guilty and cooperate likely affected the decisions of related firsthand witnesses to be forthcoming with the SCO and cooperate." ECF No. 46-1 at 5. Given his extraordinary service and cooperation, a sentence of probation and community service is warranted.

## CONCLUSION

John Adams was right: "facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passions, they cannot alter the state of facts and evidence." The government tried to manufacture facts in the *Rafiekian* case and they thought they could strong-arm Mr. Flynn into helping them through perjury. But they underestimated the will and courage of Michael T. Flynn, a man that bravely and selflessly spent his life protecting his fellow Americans. In considering the whole story of this man and his sacrifices, the Court should impose no more than a sentence of probation.

Dated: January 22, 2020                    Respectfully submitted,

/s/ Jesse R. Binnall                          /s/ Sidney Powell
Jesse R. Binnall                              Sidney Powell
Lindsay R. McKasson                           Molly McCann

Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted *Pro Hac Vice*

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, Florida 32162
Tel: (352) 399-0531
Fax: (352) 240-3489
Admitted *Pro Hac Vice*

Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2020, a true and genuine copy of Mr. Flynn's

Supplemental Sentencing Memorandum was served via electronic mail by the Court's CM/ECF

system to all counsel of record, including:

> Jessie K. Liu, U.S. Attorney for the District of Columbia
> Brandon L. Van Grack, Special Assistant U.S. Attorney
> Jocelyn Ballantine, Assistant U.S. Attorney
> 555 4th Street, NW
> Washington, D.C. 20530

Respectfully submitted,

*/s/*  Jesse R. Binnall
Jesse R. Binnall, VSB# 79272
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com