**COVINGTON & BURLING LLP**

Privileged and Confidential                                                                                         November 1, 2017

## Memorandum

To:     Rob Kelner, Steve Anthony, Brian Smith, Mike Chertoff, Josh Debold, and Roger Polack

From:  Alexandra Langton

Re:     November 1, 2017 Notes from Covington's Meeting with the Special Counsel's Office

      On November 1, 2017, Robert Kelner ("Rob"), Stephen Anthony ("Steve"), and Alexandra Langton met Brandon Van Grack ("BVG") and Zainab Ahmad ("ZA") at the Special Counsel's Office ("SCO") at 395 E Street SW, Washington, DC from approximately 1:00p.m. to 1:45p.m. This memorandum summarizes the discussion at that meeting. Information in brackets is information that I have added for context or clarification. Information separated by asterisks indicates non-verbal gestures.

I.      Summary of the Meeting

BVG: We wanted to invite you here because we know if has been a couple of months since we've spoken. You guys have been very cooperative with us and quiet in the media and we really appreciate that.

We have a number of decisions points that we are going to have to make and we wanted to gage your interest in talking to us before we have to make those decisions. General Flynn has said on a number of things regarding having a story to tell and we'd like to explore that.

Rob:  General Flynn very much wants to cooperate. We have spent a lot of time talking to him about what he knows. At the end of the day, there are a few things we don't quite know what to make of. There are some issues not related to Russia that he has questions about. You all might have specific things you could present to him to refresh his recollection. We don't think that there is a "smoking gun," but we are open to making General Flynn available.

BVG: There is information that you or your client might not be aware of. From where we're sitting, there might still be value in sitting down with your client. We have a good sense of what Flynn knows and what Flynn doesn't know.

Rob: Refreshing recollection is key with General Flynn. He often doesn't have a sense of what is important and tends to forget even mundane things.

COVINGTON & BURLING LLP

November 1, 2017
Page 2

BVG: We're at a point where we can have a conversation with Flynn with prompts. I will say, the value of whatever information he has will be different now than it will be in two weeks or a month. We're interested in talking to him even if he doesn't think he has a smoking gun.

Steve: What sort of protections are you willing offer so his words aren't against him?

BVG: A proffer letter.

Rob: Queen for a day?

BVG: *Nods*

Rob: We would need to discuss that. We need to get comfortable with the situation. We would feel better with something stronger than a proffer letter like statutory immunity.

Steve: I have to ask, where are you guys going with respect to charges against General Flynn?

BVG: (1) FARA (failure to register); (2) FARA false statements; and (3) false statements to government officials regarding contacts with Russian officials during the transition.

Steve: On the last point, do you mean the White House interview?

BVG: False statements at an FBI interview at the White House.

Rob: Frankly, we are surprised by that. That is not consistent with what we have learned from press reports and other sources.

Steve: Would you be willing to give us the 302?

BVG: We're not currently in a posture where we're providing that information. We're certainly willing to hear what you have to say if you think that we're wrong.

ZA: We're not saying no; we'll think about it. You might be entitled to it soon anyway. We feel like we know all we can know short of talking to him. We're at a fork in the road and we want to talk to him (General Flynn) to decide how to move forward.

Rob: He would be willing to tell his story if you are, in good faith, willing to tell us that if he comes in and you think that he is being truthful, that you may not take action against him. However, it could be that the interview is just a way for the SCO to get information to help its case against General Flynn.

ZA: Look, all options are on the table . . . no pros? We are like a typical USA's office. We want to get all the facts. It doesn't have to be that he has a smoking gun. We haven't thought a lot about deals. It would all depend on how the interview with Flynn goes.

Steve: I'm just imagining getting ready for trial to begin, thinking to myself, "jeez, why did I let my client do this interview?" I don't know if it makes sense to expose ourselves with only a proffer letter in return.

COVINGTON & BURLING LLP

November 1, 2017
Page 3

BVG: We feel confident that your client has value to provide. This isn't supposed to be a "gotcha" interview. This is meant to get input from your client for our broader investigation.

Rob: I can imagine ways in which we come in. Agreeing only to a proffer could put him at risk. We don't want our client charged or found guilty of a felony offense. We don't think he has committed a felony offense.[1] It would be helpful to get more details about where you are going.

ZA: We've given you the universe of charges. I don't know if we can provide any additional assurances beyond what we've already mentioned. If he gives us useful information, we can talk and negotiate from there. You don't know everything he knows.

BVG: No decisions have been made with respect to Flynn because we want to talk to him first. Turkey or FARA wouldn't necessarily be the focus. Questions about the campaign would not be the first thing we talk about. There are things that we know that you and your client would not necessarily have focused on.

Steve: This would definitely be a leap of faith on our part.

ZA: The information is much more valuable for us than it might be in a traditional context. Non-smoking gun information is valuable to us.

BVG: Yes, our mission here is to answer questions.

Rob: And you believe this is information that he actually has?

BVG/ZA: Yes. *Both nodding emphatically.*

Rob: We have spent a lot of time a lot of time trying to elicit information from him. He doesn't have the memory of a lawyer. It would be a very time-consuming process.

Steve: You said that the information would be more valuable today than it would be a month from now?

BVG: Yes.

ZA: *Nods.*

BVG: There's one more issue I want to bring up. One of the charges we mentioned was false statements under FARA. Because Covington prepared the FARA registration, that would make you (Rob) a fact witness. It isn't something we are considering.

Rob: If we were to get to that point, we would litigate it very aggressively.

ZA: We're not saying it's not waivable. We just want to make sure you talk it through with your client.

---

[1] Zainab made a note of this point.

**COVINGTON & BURLING LLP**

November 1, 2017
Page 4

Rob: Well, we say what you guys did with Manafort, and we'll definitely raise it with our client.

BVG/ZA: *Both visibly uncomfortable.*

Rob: When do you guys want to hear back from us?

BVG: By the end of the week if possible.

Rob: That's going to be hard for a variety of reasons.

Steve: One of which is I am going to be in Oregon for another matter.

BVG: Let's plan on talking on Tuesday morning.

Rob: Thank you for the accommodation.

All: Small talk about Portland coffee.