CHARLES E. GRASSLEY, IOWA, CHAIRMAN

ORRIN G. HATCH, UTAH
LINDSEY O. GRAHAM, SOUTH CAROLINA
JOHN CORNYN, TEXAS
MICHAEL S. LEE, UTAH
TED CRUZ, TEXAS
BEN SASSE, NEBRASKA
JEFF FLAKE, ARIZONA
MIKE CRAPO, IDAHO
THOM TILLIS, NORTH CAROLINA
JOHN KENNEDY, LOUISIANA

DIANNE FEINSTEIN, CALIFORNIA
PATRICK J. LEAHY, VERMONT
RICHARD J. DURBIN, ILLINOIS
SHELDON WHITEHOUSE, RHODE ISLAND
AMY KLOBUCHAR, MINNESOTA
CHRISTOPHER A. COONS, DELAWARE
RICHARD BLUMENTHAL, CONNECTICUT
MAZIE K. HIRONO, HAWAII
CORY A. BOOKER, NEW JERSEY
KAMALA D. HARRIS, CALIFORNIA

KOLAN L. DAVIS, Chief Counsel and Staff Director
JENNIFER DUCK, Democratic Chief Counsel and Staff Director

United States Senate
COMMITTEE ON THE JUDICIARY
WASHINGTON, DC 20510-6275

June 6, 2018

The Honorable Rod J. Rosenstein
Deputy Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

Dear Deputy Attorney General Rosenstein:

The Department's reply to my May 11, 2018 letter seeking information about the circumstances surrounding Lt. General Michael Flynn's reported conversations with the Russian ambassador and FBI records related to those conversations is insufficient. The letter only recounts a series of publicly known facts about Lt. General Flynn's plea agreement and relies on improper excuses in refusing to provide the requested information. The Committee requires this information to fulfill its Constitutional function and its charge under Senate Rules to conduct oversight of the Department of Justice.

First, as you know, some of that information was first requested on a bipartisan basis before your confirmation. The Committee has waited patiently for much more than a year for the criminal inquiry related to Lt. General Flynn to conclude. It has been more than five months since his guilty plea. Thus, there is no longer any legitimate reason to withhold facts from the Senate about the circumstances of his conversations with the Russian ambassador and his FBI interview.

Second, the Department's letter erroneously suggests that complying with Congressional oversight would result in "the reality or the appearance of political interference" in a "pending criminal prosecution." There is no pending prosecution. The guilty plea was more than five months ago. The Department's letter describes in detail what everyone already knows. Lt. General Flynn admitted to the Statement of Offense with the able assistance of counsel. All that remains is for Lt. General Flynn to be sentenced. Simply disclosing facts to the Committee could not possibly "interfere" with the case at this late date, assuming those facts are consistent with the representations that prosecutors arranged for Lt. General Flynn to swear to in federal court.

If the facts are inconsistent with the plea agreement, that would be an entirely different kettle of fish.

Third, as both the Committee's request and the Department's reply note, any exculpatory evidence must be turned over to the defense. However, the Department's assurance that, "Mr. Flynn is represented by skilled and experience attorneys who … *will have* access to favorable evidence in the government's possession," is not relevant to the Committee's inquiry. Regardless of whether all exculpatory evidence has already been or will be produced to the defense, Congress has a wholly separate, independent, constitutional oversight interest in the information. It might not be in the interests of either the defendant or the prosecutors to disclose facts inconsistent with the plea agreement. However, it would absolutely be in the interest of Congress and the American people to be aware of any such inconsistencies that may exist. Congress needs to see the underlying evidence itself, not merely the conclusions about the evidence that prosecutors and a defendant have agreed to describe publicly.

This is no ordinary criminal case. It is at the heart of a political firestorm over the President's alleged statements about it to the former FBI Director, whom he later dismissed. Congress has a right to know the full story and to know it now.

