**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**MICHAEL T. FLYNN,**<br><br>**Defendant** | **Crim. No. 17-232 (EGS)** |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION TO DISMISS FOR EGREGIOUS GOVERNMENT MISCONDUCT**

On January 29, 2020, Defendant Michael T. Flynn, after having pleaded guilty before this Court on December 1, 2017, moved to dismiss the charge against him for "outrageous government misconduct and in the interest of justice."   Motion to Dismiss for Egregious Government Misconduct and in the Interest of Justice (Doc. 162) ("Mot. to Dismiss").  The defendant alleges that he is entitled to the dismissal of his case primarily because of information contained in the Department of Justice Office of the Inspector General's ("OIG") report entitled, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*.[1]  *See* Mot. to Dismiss at 6-16.

The errors and misconduct described in the OIG Report, however, do not amount to "egregious government misconduct" necessitating the dismissal of the charge against the defendant for making material false statements to the Federal Bureau of Investigation ("FBI") on January 24, 2017.  The remaining allegations raised by defendant in the instant motion have either

---

[1]     *See* U.S. Department of Justice Office of the Inspector General, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, (Dec. 2019), available at https://www.justice.gov/storage/120919-examination.pdf (hereinafter, "OIG Report" or "Report").

previously been rejected by this Court or are unrelated to the charge to which the defendant pleaded guilty.  Accordingly, the motion should be denied.

## I.      BACKGROUND

On December 1, 2017, the defendant entered a plea of guilty to a single count of "willfully and knowingly" making material false statements to the FBI regarding his contacts with the Government of Russia's Ambassador to the United States ("Russian Ambassador") during an interview with the FBI on January 24, 2017 ("January 24 interview"), in violation of 18 U.S.C. § 1001(a)(2).  That day, the Honorable Rudolph Contreras accepted the defendant's guilty plea, finding that he knowingly, voluntarily, and intelligently entered into the Plea Agreement.  Hearing Transcript at 30-31, *United States v. Flynn*, 17-cr-232 (D.D.C. Dec. 1, 2017) ("12/1/2017 Hearing Tr."); *see also* Memorandum Opinion at 1 (Doc. 144) ("Mem. Opinion").  On December 18, 2018, this Court engaged in an "extension . . . of the plea colloquy."  Hearing Transcript at 5, *United States v. Flynn*, No. 17-cr-232 (D.D.C. Dec. 18, 2018) ("12/18/2018 Hearing Tr.").  During this second plea colloquy, the Court again found that the defendant's earlier guilty plea was entered "knowingly, voluntarily, intelligently, and with fulsome and satisfactory advice of counsel."  *Id.* at 7; *see also* Mem. Opinion at 2.

Beginning on August 30, 2019, the defendant filed a series of motions asking this Court to compel the government to produce alleged *Brady* material, to issue an order for show cause as to why the government should not be held in contempt, and to hold the government in contempt.  First, the defendant filed a Motion to Compel Production of *Brady* Material and for an Order to Show Cause (Docs. 109, 111).  In the motion, the defendant requested 49 categories of information.  The government filed its opposition to the motion on October 1, 2019 (Doc. 122).  On October 15,

2019, the defendant filed a Motion to Produce Newly Discovered *Brady* Evidence (Doc. 124), which the government responded to on October 29, 2019 (Doc. 130).

On December 16, 2019, the Court denied all of the defendant's motions for *Brady* material and to hold the government in contempt.  *See* Mem. Opinion at 3, 92.  The Court concluded that the defendant "failed to establish a single Brady violation."  *Id.* at 17.  The Court also noted that the defendant's requested relief is "dismissal of the charges against him and the entire prosecution for government misconduct," but that even if the defendant had "established a *Brady* violation in this case, dismissal would be unwarranted[.]"  *Id.* at 91-92.

During the pendency of the *Brady* litigation, the sentencing hearing in this case was scheduled for December 18, 2019.  The parties, however, requested that the hearing be rescheduled because the OIG was set to issue shortly the OIG Report.  *See* Joint Motion to Abate Briefing Schedule (Doc. 140) ("Joint Motion").  The Court granted the request and rescheduled the sentencing hearing for January 28, 2020.  *See* Minute Order of 11/27/2019.

On December 9, 2019, the OIG released its report.  The majority of the OIG Report concerned four applications filed with the Foreign Intelligence Surveillance Court to conduct Foreign Intelligence Surveillance Act ("FISA") surveillance targeting Carter Page.  In the Report, the OIG identified "17 significant errors or omissions" in the four FISA applications "and many additional errors in the Woods Procedures."  OIG Report at xiii.  As discussed below, the OIG Report's findings do not reveal "egregious government misconduct" relating to this case such that the defendant was deprived of due process.

