# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **Plaintiff,** | |
| **v.** | **Criminal Action No. 17-232-EGS** |
| **MICHAEL T. FLYNN,** | |
| **Defendant.** | |

## MR. FLYNN'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS FOR EGREGIOUS GOVERNMENT MISCONDUCT

The government's February 12, 2020, response in opposition to Mr. Flynn's Motion to Dismiss, ECF No. 169, demonstrates only its adamant refusal to recognize its obligations to seek justice not convictions and to produce evidence favorable to the defense under *Brady v. Maryland*, 373 U.S. 83 (1963). It continues to disregard this Court's *Brady* order, which required it to produce information favorable to the defense since December 2017.

Now, more than two years after this Court's order—and more than one year after the "extended plea colloquy" on which the government repeatedly harps—the defense learned from a stunning report of the Inspector General ("IG Report") that one of the two FBI agents, who broke all protocols to interview Mr. Flynn in the White House on January 24, 2017, was a surreptitious participant in a presidential briefing on August 17, 2016.  The FBI assigned him specifically to collect information from and about Mr. Flynn to give the FBI further advantage and insights in the agents' plan to interview Mr. Flynn in the White House if Trump won the election.  The IG Report revealed conduct of this agent and in the highest tiers of the FBI that is indeed "so grossly shocking

and so outrageous as to violate the universal sense of justice." *United States v. Restrepo*, 930 F.2d 705, 712 (9th Cir. 1991).

If the government and this Court fail to acknowledge it, then surely a court will find that this is the very case that mandates the exercise of a court's supervisory power if not the constitutionally required application of *Brady* to dismiss this prosecution because of the government's appalling and unrepentant attitude. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 263 (1988); *see Napue v. Illinois,* 360 U.S. 264 (1959) (conviction obtained on known false evidence cannot stand).

## I.       THIS COURT HAS THE LEGAL AUTHORITY TO ENFORCE ITS ORDER.

This Court entered its *Brady* order under its supervisory powers, and it must enforce it accordingly if it is to have any meaning. There are two bases on which the Court could dismiss Mr. Flynn's case: the first is when there has been a due process violation, and the second is an exercise of a federal court's supervisory authority. Mr. Flynn's Motion to Dismiss focused primarily on that second basis. ECF No. 162 at 6-8. Yet, the government elides this Court's *Brady* order and its supervisory power, and instead, argues its entire response using the stringent due process analysis that does not apply in this context. It does so by quoting from the concurrence in *United States v. Kelly,* 707 F.2d 1460, 1476 (D.C. Cir. 1983), rather than its majority opinion. ECF No. 169 at 4.[1] The breathtaking actions and offenses by the country's highest-ranking law enforcement officers in this case against Mr. Flynn meet the standard for either a *Brady*

---

[1]      Mr. Van Grack represented that the Supreme Court has indicated that the requisite level of outrageousness in this context is "coercion, violence or brutality to the person." ECF No. 169 at 4. That is not the law. Even the concurrence on which he relies, *United States v. Kelly*, 707 F.2d 1460, 1476 (D.C. Cir. 1983), without noting that it is a concurrence, also relies on a concurrence in a 1954 Supreme Court case that is inapposite—*Irvine v. California*, 347 U.S. 128, 132-33 (1954).

constitutional violation or the Court's order, but the government's repeated disregard for this Court's *Brady* order justifies use of its supervisory powers to dismiss this prosecution.

Mr. Flynn's appeal to the supervision of the federal courts relies on clear and unequivocal Supreme Court case law. In *United States v. Hasting*, the Supreme Court held that "guided by considerations of justice and in the exercise of supervisory powers, federal courts may, within limits, formulate procedural rules not specifically required by the Constitution or the Congress." 461 U.S. 499, 505 (1983). Pursuant to that authority, this Court adopted and entered its *Brady* order—as it does in all cases. In *Hasting*, the Court was focused on the Seventh Circuit's dismissal of a prosecution. The question was not whether the court had the power, but whether it could do so while ignoring the harmless error rule. *Id.* Five years later, in a case that has become a foundational ruling for dismissals under the supervisory powers, the Court again examined and refined the parameters of this supervisory authority, while obviously maintaining the fundamental principle: dismissal under the supervisory powers is separate and distinct from a request to dismiss based upon a due process violation. *See generally Bank of Nova Scotia*, 487 U.S. 250 (1988).[2]

