# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

**v.**

**MICHAEL T. FLYNN,**                    **Criminal Action No. 17-232-EGS**

**Defendant.**

## MICHAEL FLYNN'S MOTION TO COMPEL AND RESPONSE TO COVINGTON & BURLING'S DISCOVERY CERTIFICATION

Michael T. Flynn's former counsel Covington & Burling LLP ("Covington") was twice ordered by this Court to search its records and to produce to its former client the documents to which he is entitled, for use by successor counsel in continuing defense of this criminal case.  It has been almost a year since Mr. Flynn terminated Covington, and over nine months since this Court issued its first Minute Order, on July 16, 2019.

In that first Order, this Court emphasized Covington's duty to promptly transfer the file regarding Mr. Flynn's case to successor counsel.  On July 25, 2019, Covington certified to this Court that its transfer of Mr. Flynn's "case file" to new counsel was "complete," and that its transfer constituted "the entirety of the working case file shared by lawyers engaged on the matter." ECF No. 99-2 at 1.  The new Flynn defense team took Covington at its word.  After all, it provided numerous hard drives and over a million pages of documents, including things like the rules for the D.C. courts.

Almost a year later, on April 9, 2020, Covington alerted Mr. Flynn's current counsel that it was transferring more documents, beginning with 30 new pages of production that it had previously overlooked. ECF No. 177-2.  This supplemental transfer—it was to be the first of three

to date—included internal emails discussing case strategy and two pages of handwritten notes, one of which is relevant to the crucial lawyer-client dispute that had arisen in the interim.  That precise dispute is the foundation for Mr. Flynn's Supplemental Motion to Withdraw Guilty Plea. ECF No. 160-2.

On April 28, 2020, Covington announced a second supplemental transfer of "overlooked" documents.  ECF No. 183-1.  Remarkably, this second transfer contained 6,756 documents, consisting of some 18,960 pages (calculated by Bates numbers). On the same day, April 28, 2020, this Court *sua sponte* issued a further Minute Order, directing Covington to produce forthwith to successor counsel "*all* documents or communications *concerning* the firm's representation of Mr. Flynn that were not previously transferred in the rolling production" (emphasis added).  The Court gave Covington until noon on May 4, 2020, to file a Notice of Compliance that it had made the instructed transfer.

Finally, in what purported to be compliance with the April 28, 2020 Order, Covington made a third supplement transfer of documents on May 2, 2020.  The third tranche consisted of 75 pages in eight documents.  Some were duplicate copies of material that Mr. Flynn's counsel had already seen, but with notations by Covington lawyers.  There were also thirty-two pages of handwritten notes that had not previously been produced.  Then, on May 4, 2020, Covington filed a Notice of "Compliance"—full of lame excuses and obfuscations for its unilateral determination not to comply with this Court's Order. ECF No. 192.

Despite its purported compliance, Covington's submission is rife with admissions that it has not complied and will not comply with this Court's Order.  At worst, Covington is attempting to convince this Court to accept compliance with an order that the Court did not issue.  At best,

Covington is seeking clarification of the Court's actual order to excuse its non-compliance.  There are three chief areas of concern.

## I.   COVINGTON'S INVOCATION OF RULES OF PROFESSIONAL CONDUCT, ETHICS OPINIONS, AND THE RESTATEMENT OF THE LAW GOVERNING LAWYERS ARE IRRELEVANT TO THIS COURT'S MINUTE ORDER.

Covington pretends as if this Court had ordered production only of whatever the firm alone chose to call its "client file."  Worse, Covington relied on what it said were "applicable authorities" to justify its *failure* to produce materials that those authorities viewed as not encompassed within that term.  ECF No. 192 at 4.  Ignoring the clear words of this Court's order, Covington's purported "authorities" included the D.C. Rules of Professional Conduct and various interpretations and applications of them, and certain sections of the Restatement of the Law Governing Lawyers.

But that line of justification—which is quite the opposite of the "compliance" that this Court ordered—is not responsive to this Court's Minute Order of April 28, 2020 in any event. First, this Court did not order production of Mr. Flynn's "client file," however Covington chose to limit it.  Nor did the Court order production of what Rule 1.16(d) of the D.C. Rules of Professional Conduct requires counsel to surrender—"papers and property to which the client is entitled," which introduces yet another undefined term.

Not only did this Court's most recent Minute Order use specific and different language— "all documents and communications concerning the representation"—but its operational thrust was different.  This Court did *not* command, in other words, "produce what you must produce in order to avoid being charged with a disciplinary violation."  Nor did this Court order production of what the American Law Institute proposed in §46(2) of THE RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS (2000), which is "any document possessed by the lawyer relating to the representation, unless substantial grounds exist to refuse," although that language is closer to this

Court's actual language, and perhaps just as broad (which is harmful to Covington's limited production).

