# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| _____ | : | |
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Criminal Action No. 17-232-EGS |
| MICHAEL T. FLYNN, | : | |
| | : | |
| Defendant. | : | |
| _____ | : | |

## MOTION FOR LEAVE TO FILE AMICUS BRIEF

Pursuant to this Court's Minute Orders dated May 12, 2020 and May 19, 2020, non-party Opening Arguments Media, LLC ("Opening Arguments"), by and through its undersigned counsel, hereby respectfully moves for leave to file the brief attached hereto as *amicus curiae* with respect to the pending Motion to Dismiss filed by the government on May 7, 2020 [ECF No. 198] (the "Motion"), and in support thereof states as follows:

1.      *Amicus* is a Maryland limited liability company Maryland limited liability company wholly owned by P. Andrew Torrez, an attorney who has practiced in this district with distinction for over 20 years.[1]  Mr. Torrez is a 1997 graduate of Harvard Law School *cum laude*, a member of the Board of Governors of the Maryland Chapter of the Federal Bar Association, a Fellow of the American Bar Foundation, and has received numerous other honors.

2.      Opening Arguments Media, LLC produces the award-winning "Opening Arguments" podcast, which has had over eleven million downloads since launching in August of

---

[1]      *See, e.g.*, *Direct Opportunities Grp., LLC v. Ctr. for Popular Democracy Action*, Case No. 1:19-cv-01407-TJK (Mr. Torrez is counsel for defendant in case pending before this Court).

2016 and frequently addresses legal issues with a particular focus on political corruption, accountability, and the rule of law.  *Amicus* has the specific interest in this case as set forth more fully in the attached (proposed) brief.

3.      This Court has "wide discretion in deciding whether to grant a third party leave to file an amicus brief," *WildEarth Guardians v. Zinke*, 368 F.Supp.3d 41, 59 (D.D.C. 2019), and such briefs are appropriate when they "will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs."  *Id.* (internal citations omitted).  *Amicus's* proposed brief is narrowly directed to the legal questions raised in the "Legal Background" section of the government's Motion (at 10-11).  In particular, the brief shows (a) that Rule 48(a) requires this Court to conduct a particularized analysis as to whether the Motion is in the public interest; and (b) that no precedent in this Circuit precludes this Court from doing so.  No brief yet filed with this Court has fully and exhaustively discussed the cases relied upon by the government in that section of its Motion, and, given the consent filed by the defendant, no party to the case is likely to address it, either.

**WHEREFORE**, non-party and *amicus curiae* Opening Arguments hereby requests that this Court grant leave to file the attached brief.  A proposed order is attached.

Respectfully submitted,

_____/s/_____

P. Andrew Torrez
  D.C. Bar No. 468918
Morgan L. Stringer
  D.C. Bar No. 1617428
THE LAW OFFICES OF P. ANDREW TORREZ,
  LLC
28 E. Susquehanna Ave., Suite 206
Towson, Maryland 21286
Phone: (240) 230-7309
email: patorrez@patorrez.com

*Counsel for Amicus Curiae*
*Opening Arguments Media, LLC*

Dated:  June 9, 2020

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June, 2020, the foregoing Motion for Leave to File

*Amicus* Brief was filed electronically via CM/ECF and electronic copies were served on counsel

of record.

_____/s/  *P. Andrew Torrez*_____

P. Andrew Torrez

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Criminal Action No. 17-232-EGS |
| MICHAEL T. FLYNN, | : | |
| | : | |
| Defendant. | : | |

---

**[PROPOSED] ORDER**

Upon consideration of the motion of nonparty Opening Arguments Media, LLC for leave

to file an *amicus* brief in this matter, and any response(s) thereto, it is hereby

**ORDERED** that the motion is GRANTED, and it is further

**ORDERED** that the Clerk is directed to file the Brief of *Amicus Curiae* of Opening

Arguments Media, LLC submitted therewith as of the date of this Order.

So **ORDERED**.

Date: _____

_____
Hon. Emmet G. Sullivan
United States District Court Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA   :
          :
  v.        :
          :  Criminal Action No. 17-232-EGS
MICHAEL T. FLYNN,    :
          :
   Defendant.   :
          :

## BRIEF *AMICUS CURIAE* OF OPENING ARGUMENTS MEDIA, LLC
## SUPPORTING DENIAL OF THE GOVERNMENT'S
## RULE 48(a) MOTION TO DISMISS

P. Andrew Torrez
 D.C. Bar No. 468918
Morgan L. Stringer
 D.C. Bar No. 1617428
THE LAW OFFICES OF P. ANDREW TORREZ,
 LLC
28 E. Susquehanna Ave., Suite 206
Towson, Maryland 21286
Phone: (240) 230–7309
email:  patorrez@patorrez.com

*Counsel for Amicus Curiae*
*Opening Arguments Media, LLC*

**Dated:  June 9, 2020**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

INTEREST OF AMICUS CURIAE ............................................................................. 1

INTRODUCTION AND FACTUAL BACKGROUND .............................................. 3

ARGUMENT ................................................................................................................ 8

*I.  Rule 48(a) Does Not Require This Court to Dismiss the Case Against Mr. Flynn* .......... 8

    A.    As a Threshold Matter, the Government Has Not Established that this Circuit Recognizes a Rule 48(a) Motion to Dismiss After a Defendant Has Pleaded Guilty. ................................................................................. 10

    B.    If the *Hector* Rule Applies in This Circuit, It Requires This Court Independently to Determine Whether Granting Such Relief is in the Public Interest; This Court May Not Simply Defer to Prosecutorial Discretion. .................. 12

*II. The Separation of Powers Argument and Public Policy Rationale Articulated in Dicta in Fokker Strongly Favor Denying the Government's Rule 48(a) Motion* ......... 16

    A.    Separation of Powers, in This Case, Compels Deference to the Judiciary's Power to Sentence Rather Than the Executive Branch's Power to Charge. .......................................................................................................... 17

    B.    Deferred Prosecution Agreements, by Their Nature, Incorporate the Same Concern for the Public Interest Required by Rule 48(a)................................. 19

    C.    The D.C. Circuit's "No Power" *Dicta* in *Fokker* Should Not Be Read Literally.................................................................................................................. 21

CONCLUSION .......................................................................................................... 23

i

# TABLE OF AUTHORITIES

**TABLE OF AUTHORITIES**

**Cases**

*Bearden v. Georgia,*
  461 U.S. 660 (1983) ............................................................................. 17

*Berger v. United States,*
  295 U.S. 78 (1935) ............................................................................... 18

*Caribbean Broad. Sys. Ltd. v. Cable & Wireless P.L.C.,*
  148 F.3d 1080 (D.C. Cir. 1998) .......................................................... 12

*Davis v. Moore,*
  772 A.2d 204 (D.C. Cir. 2001)............................................................ 17

*Direct Opportunities Grp., LLC v. Ctr. for Popular Democracy Action,*
  Case No. 1:19-cv-01407-TJK ............................................................... 1

*Forman v. Davis,*
  371 U.S. 178 (1962) ............................................................................ 12

*In re Flynn,*
  No. 20-5143 (D.C. Cir. June 1, 2020) .............................................. 8, 25

* *In re Richards,*
  213 F.3d 773 (3d Cir. 2000)....................................................... 9, 16, 24

*In re United States,*
  345 F.3d 450 (7th Cir. 2003)............................................................... 18

