# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 17-cr-00232-EGS |
| MICHAEL T. FLYNN, | ) | |
| | ) | |
| Defendant. | ) | |

BRIEF *AMICUS CURIAE* OF
CITIZENS UNITED,
CITIZENS UNITED FOUNDATION, AND
THE PRESIDENTIAL COALITION, LLC
IN SUPPORT OF MOTION TO DISMISS

Jeremiah L. Morgan (D.C. Bar No. 1012943)
William J. Olson (D.C. Bar No. 233833)
Herbert W. Titus
Robert J. Olson (D.C. Bar No. 1029318)
  William J. Olson, P.C.
  370 Maple Ave. W., Ste. 4
  Vienna, VA  22180-5615
  (703) 356-5070
  wjo@mindspring.com
Counsel for *Amici Curiae*

Dated:  June 10, 2020

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

INTEREST OF THE *AMICI CURIAE* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE RELATING TO THE PLEA AGREEMENT . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT

I.      THE GOVERNMENT PROVIDED MORE THAN ADEQUATE REASONS TO DISMISS THE
        CRIMINAL INFORMATION AGAINST GENERAL FLYNN . . . . . . . . . . . . . . . . . . . . . . 5

II.     RULE 42 DOES NOT AUTHORIZE THE DISTRICT COURT TO CONDUCT A
        PRELIMINARY INQUIRY INTO CRIMINAL CONTEMPT . . . . . . . . . . . . . . . . . . . . . . . 9

III.    THE DISTRICT JUDGE HAS DEMONSTRATED PREJUDICE AGAINST GENERAL
        FLYNN . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

        A.      The District Judge's Order Directing an Inquiry into Both Criminal
                Contempt and Perjury Demonstrated Hostility and Prejudice to General
                Flynn . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        B.      The District Judge's Order Evinced a Hostile and Unjudicial Attitude
                toward General Flynn at His First Sentencing Hearing . . . . . . . . . . . . . . 15

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

ii

# TABLE OF AUTHORITIES

Page

**STATUTES**

18 U.S.C. § 401. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
18 U.S.C. § 1001. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
18 U.S.C. § 2381. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
28 U.S.C. § 455. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

**CASES**

Ex parte Hudgings, 249 U.S. 378 (1919). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
Rinaldi v. United States, 434 U.S. 22 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
United States v. Ammidown, 497 F.2d 615 (D.C. Cir. 1973) . . . . . . . . . . . . . . . . 5
United States v. Fokker Services, 818 F.3d 733 (D.C. Cir. 2016) . . . . . . . . . . . . . 5
United States v. Garcia-Valenzuela, 232 F.3d 1003 (9th Cir. 2000) . . . . . . . . . . . . 6
United States v. Hamm, 659 F.3d 624 (5th Cir. 1981) . . . . . . . . . . . . . . . . . . . . 8
United States v. Smith, 55 F.3d 157 (4th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 8
Young v. United States ex rel. Vuitton Et Fils S.A., 481 U.S. 787 (1987) . . . . . . . 9, 10, 11

**MISCELLANEOUS**

A. Blake, "Nobody did more damage to Robert Mueller than Peter Strzok,"
   *Washington Post* (Aug. 13, 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
M. Cleveland, "New Flynn Transcripts Confirm Mueller Team Lied to the Court
   and the Country," *The Federalist* (June 1, 2020) . . . . . . . . . . . . . . . . . . . . . 15
M. Dowling, "Flynn's alleged lie to Pence was based on only a summary by the
   people who framed him," *Independent Sentinel* (May 17, 2020) . . . . . . . . . . . . . 18
T.W. Frampton, "Why Do Rule 48(a) Dismissals Require 'Leave of Court'?,
   73 STAN. L. REV. ONLINE (forthcoming 2020) . . . . . . . . . . . . . . . . . . . . . . . . . 6
J. Gleeson, D. O'Neil, and M. Miller, "The Flynn case isn't over until the judge
   says it's over," *Washington Post* (May 11, 2020) . . . . . . . . . . . . . . . . . . . . . 12
L.M. Gordon, "Here's Why Judge Sullivan Can't Legally Punish Michael Flynn
   for 'Perjury,'" *The Federalist* (May 18, 2020) . . . . . . . . . . . . . . . . . . . . . . . 13
T. Hains, "Comey: 'I Sent' FBI Agents Into WH, Wouldn't Have Gotten Away
   With It In A "More Organized Administration,'" *RealClearPolitics.com*
   (April 30, 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
M. Hemingway, "REVEALED: Peter Strzok Had Personal Relationship With
   Recused Judge In Michael Flynn Case," *The Federalist* (Mar. 16, 2018) . . . . . . 3, 4
A. Kozinski, Criminal Law 2.0, 44 GEO. L.J. ANN. REV. CRIM. PROC. iii (2015) . . . . . . . 7
L. O'Connor, "Why was Judge recused from Mueller/Flynn case?" *Washington Times*
   (Jan. 31, 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
M. Phillips. "Pence says he's now 'inclined' to believe Flynn didn't intentionally
   mislead him about Russian ambassador," *Fox News* (Apr. 30, 2020) . . . . . . . . . . 18
G. Re, "FBI discussed interviewing Michael Flynn 'to get him to lie' and 'get
   him fired,' handwritten notes show," *Fox News* (April 29, 2020) . . . . . . . . . . 16, 17

