## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | |
| **MICHAEL T. FLYNN,** | **Criminal Action No. 17-232 EGS** |
| **Defendant.** | |

## GENERAL FLYNN'S BRIEF
## IN OPPOSITION TO AMICUS

Sidney Powell
Molly McCann
Sidney Powell, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: (214) 707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

Jesse R. Binnall
Lindsay R. McKasson
Abigail C. Frye
Harvey & Binnall, PLLC
717 King Street,
Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted *Pro Hac Vice*
afrye@harveybinnall.com
*Pro Hac Vice* Application
   Forthcoming

**Attorneys for Lt. General Michael T. Flynn (USA) (Retired)**

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ...................................................................................... ii

I.    Introduction to the Arguments Mandating Dismissal with Prejudice. .............1

II.   Preservation of the Separation of Powers is Paramount. ...................................4

III.  This Court Had No Authority to Appoint Gleeson.  There is No
      Case or Controversy, and This Court Cannot Usurp or Even
      Inquire Behind a Core Executive Function. ......................................................6

IV.   This Court Must Grant Dismissal on the Existing Record. ..............................11

      A.   Appellate courts have issued mandamus or ordered
           dismissals post-sentencing ...........................................................................12

      B.   Appellate courts have issued mandamus or ordered
           dismissals under Rule 48(a) following guilty pleas.....................................13

      C.   District courts have ordered dismissals post-sentencing..............................13

      D.   District courts have granted Rule 48(a) motions
           despite guilty pleas in multiple similar cases for  similar reasons. ............15

V.    Any Suggestion of "Perjury" Is Spurious...........................................................16

VI.   Extraordinary Exculpatory Evidence Exposed Through
      the IG Reports, Declassification, and the Jensen Review Mandate
      Dismissal with Prejudice. ...............................................................................19

CONCLUSION.........................................................................................................29

CERTIFICATE OF SERVICE ..................................................................................32

EXHIBIT LIST ...............................................................................................APPENDIX

i

## TABLE OF AUTHORITIES

### Cases

*Berger v. United States*, 295 U.S. 78 (1935)....................................................................3

*Ex parte Hudgings*, 249 U.S. 378 (1919)......................................................................19

*Government of the V.I. ex rel. Robinson v. Schneider*, 893 F. Supp 490

  (D.V.I. 1995) ...............................................................................................................14

*Hollingsworth v. Perry*, 558 U.S. 183 (2010). ...............................................................7

*In re Michael*, 326 U.S. 224 (1945).................................................................................19

\* *In re United States*, 345 F.3d 450 (7th Cir. 2003) ..................................2, 6, 8, 10, 13

*McCray v. United States,* 195 U.S. 27 (1904) .......................................................5, 6, 8

*Morrison v. Olson*, 487 U.S. 654 (1988) ....................................................................4, 5

*Musacchio v. United States*, 136 S. Ct. 709, 711 (2016)..............................................18

\* *Rinaldi v. United States*, 434 U.S. 22 (1984)......................................................10, 12

*Thompson v. United States*, 444 U.S. 248 (1980) .........................................................3

*United States v. Spiller*, No. 09-335 (D.D.C. March 30, 2012). ..................................15

*United States v. Alvirez*, No. 09-335 (D.D.C. March 30, 2012). ..................................15

*United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973) ...........................9, 10, 11

\* *United States v. Armstrong,* 517 U.S. 456 (1996)....................................................8, 9

*United States v. Becker*, 221 F. Supp. 950 (W.D. Mo. 1963). ......................................14

*United States v. Borges*, 153 F. Supp. 3d 216 (D.D.C. 2015) ......................................14

*United States v. Calger,* No. CR-00286-001 (S.D. Tex. Dec. 20, 2016).....................15

*United States v. Cammisano*, 433 F.Supp. 964 (W.D.Mo. 1977) ..........................14, 15

*United States v. Carrigan*, 778 F.2d 1454 (10th Cir. 1985) ........................................13

*United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975)...............................................11

*United States v. Duncan*, No. 02-209 (S.D. Tex. Dec. 13, 2005) ................................15

*United States v. Fastow,* 300 F. Supp. 2d 479 (S. D. Tex. 2004). ..............................15

\* *United States v. Fokker Servs. B.V.,* 818 F.3d 733 (D.C. Cir. 2016) ....................2, 8

*United States v. Foye*, 36 F. Supp.2d 329 (S.D.W. Va. 1998)....................................14

*United States v. Friedman*, 107 FRD 736 (N.D. Ohio 1985)......................................14

*United States v. Geri*, No. 09-335 (D.D.C. March 30, 2012)........................................15

*United States v. Grace*, 429 F. Supp. 2d 1207 (D. Mont. 2006). ................................14

\* *United States v. Hamm,* 659 F.2d 624 (5th Cir. 1981). .....................................12, 13

*United States v. Hastings*, 447 F. Supp. 534 (E.D. Ark. 1977). .................................14

*United States v. Henderson*, 951 F. Supp. 2d 228 (D. Mass. 2013). ...........................14

*United States v. Holloway*, 68 F. Supp. 3d 310 (E.D. NY 2014) ................................30

*United States v. HSBC Bank USA,* 863 F.3d 125 (2d Cir. 2017) ..............................9

*United States v. James*, 861 F. Supp. 151 (D.D.C. 1994)............................................14

*United States v. Johnson*, 20 F. Supp. 3d 144 (D.D.C. 2013). ...................................14

*United States v. Lawson*, 502 F. Supp. 158 (D. Md. 1980)..........................................14

*United States v. Manbeck*, 514 F. Supp. 152 (D.S.C. 1981). ......................................15

*United States v. Manetti*, 323 F. Supp. 683 (1971).....................................................14

*United States v. Marra*, 228 F. Supp. 2d 280 (W.D.N.Y. 2002). ...............................13

*United States v. Miller*, 890 F.3d 317, 326 (D.C. Cir. 2018). .....................................18

*United States v. Nixon*, 418 U.S. 683 (1974)...............................................................8

*United States v. Norita*, 708 F. Supp. 2d 1043 (D.N. Mar. Is. 2010)..........................14

*United States v. Pitts*, 331 F.R.D. 199 (D.D.C. 2019)...............................................3, 14

*United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989).........................................13

*United States v. Rafiekian*, Case No. 1:18-cr-00457 (E.D. Va. 2019).......................23

*United States v. Roberts*, 904 F. Supp. 1262 (E.D.Okla. 1995)..................................13

*United States v. Romero,* 360 F.3d 1248 (10th Cir 2004)............................................13

*United States v. Rosenberg*, 108 F. Supp. 2d 191 (S.D.N.Y. 2000). ...........................14

*United States v. Sayes*, 49 F.Supp.2d 870 (M.D.La. 1999)...........................................14

*United States v. Shanahan*, 168 F. Supp 225 (S.D. Ind. 1958). .................................14

\* *United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020).....................................2, 7

\* *United States v. Smith*, 55 F.3d 157 (4th Cir. 1995). ....................................3, 12, 13

*United States v. Smith*, 675 F. Supp. 307 (E.D.N.C. 1987). .......................................13

*United States v. Stevens*, No. 08-231 (D.D.C Apr. 1, 2009)..................................12, 23

*United States v. Sullivan*, 652 F. Supp. 2d 136 (D. Mass. 2009)................................14

*United States v. Weber*, 721 F.2d 266 (9th Cir. 1983) .................................................12

*United States v. White*, 597 F. Supp. 2d 1269 (M.D. Ala. 2009). ...............................13

\* *Wayte v. United States*, 470 U.S. 598 (1985).........................................................2, 11

