# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued June 12, 2020                    Decided June 24, 2020

No. 20-5143

IN RE: MICHAEL T. FLYNN,
PETITIONER

———

On Emergency Petition for a Writ of Mandamus

———

*Sidney Powell* argued the cause for petitioner. With her on the petition for a writ of mandamus were *Molly McCann* and *Jesse R. Binnall*.

*Jeffrey B. Wall*, Deputy Solicitor General, U.S. Department of Justice, argued the cause for respondent United States of America. With him on the response to the petition for a writ of mandamus were *Noel J. Francisco*, Solicitor General, *Eric J. Feigin*, Deputy Solicitor General, *Frederick Liu*, Assistant to the Solicitor General, *Kenneth C. Kohl*, Acting Principal Assistant U.S. Attorney, and *Jocelyn Ballantine*, Assistant U.S. Attorney.

*David Yost*, Attorney General, Office of the Attorney General for the State of Ohio, *Benjamin M. Flowers*, Solicitor General, *Steve Marshall*, Attorney General, Office of the Attorney General for the State of Alabama, *Kevin G. Clarkson*, Attorney General, Office of the Attorney General for the State of Alaska, *Leslie Rutledge*, Attorney General, Office of the Attorney General for the State of Arkansas, *Ashley Moody*, Attorney General, Office of the Attorney General for the State

2

of Florida, *Christopher M. Carr*, Attorney General, Office of the Attorney General for the State of Georgia, *Jeff Landry*, Attorney General, Office of the Attorney General for the State of Louisiana, *Lynn Fitch*, Attorney General, Office of the Attorney General for the State of Mississippi, *Eric Schmitt*, Attorney General, Office of the Attorney General for the State of Missouri, *Timothy C. Fox*, Attorney General, Office of the Attorney General for the State of Montana, *Mike Hunter*, Attorney General, Office of the Attorney General for the State of Oklahoma, *Alan Wilson*, Attorney General, Office of the Attorney General for the State of South Carolina, *Ken Paxton*, Attorney General, Office of the Attorney General for the State of Texas, *Sean D. Reyes*, Attorney General, Office of the Attorney General for the State of Utah, and *Patrick Morrisey*, Attorney General, Office of the Attorney General for the State of West Virginia, were on the brief for *amici curiae* the States in support of petitioner.

*William J. Olson*, *Jeremiah L. Morgan*, *Herbert W. Titus*, and *Robert J. Olson* were on the brief for *amici curiae* Former United States Attorney General Edwin Meese III and Conservative Legal Defense and Education Fund in support of petitioner.

*Jerome M. Marcus* was on the brief for *amici curiae* Eleven Members of the United States House of Representatives in support of petitioner.

*John Reeves*, *pro se*, was on the brief for *amicus curiae* John M. Reeves in support of petitioner and the United States.

*Michael H. McGinley* was on the brief for *amici curiae* Majority Leader Mitch McConnell and Senators Tom Cotton,

3

Mike Braun, Kevin Cramer, Ted Cruz, Charles E. Grassley, and Rick Scott in support of the United States.

*Leslie McAdoo Gordon* was on the brief for *amicus curiae* Federal Practitioners in support of petitioner and the United States.

*Eric B. Rasmusen*, *pro se*, was on the brief for *amicus curiae* Professor Eric Rasmusen in support of petitioner.

*Beth A. Wilkinson* argued the cause for respondent Judge Emmet G. Sullivan. With her on the response to the petition for a writ of mandamus were *Kosta S. Stojilkovic* and *Rakesh Kilaru*.

*Eugene R. Fidell*, *Stanley J. Marcus*, and *Gershon M. Ratner* were on the brief for *amicus curiae* Lawyers Defending American Democracy, Inc. in support of respondent.

*Lawrence Robbins*, *Alan E. Untereiner*, *D. Hunter Smith*, and *William W. Taylor III* were on the brief for *amicus curiae* Watergate Prosecutors in support of respondent.

*Daniel E. Jackson* and *John W. Keker* were on the brief for *amicus curiae* Former Federal District Court Jurists in support of respondent.

*Gregory S. Smith* was on the brief for *amicus curiae* New York City Bar Association in support of respondent.

Before: HENDERSON, WILKINS, and RAO, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* RAO.

4

Opinion dissenting in part filed by *Circuit Judge* WILKINS.

RAO, *Circuit Judge*: Michael Flynn, former National Security Advisor to President Donald J. Trump, pleaded guilty to making false statements under 18 U.S.C. § 1001. Before sentencing, Flynn moved to withdraw his plea, alleging that the government failed to produce material exculpatory evidence and breached the plea agreement. Several months later, the U.S. Attorney for the District of Columbia filed a motion to dismiss all charges. *See* FED. R. CRIM. P. 48(a) ("The government may, with leave of court, dismiss an indictment, information, or complaint."). In its motion, the government explains that in light of newly discovered evidence of misconduct by the Federal Bureau of Investigation, the prosecution can no longer prove beyond a reasonable doubt that any false statements made by Flynn were material to a legitimate investigation—an element the government contends is necessary under Section 1001. *See United States v. Gaudin*, 515 U.S. 506, 509 (1995). The government's motion to dismiss also explains that "continued prosecution of the charged crime does not serve a substantial federal interest." Gov't Mot. Dismiss Criminal Information, No. 1:17-cr-232, ECF No. 198, at 2 (May 7, 2020). The district judge currently presiding over the case has yet to decide the government's motion. Instead, he has appointed an amicus to present arguments in opposition to the government's motion and to address whether Flynn should be held in criminal contempt for perjury. The district judge has also scheduled a hearing on these questions for July 16, 2020.

Flynn petitioned for a writ of mandamus before this court pursuant to the All Writs Act, 28 U.S.C. § 1651, seeking three forms of relief: (1) an order directing the district court to grant the motion to dismiss; (2) an order vacating the amicus appointment; and (3) an order reassigning the case to a different

5

district judge. For this court to grant a writ of mandamus, "the right to relief must be 'clear and indisputable'; there must be 'no other adequate means to attain the relief'; and 'the issuing court, in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" *In re Cheney*, 544 F.3d 311, 312–13 (D.C. Cir. 2008) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380–81 (2004)). Applying these standards, we grant Flynn's petition in part.

Although Rule 48 requires "leave of court" before dismissing charges, "decisions to dismiss pending criminal charges—no less than decisions to initiate charges and to identify which charges to bring—lie squarely within the ken of prosecutorial discretion." *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016). "To that end, the Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges." *Id.*; *see also Newman v. United States*, 382 F.2d 479, 480 (D.C. Cir. 1967) ("Few subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding … whether to dismiss a proceeding once brought."). The Judiciary's role under Rule 48 is thus confined to "extremely limited circumstances in extraordinary cases." *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981); *United States v. Ammidown*, 497 F.2d 615, 621 (D.C. Cir. 1973) (emphasizing that Rule 48 motions must be granted "in the overwhelming number of cases"). More specifically, "[t]he principal object of the 'leave of court' requirement is … to protect a defendant against prosecutorial harassment … when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977). Rule 48 thus "gives no power to a district court to deny a prosecutor's … motion to dismiss charges based on a

6

disagreement with the prosecution's exercise of charging authority." *Fokker Servs.*, 818 F.3d at 742.[1]

Whatever the precise scope of Rule 48's "leave of court" requirement, this is plainly not the rare case where further judicial inquiry is warranted. To begin with, Flynn agrees with the government's motion to dismiss, and there has been no allegation that the motion reflects prosecutorial harassment. Additionally, the government's motion includes an extensive discussion of newly discovered evidence casting Flynn's guilt into doubt. *See* Mot. to Dismiss, ECF No. 198. Specifically, the government points to evidence that the FBI interview at which Flynn allegedly made false statements was "untethered to, and unjustified by, the FBI's counterintelligence investigation into Mr. Flynn." *Id.* at 2. In light of this evidence, the government maintains it cannot "prove either the relevant false statements or their materiality beyond a reasonable doubt." *Id.* Insufficient evidence is a quintessential justification for dismissing charges. *See Ammidown*, 497 F.2d at 623 (explaining that a motion to dismiss should be granted "if it is explained to the judge that there was … an insufficiency of evidence … or other similar consideration").

