No. **20-5143**

# United States Court of Appeals
## For the District of Columbia Circuit

### IN RE: MICHAEL T. FLYNN,

### Petitioner

On Petition for a Writ of Mandamus to the
**United States District Court for the District of Columbia**
**Case No. 1:17-cr-232**

**EMERGENCY PETITION FOR A WRIT OF MANDAMUS**

HARVEY & BINNALL, PLLC          SIDNEY POWELL, P.C.
Jesse R. Binnall                Sidney Powell
Lindsay McKasson                  *Counsel of Record*
Abigail Frye                    Molly McCann
717 King Street                 2911 Turtle Creek Blvd.,
Suite 200                       Suite 300
Alexandria, Virginia 22314      Dallas, Texas 75219
Tel: (703) 888-1943             Tel: (214) 707-1775

**ATTORNEYS FOR PETITIONER MICHAEL T. FLYNN**

May 19, 2020

# TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................... i

TABLE OF AUTHORITIES ............................................................. iii

CERTIFICATE AS TO PARTIES,

RULES, AND RELATED CASES ........................................... vii

JURISDICTION ............................................................................... 1

RELIEF SOUGHT ........................................................................... 2

ISSUE PRESENTED ....................................................................... 2

FACTS .............................................................................................. 2

REASONS WHY THE WRIT SHOULD ISSUE ............................ 7

    I.  Introduction............................................................................ 7

    II. Standard of Review .............................................................. 10

    III. The District Court Legally Erred.......................................... 11

        A. The District Court Lacked Authority to
            Appoint an Amicus to Oppose the Government's
            Motion to Dismiss or Investigate General Flynn
            for Contempt or Perjury. ............................................... 11

        B. The District Court May Not Deny the Motion
            to Dismiss and Lacks Authority to Conduct the
            Searching Inquiry Proposed by its Chosen Amicus ................ 17

C.  This is the Rare Case Where Mandamus is
Warranted. .......................................................... 26

D.  Petitioner's Right to Relief is "Clear and
Indisputable," and He Has no Alternative
Avenue of Relief................................................... 27

E.  Issuance of the Writ is Appropriate....................... 29

IV. The Court Should Order this Case
Re-Assigned to Another District Judge. ............... 31

CONCLUSION.......................................................... 34

CERTIFICATE OF SERVICE..................................... 35

CERTIFICATION OF COMPLIANCE WITH
TYPE-VOLUME LIMIT.............................................. 36

# TABLE OF AUTHORITIES

## Cases

*Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692
  (D.C. Cir. 2014) ............................................................. 12

*Bordenkircher v. Hayes,* 434 U.S. 357 (1978) ........................... 19

*Cmty. for Creative Non–Violence v. Pierce,*
  786 F.2d 1199 (D.C.Cir.1986) .................................... 19

*Greenlaw v. United States*, 554 U.S. 237 (2008)........................... 7

*Hollingsworth v. Perry*, 558 U.S. 183 (2010) .................. 12, 13, 14

*ICC v. Bhd. of Locomotive Eng'rs,* 482 U.S. 270
  (1987) ........................................................................ 19

*In re Aiken Cnty.,* 725 F.3d 255 (D.C. Cir. 2013) ........................ 19

*In re Barry,* 946 F.2d 913 (D.C.Cir.1991); ................................. 33

*In re Kellogg Brown & Root,* 756 F.3d 754
  (D.C. Cir. 2014)........................................................... 32

*In Re Reyes*, 814 F.2d 168 (5th Cir. 1987)............................. 11, 27

*In re United States*, 345 F.3d 450 (7th Cir. 2003) ........... 8, 9, 21, 28

*Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131
  (D.D.C. 2008) ..............................................................17

*Liteky v. United States,* 510 U.S. 540 (1994) ....................... 33, 34

*Newman v. United States,* 382 F.2d 479
  (D.C. Cir.1967) ....................................................... 19, 20

*Rinaldi v. United States*, 434 U.S. 22 (1977)...........................8, 20

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943) ................................. 10

*SEC v. First City Fin. Corp.,* 890 F.2d 1215
   (D.C.Cir.1989).......................................................................................... 33

*United States v. Armstrong,* 517 U.S. 456 (1996) ...................... 19, 20, 21, 25

*United States v. Batchelder,* 442 U.S. 114 (1979)........................................ 19

*United States v. Flynn,* No. 17-232 (D.DC Dec. 18, 2019) ...................... 4, 16

*United States v. Fokker Servs., B.V.,* 818 F.3d 733
   (D.C. Cir. 2016)..................................................................................passim

*United States v. Hector*, 577 F.3d 1099 (9th Cir.2009) ................................ 8

*United States v. Nixon*, 418 U.S. 683 (1974)................................................ 9

*United States* v. *Samuels*, 808 F. 2d 1298 (8th Cir. 1987)........................... 7

*United States v. Sineneng-Smith*, No. 19–67
   (U.S. May 7, 2020).................................................................... 1, 8, 10, 26

*Wayte v. United States,* 470 U.S. 598 (1985) ............................................ 19

*Weil* v. *Neary*, 278 U. S. 160, 169 (1929) .................................................. 12

## Statutes

18 U.S.C. § 1001..............................................................................1, 22, 24

28 U.S.C. § 2071 ........................................................................................ 12

28 U.S.C. § 1651(a) ..................................................................................... 1

## Other Authorities

Alan M. Dershowitz, *Judges are Umpires,*
   *Not Ringmasters*, WALL ST. J. (May 13, 2020, 12:29 PM)
   https://www.wsj.com/articles/judges-are-
   umpires-not-ringmasters-11589387368.................................................. 14

Demetri Sevastopulo, *'You sold your country out,' judge*
   *tells Michael Flynn as sentence delayed*, THE IRISH
   TIMES (Dec. 18, 2018, 6:54 PM)
   https://tinyurl.com/y7e5lxvz .................................................. 31

Griffin Connolly, *Judge Lights Into Michael Flynn:*
   *'You Sold Your Country Out,'* ROLL CALL
   (Dec. 18, 2018, 1:03 PM)  http://tiny.cc/p1h9oz...................................... 31

John Gleeson, David O'Neil, and Marshall Miller,
   *The Case Isn't Over Until the Judge Says it's Over*,
   WASH. POST (May 11, 2011),
   https://www.washingtonpost.com/opinions/2020/
   05/11/flynn-case-isnt-over-until-judge-says-its-over/ ...........................15

Shannon LaFraniere and Adam Goldman, '*Not Hiding*
   *My Disgust': Judge Rebukes Flynn, Then Delays*
   *Sentencing*, N.Y. TIMES (Dec. 28, 2018)
   https://tinyurl.com/ybh2czv6.................................................. 31

