No. 20-5143

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

IN RE: MICHAEL T. FLYNN, PETITIONER

—————————————

On Petition for A Writ of Mandamus
To the United States District Court for the District of Columbia

—————————————

REPLY BRIEF OF MICHAEL T. FLYNN

—————————————

HARVEY & BINNALL, PLLC          SIDNEY POWELL, P.C.
Jesse R. Binnall                Sidney Powell
Lindsay McKasson                  *Counsel of Record*
Abigail Frye                    Molly McCann
717 King Street                 2911 Turtle Creek Blvd.,
Suite 200                       Suite 300
Alexandria, Virginia 22314      Dallas, Texas 75219
Telephone: (703) 888-1943       Tel: (214) 707-1775
jbinnall@harveybinnall.com      sidney@federalappeals.com


**ATTORNEYS FOR PETITIONER MICHAEL T. FLYNN**

## TABLE OF CONTENTS

**I.   The Rule 48(a) Determination of Public Interest is Made by the Government**.................................................................3

**II.   The Presumption of Regularity Attaches to the Government's Determination that Dismissal is in the Public Interest.** ...................................................................7

   A.   The Government offered a significant factual basis for its motion to dismiss. ...................................................... 10

   B.   Respondent Has No Cognizable Basis to Overcome the Presumption of Regularity.................................... 13

**III.   Mandamus Should Issue to Stop Unauthorized Judicial Actions and Compel Dismissal with Prejudice.**..........17

**IV.   Conclusion**...............................................................19

**CERTIFICATION OF COMPLIANCE WITH**_____**21**

**TYPE-VOLUME LIMIT** _____**21**

**CERTIFICATE OF SERVICE** _____**22**

# TABLE OF AUTHORITIES

## Cases

*Berger v. United States*, 295 U.S. 78, 88 (1935)............................................................19

*In Re Richards*, 213 F.3d 773 (3d Cir. 2000) ..............................................................8

*In re United States*, 345 F.3d 450 (7th Cir. 2003) ....................................................3, 7

*Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375
  (2d Cir. 1973) ................................................................................................16

*Roche v. Evaporated Milk Ass'n*, 319 U.S. 21 (1943)..................................................7

*United States v. Ammidown*, 497 F.2d 615 (D.C. Cir. 1973) ................................4, 5, 7

*United States v. Armstrong,* 517 U.S. 456 (1996)..................................................14, 16

\* *United States v. Fokker Servs. B.V.*, 818 F.3d 733
  (D.C. Cir. 2016)................................................................3, 4, 13, 15, 16, 17, 18

*United States v. Greater Blouse, Skirt & Neckwear Contractors
  Ass'n*, 228 F. Supp. 483 (S.D.N.Y. 1964) ....................................................5

\* *United States v. Hamm*, 659 F.2d 624 (5th Cir.1981) ................................13, 14, 16

*United States v. HSBC Bank USA,* 863 F.3d 125 (2d Cir. 2017) ..................8, 15, 16

*United States v. Nixon*, 418 U.S. 683 (1974)................................................................4

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020)............................................3

*United States v. Smith* 55 F.3d 157 (4th Cir. 1995) ..................................................1

*United States v. Smith*, 55 F.3d 157 (4th Cir. 1995) ..................................................9

*Wayte v. United States*, 470 U.S. 598 (1985) ............................................................18

## Statutes

18 U.S.C. §1001 ..................................................................................................12

Fed. R. Crim. P. 48 ...............................................................1, 9, 13, 17, 18

## Other Authorities

*A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election,* 340, 404, 408 (June 2018)...................13

Jed S. Rakoff, *Why Innocent People Plead Guilty*, The New York Review of Books (Nov. 20, 2014) ......................................................................................................10

John Gleeson, David O'Neil, and Marshall Miller, *The Case Isn't Over Until the Judge Says it's Over*, WASH. POST (May 11, 2020, 6:52PM), https://tinyurl.com/4m7pc28 .............................................................................6