Presuming that the facts are consistent with the plea agreement, there is absolutely nothing for the Department to hide and no reason to act like it has something to hide. Resisting Congressional oversight only serves to further undermine public trust in the Department. By contrast, cooperation could enhance public trust in the Department by demonstrating that its work can withstand independent scrutiny. The lack of transparency feeds public skepticism about the Department's actions regarding Lt. General Flynn and related matters. For example, a summary of Lt. General Flynn's intercepted calls with the Russian ambassador was illegally leaked to the media, presumably by a current or former government official. One of the FBI agents who reportedly conducted the interview of Lt. General Flynn, Peter Strzok, was later removed from the Russia investigation after his texts demonstrating animus and bias toward Mr. Trump were uncovered. Additionally, former Director McCabe was fired for lack of candor regarding a leak to the *Wall Street Journal,* and Lt. General Flynn was an adverse witness in a pending sexual discrimination case against Mr. McCabe at the time Mr. McCabe was supervising a criminal inquiry targeting Lt. General Flynn.[1]

Former Director Comey also has made public statements about the FBI's actions regarding Lt. General Flynn on his book tour that contradict his previous descriptions to this Committee and the House Intelligence Committee while he was FBI Director. Moreover, newly released information tends to support the version of events former Director Comey relayed to the congressional committees. According to a memorandum drafted by the President's attorneys, the White House Counsel's office believed there was likely no ongoing investigation of Flynn at the time it was briefed by the Department of Justice about Flynn's FBI interview, and Flynn himself "had told both White House Counsel and the Chief of Staff at least twice that the FBI agents had told him he would *not* be charged."[2] The memorandum describes both incidents in detail. Those

---

[1] *See* Letter from Chairman Grassley to Inspector General Horowitz (June 29, 2017), https://www.judiciary.senate.gov/imo/media/doc/2017-06-29%20CEG%20to%20DOJ%20IG%20(McCabe%20Conflicts).pdf

[2] *The Trump Lawyer's Confidential Memo to Mueller, Explained*, THE NEW YORK TIMES (June 2, 2018) (quoting Letter from John M. Dowd and Jay A. Sekulow, Counsel to the President to Robert S. Mueller, Special Counsel, U.S. Dep't of Justice (Jan. 29, 2018)), https://www.nytimes.com/interactive/2018/06/02/us/politics/trump-legal-

incidents, along with the interactions between the Department and White House Counsel, as described by the President's attorneys, do not seem to square with the current popular narrative. Thus, regardless of Lt. General Flynn's underlying conduct, the FBI's conduct here is ripe for Congressional oversight.

Finally, it is disingenuous and extremely disturbing that the Department would imply that a request to interview a fact witness, such as Special Agent Pientka, has anything whatsoever to do with "allegations against" that witness. As you well know, seeking information from a fact witness is not the same thing as an allegation of wrongdoing. Quite the contrary, it seems he is likely to be an objective, reliable, and trustworthy witness, which is precisely why the Committee would benefit from his testimony.

Moreover, you also know very well that I am committed to transparency in the Committee's work, and for that reason, I generally post all Committee correspondence, including requests for interviews with government witnesses, on my website so that they are publicly available. Thus, the Department's reference to "Committee staffers" who "chose to release" the letter is an inappropriate and inaccurate deflection from the issue at hand. If the Department has a complaint about the Committee's longstanding policy and practice of publicly posting official correspondence, then please address it directly with me rather than making veiled, uninformed accusations about Committee staff. While I am generally unlikely to make exceptions to my normal policy and practice, the Department has always been free to make a specific request that certain correspondence remain private for a period of time, for good cause. In this case, it did not do so.

Please let me know when you will provide the requested documents, so that we can begin scheduling an interview with Special Agent Pientka. Thank you for your prompt attention to this important matter.

Sincerely,

*Chuck Grassley*

Charles E. Grassley
Chairman

cc:     The Honorable Dianne Feinstein
        Ranking Member

---

documents.html#footnote-0-26; Byron York, *Trump Lawyers Reveal Previously Unknown Evidence in Michael Flynn Case*, THE WASHINGTON EXAMINER (June 3, 2018), https://www.washingtonexaminer.com/news/newly-leaked-memo-previously-unknown-evidence-michael-flynn-case.