## II.   LEGAL STANDARD

*Brady* requires the government to disclose all evidence that is "favorable to an accused . . . . where the evidence is material either to guilt or punishment."  *See, e.g., United States v. Bagley*,

473 U.S. 667, 667 (1985).  The Court's December 16, 2019 memorandum opinion articulated the test to prove a *Brady* violation.  A "movant must establish three elements: '[1] The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; [2] that evidence must have been suppressed by the [government], either willfully or inadvertently; and [3] prejudice must have ensued.'"  Mem. Opinion at 15 (quoting *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999)).  As the Court further explained in its memorandum opinion, the government is not required "to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant."  Mem. Opinion at 15 (quoting *United States v. Ruiz*, 536 U.S. 622, 633 (2002)).

A court may dismiss an indictment upon a finding of outrageous government misconduct that causes prejudice to a defendant.  *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988).  The defendant's burden to prevail on such a motion is extraordinarily high, beyond "a showing of obnoxious behavior or even flagrant misconduct."  *United States v. Kelly*, 707 F.2d 1460, 1476 (D.C. Cir. 1983) (citations omitted).  The Supreme Court has left open the possibility that conduct of law enforcement officials may be "so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction."  *United States v. Russell*, 411 U.S. 423, 431-432 (1973).  However, the requisite level of "outrageousness," as the Supreme Court has indicated, "is not transgressed absent 'coercion, violence or brutality to the person.'"  *Kelly*, 707 F.2d at 1746 (citations omitted).[2]  Indeed, the requisite conduct must be

---

[2]    Although most courts of appeals recognize the possibility of an outrageous government conduct defense in theory, that defense is often found not to apply.  Indeed, the First Circuit has labeled the doctrine "moribund."  *United States v. Capelton*, 350 F.3d 231, 243 n.5 (1st Cir. 2003).  The Fourth Circuit has recognized the same, explaining that, "in practice, courts have rejected its application with almost monotonous regularity."  *United States v. Jones*, 13 F.3d 100, 104 (4th Cir. 1993) (citation omitted); *see also United States v. Jayyousi*, 657 F.3d 1085, 1111

"so grossly shocking and so outrageous as to violate the universal sense of justice."  Mot. to

Dismiss at 5 (quoting *United States v. Restrepo*, 930 F.2d 705, 721 (9th Cir. 1991)).[3]

## III.   ANALYSIS

The defendant does not identify government misconduct in this case, and certainly not

conduct that is "outrageous" or "grossly shocking."  His allegations center on the OIG Report, *see*

Mot. to Dismiss at 6-16, but the misconduct described in the Report does not pertain to the

investigation of the defendant or his false statements to the FBI on January 24, 2017.  And the

information in the Report pertaining to SSA 1 does not constitute a *Brady* violation.  Defendant's

remaining allegations have either previously been rejected by this Court or are irrelevant to the

charges to which defendant pleaded guilty.

a.   The errors and/or misconduct described in the OIG Report do not pertain to defendant's
false statements to FBI on January 24, 2017.

The defendant was charged with and pleaded guilty to providing false statements to FBI

agents during an interview on January 24, 2017. The OIG Report does not identify errors or

___

(11th Cir. 2011) ("We have never applied the outrageous government conduct defense and have
discussed it only in dicta."), cert. denied, 567 U.S. 946 (2012).

[3]     The government notes that by pleading guilty the defendant waived certain constitutional
rights. *See* 12/1/2017 Hearing Tr. at 9 ("You would have the right to challenge the government's
case against you by seeking to have the charges dismissed or having the evidence against you
suppressed or thrown out.").  In its December 16, 2019 memorandum opinion, the Court
explained:

> "[W]hen a criminal defendant enters a guilty plea, 'he may not thereafter raise
> independent claims relating to the deprivation of constitutional rights that occurred
> prior to the entry of the guilty plea.'"  *Blackledge v. Perry*, 417 U.S. 21, 29 (1974)
> (quoting *Tollett*, 411 U.S. at 266).  "A valid guilty plea also renders irrelevant . . .
> related government conduct that takes place before the plea is entered."  *Class v.
> United States*, 138 S. Ct. 798, 805 (2018).