The D.C. Circuit has not squarely and fully addressed the court's exercise of its supervisory powers to dismiss a case, which is why Mr. Flynn pointed to the Ninth Circuit's developed framework for additional guidance. ECF No. 162 at 7. That Circuit has been refining its analysis for well over three decades. No court has addressed circumstances analogous to those presented in this case which represents a departure from existing protocols and procedures at every turn in

---

[2]    While use of the court's supervisory powers is void "if it conflicts with constitutional or statutory provisions," *Bank of Nova Scotia*, 487 U.S. at 254, the Supreme Court's ultimate holding was not that the supervisory power is an improper basis. Rather, the Court held the petitioner must show prejudice, or the court would be circumventing Federal Rule of Criminal procedure 52(a)— the harmless error rule. *Id.* Put simply, because the supervisory powers do not permit a court to contradict the Constitution or Congress, prejudice had to be shown given the procedural posture of that case. *Id.*

an unfathomable abuse of power by persons at the highest levels of the FBI and the Department of Justice.

The defense recognizes that "dismissal is granted only in unusual circumstances" in this Circuit. *United States v. Ballestas*, 795 F.3d 138, 148 (D.C. Cir. 2015) (regarding a grand jury indictment). However, the dismissal of this prosecution does not require the dismissal of an indictment, and Mr. Flynn has moved to withdraw his plea on multiple grounds. ECF No. 151. Virtually nothing in this case comports with prior protocols, procedures, rules, or laws—not to mention the prosecution's repeated defiance of this Court's *Brady* order—which Mr. Van Grack now tacitly concedes. ECF No. 168 at 8.

This case is analogous to the recent decision in *United States v. Bundy*, 406 F. Supp. 3d 932 (D. Nev. 2018).[3] There, as here, the misconduct is "attributable to and directed by the government." *United States v. Bundy,* Case no. 2:16-cr-046, Transcript of Proceedings at 9:7 (D. Nev. Jan. 8, 2018) (quoting *United States v. Barrera-Morena*, 951 F.2d 1089, 1092 (9th Cir. 1991)), and the government conduct is "so grossly shocking and so outrageous as to violate the universal sense of justice." *Id.* at 9:2-3 (quoting *United States v. Restrepo,* 930 F.2d 705, 712 (9th Cir. 1991)). Here, as in *Bundy*, the only appropriate remedy for this egregious government misconduct is dismissal.

## II.    THE GOVERNMENT'S OUTRAGEOUS CONDUCT AND REPEATED *BRADY* VIOLATIONS MANDATE DISMISSAL OF THIS CASE.

The facts of this case stand in stark contrast to the government's wishful and illusory arguments. Mr. Van Grack effectively concedes the government's outrageous misconduct

---

[3]   Mr. Van Grack claims that "egregious government misconduct" is "moribund," but the cases he relies upon to make that point are all ten to twenty years old. The government's conduct has only worsened in the last twenty years—hence the *Bundy* decision and a widely-recognized "epidemic" of *Brady* violations. ECF No. 162 at 6-8.

documented in the IG Report.  He simply proceeds with the bald and specious assertions that it was not that bad or does not apply to Mr. Flynn.  The IG Report, however, belies his claim, and Mr. Van Grack's contention that he satisfied the government's obligations by providing this information before Mr. Flynn's sentencing *now* proves the point that he suppressed it when it was most important to Mr. Flynn:  before his guilty plea on December 1, 2017, and before what was scheduled to be *his sentencing* on December 18, 2018.

The government's conduct in this case has been so outrageous—and evidence of it suppressed—that FBI Director Wray immediately adopted new policies to foreclose it.  No one had anticipated the leadership of the FBI and DOJ would "spy" on a presidential campaign and breach the trust of a presidential nominee and purposefully circumvent DOJ and White House protocols to interview the new administration's National Security Advisor without counsel.

Moreover, it seems impossible for Special Assistant United States Attorney Van Grack to view these issues with even a hint of objectivity.  The defense's motions and the IG Report evince Mr. Van Grack's plain suppression of evidence that is undeniably exculpatory to Mr. Flynn under any objective standard and a series of his retaliatory actions against Mr. Flynn.  ECF No. 133.  Mr. Van Grack has suppressed evidence from the formation of the "Special Counsel Investigation" and likely even prior to it—for the very purpose of putting Mr. Flynn in the unjust position he now occupies while protecting the prosecutors, his team, and the cadre of malfeasant FBI agents from the discovery of their negligence, crimes, and wrongs.  There is a veritable litany of government misconduct here that is "outrageous" or "grossly shocking" and mandates dismissal of this prosecution.