In this context, Covington's recitation of materials that it asserted it unilaterally was entitled to *exclude* from the ordered production (because not encompassed within the **its designated** "client file"), ECF No. 192 at 4-5, was not so much a straw man as it was non-responsive. It is possible, of course, that when this Court ordered production of *all* documents and communications *concerning* the law firm's representation of Mr. Flynn, that it was willing to exclude such things as "social calendars," emails about "staffing," or "case management policies." It is even possible, although less likely, that this Court meant to exclude from the broad sweep of its *sua sponte* Order "communications about billings and collections."[1]

But instead of seeking clarification from the Court on this and related points about the scope of the Order, and seeking guidance on *whether* those and other materials must be produced, Covington relied on irrelevant "authorities" and self-righteously proclaimed its self-interested determination that it *had* complied.

Moreover, beyond the categories of information that might be at the margins of what the Court intended in its Minute Order, Covington balked at producing information that was well within any plausible understanding of the Order, even according to Covington's own self-interested analysis. D.C. Ethics Op. 333 (2005), for example, on which Covington relied, stated

---

[1] Covington was no doubt correct to point out that full compliance would be difficult or impossible in some situations in which confidential information of other clients or prospective clients might be at risk, ECF No. 192 at 4, but it did not bother to seek the Court's guidance on whether the material should be produced *in camera* or subject to a protective order, or whether redaction of client-specific information would more readily solve the problem. Instead, Covington took upon itself to justify *non-compliance* in a document that it titled Notice of Compliance—even though there are significant redactions of informal purported to be unrelated matters in many of the documents it did produce last year.

that former counsel must produce "all material that the client or another attorney *would reasonably need to take over the representation of the matter*, material substantively related to the representation, and material reasonably necessary to protect or defend the client's interests" (emphasis added).

As argued below, that is precisely the kind of material that Mr. Flynn has been seeking all along, and indubitably what this Court ordered to be produced in its April 28, 2020 Minute Order. It is that kind of material that will support Mr. Flynn's ever increasingly powerful Motion to Withdraw His Plea, which focuses on the actions and failures of Covington itself.

This is not a minor squabble about legal fees or copying costs. This is a changing of the guard in a criminal case in which the client's life, liberty, and reputation are at stake. Moreover, what began as a commonplace substitution of one set of counsel for another in ongoing litigation has become fraught with more difficulty and more delicacy, because a significant lawyer-client dispute has been added to the mix. That very dispute exists because of Covington's self-interest— a glaring ethical violation which its Notice of "Compliance" now itself evinces.

## II.   COVINGTON HAD NO WARRANT TO LIMIT ITS PRODUCTION OF DOCUMENTS AND COMMUNICATIONS TO THOSE INVOLVING "KEY EMPLOYEES."

Faced with a broadly worded Minute Order issued *sua sponte* by this Court, Covington objected that *Mr. Flynn's current counsel* was imposing an obligation "to search for and produce a wide range of documents significantly beyond the client file." ECF No. 192 at 7. According to Covington, "that would be a disproportionately burdensome e-discovery process of great scale and duration." *Id.*

It seems self-evident that this Court intended to push beyond whatever Covington unilaterally decided to denominate as "the client file." Even if the precise scope of the Minute Order were subject to legitimate debate, to solve its perceived difficulty, Covington once again

failed to seek clarification from the Court. It simply decided and reset the boundaries itself.  Then, it touted its efforts as if that should suffice for substantially less than this Court ordered.

In reality, Covington took it upon itself to "modify" the April 28, 2020 Minute Order— this time by adopting the suggestion by a United States Magistrate Judge in another jurisdiction in a civil discovery dispute that it "might" be helpful to limit an electronic word search to the files of "key employees."  ECF No. 192 at 8.  Covington then compounded its effrontery by failing even to identify the lawyers it included in its new category.

Moreover, in any circumstance, Mr. Flynn is entitled to all the notes, records, communications, and phone records of all the partners who consulted or worked on his file— whether billed to him or not.  This includes the files of Eric Holder, Lanny Breuer, and Michael Chertoff who are prominent partners in the white-collar practice of the law firm, who are mentioned in the documents that Covington has already produced to Mr. Flynn's current counsel.[2]

### III.   COVINGTON IS NOT ENTITLED TO WITHHOLD DOCUMENTS AND COMMUNICATIONS ON THE BASIS OF ITS OWN ATTORNEY-CLIENT PRIVILEGE WITH IN-HOUSE LAWYERS.