*Liberty Mut. Ins. Co. v. Hurricane Logistics Co.,*
  216 F.R.D. 14 (D.D.C. 2003) .............................................................. 12

* *Rinaldi v. United States,*
  434 U.S. 22 (1977) ...................................................................... passim

*Strickler v. Greene,*
  527 U.S. 263 (1999) ............................................................................ 18

* *United States v. Ammidown,*
  497 F.2d 615 (D.C. Cir. 1973) ........................................... 10, 11, 13, 17

* *United States v. Cowan,*
  524 F.2d 504 (5th Cir. 1975)............................................... 11, 14, 16, 17

*United States v. Davenport*,
   519 F.3d 940 (9th Cir. 2008)..........................................................................15

*United States v. Del Vecchio*,
   707 F.2d 1214 (11th Cir. 1983)......................................................................16

*United States v. Derr*,
   726 F.2d 617 (10th Cir. 1984)..........................................................................9

*United States v. Flotron*,
   Case No. 3:17-cr-00220-JAM, 2018 WL 1951117, at *5 (D. Conn. April 25, 2018) .............20

*United States v. Fokker Servs., B.V.*,
   818 F.3d 733 (D.C. Cir. 2016) ...............................................................passim

*United States v. Freedberg*,
   724 F. Supp. 851 (D. Utah 1989) ....................................................................20

*United States v. Garcia-Valenzuela*,
   232 F.3d 1003 (9th Cir. 2000).........................................................................13

*United States v. Gonzalez*,
   58 F.3d 459 (9th Cir. 1995)......................................................................13, 17

*United States v. Goodson*,
   204 F.3d 508 (4th Cir. 2000).........................................................................16

*United States v. Hector*,
   577 F.3d 1099 (9th Cir. 2009).......................................................12, 13, 15, 18

*United States v. Martin*,
   287 F.3d 609 (7th Cir. 2002).........................................................................16

*United States v. Miller*,
   722 F.2d 562 (9th Cir. 1983).....................................................................15, 16

*United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*,
   428 F.Supp. 114 (S.D.N.Y. 1977).....................................................................20

*United States v. Pimentel*,
   932 F.2d 1029 (2d Cir. 1991).........................................................................16

*United States v. Rafiekian*,
   No. 18-cr-457 (E.D. Va. July 9, 2019).................................................................6

*United States v. Rafiekian*,
   No. 19-4803 (4th Cir. June 7, 2020) .............................................................22, 23

*United States v. Romero*,
    360 F.3d 1248 (10th Cir. 2004) ............................................................... 16

*United States v. Rush*,
    240 F.3d 729 (8th Cir. 2001) .................................................................... 16

*United States v. Salinas*,
    693 F.2d 248 (5th Cir. 1982) ................................................................ 9, 10

*United States v. Smith*,
    55 F.3d 157 (4th Cir. 1995) ..................................................................... 16

*United States v. Stoker*,
    522 F.2d 576 (10th Cir.1975) ..................................................................... 7

*United States v. Welborn*,
    849 F.2d 980 (5th Cir.1988) ......................................................... 7, 16, 17

*Vazquez-Ramirez v. United States Dist. Court*,
    443 F.3d 692 (9th Cir. 2006) ................................................................... 13

*Wayte v. United States*,
    470 U.S. 598 (1985) ................................................................................ 18

*Wells v. United States*,
    802 A.2d 352 (D.C. Cir. 2002) ............................................................... 17

**Statutes and Rules**

18 U.S.C. § 1001 .......................................................................................... 4

18 U.S.C. § 3161(h)(2) ............................................................................... 20

Fed. R. App. P. 29(a)(4) ............................................................................... 2

Fed. R. Civ. P. 15(a)(2) .............................................................................. 11

Fed. R. Crim. P. 48(a) ................................................................................ 10

LCvR 7(o)(5) ................................................................................................ 2

**Other Authorities**

1 The Records Of The Federal Convention Of 1787 (Max Farrand ed., rev. ed. 1966) (1937) ... 10

Bernard Bailyn, *The Ideological Origins of the American Revolution* (enlarged ed. 1992) ........ 10

Karl A. Racine & Elizabeth Wilkins, *Enforcing the Anti-Corruption Provisions of the Constitution*, 13 Harv. L. & Pol'y Rev. 449 (2019) ................................................. 10

Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan. L. Rev. Online (forthcoming 2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3599674 (May 13, 2020) ...................... 22

*United States v. Hamm*, 659 F.2d 624 (5th Cir. 1981) ................................................................. 22

Zephyr Teachout, *The Anti-Corruption Principle*, 94 Cornell L. Rev. 341 (2009) ..................... 10

## INTEREST OF AMICUS CURIAE

*Amicus* has a strong professional interest in educating and inspiring the public about the rule of law and principles of justice, fairness, and integrity in our legal system.  **Opening Arguments Media, LLC ("Opening Arguments")** is a Maryland limited liability company wholly owned by P. Andrew Torrez, an attorney who has practiced in this district with distinction for over 20 years.[1]  Mr. Torrez is a 1997 graduate of Harvard Law School *cum laude*, a member of the Board of Governors of the Maryland Chapter of the Federal Bar Association, a Fellow of the American Bar Foundation, and has received numerous other honors.  Opening Arguments Media, LLC produces the award-winning "Opening Arguments" podcast, which has had over eleven million downloads since launching in August of 2016.

The Opening Arguments podcast explains popular legal stories in the news, with a particular focus on political corruption, accountability, and the rule of law.  It is co-hosted by Mr. Torrez and Thomas Smith, an inquisitive interviewer and non-attorney who asks questions and provides commentary on the news from a layperson's perspective.  One of the most popular segments is "Thomas Takes the Bar Exam," in which Mr. Smith attempts to answer bar exam questions by applying common sense despite not having attended law school.  The point of the segment—and the show in general—is to de-mystify and encourage a love of the law.

This "love of the law" is what motivated Opening Arguments to file the instant brief.  The Opening Arguments podcast is aimed at the general public, with a diverse audience of listeners that also includes many law students and prospective law students, along with

---

[1]     *See, e.g.*, *Direct Opportunities Grp., LLC v. Ctr. for Popular Democracy Action*, Case No. 1:19-cv-01407-TJK (Mr. Torrez is counsel for defendant in case pending before this Court).

prosecutors, public defenders, and practicing and non-practicing attorneys.[2]  In fact, over the

past four years, Opening Arguments has received dozens of emails from listeners who have said

that the podcast inspired them to attend law school.[3]  Opening Arguments believes that its

unwavering faith in the rule of law is what has inspired its listeners to join the legal profession.

Although Opening Arguments encourages listeners to trust in the justice system, our

system only inspires trust when the underlying principles of justice, fairness, and integrity are

maintained.  Accordingly, *amicus* brings a unique perspective as well as rigorous legal research

to the question pending before this Court.  In particular, *amicus* suggests the government's

"Legal Background" section of its Motion to Dismiss [ECF No. 198] (the "Motion") at 10-11,

is misleading at best, and does not prevent this Court from denying relief or deferring judgment

under Rule 48(a) until this Court is convinced that doing so would serve the public interest.

Because the Defendant (obviously) has not objected to the government's legal sleight-of-hand,

*amicus* respectfully submits this brief, and believes that its brief will be useful in ensuring that

Defendant and his allies at the Department of Justice do not misrepresent the law to serve their

own interests and schemes.