## INTEREST OF THE *AMICI CURIAE*[1]

*Amicus curiae* Citizens United is a not-for-profit organization which is exempt from federal income taxation under section 501(c)(4) of the Internal Revenue Code ("IRC"). *Amicus curiae* Citizens United Foundation is a not-for-profit organization which is exempt from federal income taxation under IRC section 501(c)(3).  *Amicus curiae* The Presidential Coalition, LLC is a political committee under IRC section 527.  Each organization participates in the public policy process and has an interest in the proper administration of justice and the rule of law, and have filed many *amicus* briefs on important constitutional and statutory issues.

## STATEMENT OF THE CASE
## RELATING TO THE PLEA AGREEMENT

On November 30, 2017, the Special Counsel's Office of the U.S. Department of Justice sent a letter to lawyers for General Flynn containing a "plea offer" which, if signed, would constitute a "plea agreement."  To that document were appended a draft Information and Statement of the Offense, prepared by the Office of the Special Counsel, to be filed in district court.

Under that agreement, General Flynn agreed to plead guilty to a "Criminal Information … charging [General Flynn] with making false statements to the Federal Bureau of Investigation in violation of 18 U.S.C. § 1001."  That document was signed by General Flynn and his prior counsel.  The substance of the offense was set out in the "Information," consisting of one count of "[o]n or about January 24, 2017," making "materially false,

---

[1]  No party's counsel authored the brief in whole or in part.  No party or party's counsel contributed money that was intended to fund preparing or submitting the brief.  No person other than these *amici curiae*, their members or their counsel contributed money that was intended to fund preparing or submitting this brief.

2

fictitious, and fraudulent statements and representations…."  That document was filed in this

court on November 30, 2017.

The substance of that plea was set out in a "Statement of the Offense," which also was

filed with this court on that same day by the Special Counsel's Office pursuant to Rule 11 of

the Federal Rules of Criminal Procedure stating that General Flynn.

> made **materially** false statements and omissions during an interview with the
> Federal Bureau of Investigation ("FBI") on January 24, 2017, in Washington,
> D.C.  At the time of the interview, the FBI had an open investigation into the
> Government of Russia's ("Russia") efforts to interfere in the 2016 presidential
> election…. [which] impeded and otherwise had a material impact on the FBI's
> ongoing investigation into the existence of any links or coordination between
> individuals associated with the Campaign and Russia's efforts to interfere with
> the 2016 presidential election.  [Statement of the Offense at ¶¶ 1-2 (emphasis
> added).]

This Statement of the Offense was signed and filed by attorneys in the Special Counsel's

Office.  General Flynn filed an "Acceptance" of the Statement, which recites that "I am, in

fact, guilty of the crime charged.  No threats have been made to me…."  General Flynn's prior

counsel signed an "Acknowledgment" stating "I concur in my client's desire to adopt and

stipulate to this Statement of the Offense as true and accurate."

This plea was accepted at a hearing on December 1, 2017 before Judge Rudolph

Contreras.  Soon after this hearing, on December 7, 2017, Judge Contreras "was recused"

from the case, and it was reassigned to Judge Emmet G. Sullivan.  No reason was given by the

Court for the reassignment.  However, there have been numerous press reports that the Court

Order's use of the phrase "was recused" rather than "recused himself" was significant, as a

judge who "'was recused' … suggests that [Judge] Contreras was told to recuse himself rather

than the judge voluntarily stepping away from the case based on his own concern for a conflict of interest."[2]

It was not until messages between senior FBI counterintelligence official Peter Strzok[3] and FBI lawyer Lisa Page were revealed, and from those texts it was learned that Judge Contreras had a personal relationship with Peter Strzok — one of the two FBI agents who interviewed Michael Flynn — and possibly with Lisa Page:

> In the messages, Page and Strzok, who are rumored to have been engaged in an illicit romantic affair, discussed Strzok's personal friendship with Contreras and how to leverage that relationship in ongoing counterintelligence matters.
> "[Judge] Rudy [Contreras] is on the [Foreign Intelligence Surveillance Court]!" Page excitedly texted Strzok on July 25, 2016. "Did you know that? Just appointed two months ago."
> "I did," Strzok responded. "I need to get together with him."
> "[He] said he'd gotten on a month or two ago at a graduation party we were both at."
> [M. Hemingway, "REVEALED: Peter Strzok Had Personal Relationship With Recused Judge In Michael Flynn Case," *The Federalist* (Mar. 16, 2018).]