*Young v. United States*, 315 U.S. 257 (1942)............................................................3, 4

## Other Authorities

Jed S. Rakoff, *Why Innocent People Plead Guilty*, The New York Review of Books

   (Nov. 20, 2014) ............................................................................................19

John Gleeson, David O'Neil, and Marshall Miller, The Case Isn't Over Until the

    Judge Says it's Over, Wash. Post (May 11, 2020, 6:52PM),

    https://tinyurl.com/4m7pc28 .................................................................................7, 11

Lewis Carroll, *Alice's Adventures in Wonderland & Through the Looking-Glass*

    (1871). ...............................................................................................................29

National Registry of Exonerations, https://tinyurl.com/moalhx8 (last visited June 6,

    2020) ..............................................................................................................17, 18

Office of the Inspector General, U.S. Dept. of Justice, *Review of Four FISA*

    *Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*,

    (December 2019, revised) ...........................................................24, 25, 26

## Rules

Federal Rule of Criminal Procedure 11 ...............................................................17, 18

I.      **Introduction to the Arguments Mandating Dismissal with Prejudice.**

Counsel for General Michael Flynn files this brief to comply with this court's order of May 19, 2020. However, we hereby preserve all objections briefed in our Petition for Writ of Mandamus and all prior filings in this court.[1] This court exceeded its authority under the Constitution to solicit amici *and* to appoint an amicus. That chosen amicus has now engaged in a flagrant personal and partisan assault on General Flynn, Attorney General Barr, and the President of the United States.

This court's friend simply ignores the indisputable, newly-produced evidence proving that it is General Flynn who was singled out for a baseless, politically motivated investigation and prosecution. ECF No. 198. In a rarely-mentioned text message the Government has never produced to General Flynn,[2] FBI Agent Strzok reveals that [Bill] Priestap "doesn't want Clapper giving CR cuts [transcripts on Crossfire Razor, the codename for the Flynn operation] to [the Obama] WH. **All political, just shows our hand and potentially makes enemies.**" (emphasis added). After Lisa Page's reminder about including it already in the "doc on fri," Strzok revealed the ultimate problem: "should we[?], **particularly to the entirety of the lame duck usic [United States intelligence community] with partisan axes to grind.**" (emphasis added). Ex.1.

---

[1] ECF Nos. 98,109, 111, 116, 121, 124, 127, 129, 133, 134, 135, 151, 153, 156, 160, 161, 162, 166, 170, 181, 188, 190, 189, 194, 199, and 204.

[2] This is yet another remarkable *Brady* violation only recently discovered and not previously briefed. ECF Nos. 133, 162; Ex. 1.

1

The irony and sheer duplicity of Amicus's accusations against the Justice Department now—which is finally exposing *the truth*—is stunning.  Amicus's filing is a "wrap-up smear."  It is an affront to the Rule of Law and a raging insult to the citizens of this country who see the abject corruption in this assassination by political prosecution of General Flynn.  This court exuviated any appearance of neutrality when it unlawfully appointed Amicus as its own adversary to make these scurrilous arguments.

This court must grant the Government's Motion to Dismiss with prejudice to which General Flynn has consented.  ECF Nos. 198, 202.  This court is foreclosed by all relevant precedent from going behind the current record on the Government's Motion to Dismiss.  Fundamental principles of separation of powers foreclose *any* such inquiry.  *Wayte v. United States*, 470 U.S. 598, 607-08 (1985) ("discretion to prosecute is particularly ill-suited to judicial review); *United States v. Fokker Servs. B.V.,* 818 F.3d 733 (D.C. Cir. 2016); *In re United States*, 345 F.3d 450 (7th Cir. 2003).  Moreover, upon the Government's Motion to Dismiss and General Flynn's Consent, there is no case or controversy which the court can continue to act other than to grant dismissal.  ECF Nos. 198, 202.  *See United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020).

While the court may review the existing record on the Government's Motion to Dismiss, it may not create a new one.  Not a single case authorizes an Article III court to scrutinize the decision-making process of the Department of Justice in deciding to correct itself and move to dismiss a prosecution that should never have been brought.

2

Instead, for the Department of Justice to correct its own errors and disclose its own misconduct is routinely applauded—as it should be. *Berger v. United States*, 295 U.S. 78 (1935); *United States v. Smith*, 55 F.3d 157; *Thompson v. United States*, 444 U.S. 248, 250 (1980) (4th Cir. 1995). That is exactly what the Department of Justice did, albeit on *certiorari*, in *Thompson*, 444 U.S. at 250, when the Solicitor General advised the Supreme Court itself that the prior prosecutor had misrepresented the validity of the prosecution to the Court. That is why the Supreme Court remanded it to the Court of Appeals to handle the case in accordance with that new information. That is also why, in *Smith*, 55 F.3d at 160, the Fourth Circuit said: "A substantial, reasonable doubt about the guilt of a defendant that arose after conviction is evidence of good faith." Further, just one year ago, in May 2019, this court granted the Government's Rule 48(a) motion to dismiss an indictment—*adding* with prejudice—due to numerous errors by the government, and in light of the "unusual, and indeed disturbing facts" of the case. *United States v. Pitts*, 331 F.R.D. 199, 205 (D.D.C. 2019). The rules have not changed since this court correctly applied them there.

Reliance on *Young v. United States*, 315 U.S. 257 (1942) to support any other interpretation is entirely misplaced. *Young* is not a Rule 48(a) case, and moreover, a confession of error is purely an issue of law which does not implicate any separation of powers issues. The Government did not terminate the prosecution in *Young*. Even the Court held: "The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed." 315 U.S. 257,

258-59 (1942).  Of course, it is the role of Article III courts to apply the law.  *Young* confirms respect for the separation of powers.

## II.     Preservation of the Separation of Powers is Paramount.

This court, in essence, appointed its own special prosecutor—adversarial to the Attorney General and the Defendant—to extend the prosecution of General Flynn and to consider and suggest further charges or punishment be used against him.  This process was tried previously and ultimately, resoundingly rejected.  In 1978, Congress passed the Ethics in Government Act that included an independent prosecutor who worked outside the control of the Attorney General and reported to Congress.  That role sparked the famous *Morrison v. Olson* litigation in which the Supreme Court incorrectly held that the office of the independent counsel was constitutional.  *Morrison v. Olson*, 487 U.S. 654 (1988).

Justice Scalia's dissent in *Morrison* noted that the majority posed two questions: "1) Is the conduct of a criminal prosecution (and of an investigation to decide whether to prosecute) the exercise of purely executive power? (2) Does the statute deprive the President of the United States of exclusive control over the exercise of that power?"  487 U.S. at 705.  He pointed out that the majority answered both questions in the affirmative, yet contradicted itself to conclude the statute constitutional even though it "vest[ed] some purely executive power in a person who is not the President of the United States...".  *Id.*

Justice Scalia was proven to be correct.  The tortuous and constitutionally damaging experiment came to an end with the unanimous agreement of Congress

and the Justice Department that the statute was indeed a violation of the separation of powers.  Scalia's dissent has taken its place in the canons of constitutional law on the separation of powers.  He wrote that "[g]overnmental investigation and prosecution of crimes is a quintessentially executive function," *id.* at 706, and that the independent counsel "depriv[ed] the President of exclusive control over that quintessentially executive activity." *Id.*

Scalia criticized the majority for "replac[ing] the clear constitutional prescription that the executive power belongs to the President with a 'balancing test.'" *Id.* at 711.  In arguing that the court can appoint its own amicus, initiate its own investigation into General Flynn, and consider further charges against him, the court argues for just such a constitutionally impermissible balancing test.  It is not for the court to infringe upon the power of the executive.  As Justice Scalia wrote: "It is not for us to determine, and we have never presumed to determine, how much of the purely executive powers of government must be within the full control of the President.  The Constitution prescribes that they *all* are." *Id.* at 709.