The government's representations about the insufficiency of the evidence are entitled to a "presumption of regularity …

---

[1] In response to the petition, the district judge argues greater judicial scrutiny is warranted when a Rule 48(a) motion is filed after a guilty plea because formal judicial action has already been taken. Yet this claim conflicts with black letter law: "Rule 48(a) continues to apply even after conviction and sentencing while the case is on direct appeal, and the same standard applies to a government request for dismissal at that stage as applies if the request came prior to trial." 3B WRIGHT & MILLER, FED. PRAC. & PROC. CRIM. § 802 (4th ed. 2013).

7

in the absence of clear evidence to the contrary." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quotation marks omitted). On the record before the district court, there is no clear evidence contrary to the government's representations. The justifications the district court offers in support of further inquiry—for instance, that only the U.S. Attorney signed the motion, without any line prosecutors, and that the motion is longer than most Rule 48(a) motions—are insufficient to rebut the presumption of regularity to which the government is entitled.

These clearly established legal principles and the Executive's "long-settled primacy over charging decisions," *Fokker Servs.*, 818 F.3d at 743, foreclose the district court's proposed scrutiny of the government's motion to dismiss the Flynn prosecution. Before this court, the district judge explains that he plans to "question the bona fides of the government's motion," Sullivan Response 29 (quotation marks omitted), "inquire about the government's motions and representations," Sullivan Reply 26, "illuminat[e] the full circumstances surrounding the proposed dismissal," *id.* at 12, and probe "whether the presumption of regularity for prosecutorial decisions is overcome" in "the unusual facts of this case," Sullivan Response 3. A hearing may sometimes be appropriate before granting leave of court under Rule 48; however, a hearing cannot be used as an occasion to superintend the prosecution's charging decisions, because "authority over criminal charging decisions resides fundamentally with the Executive, without the involvement of—and without oversight power in—the Judiciary." *Fokker Servs.*, 818 F.3d at 741. The district court's orders appointing an amicus, *see infra* 8–10, and scheduling the proposed hearing therefore constitute clear legal error.

8

Because legal errors ordinarily may be corrected on appeal, a writ of mandamus is proper only if there is "no other adequate means to attain … relief." *Cheney*, 542 U.S. at 380. Although "an abstract concern with the separation of powers," does not rise to the level of an irreparable injury, *In re Al Nashiri*, 791 F.3d 71, 79–81 (D.C. Cir. 2015), we have found the requisite harm as a matter of course when a party alleges the district court's action usurps a specific executive power. *See In re Cheney*, 406 F.3d 723, 731 (D.C. Cir. 2005) (en banc); *Fokker Servs.*, 818 F.3d at 749; *Cobell v. Norton*, 334 F.3d 1128, 1139–40 (D.C. Cir. 2003); *In re Sealed Case No. 98-3077*, 151 F.3d 1059, 1065–66 (D.C. Cir. 1998).

In this case, the district court's actions will result in specific harms to the exercise of the Executive Branch's exclusive prosecutorial power. The contemplated proceedings would likely require the Executive to reveal the internal deliberative process behind its exercise of prosecutorial discretion, interfering with the Article II charging authority. *Newman*, 382 F.2d at 481 (citing *United States v. Cox*, 342 F.2d 167, 171 (5th Cir. 1965)). Thus, the district court's appointment of the amicus and demonstrated intent to scrutinize the reasoning and motives of the Department of Justice constitute irreparable harms that cannot be remedied on appeal. *See Cobell*, 334 F.3d at 1140 ("[I]nterference with the internal deliberations of a Department of the Government of the United States … cannot be remedied by an appeal from the final judgment."); *see also Cheney*, 542 U.S. at 382.

We must also assure ourselves that issuance of the writ "is appropriate under the circumstances." *Cheney*, 542 U.S. at 381. The circumstances of this case demonstrate that mandamus is appropriate to prevent the judicial usurpation of executive power. The first troubling indication of the district court's

9

mistaken understanding of its role in ruling on an unopposed Rule 48(a) motion was the appointment of John Gleeson to "present arguments *in opposition to* the government's Motion." Order Appointing Amicus Curiae, No. 1:17-cr-232, ECF No. 205, at 1 (May 13, 2020) (emphasis added). Whatever the extent of the district court's "narrow" role under Rule 48(a), *see Fokker Servs.*, 818 F.3d at 742, that role does not include designating an advocate to defend Flynn's continued prosecution. The district court's order put two "coequal branches of the Government … on a collision course." *Cheney*, 542 U.S. at 389. The district court chose an amicus who had publicly advocated for a full adversarial process. Based on the record before us, the contemplated hearing could require the government to defend its charging decision on two fronts— answering the district court's inquiries as well as combatting Gleeson's arguments. Moreover, the district court's invitation to members of the general public to appear as amici suggests anything but a circumscribed review. *See* May 12, 2020, Minute Order, No. 1:17-cr-232. This sort of broadside inquiry would rewrite Rule 48(a)'s narrow "leave of court" provision.

And we need not guess if this irregular and searching scrutiny will continue; it already has. On May 15, Gleeson moved for permission to file a brief addressing, among other things, "any additional factual development [he] may need before finalizing [his] argument" and suggesting a briefing and argument schedule. Mot. to File Amicus Br., No. 1:17-cr-232, ECF No. 209, at 1–2 (May 15, 2020). The district court granted the motion and then set a lengthy briefing schedule and a July 16, 2020, hearing. *See* May 19, 2020, Minute Order, No. 1:17-cr-232. In his brief opposing the government's motion, Gleeson asserted the government's reasons for dismissal were "pretext" and accused the government of "gross prosecutorial abuse." Amicus Br., No. 1:17-cr-232, ECF No. 225, at 38–59 (June 10,

10

2020). He relied on news stories, tweets, and other facts outside the record to contrast the government's grounds for dismissal here with its rationales for prosecution in other cases. *See id.* at 43, 46–47, 57–59.

These actions foretell not only that the scrutiny will continue but that it may intensify. Among other things, the government may be required to justify its charging decisions, not only in this case, but also in the past or pending cases cited in Gleeson's brief. Moreover, Gleeson encouraged the district court to scrutinize the government's view of the strength of its case—a core aspect of the Executive's charging authority. *See In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (condemning district court's failure to dismiss criminal charges based on its view that "the government has exaggerated the risk of losing at trial"). As explained above, our cases are crystal clear that the district court is without authority to do so. *See Fokker Servs.*, 818 F.3d at 742; *Ammidown*, 497 F.2d at 623.

Finally, each of our three coequal branches should be encouraged to self-correct when it errs. If evidence comes to light calling into question the integrity or purpose of an underlying criminal investigation, the Executive Branch must have the authority to decide that further prosecution is not in the interest of justice.[2] As the Supreme Court has explained, "the capacity of prosecutorial discretion to provide individualized justice is firmly entrenched in American law. …

---

[2] *See* U.S. Dep't of Justice, Justice Manual § 9-27.200 cmt. (2020) ("[A]s a matter of fundamental fairness and in the interest of the efficient administration of justice, no prosecution should be initiated against any person unless the attorney for the government believes that the admissible evidence is sufficient to obtain and sustain a guilty verdict by an unbiased trier of fact.").