Stephanie Kirchgaessner, *'I can't hide my disgust,*
   *my disdain': judge lambasts Michael Flynn*,
   THE GUARDIAN (Dec. 18, 2018, 5:26 PM)
   https://tinyurl.com/ycbt6ayr .................................................. 31

Victoria Albert, *Judge asks prosecutors whether*
    *Mike Flynn could have been charged with treason*,
   THE DAILY BEAST (Dec. 18, 2018, 4:06 PM)
   https://tinyurl.com/ycx45gvt.................................................. 31

# Rules

Federal Rule of Appellate Procedure 29 ..........................................................17

Federal Rule of Criminal Procedure 48(a) .................................... vii, 8, 9, 20

U.S. District Court for the District of
   Columbia Local Civil Rules .......................................................... 11, 16, 17

## CERTIFICATE AS TO PARTIES,
## RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), counsel for Petitioner Michael T. Flynn make the following certification:

### (A) Parties and Amicus.

Petitioner:         Michael T. Flynn.

Respondents:        United States District Judge Emmet G. Sullivan.

United States:      Timothy O'Shea, United States Attorney,
                    District of Columbia.

Amicus:             John Gleeson, Esq.

**(B) Ruling Under Review.** The district court's appointment of an amicus curiae to consider additional charges against General Flynn, ECF No. 205; its unnumbered minute order of May 18, 2020,  granting amicus pro hac vice status in the case; its order indicating it will grant a schedule for amici, App. 3; and, its failure to grant the Government's Motion to Dismiss with Prejudice pursuant to Rule 48(a), ECF No. 198.

**(C) Related Cases.** This case has not previously been before this Court.  There are no pending related cases.

/s/ Sidney Powell
Sidney Powell
SIDNEY POWELL, P.C.

## JURISDICTION

This petition seeks an order directing the district court to grant the Justice Department's Motion to Dismiss its criminal case against former National Security Advisor to President Trump, Lieutenant General Michael T. Flynn (Ret.) ("Motion to Dismiss").  ECF No. 198.  The Government moved to dismiss the Information charging a violation of 18 U.S.C. §1001 after an internal review by United States Attorney Jeffrey Jensen unearthed stunning evidence of government misconduct and General Flynn's innocence.

This Court has jurisdiction pursuant to the All Writs Act, which authorizes federal courts to issue writs "in the aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. §1651(a).  The district court's failure to grant the Government's Motion to Dismiss defies this Court's binding precedent in *United States v. Fokker Servs., B.V.,* 818 F.3d 733, 740 (D.C. Cir. 2016). The district court's sua sponte appointment of an amicus to oppose the Government's motion and its Minute Order to issue a schedule for additional amici are at loggerheads with the unanimous Supreme Court opinion in *United States v. Sineneng-Smith*, No. 19–67 (U.S. May 7, 2020).

1

## RELIEF SOUGHT

Petitioner respectfully requests that this Court order the district court immediately to (1) grant the Justice Department's Motion to Dismiss; (2) vacate its order appointing amicus curiae; and (3) reassign the case to another district judge as to any further proceedings.

## ISSUE PRESENTED

Whether the district court exceeded its authority and egregiously abused its discretion by failing to grant the Government's Motion to Dismiss the Criminal Information and, instead, appointing an amicus to oppose the motion and to propose contempt and perjury charges against General Flynn, while inviting additional amici.

## FACTS

On January 24, 2017, Michael T. Flynn, the National Security Advisor to the newly-elected President of the United States, was interviewed at the White House by two agents of the Federal Bureau of Investigation—Peter Strzok and Joseph Pientka.  As former FBI Director James Comey later bragged on television, he "just sent them"—in violation of known protocols. A fresh review of the Government's file by U.S. Attorney Jeffrey Jensen revealed long-suppressed *Brady* material establishing the FBI had no legitimate reason to interview General Flynn.

2

The recently disclosed material also shows that members of the FBI had plotted to interview General Flynn without the standard section 1001 warnings to "get him to lie so we can prosecute him or get him fired."  ECF No. 198-11.  Text messages between the FBI Agents Peter Strzok and Lisa Page (Deputy FBI Director Andrew McCabe's special counsel), revealed that, weeks after the pretextual interview, Strzok was still rewriting the 302 so completely that he struggled to "maintain Joe [Pientka]'s voice."  ECF No. 198-8.  Page and Strzok massaged the 302 until McCabe approved it, and it was filed as final on February 15, 2017—two days after General Flynn resigned from the White House.  *Id.*

General Flynn pled guilty on December 1, 2017.[1]  A year later, on what was scheduled to be his sentencing, for which the Government had filed a motion for downward departure and certified his "substantial cooperation," Judge Sullivan publicly berated him.  He suggested he may have committed "treason," asserted that he had "sold [his] country out," and expressed

---

[1]  The plea was taken by Judge Rudolph Contreras who, a few days later, recused without explanation, and the case was transferred to Judge Emmet G. Sullivan.  It soon became public that Contreras and Strzok are friends.  Strzok's now-infamous texts with Page exploded into the news the morning after Special Counsel Mueller coerced Flynn into taking a swift plea with threats to indict his son and give them both the "Manafort treatment" if Flynn did not immediately surrender his claim to innocence.

"disdain" and "disgust" for General Flynn's conduct—flat wrong on crucial facts of the case.  Hr'g Tr., *United States v. Flynn,* No. 17-232, (D.D.C Dec. 18, 2018) at 36:1-3, 9-10; 33:13-14, 21-23.  App. 1: 34, 37.  Before Judge Sullivan returned from recess, explosive headlines of General Flynn's "treason" permeated international news.   Judge Sullivan postponed sentencing, after making clear that General Flynn faced prison despite the Government's recommendation of leniency.

In June 2019, General Flynn fired his defense team and current counsel appeared—immediately requesting *Brady* material from the Government.   When informal requests were unsuccessful and AUSA Brandon Van Grack (on detail to the Special Counsel's Office) claimed he had produced everything to which the defense was entitled, General Flynn filed a Motion to Compel the Production of *Brady* Material and For an Order to Show Cause.  ECF No. 109.  After extensive briefing, ECF No. 129, 132, 135, Judge Sullivan issued a 92-page denial on December 16, 2019.  ECF No. 144.