National Registry of Exonerations, https://tinyurl.com/moalhx8 (last visited June 6, 2020)...........................................................................................................................1

Sean Davis, *Declassified Flynn Transcripts Contradict Key Mueller Claims Against Flynn*, THE FEDERALIST (May 29, 2020) ..................................................11

*Twenty percent*—more than 500—of former criminal defendants named in the *National Registry of Exonerations* had pleaded guilty.[1] Even following a guilty plea, a Government motion to dismiss is neither rare nor suspect. The Fourth and Fifth Circuits have ordered dismissals specifically in those circumstances. App.81-83; *United States v. Smith* 55 F.3d 157 (4th Cir. 1995). This is especially true where that motion arises from a lengthy independent review of the Government's own file. "Here, the Attorney General ... tasked an experienced prosecutor with investigating the matter, and then took decisive action to fulfil his duty [of correcting injustice] with the filing of the government's motion to dismiss." Brief Amicus Curiae of Former United States Attorney General Edwin Meese III at 8. That motion disclosed stunning exculpatory evidence—evidence Respondent and his quiver of Amici elide.

Respondent claims that Rule 48(a)'s "leave of court" clause empowers him to appoint his own amicus, investigate, and consider perjury charges against General Flynn to increase his punishment. And, despite Respondent's proclamation on December 18, 2018, that he would

---

[1] National Registry of Exonerations, https://tinyurl.com/moalhx8 (last visited June 6, 2020).

"never sentence an innocent man," Respondent has exceeded his power now precisely because General Flynn proclaimed his innocence and pursued a vigorous defense of his constitutional rights as soon as he retained unconflicted counsel. Yet, as the Government and Amici explained, contempt charges do not arise from withdrawing a guilty plea. Government Brief at 28; Reeves Amicus Brief at 24; Federal Practitioners Amicus Brief at 19. Respondent's proclivity for grabbing world-wide headlines by suggesting General Flynn has committed heinous crimes that don't exist is once again on display.

When the Government moved to dismiss and Petitioner filed his consent (ECF Nos. 198, 199), Respondent issued a de facto call for amici. Min. Order, May 12, 2020. The next day, Respondent appointed Amicus Gleeson (ECF No. 205) who requested a briefing schedule anticipating need for time for "any additional factual development." ECF No. 209. Petitioner promptly filed this Writ. Respondent issued the order as requested. Min. Order, May 19, 2020. And, Amicus has now complied, launching a 600-page frontal assault on General Flynn and the Justice Department's Motion, calling it "pretextual" and worse. ECF No. 223 at 26. To paraphrase Judge Posner, Amicus "is playing [Attorney General].

It is no doubt a position that he could fill with distinction, but it is occupied by another person." *In re United States*, 345 F.3d 450, 453 (7th Cir. 2003).

Respondent's unprecedented action ignores the facts of this case and defies this Court's binding precedent. *United States v. Fokker Servs. B.V.*, 818 F.3d 733 (D.C. Cir. 2016). It collides with bedrock constitutional principles: the Article II mandate that the Executive branch "take Care that the Laws be faithfully executed" and the Article III requirement of a "case or controversy" for federal courts to exercise jurisdiction. Respondent is not in the Executive branch and, being an Article III judge, has no authority to gin up his own case or controversy where none exists. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020). The game is over and this Court should order the umpire to leave the field. *Fokker Servs.*, 818 F.3d at 749-50.

## I.     The Rule 48(a) Determination of Public Interest is Made by the Government.

Article II, Section 3 of the Constitution vests the power to execute the laws solely in the Executive Branch. Accordingly, the power to prosecute—to decide who, when, where, and how someone is charged with a federal crime—rests entirely with the Department of Justice.

*United States v. Nixon*, 418 U.S. 683, 693 (1974); *Fokker Servs.*, 818 F.3d at 737, 741.