Mem. Opinion at 67.

misconduct pertaining to the investigation of the defendant.[4]  With respect to the investigation of the defendant, the OIG Report "concluded that the FBI had sufficient predication to open [a] full counterintelligence investigation [] of . . . Flynn . . . in August 2016."  OIG Report at 352.  The defendant's motion focuses on SSA 1's participation on August 17, 2016, in a strategic intelligence briefing given to then-candidate Trump and the defendant.  As the OIG Report explained, the FBI selected SSA 1 to participate in that briefing "in part, because Flynn, who would be attending the briefing with candidate Trump, was a subject of the ongoing investigations."  *Id.* at 407-08.  The Report does not allege that SSA 1's participation in the briefing amounted to misconduct.  Rather, the Report concludes SSA 1's participation was a "judgment call[] left to the discretion of FBI officials."  *Id.* at 408.  And the decision for SSA 1 to participate was "reached by consensus" among "higher levels" at the FBI.  *Id.* at 341-42, 408.[5]

The OIG Report did identify instances where the FBI did not comply with existing policies and neglected to exercise appropriate diligence, which led to "significant errors or omissions" in the four FISA applications for surveillance targeting Carter Page.  But those four FISAs did not target the defendant.  To the contrary, the Report affirmed that the FBI "did not seek FISA surveillance" of the defendant.  *Id.* at 357 n.488.  The government does not dispute the seriousness of the "significant errors and omissions" described in the Report.  But the compliance and diligence failures and "significant errors" as they relate to the Page FISA applications do not warrant or necessitate the dismissal of the charge against the defendant.

---

[4]    The defendant appears to concede this point, remarking that "the [OIG] investigation pertains to the abuses of the FISA process, not the FBI and the DOJ's misconduct regarding Mr. Flynn[.]"  Mot. to Dismiss at 21.

[5]    The OIG recommended developing policy or guidance to address such briefings in the future.  *See* OIG Report at 408-09.

b.   SSA 1's conduct described in the OIG Report does not constitute *Brady* material.

Among the conduct that the defendant alleges mandates dismissal of the charge are alleged *Brady* violations pertaining to SSA 1's role supervising the accuracy review of the first FISA application for surveillance targeting Carter Page.  *See* Mot. to Dismiss 17-19.  The Report stated that SSA 1 "did not correct the errors," later identified by the OIG, in his supervisory accuracy review "for the first FISA application."  OIG Report at 377-78.  The Report found that the "failures by supervisory and non-supervisory agents [including SSA 1] represent serious performance failures."  *Id.* at 378.  The Report also recommended that the FBI "review the performance" of employees involved in the FISA applications and the Carter Page investigation, which would include SSA 1.  *Id.* at 380.  But while these December 9, 2019 findings are potentially impeaching of SSA 1, the government's failure to disclose them prior to December 9, 2019, does not constitute a *Brady* violation.

Here, SSA 1's conduct with respect to his supervisory accuracy review of the first FISA application does not satisfy the three factors for a *Brady* violation.  The conduct cannot be exculpatory of the defendant because the implicated FISA application does not relate to the defendant's false statements to the FBI on January 24, 2017—the only conduct with which the defendant was criminally charged and to which he pleaded guilty.  And to the extent SSA 1's conduct could be construed as impeaching, the defendant was not entitled to such information prior to pleading guilty and did not suffer prejudice as a result of its prior non-disclosure. *See* Mem. Opinion at 15.  Defendant, thus, cannot show that there is a "reasonable probability" he would not have pleaded guilty as a result. *See id.* at 15-16.

The material at issue was also not suppressed.  As the Court stated, defendant was not entitled to impeaching information before pleading guilty.  And with respect to sentencing, the

government ensured that the defendant had access to that information before his sentencing hearing, as it sought to delay that hearing until the Report's release. *See* Joint Motion. The defendant thus had, and continues to have, the ability to utilize such information for the purposes of his sentencing.

The defendant's claim that disclosure in the Report of SSA 1's participation in the strategic intelligence briefing constitutes a *Brady* violation is likewise unavailing. *See* Mot. to Dismiss at 13-16. The fact of the briefing is neither exculpatory nor impeaching. SSA 1's participation in a briefing of the defendant in August 2016 has no impact on whether the defendant lied to SSA 1 five months later, on January 24, 2017. The defendant does not explain how SSA 1's participation in a briefing with the defendant—five months before that defendant lied—had a "reasonable probability" of changing his decision to plead guilty.

The defendant thus fails to identify any *Brady* violations in conjunction with the release of the OIG Report. And even if he did, as the Court also noted in its memorandum opinion, the remedy for a *Brady* violation is not dismissal. *See* Mem. Opinion at 92.

    c.  <u>Any other referenced government activity is not misconduct, gross or otherwise.</u>

Although the defendant's motion focuses on the OIG Report, he references other alleged government misconduct that he claims justifies dismissal. That other alleged misconduct falls into one of two categories: (i) allegations that the defendant previous made and were rejected by the Court; and (ii) allegations that do not pertain to the conduct to which the defendant pleaded guilty, *i.e.*, making false statements to the FBI on January 24, 2017. Importantly, neither category involves government misconduct, gross or otherwise.