**A.  SSA 1's Participation in a Presidential Briefing was Per Se Egregious Government Misconduct that the FBI has Prohibited as a Breach of Trust.**

Contrary to the government's Response, the IG Report establishes that SSA 1 was chosen and inserted into the presidential briefing for the very purpose of collecting information on Mr. Flynn.  IG Report at 340.  This act was outrageous government misconduct that alone warrants dismissal of this prosecution.

A small group of FBI agents planned to interview Mr. Flynn, should Trump become President.  The timeline and their statements and actions make that clear.  They texted about the "insurance policy" on August 15, 2016;[4]  they opened the "investigation" on Mr. Flynn on August 16, 2016;[5] and, by the next morning, SSA 1 was slipped into the presidential briefing because Mr. Flynn would be one of the three people attending for the Trump team.  IG Report at 340.  It is not possible to separate this evidence and information from SSA 1's later participation in the White House interview of Mr. Flynn, because he participated in the presidential briefing expressly for the purpose of collecting that information for later use in interviewing the subject, and he used it. IG Report at 408.

This is inextricably intertwined *Brady* material that Mr. Flynn was entitled to under this Court's order—long before his scheduled sentencing on December 18, 2018.  Information that both agents believed he was being honest with him, had "sure demeanor," showed "no indications of deception,"[6] and "was not lying or did not believe he was lying" would destroy an alleged "false

---

[4]     U.S. Department of Justice (DOJ) Office of Inspector General (OIG), *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election* at 404 (June 2018) https://www.justice.gov/file/1071991/download.

[5]     U.S. Department of Justice (DOJ) Office of the Inspector General (OIG), *A Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, Oversight and Review Division Report 20-012 Revised (December 2019) https://www.justice.gov/storage/120919-examination.pdf (hereinafter, "IG Report").

[6] ECF No. 133-2 at 4.

statements" case.  This is especially true when one agent had previously spent two hours with the "subject" in a different setting deliberately for the purpose of developing a baseline read, identifying his mannerisms, and noting his demeanor.  IG Report at xvii (Executive Summary).

SSA 1 is one of only two FBI Agents on which the government's entire "offense" allegedly committed by Mr. Flynn depends.  Only in December 2019, upon publication of the IG Report, did the defense learn of SSA 1's pervasive role in Crossfire Hurricane in general, and his numerous "serious performance failures" that infected the entire investigation.  IG Report at 378.  SSA 1 was responsible for numerous errors, omissions, or outright falsehoods that found their way into the original FISA application for Crossfire Hurricane.  He was responsible for countless violations of the Woods procedures.  He was the initial handler/conduit for all DOJ official Bruce Ohr's nefarious meetings with FBI-paid-informant Christopher Steele—after Steele was terminated as any pretense of a legitimate FBI source.  SSA 1 was also the conduit for transmission of thumb-drives from Nellie Ohr who was working at FusionGPS on the DNC and Clinton project that infected the FBI and DOJ throughout Crossfire Hurricane.  IG Report at 282.

The IG Report identifies the only basis articulated for opening an investigation on Mr. Flynn as follows: "The opening EC for the Flynn investigation states that there was an articulable factual basis that Flynn 'may wittingly or unwittingly be involved in activity on behalf of the Russian Federation which may constitute a federal crime or threat to the national security.'  The EC cross-referenced the predication for Crossfire Hurricane and stated that Flynn was an advisor to the Trump campaign, had various ties to state-affiliated entities of Russia, and traveled to Russia in December 2015."  IG Report at 60.  Other than being advisor to the Trump campaign, the same could be said for countless loyal Americans, especially those who ever worked for the government, the military, or multi-national corporations doing business in or with Russia.