In its list of items that it regarded as "not part of the client file," and thus not subject to this Court's production order (which made no mention of the client file), Covington included "Covington lawyers' privileged consultations with the firm's internal counsel regarding ethical and compliance obligations." ECF No. 192 at 4.  But in this jurisdiction, Covington is not entitled

---

[2] Mr. Chertoff met with Mr. Flynn, is copied on many emails about the Flynn case, and he was an active member of the defense team. Indeed, Mr. Chertoff was messaging firm lawyers in the courtroom on December 18, 2018. Mr. Chertoff billed $24,194.50 to the Flynn file at rates ranging from $1,250 per hour to $1,695 per hour, and there are multiple billing entries by "MF Team" attorneys indicating additional work by Mr. Chertoff (not billed by Chertoff himself) on the Flynn file. Consultations with Mr. Breuer are also mentioned at crucial times during the representation (February, March, April, August and November of 2017). Mr. Holder appeared briefly at a client conference, communicated about the firm's representation of Mr. Flynn, and made Twitter posts that were a significant problem for the defense and were discussed within the firm.

to withhold material on the basis of that privilege—especially in this case which focuses on those very issues.[3]

If Covington did have any valid basis for withholding documents on the basis of privilege, an additional filing is required because this claim arises out of a dispute between the law firm and its former client—over ethical issues—and the consultation was with Covington's in-house or internal counsel about those issues.[4]  While in some circumstances, lawyers have the same right as anyone else to consult with counsel, and the attorney-client privilege might attach to those consultations in the ordinary way, without outside counsel, all Covington lawyers shared the same fiduciary duty to Mr. Flynn.

A firm cannot communicate on a privilege basis with other members of the firm when the dispute concerns a firm client because the consulted lawyer presumptively has the *same* fiduciary duties to the client as the consulting lawyer. *See Nesse v. Pitman*, 202 F.R.D. 344, 354-55 (D. DC 2001) ("A law firm's interest in protecting its otherwise privileged communications must yield to the societal interest in assuring that before a lawyer takes action which may jeopardize a former client's interest he seeks truly independent advice as to his ethical obligations").  And one of the most important fiduciary duties that all lawyers owe to all clients is the duty of communication and disclosure. Indeed, the "ordinary business of a law firm is defending its clients, not itself." *Nesse*, 202 F.R.D. at 349.  Under the circumstances of this case, therefore, Covington should be

---

[3] Even if Covington was entitled to withhold documents and communications created during their representation of Mr. Flynn, it would need to provide a detailed privilege log.

[4] Although Covington did not mention privileged consultations with outside counsel, it should go without saying that if the firm or individual lawyers within the firm did consult with outside counsel, communications that fit within this Court's production order but were being withheld on the basis of privilege would have to be accompanied by a separate privilege log.

required to provide all those communications and notes—as well as an ordinary privilege log if outside counsel was consulted.

## IV.   CONCLUSION.

Covington & Burling is no stranger to litigation.  It regularly makes discovery requests of adverse parties.  While sifting through documents might not be pleasant, it is hardly unusual in litigation.  Here, the stakes are much higher than a civil case.  The firm's former client is alleging that his freedom is at stake in many ways because of his former lawyers' malfeasance and misfeasance.  Evidence of that will prove his right to withdraw his plea and correct an egregious injustice he would not have suffered had he been represented by unconflicted counsel unafraid to advocate zealously on his behalf.

This Court should instruct Covington to complete its search and produce the records encompassed with this Court's mandate to provide new counsel with "all documents or communications concerning the firm's representation of Mr. Flynn...."  April 28, 2020 Minute Order.  Moreover, Covington's attribution of its belated production of 18,960 pages to some kind of technical oversight strains credulity.  This is one of the most important cases in the country's history. Because Covington has proven unreliable in collecting and producing documents itself, the Court should require that the firm, at its own expense, provide current counsel for Mr. Flynn with direct access to its e-discovery vendor so that Mr. Flynn can ensure accountability in the collection and production process.   The Court should also order such other relief as it deems just and proper.

Dated: May 6, 2020

Respectfully submitted,

/s/ Jesse R. Binnall                                                    /s/ Sidney Powell
_____                           _____
Jesse R. Binnall                                                       Sidney Powell

Lindsay R. McKasson
Harvey & Binnall, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted *Pro Hac Vice*

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, Florida 32162
Tel: (352) 399-0531
Fax: (352) 240-3489
Admitted *Pro Hac Vice*

Molly McCann
Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 6, 2020 a true and genuine copy of this Motion to Compel and

Response to Notice was served via electronic mail by the Court's CM/ECF system to all counsel

of record, including:

Timothy J. Shea, U.S. Attorney for the District of Columbia
Brandon L. Van Grack, Special Assistant U.S. Attorney
Jocelyn Ballantine, Assistant U.S. Attorney
555 4th Street, NW
Washington, D.C. 20530

It was served by email to the following:

Robert K. Kelner
Covington & Burling, LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
rkelner@cov.com

Respectfully submitted,

*/s/*  Jesse R. Binnall
Jesse R. Binnall, VSB# 79272
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **MICHAEL T. FLYNN,** | **Criminal Action No. 17-232-EGS** |
| **Defendant.** | |

**[PROPOSED] ORDER**

This matter is before the Court on Michael Flynn's Motion to Compel and Response to Covington & Burling's Discovery Certification.  For the reasons stated therein, Mr. Flynn's motion is GRANTED and Covington & Burling, LLP is again directed that it shall forthwith produce to Mr. Flynn's successor counsel all documents or communications concerning the firm's previous representation of Mr. Flynn.

So ordered.

Dated: _____                          _____
                                                                          Emmitt G. Sullivan
                                                                          United States District Judge