Pursuant to Fed. R. App. P. 29(a)(4) and LCvR 7(o)(5), counsel for *amicus* state that no

party's counsel authored this brief in whole or in part; no party or party's counsel contributed

---

[2]    This brief *amicus curiae* and all of the arguments contained herein are made by and on behalf of Opening Arguments Media, LLC, and not by Mr. Torrez in his individual capacity and/or the Law Offices of P. Andrew Torrez as a legal representative of any other entity, public or private.  As an LLC, Opening Arguments is not required to make any Disclosure of Corporate Affiliations and Financial Interests pursuant to LCvR 7.1 and/or LCvR 26.1, and has none.

[3]    Counsel for *amicus* wish to acknowledge their appreciation of the research and drafting assistance of legal intern Rich Gilliland, Washington and Lee University School of Law (J.D. expected 2022), who began as a show listener.

money that was intended to fund preparing or submitting the brief; and no person contributed money that was intended to fund preparing or submitting this brief.[4]

## INTRODUCTION AND FACTUAL BACKGROUND

*Amicus* submits this brief out of a concern that the filing of the government's Motion to Dismiss and the accompanying consent by the Defendant, Lt. Gen. Michael T. Flynn[5] threaten our legal system's bedrock principles of justice, fairness, and integrity.

Mr. Flynn is a highly politically-connected Defendant, "a high-ranking government official who committed a crime while on the premises of and in the West Wing of the White House."[6] Indeed, this Court frankly admonished Mr. Flynn that the "aggravating circumstances"[7] surrounding his criminal activities were "serious,"[8] explaining:

> Not only did you lie to the FBI, but you lied to senior officials in the Trump Transition Team and Administration. Those lies caused the then-Vice President-Elect, incoming Chief of Staff, and then-Press Secretary to lie to the American people. Moreover, you lied to the FBI about three different topics, and you made those false statements while you were serving as the National Security Advisor, the President[-elect] of the United States' most senior national security aid[e]. I can't minimize that.
>
> Two months later you again made false statements in multiple documents filed pursuant to the Foreign Agents Registration Act. So, all along you were an

---

[4]     Opening Arguments is funded primarily via advertising and listener donations at www.patreon.com/law. Opening Arguments disclosed that it intended to prepare and file an *amicus* brief in this case on May 14, 2020, *see* https://openargs.com/oa386-the-opening-arguments-amicus-brief/, and shared information about that brief prior to filing, but did not solicit any funds for the preparation or submission of this brief.

[5]     *See* Michael Flynn's Consent to Government's Mot. to Dismiss, ECF No. 202.

[6]     Tr. of Proceedings 42:19–21, filed Aug. 20, 2019, ECF No. 103.

[7]     *Id.* at 32:22–23.

[8]     *Id.* at 32:23.

unregistered agent of a foreign country, while serving as the National Security Advisor to the President[-elect] of the United States.[9]

Despite Mr. Flynn's having arguably "sold out" his country,[10] the government offered Mr. Flynn a proverbial "sweetheart" deal from the outset, charging him solely with a single count of making a false statement under 18 U.S.C. § 1001, and recommending a low-end Guidelines sentence of zero to six months of incarceration even before Mr. Flynn's cooperation and assistance obligations to the government were completed.[11] This sweetheart deal saved Mr. Flynn from potentially "grave" exposure to additional charges that could have resulted in spending more than a decade in prison.[12]

One of the only conditions of this deal was that Mr. Flynn cooperate fully, truthfully, and forthrightly, as well as assist the government in its ongoing investigations.[13] By 2019, however, Mr. Flynn largely ceased rendering any assistance. Indeed, when questioned by this

---

[9]    *Id.* at 32:23–33:11.  Bracketed language reflects a minor technical correction made by this Court later in that oral argument in that Mr. Flynn's conduct occurred after the election of President Trump but prior to Mr. Trump's inauguration; i.e., when Mr. Trump was President-elect.  *See id.* at 39:20–40:1.

[10]    *Id.* at 33:12–14 ("Arguably, that undermines everything this flag over here stands for [indicating].  Arguably, you sold your country out.").

[11]    *Id.* at 37:1–13 (recommending sentence "at the low end of the Guideline range"); *id.* at 17:8–10 (explaining that such sentence would be zero to six months). *See also* Gov't Sentencing Mem., ECF No. 46 (recommending low end of the Guidelines sentence for Mr. Flynn).  *See infra* at 8 (discussing Mr. Flynn's failure to fulfill his obligations to the government).

[12]    Tr. of Proceedings 29:3–5, filed Aug. 20, 2019, ECF No. 103. *See id.* at 22:6–23:5 (noting that Mr. Flynn could have been charged with violating FARA); *id.* at 27:16–28:5 (noting that Mr. Flynn could have been charged in the Bijan Rafiekian indictment in the Eastern District of Virginia); *id.* at 28:15–29:17 (noting that such charge could have carried a ten-year prison term to run consecutively with the charges in this matter).

[13]    *See* Plea Agreement as to Michael T. Flynn entered Dec. 1, 2017, ECF No. 1, ¶¶ 5–6 (detailing the requirements of Mr. Flynn's duty to cooperate).

Court, the most the line prosecutor would concede at that time was that "it remains a possibility" that Mr. Flynn *might* cooperate with the government's investigations in the future.[14]

Nevertheless, to give Mr. Flynn the maximum potential benefit of the doubt—and to permit him to render the most fulsome and complete assistance to the government as possible— this Court continued to defer Mr. Flynn's sentencing.[15]  Thus, instead of potentially sentencing Mr. Flynn to prison nearly a year ago, this Court instead allowed him to retain his freedom, trusting that he would use that time to serve his country by helping to right the wrongs he committed.

Sadly, Mr. Flynn abused this Court's and the public's trust.  In January of this year, the government reported—with considerable understatement—that Mr. Flynn had "not substantially assisted" it in any matter.[16]  Instead, Mr. Flynn acquired new counsel, immediately changed his story, both publicly and in this Court,[17] began denying responsibility for his actions, and ultimately moved to withdraw his voluntarily-entered guilty plea.[18]  In doing so, Mr. Flynn began to express an entirely new version of events that contradicted both his earlier sworn grand jury testimony as well as statements he made to the FBI on multiple occasions.[19]  Moreover,

---

[14]    Tr. of Proceedings 25:18–24, filed Aug. 20, 2019, ECF No. 103.

[15]    *See, e.g.*, *id.* at 32:6–8 ("In other words, the Court likes to be in a position to say there's nothing else this defendant can do to help the United States of America. He's done everything that he can do."). *See also id.* at 25–26.

[16]    Gov't Suppl. Sentencing Mem. 22, ECF No. 150.

[17]    *Id.* at 20.

[18]    *Id. See also* Mot. for Leave to File Excess Pages for Suppl. Mot. to Withdraw Plea of Guilty Attach. 2, ECF No. 160.