The texts reveal a plan to arrange a "get together" with "Rudy" in a manner that could allow Judge Contreras to continue to preside over prosecutions involving Strzok.

> The pair even schemed about how to set up a cocktail or dinner party just so Contreras, Strzok, and Page could speak **without arousing suspicion that they were colluding**. Strzok expressed concern that **a one-on-one meeting between the two men might require Contreras' recusal** from matters in which Strzok was involved.

---

[2] L. O'Connor, "Why was Judge recused from Mueller/Flynn case?" *Washington Times* (Jan. 31, 2018).

[3] Peter Strzok was initially removed from the staff of Special Counsel Robert Mueller, and later fired from the FBI. *See, e.g.,* A. Blake, "Nobody did more damage to Robert Mueller than Peter Strzok," *Washington Post* (Aug. 13, 2018).

4

"[REDACTED] suggested a social setting with others would probably be better than a one on one meeting," Strzok told Page. "I'm sorry, I'm just going to have to invite you to that cocktail party."
"Have to come up with some other work people cover for action," Strzok added.
"Why more?" Page responded. "Six is a perfectly fine dinner party."
[*Id.* (emphasis added).]

On December 1, 2017, Judge Contreras conducted a plea hearing, at which he explained: "I have to determine at the end whether you have given up those rights knowingly, voluntarily, and with the advice of your counsel." Tr., Doc. 16 (Dec. 1, 2017), at 3, ll. 10-12.  Although the charge brought against General Flynn was for violation of 18 U.S.C. § 1001[4] which requires the element of materiality, Judge Contreras ignored that element in his questioning.  Twice Judge Contreras described General Flynn as being charged with "making false statements"; on neither occasion that Judge Contreras described the charge did he use the word "material."  Tr. at 13, ll. 10-14, 20, ll. 16-20.

Additionally, when Judge Contreras asked General Flynn about the issue of coercion, he made it personal to the defendant: "Has anyone forced, threatened, or coerced **you** in any way into entering this plea of guilty?"  Tr. at 29, ll. 11-12 (emphasis added).  This question could easily be understood to apply only to threats against General Flynn, and not his son, which threats subsequently have been described in court filings.  *See* Petition for Mandamus, U.S. Court of Appeals (D.C. Circuit) at 3, n.1 and 27.

---

[4] 18 U.S.C. § 1001 applies to knowing and willful actions which "(1) falsifies, conceals, or covers up by any trick, scheme, or device a **material** fact; (2) makes any **materially** false, fictitious, or fraudulent statement or representation; or (3) makes or uses any false writing or document knowing the same to contain any **materially** false, fictitious, or fraudulent statement or entry…."  (Emphasis added.)

5

## ARGUMENT

**I.     THE GOVERNMENT PROVIDED MORE THAN ADEQUATE REASONS TO DISMISS THE CRIMINAL INFORMATION AGAINST GENERAL FLYNN.**

The district judge's order appointing *amicus curiae* instructed him to "present arguments in opposition to the government's Motion to Dismiss…."  Rule 48(a), F. R. Crim. Proc., requires "leave of court" when the government decides to dismiss criminal charges. The issue here is whether a district court has the latitude to reject the government's motion to dismiss a case with prejudice where dismissal has been agreed to by the parties.

This Court's Response to the Petition for Writ of Mandamus in the D.C. Circuit explained that the two closest D.C. Circuit decisions are United States v. Fokker Services, 818 F.3d 733 (D.C. Cir. 2016) and United States v. Ammidown, 497 F.2d 615 (D.C. Cir. 1973), but neither of those decisions are directly on point, making this a matter of first impression in this Circuit.  *See* Judge Sullivan Mandamus Response at 25-26 ("*Fokker*'s and *Ammidown*'s analyses of plea considerations do not squarely address the separation of powers balance in this context.").

The Supreme Court has explained that the purpose of the Rule 48(a) "leave-of-court" requirement is "to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection."  Rinaldi v. United States, 434 U.S. 22, 29 n.15 (1977).  There clearly can be no need for the court to protect a defendant's interests when the prosecution has decided to dismiss a case with prejudice, as here.