In *McCray v. United States*, the Supreme Court said that the judiciary cannot inquire into Congress's motive when legislating, lest "the abuse by one department of the government of its lawful powers is to be corrected by the abuse of its powers by another department."  195 U.S. 27, 54 (1904)  The Court said that "[t]he proposition, if sustained, would destroy all distinction between the powers of the respective departments of the government, would put an end to that confidence and respect for each other which it was the purpose of the Constitution to uphold, and would thus be

full of danger to the permanence of our institutions." *Id.* at 54-55.  The Court stressed that it is "essential to the successful working of this system that the persons entrusted with power in any one of these branches shall not be permitted to encroach upon the powers confided to others, but that each shall by the law of its creation be limited to the exercise of the powers appropriate to its own department and no other." *Id.* at 55.  *See In Re United States*, 345 F.3d at 453 ("A judge could not properly refuse to enforce a statute because he thought the legislators were acting in bad faith or that the statute disserved the public interest; it is hard to see, therefore, how he could properly refuse to dismiss a prosecution merely because he was convinced that the prosecutor was acting in bad faith or contrary to the public interest.").

Finally, the Court noted that the remedy for abuse "lies, not in the abuse by the judicial authority of its functions, but in the people, upon whom, after all, under our institutions, reliance must be placed for the correction of abuses committed in the exercise of a lawful power." *Id.*  This politically motivated quest to destroy General Flynn has been damaging the Rule of Law, the integrity of venerable institutions of government, and now the very structure of our Constitution.  This illegal outrage must stop now.

III. **This Court Had No Authority to Appoint Gleeson.  There is No Case or Controversy, and This Court Cannot Usurp or Even Inquire Behind a Core Executive Function.**

The Government's Motion to Dismiss ended the case and controversy before this court.  It has no authority to proceed beyond granting the dismissal.  U.S. Const.

6

art. III, § 2.  The game is over; the Government has left the field.  This court must leave the field also.

The unanimous decision of the Supreme Court only weeks ago establishes that an Article III judge cannot create issues for the parties or gin up his own case or controversy where none exists.  *Sineneng-Smith*, 140 S. Ct. 1575.  There the Court wrote:

> '[C]ourts are essentially passive instruments of government.' *United States* v. *Samuels*, 808 F. 2d 1298, 1301 (CA8 1987) (Arnold, J., concurring in denial of reh'g en banc)).  They 'do not, or should not, sally forth each day looking for wrongs to right.  [They] wait for cases to come to [them], and when [cases arise, courts] normally decide only questions presented by the parties.' *Ibid.  Id.* at 1579.

It is an entirely separate violation for the court to enlist amici in a criminal case—as counsel for General Flynn briefed immediately before and after the court invited their participation.[3]  Even more important, the court cannot appoint an amicus in a criminal case to proceed *against* a defendant—it has no authority to appoint anyone to step into the place of the Government in a criminal prosecution.[4]

---

[3]  ECF No. 204.  It also contrary to the Local Rules and improper for the court to solicit amicus briefs in a criminal case at all.  *See Hollingsworth v. Perry*, 558 U.S. 183, 196 (2010) ("The Court's interest in ensuring compliance with proper rules of judicial administration is particularly acute when those rules relate to the integrity of judicial processes").

[4]  The choice of this particular amicus to appear against the Government and the defense is appalling.  As counsel for Respondent admitted in oral argument in the D.C. Circuit, Gleeson was assigned by the court to be the *adversary* to the Government and General Flynn—to take over the role of the Government—in violation of the executive's core function in Art. II.  Gleeson advertised his bias to obtain the appointment.  John Gleeson, David O'Neil, and Marshall Miller, *The Flynn Case Isn't Over Until the Judge Says it's Over*, WASH.POST (May 11, 2011), https://www.washingtonpost.com/opinions/2020/05/11/flynn-case-isnt-over-until-

This is a clear impermissible violation of the separation of powers.  Article II, Section 3 of the Constitution vests the power to execute the laws solely in the Executive Branch.  Accordingly, the power to prosecute—to decide who, when, where, and how someone is charged with a federal crime or when the case must be dismissed—rests entirely with the Department of Justice.  *McCray*, 195 U.S. 27; *United States v. Nixon*, 418 U.S. 683, 693 (1974); *Fokker Servs.*, 818 F.3d at 737, 741.

Rule 48(a) does not grant discretion to the courts to look behind the motives or into the reasoning of the Executive in its exercise of its discretion.  *Fokker Servs.*, 818 F.3d at 738; *In re United States*, 345 F.3d  at 453.  Even if it did, the presumption of regularity would apply, and in *United States v. Armstrong*, the Supreme Court reiterated that only unconstitutional motives would suffice, and there must be "clear evidence" to overcome the presumption of regularity.  517 U.S. 456, 464 (1996).  In oral argument before the D.C. Circuit Court of Appeals, the Deputy Solicitor General noted that even under a less categorical reading of *Fokker*, "*Armstrong* is completely clear… that you have to have clear evidence of an unconstitutional motive to rebut the presumption, and they can argue back and forth about whether they think the Attorney General is right about this or about that, but there's nothing here that remotely approaches clear evidence of an unconstitutional motive.  That's what you

---

judge-says-its-over/.  He has accomplished that goal by willful blindness to the new evidence, a baseless "wrap-up smear" of General Flynn in a filing made to fuel the headlines and feed the piranha of the press, and distortions of clear legal precedent.

need to rebut the presumption, even if it were relevant." *See In re United States*, 345 F.3d at 453.

In *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973), this Circuit recognized that Rule 48(a) places the responsibility on the Executive Branch to determine "the public interest." Only the prosecutor is "in a position to evaluate the government's prosecution resources and the number of cases it is able to prosecute." *Id*. at 621. Every single appellate case on which Respondent and his troop rely requires *dismissal* upon the Government's Motion to Dismiss with no ado whatsoever when the motion is substantial. As the Second Circuit wrote in reversing then-Judge Gleeson for aggrandizing his own role in reviewing a deferred prosecution agreement, to do otherwise "would be to turn the presumption of regularity on its head." *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 136 (2d Cir. 2017).

*HSBC Bank* describes *In Re Richards* as requiring the Rule 48(a) dismissal because the district court's authority is "severely cabined" to "clearly contrary to the public interest" meaning the prosecutor acted in bad faith such as bribery, fecklessness, animus to victim, or self-interest. Indeed, there must be clear evidence—not contrary imaginings. *HSBC Bank*, 863 F.3d at 140, 141; *See also Armstrong*, 517 U.S. at 465 (1996).

The only appropriate and lawful action this court can take in response to the Government's Motion to Dismiss in this case is to grant it—as *every court* before it has done. It cannot inquire behind it. The Seventh Circuit was so clear on this issue it granted mandamus to compel the district court to grant the Government's motion

9

to dismiss and vacate the court's order appointing a special counsel to prosecute the case. *In Re United States,* 345 F.3d at 454. At most, this court's review is limited to the record before it. It can only review it for its stated reasons, and as long as the dismissal is with prejudice, it must be granted. *Rinaldi v. United States*, 434 U.S. 22 (1984).