11

[A] system that did not allow for discretionary acts of leniency would be totally alien to our notions of criminal justice." *McCleskey v. Kemp*, 481 U.S. 279, 311–12 (1987) (quotation marks omitted); *see also United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995) ("[T]he duty of the United States Attorney [is] not simply to prosecute but to do justice.") (quotation marks omitted). In the third branch, when a district court oversteps, the mandamus remedy allows the court of appeals to prevent encroachment on a coequal department. *See Cheney*, 542 U.S. at 382 ("Accepted mandamus standards are broad enough to allow a court of appeals to prevent a lower court from interfering with a coequal branch's ability to discharge its constitutional responsibilities.").

Because this is not the unusual case where a more searching inquiry is justified, and because there is no adequate remedy for the intrusion on "the Executive's long-settled primacy over charging decisions," *Fokker Servs.*, 818 F.3d at 743, we grant the petition for mandamus in part and order the district court to grant the government's Rule 48(a) motion to dismiss the charges against Flynn.

We deny Flynn's petition to the extent he seeks reassignment of the district judge. This case does not meet the "high bar" for reassignment, *id.* at 751, which would be appropriate only if the district judge's conduct was "so extreme as to display clear inability to render fair judgment," *Liteky v. United States*, 510 U.S. 540, 551 (1994). Flynn focuses primarily on comments the district judge made at sentencing, but "judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Id.* at 555; *see also In re Barry*, 946 F.2d 913, 914 (D.C. Cir. 1991) ("[A] trial judge is entitled to form his own

12

judgment as to the conduct of a defendant and to take that judgment into account in sentencing."). In light of these precedents, the district judge's conduct did not indicate a clear inability to decide this case fairly. We decline to reassign the case to a new judge simply to grant the government's Rule 48(a) motion to dismiss.

\* \* \*

We include the following responses to the dissenting opinion in order to clarify the extent to which the dissent's arguments are foreclosed by longstanding precedent and fundamental separation of powers principles.

*First*, the dissent glosses over the presumption of regularity to which the Executive is entitled in the exercise of its prosecutorial discretion. While the district court is not a "rubber stamp" when considering whether to grant "leave of court" under Rule 48, *Ammidown*, 497 F.2d at 622, any judicial inquiry is strictly bounded by the presumption of regularity, and the presumption is overcome only in extraordinary cases and by "clear evidence to the contrary," *Armstrong*, 517 U.S. at 464. The dissent fundamentally misstates our opinion by insisting we hold "a district court *may not even consider* [a Rule 48 motion] before giving its 'leave.'" Dissenting Op. 3. Perhaps that is to distract from the simple fact that neither the dissent nor the district judge has identified a legitimate basis to rebut the presumption here. Our precedents emphatically leave prosecutorial charging decisions to the Executive Branch and hold that a court may scrutinize a motion to dismiss only on the extraordinary showing of harassment of the defendant or malfeasance such as bribery—neither of which is manifest in the record before the district court. *See supra* 6–7. The dissent argues the presumption is overcome in this case because of the

13

government's "complete reversal" in moving to dismiss charges it previously supported. Dissenting Op. 17–18. Yet the government *necessarily* reverses its position whenever it moves to dismiss charges under Rule 48(a), and so the reversal standing alone cannot provide the irregularity. Given the absence of any legitimate basis to question the presumption of regularity, there is no justification to appoint a private citizen to oppose the government's motion to dismiss Flynn's prosecution. *See Newman*, 382 F.2d at 482.[3]

*Second*, the dissent undermines our recent decision in *Fokker Services* by recasting its necessary and well-considered reasoning as dicta. In that case, we relied on "settled constitutional understandings" to determine that Rule 48(a)'s "leave of court" requirement "confers no new power in the courts to scrutinize and countermand the prosecution's exercise of its traditional authority over charging and enforcement decisions." *Fokker Servs.*, 818 F.3d at 741, 743. This part of the opinion is binding because the narrow interpretation of Rule 48(a) was essential to our interpretation of the Speedy Trial Act's parallel "approval of the court" requirement. *Id.* at 743; *see also Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 67 (1996) (explaining that courts are bound by "those portions of the opinion necessary to th[e] result"). The dissent attempts to limit the holding of *Fokker Services* to its "particular legal

---

[3] The dissent's only remaining argument relating to the presumption of regularity is that the government is purportedly misinterpreting Section 1001's materiality element. Dissenting Op. 18. The question before us, however, is not whether the Executive's legal theory is ultimately correct, but whether the Executive has the constitutional discretion to end this prosecution—which for the reasons already discussed, it plainly does. In the initiation and cessation of a prosecution, it is the Executive's view of the law that matters, not ours, because of its authority over criminal charging decisions.

14

context," Dissenting Op. 4, but the decision is fundamentally about the scope of the Executive's constitutional charging authority. As such, it is directly controlling here.

*Third*, the dissent asserts our adherence to *Fokker Services* creates a circuit split. Dissenting Op. 4. Yet if a split exists, a proposition we dispute, it would be a result of *Fokker Services*' binding interpretation of Rule 48(a). Even on the dissent's view that we should limit our reading of the case, the dissent's proposed free-ranging public interest inquiry reaches beyond anything in our precedents. The level of scrutiny "left open" by Rule 48(a), Dissenting Op. 6, must be understood in light of the respective constitutional powers assigned to the Judiciary and the Executive, which suggests a natural limit on the appropriate judicial inquiry. The district court has no mechanism by which it can maintain a prosecution in the absence of the Executive Branch moving forward. Therefore, while the district court may check for regularity and ensure that a defendant is not being harassed by a motion to dismiss, its decision cannot turn on "what the judge independently consider[s] best in the public interest." *Ammidown*, 497 F.2d at 623.[4] A court should not

---

[4] The dissent maintains that the Supreme Court in *Rinaldi* and *Thompson v. United States* conducted an "independent evaluation" of the record to determine whether an unopposed Rule 48(a) motion should be granted. Dissenting Op. 10 (quoting 434 U.S. at 30; 444 U.S. 248, 250 (1980)). Yet the references to an "independent evaluation" reflect the unremarkable proposition that, unlike a district court, a court of review like this court or the Supreme Court is limited to reviewing the facts included in the record. *See, e.g.*, *United States v. Bell*, 708 F.3d 223, 225 (D.C. Cir. 2013) ("[O]n appeal we are limited to the record in the district court."); FED. R. APP. P. 10. The Supreme Court's mention of an "independent evaluation" or "independent examination" does not support the authority of a district court—which is ordinarily not limited to a

15

second-guess the prosecutor's evaluation of the evidence except in the "blatant and extreme case" where "the dismissal has no basis in fact" whatsoever. *Id.* at 621, 622. The dissent would sanction an expansive judicial inquiry under Rule 48(a) that runs afoul of Supreme Court precedent, this court's precedent, and out of circuit precedent. *See ICC v. Bhd. of Locomotive Engineers*, 482 U.S. 270, 283 (1987) ("[I]t is entirely clear that the refusal to prosecute cannot be the subject of judicial review."); *Fokker*, 818 F.3d at 743; *In re United States*, 345 F.3d at 454.[5]

*Fourth*, although our dissenting colleague apparently agrees there is no need to cite a case on all fours before granting mandamus relief, he faults the majority for failing to identify a case in which mandamus was granted in nearly identical circumstances. Dissenting Op. 1, 7, 13. *Fokker Services*, however, directly rejects such a requirement: "[W]e have never required the existence of a prior opinion addressing the precise

---

closed record—under Rule 48(a) to develop its own record of the prosecution's charging decisions through the appointment of a private amicus or otherwise.