Meanwhile, the Inspector General for the Department of Justice filed the long-awaited report, Office of the Inspector General (OIG), *A Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, Oversight and Review Division Report 20-012 Revised (December 2019) https://www.justice.gov/storage/120919examination.pdf

4

("IG Report"). The IG Report disclosed for the first time that Agent Pientka had been surreptitiously slipped into a presidential briefing for nominee Trump on August 17, 2016, because General Flynn would be attending. IG Report at 340. The FBI had decided to have Pientka attend that meeting to "assess" Flynn's mannerisms and collect information in case the FBI needed to interview him later (*i.e.* if Flynn were in the White House after Trump's election). *Id.* This prompted General Flynn's Supplemental Motion to Dismiss for Egregious Government Misconduct and *Brady* Violations. ECF No. 160-2.

General Flynn also filed motions to withdraw his guilty plea because of the Government's breach of the plea agreement, the conflict of interest of his prior counsel, failure of the court to comply with Rule 11, the lack of factual basis for the plea, and ineffective assistance of counsel that rendered his plea unknowing and involuntary. ECF Nos. 151, 160.

In early 2020, the Attorney General asked United States Attorney Jeffrey Jensen of the Eastern District of Missouri to review General Flynn's prosecution. Jensen had served as an FBI agent for ten years and later as an AUSA for another ten years.

Months of contentious litigation culminated on April 24, 2020, when the Government produced four pages of long-withheld *Brady* material. ECF

No. 180.  A later tranche of damning evidence showed that the FBI interview was a setup and the 302 was doctored—just as General Flynn had suggested. ECF Nos. 187, 188, 189.

On May 7, 2020, the United States Attorney for the District of Columbia acknowledged the Government's longstanding failure to produce *Brady* evidence and the lack of a legitimate basis for what amounted to a charge fabricated against General Flynn, and the Government moved to dismiss the Information with prejudice in the interest of justice.  ECF No. 198.  The Government acknowledged that General Flynn's statements to the FBI were not material to a legitimate investigation, and there was no crime. *Id.*

On May 11, 2020, just four days later, a collection of former prosecutors ("The Watergate Group") emailed the court, clerk, and counsel—giving notice of intent to File a Motion for Leave to File an Amicus Brief.  App. 2: 64-73.

The defense promptly objected to allowing any amici before the district court acted.  *See* ECF No. 204. The court did not address the Motion to Dismiss that had been pending for five days.  Instead, it issued a de facto call for amicus briefs by advising that "at the appropriate time, the Court will enter a Scheduling Order governing the submission of any amicus curiae

briefs." App. 3: 75. The following day, the court, sua sponte, entered an order appointing "the Honorable John Gleeson (Ret.) [sic] as amicus curiae to present arguments against the government's Motion to Dismiss." ECF No. 205. The court's order instructed Mr. Gleeson to advise "whether the Court should issue an Order to Show Cause why Mr. Flynn should not be held in criminal contempt for perjury." *Id.* Mr. Gleeson has now appeared and proposes, inter alia, to advise the court as to "any additional factual development [he] may need before finalizing [his] argument in opposition to the government's motion in this case." ECF No. 209.

## REASONS WHY THE WRIT SHOULD ISSUE

### I.   Introduction

The district court has disregarded the constitutional imperative of a "case and controversy" and the "separation of powers" that invests the power to prosecute solely in the executive branch. In the American system, the parties "frame the issues for decision" while the courts take the role of "neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243 (2008).

The Supreme Court recently noted: "'[C]ourts are essentially passive instruments of government.' *United States* v. *Samuels*, 808 F. 2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in denial of reh'g en banc). They 'do

not, or should not, sally forth each day looking for wrongs to right.'"
*Sineneng-Smith*, slip op at 4. "Our system is designed around the premise
that [parties represented by competent counsel] know what is best for them
and are responsible for advancing the facts and argument entitling them to
relief." *Id.* at 7 (internal citations omitted).

The principle of party autonomy is particularly salient in criminal cases
where the power to prosecute is assigned by the Constitution to the executive
branch. As the United States notes in its motion to dismiss:

> Federal Rule of Criminal Procedure 48(a) permits the Government,
> "with leave of court," to "dismiss an indictment, information or
> complaint." Fed. R. Crim. P. 48(a). It is also "well established that
> the Government may move to dismiss even after a complaint has
> turned into a conviction because of a guilty plea." *United States v.
> Hector*, 577 F.3d 1099, 1101 (9th Cir.2009) (collecting cases); *see
> also Rinaldi v. United States*, 434 U.S. 22, 31 (1977) (finding an
> abuse of discretion to refuse to grant post-conviction Rule 48(a)
> motion).

> When the Government so moves, the role for courts addressing Rule
> 48(a) motions is "narrow" and circumscribed. *United States v.
> Fokker Servs., B.V.,* 818 F.3d 733, 742 (D.C. Cir. 2016). The "leave of
> court" provision serves "primarily to guard against the prospect that
> dismissal is part of a scheme of 'prosecutorial harassment' of the
> defendant" through repeated prosecutions—a prospect not
> implicated by, as here, a motion to dismiss with prejudice. *Id.* at 742
> (citing *Rinaldi*, 434 U.S. at 29 n.15); *see also In re United States*, 345
> F.3d 450, 453 (7th Cir. 2003) (no such concerns where "[t]he
> government wants to dismiss the civil rights count with prejudice,
> and that is what [the defendant] wants as well").

ECF No. 198, at 10-11.

This Court has held that the discretion of the Justice Department under Rule 48(a) is predominant, while the role of the judge is ministerial: "[D]ecisions to dismiss pending criminal charges ... lie squarely within the ken of prosecutorial discretion" and "'at the core of the Executive's duty to see to the faithful execution of the laws.'" *Fokker Servs.*, 818 F.3d at 741 (citation omitted); *see also United States v. Nixon*, 418 U.S. 683, 693 (1974) ("[T]he Executive Branch has exclusive authority and absolute discretion to decide whether to prosecute a case.").

A district court cannot deny the Government's motion to dismiss because the judge has "a disagreement with the prosecution's exercise of charging authority," such as "a view that the defendant should stand trial" or "that more serious charges should be brought." *Fokker Servs.*, 818 F.3d at 742-43. Nor should a court second-guess the Government's "conclusion that additional prosecution or punishment would not serve the public interest." *Id.* at 743; *see also In re United States*, 345 F.3d at 453 ("We are unaware ... of any appellate decision that actually upholds a denial of a motion to dismiss a charge" on grounds that dismissal would not serve the "public interest.").

The district court has no authority to adopt the role of prosecutor or change the issues in the case by inviting or appointing amici to perform the investigation or prosecution that the court deems appropriate. Less than two

weeks ago, in *Sineneng-Smith,* the Supreme Court unanimously reversed a similar usurpation by the Ninth Circuit in an opinion authored by a venerable alumna of this Court.