Even in precedent Respondent misconstrues, there is strong indication judges must exercise extreme caution under Rule 48(a).  In *United States v. Ammidown*, 497 F.2d 615, 621 (D.C. Cir. 1973), this Court explains that Rule 48(a) places the responsibility on the Executive Branch to determine "the public interest."  Only the prosecutor is "in a position to evaluate the government's prosecution resources and the number of cases it is able to prosecute." *Id.*  And, as Amici Federal Practitioners point out, "[i]n the almost half century since, the Supreme Court and this Court have substantially developed the separation of powers jurisprudence.  Although ... not expressly ... overruled, *Ammidown* has been superseded by subsequent teaching, and it can no longer reasonably be considered as the law of this Circuit."  Federal Practitioners Amicus Brief at 10.

If *Ammidown* still has precedential force, it too limits the role of judges.  First, *Ammidown* noted only that the court has "a role" in the dismissal process; the judge is a participant, not a ringmaster.  497 F.2d at 620.  Second, the court would "require a statement of reasons and

4

underlying factual basis"—not a mere conclusory statement of public interest. *Id.* Here the Government provided a 20-page brief explaining its reasons, including a thorough legal analysis supported by 80 pages of new evidence.

"Third, the court does not have primary responsibility, but rather the role of guarding against abuse of prosecutorial discretion." *Id.* This is the no-ringmaster rule redux: "The rule contemplates exposure of the reasons for dismissal 'in order to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors,' and … 'to gain the Court's favorable discretion, it should be satisfied that the reasons advanced for the proposed dismissal are substantial.'" *Id.* (quoting *United States v. Greater Blouse, Skirt & Neckwear Contractors Ass'n*, 228 F. Supp. 483, 486 (S.D.N.Y. 1964).

The Government's Motion here states substantial reasons. Some, like Respondent and his bask of Amici, may disagree with those reasons—and especially the result—but nothing in *Ammidown* suggests Respondent may look behind the Motion to determine whether its reasons are correct, wise, or in the public interest. "[E]xposure of the reasons for dismissal" ensures transparency for the public record, but

5

neither *Ammidown*—nor any other appellate opinion—authorizes an inquisition behind the Government's decision.  497 F.2d at 620.

Respondent would make the courtroom the situs for prosecutorial decisions and himself the ultimate arbiter of those Executive Branch functions.  This is decidedly not what Judge Leventhal had in mind when he wrote *Ammidown*, nor is it likely he could have imagined a district judge in his circuit would so interpret his words.   Respondent's suggestion that *Ammidown* authorizes such a massive intrusion into the Department's decision-making process—much less the far-reaching political inquiry proposed by his chosen Amicus in the *Washington Post* less than 48 hours prior to his appointment—is positively absurd.[2]

That is precisely why this Court's intervention is needed now—not after Respondent and his Amicus create a circus and sentence an innocent man.  Mandamus lies when a court has exceeded its authority— as Respondent has done here—and "to compel it to exercise its authority

---

[2] John Gleeson, David O'Neil, and Marshall Miller, *The Case Isn't Over Until the Judge Says it's Over*, WASH. POST (May 11, 2020, 6:52PM), https://tinyurl.com/4m7pc28; ECF No. 209 (Gleeson motion to establish briefing schedule).

when it is its duty to do so." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943). To allow Respondent to do anything other than grant the Motion to Dismiss would erode the authority of this Court, its precedent, the Constitution, and the Article II power of the Department of Justice.

## II.   The Presumption of Regularity Attaches to the Government's Determination that Dismissal is in the Public Interest.

The presumption of regularity attaches to the Government's determination, and the prosecutors' decision may not be overturned except in the most "blatant and extreme case." *Ammidown*, 497 F.2d at 622. The only thing "blatant and extreme" about the Government's Motion to Dismiss is the *prior* Government misconduct it reveals. Respondent and his pack of Amici have not cited, and Petitioner has not found, a single reported decision of a federal court of appeals *affirming* a district court's denial of the Government's motion to dismiss pursuant to Rule 48(a). Neither had Judge Posner when he penned *In Re United States,* 345 F.3d 450, 453 (7th Cir. 2003).