The defendant revives numerous claims that the Court dismissed on December 16, 2019. The defendant again alleges that SSA 1's handwritten notes from the January 24 interview are

inconsistent with the interview reports and that "material" changes were made to the interview reports, *see* Mot. to Dismiss at 15, 15 n.22, yet the Court ruled that "there were no material changes in the interview reports, and that those reports track the interviewing FBI agents' notes." Mem. Opinion at 41.   The defendant again alleges that the government violated *Brady* by failing to provide a document that stated he was not "an agent of Russia," *see* Mot. to Dismiss at 16 n.24, but the Court ruled that the document "is irrelevant to Mr. Flynn's underlying offense and it is not favorable to his guilt or punishment," Mem. Opinion at 25.   The defendant again claims that the government is withholding *Brady* material from the Defense Intelligence Agency ("DIA"), *see* Mot. to Dismiss at 19, 19 n.28, yet the Court ruled that the defendant "failed to demonstrate that the DIA information is favorable to his false statements," Mem. Opinion at 59.   The defendant's motion does not provide new information to justify the Court revisiting its prior holdings, and by extension, does not provide a basis to dismiss the charge against him.

The defendant also alleges misconduct occurred in the context of his false statements in the Foreign Agents Registration Act ("FARA") filings.   Yet the conduct he describes is not misconduct.   And the allegations have no relevance to the sole charge to which he pleaded guilty— making false statements to the FBI on January 24, 2017.   The defendant alleges that the government has "long suppressed" two June 2018 interview reports of Covington attorneys Brian Smith and Robert Kelner, which the government produced as part of its supplemental sentencing memorandum.   *See* Mot. to Dismiss 1, 22.   First, those interview reports are not exculpatory.   They provide evidence that the defendant's violation was willful—both attorneys confirm that the defendant reviewed the FARA documents before they were filed.   *See* Gov't Supp. Sent. Memo (Doc. 150) at 18 n.5; *see also* June 21, 2018 Interview of Brian Smith at 4 (Doc. 150-5) ("RAFIEKIAN and FLYNN never told Smith about Turkey's involvement with PC."); June 21,

2018 Interview of Robert Kelner at 5 (Doc. 150-6) ("FLYNN did not indicate to KELNER/Covington that ALPTEKIN talked to Turkish government officials about PC."). Second, regardless of whether the interview reports are exculpatory or inculpatory, they are only relevant for purposes of sentencing, as they are unrelated to the defendant's conviction for making false statements to the FBI on January 24, 2017. And the defendant has access to those interview reports in advance of his sentencing hearing. Moreover, the government could not have disclosed those interview reports to the defendant before he pleaded guilty because they occurred six months later.[6]

The defendant also once again claims that the government sought to suborn perjury of the defendant in relation to his false statements in the FARA filings. *See* Mot. to Dismiss at 22-23. As the government has repeatedly asserted, the allegation is completely unfounded. The defendant's own submission makes clear that the government explicitly stated that it did not want the defendant to lie and was only interested in presenting the defendant's truthful testimony in the *Rafiekian* case. *See* Def. Initial Withdrawal Mot. (Doc. 151), Att. 2, at 5-6, 10-11 (Doc. 151-2, Notes of Lindsay R. McKasson). The government has also provided in its sentencing submissions evidence demonstrating that the defendant's conduct was willful. Moreover, that allegation is not relevant to the defendant's false statements to the FBI on January 24, 2017.

Finally, the defendant appears to allege that the government violated *Brady* when it disclosed to the defendant on December 15, 2019, and January 23, 2020, the government's documentation of the 19 debriefings of defendant Flynn. Mot. to Dismiss at 1-2. However, the

---

[6]     Attorneys from Covington were present for these interviews, and the defendant makes no mention of whether Covington previously provided the defendant with their own notes of the interviews.

defendant and his attorneys were present for each of these debriefings and took voluminous notes of these conversations, which were produced to current counsel. *See, e.g.,* Def. Initial Withdrawal Mot. Att. 8, 11.

## IV.    CONCLUSION

As always, the government is aware of its ongoing discovery and disclosure obligations, and continues to review information that arguably could be pertinent to the defendant's guilt or punishment with those obligations in mind. However, the defendant relies on allegations that do not pertain to his case, that the Court already rejected, and that have no relevance to his false statements to the FBI on January 24, 2017.  Beyond failing to identify misconduct that satisfies the legal test cited in his own brief—that the misconduct be "so grossly shocking and so outrageous as to violate the universal sense of justice"—the defendant fails to identify any government misconduct in this case.  Accordingly, the defendant's motion should be denied.

Respectfully submitted,

TIMOTHY J. SHEA
United States Attorney
D.C. Bar 437437

By:    */s/ Brandon L. Van Grack*
Brandon L. Van Grack
Special Assistant U.S. Attorney
950 Pennsylvania Ave., NW
Washington, DC 20530
(202) 233-0968

Jocelyn Ballantine
Assistant United States Attorney
555 4th Street, NW
Washington, D.C. 20530
(202) 252-7252

Dated:  February 12, 2020