Nothing in this statement provides an objective indicia of reasonable suspicion of any wrongdoing on the part of a distinguished thirty-three year veteran and former head of the DIA, with the nation's highest security clearance—much less someone who briefed DIA on every foreign contact—as Mr. Flynn did before and after his trip to Russia or meetings with other foreign nationals.  This EC was purely pretextual, and Mr. Flynn's DIA file would demonstrate that.  The FBI and SSA 1 ignored his DIA file just as agents ignored, "omitted," and even altered the truth that Carter Page was working for the CIA.  It remains to be seen what documents were altered and by whom as to Mr. Flynn—other than the 302 as we have already demonstrated.  ECF No. 162 at n.22; ECF No. 129-2 at 10-12.  It would be truly remarkable if SSA 1's numerous "serious performance failures" occurred only with respect to Carter Page and miraculously avoided spilling into Mr. Flynn's case.

It strains credibility to suggest the FBI opened an investigation of Mr. Flynn on August 16, 2016, and prepared to place SSA 1 into the presidential briefing the next morning.  First, ODNI had to approve the participation of SSA 1 in the briefing.  Second, former FBI General Counsel James Baker said that decision was reached by consensus in discussions that included himself, former Deputy Director Andrew McCabe, Bill Priestap, possibly Lisa Page, and the Executive Assistant for the National Security Branch.  IG Report at 341.  That is a fair number of people to put in the loop for discussions in less than twenty-four hours, and they fully intended him to capture information for Crossfire Hurricane.  *Id*.  McCabe, of course, denied any recollection of these events.  *Id*.

SSA 1 conceded that he was in the briefing on August 17, 2016, precisely because "the FBI viewed that briefing as a possible opportunity to collect information potentially relevant to the Crossfire Hurricane and Flynn investigations."  *Id.* at 340.  He admitted that "one of the reasons

for his selection was that ODNI had informed the FBI" that Flynn would be one of the three in attendance on behalf of the Trump campaign.  *Id.* at 341.  He said "the briefing provided him 'the opportunity to gain assessment and possibly have some level of familiarity with [Flynn]. So, should we get to the point where we need to do a subject interview…I would have that to fall back on.'"  IG Report at 341.

When pressed by the IG for more detail, SSA 1 said that his "assessment" meant: "[Flynn's] 'overall mannerisms. That overall mannerisms and then also if there was anything specific to Russia, or anything specific to our investigation, that was mentioned by him, or quite frankly we had an . . .  investigation, right.  And any of the other two individuals in the room, if they, any kind of admission, or overhear, whatever it was there to record that.'"  *Id.*

He also confirmed that this "actually proved useful because SSA 1 was able to compare Flynn's 'norms' from the briefing with Flynn's conduct at the interview that SSA 1 conducted on January 24, 2017, in connection with the FBI's investigation of Flynn."  *Id.*  Accordingly, there can be no serious dispute that SSA 1's collection of information from Mr. Flynn on August 17, 2016, was inextricably intertwined with his interview of Flynn on January 24, 2017.  SSA 1 admitted it to the IG.  *Id.*

Strzok was primarily responsible for preparing SSA 1 and "providing him with instruction on how to handle the FBI's portion of the ODNI strategic intelligence briefings, but others also assisted, including the Intel Section Chief and possibly Lisa Page."  *Id.* at 342.  "[H]e and Strzok created the briefing outline together, and he prepared himself through mock briefings attended by Strzok, Lisa Page, the Intel Section Chief, and possibly the OGC Unit Chief."  *Id.*  The OIG chief also reviewed the briefing outline that he and Strzok prepared.   It is difficult to imagine all this activity occurring in the few hours from the time the Flynn file was opened on August 16, 2016,

until the briefing on the morning of August 17, 2016.  The briefing lasted two hours, and although SSA 1's portion of it was only approximately thirteen minutes, he remained for the entire briefing to collect information.

SSA 1 told the IG: "About a week after the briefing, SSA 1 communicated separately with the OGC attorney and Strzok about whether to formally document the briefing.  There was agreement that he should.  . . . given the '[b]ig stakes' involved, it was important to document the interaction with the subject of an FBI investigation so that there was a clear record of what was said."  IG Report at 343.  He recorded his report in an Electronic Communication ("EC") that included comments by Mr. Flynn and information that "may not have been relevant at the time he recorded it, but might prove relevant in the future."  *Id.*  It was uploaded into the FBI Sentinel system on August 30, 2016.  *Id.* at n. 479.