[19]    Gov't Suppl. Sentencing Mem. 23, ECF No. 150.

these newly (and loudly) articulated views undermined the testimony of other witnesses the government intended to call in its prosecution of Bijan Rafiekian[20]—the case in which the government had eagerly anticipated that Mr. Flynn would render the *most* assistance.[21]

Needless to say, Mr. Flynn's brand-new story and inconsistent statements rendered him useless as a witness for the prosecution,[22] depriving the government of what it anticipated would be "the best and most direct evidence" of the most crucial contested issue at trial over the "most serious charge" against Mr. Rafiekian.[23]  Worse, not only was the government unable to call Mr. Flynn as a witness for the prosecution,[24] but Mr. Flynn actually intervened *on behalf of the defendant*[25]—an action the government described not only as "remarkable"[26] but "wholly inconsistent with the defendant assisting (let alone substantially assisting) or cooperating with the government in that case."[27]

One might expect that the government would not look particularly kindly upon a defendant who not only failed to render the kind of cooperation and assistance required by his

---

[20]    *United States v. Rafiekian*, No. 18-cr-457 (E.D. Va. July 9, 2019).

[21]    *See* Gov't Suppl. Sentencing Mem. 22–25, ECF 150.

[22]    *Id.* at 23 ("In light of that view, the *Rafiekian* prosecutors made a rational, strategic decision not to call the defendant as a witness, and promptly disclosed the proffered new version of events to Rafiekian's counsel.").

[23]    *Id.* at 23–24.

[24]    *Id.* at 23.

[25]    *Id.* at 24 ("Remarkably, the defendant, through his counsel, then affirmatively intervened in the *Rafiekian* case and filed a memorandum opposing the government's theory of admissibility on the grounds that the defendant was not charged or alleged as a co-conspirator.").

[26]    *Id.*

[27]    *Id.* at 24–25.

plea deal, but *actively undermined another criminal prosecution*.  Incredibly, that has not

happened here.  Instead, as this Court is well aware, the government has subsequently moved to

drop all charges against Mr. Flynn <u>with</u> prejudice,[28] despite the fact that Mr. Flynn voluntarily

pleaded guilty on December 1, 2017[29] and repeatedly reaffirmed that plea under oath before this

Court.[30]  As this Court is well aware, a motion to dismiss pursuant to Rule 48(a) is ordinarily

brought *without* prejudice.  *See, e.g., United States v. Welborn*, 849 F.2d 980 (5th Cir.1988);

*United States v. Stoker*, 522 F.2d 576 (10th Cir.1975).  In what this Court has politely described

as an "unusual"[31] turn of events, the government's motion was signed only by an acting political

appointee and not by any of the line prosecutors in this case.[32] Even more unusually, on the same

day that motion was filed, the lead prosecutor, Special Assistant U.S. Attorney Brandon L. Van

Grack, withdrew from this case.[33]  To date, this Court has not requested that the government

---

[28]    *See* Motion at 1, ECF No. 198.

[29]    *See* Information as to Michael T. Flynn, ECF No. 1 (waiving indictment and pleading guilty); Tr. of Proceedings 6–14, Jan. 16, 2018, ECF No. 16 (interrogating Mr. Flynn exhaustively to ensure that his plea was voluntary).

[30]    *See* Tr. of Proceedings 8:1–9:7, Aug. 20, 2019, ECF No. 103 ("THE COURT:  Do you seek an opportunity to withdraw your plea in light of those revelations?  THE DEFENDANT:  I do not, Your Honor."); *id.* at 16:5–7 ("THE COURT:  All right.  Because you are guilty of this offense?  THE DEFENDANT:  Yes, Your Honor.").

[31]    *See* Br. for Judge Emmet G. Sullivan in Response to May 21, 2020 Order at 28, *In re Flynn*, No. 20-5143 (D.C. Cir. June 1, 2020).

[32]    *Id.*

[33]    *See* Notice of Withdrawal, May 7, 2020, ECF No. 197.

produce Mr. Van Grack or documents related to his withdrawal, which might aid in the evaluation of the pending Motion.[34]

*Amicus's* argument is that this Court retains discretion under Rule 48(a) to deny or hold *sub curia* the government's Motion pending additional evidentiary hearings if it finds that there is reason to suspect that the DOJ may have done a favor or otherwise shown preferential treatment towards a politically-connected defendant who has already pleaded guilty. Accordingly, the government's Motion should be denied or held *sub curia* pending an additional evidentiary hearing.

## ARGUMENT

### I.     Rule 48(a) Does Not Require This Court to Dismiss the Case Against Mr. Flynn

This is a case of first impression.   For the first time in our nation's history, the government has moved to dismiss *all* charges with prejudice against a defendant who has already pleaded guilty.[35]  The government's Motion cites <u>zero</u> cases in which a court has ever done that, and *amicus*—after exhaustive research—similarly knows of no cases in any jurisdiction, at any level, by any court, at any time that have *ever* granted such relief.

As a result, there is justifiable concern in this case that the government's literally unprecedented about-face may be the product of potentially corrupt preferential treatment by the Trump Department of Justice on behalf of a former Trump administration official.[36]  In the event

---

[34]     This Court is fully empowered to conduct additional fact-finding in the evaluation of the Motion*; see infra* at 9 & note 37.

[35]     *See* Motion, ECF No. 198.

[36]     *See, e.g,* Tr. of Proceedings 7:10–14, June 26, 2019, ECF No. ("[I]t's a high profile case, there are many eyes watching this case, and I would prefer that no one raise an issue that [Mr. Flynn is] being treated with a certain preference or privilege than others."). *See also* Order

that this Court shares those concerns, or, at minimum, would seek to investigate them further, Rule 48(a) requires this Court to do precisely that.[37]  Here, because the government seeks to dismiss the charges against Mr. Flynn with prejudice, this Court must conduct an individualized inquiry as to whether the government's Motion was made in "good faith."  *United States v. Salinas*, 693 F.2d 248, 251 (5th Cir. 1982); *accord United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984) ("Thus, to honor the purpose of [Rule 48(a)], the trial court at the very least must know the prosecutor's reasons for seeking to dismiss the indictment and the facts underlying the prosecutor's decision.") (citing *Salinas*, 693 F.2d at 352, and *Ammidown*, 497 F.2d at 620).

Rule 48(a)'s requirement that the government seek "leave of court" to dismiss charges is best understood in the context of the judiciary's long-standing role in protecting the public against political corruption.  The Framers of the Constitution made anti-corruption a cornerstone of independence from Great Britain[38] that served as a guidepost for the very formation of this country.[39] As the Constitutional Convention began, George Mason said, "[I]f we do not provide

---

Appointing Amicus Curiae, ECF No. 205; Minute Order, May 19, 2020 (scheduling *amicus* submissions).

[37]    It is well established that this Court has discretion to assess the prosecutor's motivation in moving to dismiss beyond merely a thorough examination of the record.  The court "will not be content with a mere conclusory statement by the prosecutor that dismissal is in the public interest, but will require a statement of reasons and underlying factual basis." *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973); *see also United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984).  Pursuant thereto, this Court may also hold a hearing to "inquire into whether there [are] any improprieties attending the Government's [Rule 48(a)] petition to dismiss." *In re Richards*, 213 F.3d 773, 789 (3d Cir. 2000).

[38]    Karl A. Racine & Elizabeth Wilkins, *Enforcing the Anti-Corruption Provisions of the Constitution*, 13 Harv. L. & Pol'y Rev. 449, 456 (2019) (citing Bernard Bailyn, *The Ideological Origins of the American Revolution*, xiii (enlarged ed. 1992)).