6

The Ninth Circuit directly addressed the issue, explaining that "Where a defendant consents to the government's move to dismiss, it is not clear that the district court has any discretion to deny the government's motion." United States v. Garcia-Valenzuela, 232 F.3d 1003, 1008 (9th Cir. 2000).  Whether or not that was the original intention when the leave-of-court requirement was implemented,[5] the protection of the defendant has been understood to be the primary purpose and effect of the requirement.[6]

Recent filings reveal a plan by the district judge to set a higher bar for allowing the government to dismiss an indictment than for accepting a guilty plea under Rule 11(b)(3) which requires that "Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea."  In accordance with that rule, Judge Contreras made that determination from a short criminal Information, a Statement of the Offense, and the prosecutor's summary of facts at the plea hearing followed by the concurrence of a criminal defendant.  Tr. 12, l. 24 – 18, l. 7.  *See* Statement of Facts, *supra*.  Judge Contreras found this presentation sufficient to support the guilty plea.  However, to justify withholding "leave of court," Judge Sullivan recently complained to the Court of Appeals that the government's detailed 20-page Motion to Dismiss "featured no affidavits or declarations supporting its many new factual allegations," seeking to call into question the presumption of regularity afforded

---

[5]  *See* T.W. Frampton, "Why Do Rule 48(a) Dismissals Require 'Leave of Court'?", 73 STAN. L. REV. ONLINE (forthcoming 2020).

[6]  The Ninth Circuit differentiated plea considerations against a motion to dismiss, noting that "[w]e have recognized that a court's power to deny a prosecutor's **motion to dismiss** under Fed. R. Crim. P. 48(a) is **more limited** than its discretion under Fed. R. Crim. P. 11(e)(2) to reject a **plea bargain** that includes dismissal of a charge."  *Id.* at 1007, n.4.

Rule 48 motions.  *See* Judge Sullivan's Response to the Petition for Writ of Mandamus,

Section II.  The district judge's criticism completely ignored the many exhibits filed with the

government's Motion to Dismiss which not only supported the factual allegations in the

motion, but which also demonstrated serious wrongdoing on the part of certain high-level

individuals at the FBI.

To be sure, General Flynn affirmed the statement of the offense that was part of his

plea agreement, but it would be a mistake to view those admissions for purpose of a plea

bargain as though they were made to deceive the court or to obstruct justice.  Rather, such

admissions routinely are made to accept responsibility and to facilitate the administration of

justice.  The district judge is a 26-year veteran of the district court bench and should not be

shocked that a defendant is generally in no position to demand changes to a plea offer tendered

by prosecutors and must accept the government's "facts" even if he has a very different

reading of those facts.  As a former Ninth Circuit judge explained about the typical myth that

"guilty pleas are conclusive proof of guilt":

> Many people, including judges, take comfort in knowing that an overwhelming
> number of criminal cases are resolved by **guilty plea** rather than trial.
> Whatever imperfections there may be in the trial and criminal charging process,
> they believe, are washed away by the fact that the defendant ultimately **consents
> to a conviction**....  And, of course, if the trial process is perceived as highly
> uncertain, or even stacked in favor of the prosecution, the **incentive to plead
> guilty to some charge** that will allow the defendant to **salvage a portion of his
> life**, becomes immense.  If the prosecution offers a **take-it-or-leave-it plea
> bargain** before disclosing exculpatory evidence, the defendant may cave to the
> pressure, throwing away a good chance of an acquittal.  [A. Kozinski, Criminal
> Law 2.0, 44 GEO. L.J. ANN. REV. CRIM. PROC. iii, xi-xii (2015) (emphasis
> added).]

8

In other words, the guilty plea certainly does not provide the basis for this court to call into

question the presumption of regularity that attaches to the Government's Motion to Dismiss.

In conclusion, there is no "burden of proof" for the government to meet with respect to

a Rule 48(a) motion to dismiss.  The judge's role in considering that motion is narrowly

focused.  In a case involving a post-plea Rule 48(a) motion, the Fourth Circuit explained:

> Fair and efficient administration of the criminal laws by the Executive Branch
> and punishment of the guilty by the Judicial Branch are both in the public
> interest.  Nevertheless, balancing these considerations to determine which
> interest prevails does not govern the disposition of the prosecutor's motion to
> dismiss an indictment.  Weighing these interests does not give adequate
> recognition to the Executive in the context of the Separation of Powers Doctrine
> as it exercises its duty in good faith to take care that the laws are faithfully
> executed....  A substantial, reasonable doubt about the guilt of a defendant that
> arose after conviction is evidence of good faith.  Denial of a motion based on
> this reason is error, because it is the duty of the United States Attorney "not
> simply to prosecute but to do justice." *United States v. Webber*, 771 F.2d 266,
> 268 (9th Cir. 1983).  [United States v. Smith, 55 F.3d 157, 160 (4th Cir. 1995).]

Finally, as the Fifth Circuit noted, "If [*United States v. Ammidown*, 497 F.2d 615 (D.C. Cir.