This court's role is "limited." To the extent *Ammidown* has any precedential force after *Fokker Servs*, it too limits the role of judges. First, *Ammidown* noted only that the court has "a role" in the dismissal process; the judge is a participant, not a ringmaster. 497 F.2d at 620. Second, the court would "require a statement of reasons and underlying factual basis"—not a mere conclusory statement of public interest. *Id.* Here, the Government provided a 20-page brief explaining its reasons, including a thorough legal analysis and supported by 86 pages of new evidence, in addition to all the Inspector General and General Flynn had obtained.

"Third, the court does not have primary responsibility, but rather the role of guarding against abuse of prosecutorial discretion." *Id.* This is the no-ringmaster rule redux: "The rule contemplates exposure of the reasons for dismissal 'in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors,' and … 'to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial.'" *Id.*

The Government's Motion here states substantial reasons. Some may disagree with those reasons—and especially the result—but nothing in *Ammidown* suggests a court may look behind the Motion to determine whether its reasons are correct, wise,

or in the public interest.   "[E]xposure of the reasons for dismissal" ensures transparency for the public record, but neither *Ammidown*—nor any other appellate opinion—authorizes an inquisition behind the Government's decision.   *Id.*; *United States v. Cowan*, 524 F.2d 504, 511-12 (5th Cir. 1975) (the court is "constitutionally powerless to compel the government to proceed.").   This court has no authority to review these decisions that rest solely within core Executive Branch functions.   Any suggestion that *Ammidown* authorizes such an intrusion into the Department of Justice's decision-making process—much less the inquiry proposed by Gleeson in his job application for the most-biased-Amicus published in the *Washington Post* less than 48 hours prior to his appointment—is ludicrous.[5]   *See Wayte v. United States*, 470 U.S. 598 (1985).   Even *In Re Richards*, 213 F.3d 773 (3d Cir. 2000), which remanded to allow a "hearing" to provide "sunlight" on the process, the court noted that the "burden of proof [wa]s not on the prosecutor to prove that dismissal is in the public interest," but rather to provide reasons of more than a "mere conclusory interest." *Id.* at 788.

## IV.   This Court Must Grant Dismissal on the Existing Record.

Given the substantial briefing and documentation by the Justice Department of the reasons for dismissal here, based primarily on the Government's proper recognition that it should correct its own misconduct which included suppression of

---

[5] John Gleeson, David O'Neil, and Marshall Miller, *The Flynn Case Isn't Over Until the Judge Says it's Over*, WASH. POST (May 11, 2020, 6:52PM), https://tinyurl.com/4m7pc28; ECF No. 209 (Motion to establish briefing schedule).

extraordinary exculpatory evidence, this court has no further role to play than to grant dismissal forthwith.  *Smith*, 55 F.3d at 159; *United States v. Hamm,* 659 F.2d 624, 631 (5th Cir. 1981).

Significantly, the standard of *Rinaldi v. United States,* 434 U.S. 22 (1977), that the prosecutor must assess the public interest, applies regardless of the stage of the prosecution.   In *Rinaldi*, much like here, the prosecutor who obtained the conviction had misrepresented the entire validity of the prosecution.   When Department of Justice officials realized it had happened, they took steps to correct it pursuant to Department policy.  The Supreme Court reversed the Court of Appeals failure to order dismissal of the wrongful charges, and it wrote that it would "not presume" bad faith on the part of the government at the time it sought dismissal of the indictment.  *Id.* at 30-31; *see also Hamm*, 659 F.2d at 631.  Those who might claim that dismissal post-plea, or the government changing its position is somehow suspicious have not researched the law.  Just for a few examples:

## A. Appellate courts have issued mandamus or ordered dismissals post-sentencing in:

- *Rinaldi*, 434 U.S. at 30-31 (granting dismissal after trial and conviction).

- *United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983) ("A substantial reasonable doubt of a defendant that arose after conviction is evidence of good faith." . . . "the duty of the United States Attorney is 'not simply to prosecute but to do justice.'" (citation omitted).

- *United States v. Stevens*, No. 08-231 (D.D.C Apr. 1, 2009) (Notably, this court ordered dismissal after a jury returned a verdict of guilty on multiple counts against former Alaska Senator Ted Stevens after the jury convicted him on multiple counts, for the same reasons the Department of Justice revealed here: suppression of exculpatory evidence.  It did so on a two-page motion to dismiss at the request of

then-Attorney General Eric Holder. There is no meaningful distinction here—except the name of the Attorney General.).

**B. Appellate courts have issued mandamus or ordered dismissals under Rule 48(a) following guilty pleas in:**

- *United States v. Hamm*, 659 F.2d 624 (5th Cir. 1981) (en banc).

- *United States v. Smith*, 55 F.3d 157 (4th Cir. 1995).

- *In re United States*, 345 F.2d 450 (7th Cir. 2003).

- *United States v. Romero,* 360 F.3d 1248 (10th Cir 2004) (reversing trial court's denial of his motion to withdraw guilty plea and the Government's to dismiss).[6]

**C. District courts have ordered dismissals post-sentencing in:**

- *United States v. Roberts*, 904 F. Supp. 1262 (E.D.Okla. 1995).

- *United States v. Smith*, 675 F. Supp. 307 (E.D.N.C. 1987).

- *United States v. Poindexter*, 719 F. Supp. 6 (D.D.C. 1989).

- *United States v. White*, 597 F. Supp. 2d 1269 (M.D. Ala. 2009).

- *United States v. Marra*, 228 F. Supp. 2d 280 (W.D.N.Y. 2002).

---

[6] In the D.C. Circuit Court, this court as "Respondent" relied on *United States v. Carrigan*, 778 F.2d 1454 (10th Cir. 1985) by cherry picking a single line within that opinion's rule section to argue that Rule 48(a) "permits courts faced with dismissal motions to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts." *Id.* at 1463. In context, that was a simple repetition of the rule that carried little weight. *Carrigan* itself was a Rule 11 dismissal, and the Rule 48(a) discussion was dicta. But, even more importantly, this court's Respondent brief failed to note that the 10th Circuit further clarified *Carrigan* and its interpretation of Rule 48(a) in a subsequent case, *United States v. Romero*, 360 F.3d 1248 (10th Cir. 2004). In *Romero*, the Tenth Circuit distinguished *Carrigan* as an unusual case governed by Rule 11 before reversing a lower court's *denial* of the government's motion to dismiss charges based upon Rule 48(a), because "Filing such a motion is a legitimate choice that should be left to the discretion of the government." *Id.* at 1253.

13

- *United States v. Borges*, 153 F. Supp. 3d 216 (D.D.C. 2015) ("integrity of the Government's case has been tainted by the wrongdoing and misconduct of an agent") *Id.* at 220.

- *United States v. Becker*, 221 F. Supp. 950 (W.D. Mo. 1963).

- *United States v. Norita*, 708 F. Supp. 2d 1043 (D.N. Mar. Is. 2010).

- *United States v. Pitts*, 331 F.R.D. 199 (D.D.C. 2019).

- *Government of the V.I. ex rel. Robinson v. Schneider*, 893 F. Supp 490 (D.V.I. 1995).

- *United States v. Hastings*, 447 F. Supp. 534 (E.D. Ark. 1977).

- *United States v. James*, 861 F. Supp. 151 (D.D.C. 1994).

- *United States v. Rosenberg*, 108 F. Supp. 2d 191 (S.D.N.Y. 2000).

- *United States v. Greater Blouse, etc., Contractors Asso.*, 228 F. Supp 483 (S.D.N.Y. 1964).

- *United States v. Shanahan*, 168 F. Supp 225 (S.D. Ind. 1958).

- *United States v. Friedman*, 107 FRD 736 (N.D. Ohio 1985) (citing *Brady* violations in withholding information from the defendant.) *Id.* at 739.