[5] The dissent relies upon the Fifth Circuit's "betrayal of the public trust" language to authorize courts to impose their independent conception of the public interest upon the Executive. Dissenting Op. 5 (quoting *Hamm*, 659 F.2d at 629). As our sister circuits have explained, such a "betrayal" arises only where there is clear evidence of misconduct such as "bribery, animus towards the victim, or a desire to attend a social event," *United States v. HSBC Bank USA*, 863 F.3d 125, 141 (2d Cir. 2017), or a federal prosecutor "acting alone rather than at the direction or with the approval of the Justice Department," *In re United States*, 345 F.3d at 454. *See also Hamm*, 659 F.2d at 629–30 (noting "extremely limited circumstances" for judicial oversight such as when a prosecutor accepts a bribe). Such circumstances are not alleged here.

16

factual circumstances or statutory provision at issue in order to find clear error justifying mandamus relief." 818 F.3d at 749–50. In any event, as explained above, *Fokker Services* directly forecloses the district court's actions in these circumstances. Some questions regarding Rule 48(a) may be "unsettled," as the dissent maintains, but there is nothing unsettled about the principle that a district court cannot second-guess prosecutorial discretion where there has been no indication of irregularity. The novelty of the district court's usurpation of power heightens rather than lessens the need for mandamus. *Fokker Servs.*, 818 F.3d at 750.

*Fifth*, the dissent minimizes the import of the district court's orders, claiming that we are granting mandamus "before the district court has acted." Dissenting Op. 2 (quotation marks omitted). Yet the district court *has* acted here. It has ordered briefing and scheduled a hearing in order to provide a court-appointed amicus the opportunity "to present arguments in opposition to the government's Motion to Dismiss." Order Appointing Amicus Curiae, ECF No. 205, at 1. In other words, the court has appointed one private citizen to argue that another citizen should be deprived of his liberty regardless of whether the Executive Branch is willing to pursue the charges. Although no decision has yet been made on the motion to dismiss, the district court's judicial supervision, detailed *supra* 7–8, "threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry." *Wayte v. United States*, 470 U.S. 598, 607–08 (1985). As explained above, we have held such "interference with the internal deliberations" of the Executive Branch to be a quintessential irreparable injury giving rise to mandamus. *Cobell*, 334 F.3d at 1140–43.

17

*Sixth*, the dissent maintains that mandamus must focus exclusively on the petitioner's harms, not the government's, because the government has not formally petitioned for mandamus. Dissenting Op. 7–10 & n.2. Our court has squarely rejected this argument. In *Cobell*, we granted mandamus on the basis of irreparable injury to the Executive Branch in the absence of a "separate petition for mandamus" filed by the government. *See Cobell*, 334 F.3d at 1140 n.*; *see also Ex parte Peru*, 318 U.S. 578, 587–88 (1943) (relying on harm to the Executive, namely "embarrass[ing] the executive arm of the Government in conducting foreign relations," to grant a mandamus petition to a foreign sovereign without requiring a separate government petition). Here, we invited the government to respond, and at argument the government offered to file a petition at the court's request. Oral Arg. Tr. 46–47. The Executive Branch is not just any "different party," Dissenting Op. 8 (emphasis omitted), but a coequal branch of government responsible for prosecutorial decisions. *See Cheney*, 542 U.S. at 390 ("As this case implicates the separation of powers, the Court of Appeals must also ask, as part of th[e mandamus] inquiry, whether the District Court's actions constituted an unwarranted impairment of another branch in the performance of its constitutional duties."). Therefore, we must consider the irreparable harms to the Executive in a case such as this, in which the government has moved to dismiss. *Cf. Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 356–57 (D.C. Cir. 2007) (noting it would be appropriate to examine separation of powers harms to the Executive if it had joined the petitioner's mandamus request or "requested the dismissal of the action" below).

*Seventh*, the dissent swings for the fences—and misses—by analogizing a Rule 48(a) motion to dismiss with a selective prosecution claim. Of course, the Executive may not

18

"selectively prosecute[] someone based on impermissible considerations." *In re Aiken Cty.*, 725 F.3d 255, 264 n.7 (D.C. Cir. 2013). But "the equal protection remedy is to dismiss the prosecution, not to compel the Executive to bring another prosecution." *Id.* (citing *Armstrong*, 517 U.S. at 459, 463). When the court scrutinizes a selective prosecution claim, it exercises the core Article III power by protecting individuals from improper and unconstitutional prosecutions. *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 816 (1987) (Scalia, J., concurring in the judgment) ("The judicial power … includes the power to serve as a neutral adjudicator in a criminal case."). Yet unwarranted judicial scrutiny of a prosecutor's motion to dismiss places the court in an entirely different position. Rather than allow the Executive Branch to dismiss a problematic prosecution, the court assumes the role of inquisitor, prolonging a prosecution deemed illegitimate by the Executive. Judges assume that role in some countries, but Article III gives no prosecutorial or inquisitorial power to federal judges. *See id.* ("The judicial power … does not include the power to seek out law violators in order to punish them."); *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020) ("[C]ourts … do not, or should not, sally forth each day looking for wrongs to right. They wait for cases to come to them.") (citation and quotation marks omitted). To suggest that judicial *dismissal* of an improper prosecution is analogous to the judicial *continuation* of an improper prosecution turns the separation of powers on its head.

Ultimately, the dissent fails to justify the district court's unprecedented intrusions on individual liberty and the Executive's charging authority. This is not a case about whether "a district judge may even hold a hearing on a Rule 48(a) motion." Dissenting Op. 11 (emphasis omitted). Rather, it is about whether, after the government has explained why a

19

prosecution is no longer in the public interest, the district judge may prolong the prosecution by appointing an amicus, encouraging public participation, and probing the government's motives. On that, both the Constitution and cases are clear: he may not.

\* \* \*

For the foregoing reasons, we grant Flynn's petition for a writ of mandamus in part and direct the district court to grant the government's Rule 48(a) motion to dismiss. In light of that grant, we vacate the district court's order appointing an amicus as moot. *See Great W. Sugar Co. v. Nelson*, 442 U.S. 92, 94 (1979).

*So ordered.*

WILKINS, *Circuit Judge*, dissenting in part: It is a great irony that, in finding the District Court to have exceeded its jurisdiction, this Court so grievously oversteps its own. This appears to be the first time that we have issued a writ of mandamus to compel a district court to rule in a particular manner on a motion without first giving the lower court a reasonable opportunity to issue its own ruling; the first time any court has held that a district court must grant "leave of court" pursuant to Federal Rule of Criminal Procedure 48(a) without even holding a hearing on the merits of the motion; and the first time we have issued the writ even though the petitioner has an adequate alternative remedy, on the theory that *another party* would not have had an adequate alternate remedy *if it had filed a petition as well*. Any one of these is sufficient reason to exercise our discretion to deny the petition; together, they compel its rejection. I therefore respectfully dissent from the majority's grant of the writ.