## II.   Standard of Review

While, "[a] mandamus petitioner must demonstrate that its right to the writ is 'clear and indisputable,'" *Fokker Servs.*, 818 F.3d at 749, "numerous decisions of the Supreme Court and this court made clear that courts generally lack authority to second-guess the prosecution's constitutionally rooted exercise of charging discretion. **Mandamus serves as a check on that kind of 'usurpation of judicial power.'**" *Id.* at 750 (citations omitted) (emphasis added). "The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943).

While every mandamus petition must meet the familiar three-factor test, namely that (i) the petitioner has no adequate alternative remedy for obtaining the relief he desires; (ii) his right to relief is clear and indisputable; and (iii) he persuades the court that, in the exercise of its discretion, the writ

is appropriate under the circumstances, *Fokker Servs.,* 818 F.3d at 747, "[w]hen the writ of mandamus is sought from an appellate court to confine a trial court to a lawful exercise of its prescribed authority, the court should issue the writ almost as a matter of course." *In Re Reyes*, 814 F.2d 168, 170 (5th Cir. 1987).  If there is "a threshold question concerning ... jurisdiction to review the district court's interlocutory order ... [this Court] first consider[s] whether the district court legally erred."  *Fokker Servs.*, 818 F.3d at 740.

## III.   The District Court Legally Erred

Binding Supreme Court and Circuit precedent squarely foreclose the district court's determination to continue the prosecution of General Flynn. The district court order appointing an amicus is both unauthorized and bespeaks a disturbing lack of appreciation of the court's limited role when confronted with a motion to dismiss by the Government in a criminal case.

### A. The District Court Lacked Authority to Appoint an Amicus to Oppose the Government's Motion to Dismiss or Investigate General Flynn for Contempt or Perjury.

Neither the Federal Rules of Criminal Procedure nor the district court's local rules authorize amicus participation in criminal cases.  This is in sharp contrast to the district court rule governing civil cases, which does authorize the filing of amicus briefs.  LCvR 7(o).  Under the canon of statutory

11

construction *expressio unius est exclusio alterius,* the express mention of amicus briefs on the civil side must be understood to exclude them on the criminal side. *See Adirondack Med. Ctr. v. Sebelius*, 740 F.3d 692, 697 (D.C. Cir. 2014) ("the canon's relevance and applicability must be assessed within the context of the *entire* statutory framework") (emphasis added). The Supreme Court has held that this canon applies to the interpretation of district court local rules:

> Notably, the [Local] Rule excepted from its general ban the transmittal of certain proceedings—but it limited that exception to transmissions "within the confines of the courthouse." The negative inference of this exception, of course, is that the Rule would have prohibited the streaming of transmissions, or other broadcasting or televising, beyond "the confines of the courthouse."

*Hollingsworth v. Perry*, 558 U.S. 183, 192 (2010).

The judges of district court, having acted collectively under the authority of Congress, 28 U.S.C. §2071, made a reasoned decision to allow amicus briefs in civil but not criminal cases. "Those rules have 'the force of law.' *Weil* v. *Neary*, 278 U. S. 160, 169 (1929)." *Hollingsworth*, 558 U.S. at 191.

Prior to issuance of its extraordinary May 12, 2020, order, the district judge adhered scrupulously to the district court's rules, denying some two dozen attempts by third parties to intervene or file amicus briefs in this very

case.  A December 20, 2017, Minute Order denies such a motion with a detailed explanation:

> MINUTE ORDER. This Court has received several motions to intervene/file an amicus brief along with letters in support from a private individual who is neither a party to this case nor counsel of record for any party. The Federal Rules of Criminal Procedure do not provide for intervention by third parties in criminal cases. The Court recognizes that the movant sincerely believes that he has information to share that bears on this case, and that, understandably, he wishes to be heard. Options exist for a private citizen to express his views about matters of public interest, but the Court's docket is not an available option. **The docket is the record of official proceedings related to criminal charges brought by the United States against an individual who has pled guilty to a criminal offense. For the benefit of the parties in this case and the public, the docket must be maintained in an orderly fashion and in accordance with court rules.** The movant states that he disagrees with the similar Minute Order issued by Judge Berman Jackson in Criminal Case Number 17-201, but the contrary legal authority on which he relies is neither persuasive nor applicable. Therefore, the Clerk is directed not to docket additional filings submitted by the would-be intervenor. If the individual seeks relief from this Court's rulings, he must appeal the rulings to the United States Court of Appeals for the District of Columbia Circuit. Signed by Judge Emmet G. Sullivan on 12/20/2017. (lcegs3) (Entered: 12/20/2017). [Emphasis added.]

As the Supreme Court held in *Hollingsworth*, rules of court, no less than other regulations, are binding, not just on the parties, but the court itself.  "If courts are to require that others follow regular procedures, courts must do so as well."  558 U.S. at 199.  Any change to the rules may not be implemented by a single judge in a particular case but must be initiated by

the full court pursuant to its rule-making processes and subject to the requirement of public notice-and-comment. *Id.* at 193. "The Court's interest in ensuring compliance with proper rules of judicial administration is particularly acute when those rules relate to the integrity of judicial processes." *Id.* at 196. In *Hollingsworth*, this interest was sufficiently important for the Court to stay a high-visibility *civil* case—the morning trial was set to begin—to prevent broadcast of the trial to remote federal courthouses.

As this Court is aware, the prosecution of General Flynn has garnered at least as much publicity as the trial at issue in *Hollingsworth*. The district court's disregard of rules that "have 'the force of law'" in a *criminal* case, where concerns for "the integrity of the judicial process" are at their zenith, has been widely reported and drawn massive attention and criticism of the federal judiciary and this judge in particular. In the words of fabled Harvard Law Professor Alan Dershowitz, this undermines the notion that "*Judges are Umpires, Not Ringmasters*." WALL ST. J. (May 13, 2020, 12:29 PM) https://www.wsj.com/articles/judges-are-umpires-not-ringmasters-11589387368.

This adverse effect will be exacerbated by the fact that the person the district court appointed to "present arguments in opposition to the

14

government's Motion to Dismiss" and to "address whether the Court should issue an Order to Show Cause why General Flynn should not be held in criminal contempt for perjury" had just published an opinion piece excoriating the Department of Justice's Motion to Dismiss as "smack[ing] of impropriety," of attempting to make the court "a party to corruption," and of "reek[ing] of improper political influence."  John Gleeson, David O'Neil, and Marshall Miller, *The Case Isn't Over Until the Judge Says it's Over*, WASH. POST (May 11, 2011, 6:52 PM),  https://www.washingtonpost.com/opinions/2020/05/11/flynn-case-isnt-over-until-judge-says-its-over/.   Mr.  Gleeson advocated that the court "assess the credibility of the department's stated reasons for abruptly reversing course," "compel the department to reveal" classified information, and "appoint an independent attorney to act as a 'friend of the court' . . . ."[2]  It did not take the district court long to follow these suggestions by appointing Mr. Gleeson as amicus.