Every single appellate case on which Respondent and his troop rely requires *dismissal* upon the government's motion with no ado whatsoever

when the motion is substantial.[3]  As the Second Circuit wrote in reversing former Judge Gleeson for aggrandizing his own role in reviewing a deferred prosecution agreement, to do otherwise "would be to turn the presumption of regularity on its head." *HSBC Bank USA, N.A.*, 863 F.3d 125, 136 (2d Cir. 2017).

The Government's action dismissing the Flynn prosecution because it resulted from a guilty plea is neither unusual nor indicative of favoritism.[4]  In addition to the more than 500 innocent people on the National Registry of Exonerations who had entered guilty pleas, Petitioner's Appendix includes court orders dismissing charges against three defendants by Judge Leon in 2012 upon a two-page motion to dismiss filed by the Government one year after their guilty pleas. App.81-

---

[3]  Respondent's "best case" is twenty years old and allowed a hearing only to cast "sunshine" on the mere "conclusory interest" the Virgin Islands prosecutor initially provided.  *In Re Richards*, 213 F.3d 773 (3d Cir. 2000).  Notably, the Third Circuit held that the burden of proof does not shift to the prosecutor to prove that dismissal is in the public interest. *Id.* at 788.

[4]  To the contrary, the evidence long suppressed indicated that General Flynn was singled out for special *adverse* treatment by the highest levels of the FBI, investigated and interviewed with no basis whatsoever, and "evidence" against him was falsified.  ECF Nos. 162, 170, 188, 198.

83. Further, on a two-page motion by Attorney General Eric Holder, Respondent himself dismissed criminal charges against former Alaska Senator Ted Stevens after the jury convicted him on multiple counts, for the same reasons the Department of Justice revealed here: suppression of exculpatory evidence. And the Third Circuit in *United States v. Smith*, 55 F.3d 157 (4th Cir. 1995), reversed a district judge's denial of the Government's Rule 48(a) motion to dismiss, which was made after the defendant had pleaded guilty and cooperated with the Government.  The *en banc* Fifth Circuit did also.  *United States v. Hamm*, 659 F.2d 624 (5th Cir.1981) (*en banc*).

Nor is dismissal unusual following guilty pleas in high-profile cases where, as here, prosecutors "persuaded" defendants to plead guilty for conduct that was not criminal. The guilty pleas were vacated for former Arthur Andersen partner David Duncan and Enron Broadband executive Christopher Calger.[5]

---

[5] Closed Criminal Division Cases, Dep't of Justice, *United States v. Christopher Calger*, No. CR-00286-001 (Dec. 20, 2016), https://www.justice.gov/criminal-vns/case/calgerc. *United States v. Duncan*, No. 02-209 (S.D. Tex. Dec. 13, 2005) (Order Granting Unopposed Motion to Withdraw the Defendant's Guilty Plea and to Dismiss the Information).

Regrettably, our "justice" system has become a conviction machine so powerful that innocent people are regularly compelled to "confess" guilt they do not have and plead to crimes they did not commit. "[T]he prosecutor-dictated plea bargain system, by creating inordinate pressures to enter into plea bargains, appears to have led a significant number of defendants to plead guilty to crimes they never actually committed." Jed S. Rakoff, *Why Innocent People Plead Guilty*, The New York Review of Books (Nov. 20, 2014).

## A.   The Government offered a significant factual basis for its motion to dismiss.

The Government's Motion to Dismiss, ECF No. 198 and its Brief for this Court, detail a compelling factual basis justifying—nay requiring—dismissal in this case because of the misconduct of Government agents and the suppression of this evidence for as long as three years. The Government's filings also explain how the new evidence defeats one or more of the essential elements of the purported offense, backed up by significant legal analysis.