The evidence that SSA 1 was inserted into a presidential briefing because Mr. Flynn was attending, to "gain assessment and possibly some level of familiarity with [Flynn]" and to have something to "fall back on" in the event the FBI decided to interview Mr. Flynn directly, ECF No. 160-2 at 33, is evidence that was favorable and material to Mr. Flynn's defense since the day it happened.  IG Report at 341.  It was material to Mr. Flynn's defense every day from January 24, 2017, to the day this Court entered its *Brady* order, ECF No. 20, and it was material for every day of the 305 days from the time this Court entered that order until Mr. Flynn appeared before this Court on December 18, 2018, ostensibly to be sentenced.

Had Mr. Flynn been sentenced that day, he would have been serving time while Mr. Van Grack hid this extraordinary information that not only magnifies by ten the importance of SSA 1's assessment of Mr. Flynn's honesty but also evinces an unprecedented act of investigatory intrusion into a trusted presidential briefing.  The transfer of information, the exchanges of questions and

answers that can occur, and the effectiveness of this process rely on an expectation of trust and good faith among the participants. The FBI's use of such briefings for investigative purposes potentially interferes with this expectation and could frustrate the purpose of future counterintelligence briefings. *Id.* at 409. There has been widespread outrage over this violation. The truth is that were it not for the IG Report, Mr. Flynn still would not have this exculpatory information which also evinces outrageous government conduct per se and even more so in conjunction with its suppression for two years.

**B.   The Government Relies on Mr. Flynn's Guilty Plea Instead of Addressing the Factual Allegations Set Forward in Mr. Flynn's Brief.**

Moreover, Mr. Van Grack simply dismisses shocking misconduct by the federal agents that riddle this case.  He elides his own role in long-suppressing all evidence of their misconduct, at the same time he concocted a case dependent on carefully-crafted false allegations of FARA violations and alleged statements to FBI agents.  He ignores that the government coerced a guilty plea with threats of indicting Mr. Flynn's son and through the assistance of former defense counsel he had leveraged with a non-consentable conflict of interest he created.  In the last year, he has continued to suppress this evidence while launching a campaign of retaliatory actions against Mr. Flynn, culminating in the government's breach of the plea agreement.

No American should be subjected to this treatment by law enforcement officers and agents. Moreover, the government cannot continue to stand on Mr. Flynn's guilty plea to protect its own misconduct—whether it be the initiation of an "investigation" that was purely pretextual, coercion of his plea by secret threats, or its complete concoction of any crime attributed to Mr. Flynn.  IG Report at 340.

Contrary to Mr. Van Grack's assertions, it is not settled that there was a valid predicate for any investigation of Mr. Flynn.  In truth, the government has produced no evidence to support its

assertion of a valid predicate.  Both Attorney General Barr and U.S. Attorney John Durham publicly stated their contrary position, which is also the subject of a criminal investigation including the very FBI agents who contrived this "investigation" of Mr. Flynn.[7]  The IG himself accepted a feeble "predicate" only because the standard for opening a case is so low as to be virtually non-existent.  But, IG Horowitz himself modified his summary conclusions in his personal testimony before Congress.[8]  He noted insufficient explanations for the agents' conduct and the possibility that the investigation was to confirm the political goals of the miscreants in power.  *Id.*  FBI Director Wray's more recent testimony informed that every FBI Agent implicated in the IG Report is now being investigated by the FBI.[10]  That would include SSA 1, whose misconduct and involvement in all aspects of Crossfire Hurricane was far more wide-ranging than was ever disclosed to the defense.

Moreover, the timeline for the Flynn file proves the government's indisputable egregious misconduct directly impacting Mr. Flynn.

---

[7]   U.S. Attorney William P. Barr, *Statement by Attorney General William P. Barr on the Inspector General's Report of the Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (Dec. 9, 2019) (transcript available at https://www.justice.gov/opa/pr/statement-attorney-general-william-p-barr-inspector-generals-report-review-four-fisa); U.S. Attorney John H. Durham, *Statement of U.S. Attorney John H. Durham* (Dec. 9, 2019) (transcript available at https://www.justice.gov/usao-ct/pr/statement-us-attorney-john-h-durham).

[8]   C-SPAN, Inspector General Report on Origins of FBI's Russia Inquiry, C-SPAN.COM, Dec. 11, 2019, https://www.c-span.org/video/?466593-1/justice-department-ig-horowitz-defends-report-highlights-fisa-problems.