[39]    *Id.* (citing Zephyr Teachout, *The Anti-Corruption Principle*, 94 Cornell L. Rev. 341, 347 (2009)).

against corruption, our government will soon be at an end."[40] The Framers were concerned not only with corruption in the sense of bribes or *quid pro quo* arrangements,[41] but with the very *appearance* of corruption.[42]  Rule 48(a) is one application of this anti-corruption principle.

A. <u>As a Threshold Matter, the Government Has Not Established that this Circuit Recognizes a Rule 48(a) Motion to Dismiss After a Defendant Has Pleaded Guilty.</u>

The text of Rule 48(a) of the Federal Rules of Criminal Procedure plainly provides, "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a).  If the motion occurs "during trial," the defendant must also consent.  *Id.*  This "leave of court" language is central to the modern rule; the Supreme Court rejected an earlier draft of Rule 48(a) that lacked such language, *see United States v. Cowan*, 524 F.2d 504, 510 (5th Cir. 1975), and the Advisory Committee Notes to the 1944 amendment further indicate that the Supreme Court's intent was to "change existing law" by "permit[ting] the filing of a *nolle prosequi* only by leave of court," thereby creating a role for the Judiciary in evaluating a prosecutor's motion to dismiss where none had previously existed at common law.[43]

Here, the government does not seek to *nolle prosequi* "an indictment, information, or complaint," because Mr. Flynn has already pleaded guilty.  Rather, in its own words, the government seeks to overturn the "conviction" of Mr. Flynn.  Motion at 10.  Under a

---

[40]   Zephyr Teachout, *The Anti-Corruption Principle*, 94 Cornell L. Rev. 341, 347 (2009) (citing Notes of Robert Yates (June 23, 1787), in 1 THE RECORDS OF THE FEDERAL CONVENTION OF 1787, at 391–92 (Max Farrand ed., rev. ed. 1966) (1937)).  *See also* Notes of James Madison (June 23, 1787), *id.*, at 385, 387.

[41]   Racine, *supra* note 38, at 457.

[42]   *Id.*

[43]   *See* Notes of Advisory Committee on Rules (1944); *Ammidown*, 497 F.2d at 619–20 (discussing history and applicability of Rule 48(a)).

straightforward reading of the text, Rule 48(a) does not permit such a filing, and <u>no</u> case in this Circuit has ever construed Rule 48(a) as doing so.[44]

To overcome the plain language of Rule 48(a), the government must show that Rule 48(a)'s use of the word "complaint" should be judicially construed as also implicitly including the word "conviction,"—and, in particular, a conviction arising due to a defendant's voluntary plea of guilty that was accepted by this Court nearly two years ago, where all that remains is for the Court to sentence the defendant.  In support of this argument, the government cites a Ninth Circuit decision, *United States v. Hector*, 577 F.3d 1099 (9th Cir. 2009), for the proposition that "[i]t is also 'well established that the Government may move to dismiss even after a complaint has turned into a conviction because of a guilty plea.'" Motion at 10.

This drastically overstates the case.  Far from being "well-settled," *Hector* articulates a reading of Rule 48(a) that is not supported by the plain language of the text and has not been adopted anywhere outside of the Ninth Circuit.[45]  This Court has good reasons to suspect that

---

[44]    Rule 48(a) requires "leave of court," and such language typically indicates a more than ministerial role for the Court. *See infra* Part I.B.  Thus, for example, even Rule 15(a)(2) of the Federal Rules of Civil Procedure—which contains additional language requiring that such leave be "freely give[n]," Fed. R. Civ. P. 15(a)(2), still requires an independent judicial determination regarding the public interest.  Accordingly, a court may deny Rule 15(a)(2) motions to amend as long as the court gives a sufficient reason, such as futility of amendment, undue delay, bad faith, dilatory move, undue prejudice, or repeated failure to cure deficiencies by previous amendments. *See, e.g.*, *Forman v. Davis*, 371 U.S. 178, 182 (1962). *See also Liberty Mut. Ins. Co. v. Hurricane Logistics Co.*, 216 F.R.D. 14, 16 (D.D.C. 2003) (citing *Forman,* 371 U.S. at 182); *Caribbean Broad. Sys. Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1083 (D.C. Cir. 1998).  Here, Rule 48(a) requires only "leave of the court" with no further instructions to this Court as to how or upon what grounds it may make that determination.  *Amicus* respectfully suggests that the government's interpretation, which would read Rule 48(a) more narrowly than a similar procedural rule (Rule 15) containing additional instructions and constraints on judicial discretion, is not well-founded.

[45]    The government's argument that *Hector* applies here is ostensibly supported by two lines of authority:  (a) a "collecting cases" parenthetical in its citation to *Hector*; and (b) a "*see also*" citation to the Supreme Court's 1977 *per curiam* opinion in *Rinaldi v. United States,* 434 U.S. 22, 31 (1977).  Upon closer examination, neither of these hold water.  *Rinaldi*, as this Court is

this Circuit would decline to endorse the Ninth Circuit's reasoning in *Hector*.  In *United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973), the petitioner asked the D.C. Circuit to vacate his conviction and reinstate his previously proffered guilty plea to a lesser offense—relief virtually identical[46] to that which the government seeks here.  *Id.* at 618.  Before ultimately granting the petitioner's relief on other grounds, the *Ammidown* court first considered whether Rule 48(a) applied.  Because Rule 48(a) "requires the prosecutor to terminate a prosecution by dismissal of an <u>indictment</u>," *id.* at 619 (emphasis added), the D.C. Circuit concluded that "Rule 48(a) does not apply as such to the case at bar," which involved a plea bargain.  *Id.* at 619–20.  *Ammidown* thus strongly suggests that the D.C. Circuit would not adopt the Ninth Circuit's reasoning in *Hector* and judicially expand the definition of the word "complaint" to include "conviction," particularly in plea bargain cases.  If this Court agrees, it can simply deny the Motion.

B. <u>If the *Hector* Rule Applies in This Circuit, It Requires This Court Independently to Determine Whether Granting Such Relief is in the Public Interest; This Court May Not Simply Defer to Prosecutorial Discretion.</u>

Assuming *arguendo* that this Circuit would adopt the Ninth Circuit's reading of Rule 48(a) (the "*Hector* Rule"), this Court nevertheless retains—and is, in fact, <u>required</u> to exercise— substantial discretion to either deny the Motion or hold it *sub curia* pending additional fact-

---

well aware, did not involve a guilty plea, and thus is of no help to the government.  Moreover, *Rinaldi* plainly endorses the notion that the trial court's discretion under Rule 48(a) is guided by a concern for the public interest.  *See infra* Part I.B. (discussing *Rinaldi*).  That leaves only *Hector* and the cases "collected" therein, which consist only of other Ninth Circuit cases (and *Rinaldi*): *Hector*, 577 F.3d at 1101 (citing *United States v. Gonzalez*, 58 F.3d 459 (9th Cir. 1995), *United States v. Garcia-Valenzuela*, 232 F.3d 1003 (9th Cir. 2000), and *Vazquez-Ramirez v. United States Dist. Court*, 443 F.3d 692 (9th Cir. 2006)).  In other words, *Hector* is the law <u>only</u> in the Ninth Circuit.