1973)] is read to place the burden on the prosecutor to prove that dismissal is in the public

interest, however, then it is contrary to our rule enunciated in *Cowan* and to the Supreme

Court's holding in *Rinaldi*."  United States v. Hamm, 659 F.2d 624, 631 n.23 (5th Cir. 1981)

(*en banc*).

The Court should bring to an end the continuing injustice that this case has caused,

acknowledge the public interest that the government's Motion to Dismiss serves, and grant the

government's motion.

## II.   RULE 42 DOES NOT AUTHORIZE THE DISTRICT COURT TO CONDUCT A PRELIMINARY INQUIRY INTO CRIMINAL CONTEMPT.

The district judge's order of May 13, 2020 directs the appointed *amicus* to advise the court on whether General Flynn "should not be held in criminal contempt...."  In so doing, the district judge is not following any known procedure with respect to contempt.

Rule 42, F. R. Crim. Proc., sets out the procedures that must be followed to bring criminal contempt charges.  Other than with respect to a summary disposition (governed by subsection (b) and not applicable here), a person can only be held in criminal contempt "after prosecution on notice."  Rule 42(a).  Rule 42(a)(1) specifies how notice is to be provided to the defendant and the information that notice must contain.

After an order to show cause or an arrest order, "The court must request that the contempt be prosecuted by an **attorney for the government**, unless the **interest of justice** requires the appointment of another attorney.  If the government declines the request, the court must appoint another attorney to prosecute the contempt."  Rule 42(a)(2) (emphasis added).

Here, the district judge is operating completely outside of the parameters of Rule 42. He has not asked the Department of Justice to investigate and prosecute the matter.[7]  He appointed an outside *amicus* attorney, without any finding regarding why the "interest of justice" requires it.  Moreover, the purpose of the appointment of a former federal district court judge, John Gleeson, is not to prosecute a properly noticed criminal contempt, but to

---

[7]  This Court's Response to the Petition for Writ of Mandamus inaccurately claims "the Federal Rules explicitly authorize the appointment of a special prosecutor to investigate contempt."  *See* Sullivan Response at 35 n.7.  Both <u>Young</u>, *infra*, and Rule 42(a)(2) authorize appointment of a special prosecutor for the purpose of **prosecuting**, not **investigating**, a purported criminal contempt.

10

address a preliminary issue: "whether the Court should issue an Order to Show Cause why Mr. Flynn should not be held in criminal contempt…." Order appointing *Amicus Curiae* (May 13, 2020). As the district judge explained to the Court of Appeals, it did "not appoint Judge Gleeson to prosecute any contempt charge, but merely to address whether initiating a contempt proceeding here would be appropriate…." Sullivan Response to Mandamus at 35 n.7.

Presumably, if the district judge had been proceeding under Rule 42 and had reason to issue a show cause order, then he would have issued that show cause order himself, and then would have "request[ed] that the contempt be prosecuted by an attorney for the government." In appointing an *amicus*, the judge has shown that he does not really believe he had witnessed contemptuous behavior in front of him; and has not reached a conclusion regarding probable cause, but only believes that the matter should be investigated. The district judge here assumed a new role for the court and its *amicus*: investigator and prosecutor — thereby violating basic separation of powers principles. As Justice Scalia explained in his concurring opinion in the seminal case on Rule 42, judges have no such powers:

> The judicial power is the power to decide, in accordance with law, who should prevail in a case or controversy. See Art. III, § 2. That includes the power to serve as a neutral adjudicator in a criminal case, but does not include the power to seek out law violators in order to punish them — which would be quite incompatible with the task of neutral adjudication…. [T]he holding of *Hudson* was against the existence of broad inherent powers in the federal courts… It made no mention of the enforcement of judgments, much less of an investigative or prosecutory authority. [Young v. United States ex rel. Vuitton Et Fils S.A., 481 U.S. 787, 816, 819-20 (1987) (Scalia, J., concurring).]

11

The procedure now being employed by the district judge is wholly outside the procedure set forth in Rule 42, constituting a misuse of this Court's inherent judicial power to punish contempt.[8]

Regardless of what Mr. Gleeson's recommendation may be regarding criminal contempt (due to be filed on the same date and time as this *amicus* brief), this Court should rescind the portion of its order to Mr. Gleeson to address criminal contempt and strike any portion of Mr. Gleeson's *amicus* brief responding to that portion of the district court's order.

## III.   THE DISTRICT JUDGE HAS DEMONSTRATED PREJUDICE AGAINST GENERAL FLYNN.

On two different occasions, the district judge demonstrated hostility to General Flynn evidencing prejudice sufficient to require his recusal.  The district judge who accepted the guilty plea "was recused" from the case.  *See* Statement of Facts, *supra*.  The prejudice demonstrated below is more than sufficient to require the district judge to recuse, or to be recused, from this case.  *See* 28 U.S.C. § 455(b)(1) ("Any … judge … shall also disqualify himself in the following circumstances: (1) Where he has a **personal bias or prejudice** concerning a party….") (emphasis added).