- *United States v. Manetti*, 323 F. Supp. 683 (D. Del. 1971).

- *United States v. Foye*, 36 F. Supp.2d 329 (S.D.W. Va. 1998).

- *United States v. Grace*, 429 F. Supp. 2d 1207 (D. Mont. 2006).

- *United States v. Lawson*, 502 F. Supp. 158 (D. Md. 1980) (dismissing the case without prejudice due to government misconduct.) *Id.* at 173.

- *United States v. Henderson*, 951 F. Supp. 2d 228 ( D. Mass. 2013).

- *United States v. Sullivan*, 652 F. Supp. 2d 136 (D. Mass. 2009).

- *United States v. Sayes*, 49 F. Supp. 2d 870 (M.D.La. 1999).

- *United States v. Johnson*, 20 F. Supp. 3d 144 (D.D.C. 2013).

- *United States v. Cammisano*, 433 F. Supp. 964 (W.D.Mo. 1977) ("The files and records in this case establish that the government has not given appropriate recognition to its duty to produce evidence favorable to an

14

accused upon request in regard to evidence which we have found to be relevant and material to the alleged defense of selective and discriminatory prosecution, as defined and required by *Brady v. Maryland* and its progeny.") *Id.* at 982.

- *United States v. Manbeck*, 514 F. Supp. 152 (D.S.C. 1981).

## D. District courts have granted Rule 48(a) motions despite guilty pleas in multiple similar cases for similar reasons.

- *United States v. Duncan*, No. 02-209 (S.D. Tex. Dec. 13, 2005) (Order Granting Unopposed Motion to Withdraw the Defendant's Guilty Plea and to Dismiss the Information—vacating plea of Arthur Andersen executive convinced by prosecutors his innocent conduct was criminal).

- *United States v. Calger,* No. CR-00286-001 (S.D. Tex. Dec. 20, 2016) (vacating plea of Enron Broadband executive likewise bludgeoned into a guilty plea for conduct that was not criminal).

- *United States v. Spiller*, No. 09-335 (D.D.C. March 30, 2012).

- *United States v. Geri*, No. 09-335 (D.D.C. March 30, 2012).

- *United States v. Alvirez*, No. 09-335 (D.D.C. March 30, 2012).[7]

- *United States v. Fastow,* 300 F. Supp. 2d 479 (S. D. Tex. 2004).

In short, no authority exists from any court that would allow the court to deny dismissal here.  It should have been done upon review of the Government's motion, exhibits, and General Flynn's consent.  No appellate court has *ever* affirmed the denial of a Rule 48(a) motion to dismiss, and there is not a shred of basis to do so here.  For this court to require additional briefing or any subsequent proceeding is clear error on this record.  All it has accomplished is degradation of the court itself,

---

[7] These last three cases were dismissed on a two-page motion of the Government. Ex. 3.

needless and counterproductive delay, waste of scarce government resources, and dramatic increase of costs to the defendant.

## V.    Any Suggestion of "Perjury" Is Spurious.

Moving to withdraw a guilty plea and asserting actual innocence on advice of non-conflicted counsel does not constitute contempt or perjury.[8]  Allegations of such are baseless and spurious, and just as this court did with its suggestion of "treason," and "sold your country out," it fueled the media and public outrage  against General Flynn when it suggested "contempt for perjury."  Hr'g Tr., *United States v. Flynn*, No.

---

[8]  There are flagrant Rule 11 violations in General Flynn's plea proceedings.  The first judge who accepted General Flynn's plea was disqualified by a conflict of interest—the details of which have never been disclosed to General Flynn.  He should not have taken the plea.  The Special Counsel knew this and did nothing about it.  That judge's conflict of interest—revealed a mere seven days after accepting the plea required his immediate recusal.  Obviously, it existed at the time he accepted the plea.  Further, General Flynn was blind-sided by this court's "extended plea colloquy" at what was to be his sentencing.  The Rule 11 plea colloquy conducted by this court did not meet the core requirements of Rule 11 and was defective.  When this Court extended the colloquy in December 2018, among the questions this Court did not ask was if any additional promises or threats were made to General Flynn.  The answer—we now know—is a resounding "yes."  Even more egregious, Judge Sullivan accepted General Flynn's plea while General Flynn was standing with counsel who had a non-consentable conflict of interest during his representation and especially surrounding the plea, and there were significant *Brady* issues—contrary to counsel's representation.  *See* ECF Nos. 151, 153, 106-2.

Section 401(1) requires a showing of "contumacious intent," *In re Brown*, 454 F.2d 999, 1007-08 (D.C. Cir. 1971).  This Circuit holds that the requisite intent for contempt is the intent "to obstruct the administration of justice," *In re Sealed Case*, 627 F.3d 1235, 1236 (D.C. Cir. 2010).  As the Government previously argued, "'[t]he foundation for the criminal contempt power is the need to protect the judicial process from willful impositions.' *Brown*, 454 F.2d at 1006.  Accordingly, this Court has recognized that 'a degree of intentional wrongdoing is an ingredient of the offense of criminal contempt.' *Id*." *In re Michael T. Flynn*, Case no. 20-4143, Government's Brief for Writ Petition at 34.

17-232, (D.D.C Dec. 18, 2018) at 36:1-3, 9-10; 33:13-14.  In addition to the authorities above, *twenty percent*—more than 500—of former criminal defendants named in the *National Registry of Exonerations* had pleaded guilty.[9]  Are they now to be punished in some way for perjury?

From the Reports of the Inspector General, evidence that has recently been declassified, and the stunning disclosures of *Brady* material from the independent review by U.S. Attorney Jensen, it is apparent that crucial facts were withheld from General Flynn in violation of *Brady*, and wrongful pressure was applied to coerce his plea of guilty.[10]  ECF No. 198.  Further, General Flynn had a legal right to withdraw his plea under Rule 11(d), Fed. R. Crim. P., and this court cannot penalize him for exercising his rights upon advice of non-conflicted counsel.  This court has no authority to make any use of its wrongful allegations of such, and by making such suggestions publicly, has further smeared General Flynn.

The Government's Motion to Dismiss explains the materiality issue and others underlying the plea.  Until the Government moved to dismiss, this court had "many, many, many questions" about the factual basis for the plea. It did not conduct a full colloquy on December 18, 2018, as General Flynn briefed fully at ECF Nos. 151, 153,

---

[9] National Registry of Exonerations, https://tinyurl.com/moalhx8 (last visited June 6, 2020).

[10] The evidence long suppressed indicated that General Flynn was singled out for special adverse treatment by the highest levels of the FBI, investigated and interviewed with no basis whatsoever, and "evidence" against him was falsified.  ECF Nos. 162, 170, 188, 198; Ex. 1.

154, and 160-2. Any "finding" it supposedly made on "materiality," was made in ignorance of all the facts, and the remarkable new evidence long suppressed renders his statements immaterial as a matter of law.[11] Any alleged "false statements" made while attempting to accept responsibility for the "crime" as explained to him was the result of information withheld from him and advice of counsel who at the time were laboring under a non-consentable conflict of interest. ECF No. 160-2.

Rule 11(d) expressly gives a defendant a right to move to withdraw a plea. As such, withdrawing a plea cannot be contemptuous conduct as a matter of law. If it were, then there are at least 500 people in the National Registry of Exonerations who would be guilty of perjury.[12] This is an issue that transcends demographics. This court's suggestion that perjury through contempt could lie for someone seeking to withdraw a guilty plea upon exoneration would have a shocking chilling effect on the rightful future exoneration of wrongly accused defendants who are being punished for crimes they did not commit.