## I.

Mandamus is a "drastic and extraordinary remedy," *Cheney v. U.S. Dist. Court for D.C.*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)), and its "three threshold requirements are jurisdictional," such that the absence of any one compels denial of the writ and dismissal of the petition for want of jurisdiction, *Am. Hosp. Ass'n v. Burwell*, 812 F.3d 183, 189 (D.C. Cir. 2016); *see also In re Kellogg Brown & Root, Inc.*, 756 F.3d 754, 760 (D.C. Cir. 2014) ("[T]hree conditions must be satisfied before a court grants a writ of mandamus: (1) the mandamus petitioner must have 'no other adequate means to attain the relief he desires,' (2) the mandamus petitioner must show that his right to the issuance of the writ is 'clear and indisputable,' and (3) the court, 'in the exercise of its discretion, must be satisfied that the writ is appropriate under the circumstances.'" (quoting *Cheney*, 542 U.S. at 380–81)). In issuing a writ of mandamus compelling the District Court to immediately grant the

2

Government's motion to dismiss the information against Flynn, the majority concludes that each of these prerequisites is satisfied. The majority is in each respect mistaken.

## A.

One of the most striking conclusions of the majority is virtually buried: It finds the issuance of mandamus to be appropriate under the circumstances, where those circumstances include the absence of any district-court ruling on the motion at issue. Our Court is "particularly disinclined" to issue this extraordinary writ "before the district court has acted." *Republic of Venezuela v. Philip Morris Inc.*, 287 F.3d 192, 198 (D.C. Cir. 2002); *see also United States v. Hubbard*, 650 F.2d 293, 309 (D.C. Cir. 1980) (observing that mandamus would be inappropriate prior to district-court action because "[i]t is the trial court and not this court that should engage in the initial consideration").[1] This "particular[]" reluctance is the natural consequence of our considered recognition of our proper role in the federal judicial system: "As an appellate court, 'we are a court of review, not of first view[.]'" *Capitol Servs. Mgmt., Inc. v. Vesta Corp.*, 933 F.3d 784, 789 (D.C. Cir. 2019) (alteration in original) (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)). The majority, which cites to no case in which we have granted mandamus so precipitously, is

---

[1] The majority argues that the district has "acted," because by appointing *amicus* and scheduling a hearing, it has threatened to exercise "judicial supervision" over prosecutorial decisionmaking. Majority Op. 16. By this logic, mandamus becomes an ordinary means to pretermit district-court consideration and have this court decide whether to grant or deny a motion to dismiss once the lower court "acts" in a manner that threatens to scrutinize the prosecutor's discretion. Relying as it does on diluting mandamus and overriding long-settled procedure, this reasoning collapses under its own weight.

3

apparently willing to set aside this Court's well-established and
well-founded concern for the maintenance of the ordinary
course in order to proceed in an unprecedented manner.  But I
view our historical disinclination to act out of turn as a
compelling, independent ground for declining to mandate the
immediate grant of the Government's Rule 48(a) motion.

## B.

In considering whether Flynn's right to relief is "clear and
indisputable," it serves to remember that the question at hand
is not whether or under what circumstances a district court may
*deny* a Rule 48(a) motion, but whether it may give
consideration to such a motion before ruling on it.  It should
come as no surprise that, before today, neither we nor any other
Court of Appeals has ever read Rule 48(a)'s "leave of court"
provision to mean that a district court *may not even consider*
such a motion before giving its "leave."  *Cf. United States v.
Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973) ("[W]e do not
think Rule 48(a) intends the trial court to serve merely as a
rubber stamp for the prosecutor's decision.").  In fact, some of
our case law clearly points in the opposite direction: "The
requirement of judicial approval entitles the judge to obtain and
*evaluate* the prosecutor's reasons."  *Id.* (emphasis added).

In contending that its trailblazing result is somehow
compelled by precedent, the majority transforms dicta into
dogma.  "[A] statement not necessary to a court's holding is
dictum," *In re Grand Jury Investigation*, 916 F.3d 1047, 1053
(D.C. Cir. 2019), and "[d]icta is never binding on any court,"
*Murray Energy Corp. v. EPA*, 936 F.3d 597, 627 (D.C. Cir.
2019) (citing *Glus v. Brooklyn E. Dist. Terminal*, 359 U.S. 231,
235 (1959)).  In *United States v. Fokker Services B.V.*, 818 F.3d
733 (D.C. Cir. 2016), this Court addressed the district court's
denial of a joint motion to exclude time under the Speedy Trial

4

Act, 18 U.S.C. § 3161 *et seq.*, pursuant to a deferred prosecution agreement, 818 F.3d at 737–38.  The Court there had no occasion to make any decision about Rule 48(a), yet the majority invokes *Fokker* as "foreclos[ing] the district court's proposed scrutiny" of such a motion.  Majority Op. 7.  Nor are we bound by *Fokker*'s sweeping elucidations on the scope of executive power, issued as they were in *Fokker*'s particular legal context.  *Cohens v. Virginia,* 19 U.S. 264, 399 (1821) ("It is a maxim not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used.  If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision.").

In addition to being improper, the majority's reliance on the Rule 48(a) dicta from *Fokker* creates a split with our sister Courts of Appeals.  *Fokker*'s Rule 48(a) commentary fails to take due cognizance of federal appellate authority establishing that an important impetus behind the Supreme Court's insertion into Rule 48(a) of the "leave of court" requirement was the protection of the public interest, not simply the prevention of abuse of the defendant.  *See, e.g.*, *In re Richards*, 213 F.3d 773, 786–87 (3d Cir. 2000) ("Rule 48(a) . . . also permits courts faced with dismissal motions to consider the public interest in the fair administration of criminal justice and the need to preserve the integrity of the courts."); *United States v. Cowan*, 524 F.2d 504, 509–13 (5th Cir. 1975) (concluding that Rule 48(a)'s "history . . . belies the notion that [the Rule's] only scope and purpose is the protection of the defendant. . . . [I]t [is] manifestly clear that the Supreme Court intended to clothe the federal courts with a discretion broad enough to protect the public interest in the fair administration of criminal justice").  In the same vein, numerous federal appellate courts have recognized that a court in receipt of an unopposed Rule 48(a)

5

motion may consider the public interest in ruling thereon. *See, e.g.*, *United States v. Romero*, 360 F.3d 1248, 1251 (10th Cir. 2004) ("[A] court is generally required to grant a prosecutor's Rule 48(a) motion to dismiss unless dismissal is clearly contrary to manifest public interest." (quoting *United States v. Carrigan*, 778 F.2d 1454, 1463 (10th Cir. 1985)); *United States v. Pimentel*, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991) (same); *United States v. Hamm*, 659 F.2d 624, 629 (5th Cir. 1981) ("[E]ven when the defendant consents to the motion to dismiss, the trial court, in extremely limited circumstances in extraordinary cases, may deny the motion when the prosecutor's actions clearly indicate a 'betrayal of the public interest.'" (quoting *Cowan*, 524 F.2d at 514)); *Ammidown*, 497 F.2d at 622 (concluding it is "appropriate" for a trial judge to consider the "protection of the public interest" "in considering whether to deny approval [] to dismissals of cases"); *see also Rinaldi v. United States*, 434 U.S. 22, 31–32 (1977) (per curiam) (in reviewing a district court's denial of an unopposed Rule 48(a) motion, "agree[ing] with the Solicitor General that . . . no societal interest would be vindicated" by continuing the prosecution (internal quotation marks omitted)); *cf. Young v. United States*, 315 U.S. 257, 259 (1942) ("The public interest that a result be reached which promotes a well-ordered society is foremost in every criminal proceeding. That interest is entrusted to our consideration and protection as well as that of the enforcing officers.").