---

[2]  Similarly, the Watergate Group expressed its intent to seek leave to file a brief of amici to address "procedures that the Court can and should follow, such as conducting a hearing or potentially appointing counsel to assist the Court; whether a dismissal, if any, should be with or without prejudice; and whether the Court should instead deny the Motion and proceed to sentencing."   Because this document was e-mailed and not docketed, it is App. 2.

The district court's order appointing Mr. Gleeson as amicus cites the court's "inherent authority" and two cases (discussed below) to support the appointment.  An order issued a day earlier is also revealing.  That order noted, without mentioning the undocketed correspondence from the Watergate Group, that "the Court anticipates that individuals and organizations will seek leave of the Court to file amicus curiae briefs pursuant to Local Civil Rule 7(o).  There is no analogous rule in the Local Criminal Rules, but '[the Local Civil] Rules govern all proceedings in the United States District Court for the District of Columbia.' LCvR 1.1."   *United States v. Flynn,* Crim. No. 17-232 (D.D.C. Minute Order May 12, 2020).  App. 3: 75.

However, the local civil rules cannot be read as authorizing procedures that the criminal rules exclude.  By the district court's logic, all the civil rules—some 130 pages—are incorporated into the criminal rules, whenever the criminal rules are silent.  This includes Duty to Confer, LCvR 16.3, Pretrial Statements, LCvR 16.5, Class Actions, LCvR 23.1, Discovery, LCvR 26.2, Motions for Summary Judgment, LCvR 7(h), Temporary Restraining Orders, LCvR 65.1, and a multitude of other procedures that no reasonable person would interpret as applying to criminal cases.  Nor does the court have "inherent authority" to circumvent the rules, any more than did the district court in *Hollingsworth*.

16

The district court cites two cases that do not support its orders: *Jin v. Ministry of State Sec.*, 557 F. Supp. 2d 131, 136 (D.D.C. 2008), and this Court's opinion in *Fokker Servs.*  But those courts *were* authorized to entertain amicus briefs—in *Jin* by LCvR 7(o), because it was a civil case, and in *Fokker Servs.* by Fed. R. App. P. 29, which authorizes this Court, unlike the district court, to entertain amicus briefs in criminal cases.

The May 12, 2020, Minute Order establishes the court's intent to allow multiple additional amicus briefs: "Accordingly, at the appropriate time, the Court will enter a Scheduling Order governing the submission of any amicus curiae briefs." App. 3: 75.  As with its appointment of Mr. Gleeson as amicus, nothing of the sort is authorized by the district court rules or any other authority. It undermines the prerogative to decline prosecutions which, as this Court held in *Fokker Servs.,* is the Government's alone.

## B. The District Court May Not Deny the Motion to Dismiss and Lacks Authority to Conduct the Searching Inquiry Proposed by its Chosen Amicus.

In its seminal *Fokker Servs.* opinion, this Court granted mandamus where the district court denied a joint motion to suspend the running of the Speedy Trial Act clock in accordance with a plea bargain that included a Deferred Prosecution Agreement (DPA).  818 F.3d at 738.  The court had denied the motion because "in the court's view, the prosecution had been too

lenient …. [T]he court disagreed with prosecutors' decision to forgo bringing any criminal charges against individual company officers." *Id.* at 738-39.

Ordering the district court to grant the motion, this Court offered a textbook discourse on the allocation of authority between the district court and the Government in criminal cases, with proper emphasis on the separation of powers that necessarily constrains the court's authority:

> The Constitution allocates primacy in criminal charging decisions to the Executive Branch. The Executive's charging authority embraces decisions about whether to initiate charges, whom to prosecute, which charges to bring, and whether to dismiss charges once brought. It has long been settled that **the Judiciary generally lacks authority to second-guess those Executive determinations, much less to impose its own charging preferences.** The courts instead take the prosecution's charging decisions largely as a given, and assume a more active role in administering adjudication of a defendant's guilt and determining the appropriate sentence.

*Fokker Servs.,* 818 F.3d at 737 (emphasis added).

Later in its opinion, the Court observed: "In vacating the district court order, we have no occasion to disagree (or agree) with that court's concerns about the government's charging decisions in this case. Rather, the fundamental point is that those determinations are for the Executive—not the courts—to make." *Id.* at 738.

These were not ex-cathedra ruminations of the unanimous panel. Rather, they were supported by long-standing tradition as to the

18

constitutionally-mandated allocation of authority between the district court

and the Government in criminal cases:

> The Executive's primacy in criminal charging decisions is long settled. That authority stems from the Constitution's delegation of "take Care" duties, U.S. Const. art. II, § 3, and the pardon power, *id.* § 2, to the Executive Branch. *See United States v. Armstrong,* 517 U.S. 456, 464 (1996); *In re Aiken Cnty.,* 725 F.3d 255, 262- 63 (D.C. Cir. 2013). Decisions to initiate charges, or to dismiss charges once brought, "lie[] at the core of the Executive's duty to see to the faithful execution of the laws." *Cmty. for Creative Non–Violence v. Pierce,* 786 F.2d 1199, 1201 (D.C.Cir.1986). The Supreme Court thus has repeatedly emphasized that "[w]hether to prosecute and what charge to file or bring before a grand jury are decisions that generally rest in the prosecutor's discretion." *United States v. Batchelder,* 442 U.S. 114, 124 (1979); *see Bordenkircher v. Hayes,* 434 U.S. 357, 364 (1978).

> Correspondingly, "judicial authority is ... at its most limited" when reviewing the Executive's exercise of discretion over charging determinations. *Pierce,* 786 F.2d at 1201 *see ICC v. Bhd. of Locomotive Eng'rs,* 482 U.S. 270, 283 (1987). The decision whether to prosecute turns on factors such as "the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan." *Wayte v. United States,* 470 U.S. 598, 607 (1985). The Executive routinely undertakes those assessments and is well equipped to do so. By contrast, the Judiciary, as the Supreme Court has explained, generally is not "competent to undertake" that sort of inquiry. *Id.* Indeed, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Newman v. United States,* 382 F.2d 479, 480 (D.C.Cir.1967). "Judicial supervision in this area" would also "entail[] systemic costs." *Wayte,* 470 U.S. at 608. It could "chill law enforcement," cause delay, and "impair the performance of a core

executive constitutional function." *Armstrong,* 517 U.S. at 465 (quotation omitted). As a result, "the presumption of regularity" applies to "prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *Id.* at 464 (internal quotation marks, quotation, and alterations omitted).