Ironically, the new evidence answers the very questions Respondent himself posed two years ago. At the originally scheduled

sentencing on December 18, 2018, Respondent made clear he intended to sentence Petitioner harshly, but he ended the proceedings saying:

> . . . I had many, many, many more questions, and at some point what I may do is share those questions with counsel …These are questions that you would be prepared to answer anyway, such as, you know, how the government's investigation was impeded? What was the material impact of the criminality? Things like that." Hr'g Tr. Dec. 18, 2019 at 50:12-14, 19-22.  [Pet.App. 1].

Meanwhile, at least four of the FBI officials directly involved in investigating and prosecuting General Flynn have been fired from the FBI for malfeasance, extreme bias, lies while under oath, or other misconduct.  Those remaining in the FBI who are responsible for the Flynn travesty of justice, including Agent Pientka, were excoriated in the December 2019 Report of the Inspector General.

The facts are detailed in the Government's brief, pp. 2-6.  In addition, the transcripts of General Flynn's conversations with Ambassador Kislyak were declassified and released on May 29, 2020.[6] As even then AUSA Van Grack acknowledged in court on December 18,

---

[6] Sean Davis, *Declassified Flynn Transcripts Contradict Key Mueller Claims Against Flynn*, THE FEDERALIST (May 29, 2020), https://thefederalist.com/2020/05/29/declassified-flynn-transcripts-contradict-key-mueller-claims-against-flynn/.

2018, there was nothing unlawful about those calls—certainly no treason, as Respondent seemed to think. App. 35-36. The transcripts now provide previously unrecognized meaning and context for some of Agent Pientka's notes that were omitted from the "final 302" weeks later. ECF No. 188.

As the Government's Motion explained, the FBI had no reason to interview General Flynn at all. The transcripts of the calls only reinforce the determination of the FBI to investigate General Flynn. His statements were not material. Yet the FBI purposely caught him "unguarded" and deliberately violated multiple standard procedures. This included not giving him the standard 18 U.S.C. §1001 warnings; not showing him the transcripts of his calls, as they routinely did; and, not notifying White House counsel or Justice Department leadership about the interview. Nonetheless, the agents felt compelled to report back in three separate hour-long briefings that they believed he "was not lying or [that he] did not think he was lying" [either of which negates the commission of the purported offense]. Notably, at least two drafts of the 302, including the original version have never been produced to the defense.

Also relevant is the scathing Report of the Inspector General which revealed unprecedented violations by the FBI, including its betrayal of trust of a presidential briefing to assess and collect information on General Flynn on August 17, 2016, in case he found his way to the White House with Mr. Trump.  U.S. Department of Justice (DOJ) Office of the Inspector General (OIG), *A Review of Various Actions by the Federal Bureau of Investigation and Department of Justice in Advance of the 2016 Election,* 340, 404, 408 (June 2018).  When they ambushed General Flynn in his new White House office, they used that assessment as background.

**B.   Respondent Has No Cognizable Basis to Overcome the Presumption of Regularity.**

In addition to this Court's dispositive decision in *Fokker Servs.*, the *en banc* Fifth Circuit addressed this issue in *United States v. Hamm*, 659 F.2d 624 (5th Cir.1981) (*en banc*), where it reversed the trial court's failure to grant dismissal on the Government's motion, made after a guilty plea. The court scrupulously followed the Supreme Court in holding "that the 'leave of court' requirement of Rule 48(a) is primarily intended to protect the defendant against prosecutorial harassment." *Id.* at 628.  The court wrote: "We continue to hold that even when the defendant consents to the motion to dismiss, the trial court, in extremely

limited circumstances in extraordinary cases, may deny the motion when the prosecutor's actions clearly indicate a 'betrayal of the public interest.'" *Id.* at 629 (quoting *United States v. Cowan*, 524 F.2d 504, 514 (5th Cir. 1975)) (emphasis added).  The only circumstances identified as constituting improper motivation to dismiss are where there is reason to believe that the prosecutor (1) recieved a bribe, (2) wanted to attend a social event rather than trial, or (3) personally disliked the victim of the crime.  *Hamm*, 659 F.2d at 630.  None of these, or anything like them, exist here.