[10]   "As for current employees, there are what I would call more line-level employees who were involved in some of the events in the report, all of those employees . . . were referred to our Office of Professional Responsibility, which is our disciplinary arm."  House Judiciary Committee, *Oversight of the Federal Bureau of Investigation*, YOUTUBE (Testimony of Christopher Wray streamed live on Feb. 5, 2020) (available at https://www.youtube.com/watch?v=RnBU_mgLTSQ&feature=emb_title).

- July 31, 2016, the FBI opened Crossfire Hurricane supposedly upon receipt of information from a Friendly Foreign Government ("FFG"). IG Report at 53. It then opened individual files on three associates of Trump: Paul Manafort, Carter Page, and George Papadopoulos. *Id.* at 59.

- August 11, 2016, the agents met with Stefan Halper ("Source 2")—a known CIA operative of questionable dealings who was paid covertly through the Office of Net Assessment in the Pentagon. IG Report at 314. Col. James Baker in ONA met with him regularly in 2016. ECF No. 162 at 13.

- August 15, 2016, FBI Agent Peter Strzok and Lisa Page, Special Counsel to Deputy Director McCabe, exchanged the infamous text message about the "insurance policy" they discussed in Andy's office in the unlikely event Trump won the election instead of Hillary Clinton. *Supra* n. 4.

- August 16, 2016, they open the investigation on Mr. Flynn.[11]  IG Report at 2.

- August 17, 2016, the FBI sends SSA 1 into the presidential daily briefing for Trump and Mr. Flynn—because Mr. Flynn is attending, and McCabe and Co. want a baseline read on Mr. Flynn in the event they need to interview him later. IG Report at 340.

- Late August 2016, SSA 1 writes up an Electronic Communication to report it all and places it in a sub-file of Crossfire Hurricane. IG Report at 407-08.

- November 8, 2016, Trump is elected President of the United States and Mr. Flynn is soon named to be his National Security Advisor.[12]

- December 2016, Mr. Flynn speaks with Ambassador Kislyak in calls recorded by the NSA/FBI.

- January 2017, someone in the government illegally unmasks Mr. Flynn.

---

[11]   So whatever the FFG supposedly said about Mr. Flynn, if anything, was not sufficient to open an investigation on him at the same time the FBI opened one on the other three targets. In fact, remarkably, they did not open on Mr. Flynn until after they discussed the "Insurance policy" with McCabe. *Supra* n. 2. There is not a shred of evidence that has been provided to the defense that establishes even the thinnest reed on which to pin a "predicate" for an investigation of Mr. Flynn. Moreover, any aspersions Stefan Halper (Source 2) may have cast against Mr. Flynn would be belied by Mr. Flynn's DIA file—another crucial cache of exculpatory evidence the defense has been denied.

[12]   Bryan Bender, *Trump names Mike Flynn national security advisor*, POLITICO (Nov. 18, 2016, 12:06 PM), https://www.politico.com/story/2016/11/michael-flynn-national-security-adviser-231591.

- January 2017, someone in the government commits a felony by leaking the classified call.

- January 10, 2017, DNI James Clapper calls David Ignatius of the *Washington Post* and tells him to "pull the trigger" or "take the kill shot" on Mr. Flynn, or words to that effect. ECF No. 133 at 19.

- January 12, 2017, CNN runs with the story on the salacious and other allegations in the "Steele Dossier" (now known to have been bought and paid for by the DNC and the Clinton campaign).[13]  Strzok notes in a text to Lisa Page that he and Bill Priestap were together watching and discussing that story, which provided "a pretext" for Strzok "to interview some people."  ECF No. 133-4 at 2.

- January 12, 2017, *Washington Post* Reporter David Ignatius runs the story about Mr. Flynn speaking with the Russian ambassador, suggesting a Logan Act violation.[14]

- Mid-January 2017, McCabe and Strzok (and others) have multiple meetings to plan when and how to interview Mr. Flynn.  ECF No. 133 at 11-12.

- January 24, 2017, Agents SSA 1 and Strzok go to the White House and interview Mr. Flynn according to their plan that he be alone and without counsel pursuant to which (*See* ECF No. 133 at 11-13, 133-2 at 4, 133-6):

  - They keep him "relaxed" and "unguarded."
  - They do not advise him of his rights (because if their plan to remove him was not successful, they did not want the NSA angry with them).
  - They do not even advise him he is being investigated.
  - He provides them more information than they knew going in about his contacts with Russians.
  - They leave making fun of him and joking about his lack of memory but firmly believing he was being honest with them— even in the face of significant push-back from Lisa Page and McCabe.
  - The agents and DOJ decide no follow-up is needed (which is the result when there is no indication of deception).