[46]  But less extreme.  The petitioner in *Ammidown* did not seek to escape *all* punishment, but merely to substitute a lesser sentence for a greater one.  497 F.2d at 618; *id.* at 624 (granting same).  *See immediately infra* Part I.B. (arguing that dismissal here is not in the public interest).

finding.  Indeed, the only Supreme Court case to consider the meaning of Rule 48(a), *Rinaldi v. United States*, 434 U.S. 22 (1977), made it clear that a district court is "empowered to withhold leave [under Rule 48(a)] if the Government's decision to terminate this prosecution clearly disserved the public interest."[47]  *Id.* at 29 (citing *United States v. Cowan,* 524 F.2d 504, 513 (5th Cir. 1975)).  In particular, this Court must adjudicate "not whether the decision to maintain the federal prosecution was made in bad faith but rather <u>whether the Government's later efforts to terminate the prosecution were similarly tainted with impropriety</u>."  *Id.* at 30 (emphasis added).

*Hector* and the cases upon which it relies thus clearly require that any court must use its own independent judgment as to whether a Rule 48(a) dismissal would be in the public interest and may not simply defer to the prosecutor's discretion.  *See, e.g., United States v. Miller*, 722 F.2d 562, 566 (9th Cir. 1983) ("[Rule 48(a)] requires courts to grant prosecutors leave to dismiss charges unless dismissal is 'clearly contrary to manifest public interest.'") (quoting *Rinaldi*, 434 U.S. at 30).

In *Hector*, the defendant pleaded guilty to both receipt and possession of child pornography.  577 F.3d at 1100.  Almost immediately afterwards, the Ninth Circuit ruled that due to the overlap in the elements of those two crimes, convicting a defendant on both counts would violate double jeopardy.[48]  As a result, the defendant moved to dismiss the receipt count because that count carried a higher base offense level and a statutory mandatory minimum sentence.  577 F.3d at 1100.  Instead of granting the defendant's motion, the trial court left it to

---

[47]   In *Rinaldi,* the public interest was served, *inter alia*, in that the government did not seek (and the Supreme Court did not authorize) dismissal of *all* charges against the defendant, who was presently serving a six-year prison sentence for participating in a robbery plot that violated both state and federal law.  *Id.* at 23-24.  Instead, the government moved to dismiss only the federal indictment against the defendant, leaving the state sentence intact.  *Id.* at 29-30.

[48]   *See United States v. Davenport*, 519 F.3d 940 (9th Cir. 2008).

the prosecutor to determine which one to dismiss. *Id.* at 1100–01. On appeal, the Ninth Circuit reversed, holding that the district court had abused its discretion by deferring to the prosecutor and failing to exercise its own independent judgment, *id.* at 1103, and ordering the district court "to hold a hearing and then to make a discretionary determination as to which conviction should be vacated." *Id.* at 1104.

In other words, the *Hector* rule would indicate *more*—not less—authority for this Court to exercise its independent judgment in determining whether the government's Motion was "tainted with impropriety" and, *a fortiori*, that granting such relief under Rule 48(a) would not be in the public interest. This is, of course, precisely the same "public interest" standard first articulated by the Fifth Circuit in *Cowan*, 524 F.2d at 513, endorsed by the Supreme Court in *Rinaldi*, 434 U.S. at 29–30, and followed in virtually every circuit.[49]

---

[49]    Rule 48(a) "permits courts faced with dismissal motions to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts." *In re Richards*, 213 F.3d 773, 789 (3d Cir. 2000) (collecting cases). Circuit Courts of Appeal have widely acknowledged the *Cowan* public interest standard as defining the boundaries of courts' discretion in Rule 48(a) cases, even where they ultimately determine that dismissal is not clearly contrary to manifest public interest. *Id.* (acknowledging *Cowan* standard but reserving judgment as to adoption because the facts of the case did not require it). *See United States v. Romero*, 360 F.3d 1248, 1253 (10th Cir. 2004) ("Analyzing the matter under Rule 48(a), we are persuaded the district court abused its discretion in denying the motion because dismissal was not clearly contrary to manifest public interest."); *United States v. Martin*, 287 F.3d 609, 623 (7th Cir. 2002) ("[A] prosecutor's motion to dismiss must be granted unless 'clearly contrary to manifest public interest.'" (quoting *United States v. Smith*, 55 F.3d 157, 158–59 (4th Cir. 1995))); *United States v. Rush*, 240 F.3d 729, 731 (8th Cir. 2001) (*per curiam*) ("[T]he district court had to grant the motion [to dismiss] unless dismissal 'would be clearly contrary to manifest public interest, determined by whether the prosecutor's motion . . . was made in bad faith.'" (quoting *United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000))); *United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995) (applying the "clearly contrary to the public interest" standard); *United States v. Pimentel*, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991) ("A court is generally required to grant a prosecutor's Rule 48(a) motion unless dismissal is 'clearly contrary to manifest public interest.'" (quoting *Cowan*, 524 F.2d at 513)); *United States v. Welborn*, 849 F.2d 980, 983 n.2 (5th Cir. 1988) (stating that a district court may deny an uncontested motion to dismiss "when the prosecutor's actions clearly indicate a betrayal of the public interest.") (internal quotation and citation omitted); *United States v. Miller*, 722 F.2d 562, 566 (9th Cir. 1983) ("[Rule 48(a)]

Read charitably, the government's argument to the contrary seems to be that dismissal is always in the public interest when the defendant has consented to a Rule 48(a) motion. *See, e.g.,* Motion at 10–11.  Not so.[50]  <u>Every</u> court to consider this question—including those cited by the government in its Motion—has either reserved on the question or affirmatively concluded that the District Court may deny even an <u>unopposed</u> Rule 48(a) motion if such denial would be "clearly contrary" to the public interest.[51]  To adopt the government's argument here would read out *Rinaldi*'s clear requirement that this Court determine whether the government's Motion is "tainted with impropriety" when such impropriety benefits the defendant.[52]

---

requires courts to grant prosecutors leave to dismiss charges unless dismissal is 'clearly contrary to manifest public interest.'" (quoting *Rinaldi*, 434 U.S. at 30)); *United States v. Del Vecchio*, 707 F.2d 1214, 1216 (11th Cir. 1983) ("A trial court has the discretion to determine whether a prosecutor's decision to terminate a pending prosecution is 'clearly contrary to manifest public interest.'" (quoting *Cowan*, 524 F.2d at 513)).

[50]  In *Rinaldi,* the Supreme Court specifically reserved judgment as to whether the district court has discretion under Rule 48(a) to deny an uncontested motion to dismiss, implicitly endorsing the "public interest" test articulated in *Cowan* and supported by *amicus* here.  *Rinaldi*, 434 U.S. 22, 29 n.15 ("But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." (citing *Cowan*, 524 F.2d at 513; *Ammidown*, 497 F.2d at 620)).  In rejecting the district court's denial of leave, the Supreme Court once again quoted *Cowan*. *Id.* at 30 ("The decision to terminate this prosecution . . . was motivated by considerations which cannot fairly be characterized as 'clearly contrary to manifest public interest.'" (quoting Cowan, 524 F.2d at 513)), leaving the door open for lower courts to continue to consider the public interest in deciding whether to grant or deny leave under Rule 48(a) even in uncontested cases.

[51]  *See supra* note 47 (discussing *Rinaldi*) & note 49 (collecting cases in which courts have denied Rule 48(a) motions to dismiss despite defendant's consent); *see also Gonzalez*, 58 F.3d at 462; *United States v. Garcia-Valenzuela*, 232 F.3d 1003, 1007–08 (9th Cir. 2000); *Welborn*, 849 F.2d at n.2.