---

[8]  The district judge decided to appoint as an *amicus* someone who would be prohibited from acting as a special prosecutor for a contempt action.  Mr. Gleeson had previously written an op-ed demonstrating how he pre-judged the issue.  Thus, his appointment as an *amicus* circumvents recognized limitations on the appointment of a special prosecutor who must be disinterested:  "A private attorney appointed to prosecute a criminal contempt therefore certainly should be as disinterested as a public prosecutor who undertakes such a prosecution." Young at 804.

12

**A.**   **The District Judge's Order Directing an Inquiry into Both Criminal Contempt and Perjury Demonstrated Hostility and Prejudice to General Flynn.**

Rather than rule on the government's Motion to Dismiss and General Flynn's related motion to withdraw his pending motions, or either of General Flynn's other two pending motions, the district judge issued a Minute Order on May 12, 2020 allowing for "individuals and organizations" to "seek leave of the Court to file amicus curiae briefs...."  The following day (May 13, 2020), the district judge enlisted retired district judge John Gleeson[9] to serve as *amicus curiae* "to present arguments in opposition to the government's Motion to Dismiss." *See* Order Appointing *Amicus Curiae*, Doc. 205.  Apparently, the district judge believed that he had authority to supervise the government's exercise of its authority to dismiss charges under Rule 48, he sought the assistance of this retired judge to provide him with arguments on which he could rely to deny the government's pending motion to dismiss.

However, the district judge's May 13, 2020 order did not end there — it assigned the *amicus* an additional task, to address "whether the Court should issue an Order to Show Cause why Mr. Flynn should not be held in criminal contempt for perjury pursuant to 18 U.S.C.

---

[9]  It is obvious that Mr. Gleeson was not selected by the district judge for his opinion or judgment, but for his advocacy.  Mr. Gleeson had, in a sense, pre-qualified himself for the job by publishing in the *Washington Post* an attack on the Department of Justice's Motion to Dismiss only two days before he was appointed.  J. Gleeson, D. O'Neil, and M. Miller, "The Flynn case isn't over until the judge says it's over," *Washington Post* (May 11, 2020).  Thus, he was charged to "present arguments in opposition to the government's motion to dismiss."

13

§ 401, Federal Rule of Criminal Procedure 42, the Court's inherent authority, and any other applicable statutes, rules, or controlling law."[10]

This *amicus* brief does not address in depth the merits of the "criminal contempt for perjury" issue raised by the district judge, except to discern what it reveals about that judge. The contempt statute cited addresses "misbehavior" that obstructs justice, with the criminal contempt rule cited establishing the applicable procedure.[11]   However, neither the statute nor the rule cited involves perjury.   An Internet search for the phrase "criminal contempt for perjury" reveals that outside of the district judge's order with respect to General Flynn in this case, it is an unusual configuration of terms.   Indeed, the use of criminal contempt to punish perjury in tendering a plea would appear to violate the "controlling law" that Mr. Gleeson was to address.   *See* Ex parte Hudgings, 249 U.S. 378 (1919), requiring that a court not use its contempt power to punish supposed perjury in the absence of an obstructive effect.[12]

Particularly in view of his earlier harsh and intemperate comments at a sentencing hearing, discussed in section III. B, *infra*, the district judge appeared to be upset that General Flynn previously had pleaded guilty to a charge that he was now not only resisting, but also

---

[10]   The district judge did not seek input from his appointed *amicus* on any of the other pending motions:  (i) General Flynn's  motion to withdraw the plea (Doc. 151); (ii) General Flynn's Motion to Dismiss for Egregious Government Misconduct and in the Interest of Justice (Doc. 162); (iii) the Government's  Motion to Dismiss (Doc. 198); and (iv) General Flynn's "Motion to Withdraw Pending Motions" (Doc. 199).

[11]   18 U.S.C. § 401: "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as — (1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice…."

[12]   *See generally* L.M. Gordon, "Here's Why Judge Sullivan Can't Legally Punish Michael Flynn for 'Perjury,'" *The Federalist* (May 18, 2020).

seeking to withdraw.  Indeed, the district judge refused to rule on any of the pending motions:

(i) General Flynn's  motion to withdraw the plea (Doc. 151); (ii) General Flynn's Motion to

Dismiss for Egregious Government Misconduct and in the Interest of Justice (Doc. 162);

(iii) the Government's Motion to Dismiss (Doc. 198); and (iv) General Flynn's "Motion to

Withdraw Pending Motions" (Doc. 199).  Instead, the district judge chose to open up not one,

but two new frontiers in the litigation that was sought by neither government nor defendant —

contempt and perjury.