---

[11] The law-of-the-case doctrine constrains re-litigation of decided issues "but it does not limit courts' power." *Musacchio v. United States*, 136 S. Ct. 709, 711 (2016) (internal citations omitted). It "applies only to issues upon which decisions were actually rendered." *United States v. Miller*, 890 F.3d 317, 326 (D.C. Cir. 2018).

Additionally, no party is seeking preclusion through the law-of-the-case doctrine, and no one else has standing to assert it. The Government provided new evidence in its Motion to Dismiss, and General Flynn alone would have standing to oppose it on law-of-the-case grounds. He declines to do so.

[12] *See supra* n.10.

18

Finally, General Flynn's statements to the court relating to his plea do not constitute contempt because – as the Government so eloquently wrote – "[a]n intent to acquiesce in the prosecution's charges, even falsely, is not an intent to interfere with judicial proceedings themselves for purposes of contempt under Section 401(1)." *In re Michael T. Flynn,* Case no. 20-5143, Government's Brief for Writ Petition at 35.  Established Supreme Court precedent holds that "perjury alone does not constitute an 'obstruction' which justifies exertion of the contempt power." *In re Michael*, 326 U.S. 224, 228 (1945); *Ex parte Hudgings*, 249 U.S. 378, 383 (1919).

The only bad faith in this case occurred when it was investigated and brought—largely attributable to the "entirety of the lame duck usic with partisan axes to grind."  Regrettably, our "justice" system has become a conviction machine so powerful that innocent people are regularly compelled to "confess" guilt they do not have and plead to crimes they did not commit.   "[T]he prosecutor-dictated plea bargain system, by creating such inordinate pressures to enter into plea bargains, appears to have led a significant number of defendants to plead guilty to crimes they never actually committed."  Jed S. Rakoff, *Why Innocent People Plead Guilty*, The New York Review of Books (Nov. 20, 2014).

## VI.   Extraordinary Exculpatory Evidence Exposed Through the IG Reports, Declassification, and the Jensen Review Mandate Dismissal with Prejudice.

The prior prosecution team misled this court. Since appearance of new counsel, throughout the last year, and in opposing General Flynn's *Brady* motion, former Special AUSA Van Grack represented that prosecutors previously produced

all evidence favorable to General Flynn and material to guilt or innocence, *See* ECF No. 122.   He repeatedly claimed the government was "not in possession" of *Brady* evidence it was refusing to produce.   ECF Nos. 122, 132.   The court relied upon those misrepresentations and denied the *Brady* motion.   ECF No. 144.   We know the prosecutor lied and the court's findings were wrong. *See* ECF No. 198.   Indeed, it has come to light that the FBI, through Van Grack, withheld the most damning evidence until it was produced after the Jensen investigation, including a note from former FBI Deputy Director for Counterintelligence Bill Priestap indicating his concern that some in the FBI sought to interview Flynn so as to "get him to lie, so we can prosecute him or get him fired."   ECF No. 198, Ex. 10.   Indeed, directly contrary to this court's December 2019 finding, the Government now admits [and the new evidence shows] that the interview of General Flynn was untethered to, and unjustified by, the FBI's counterintelligence investigation of General Flynn.   ECF No. 198.   Moreover, the Attorney General of the United States himself explained publicly that the investigators "initially tried some theories of how they could open another investigation, which didn't fly.   And then they found out that they had not technically closed the earlier investigation.   And they kept it open for the express purpose of trying to catch, lay a perjury trap for General Flynn."   Catherine Herridge, *Attorney General William Barr on Michael Flynn, Obamacare and coronavirus restrictions—Transcript*, CBS (May 12, 2020, 1:37 PM), https://www.cbsnews.com/news/attorney-general-william-barr-on-michael-flynn-obamacare-and-coronavirus-restrictions-transcript/.   The transcripts now make plain

the Agents knew exactly what General Flynn had said, there was no "collusion," he was solely representing the best interests of the United States, and they had no legitimate reason to question him about anything. Yet, they planned and schemed to do so, to keep him "unguarded" and "relaxed," and to see them "as allies" all the while the "usic" intended to stab him in the back with any misstatement—or, as it turned out—completely fabricated "false statements." The only lawful result is dismissal.

This case is anything but a mere reversal of course. It is the result of evidence uncovered in at least three independent investigations—the first being by the Obama-appointed Inspector General Michael Horowitz who uncovered the blatantly biased text messages (and the affair) between Lisa Page, Special Counsel to Andrew McCabe, and FBI Counterintelligence Agent Peter Strzok. Other investigations into the actual facts of this prosecution have been and are being conducted by U.S. Attorney Jeff Jensen and U.S. Attorney John Durham.

The extraordinary exculpatory evidence has come to light over the last eighteen months, all of which establishes violations of government protocols, policies, and sometimes laws by the Government's agents themselves. Ex. 1 includes devastating text messages the defense recently found that were never produced to it by the Government. These are perhaps the most damning messages of the purely political motivation for the investigation and prosecution of General Flynn and evince another egregious *Brady* violation.

Strzok and Page discuss in their own private messaging their recognition that the "entirety of the lame duck usic" [U.S. Intelligence Community] has "partisan axes

21

to grind." Strzok relayed Bill Priestap's discomfort "with the outcome of mye [Clinton email investigation] and a concern "with over sharing." In particular, Strzok said Priestap didn't "want Clapper giving [Flynn transcripts of calls with Kislyak] to [Obama] WH, because it was "all political, just shows our hand and potentially makes enemies." Ex. 1. It is all of this new evidence that compelled the Government to move to dismiss with prejudice. These striking documents cannot be ignored. *See* ECF Nos. 198; 232-2 at 34.

The Government's Motion states: "After a considered review of all the facts and circumstances of this case, including newly discovered and disclosed information…the Government has concluded that the interview of General Flynn was untethered to, and unjustified by, the FBI's counterintelligence investigation…[the] continued prosecution of the charged crime does not serve substantial federal interest." ECF No. 198 at 2.

Since this court wrote ninety-two pages to deny each of General Flynn's requests for exculpatory evidence—including relevant Strzok-Page texts we had not received—significant productions of new evidence show the Government had no

legitimate basis to investigate General Flynn, to interview General Flynn, and much

less to prosecute General Flynn.[13]  In the interest of brevity, we summarize below.[14]

---

[13]   In its ninety-two-page decision denying General Flynn all exculpatory *Brady* material he requested, the court distinguished this case from *United States v. Stevens*, Criminal Action No. 08-231 (EGS) (D.D.C Apr. 1, 2009), because in *Stevens*, the government moved to dismiss the case upon admitting misconduct in the suppression of *Brady* evidence.  ECF No. 144 at 91.  That distinction is eviscerated with the Government's Motion to Dismiss here. Moreover, in *Stevens*, the government filed a mere two-page motion to dismiss.  Ex. 4.  Here, the Government has moved to dismiss in a hundred-page submission that includes 86 pages of new documentation that completely destroys the premise for any criminal charges.  This evidence was long sought by General Flynn but withheld by the prior prosecution team and its investigators and wrongly denied to him by this court.

[14]   Furthermore, any allegations regarding Turkey have no place in these proceedings and are entirely meaningless.  This is uncharged conduct which is within the prerogative of the Article II Executive alone.  There was no conspiracy with Turkey, nor were there false statements made pertaining to Turkey.  *See* Judge Trenga's Memorandum Opinion, *United States v. Rafiekian*, Case No. 1:18-cr-00457, ECF No. 372 at 11 "Neither the original nor superseding indictment in this case references Flynn as a member of the alleged conspiracy or as an agent of the Turkish government; and in response to the court's explicit questioning, the Government stated in open court that Flynn, who it planned to call as a witness, was not a member of the charged conspiracy and that it would not rely upon his testimony to establish the foundation for the admission of Alptekin's hearsay statements under Fed. R. Evid. 801(d)(2)(E))."  *See also Rafiekian*, ECF No. 213, June 13, 2019 Hearing Tr.  65:9-22.  ("...we do not contend that General Flynn was part of that conspiracy.").