*Fokker*'s oversight is understandable, since the analogy to Rule 48(a) was raised and addressed by only one of the three parties during briefing, such that the Court did not have the benefit of adverse presentation of the issue before expounding on it in dictum. But the majority has used *Fokker* functionally to constrict the parameters of the District Court's Rule 48(a) inquiry to include only the prevention of prosecutorial harassment of the defendant. No binding authority establishes

6

this, and indeed the Supreme Court itself recognizes appellate authority to the contrary. *See Rinaldi*, 434 U.S. at 29 n.15. In fact, the *Rinaldi* Court expressly reserved—found it "unnecessary to decide"—whether a district court had discretion "to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." *Id.* To state, as *Fokker* did in language the majority now quotes, *see* Majority Op. 5, that "the Supreme Court has declined to construe Rule 48(a)'s 'leave of court' requirement to confer any substantial role for courts in the determination whether to dismiss charges," 818 F.3d at 742 (citing *Rinaldi*, 434 U.S. at 29 n.15), is to intimate that the Supreme Court had occasion to construe Rule 48(a) one way or another on this issue, which it did not.

The fact is that "[t]he Supreme Court has left open whether the court can ever refuse leave to dismiss if the government's request to dismiss is consented to by the defendant." 3B CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & PETER J. HENNING, FEDERAL PRACTICE AND PROCEDURE § 802 (4th ed. 2013) (citing *Rinaldi*, 434 U.S. at 30, and *Watts v. United States*, 422 U.S. 1032 (1975) (mem.)). This Court has twice opined, in dicta, on the factors that *might* properly guide a court's consideration and disposition of such a motion. *See Fokker*, 818 F.3d at 742–46; *Ammidown*, 497 F.2d at 619–22. While the majority is bound by neither of these decisions, its election to treat *Fokker* as controlling is particularly unsettling in view of its willful neglect of our Court's countervailing views expressed in *Ammidown*. There, the Court envisioned a district court in receipt of an unopposed Rule 48(a) motion as being "entitle[d] . . . to obtain and evaluate the prosecutor's reasons," and not "serv[ing] merely as a rubber stamp for the prosecutor's decision." 497 F.2d at 622. According to *Ammidown*, "the judge should be satisfied that the agreement

7

adequately protects the public interest" and "may withhold approval if he finds that the prosecutor" committed "such a departure from sound prosecutorial principle as to [constitute] an abuse of prosecutorial discretion." *Id.* (citation omitted).

None of the authority on which the majority relies supports its novel premise that "further judicial inquiry"—by which it appears to mean *any* judicial inquiry—is proper only in "rare" or "extraordinary" cases. *See* Majority Op. 5–6. And although it invokes a host of non-binding authority regarding permissible grounds for *denying* a Rule 48(a) motion, *see id.* at 5–6, 14–15 & n.5, that question is simply not before us.

In *NetCoalition v. SEC*, 715 F.3d 342, 354 (D.C. Cir. 2013), we noted that "[m]andamus does not lie when our precedent no longer, at least in part, binds," and we have declined to find "a 'clear and indisputable' right to mandamus relief" where the parties present countervailing "substantial argument[s]" on unsettled legal issues, *In re Khadr*, 823 F.3d 92, 100 (D.C. Cir. 2016). The majority declares it to be "clear and indisputable" that no consideration of the Rule 48(a) motion may be had by the very court whose leave is required to effectuate that motion, but the majority's need to engage in such contortions to reach that conclusion is reason enough to deny the writ.

## C.

Next, the majority addresses whether "other adequate means to attain the relief" exist, concluding that "the district court's actions will result in specific harms to the exercise of the Executive Branch's exclusive prosecutorial power." Majority Op. 8. Here, too, the majority errs, this time by shifting its focus away from the adequate means by which the *party seeking mandamus* may obtain relief and by erecting an indefensibly high wall between the branches of government.

8

The majority states that "there must be 'no other adequate means to attain the relief.'" Majority Op. 5. But in *Cheney v. U.S. District Court for the District of Columbia*, the source of this proposition, the Supreme Court stated that "*the party* seeking issuance of the writ [must] have no other adequate means to attain the relief *he desires*." 542 U.S. at 380 (alteration in original) (emphasis added). Indeed, the Supreme Court has consistently framed this element around the *petitioner*, not around other parties who have not moved for mandamus relief. *See, e.g.*, *Kerr v. U. S. Dist. Court for N. Dist. of Cal.*, 426 U.S. 394, 403 (1976) ("Among these [conditions for issuance of mandamus] are that *the party seeking issuance of the writ* have no other adequate means to attain the relief *he* desires." (emphasis added)). The majority cites no cases in which a court has concluded that a petitioner has satisfied her burden to show no other adequate means to attain her sought-after relief based on the absence of alternative avenues of relief for a *different party* that did not petition the court for the writ. [2]   Neither Flynn nor the Government cited

---

[2] Contrary to "squarely reject[ing]" the notion that a court must focus on the adequate relief of the party seeking mandamus, Majority Op. 17, *Cobell* rejected the notion that the party seeking interlocutory appeal and, in the alternative, mandamus relief, must file two different petitions in order to abide by our procedural rules. *See Cobell v. Norton*, 334 F.3d 1128, 1140 n.* (D.C. Cir. 2003) (citing FED. R. APP. P. 21 and CIR. R. 21). In *Ex parte Republic of Peru*, in which the Supreme Court considered a petition for mandamus sought by Peru, the Supreme Court analyzed whether *Peru* had an adequate remedy. It concluded that Peru, as "a friendly sovereign state," was entitled to have its claims "presented and settled in the course of the conduct of foreign affairs by [the Executive Branch]," and that Peru should not have to endure "the delay and inconvenience of a prolonged litigation" when the relief it seeks should be resolved in a non-judicial forum. 318 U.S. 578, 586–87 (1943). Here, and unlike

9

such a case.  The inconvenient reality is that the petitioner—Flynn—has an adequate means, via a traditional appeal, to attain relief should the District Court deny the Government's Rule 48(a) motion.  *See In re al-Nashiri*, 791 F.3d 71, 78 (D.C. Cir. 2015) ("Mandamus is inappropriate in the presence of an obvious means of review: direct appeal from final judgment."); *Cheney*, 542 U.S. at 380–81 (noting that the requirement of absence of adequate alternative remedies is "designed to ensure that the writ will not be used as a substitute for the regular appeals process").  This fact alone defeats our jurisdiction and requires the Court to dismiss Flynn's petition for a writ of mandamus.

And even if it were proper for the Court to consider the Government's argument that it will suffer an irreparable injury,

---

in *Ex parte Republic of Peru*, the majority grants mandamus solely on the basis of a non-petitioner's interests.

The majority goes on to say that we "must" consider the irreparable harms of the non-moving party because that party filed the Rule 48(a) motion that got this ball rolling in the district court, but one need look no further than the majority's immediately succeeding citation to find contradictory authority.  *See* Majority Op. 17 (citing *Doe v. Exxon Mobile Corp.*, 473 F.3d 345, 356–57 (D.C. Cir. 2007)).  "[W]e need not resolve the political question issue on the merits at this time," because "[n]one of the cases cited by our [dissenting] colleague stand for the proposition that we should grant a mandamus for which the executive has not prayed." *Exxon Mobile Corp.*, 473 F.3d at 356; *see also id.* at 357 (noting that, had the Executive "requested dismissal of the action," the separation-of-powers issue "would have been before the district court" in the first instance).  And while the majority points out that the Government offered at oral argument to file a mandamus petition, Majority Op. 17, the fact remains that no such petition has ever been filed, and thus none is before us.