*Fokker Servs.,* 818 F.3d at 741-42.

The Court then rejected any notion that the "leave of court" language in Fed. R. Crim. P 48(a) upended this constitutional balance:

That language could conceivably be read to allow for considerable judicial involvement in the determination to dismiss criminal charges. But decisions to dismiss pending criminal charges—no less than decisions to initiate charges and to identify which charges to bring—lie squarely within the ken of prosecutorial discretion. *See e.g., Newman,* 382 F.2d at 480. To that end, the Supreme Court has declined to construe Rule 48(a)'s "leave of court" requirement to confer any substantial role for courts in the determination whether to dismiss charges. Rather, the "principal object of the 'leave of court' requirement" has been understood to be a narrow one—"to protect a defendant against prosecutorial harassment ... when the [g]overnment moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States,* 434 U.S. 22, 29 n. 15 (1977). A court thus reviews the prosecution's motion under Rule 48(a) primarily to guard against the prospect that dismissal is part of a scheme of "prosecutorial harassment" of the defendant through repeated efforts to bring—and then dismiss—charges. *Id.*

So understood, the "leave of court" authority gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority. For instance, **a court cannot deny leave of court because of a view that the defendant should stand trial notwithstanding the prosecution's desire to dismiss the charges, or a view that any remaining charges fail adequately to redress the gravity of the defendant's alleged**

20

> **conduct.** *See In re United States,* 345 F.3d 450, 453 (7th Cir.2003).
> **The authority to make such determinations remains with**
> **the Executive.**

*Fokker Servs.,* 818 F.3d at 742 (emphasis added).

*Fokker Servs.* did acknowledge there may be a limited role for the court where it appears that the parties were attempting to "evade" statutory constraints. *Id.* at 746. However, it does not apply here. Moreover, the district court must be mindful that "the presumption of regularity" applies to 'prosecutorial decisions and, **in the absence of clear evidence to the contrary**, courts presume that [prosecutors] have properly discharged their official duties.'" *Id.* at 741 (quoting *United States v. Armstrong,* 517 U.S. 456, 464 (1996) (emphasis added; alteration in original)). The Government's lengthy motion and exhibits make clear it acted properly here.

Assuming any such authority exists, *but see In re United States*, 345 F.3d at 453 (dubitante), there is nothing in this record—much less clear evidence—to undermine the presumption of regularity that attaches to the Government's Motion to Dismiss. The Government's motion explains in plain terms the reasons for the Government's change in position: "After a considered review of all the facts and circumstances of this case, including newly discovered and disclosed information appended to the defendant's supplemental pleadings, the Government has concluded that the interview

21

of Mr. Flynn was untethered to, and unjustified by, the FBI's counterintelligence investigation into Mr. Flynn—a no longer justifiably predicated investigation that the FBI had, in the Bureau's own words, prepared to close because it had yielded an '*absence* of *any* derogatory information.'" ECF No. 198 at 4 (citations omitted) (emphasis added).

"Having repeatedly found 'no derogatory information' on Mr. Flynn, [Ex. 1] at 2, the FBI's draft 'Closing Communication' made clear that the FBI had found no basis to 'predicate further investigative efforts' into whether Mr. Flynn was being directed and controlled by a foreign power (Russia) in a manner that threatened U.S. national security or violated FARA or its related statutes, *id.* at 3." *Id.* at 13.  The FBI nevertheless decided to interview General Flynn, not to serve a legitimate investigative purpose, but to frame him with a bogus violation of 18 U.S.C. §1001—and altered the 302 to achieve that goal.

To that end, FBI officials at the highest level circumvented standard Justice Department procedures by failing to notify the White House Counsel's Office of the interview, advising the Acting Attorney General only after "agents were already on their way to the White House to interview Mr. Flynn," ECF No. 198 at 7, and failing to give him the standard "warnings that making false statements would be a crime."  *Id.* at 9.  The decision to bypass

22

these procedures were made by then-FBI Director Comey, who later preened that this was "something we, I probably wouldn't have done or gotten away with in a [] more organized administration."  *Id.* at 7 (quoting December 2018 interview with MSNBC and NBC News analyst Nicolle Wallace).

There is much more information in the Government's motion (and in the multiple defense motions that preceded it) that the Special Counsel failed to disclose to General Flynn or his lawyers, despite the district court's standing *Brady* order and repeated denials that such evidence even existed. All this information bears directly on the "materiality" element of a section 1001 prosecution.  U.S. Attorney Jensen's discovery of this *Brady* material led the Government to conclude that it "does not have a substantial federal interest in penalizing a defendant for a crime that it is not satisfied occurred and that it does not believe it can prove beyond a reasonable doubt ...."  ECF No. 198 at 12.

As the Government also points out, the "materiality" element of a section 1001 prosecution is an important protection of personal liberty which "prevents law enforcement from fishing for falsehoods merely to manufacture jurisdiction over any statement—true or false—uttered by a private citizen or public official."  *Id.* at 13.  General Flynn rotely "stipulated to the essential element of materiality without cause to dispute it insofar as

it concerned not his course of conduct but rather that of the agency investigating him." *Id.* at 19.  General Flynn could swear truthfully that he committed the *acts* constituting the crime with which he was charged—after all he had no duty to tell FBI line agents about missions he undertook in his capacity as Security Advisor to the President Elect—but he had to accept on faith that the questions were "material" to a legitimate criminal investigation, even though that was not made clear to him at the time.[3]  In truth, they were not.

Because the Government failed to disclose this information to the defense, General Flynn had no way of knowing that it was false.  Now additional facts have established he was not interviewed for a legitimate purpose, and therefore any statements he made were not "material" under 18 U.S.C. §1001, the Government justly believes that he is not guilty of any crime.  "[T]he balance of proof, the equities, and the federal interest served

---

[3] Nor, as the Government explains, was there anything unlawful or improper about General Flynn's conversations with Ambassador Kislyak: "Mr. Flynn, as the incumbent National Security Advisor and senior member of the transition team, was reaching out to the Russian ambassador in that capacity. In the words of one senior DOJ official: 'It seemed logical … that there may be some communications between an incoming administration and their foreign partners.' App. 3 at 3.  Such calls are not uncommon when incumbent public officials preparing for their oncoming duties seek to begin and build relationships with soon-to-be counterparts." ECF No. 198 at 14.

by continued prosecution of false statements that were not 'material' to any bona fide investigation," all favor dismissing the prosecution.  ECF No. 198 at 19-20.