Respondent nevertheless has conjured up "plausible questions" that he deems himself entitled to investigate until he obtains answers satisfactory to him.  First, "plausible questions" is not a legal standard at all—much less the "clear evidence" required even to challenge the presumption of regularity; and second, his "plausible questions" are rank speculation or hypotheticals devoid of basis in fact or law.  *United States v. Armstrong,* 517 U.S. 456, 464 (1996).  Third, none of his "questions" even relate to the Government's Motion to Dismiss.  Rather Respondent has "imagined" them in response to General Flynn's audacity to move to withdraw his plea.  ECF No. 160-23.

14

When the Second Circuit reversed District Judge Gleeson's "'novel' exercise of supervisory power" over a deferred prosecution agreement, it noted the judge's own justification: his ability "to imagine circumstances in which a deferred prosecution agreement, or the implementation of such an agreement, so transgresses the bounds of lawfulness or propriety as to warrant judicial intervention to protect the integrity of the Court." *United States v. HSBC Bank USA,* 863 F.3d 125, 136 (2d Cir. 2017).

The Second Circuit's acerbic response? "We agree that it is not difficult to *imagine* such circumstances. But the problem with this reasoning is that it runs headlong into the presumption of regularity that federal courts are obliged to ascribe to prosecutorial conduct and decision-making. That presumption is rooted in the principles that undergird our constitutional structure." *Id.* Notably, the unanimous *HSBC Bank* panel relied on this Court's *Fokker Servs.* opinion, which it cited with approval. *Id.* at 137.

Respondent's "plausible questions" collide "headlong into the presumption of regularity that federal courts are obliged to ascribe to prosecutorial conduct and decision-making." That is why the Supreme Court and this Court require "clear evidence to the contrary" to overcome

that presumption, *Fokker Servs.,* 818 F.3d at 741-43 (quoting *Armstrong,* 517 U.S. at 464)—not "imagining" "plausible questions" or any of the other non-standards bruited about by Respondent and his Amici.

As the Second Circuit also noted in *HSBC Bank*, a federal court's "role is not to act as 'super-prosecutors,' second-guessing the legitimate exercise of core elements of prosecutorial discretion, but rather as neutral arbiters of the law.  863 F.3d at 138 (citing *Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 380 (2d Cir. 1973)).  It is axiomatic that "the trial judge cannot merely substitute his judgment for that of the prosecutor."  Hamm, 638 F.2d at 828.

Furthermore, the Government's Motion exemplifies the public interest.  It is decidedly in the public interest that misconduct of rogue federal agents be rectified and false evidence not provide grist for prosecutions.  The Justice Department uncovered evidence that had wrongly been hidden.  The prosecutors weighed and balanced the interest of the public, the Departments resources and priorities, the evidence, the law, and other factors in its purview, and concluded that it would not

pursue the prosecution.[7]   Making such judgments is precisely their constitutional prerogative because they, unlike the judiciary, are ultimately responsible to the voters.

Without "clear evidence" of a "betrayal of the public interest," such as bribery or abject fecklessness, or a motion to dismiss that "make[s] a mockery of judicial powers," no court can "scrutinize and countermand the prosecution's exercise of its traditional authority over charging and enforcement decisions." *Fokker Servs.*, 818 F.3d at 741, 743.  The "public interest" simply does not expand judicial authority under Rule 48(a) to reach past the Government's motion—much less to "assume the role of Attorney General." *Fokker Servs.*, 818 F.3d at 743.