---

[13]   Evan Perez, Jim Sciutto, Jake Tapper and Carl Bernstein, *Intel chiefs presented Trump with claims of Russian efforts to compromise him*, CNN, (Jan. 12, 2017, 5:26 PM), https://www.cnn.com/2017/01/10/politics/donald-trump-intelligence-report-russia/index.html.

[14]   David Ignatius, *What was Trump so afraid of? Flynn may finally tell us*, WASH. POST: POST PARTISAN (Jan. 12, 2017, 2:26PM), https://www.washingtonpost.com/blogs/post-partisan/wp/2017/12/01/what-was-trump-so-afraid-of-flynn-may-finally-tell-us/.

- January 30, 2017, someone writes a memo for the Department of Justice, which says that Mr. Flynn is not an agent of Russia and clearing him of everything on which the purported "investigation" was based.  This still has not been produced to the defense.

- Overnight February 10-11, 2017, Strzok makes multiple changes to the FBI 302 of that interview—changes that are objectively material to the defense.  ECF No. 133-11.

- February 14, 2017, the day after Mr. Flynn leaves the White House, Deputy Director McCabe himself finally approves the Flynn 302.  ECF No. 133-2 at 5 ("Launch on f302").

- The government has never produced the original Flynn 302 and misattributed authorship of the raw notes for almost two years.

- According to the government now, the notes that do not appear to have been made contemporaneously were written  by SSA 1—the agent who is under investigation by the IG for malfeasance and misfeasance ("serious performance failures") in all aspects of Crossfire Hurricane in which he was involved.

Further, Mr. Van Grack asserts Mr. Flynn's conduct was willful with respect to the FARA false statements—completely ignoring the irrefutable evidence that Mr. Van Grack deleted the language from the Statement of Offense to that effect.  Moreover, correspondence from Covington shows that Mr. Flynn's former counsel knew and told the government that the purportedly "false statements are contradicted by the caveats or qualifications in the filing.  For example, the Statement says "Flynn made" false statements that are, in the filing, attributed to Arent Fox and the accounting records." ECF No. 160-36.[15]

It also defies reason and logic to suggest that an agent who (at best) was as grossly negligent as SSA 1 could possibly conduct two interviews of Mr. Flynn without major "mistakes."  In fact, the defense has already identified multiple contradictions and inconsistencies between the agents' notes and the 302 of the January 24, 2017, interview.  The government continues to suppress the

---

[15]   However, contrary to Mr. Van Grack's claims, whatever notes Covington lawyers made of Mr. Flynn's interviews with the SCO does not inform the defense of the information recorded by the government in its agents' notes—much less their 302s.

EC of the August 17, 2016 briefing.  The "Final 302" not only includes information not included in the notes, but is directly contradicted by the notes with respect to the omission of the word "not."  ECF No. 135 at 8-10.

Contrary to n. 4 in the government's response, Mr. Flynn does not concede the IG Report does not detail misconduct relevant to Mr. Flynn. Indeed, it does.  Even though Mr. Flynn's specific case was not its focus, the Report is replete with evidence of egregious misconduct by SSA 1 and the upper echelon of the FBI specifically affecting Mr. Flynn.  This prosecution would not exist were it not for all that shocking misconduct.

The government repeatedly claims that Mr. Flynn waived his right to constitutional protections when he pled guilty.  ECF No. 169 at n.3.  But, Mr. Flynn's plea cannot stand, and the government cannot use it as both a shield for its misconduct and a sword to sentence Mr. Flynn. His plea was infected with constitutional error which rendered it neither knowing nor voluntary and in violation of Mr. Flynn's Sixth Amendment rights.  *See* ECF No. 162-2.  As Mr. Flynn argued in his Motion to Withdraw Plea, ECF No. 151, even if it were a validly contracted plea, the government breached the contract the moment Mr. Van Grack filed the government's supplemental sentencing memo which withdrew its motion for downward departure and its recommendation of probation.  *See* ECF No. 150 at 3 ("In addition to asking the Court to credit the defendant with providing substantial assistance, the government recommended that the defendant receive credit for accepting responsibility. . . . [T]he government now withdraws both requests.").