[52]  *Rinaldi*, 434 U.S. at 30.

Here, the public has an obvious interest in seeing that justice is served, particularly with respect to criminal defendants who have committed serious crimes,[53] as here.[54]  Indeed, even the authorities cited by the government reaffirm this principle; in those cases, defendants had sentences reduced or additional charges dropped but nevertheless continued to serve at least some time in prison for their crimes.[55]  If the Motion were to be granted, not only would Mr. Flynn go scot-free with no consequences for his crimes, no future prosecutor would ever be able to seek justice against Mr. Flynn.  *See* Motion at 11 (seeking dismissal with prejudice).  This Court can (and should) determine that such a result would be clearly contrary to the public interest in justice and the rule of law.[56]

## II.   The Separation of Powers Argument and Public Policy Rationale Articulated in Dicta in Fokker Strongly Favor Denying the Government's Rule 48(a) Motion

The government's argument is that Rule 48(a) is intended to protect the public from overzealous prosecutorial misconduct, Motion at 11, but not to protect that same public from the equal but opposite harm when a prosecutor seeks to drop charges against a particular defendant for potentially unjust or inappropriate reasons.  *Id.*  In support of this asymmetry, the government

---

[53]   *See Bearden v. Georgia*, 461 U.S. 660, 669 (1983).  *See also Wells v. United States*, 802 A.2d 352, 354 (D.C. Cir. 2002) (citing *Davis v. Moore*, 772 A.2d 204, 220 (D.C. Cir. 2001)).

[54]   *See supra* at 3-4 (discussing severity of Mr. Flynn's crimes).

[55]   *See Rinaldi*, 434 U.S. at 23-24 (defendant to serve six-year prison term on state charges); *In re United States*, 345 F.3d 450, 451-52 (7th Cir. 2003) (defendant to serve sixteen-month prison term for obstruction of justice); *Hector*, 577 F.3d at 1103–04 (requiring district court to choose whether to sentence defendant for receipt or possession of child pornography).  *See also Wayte v. United States*, 470 U.S. 598, 603, 614 (1985) (upholding indictment against claims of selective prosecution); *immediately infra* at Part II (discussing *Fokker*).

[56]   The prosecutor's role in the adversarial court system is to ensure that justice is served. *Strickler v. Greene*, 527 U.S. 263, 281 (1999); *Berger v. United States*, 295 U.S. 78, 88 (1935). Arguably, the government's Motion seeks to abandon that role here.  *See supra* at note 53.

has cited superficially appealing but misleading *dicta* from this Circuit in *United States v. Fokker Servs., B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016) as if it were dispositive in this case.[57]  It is not. Indeed, properly understood, *Fokker* supports <u>denying</u> the government's Motion for at least three reasons.

A.   <u>Separation of Powers, in This Case, Compels Deference to the Judiciary's Power to Sentence Rather Than the Executive Branch's Power to Charge.</u>

The core principle underlying the D.C. Circuit's holding in *Fokker* is the doctrine of separation of powers.  As that court explained, it is well-settled that the executive branch is supreme when it comes to determining *whether* to charge a criminal defendant,[58] whereas the judiciary is supreme when it comes to *sentencing* that defendant after conviction.[59]  In the ordinary course, then, this separation-of-powers principle suggests that the trial court ought to defer to the prosecutor's decision to dismiss an "indictment, information, or complaint" as a corollary of the general principle that charging decisions belong to the prosecutor.[60]

---

[57]   *See* Motion at 10–11 (arguing that "the role of courts for addressing Rule 48(a) motions is 'narrow.'" (quoting *Fokker*, 818 F.3d at 742)).

[58]   *Fokker*, 818 F.3d at 742 ("Those settled principles counsel against interpreting statutes and rules in a manner that would impinge on the Executive's constitutionally rooted primacy over criminal charging decisions. ... The authority to make such determinations remains with the Executive.").

[59]   *Id.* at 745 ("[A] district court's authority to 'accept' or 'reject' a proposed plea agreement under Rule 11 is rooted in the Judiciary's traditional power over criminal *sentencing*.") (emphasis in original).

[60]   This, in turn, explains the result in *Fokker*:  the D.C. Circuit cautioned against a court substituting its judgment for the prosecutor in determining *whether to offer a deferred prosecution agreement* to the defendant in the first place.  *See* 818 F.3d at 743–44 ("As with conventional charging decisions, a DPA's provisions manifest the Executive's consideration of factors such as the strength of the government's evidence, the deterrence value of a prosecution, and the enforcement priorities of an agency, subjects that are ill-suited to substantial judicial oversight.").

Once a defendant has been charged, however, the balance of power shifts to the judiciary—even if the prosecution later changes its mind. *See, e.g., United States v. Flotron*, Case No. 3:17-cr-00220-JAM, 2018 WL 1951117, at *5 (D. Conn. April 25, 2018) (denying Rule 48(a) motion as "clearly contrary to the manifest public interest to allow the Government to break its agreement… so that it may start the prosecution all over again on a blank slate with new charges…."); *United States v. N.V. Nederlandsche Combinatie Voor Chemische Industrie*, 428 F.Supp. 114, 116-17 (S.D.N.Y. 1977) (denying Rule 48(a) motion where government argued that the "prosecution of this indictment would be at great public expense without any certainty of success due to the difficulty in gathering witnesses and the possible frailty of witness' memory" as not in the public interest).

Here, however, the government admits that the balance of power has shifted from the executive to the judiciary because the "complaint has turned into a conviction." Motion at 10. Had this Court utilized its discretion to sentence Mr. Flynn back in August of 2019, it is obvious that the executive could not have filed a Rule 48(a) motion to dismiss in the event that it disagreed with that sentence. To do so would impermissibly allow the executive branch to usurp "the Judiciary's traditional authority over sentencing decisions." *Fokker*, 818 F.3d at 746. *See also United States v. Freedberg*, 724 F. Supp. 851, 856 (D. Utah 1989) ("Rather than the court's [denial of leave under Rule 48(a)] constituting a usurpation of the Executive power and interference with *prosecutorial* discretion as urged in the Joint Motion, in this court's view the narrow interpretation of 'leave of court' as advocated in the Joint Motion and applied in this case would constitute violation of principles of separation of powers because of interference with *judicial* discretion.") (emphasis in original). Obviously, the government did not disclose

at that time that it might later seek to undo its prosecution of Mr. Flynn, and neither this Court

nor any party had any reason to suspect such a bizarre turn of events.

It is not remotely plausible to view this Court's 2019 deferral as somehow "handing off"

this Court's primary authority over sentencing to the executive branch.  To adopt the rule urged

by the government would not only penalize *this* Court for demonstrating mercy in 2019,[61] it

would create a perverse incentive for all future judges to prefer immediate sentencing over

deferrals, denying defendants who actually cooperate with the government the time and latitude

to render additional cooperation and assistance pursuant to their plea deals.  To do so would run

contrary to the very separation-of-powers rationale so clearly articulated by the D.C. Circuit and

thereby reach an absurd result:  that the government <u>could not</u> have filed a Rule 48(a) motion

back in August of 2019, but somehow <u>can</u> now that nearly a year has passed.