If the district judge believed that perjury had been committed, he could have simply

referred the matter to the Justice Department for investigation and prosecution, but he did not.

The judge must have had a reason to keep the perjury issue before him.  Could it be that the

district judge had no confidence that the Department of Justice would pursue perjury charges?

As to the use of the contempt poser, the record is devoid of any behavior that could be

contemptuous of the authority of the district judge.  Where was the contempt?

Indeed, if the district judge actually believed that in agreeing to the plea agreement and

in pleading guilty in open court that General Flynn may have committed perjury, then why

would he have not been even more concerned about the identical statements made by all the

lawyers for the Office of the Special Counsel and General Flynn's previous counsel who

wrote, signed, and filed that very same plea agreement.  The lawyers involved were

experienced criminal lawyers, and are officers of the Court who ordinarily are held to a higher

standard of conduct.  The district judge's exclusive focus on General Flynn while disregarding

the representations to the Court made by counsel evidences hostility to General Flynn.

15

Moreover, as more is revealed about the substance of the supposed crime, there is further reason to believe that the "false statement" allegedly made by General Flynn was not at all what the government alleged it to be:  that General Flynn allegedly made the false statement that he did not discuss sanctions imposed on Russia by Executive Order 13757 in his telephone calls with Ambassador Kislyak.  Rather, from the declassified transcripts, it can now be understood that General Flynn was not addressing President Obama's sanctions on Russia, but rather was addressing the expulsion of American diplomats in response to the expulsion of Russian diplomats, urging that cooler heads prevail.  However, even assuming, *arguendo*, that there was a false statement, General Flynn had no way to know if his met the "materiality" requirement of the statute, and now, after review, the government admits that it did not.  *See* Government's Motion to Dismiss at 2.  Moreover, now that the transcripts of General Flynn's intercepted calls have been released, it strains credulity to find any words in those calls that were problematic in the slightest.  Indeed, if there is a conclusion to be reached, it is that there is no reason to investigate General Flynn, but good reason to investigate his accusers.[13]

**B.     The District Judge's Order Evinced a Hostile and Unjudicial Attitude toward General Flynn at His First Sentencing Hearing.**

The fact that the Court's order appointing an *amicus* singles out General Flynn confirms a pattern of hostility to General Flynn that had been revealed at the December 18, 2018 sentencing hearing.  Rather than the sentencing of General Flynn being the central issue

---

[13]  *See* M. Cleveland, "New Flynn Transcripts Confirm Mueller Team Lied to the Court and the Country," *The Federalist* (June 1, 2020).

16

at the district court's hearing on December 18, 2018, on that date the district judge made himself the center of attention both in the courtroom and throughout the country.

The district judge repeatedly focused on the FBI interview of General Flynn having occurred at the White House as an aggravating factor that was influencing his view of the appropriate sentence to impose: "false statements … on the premises of the White House, in the White House in the West Wing by a high-ranking security officer …  That's a very serious offense."  Tr. at 32, ll. 12-17.  *See also* 42, ll. 18-21, 43, ll. 4-6.  In fact, the White House location for the interview of General Flynn was significant not what it said about General Flynn, but for what it said about the FBI.  FBI Director James Comey publicly bragged that he personally planned the stealth criminal interview on White House Grounds, knowing he was evading protocol, made famous by his "Let's just send a couple of guys over" quip.[14] Recently disclosed handwritten notes taken by the FBI's former head of counterintelligence Bill Priestap revealed the reasons behind the FBI's decision to conduct an interview of General Flynn at the White House:  "What is our goal? Truth/Admission or to get him to lie, so we can prosecute him or get him fired?"[15]

---

[14]  NICOLE WALLACE: You look at this White House now and it's hard to imagine two FBI agents hanging out in the [Situation] room.  How does that happen?
JAMES COMEY: I sent them — something we, I probably wouldn't have done or gotten away with in a more organized investigation — a more organized administration. The FBI wanted to send agents into the White House itself to interview a senior official.  You would work through the White House counsel and there were discussions and approvals and it would be there and I thought, it's early enough.  Let's just send a couple of guys over. T. Hains, "Comey: 'I Sent' FBI Agents Into WH, Wouldn't Have Gotten Away With It In A "More Organized Administration,'" *RealClearPolitics.com* (April 30, 2020).

[15]  Motion to Dismiss, Exhibit 10.  *See* G. Re, "FBI discussed interviewing Michael Flynn 'to get him to lie' and 'get him fired,' handwritten notes show," *Fox News* (Apr. 29,

17

The district judge then made three specific accusations.

1.  The district judge asserted without explanation: "you **lied to senior officials** in the Trump Transition Team and Administration.  Those lies caused the then-Vice President-Elect … to lie to the American people."  Tr. at 32, l. 24 - 33, l. 2 (emphasis added).