Further, General Flynn did not knowingly make false statements.  In fact, General Flynn's counsel has thoroughly previously briefed this court on the redline edits made to the "statement of offense," negotiated with Mr. Van Grack on November 30, 2017, which specifically remove the language "as he then and there knew" regarding the allegedly "false" FARA statements.  *See* ECF No. 151.  Moreover, in evidence still withheld are General Flynn's briefings to the DIA on all foreign contacts.  In addition, it is only the Government's alleged false statements that were false.  Flynn Intel Group did nothing in secret.  Former CIA Director James Woolsey and former FBI executive Brian McCauley were at the only meeting that involved a "Turkish official."  General Flynn fully briefed DIA on that meeting, and on advice of counsel, Flynn Intel Group had timely filed a Lobbying Disclosure Act form.  Multiple lawyers and firms deemed no FARA registration was required at all.  ECF Nos. 160, Ex. 6, Ex. 17; 162, Ex. 3.

Per the Report of the Inspector General[15]:

- On December 15, 2019, the Government produced 637 pages of long-promised FD-302s and handwritten notes of the FBI Agents.  These included 113 pages of 16 FD-302s; 206 pages of FBI handwritten notes.

- The timeline is now clear as follows:

  o August 15, 2016:  Strzok and Page text about the "insurance policy" they discussed in McCabe's office.

  o August 16, 2016:  FBI opens the case against Flynn. IG Report at 2.

  o August 17, 2016: The first interview of General Flynn was conducted surreptitiously by slipping Agent Pientka into a presidential briefing to nominee Trump and General Flynn.  IG Report at 340-341.  This was unprecedented and a clear policy was added to prevent its reoccurrence.

- Agent Pientka's stated purpose of this interview was "to provide the recipients 'a baseline on the presence and threat posed by foreign intelligence services to the National Security of the U.S." IG Report at xviii.  In actuality, the Trump campaign was never given any defensive briefing about the alleged national security threats. IG Report at 55.

- "the FBI viewed that briefing as a possible opportunity to collect information potentially relevant to the Crossfire Hurricane and Flynn investigations." IG Report at 340.

- "One of the reasons for [Pientka's] selection was that ODNI had informed the FBI" that Flynn would be one of the three in attendance on behalf of the Trump campaign.  IG Report at 341.

- Pientka told the IG: "[T]he briefing provided him 'the opportunity to gain assessment and possibly have some level of familiarity with [Flynn]. So, should we get to the point where we need to do a subject interview...I would have that to fall back on.'" IG Report at 341.

- Agent Pientka said that his "assessment" meant: "[Flynn's] 'overall mannerisms.  That overall mannerisms and then also if there was anything specific to Russia, or anything specific to our investigation,

---

[15] Office of the Inspector General, U.S. Dept. of Justice, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, (December 2019, revised) (hereinafter "IG Report.")

that was mentioned by him, or quite frankly we had an . . . investigation, right. And any of the other two individuals in the room, if they, any kind of admission, or overhear, whatever it was there to record that.'" IG Report at 341.

- Agent Pientka was the Supervisor of Crossfire Hurricane. IG Report at 305.

- Agent Pientka helped pick the team of investigators for General Flynn. IG Report at 65.

- The agents interviewing General Flynn reported to Agent Pientka, and then Agent Pientka reported operational activities to Strzok. IG Report at 65.

- Bruce Ohr provided information collected by Christopher Steele, through his contract with Fusion GPS, to the FBI "out of the blue." IG Report at 99. Agent Pientka reviewed this information. IG Report at 100.

- Agent Pientka was responsible for making sure the FISA applications were *verified* by providing a "factual accuracy review," IG Report at 151, yet he included false and incomplete information for the court, and he failed to inform the court of significant exculpatory information.

- Agent Pientka even "speculated" that Steele's information was corroborated—when it was not—and he was responsible for numerous "inaccuracies," "omissions," and "unsupported statements" in the FISA applications. *See generally* IG Report at Chs. 5, 9.

- One of the FBI lawyers falsified a document in support of one of the FISA applications. IG Report at 160.

- Agent Pientka supervised Case Agent 1 (IG Report at 81) and withheld exculpatory information from the court that was material to determining warrants. IG Report at 232- 233.

- Unverified information from Source 2 (Halper) was used to obtain FISA warrants to wiretap Carter Page, and thus reach General Flynn. IG Report at 313-33. Halper was closed by the FBI in 2011 but reopened by Case Agent 1. Case Agent 1 reported to Agent Pientka during Crossfire Hurricane.

- "Agent Pientka told the OIG that he did not know about Source 2, or know that Case Agent 1 was Source 2's handler, prior to Case Agent 1

25

proposing the meeting [on August 11, 2016], which Agent Pientka approved." IG Report at 313.

- There was "no supporting documentation" to support that "Source 2 has routinely provided reliable information that has been corroborated by the FBI." IG Report at 418.

- Despite the lack of information, this was relied upon in the first FISA application, and the Steele dossier which included two references to General Flynn.

- "...during the presidential election campaign, the FBI was invited by ODNI to provide a baseline counterintelligence and security briefing (security briefing) as part of ODNI's strategic intelligence briefing given to members of both the Trump campaign and the Clinton campaign... We also learned that, because Flynn was expected to attend the first such briefing for members of the Trump campaign on August 17, 2016, the FBI viewed that briefing as a possible opportunity to collect information potentially relevant to the Crossfire Hurricane and Flynn investigations. We found no evidence that the FBI consulted with the Department leadership or ODNI officials about this plan." IG Report at 340.

- Strzok was primarily responsible for preparing Agent Pientka and "providing him with instruction on how to handle the FBI's portion of the ODNI strategic intelligence briefings, but others also assisted, including the Intel Section Chief and possibly Lisa Page." *Id.* at 342. "[H]e and Strzok created the briefing outline together, and he prepared himself through mock briefings attended by Strzok, Lisa Page, the Intel Section Chief, and possibly the OGC Unit Chief." IG Report at 340.

- Inspector General found "members of the Crossfire Hurricane team repeatedly failed to provide OI [Office of Intelligence] with all relevant information." IG Report at 362.

In addition:

- Mr. Van Grack made baseless threats to indict Michael G. Flynn as a material term of the plea agreement and required that this be kept between himself and the Covington attorneys to avoid the *Giglio* requirement. ECF No. 181, Exs. 1 & 2.

- FBI and DOJ leaders intended either to create an offense they could prosecute or at least get General Flynn fired. ECF No. 198, Ex. 10. This

is conveyed in handwritten notes of FBI executive Bill Priestap—produced in Mr. Jensen's review, and emails.

- "We have a case on Flynn and Russians.  Our goal is to resolve the case and to determine if Mike Flynn is going to tell the truth about his relationship with Russians."  At this time, the FBI knew it had no case on Flynn and Russians.  ECF No. 198, Ex. 10.

- "What is our goal?  Truth/Admission or to get him to lie, so we can prosecute him or get him fired?"  ECF No. 198, Ex. 10.

- "If we get him to admit to breaking the Logan Act, give facts to DOJ and have them decide."  ECF No. 198, Ex. 10.