10

the majority overstates the separation-of-powers dilemma presented by Rule 48(a) motions.   It is an unremarkable proposition that, pursuant to his constitutional duty to "take Care that the Laws be faithfully executed," U.S. CONST. art II, § 3, the Executive has "broad discretion" over prosecutorial matters, and that a "presumption of regularity" attaches to the exercise of that discretion, *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citations omitted).   It is (or should be) equally uncontroversial that such discretion is not absolute and that the presumption of regularity does not shield such discretion from review.   Indeed, the Supreme Court said as much in *Rinaldi*, where the Court "[did] not presume[] bad faith on the part of the Government at the time it sought leave to dismiss the indictment," 434 U.S. at 30, yet nonetheless conducted an "independent evaluation" of the record, *id*. at 23; *see also id.* at 30, to determine whether the unopposed Rule 48(a) motion should have been granted.   *See also Thompson v. United States*, 444 U.S. 248, 250 (1980) (performing "independent examination of the record" and remanding, rather than granting, government's motion to dismiss indictment).

The same principle holds true in the selective-prosecution context, where the district court may dismiss an indictment if it finds "the decision to prosecute [was] 'deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Wayte v. United States*, 470 U.S. 598, 608 (1985) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)).   While the Supreme Court has iterated some separation-of-powers concerns around the conduct of discovery pursuant to such a motion, *see Armstrong*, 517 U.S. at 468, it has never cited the separation of powers as prohibiting the district court from holding a hearing on such a motion.   To the contrary, courts have allowed not just plain hearings (or oral arguments) on such motions to dismiss, but *evidentiary* hearings where the prosecutor is subject to questioning under

11

oath.  *See United States v. Falk*, 479 F.2d 616, 623 (7th Cir. 1973) (en banc) (remanding and reassigning case for a hearing in which the defendant could question the Assistant United States Attorney as to specific issues related to the defendant's motion to dismiss for selective prosecution); *see also United States v. Berrios*, 501 F.2d 1207, 1209, 1212 (2d Cir. 1974) (finding no abuse of discretion in the district court's order that the government turn over, for *in camera* review, a memorandum sent by the prosecutor to the U.S. Department of Justice recommending prosecution of the defendant).

In other words, it is not inconsistent with the separation of powers for a district court to conduct regular proceedings and afford consideration to a motion, even if the eventual grant or denial of the motion might intrude on the Executive's exercise of his prosecutorial discretion.  Again, this is not a case where we are being asked to decide whether the district judge may call the prosecutor to the stand or whether a Rule 48(a) motion may lead to an evidentiary hearing.  This is a case about whether a district judge *may even hold a hearing* on a Rule 48(a) motion.  While the selective-prosecution context is admittedly different than Rule 48(a), these cases nonetheless contradict the majority's conclusion that holding a hearing, in and of itself, is a *per se* improper intrusion upon executive power.  If the presumption of regularity does not prevent holding a hearing or independently examining prosecutorial discretion in the selective-prosecution context, there is no good reason why the presumption of regularity precludes a hearing on a motion to dismiss under Rule 48(a), disallowing any consideration whatsoever and forbidding the district court from expressing its views on the record with respect to its previous findings on materiality and guilt—all in the name of the separation of powers.

12

None of this is to say that a district court, in considering an unopposed Rule 48(a) motion, necessarily has *carte blanche* to do whatever it likes. One can certainly imagine circumstances in which a district court employed devices that would be sufficiently intrusive into the Executive's purview as to violate the separation of powers and counsel in favor of immediate relief from the related orders. *See, e.g.*, *Matter of Commodity Futures Trading Comm'n*, 941 F.3d 869, 872, 874 (7th Cir. 2019) (granting mandamus to vacate order of district court requiring executive personnel "to appear and reveal what lies behind their published words"); *Cheney*, 542 U.S. at 387, 391 (indicating mandamus might be appropriate where district court approved discovery requests to the Executive that "ask[ed] for everything under the sky"). An appellate court faced with such conditions might conclude that "exceptional circumstances amounting to a judicial 'usurpation of power'" existed, such that the "extraordinary remedy" of mandamus might be justified. *Will v. United States*, 389 U.S. 90, 95 (1967). But that case is not before us. Not only has the District Court not issued subpoenas or ordered discovery, it has given no indication of its intent to do so. Instead, it is the District Court's intention to consider the motion in the ordinary course, with briefing and argument, and the majority now labels that a "judicial usurpation of power." *See id.* In so concluding, the majority has improperly siloed the different branches of government in an effort to prevent the *possibility* of intrusive inquiry that may or may not occur. To the extent that any of the majority's fears of intrusive inquiries are well-founded, they could easily be resolved by providing instruction to the District Court as to the metes and bounds of a permissible Rule 48(a) hearing, with this panel (if it wished) retaining jurisdiction in the event those bounds were overstepped. *Cf. Berrios*, 501 F.2d at 1213 ("Against the possibility that, upon remand, a difference might arise between the court and the government regarding the [extent to which matters of

13

prosecutorial decisionmaking remain confidential], we retain jurisdiction for the purpose of review of the court's ruling.").

"[A] petitioner's right to relief is 'clear and indisputable' where he or she can point to 'cases in which a federal court has held that' relief is warranted 'in a matter involving like issues and comparable circumstances.'  Accordingly, we will deny mandamus even if a petitioner's argument, though 'pack[ing] substantial force,' is not clearly mandated by statutory authority or case law."  *In re Al Baluchi*, 952 F.3d 363, 369 (D.C. Cir. 2020) (second alteration in original) (quoting *Doe v. Exxon Mobil Corp.*, 473 F.3d 345, 355 (D.C. Cir. 2007), and *In re Khadr*, 823 F.3d at 99–100).  No one contends that Flynn must have a case "on all fours," Majority Op. 15, but the required showing—one of legal certainty—is a "high hurdle." *NetCoalition,* 715 F.3d at 354.  Said another way, "[l]egal aporias are the antithesis of the 'clear and indisputable' right needed for mandamus relief."  *In re al-Nashiri*, 791 F.3d at 86. In issuing the writ compelling the District Court to grant the pending motion without considering it, the majority shuts its eyes to the unsettled state of the law on the relevant questions: the import of Rule 48(a)'s "leave of court" provision, the size and shape of a district court's discretion in considering an unopposed Rule 48(a) motion, and the interplay between the Executive's prosecutorial discretion and the Judiciary's adjudicative power in these circumstances.  Flynn has adequate means to attain the relief he seeks, and he has pointed to no authority mandating his preferred outcome here.  As such, Flynn fails to carry his burden, and especially given that the District Court has yet to rule on the motion to dismiss, the writ should not issue to compel the District Court to grant the motion.

14

**II.**

The majority also concludes that the writ should issue to compel the vacation of the District Court's order appointing *amicus* (1) to address whether Flynn should be held in criminal contempt for perjury, and (2) to present arguments in opposition to the Government's otherwise-unopposed Rule 48(a) motion.  In neither respect has Flynn carried his burden to establish that his right to relief is "clear and indisputable."