The Government has amply supported its assertions with documents appended to its motion.  Nothing in the record casts doubt on the Government's reasons for moving to dismiss.  Nor is there anything outside the record—and certainly nothing cited by the district court—that justifies the outrageous suggestions of "impropriety," "corruption," or "improper political influence" flung by the district court's chosen amicus in the *Washington Post.*

To rebut "the presumption of regularity" that attaches to prosecutorial decisions, this Court and the Supreme Court require "clear evidence to the contrary." *Fokker Servs.,* 818 F.3d at 741 (quoting *Armstrong*, 517 U.S. at 464).  Here, there is *no* evidence to the contrary, so the district court lacks authority to do anything but grant the Motion to Dismiss, as it has done routinely in other cases—including after guilty pleas.[4]  It is unheard of to

---

[4]    For example, in 2009, the FBI arrested twenty-two people for Foreign Corrupt Practices Act violations.  *See United States v. Amaro Goncalves,* No. 09-CR-335-RJL, https://tinyurl.com/yabn8anb.  On the Government's perfunctory Rule 48(a) motion, Judge Leon promptly dismissed the prosecution of three of the defendants long after their guilty

25

conduct the type of intrusive inquiry—including forcing the Government to divulge classified information—that Mr. Gleeson and the Watergate Group, *supra* n.2—urge the district court to undertake.  It would make a collision between the branches of government inevitable.  The district court's repeated efforts to hijack the prosecution of General Flynn defy the clear mandates of *Sineneng-Smith* and *Fokker Servs.*

### C. This is the Rare Case Where Mandamus is Warranted.

The Government, which has sole authority to dismiss this prosecution, has presented a well-documented motion explaining its reasons.   The Government misconduct and *Brady* violations provide a more-than-sufficient basis for dismissal.  An innocent man has been the target of a vendetta by politically motivated officials at the highest level of the FBI.  The egregious Government misconduct, and the three-year abuse of General Flynn and his family, cry out for ending this ordeal immediately and permanently.

The district judge's orders reveal his plan to continue the case indefinitely, rubbing salt in General Flynn's open wound from the Government's misconduct and threatening him with criminal contempt.

---

pleas. Similarly, Judge Sullivan granted a short motion to dismiss the prosecution of Senator Stevens. App. 4: 79-90.

Petitioner has no alternative avenue of relief, his right to relief is "clear and indisputable" and, in these extraordinary circumstances, issuance of the writ is not just appropriate, it follows "as a matter of course." *In Re Reyes*, 814 F.2d at 168.

### D. Petitioner's Right to Relief is "Clear and Indisputable," and He Has no Alternative Avenue of Relief.

Petitioner has already suffered an unimaginable ordeal at the hands of unscrupulous high-ranking Government officials and a three-year prosecution. He has suffered the opprobrium of much of the country—which he reveres and for which he has risked his life—financial ruin, and the mental anguish caused by the prospect of prison and the unscrupulous threat to prosecute his son. All for no legitimate reason.

To its credit, the Department of Justice has finally produced the evidence that General Flynn committed no crimes. The wrongful and wasteful prosecution must end. Since the district judge refuses, Petitioner must ask this Court to order the district court to comply with the controlling precedent of the Supreme Court and this Court.

The Government, too, is entitled to have its motion granted. Continuation of these proceedings undermines the Government's prosecutorial authority and subjects the Department of Justice to specious

charges of misconduct such as Mr. Gleeson's publication in the *Washington Post*, among countless others.

As Judge Posner noted in a much less contentious case, "No statute authorizes the Government to appeal from a denial of the dismissal of a count or case, but we do not think that there can be much doubt that such relief is available by way of mandamus." *In re United States*, 345 F.3 450, 452 (7th Cir. 2003). There is even less doubt here, where continuation of the proceedings for the indefinite future will subject the Department of Justice to sustained assaults on its integrity and cast doubt on its authority to terminate criminal proceedings it has determined do not serve the interests of the United States.

As Judge Posner wryly noted in the above-cited case, "The judge . . . is playing U.S. Attorney. It is no doubt a position that he could fill with distinction, but it is occupied by another person." *Id.* at 453. Here, that person is the signatory of the Government's Motion to Dismiss, the United States Attorney for the District of Columbia. Like the district judge in *In Re United States*, the district judge below has taken over the role of prosecutor. "Mandamus serves as a check on that kind of 'usurpation of judicial power.'" *Fokker Servs.*, 818 F.3d at 750.

28

### E. Issuance of the Writ is Appropriate.

In granting Mandamus, this Court noted in *Fokker Servs.,* "numerous decisions of the Supreme Court and this court made clear that courts generally lack authority to second-guess the prosecution's constitutionally rooted exercise of charging discretion." *Fokker Servs.*, 818 F.3d at 750. Impairment of the Government's authority to make prosecutorial decisions suffices to make this an appropriate case for mandamus, but there is much more.

First, Petitioner, through no fault of his own, has been drawn into a Kafkaesque nightmare that is a cross between *The Trial* and *In the Penal Colony*. He has been subjected to deception, abuse, penury, obloquy, and humiliation. Having risked his life in service to his country, he has found himself the target of a political vendetta designed to strip him of his honor and savings, and to deprive the President of his advice. He has been dragged through the mud and forced, through coercion and the artful withholding of information crucial to his defense, to confess to a crime he did not commit— indeed, to a crime that could not exist. Having at last, through the relentless determination of his current counsel, brought the truth to light, he now learns that the judge who is charged with adjudicating his case impartially has, in Judge Posner's words, decided to "play[] ... U.S. Attorney." The

29

equities demand an end to this nightmare and restoration of General Flynn's freedom and peace of mind.

Second, the reputation of the judiciary is in jeopardy.  As the Chief Justice memorably stated at his confirmation hearings, the function of a judge in our system of government is to "call balls and strikes, and not to pitch or bat."  The district judge in this case has abandoned any pretense of being an objective umpire—going too far as to suggest that a criminal defendant who succumbs to a coerced and unfair plea bargain should be prosecuted for contempt.

In the midst of a national election season, with unprecedented acrimony on all sides of the civic debate, the district judge has dragged the court into the political hurricane—cementing the notion that judges are politicians in robes who use their authority to thwart what they consider the "corruption," "impropriety," and "improper political influence" of another one of the political branches.

Confidence in the rule of law, and the willingness of federal judges to administer it impartially, will continue to erode, if this Court fails to put a swift end to this spectacle.