### III.  Mandamus Should Issue to Stop Unauthorized Judicial Actions and Compel Dismissal with Prejudice.

In this case, Respondent is neither competent to review the dismissal of charges nor does he have authority to do anything more than

---

[7] Ironically, the Department undertook a similar analysis of complex factors when it previously decided not to prosecute former Deputy Director Andrew McCabe—despite a criminal referral of multiple perjury counts from the Inspector General, sworn and transcribed false testimony, and the full protection of Mr. McCabe's rights, including advice of counsel. Respondent's Amici chorus had laryngitis that day.

grant the Government's Motion. *See Wayte v. United States*, 470 U.S. 598, 607-08 (1985). He cannot authorize or undertake an investigation for purposes of making a determination, or impose a sentence for which he has no authority. Respondent cannot proceed without the jurisdiction afforded by the existence of a case or controversy pursuant to Article III or assume the mantle of a prosecutor under Article II. *Fokker Servs.*, 818 F.3d at 742. "Neither this court on appeal nor the trial court may properly reassess the prosecutor's evaluation of the public interest." *Hamm*, 659 F.2d 631. Indeed, even delaying its ruling is outside the district court's authority in this case. *See* Reeves Amicus Brief at 18.

By dismissing with prejudice the case against Petitioner, the Government is trying to end the now three-year harassment of General Flynn—acting in accordance with the very purpose of the "leave of court" provision of Rule 48(a). Ironically, it is Respondent who seeks to prolong the harassment of Petitioner by usurping the power of the Attorney General to bring additional charges. *Fokker Servs.*, 818 F.3d at 742.

Petitioner has no remedy other than mandamus. He is still subject to weekly reporting requirements, his passport is in federal custody—as are his computers, cell phones, and those of his son; and, his travel is

18

limited to the United States.  Despite thirty-three years of exemplary military service, including five years of active deployment in combat, he cannot be in the presence of a firearm.  He is forced to incur needless additional attorneys' fees, and the stress and anxiety of further criminal prosecution.  Worse, he suffers the continuing ignominy of being branded a traitor and perjurer by Respondent himself and by this wrongful prosecution.

The Government's Motion to Dismiss fulfills the highest and best tradition of the Department of Justice: to seek justice—not convictions. *See* Meese Amicus Brief at 8-9 (citing Attorney General (later Justice) Jackson).  As the Supreme Court wrote in *Berger v. United States*, 295 U.S. 78, 88 (1935), "The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."

## IV.   Conclusion

As Attorney General Meese notes in his Amicus Brief, "[i]f the courts [administer the law impartially], they will inspire the public's

confidence. If courts aspire to do more, then law will become what the judges say it is, and that will lead the nation into judicial supremacy where the people are ruled by judges, not by the rule of law."  Meese Amicus Brief at 11.  Respondent here aspires to do more, much more. This Court must stop him before he further jeopardizes the legitimacy of the federal judiciary.  Accordingly, mandamus should issue to dismiss this case with prejudice, vacate the plea, and order any further proceedings conducted by a different judge.

Respectfully submitted,

/s/ Jesse R. Binnall

Jesse R. Binnall
Lindsay McKasson
Abigail Frye
HARVEY & BINNALL, PLLC
717 King Street
Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943

/s/ Sidney Powell

Sidney Powell
   *Counsel of Record*
Molly McCann
SIDNEY POWELL, P.C.
2911 Turtle Creek Blvd.,
Suite 300
Dallas, Texas 75219
Tel: 214-707-1775

## CERTIFICATION OF COMPLIANCE WITH
## TYPE-VOLUME LIMIT

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 21(d)(1) because it contains 3,857 words.  This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Microsoft Word in Century Schoolbook 14-point font, a proportionally spaced typeface.

/s/ Sidney Powell
SIDNEY POWELL

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2020, I electronically filed the foregoing brief with the Clerk of Court by using the appellate CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Sidney Powell_____
SIDNEY POWELL