### III.    *BRADY* VIOLATIONS ALSO MANDATE WITHDRAWAL OF HIS PLEA.

In addition, Mr. Flynn must be allowed to withdraw his plea, because this case is rife with *Brady* violations that are now beyond dispute.  Not only is there overwhelming evidence of

egregious government misconduct, warranting dismissal, but that misconduct was concealed deliberately in multiple *Brady* violations which provide an additional basis to require vacating Mr. Flynn's plea of guilty.   Between the IG Report and the testimony of IG Horowitz[16] and FBI Director Wray,[17] it is clear every FBI official who targeted Mr. Flynn is under investigation— whether criminal or by the Inspector General.   Most have been fired or resigned in disgrace. Deputy Director McCabe has already been found to have "lacked candor" while under oath in interviews with the Inspector General.   Director Comey was fired and failed in his duties.[18]   Strzok and SSA 1 are implicated in serious wrongdoing.

As Mr. Flynn briefed in his Motion to Withdraw his plea and his Supplemental Filing, *Brady* violations are ample reason to withdraw a plea.   ECF No. 160-2 at 4-5.   At minimum, Mr. Flynn should have been provided the information about SSA 1 prior to his originally scheduled sentencing.   ECF No. 169 at 7-8.   Given the extraordinary nature of the conduct revealed in the IG Report, the suppression of this information for the prior year or more warrants imposition of the "death penalty" for this prosecution.   Nothing less will impress upon the government the "reprehensible nature of its actions and omissions."   *See United States v. Kohring*, 637 F.3d 895, 914 (9th Cir. 2011) (Fletcher, J., dissenting in part and concurring in part).   Even Judge Fletcher's strong language is insufficient for the outrageous conduct of the FBI and DOJ in Mr. Flynn's case.

## IV.    CONCLUSION

---

[16]    *Supra* n. 8.

[17]    Press Release, FBI Director Christopher Wray's Response to Inspector General Report (Dec. 9, 2019) (on file with FBI.gov), https://www.fbi.gov/news/pressrel/press-releases/fbi-director-christopher-wray-response-to-inspector-general-report.

[18]    Sharyl Attkisson, *Facts continue supporting Trump's decision to fire James Comey*, THE HILL, (Apr. 15, 2018, 3:35 PM), https://thehill.com/opinion/white-house/383259-facts-continue-supporting-trumps-decision-to-fire-james-comey.

The government's response admits astounding and widespread government misconduct as detailed in the IG Report regarding the Crossfire Hurricane investigation and FISA applications, yet Mr. Van Grack refuses to admit any impact on Mr. Flynn's case.  For these reasons and those in Mr. Flynn's Motion to Dismiss and other briefs, the government's outrageous misconduct mandates dismissal of this prosecution with prejudice.  Its opposition proves no interest in justice, defies credulity, and demonstrates the government's reprehensible and unrepentant attitude toward the most serious of all issues that affect due process and the administration of justice.

Dated: February 18, 2020                              Respectfully submitted,

/s/ Sidney Powell
Sidney Powell
Molly McCann
Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

/s/ Jesse R. Binnall

W. William Hodes                    Jesse R. Binnall
The William Hodes Law Firm          Lindsay R. McKasson
3658 Conservation Trail             Harvey & Binnall, PLLC
The Villages, Florida 32162         717 King Street, Suite 300
Tel: (352) 399-0531                 Alexandria, VA 22314
Fax: (352) 240-3489                 Tel: (703) 888-1943
Admitted *Pro Hac Vice*             Fax: (703) 888-1930
                                    jbinnall@harveybinnall.com
                                    lmckasson@harveybinnall.com
                                    Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

I hereby certify that on February 18, 2020, a true and genuine copy of this Reply in Support

of Mr. Flynn's Motion to Dismiss was served via electronic mail by the Court's CM/ECF system

to all counsel of record, including:

    Jessie K. Liu, U.S. Attorney for the District of Columbia
    Brandon L. Van Grack, Special Assistant U.S. Attorney
    Jocelyn Ballantine, Assistant U.S. Attorney
    555 4th Street, NW
    Washington, D.C. 20530

        Respectfully submitted,

        */s/*  Jesse R. Binnall
        Jesse R. Binnall, VSB# 79272
        HARVEY & BINNALL, PLLC
        717 King Street, Suite 300
        Alexandria, VA 22314
        Tel: (703) 888-1943
        Fax: (703) 888-1930
        jbinnall@harveybinnall.com