B. <u>Deferred Prosecution Agreements, by Their Nature, Incorporate the Same Concern for</u>
<u>the Public Interest Required by Rule 48(a)</u>.

*Fokker*, as this Court is well aware, was not a Rule 48(a) case, but rather one that

involved an (arguably) analogous provision regarding the application of the Speedy Trial Act,

18 U.S.C. § 3161(h)(2), to deferred prosecution agreements.[62]  Deferred prosecution agreements

by their very nature incorporate precisely the kind of concern for the public interest *amicus* urges

here.  In a deferred prosecution agreement, the government brings charges against a defendant

but defers prosecution while the defendant complies with certain conditions.[63]  If the defendant

fulfills those conditions, the government agrees to drop the charges; if not, the defendant is

---

[61]   *See supra* note 15 and accompanying text (discussing this Court's rationale for delaying sentencing in 2019).

[62]   *Fokker*, 818 F.3d at 739.

[63]   *Id*. at 737.

prosecuted.[64]   In other words, "the entire object of a DPA is to enable the defendant to *avoid* criminal conviction and sentence by demonstrating good conduct and compliance with the law."[65]

That is far more protection of the public than the government urges in this case.  Indeed, in *Fokker*, the company defendant was required to abide by the terms of its deferred prosecution agreement, which included paying twenty-one million dollars in fines, cooperating with the government, and implementing a new compliance policy.[66]  Here, by contrast, the uncontested evidence introduced by the government itself is that Mr. Flynn failed to render substantial assistance and did not cooperate with the government in its prosecution of Bijan Rafiekian (or any other matter).[67]

---

[64]   *Id*.

[65]   *Id.* at 746.  That also implicates the separation of powers argument advanced *supra* Part II.A.  As the *Fokker* court concluded, in a DPA, unlike a plea deal as here, the "court never exercises its coercive power by entering a judgment of conviction or imposing a sentence."  *Id.*

[66]   *Id.* at 739.

[67]   *See supra* at 3-4 & notes 16-28 and accompanying text.  Notwithstanding Mr. Flynn's counterproductive involvement in the prosecution of his business partner, Bijan Rafiekian, the government continues to pursue charges against him.  Reply Br. of the United States at 25, 27–30, *United States v. Rafiekian*, No. 19-4803 (4th Cir. June 7, 2020).  That filing references Mr. Flynn ten times, heavily implying that Mr. Flynn is a co-conspirator in violating the Foreign Agents Registration Act.  *See id.* at 32 ("Instead, defendant argues that the district court should have instructed the jury not on law but on a specific fact: that Michael Flynn was not part of any conspiracy.  That argument is unsustainable."); *id.* at 34 ("Defendant argued that this evidence showed he was not a part of any relationship between Flynn and Turkey.  The government's rebuttal… was that the exhibit did not show what defendant claimed it did.").  One wonders how the government can maintain in this Court that Mr. Flynn should not be prosecuted at all while arguing in the Fourth Circuit that he conspired with Mr. Rafiekian to violate U.S. law.

C.   The D.C. Circuit's "No Power" *Dicta* in *Fokker* Should Not Be Read Literally.

Finally, the government also summarizes the *dicta* from *Fokker* as suggesting that this Court should not "second-guess" the government's decision to dismiss charges at this late date. Motion at 11.  This reliance is misplaced; a careful evaluation of the D.C. Circuit's summary of Rule 48(a) in *Fokker* suggests that is not the actual rule that court would have adopted had it been carefully analyzing and actually applying Rule 48(a) in a case such as this.

*Fokker*'s discussion of Rule 48(a) begins with *Rinaldi* and correctly recognizes that the "principal" object of Rule 48(a) is "to protect a defendant against prosecutorial harassment,"[68] and that a federal court "reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment.'"[69]  So far, so good.  Unfortunately, the court in *Fokker* then somewhat aggressively summarizes those quotations from *Rinaldi* as implying that the Supreme Court has determined that Rule 48(a) gives "no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges" when the defendant consents,[70] which elides the very distinction between a "primary" or "principal" role on the one hand, and a sole or exclusive role on the other.[71]  Neither *Rinaldi* nor any case in this Circuit stand for the latter.[72]

---

[68]    *Fokker*, 818 F.3d at 742 (emphasis added) (citing *Rinaldi*, 434 U.S. at 29 n.15) (cited in Motion at 10).  Note that the *Fokker* court's citation to footnote 15 from *Rinaldi* also omitted the last sentence of that footnote, which supports *amicus's* claim that this Court retains discretion to deny a Rule 48(a) motion to dismiss even when the defendant consents.  *See supra* note 50 (discussing *Rinaldi*).

[69]    *Id.* (emphasis added).

[70]    *Id.* (emphasis added).

[71]    Obviously, *amicus* recognizes that this is an atypical—even unique—case.  *See supra* at 8.

[72]    *See supra* at Part I.B & notes 49-51.

Thus, while Rule 48(a) is indeed *primarily* concerned with protecting a defendant from overzealous prosecutorial misconduct,[73] it also reserves to the judiciary the authority to protect the public from prosecutorial misconduct we might term "underzealous"—such as where a motion to dismiss is brought because the prosecutor "appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial."  *In re Richards*, 213 F.3d 773, 787 (3d Cir. 2000) (citing *United States v. Hamm*, 659 F.2d 624, 630 (5th Cir. 1981)). This Court's own Brief to the D.C. Circuit strongly suggests that this Court may sensibly suspect such misconduct here, noting of the government's Motion that:

> It was signed by the Acting U.S. Attorney alone, with no line prosecutors joining; it featured no affidavits or declarations supporting its many new factual allegations; it was not accompanied by a motion to vacate the government's prior, contrary filings and representations; it cited minimal legal authority in support of its view on materiality; and it did not mention the March 2017 statements regarding Mr. Flynn's work for Turkey that were relevant conduct for his guilty plea and included in his statement of offense, but were unrelated to his January 2017 FBI interview.[74]

Ultimately, it is up to this Court, in its sole discretion, to determine whether the "unusual" circumstances of the government's Motion, in addition to other facts, support an inference of partiality on behalf of a former Trump official by the Trump Department of Justice.  *Fokker* does not foreclose on this Court doing precisely that.[75]

---

[73]  *But see* Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan. L. Rev. Online (forthcoming 2020), available at https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3599674 (May 13, 2020) (arguing that "the 'principal object' of Rule 48(a)'s 'leave of court' requirement was not to protect the interests of individual defendants, but rather to guard against dubious dismissals of criminal cases that would benefit powerful and well-connected defendants.") (emphasis added).

[74]  Br. for Judge Emmet G. Sullivan in Response to May 21, 2020 Order at 28, *In re Flynn*, No. 20-5143 (D.C. Cir. June 1, 2020).

[75]  *See supra* note 37.

## CONCLUSION

The Government's motion should be denied, or, in the alternative, held *sub curia* pending

additional fact-finding.


Respectfully submitted,



_____/s/_____
P. Andrew Torrez
  D.C. Bar No. 468918
Morgan L. Stringer
  D.C. Bar No. 1617428
THE LAW OFFICES OF P. ANDREW TORREZ,
  LLC
28 E. Susquehanna Ave., Suite 206
Towson, Maryland 21286
Phone: (240) 230-7309
email:  patorrez@patorrez.com

*Counsel for Amicus Curiae*
*Opening Arguments Media, LLC*



Dated:  June 9, 2020