2.  The district judge made a false charge: "So, all along you were **an unregistered agent of a foreign country, while serving** as the National Security Advisor to the President of the United States."  Tr. at 33, ll. 9-11. (emphasis added).

3.  The district judge out of the blue introduced into the proceedings the capital crime of treason, stating:  "I mean, arguably, that undermines everything this flag over here stands for (indicating).  Arguably, you sold your country out….  I'm not hiding my disgust, my disdain for this criminal offense."  Tr. at 33, ll. 12-14, 22-23.  "[G]iven the fact that the then-President of the United States imposed sanctions against Russia for interfering with federal elections in this country, is there an opinion about the conduct of the defendant the following days that rises to the level of **treasonous** activity…. [C]ould he have been charged with **treason**?"  Tr. at 35, l. 24 - 36; 46, l. 3; 36, ll. 9-10 (emphasis added).

---

2020) ("The handwritten notes -- written by the FBI's former head of counterintelligence Bill Priestap after a meeting with then-FBI Director James Comey and then-FBI Deputy Director Andrew McCabe, Fox News is told — further suggested that agents planned in the alternative to get Flynn "to admit to breaking the Logan Act" when he spoke to then-Russian Ambassador Sergey Kislyak during the presidential transition period….  "If we get him to admit to breaking the Logan Act, give facts to DOJ + have them decide," another note read. Constitutional law professor Jonathan Turley called the document's implications 'chilling….'  The bombshell materials strongly suggested the agents weren't truly concerned about Flynn's intercepted contacts with Kislyak during the presidential transition period, except as a pretext.").

18

As to his first accusation, the district judge did not identify the statement to which he was referring, but based on public sources, there are significant reasons to doubt the truth of that assertion.[16]  After a short recess, the district judge labored to undo damage from the other two accusations he had made.  First, he used the vehicle of questioning government counsel to withdraw his accusation that General Flynn had been acting as a foreign agent while serving in the White House.  *See* Tr. at 39-40.  And with respect to the third accusation, the district judge worked hard to correct his interjection of a treason[17] charge as a harmless question:  "I wasn't suggesting he's committed treason.…  But I'm not suggesting he committed treason.  I just asked a legitimate question.…  I've never presided over a treasonous offense and couldn't tell you what the elements are anyway.  I just asked a question."  Tr. at 40, ll. 11, 22-23; 41, ll. 6-8.  From the district judge's repeated efforts by to justify his treason inquiry, one can conclude that during the recess he recognized the mistake that he had made in open court and

---

[16]  *See* M. Dowling, "Flynn's alleged lie to Pence was based on only a summary by the people who framed him", *Independent Sentinel* (May 17, 2020). ("One thing that seems apparent is the White House was never given a transcript of the Flynn call, at least not at that point, they were given "tech cuts" or a summary of tech cuts.  VP Pence could have been fed a distorted view of the conversation with tech cuts, especially from the actual dirty cops who framed him.  Flynn might have told the truth as he knew it.); M. Phillips, "Pence says he's now 'inclined' to believe Flynn didn't intentionally mislead him about Russian ambassador," *Fox News* (Apr. 30, 2020) ("Mike Pence told reporters Thursday he is 'inclined, more than ever," to believe that former national security adviser Mike Flynn unintentionally misled him in early 2017 about his contact with the Russian ambassador before President Trump took office.")

[17]  *See* 18 U.S.C. § 2381.  "Whoever, owing allegiance to the United States, levies war against them or adheres to their enemies, giving them aid and comfort within the United States or elsewhere, is guilty of treason and shall suffer death, or shall be imprisoned not less than five years and fined under this title but not less than $10,000; and shall be incapable of holding any office under the United States."

19

the prejudice that he demonstrated when he introduced treason into the proceedings in court and throughout the country.  *See* Petition for Mandamus at 31-34.  Nevertheless, the district judge's hostility and prejudice is real, and should require the district judge to recuse on his own initiative, or, failing that, require the district court to recuse him.

## CONCLUSION

For the reasons set out above, the government's Motion to Dismiss should be granted and any discussion by the court-appointed *amicus curiae* regarding criminal contempt or perjury should be stricken.

Respectfully submitted,

_____/s Jeremiah L. Morgan_____
Jeremiah L. Morgan (D.C. Bar No. 1012943)
William J. Olson (D.C. Bar No. 233833)
Herbert W. Titus
Robert J. Olson (D.C. Bar No. 1029318)
  William J. Olson, P.C.
  370 Maple Ave. W., Ste. 4
  Vienna, VA  22180-5615
  (703) 356-5070
  wjo@mindspring.com
Dated: June 10, 2020          Counsel for *Amici Curiae*