- Note-writer Bill Priestap rethought their decision from the day before to refrain from showing Flynn the transcripts of the calls.  He urges McCabe to rethink it.  Nonetheless, the agents deviate from acknowledged standard procedure and do not show Flynn the actual transcripts to refresh his recollection.

- "Or, if he initially lies, then we present him [REDACT] and he admits it, document for DOJ and let them decide how to address it."  ECF No. 198, Ex. 10.

- "If we are seen as playing games, WH will be furious… protect our institution by not playing games."  ECF No. 198, Ex. 10.

- On April 29, 2020, the Government produced a production with more Page-Strzok texts.  These texts were later produced as Exhibit 7 in the Government's Motion to Dismiss.  ECF No. 198, Ex. 7.  These reflect that Agent Strzok rewrote the 302 so much he struggled to keep the "voice" of the original author.  Moreover, Ms. Page—"Special Counsel" to Deputy Director McCabe had a far greater hand in revising the 302 than previously represented.  She was not present for the interview and should have played no role in it.  Ex. 2.

- "Lisa, you didn't see it before my edits that went into what I sent you.  I was 1) trying to completely re-write the thing so as to save [Pientka's] voice and 2) get it out to you for general review and comment in anticipation of needing it soon.  I greatly appreciate your time in reviewing and your edits.  I incorporated them.  Thank you."  Ex. 2.

- "Should say 1) trying to not completely re-write…"  Ex. 2.

- After four months of investigation into General Flynn, the FBI "determined that CROSSFIRE RAZOR [General. Flynn] was no longer

27

a viable candidate as part of the larger Crossfire Hurricane umbrella case" and prepared to close their investigation. ECF No. 198, Ex. 1 at 3.

- The FBI was already monitoring Flynn's calls. It almost immediately knew of his contact with Ambassador Kislyak. ECF No. 198, Ex. 5 (Comey Testimony). Comey/McCabe ordered the investigation continued despite having transcripts of those calls that continued to be exculpatory. *Id.*

-  When Strzok learned that the investigation into General Flynn had not been formally closed, he relayed the "serendipitously good" news to Lisa Page and Strzok ordered the FBI to keep the investigation open per instructions from the 7th floor. ECF No. 198, Ex. 7 at 1-2.

- Mary McCord FD-302, Sally Yates FD-302 and March 2, 2017, James Comey Interview transcript produced for the first time. ECF No. 198, Exs. 3, 4, & 5.

- Mr. Comey says it is "possible" but "struck me as a bit out of reach, though, honestly" when asked whether he agreed with Ms. Yates that General Flynn was blackmailable because of his communications with the Russian Ambassador. ECF No. 198, Ex. 5 at 14.

- As FBI agents creatively brainstormed ways to charge Flynn under the impotent and unconstitutional Logan Act, Lisa Page reaches out to Peter Strzok and other FBI personnel asking... ECF No. 198, Ex. 9 at 6.

   o Page: "Could the admonition re 1001 be given at the beginning at the interview? Or does it have to come following a statement which agents believe to be false? It seems to be if the former, then it would be an easy way to just casually slip that in. 'Of course as you know sir, federal law makes it a crime to...'" ECF No. 198, Ex. 9 at 7.

      FBI reply: "....If I remember correctly, you can say it at any time." ECF No. 198, Ex. 9 at 6.

   o However, the agents deliberately chose not even to mention Section 1001—much less actually warn him. In fact, according to Comey himself, they just sent the agents to the White House without telling him anything. ECF No. ECF No. 133 at n.7. This is in addition to deliberately violating protocol to avoid White House Counsel and DOJ.

Amicus elides the reality of the egregious government misconduct of the FBI Agents—particularly that of Comey, McCabe, Strzok, Page, Pientka, Priestap and others who met repeatedly to pursue the targeted "take-out" of General Flynn for their political reasons and those of the "entirety lame duck usic."  Much of this has been revealed in the December 19, 2019, IG Report, the 86 pages of newly produced exonerating material produced by U.S. Attorney Jensen, filed in the Government's Motion to Dismiss (ECF No. 198), and hundreds of the texts between Strzok and Page demonstrating abject bias.  *See* ECF No. 133 at 11 and Exs. 1, 2.

Amicus is lost down the rabbit hole on the other side of the looking glass— where "nothing would be what it is, because everything would be what it isn't.  And contrary wise, what is, it wouldn't be.  And what it wouldn't be, it would."[16] Restoring and applying the Rule of Law requires accepting the reality that this court lacks authority or reason to take any action other than to dismiss this prosecution.

## CONCLUSION

A federal judge once wrote:

> [A] prosecutor can do justice by the simple act of going back into court and agreeing that justice should be done.  * * *
>
> It is easy to be a tough prosecutor. Prosecutors are almost never criticized for being aggressive, or for fighting hard to obtain the maximum sentence, or for saying "there's nothing we can do" about an excessive sentence after all avenues of judicial relief have been exhausted. Doing justice can be much harder. It takes time and involves work, including careful consideration of the circumstances

---

[16]  Lewis Carroll, *Alice's Adventures in Wonderland & Through the Looking-Glass* (1871).

of particular crimes, defendants, and victims—and often the relevant events occurred in the distant past. It requires a willingness to make hard decisions, including some that will be criticized.

This case is a perfect example.   *   *   *

By contrast, the decision []he has made required considerable work. Assistant United States Attorney . . . had to retrieve and examine a[n] . . . old case file. . . . He requested and obtained an adjournment so his office could have the time necessary to make an extremely important decision. United States Attorneys' offices work with limited resources. The effort that went into deciding whether to agree to vacate [two counts against defendant] could have been devoted to other cases.   *   *   *

This is a significant case, and not just for [the defendant]. It demonstrates the difference between a Department of Prosecutions and a Department of Justice. It shows how the Department of *Justice*, as the government's representative in every federal criminal case, has the power to walk into courtrooms and ask judges to remedy injustices.[17]

For these reasons and those stated in our other briefs, the only lawful action this court can take is to dismiss the case with prejudice on the Government's motion and vacate the plea.  There never should have been so much as an investigation—much less an assassination by political prosecution of General Flynn—a distinguished patriot of thirty-three years of exemplary service in total devotion to this country.

---

[17] *United States v. Holloway*, 68 F. Supp. 3d 310, 311, 316 (E.D. NY 2014) (Judge John Gleeson applauding U.S. Attorney Loretta Lynch for moving to vacate two counts of three counts against a defendant who had stolen three cars at gunpoint and received an extreme sentence).

Dated: June 17, 2020                        Respectfully submitted,

/s/ Jesse R. Binnall                        /s/ Sidney Powell
Jesse R. Binnall                            *Sidney Powell
*Lindsay R. McKasson                        *Molly McCann
**Abigail C. Frye                           Sidney Powell, P.C.
Harvey & Binnall, PLLC                      2911 Turtle Creek Blvd.,
717 King Street, Suite 300                  Suite 300
Alexandria, VA 22314                        Dallas, Texas 75219
Tel: (703) 888-1943                         Tel (214) 707-1775
Fax: (703) 888-1930                         sidney@federalappeals.com
jbinnall@harveybinnall.com                  molly@federalappeals.com
lmckasson@harveybinnall.com


\* Admitted *Pro Hac Vice*
\*\**Pro Hac Vice Application*
Forthcoming

31

# CERTIFICATE OF SERVICE

I hereby certify that on June 17, 2020 I electronically filed the foregoing brief with the Clerk of Court by using the CM/ECF system.  I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Respectfully submitted,

*/s/* Jesse R. Binnall
Jesse R. Binnall, VSB# 79272
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com