**A.**

"The power to punish for contempts is inherent in all courts; its existence is essential . . . to the due administration of justice." *Ex parte Robinson*, 86 U.S. 505, 510 (1873); *accord Michaelson v. United States*, 266 U.S. 42, 65 (1924) (referring to this premise as "settled law").  Federal Rule of Criminal Procedure 42 provides a procedure by which a district court may appoint an attorney to prosecute contempt, should the government decline to do so.  FED. R. CRIM. P. 42(a)(2).  This Rule reflects the fact that "it is long settled that courts possess inherent authority to initiate contempt proceedings for disobedience to their orders, authority which necessarily encompasses the ability to appoint a private attorney to prosecute the contempt." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 793 (1987).  "Moreover, a court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991).  Far from establishing his clear and indisputable right to relief, neither Flynn, nor the majority in his stead, engages this precedent or forwards any legal arguments as to why a district court that may undeniably appoint a private attorney to prosecute contempt lacks the lesser power to appoint *amicus* to advise it regarding whether it ought to do so.  Nor does the majority explain why directing

15

the District Court to grant the motion to dismiss renders moot the District Court's appointment of *amicus* to advise it on the legally separate issue of contempt.

**B.**

Similarly, Flynn fails to establish that it is clear and indisputable that the District Court erred in its appointment of *amicus* to present arguments in opposition to the Government's Rule 48(a) motion.  Flynn's only legal argument on the topic is addressed to the District Court's Local Rules, the ambiguity of which falls well short of bringing the issue beyond dispute. (Notably, the majority's solution to Flynn's failure to carry his burden on this point is to ignore the issue altogether.   The majority uses its passing conclusion that *amicus* participation is improper as a basis for ordering the separate relief of mandamus on the Rule 48(a) motion—and then, having done so, it declares the *amicus* issue moot.)

Local Civil Rule 1.1(a) provides that "[t]hese Rules govern all proceedings in the United States District Court for the District of Columbia," and Local Civil Rule 7(o) contemplates the submission of *amicus* briefs.   But Local Civil Rule 7, entitled "Motions," is duplicated to a limited extent in Local Criminal Rule 47, also entitled "Motions," and the latter includes no mention of *amicus* briefs.  And, as Flynn argues, the Supreme Court observed in *Hollingsworth v. Perry*, 558 U.S. 183 (2010), that local rules "have the force of law," *id.* at 191 (internal quotation marks omitted).   Flynn's contention that the Local Rules should be read as prohibiting the participation of *amici* in criminal cases is therefore a plausible one, as the Civil Rules provide for *amici* while the Criminal Rules do not.

16

But this Court has never held that an arguable proposition entitles a petitioner to the extraordinary writ of mandamus. *See In re Al Baluchi*, 952 F.3d at 369 ("[W]e will deny mandamus even if a petitioner's argument, though 'pack[ing] substantial force,' is not clearly mandated by statutory authority or case law." (second alteration in original)).  And relying entirely as he does on his construction of the Local Rules, Flynn fails to engage with the fact that, in the absence of countervailing authority, courts have "inherent power to provide themselves with appropriate instruments required for the performance of their duties.  This power includes authority to appoint persons unconnected with the court to aid judges in the performance of specific judicial duties, as they may arise in the progress of a cause." *Ex parte Peterson*, 253 U.S. 300, 312 (1920) (citation omitted).  The character and confines of such inherent authority, as concerns a district court's appointment or allowance of *amici*, are simply not well developed.  *Cf. United States ex rel. Gudur v. Deloitte Consulting LLP*, 512 F. Supp. 2d 920, 927 (S.D. Tex. 2007) (observing that "[n]o statute, rule, or controlling case defines a federal district court's power to grant or deny leave to file an *amicus* brief"); *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131 (D.D.C. 2008) (asserting, on the basis of a number of district-court cases, that "[d]istrict courts have inherent authority to appoint or deny *amici*[,] which is derived from Rule 29 of the Federal Rules of Appellate Procedure" (citation omitted)).

Both this Court and the Supreme Court regularly permit the participation of *amici* in the criminal context, however, and there is no readily apparent reason why, in appropriate circumstances, a district court might not exercise its inherent power to do the same—especially in the absence of any authority expressly prohibiting it.  Flynn's counsel even conceded at oral argument that district courts have the authority to accept *amicus* briefs in some criminal cases.  Oral Arg. Tr. 19–21.  To the extent the majority's *sub silencio* holding on the

17

propriety of *amicus* participation rests on the absence of such authority in this particular case, the distinction has no legal basis, and certainly not a clear and indisputable one. And if the majority's unuttered reasoning were premised on the absence of a case or controversy, its mandate that the District Court grant the Government's Rule 48(a) motion to dismiss the information *with prejudice* would be wholly inappropriate. *See, e.g.*, *Flynt v. Weinberger*, 762 F.2d 134, 135–36 (D.C. Cir. 1985) (per curiam); *Murray v. Conseco, Inc.*, 467 F.3d 602, 605 (7th Cir. 2006). What is indisputable is that adverse presentation of the relevant issues aids courts in their decisionmaking—indeed, this is one of the foundational premises of our judicial system. *United States v. Nobles*, 422 U.S. 225, 230 (1975). Yet the majority gives this bedrock principle of our legal system no weight or consideration. As such, I must dissent from the majority's functional ruling that the appointment of *amicus* violated a clear and indisputable right held by Flynn.

\* \* \*

The majority opinion effectively transforms the presumption of regularity into an impenetrable shield. In 2017, the then-Acting Attorney General told the Vice President that Flynn's false statements "posed a potential compromise situation for Flynn" with the Russians, Gov't Mot. Dismiss Crim. Info. Ex. 3 at 8, No. 1:17-cr-232, ECF No. 198-4 (May 7, 2020), and just a few months ago, the prosecution said that Flynn's false statements to the FBI "went to the heart" of a valid counterintelligence inquiry and "were absolutely material," Gov't Surreply Mot. Compel Produc. *Brady* Mat. at 10–11, No. 1:17-cr-232, ECF No. 132 (Nov. 1, 2019). Now, in a complete reversal, the Government says none of this is true. Gov't Mot. Dismiss Crim. Info. at 13–16, No. 1:17-cr-232, ECF No. 198. The Government doubles down by

18

asserting in its motion to dismiss that Flynn's statements could not have been "material" within the meaning of 18 U.S.C. § 1001 because the FBI had no grounds for any "viable" investigation of Flynn at the time he made those statements, *id.* at 13, even though that contention appears squarely belied by our precedent*, see United States v. Moore*, 612 F.3d 698, 701 (D.C. Cir. 2010) ("We . . . hold[] a statement is material if it has a natural tendency to influence, or is capable of influencing, either a discrete decision *or any other function of the agency to which it was addressed*.") (emphasis added); *United States v. Hansen*, 772 F.2d 940, 949 (D.C. Cir. 1985) (Scalia, J.) ("A lie influencing the possibility that an investigation might commence stands in no better posture under § 1001 than a lie distorting an investigation already in progress."). This is no mere about-face; it is more akin to turning around an aircraft carrier.

The Government asserted to us that it has no duty to inform the court in a motion to dismiss pursuant to Rule 48(a) of all of its reasons for seeking dismissal. Oral Arg. Tr. 33. Today the majority declares that nevertheless—in spite of the Government's abrupt reversal on the facts and the law, and although the Government declares itself entitled not to be forthcoming with the District Court—these circumstances merit no further examination to determine whether there may be additional reasons for the prosecutor's actions, and if so, if any such reasons are impermissible. Under the majority's interpretation of Rule 48(a), so long as the defendant consents to the dismissal, "leave of court" is a dead letter.

The Government may be entitled to "leave of court" under Rule 48(a) to dismiss the criminal information to which Flynn pled guilty, but that is not for us, as a Court of Appeals, to decide in the first instance. Rather, the District Court must be given a reasonable opportunity to consider and hold a hearing

19

on the Government's request to ensure that it is not clearly contrary to the public interest.  I therefore dissent.