30

## IV.   The Court Should Order this Case Re-Assigned to Another District Judge

The district judge's manifest confusion about the facts of this case, accusing General Flynn of treason and having "sold out his country," and his punitive intentions are well documented.   Following Petitioner's first sentencing hearing on December 18, 2018, headlines such as these appeared: Stephanie Kirchgaessner, *I can't hide my disgust, my disdain': judge lambasts Michael Flynn*, THE GUARDIAN (Dec. 18, 2018, 5:26 PM) https://tinyurl.com/ycbt6ayr; Shannon LaFraniere and Adam Goldman, '*Not Hiding My Disgust': Judge Rebukes Flynn, Then Delays Sentencing*, N.Y. TIMES (Dec. 28, 2018) https://tinyurl.com/ybh2czv6; Victoria Albert, *Judge asks prosecutors whether Mike Flynn could have been charged with treason*, THE DAILY BEAST (Dec. 18, 2018, 4:06 PM) https://tinyurl.com/ycx45gvt; Griffin Connolly, *Judge Lights Into Michael Flynn: 'You Sold Your Country Out,'* ROLL CALL (Dec. 18, 2018, 1:03 PM) http://tiny.cc/p1h9oz; Demetri Sevastopulo, *'You sold your country out,' judge tells Michael Flynn as sentence delayed*, THE IRISH TIMES (Dec. 18, 2018, 6:54 PM) https://tinyurl.com/y7e5lxvz.

These world-wide headlines are only one wave of the tsunami of invective that crashed into General Flynn as a result of the district judge's

intemperate comments.  A defendant facing sentencing is entitled to a judge who does not express "disgust" and "disdain" in a courtroom filled with reporters.  Inflaming public passions against a party, particularly a criminal defendant, and encouraging prosecutors to vastly increase the charges against him, is the very antithesis of calling balls and strikes.

Nor was this the end of the matter.  The district judge's latest actions—failing to grant the Government's Motion to Dismiss, appointing a biased and highly-political amicus who has expressed hostility and disdain towards the Justice Department's decision to dismiss the prosecution, and the promise to set a briefing schedule for widespread amicus participation in further proceedings—bespeaks a judge who is not only biased against Petitioner, but also revels in the notoriety he has created by failing to take the simple step of granting a motion he has no authority to deny.  This is an umpire who has decided to steal public attention from the players and focus it on himself.  He wants to pitch, bat, run bases, and play shortstop.  In truth, he is way out in left field.

This Court in *Fokker Servs.* declined the petitioners' request to reassign the case because "[r]eassignment is warranted only in the 'exceedingly rare circumstance,' [*In re Kellogg Brown & Root,* 756 F.3d 754, 763 (D.C. Cir. 2014)], in which the district judge's conduct is 'so extreme as

32

to display clear inability to render fair judgment,' *Liteky v. United States,* 510 U.S. 540, 551 (1994)."  818 F.3d at 750-51.  The Court concluded that Fokker "does not approach that high bar. Although the district court volunteered opinions about Fokker's conduct on the basis of facts presented during the proceedings, those sorts of 'candid reflections' concerning the judge's assessment of a defendant's conduct 'simply do not establish bias or prejudice.' *In re Barry,* 946 F.2d 913, 914 (D.C.Cir.1991); *see SEC v. First City Fin. Corp.,* 890 F.2d 1215, 1222 (D.C.Cir.1989). Nor do the district court's observations suggest 'deep-seated ... antagonism that would make fair judgment impossible.'  *Liteky,* 510 U.S. at 555."  *Id.*

Unlike in *Fokker*, the district judge's outrage at General Flynn does reveal a deep-seated antagonism.  In open court, knowing full well that his words would be broadcast all over the world within minutes, the district judge accused General Flynn of treason—a charge hurtful to any American, but a stake through the heart of one who has risked his life protecting the United States from its foreign enemies.  The judge also expressed his personal "disgust" (pointing out he was not hiding it) and accused him of arguably having "sold out" his country.  App. 1: 34.  Even uttered in a private conversation, such words would be cause for recusal, but to say them to the

33

world does, indeed, evince "deep-seated ... antagonism that would make fair judgment impossible." *Liteky,* 510 U.S. at 555.

If the Court grants the principal relief Petitioner seeks, there may not be much by way of further proceedings in the case, but there could be. Petitioner, the Government, and the appearance of justice will best be served by having another judge—one who has not implied that Petitioner is a traitor—conduct any further proceedings in the case.

## CONCLUSION

For these reasons, Petitioner respectfully requests a Writ of Mandamus ordering the district court to (1) grant the Government's Motion to Dismiss with prejudice, (2) vacate its order appointing an amicus curiae, and (3) assign the case to another judge for any additional proceedings.

Respectfully submitted,

/s/ Jesse R. Binnall
_____

Jesse R. Binnall
Lindsay McKasson
Abigail Frye
HARVEY & BINNALL, PLLC
717 King Street
Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943

/s/ Sidney Powell
_____

Sidney Powell
Molly McCann
SIDNEY POWELL, P.C.
  *Counsel of Record*
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: (214) 707-1775

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2020, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the CM/ECF system.  I further certify that I have served the following by first-class United States Mail for delivery to each of the following on May 19, 2020.

> Timothy Shea, Esquire
> United States Attorney for the District of Columbia
> 555 4th Street, N.W.
> Washington, D.C. 20530
>
> The Hon. Emmet G. Sullivan
> United States District Court for the District Columbia
> 333 Constitution Avenue, N.W.
> Washington, D.C. 20001
>
> John Gleeson, Esquire
> Debevoise & Plimpton LLP
> 919 Third Avenue
> New York, NY 10022
> Tel: 212-909-6000
> Fax: 212-909-6836

May 19, 2020                                /s/ Sidney Powell
                                           _____

                                           Sidney Powell
                                           SIDNEY POWELL, P.C.
                                             *Counsel of Record*
                                           2911 Turtle Creek Blvd.,
                                           Suite 300
                                           Dallas, Texas 75219
                                           Tel: (214) 707-1775

35

## CERTIFICATION OF COMPLIANCE
## WITH TYPE-VOLUME LIMIT

(1)   This document complies with the word limit of the Federal Rule of

Appellate Procedure 21(d)(1) because, excluding the parts of the

document exempted by Federal Rule of Appellate Procedure 32(f)

and D.C Circuit Rule 32(e)(1) this document contains 7,765 words.

(2)   This document complies with the typeface requirement of Federal

Rule of Appellate Procedure 32(a)(6) because this document has

been prepared in a proportionally spaced typeface using Microsoft

Word in 14-point Georgia.

May 19, 2020                                    /s/ Sidney Powell
                                    _____

                                    Sidney Powell
                                    SIDNEY POWELL, P.C.
                                      *Counsel of Record*
                                    2911 Turtle Creek Blvd.,
                                    Suite 300
                                    Dallas, Texas 75219
                                    Tel: (214) 707-1775