```
                    UNITED STATES COURT OF APPEALS
                FOR THE DISTRICT OF COLUMBIA CIRCUIT


- - - - - - - - - - - - - - X
                           :
IN RE:                     :    No. 20-5143
MICHAEL T. FLYNN           :
                           :
                           :
- - - - - - - - - - - - - - X


                                  Friday, June 12, 2020

                                  Washington, D.C.


     The above-entitled matter came on for oral
argument pursuant to notice.

     BEFORE:

          CIRCUIT JUDGES HENDERSON, WILKINS AND RAO

     APPEARANCES:

          ON BEHALF OF THE PETITIONER:

          SIDNEY POWELL, ESQ.

          ON BEHALF OF U.S. DEPARTMENT OF JUSTICE:

          JEFFREY B. WALL (DOJ), ESQ.

          ON BEHALF OF RESPONDENT, HON. EMMET G. SULLIVAN:

          BETH A. WILKINSON, ESQ.
```

C O N T E N T S

ORAL ARGUMENT OF:                                      PAGE

        Sidney Powell, Esq.
        On Behalf of the Petitioner                 3; 69

        Jeffrey B. Wall, Esq.
        On Behalf of U.S. Department of Justice     21; 71

        Beth A. Wilkinson, Esq.
        On Behalf of Respondent Hon. Emmet G. Sullivan     53

MR

1                    P R O C E E D I N G S

2          THE CLERK:  Case No. 20-5143, In Re: Michael T.

3   Flynn.  Ms. Powell for the petitioner, Michael T. Flynn.

4   Mr. Wall for the U.S. Department of Justice.  Ms. Wilkinson

5   for the respondent, the Honorable Emmet G. Sullivan.

6          JUDGE HENDERSON:  Good morning, counsel.  We'll

7   hear first from Ms. Powell.

8          ORAL ARGUMENT OF SIDNEY POWELL, ESQ.

9              ON BEHALF OF THE PETITIONER

10         MS. POWELL:  Good morning.  May it please the

11  Court, this is Sidney Powell for petitioner Michael Flynn.

12  We are here now to stop further impermissible intrusion into

13  the sole power of the Executive Branch under the Take Care

14  Clause to decide to dismiss a case and what circumstances

15  warrant that dismissal.  The Government here provided an

16  extensive and thoroughly documented motion to dismiss this

17  prosecution, weighing, as it should, all of the factors that

18  go into that, including the provision of extraordinary

19  exculpatory evidence that came to light through an

20  independent review by Mr. Jensen, who not only had ten

21  years' experience as an FBI agent but ten years as a federal

22  prosecutor before Attorney General Barr tasked him to review

23  this case.

24         It cannot go on any longer.  This is the

25  quintessential case for mandamus because we have both issues

MR

1   of judicial usurpation of Executive prerogatives and a clear

2   abuse of discretion.  The Judge has no authority to do

3   anything further in the case.  There is no case or

4   controversy any longer.  The parties have decided, the

5   Government has quit, and he also has no authority to go into

6   the reasons behind the Executive's determination to dismiss

7   the case.  It's over according --

8          JUDGE WILKINS:  Counsel, this is Judge Wilkins.

9   Good morning.

10          MS. POWELL:  Good morning.

11          JUDGE WILKINS:  I have a question about the role

12   of the district court.  You essentially argue that the

13   district court has no role, but in Rinaldi, where the

14   Supreme Court was reviewing the denial of a Rule 48 motion

15   made by the Government, the Court did what it called a,

16   quote, independent evaluation of the unusual circumstances

17   disclosed by the record.  So, the Supreme Court believed

18   that it had a role to perform an independent evaluation.  So

19   doesn't the district court here have that same role?

20          MS. POWELL:  Not in the circumstances of this

21   case.  The authorities are that given the fact that the

22   presumption of regularity applies to everything the Attorney

23   General has done, and there is no clear evidence whatsoever

24   to go behind that given the documentation reasoning and

25   briefing that has been provided, there is nothing further

1   for the Court to do.  There is no indication.  There is no

2   clear evidence, there is no actual factor or reason to go

3   behind the Government's determination of the factors --

4          JUDGE WILKINS:  I don't see how that works because

5   the Court also said in Rinaldi that it would not presume bad

6   faith by the Government.  So the Court, you know, gave the

7   Government the benefit of the presumption of regularity, but

8   it yet and still performed an independent evaluation.

9          MS. POWELL:  Only to the extent the Court said it

10  was not clearly to the contrary to the manifest public

11  interest.  There was no further proceeding of any

12  significance, certainly no amicus appointed, certainly no

13  factual background investigation in Rinaldi.  It was simply

14  a review of the Petit (phonetic sp.) policy and its

15  application to the facts of Rinaldi.  And in Fokker

16  Services, this Court issued the mandamus, of course, to

17  proceed to make sure the deferred prosecution agreement was

18  entered, and in doing so, it said the leave of court

19  authority gives no power to the district court to deny a

20  prosecutor's Rule 48(a) motion to dismiss charges based on

21  disagreement with the prosecutor's exercise of charging

22  authority.  For instance, the Court --

23         JUDGE WILKINS:  Well, let's suppose the district

24  court had issued a minute order saying that it intends to do

25  an independent evaluation of the record and will issue an

1   opinion on the Government's 48(a) motion in due course.  Is

2   that error?

3        MS. POWELL:  I think that is error.  I mean, he

4   can look at it on the face of the documents that have been

5   filed, but I don't think in Rinaldi that they went farther

6   than the Government's statements of what it was doing and

7   why it was doing it.  Only the Executive can weigh the

8   willingness of the Government to prosecute, and there would

9   be no remedy.  I mean, the Court can't make the Government

10  prosecute this case.

11       JUDGE WILKINS:  Well, in Thompson, another Supreme

12  Court case that was cited by at least the Government in

13  their briefing, and I can't remember if you cite it in yours

14  also, the Supreme Court was reviewing the denial of a Rule

15  48(a) motion by the Government, and it said that it

16  performed "an independent examination of the record."  And

17  that was despite the Solicitor General's suggestion that the

18  Court just simply dismiss the case.  Do you disagree that

19  that's what the Court said that it did in Thompson?

20       MS. POWELL:  No, but I think all that means is

21  reviewing the documents that the Government provided and the

22  existing status of the record before it, not investigating

23  new possibilities or assuming the role of the prosecutor to

24  see about adding on perjury or contempt charges.  He simply

25  doesn't have the authority to do that.  And without a case

MR

1    in controversy, he's without jurisdiction to do anything

2    further.  I mean, if we were here --

3           JUDGE WILKINS:  Well, your mandamus petition is

4    you are the rulings under review are the failure of the

5    court, the district court, to grant the motion.  So you

6    believe that just him not granting the motion is sufficient

7    grounds, in and of itself, to justify mandamus, right?

8           MS. POWELL:  Well, in Fokker, the Court also said

9    that the court's withholding of approval would amount to a

10   substantial and unwarranted intrusion on the Executive

11   Branch's fundamental prerogatives.  And the judiciary's lack

12   of competence to review the prosecution's initiation and

13   dismissal of charges, according to weight, equally applies

14   to the DPA decision. So, either way, it can't --

15          JUDGE WILKINS:  So you believe that Fokker, a case

16   that was not even a Rule 48(a) case, undermines what the

17   Supreme Court did in Rinaldi and Thompson when the Supreme

18   Court itself performed an independent evaluation of the

19   record when there was no argument there that there was any

20   bad faith by the Government or that the presumption of

21   regularity didn't apply?  You think that Fokker --

22          MS. POWELL:  No.  I'm --

23          JUDGE WILKINS:  -- said that --

24          MS. POWELL:  No, sir.  I'm sorry.

25          JUDGE WILKINS:  -- the Supreme Court got it wrong

1   in Rinaldi and Thompson?

2          MS. POWELL:  No.  I'm saying that the independent

3   review of the record consists of just that, a review of the

4   record.  And the record in this case is extremely well-

5   documented of prosecutorial misconduct and the suppression

6   of Brady evidence that warrants dismissal under any

7   circumstance, aside from the fact we have motions to

8   withdraw pending that were very well documented.

9          I mean, this record contains enormous evidence now

10  of Government misconduct and the suppression of Brady

11  evidence.  It's just that the judge can't, he doesn't have

12  the authority to appoint an amicus under the Smith case that

13  Justice Ginsburg just wrote the unanimous decision for.  He

14  can't go out and create new issues.  Of course he can look

15  at the materials before him, and we welcome him doing that.

16  But to go ahead and grant the motion, because there's no

17  other alternative, not a single case in the country has ever

18  affirmed the denial of a motion to dismiss under 48(a).

19          JUDGE WILKINS:  Then it seems like you've got a

20  pretty good argument that you have an alternative avenue of

21  review, then.  If he denies the motion, then you can come

22  back here on appeal and we can, you can cite all of those

23  precedents to our court, and we can decide that issue at

24  that time.

25          MS. POWELL:  But he doesn't have the authority now

MR

9

1   to go beyond the record and do anything except that.  We

2   would simply be delaying the inevitable and going through an

3   inordinate process in the process of doing that.  I mean, we

4   just got dumped on a 72-page brief that we have to answer by

5   Wednesday with 500 pages of exhibits.  Everybody else in

6   this case is being paid by the Government except my client's

7   defense team.  The toll it takes on a defendant to go

8   through this is absolutely enormous, and it's not justified

9   by this case.

10          This is the most impressive motion to dismiss I've

11  ever seen in decades of practice, and the most well-

12  documented, and in fact, and Judge Leon, I think it was a

13  two-page motion to dismiss pursuant to which he dismissed

14  three defendants for the Government after guilty pleas just

15  a couple of years ago.  And of course, In Re: United States,

16  the Government dismissed, and Judge Posner wrote that

17  decision explaining how the special prosecutor's position

18  had to be vacated and the motion to dismiss had to be

19  granted on mandamus.

20          JUDGE HENDERSON:  Ms. Powell, let me ask you, this

21  is Judge Henderson.  If Judge Sullivan had just kept this

22  motion waiting and languishing, it would be one thing.  He

23  has set a hearing for mid-July.  For all we know, by the end

24  of July, he will have granted the motion.

25          MS. POWELL:  But he doesn't have the authority to

MR

1  conduct that hearing, Your Honor.  He has appointed this

2  amicus to go far beyond the scope of his authority as a

3  member of the judicial branch into the prerogatives of the

4  Department of Justice.

5          JUDGE HENDERSON:  I realize that, but you also

6  know that the courts have said he's not merely a rubber

7  stamp either.  So, there's nothing wrong with him holding a

8  hearing as far as I know.  I don't know of any authority

9  that says he can't hold a hearing before he takes action.

10          MS. POWELL:  Well, the only authority that, in

11  their best case, is In Re: Richards in which the Third

12  Circuit on a motion to dismiss a sexual misconduct claim

13  against someone in the Virgin Islands in a territorial court

14  said we've got to have a little sunlight on the reasons here

15  because the only reason given was in the interests of

16  justice.  And certainly that's not sufficient.

17          But even that case, it was actually altered by the

18  Court's decision in, or discussed by the Court's decision in

19  HSBC Bank, the case out of Mr. Gleason's court that reversed

20  his overreaching authority on reviewing a 48(a) dismissal.

21  And that HSBC case describes Richards as requiring a 48(a)

22  dismissal because the district court's authority severely

23  cabined the review to clearly contrary to the public

24  interest, meaning the prosecutor acting in bad faith such as

25  bribery, fecklessness, animus to the victim or his own self-

MR

1  interest, things like that.  And there is none of that here.

2  If Judge Sullivan had denied the motion to dismiss on this

3  record, we would be entitled to mandamus right now.  To drag

4  this out another six months, I mean, it won't just be a

5  hearing on July 16th.  It will go beyond that.

6       I think it's clear from the amicus position now

7  that they want to take General Flynn to sentencing as soon

8  as possible and impose upon him the maximum possible

9  sentence.  And to make us go through that process when the

10  ultimate result has to be the grant of the motion to

11  dismiss, the Government is just wasting resources out the

12  wazoo pursuing this.  And the toll it's taking on the

13  defendant is certainly irreparable harm.

14       JUDGE WILKINS:  I'd like to ask you --

15       JUDGE RAO:  Ms. Powell --

16       JUDGE WILKINS:  Go ahead.

17       JUDGE HENDERSON:  Let me ask one last question,

18  and that's why couldn't we hold this abeyance and let's see

19  what happens on July 16th?

20       MS. POWELL:  Because the damage continues to

21  accrue by the day because he has no case or controversy

22  before him, and no jurisdiction because he doesn't have the

23  authority to go do what he's trying to do or has done.  He

24  didn't even have the authority to appoint the amicus under

25  Justice Ginsberg's decision.

MR

1          JUDGE WILKINS:  I don't understand that argument.

2    I mean, suppose, in a run-of-the-mill criminal case, well,

3    it's not run-of-the-mill because the Government has evidence

4    from a drone camera that was positioned to look through

5    upstairs bedroom windows into the defendant's home.  And the

6    defendant moves to suppress, and amici, including, you know,

7    the Cato Institute and other organizations, seek to

8    participate as friends of the Court in support of that

9    motion to dismiss.  You're saying that a district court

10   wouldn't have authority to grant those motions?

11         MS. POWELL:  No.  I'm saying that he doesn't have

12   authority to appoint an amicus to do the job that the

13   Government would have done if the Government chose to

14   continue the prosecution.  Having somebody weigh in --

15         JUDGE WILKINS:  So the Court can appoint amicus on

16   a motion, but a court can't do it on its on motion?

17         MS. POWELL:  No.  I'm saying that the Court cannot

18   substitute its role for that of the Government.  It can't

19   take the place of the Attorney General or appoint someone to

20   take the place of the Attorney General.  That's precisely

21   what Judge Posner rejected in In Re: United States.  He

22   can't go outside his lane to appoint somebody to do the job

23   that the --

24         JUDGE WILKINS:  The order appointing amicus,

25   appointed him to present arguments in opposition to the

1    Government's motion to dismiss.  That's all that it says in

2    that paragraph.  So, how is that violating Article 2 to

3    appoint someone to present arguments in opposition?

4              MS. POWELL:  Because the Government had already

5    made the decision to stop, and the Government is the only

6    entity that can make that decision.  The Department of

7    Justice is the only entity that can decide whether to pursue

8    this prosecution.  The judge has no way of doing that on his

9    own through amicus or a special prosecutor or anything else.

10   The Government has quit, and it's time to leave the field.

11             JUDGE WILKINS:  So --

12             JUDGE RAO:  Ms. Powell, what is -- oh, sorry.

13             JUDGE WILKINS:  Go ahead.

14             JUDGE RAO:  What about, and this is Judge Rao,

15   what about appointing amicus for the contempt charges?

16   Where I mean, the Supreme Court in the Young case said that

17   the Court can't appoint a private party to prosecute

18   contempt charges.  I mean, do your arguments with respect to

19   the appointment of the amicus, apply also to the contempt

20   charges?

21             MS. POWELL:  Yes.  As our amici pointed out, and

22   we did also in our brief, contempt doesn't lie for perjury

23   in these circumstances.  There are 500 people in the

24   National Database Registry of exonerations who would

25   otherwise be susceptible to perjury prosecutions because

1   they entered guilty pleas, but they were actually innocent.

2           JUDGE RAO:  But Ms. Powell, that goes to the

3   merits about whether contempt would actually, could actually

4   be found.  But what about the appointment of the amicus to

5   look into contempt charges?

6           MS. POWELL:  There's no basis to do that either.

7   He doesn't have the authority to prosecute anyone for

8   contempt.  That's not the judge's place to add on charges.

9   That is solely within the prerogative of the Department of

10  Justice.

11          JUDGE WILKINS:  So Young --

12          JUDGE RAO:  But isn't that inconsistent with the

13  Supreme Court's decision in Young?

14          MS. POWELL:  I don't see that inconsistency.

15          JUDGE RAO:  Well, in Young, the Court said that

16  the district court can appoint a private party to prosecute

17  contempt charges.

18          MS. POWELL:  Well, in the circumstances of this

19  case, contempt cannot lie by virtue of them having moved to

20  withdraw his guilty plea.

21          JUDGE RAO:  Well what --

22          MS. POWELL:  It simply --

23          JUDGE RAO:  Yes.  Let me ask you one other

24  question about the contempt charges.  I mean, if we decide

25  that reassignment here is not appropriate, would we have any

MR

1 grounds for reaching the contempt question?  I don't believe

2 Mr. Flynn's petition for a writ of mandamus asked for

3 mandamus on the contempt question itself.  Is there any

4 grounds we would have for being able to reach that question?

5          MS. POWELL:  Well, simply the fact that the judge

6 doesn't have the authority to do it, and there's no

7 continuing case or controversy.

8          JUDGE WILKINS:  Can I ask a question about the

9 continuing case or controversy point?  In Thompson, the 1980

10 Supreme Court case that I referred to earlier that was cited

11 in the briefs, the Supreme Court, the Solicitor General

12 suggested to the Supreme Court that the case be dismissed

13 under Rule 48(a).  And the Supreme Court did not itself

14 dismiss the case, and the Supreme Court did not declare that

15 there was no longer a case or controversy.  Instead, the

16 Supreme Court remanded the case to the Court of Appeals for

17 reconsideration in light of the Government's present

18 position.

19          So in that case, the Supreme Court did not treat

20 the fact that the Government had filed a Rule 48(a) motion

21 as ending the case so that there was no longer a case or

22 controversy.  Don't you agree?

23          MS. POWELL:  Well, as I recall that case

24 correctly, it was a mandamus for a mandamus.  And what the

25 Court, what the Supreme Court decided was that the appellate

MR

1   court needed to address an additional issue.  That is not

2   our situation.  With the fact that not a single court in the

3   country has ever refused to affirm a 48(a) motion, there's

4   no basis to proceed with this case.  The Government is the

5   only entity, the Department of Justice is the only entity

6   under Article 2, Section 3 that can prosecute a case.

7            And they have decided not to do this for a number

8   of reasons, not the least of which is the appalling

9   suppression of exculpatory evidence that's gone on for as

10  long as three years, the fact that the FBI agents literally

11  made up statements to put in a 302, the fact that Mr.

12  Priestap had a discussion with Andrew McCabe about trying to

13  get the defendant to lie, and, you know, what is our goal

14  here, and came back the next day reconsidering the fact that

15  they had decided not to show him the evidence that they had,

16  like they do with everybody else, the fact they decided not

17  to even give him a 1001 mention, not the least of, not even

18  a warning, of course.  No warning, but not even to mention

19  1001.  They sent agents over there, according to Mr. Comey's

20  testimony, just told him a couple agents were going to drop

21  by, was that okay?  And he said of course, sure, he works

22  with them all the time.

23            I mean, this is an appalling injustice.  It's a

24  travesty of justice that this man has been dragged through

25  this for three years on a case that was absolutely concocted

MR

1   by FBI agents with some help from Department of Justice, and

2   evidence falsified, and everything else.  The Government has

3   provided extraordinary documentation, and the only thing

4   left to do is for the judge to order the dismissal of this

5   case.  The delay --

6           JUDGE WILKINS:  The judge can't do an independent

7   evaluation of the record before, before answering that

8   dismissal.

9           MS. POWELL:  No, he could look at the record.  He

10  can look at the record and, but the only thing to do as a

11  result of that is to order this dismissal because of the

12  presumption of regularity that attaches and the fact there's

13  no clear evidence of anything else.  He can't make up these

14  things he calls reasonable, plausible questions that don't

15  even relate to the motion to dismiss and proceed to drag

16  this out forever.  It's just not, I mean, it's contradictory

17  to Fokker Services.  It's contradictory to Rinaldi.  It's

18  contradictory to the In Re: United States and the Fourth

19  Circuit in Smith and the Fifth Circuit in Hamm.

20          JUDGE WILKINS:  Where in the orders under review

21  did the district court say anything about reasonable,

22  plausible questions?

23          MS. POWELL:  It's in their brief.

24          JUDGE WILKINS:  That's not the order under review,

25  though.  The order under review is, from your perspective,

MR

1   is him not granting the motion, that not granting the motion

2   itself is grounds for a mandamus.

3          MS. POWELL:  And appointing the amicus to do

4   anything.

5          JUDGE WILKINS:  So --

6          MS. POWELL:  But yes --

7          JUDGE WILKINS:  So, we have to find both of those

8   things to be improper to justify amicus?  Is that your

9   position, or is one of them, any one of them by itself

10  grounds for mandamus?

11         MS. POWELL:  I think either one by itself is

12  grounds for mandamus.  They're independent grounds for

13  mandamus.

14         JUDGE HENDERSON:  Ms. Powell, let me ask you

15  something about this appointment of amicus.  In Fokker

16  Services, we ourselves appointed amicus.  Now, if Judge

17  Sullivan had not appointed amicus, would you be telling us

18  that we couldn't appoint amicus?

19         MS. POWELL:  No, ma'am.  You can appoint amicus to

20  weigh in on any issue the Court of Appeals wants an amicus

21  to weigh in on, as long as it's an issue within the case,

22  and the Court of Appeals didn't create it.  What Judge

23  Sullivan has done here is created his own issues that he

24  wants to investigate that aren't related to the motion to

25  dismiss or even the case before him in any way.  He wants to

MR

1   add on charges that he can't --

2           JUDGE HENDERSON:  But in <u>Fokker Services</u>, we

3   appointed someone to defend Judge Leon's order.  And this is

4   what Judge Sullivan had --

5           MS. POWELL:  And that's -- well, that's what Ms.

6   Wilkinson is doing here before this Court.  She's the

7   analogous piece of that proposition, not Mr. Gleason.

8           JUDGE HENDERSON:  That's true.  And you have no

9   problem with her, obviously.

10          MS. POWELL:  No.  Obviously, she's entitled to be

11  here on behalf of the judge.  Appellate courts often allow

12  amicus participation.  But the district court doesn't in

13  criminal cases.  There's not even a provision in the rule

14  for that.  In fact, if you go try to file a brief as an

15  amicus in the district court, you can't do it properly.  All

16  of the docket entries had to be corrected.

17          JUDGE WILKINS:  So --

18          MS. POWELL:  There's no provisions for amicus in

19  criminal cases in the district court.

20          JUDGE WILKINS:  So I asked you earlier if an

21  amicus could file a motion in support, a brief in support of

22  a motion to suppress.  What's your answer?  Is there

23  authority for that?  Yes or no?

24          MS. POWELL:  I would think there is authority for

25  that.

MR

1          JUDGE WILKINS:  Based on what?

2          MS. POWELL:  In support of a motion that another

3    party has filed.  If the judge wants to allow it, it would

4    require a leave of court, I would think.

5          JUDGE WILKINS:  Based on what rule?

6          MS. POWELL:  I don't think there's a rule for it,

7    but I do believe that, for instance, there have been amici

8    in other cases in the district court level, but it's been in

9    support of a position of one of the parties, not in support

10   of a judge trying to gin up additional charges himself.

11         JUDGE WILKINS:  Well, just with respect to the

12   Rule 48(a) motion, it's your contention that if for some

13   reason Mr. Flynn opposed the Government's motion, it would

14   be okay for an amicus to enter an appearance to file briefs

15   in support of Mr. Flynn, right?

16         MS. POWELL:  Well, at least there would still be a

17   case in controversy before the Court, and it would be up to

18   the district court whether to allow leave to do that.  I

19   don't see a provision in the rules for it, but generally

20   speaking, district courts I've known kind of do what they

21   want to do within the bounds of reason.

22         JUDGE WILKINS:  So there's authority for it so

23   long as there's a case or controversy?  Is that -- I'm just

24   trying to understand your legal reasoning here.

25         MS. POWELL:  The legal reasoning is that he

MR

1    essentially appointed Mr. Gleason as a special prosecutor,

2    that he doesn't have the authority to do.  If he'd asked Mr.

3    Gleason, for example, to weigh in on a side that existed in

4    the case, that might be permissible.  I would probably still

5    argue against it, but I wouldn't have sought a writ of

6    mandamus on it, I don't think.  But to bring in --

7           JUDGE RAO:  Isn't your argument also that it's

8    impermissible to have amicus briefs in criminal cases under

9    the rules of the Court?

10          MS. POWELL:  Yes, that is one of our arguments

11   here because there is no rule.  There is no rule providing

12   for it.  But like I said, I've certainly seen it done in

13   other district courts, as long as it's on the side of one of

14   the parties that seeks to continue the litigation, just not

15   on behalf of the judge as an independent prosecutor himself.

16          JUDGE HENDERSON:  All right.  Are there any more

17   questions?  Okay, Ms. Powell, we'll give you a couple

18   minutes in reply.  Next is Mr. Wall.

19            ORAL ARGUMENT OF JEFFREY B. WALL, ESQ.

20           ON BEHALF OF U.S. DEPARTMENT OF JUSTICE

21          MR. WALL:  Thank you, Your Honor.  And may it

22   please the Court, Jeff Wall for the United States.  I hope

23   I'll have the opportunity to address a number of the

24   questions that the Court has asked petitioner's counsel, but

25   I want to start with two points, one on the merits to you,

MR

1    Judge Wilkins, and one on harms to you, Judge Henderson.

2    And I think, by the way, that's the right order to take

3    them.

4              In recent mandamus cases like <u>Fokker</u> and like

5    <u>Blumenthal</u>, the Emoluments Clause case, the Court looked at

6    the merits, asked whether there was a clear and indisputable

7    right on the merits, and then turned to the mandamus factors

8    and the harms.  I think that makes particular sense here

9    because if we are clearly right about <u>Fokker</u>, that it

10   doesn't leave an oversight power in the courts or a

11   substantial role with respect to unopposed Rule 48 motions,

12   then I think it's easier to see, Judge Henderson, why it's

13   so harmful to continue to allow this process to play itself

14   out in the district court.

15             Taking the merits first, Judge Wilkins, <u>Rinaldi</u>

16   was a case in which the Court assumed, I think it's clear,

17   as in footnote 15, it assumed the broader standard, and then

18   said even that standard can't be satisfied, so the trial

19   court has abused its discretion in denying a motion, a

20   motion, by the way, that came after judgment in that case,

21   not just after a plea or a trial, but after a judgment.  And

22   <u>Thompson</u>, of course, was just a case in which we wanted to

23   pull the prosecution in the Supreme Court, and we asked the

24   Court to GDR (phonetic sp.).  And even there, after an

25   affirmance in the Court of Appeals, it sent it back to the

MR

1    district court to allow us to do that.

2            But I completely agree, Judge Wilkins, neither one

3    of those cases resolves the substantive standard for Rule

4    48.  They resolved that Rule 48 applies contra respondent's

5    assertion, all the way on direct review.  There's no magical

6    line at the plea.  But they don't resolve the substantive

7    standard.  The case that does that, and the case that we

8    rely on for mandamus here, is this Court's decision in

9    Fokker.  That's the decision that resolves the substantive

10   standard for the denial of a Rule 48 motion.

11           JUDGE WILKINS:  How does it resolve that when the

12   case was not an appeal of a Rule 48(a) motion?

13           MR. WALL:  Because what Chief Judge Srinivasan did

14   in discussing the DPA was he explained how DPAs and Rule 48

15   motions are analogous.  And he separated off approval of a

16   plea agreement under Rule 11.  And that analogy was central

17   to the Court's reasoning.  Right?  In order for the Court to

18   say the district court erred in a way that justified

19   mandamus, he said the error is so clear because look at what

20   has to be the rule under Rule 48, and then that has to be

21   the rule for DPAs as well.

22           So I understand parts 2-A and 2-B of the opinion

23   in Fokker to be central to the judgment and to what it goes

24   on to do when it applies that standard later in the opinion.

25   And I think the language of Fokker when it goes through that

1  discussion leaves no doubt.  It says dismissing charges, not

2  just commencing but dismissing is squarely within the can of

3  prosecutorial discretion.  It says there's no oversight

4  power in the courts, no involvement by the judiciary, and it

5  says no substantial role for courts.

6       And if we are right about what _Fokker_ says with

7  respect to Rule 48, then to turn to my point to you, Judge

8  Henderson, then it's really a question of what is the point

9  of further proceedings if the district court is required by

10 circuit case law to grant the Rule 48 motion.  And I --

11      JUDGE WILKINS:  You believe that _Fokker_ stands for

12 the proposition that the district court can't perform an

13 independent evaluation of the record?

14      MR. WALL:   I think it does in the following

15 sense, Judge Wilkins.  I understand _Fokker_ to mean that if

16 tomorrow, faced with the kind of tolling agreement that was

17 at issue in _Fokker_, a district court (indiscernible) I'm

18 going to set up a process for deciding whether to grant this

19 agreement, I'll hear from both sides, there are a number of

20 factual questions I'm going to have to resolve

21 and the district court did all of that, I understand that to

22 be, yes, a straightforward violation of _Fokker_.

23      And again, it's not just the sort of idea that

24 there will be some briefs and a hearing, Judge Henderson.

25 The harm is that as the respondent claims both in the

1   opening brief and page 2 of the reply, the point of this is

2   to investigate, they say, the prosecutorial decisions and

3   prosecutorial motives.  Those are respondent's words.  And

4   that --

5           JUDGE WILKINS:  The order itself says the, that

6   which is under review says that amicus is appointed to

7   present arguments in opposition to the Government's motion

8   to dismiss.  That's the order under review.

9           MR. WALL:  So with all --

10          JUDGE WILKINS:  It doesn't say anything about, you

11  know, fact development or anything else.

12          MR. WALL:  So with all respect, Judge Wilkins, two

13  points.  First, we're not here on appeal from an order.  We

14  are here, as you know, on mandamus.  And mandamus is an

15  extraordinary writ that directs the district court to do

16  something.  It's not necessarily review of an order.  And

17  here, we're asking that the district court be directed to

18  grant the Rule 48 motion.

19          But second, beyond the order, the reason for

20  entering the order, as respondent's briefs in this Court

21  have explained, so we now know what's going to go on below,

22  respondent wants to inquire into what they say are

23  prosecutorial decisions and prosecutorial motives because

24  the district court is concerned that there was improper

25  influence here, and indeed both the district court and the

MR

1    court-appointed amicus have on the one hand suggested, and

2    with respect to the amicus flat-out alleged that there was

3    misconduct on the part of the Attorney General and even the

4    President of the United States.

5              That's going to mean that we are, in the district

6    court's view, going to have to come in and answer those

7    questions and defend against them.  And that's all of the

8    systemic costs that this Court laid out in Part 2-A of

9    Fokker.  So in order to have the sort of anodyne proceeding

10   that some of these questions are assuming, this Court would

11   have to issue mandamus.  You'd have to take off the table

12   evidentiary proceedings and the like.  You'd have to take

13   off the table contempt.  You'd have to say just the Rule 48

14   motion, you address that with dispatch, and then you could

15   come back to this Court.  But at that point, that's the

16   proceeding.  There's no reason not to --

17             JUDGE WILKINS:  The court doesn't even, the

18   district court doesn't even have the authority to appoint

19   amicus to advise it on whether it should issue an order to

20   show cause for contempt?

21             MR. WALL:  Judge Wilkins, we, unlike the

22   petitioner, we have not argued that district courts

23   generally lack the power to appoint amici, I think either

24   under the Rules or more likely under their inherent

25   authority.  But what we have said is that the particular

MR

1   amicus here is improper for all the same reasons that

2   appointing amici and going through an elaborate process

3   would be improper in the DPA context under Fokker.  And if

4   that's true, then a fortiori has got to be true for the Rule

5   48 context, which was the basis for Fokker's reasoning with

6   respect to DPAs.

7            So, we're not saying that, you know, the district

8   courts don't have the power to do this generally.  What

9   we're saying is that here, there are problems with this

10  particular appointment of the amicus, and just to get back

11  to your question, Judge Henderson, I think once we know that

12  those are the harms, there's no reason not to take that

13  final step because we know the harms that are going to play

14  out.  This has already become, and I think is only becoming

15  more or a public spectacle, particularly in light of the

16  amicus filing in the district court two days ago.  And I

17  really, it threatens to harm not just the integrity of the

18  Executive and its prosecutorial discretion and its

19  deliberative processes, but I think, frankly, it threatens

20  to do harm to the judiciary as well.

21            JUDGE RAO:  Mr. Wall, if I could just ask you, I

22  mean, the Court has, you know, our Court has repeatedly

23  declined to grant mandamus when the Government addresses

24  abstract separation of powers violations, such as in

25  (indiscernible).  So I'm just wondering if you can be more

MR

1   specific and more particular about what the concrete

2   separation of powers violation is here.  I mean, Rule 48

3   does allow leave of court, right?  So is the problem, like,

4   what precisely is the problem here?  What precisely is the

5   infringement on the Article 2 power?

6          MR. WALL:  I think, Judge Rao, that the separation

7   of powers harms here, you're right, they can be very subtle

8   and very abstract in a lot of cases.  I think they are as

9   stark and as concrete here as they come because here, we

10  know from what's transpired below and from the briefs in

11  this Court that what the district court is contemplating is

12  a sort of intrusive, fact-intensive inquiry into what they

13  say are a host of factual questions.  Why did particular

14  prosecutors not sign the brief?  Why did the Attorney

15  General make this decision?  Was he right on these various

16  grounds?  What about the uncharged conduct with respect to

17  the turnkey (phonetic sp.) statements?

18          We're going to have to brief and apparently put on

19  evidence in defense of all of that so that the district

20  court can then reach a decision when Circuit law compels him

21  to grant the motion.  And I think that it is an intrusive

22  process, and it is going to harm the Executive, and we can't

23  ignore that it is playing out in a politicized environment

24  that I think is made worse by the kind of, by honestly this

25  sort of 70-page, almost polemic that the court-appointed

MR

1    amicus filed, which alleges that the President and the

2    Attorney General have engaged in grave misconduct.

3           So when you're looking at those kinds of

4    allegations, you're forcing us to dissent against them all

5    in a context where this Court's case law says that's exactly

6    what courts shouldn't be doing.  It says, quote, no

7    substantial role, end quote.  It's hard for me to see --

8           JUDGE WILKINS:  But all of the 48(a) opinions from

9    every court has said that the Court has some role in that

10   the role involves making sure that there is not something

11   that's being done clearly contrary to the public interest.

12   So, then, there must be some case where, or some set of

13   circumstances where as unfortunate as the clash of the two

14   branches of government might be, where Rule 48(a) does some

15   work.  Isn't that right?

16          MR. WALL:  Judge Wilkins, I think it is right in

17   the following sense.  48(a) does work in cases where it's an

18   opposed motion.  And even where it's an unopposed motion, we

19   don't dispute that the Court can ascertain that it's got the

20   considered decisions of the parties.  You don't have a

21   prosecutor who's been bribed or a defendant who hasn't been

22   counseled about the dismissal.  But we do say that for

23   unopposed motions to dismiss, a relatively small set of

24   applications under 48(a) that where the parties agree, and

25   they are both making considered decisions, yes, the Court is

1   required to grant, in light of the constitutional concerns

2   that this Court discussed on Fokker.

3        And the second thing I'd say, Judge Wilkins, just

4   to drive this home, is I understand respondent to accept

5   that everything I just said is right in the pre-plea

6   situation.  They agree that if the defendant hadn't pleaded

7   and this was just an ongoing prosecution, we could pull this

8   back.  There would be nothing the Court could do about it,

9   couldn't force us to go to trial.  And a court, even if it

10  were upset about our motives, couldn't perform any

11  oversight.  It would need to grant the motion.

12       And so the move that they make, and it's the key

13  to the merits, at page 19 of the reply, is to say, okay, but

14  Fokker is just for the pre-plea situation.  It doesn't apply

15  once the court has accepted the plea.  And I think that's

16  got to be wrong for no fewer than four reasons.

17       First, once we know that it's not the concern of

18  the rule in most of the cases, which are the pre-plea cases,

19  then we know it's not really what the rule cares about.

20  Second, the constitutional concerns are exactly the same

21  after the plea.  We no longer want to proceed as the

22  Executive, and there's no longer a controversy between the

23  parties.  Third, we know, as you said, from Rinaldi the U.S.

24  can dismiss even after judgment, even after trial, let alone

25  after a plea.  So there's no magical plea line.

MR

1                And fourth, <u>Fokker</u> rejected exactly this

2    distinction.  It said accepting the plea agreement, to be

3    sure, is a judicial act.  That calls on the Court's

4    authority.  But just dismissing, that, it said, doesn't.

5    That's just letting a case go in deference to the

6    Executive's exercise of prosecutorial discretion.  And once

7    you know that that plea line, there's nothing magical about

8    that in terms of Rule 48 or the Constitution, then I think

9    their case on the merits collapses, and then we're just back

10   to Judge Henderson's question about the harms and why grant

11   mandamus, why grant mandamus now.

12               JUDGE WILKINS:  <u>Fokker</u> made clear that there are

13   different considerations at different stages of a criminal

14   case to the extent that you, even if we credit that <u>Fokker</u>

15   is binding on Rule 48(a).  And here, we have two different

16   district judges that as a part of their obligations under

17   Rule 11 made factual findings as to materiality and a basis

18   for a plea, et cetera.  And so the Government's motion

19   doesn't just implicate the Government's position.  It

20   implicates those rulings that two district court judges have

21   made.  So, the case isn't in the same posture as it would be

22   prior to a plea agreement in that respect.

23               MR. WALL:  Well, I absolutely agree with part of

24   that, Judge Wilkins.  It is certainly true that there are

25   different concerns at different stages, and <u>Fokker</u> says

MR

1   accepting the plea agreement does call on the Court's

2   authority because it has to ascertain whether there's a

3   factual basis for the plea.  But it contrasts that with

4   dismissal.

5        And so the part I disagree with is that once

6   you've crossed that plea line and a defendant has pleaded,

7   that suddenly everything that follows invokes the Court's

8   authority in some way that changes the calculus because

9   Fokker says that's not true.  And the best example, I think,

10  is in In Re: United States in the Seventh Circuit.  The

11  district court, it wasn't just a plea.  It was a sentence.

12  And in light of the sentence, the Government wanted to

13  dismiss some of the charges because it no longer wanted to

14  proceed with them.  And the district court was upset about

15  that.  It wouldn't allow the Government to dismiss.

16        And the Seventh Circuit said, look, it doesn't

17  matter.  Even if the Government is trying to get around the

18  district court's sentencing authority, it's the master of

19  its own case.  It gets to decide when to bring or when to

20  dismiss charges.  So I agree that a Rule 11 acceptance of a

21  plea agreement, if that's what were before the Court, that's

22  different.  But this, and Fokker's language is crystal clear

23  about this.  It says, accepting DPAs and dismissing on a

24  Rule 48, it says, quote, are not formal judicial action

25  imposing or adopting, end quote, terms on defendants or

MR

1    parties.  They're not the court formally signing off on

2    anything.

3            When Judge Sullivan grants this Rule 48 motion, as

4    he's required to, he's not taking back anything he's done

5    before.  He's not expressing any opinion on the Government's

6    case.  He's not saying he agrees or disagrees.  He's just

7    acknowledging a co-equal branch's exercise of its core

8    Executive power.

9            JUDGE WILKINS:  I have a question about --

10           JUDGE RAO:  Mr. Wall -- sorry.

11           JUDGE WILKINS:  I have a question about your

12   position, the United States' position about its

13   representations in support of a Rule 48(a) motion.  Is it

14   your position that the Government does not have to state all

15   of its reasons in support of dismissing the case, only those

16   that it chooses to share with the Court?

17           MR. WALL:  It is, Judge Wilkins, but I don't think

18   anything turns on that here and that you need to agree with

19   me on that.  I think we could have come in and just moved to

20   dismiss without providing an explanation to the district

21   court.  We do that at times, and district courts routinely

22   grant them.  No appellate courts ever reversed in a

23   situation like that.  But here, we did.  We went beyond what

24   we thought we were obligated to do under the circumstances.

25   We provided a robust explanation to the district court, and

1  we think whatever Rule 48 might require as a procedural

2  matter, we've more than cleared that hurdle, as Ms. Powell

3  said.  I mean, I think this is one of the most robust Rule

4  48 motions you will find.

5       JUDGE WILKINS:  So I guess to understand my

6  concern, suppose you have a case where a federal law

7  enforcement officer has pleaded guilty to a criminal civil

8  rights violation for using excessive force, and then the

9  Government says that they've uncovered some Brady evidence

10 and are moving to dismiss under 48(a) after the guilty plea.

11 But part of the reasoning of the authorities was that as to

12 why they didn't believe they'd be able to prove this case

13 beyond a reasonable doubt was that the defendant is black --

14 I'm sorry, the victim is black.  The defendant law

15 enforcement officer is white.  And they didn't believe that

16 a jury would believe the black victim over the white officer

17 without corroborating evidence, and that's unfortunate, but

18 that's the reality.

19       And so that was one of their reasons for

20 dismissing.  But they thought that that wouldn't play well,

21 so they didn't say that in the motion.  They just said that

22 the exculpatory evidence was the reason they're dismissing.

23 Is that proper?

24       MR. WALL:  So two points, Judge Wilkins.  One is

25 legal and one is practical.  The legal one is that there's

MR

1  an easy way to deal with that here given the mandamus

2  posture.  I think Fokker is clear that the Government, as

3  long as it provides no reason or any reason at all, and it's

4  not an unconstitutional reason, can dismiss.  So yes, I

5  think that that motion there should be granted.  But the

6  easy way to deal with that in the mandamus posture is to

7  say, look, even if you think that there's room for some kind

8  of a Richards-like rule or we think there's a, it's -- it's

9  not clear and indisputable.

10        JUDGE WILKINS:  I'm sorry.  I couldn't hear about

11  ten seconds of that.  Can you repeat whatever you said?

12        JUDGE HENDERSON:  Neither did I.

13        MR. WALL:  Sure.

14        JUDGE HENDERSON:  Yes.

15        MR. WALL:  Sure.  I'm sorry, Judge Wilkins.  If

16  you thought that it wasn't clear under Fokker whether the

17  court could allow that type of explanation, you could try to

18  leave that open and just say, look, whatever that might be

19  on the merits, it's clear and indisputable that wherever the

20  bar is, the Government met it here through its very fulsome

21  explanation.  And the practical thing I'd say is, I

22  certainly hope that the Government has never filed a motion

23  like that, and I'm not aware of it.

24        But even then, yes, I think the Court should have

25  to grant it because the Government, whatever its motive, no

1   longer wants to proceed.  But what you would see is you'd

2   see other defendants walking in, attaching that motion, and

3   bringing Armstrong claims saying the Government is making

4   racially-based decisions in its prosecutions.  And based on

5   your hypo, it sounds like they'd have pretty good grounds

6   for that.

7              So I think there are remedies for this other than

8   needing to contort Rule 48 to get into what the Executive's

9   motives are, if you didn't have --

10             JUDGE WILKINS:  So if there's remedies for it,

11  there can't be a remedy for it unless you know that it's

12  happening.  And if the Government doesn't have to disclose

13  all of its reasons, then you never know that it's happening,

14  right?

15             MR. WALL:  But that's always true.

16             JUDGE WILKINS:  And if the district court isn't

17  allowed to ask whether there were any other reasons, you'd

18  never know that it's happening, right?

19             MR. WALL:  But that would be equally true in a

20  case like Fokker, Judge Wilkins.  The district court could

21  always say, look, I think that the U.S. Attorney has cut a

22  sweetheart deal with the corporate defendants here, and so I

23  want to get some briefing, and I want some argument in

24  hearing on whether there was improper influence brought to

25  bear on this.  And the point of Fokker is that it isn't to

MR

1    the courts to police whether the Executive has pure or

2    impure motives.  The remedies for those occur in political

3    and public arenas, retaliation from the other branches,

4    dismissal of corrupt Executive officials, even, you know,

5    impeachment if it comes to it.  But Rule 48, Fokker says, is

6    not the mechanism for policing the kind of harms that you're

7    worried about.

8          And if a court could do the sort of thing you're

9    talking about, then I think Fokker has to be a dead letter.

10   Because either with respect to Rule 48 or a DPA, a court

11   concerned about the Executive's motives could always

12   inquire.  And I understand that inquiry to be exactly what

13   Fokker shuts off.

14         JUDGE RAO:  So, Mr. Wall, are you suggesting, I

15   mean, normally the standard is that there is a presumption

16   of regularity.  What about the case in which a district

17   court feels that that presumption is overcome on the face of

18   the materials presented by the Government?

19         MR. WALL:  So two points, Judge Rao.  First, I

20   don't think that presumption is relevant here.  And put it

21   to you this way.  If the court, if a district court thought

22   that the Government had a bad faith motive for declining to

23   bring a prosecution, I take it everyone agrees that the

24   Court couldn't force the U.S. to bring the case.  And the

25   same is true for maintaining a prosecution.  As Fokker says,

1  there's no oversight rule for the courts.  And when it

2  refers, this is the key thing, Judge Rao, when it refers to

3  the presumption of regularity, it's not saying there's some

4  exception to the rule it's laying down in that situation.

5       If you look at that passage of the opinion, all

6  it's doing is listing that as another reason for adopting

7  its rule.  So that even with respect to constitutional

8  claims, courts are very loathe to second guess in the

9  absence of clear evidence of an unconstitutional motive.

10  And so it gives that as a reason for reading Rule 48 its

11  way.  It's not adopting some exception to its reading of the

12  rule, but even if it were, we'd still be entitled to

13  mandamus because Armstrong is completely clear, Judge Rao,

14  that you have to have clear evidence of an unconstitutional

15  motive to rebut the presumption.  And they can argue back

16  and forth about whether they think the Attorney General is

17  right about this or about that.

18       But there's nothing here that remotely approaches

19  clear evidence of an unconstitutional motive.  That's what

20  you'd need to rebut the presumption, even if it were

21  relevant.

22       JUDGE RAO:  So irregularity, in your view, would

23  only be an impermissible motive?  There are not other types

24  of irregularities?

25       MR. WALL:  That's right, because it's only an

MR

1    unconstitutional motive that would allow the Court to step

2    in, that you need an independent constitutional limit, like

3    a racially-based prosecution.  So yes, if a district court

4    thought that a U.S. Attorney was favoring his friends that

5    would be terrible conduct.  There are political remedies for

6    that, but there aren't judicial remedies under Rule 48.  If

7    the considered decision of the Executive Branch, whatever

8    its motive, is that it no longer wishes to proceed, it

9    doesn't have to bring the case.  And by the way, whatever

10   its motives, there's no longer an Article 3 case or

11   controversy.  There's no longer --

12        JUDGE WILKINS:  So even if the prosecutor was

13   dismissing the case because it did not believe that a white

14   police officer should have to answer for using  excessive

15   force on a black defendant, and they say that in their

16   pleading under Rule 48(a), the district court still has to

17   grant the motion?

18        MR. WALL:  Judge Wilkins, I don't think that the

19   Court can force the Executive to keep that case alive in the

20   absence of a case or controversy.  As I tried to say

21   earlier, it may well be a basis for dismissing other

22   prosecutions, but even if you disagree with me on that, the

23   reasons your hypothetical has force is because it's an

24   unconstitutional motive.  It's the kind of thing that could

25   qualify for Armstrong.  And you can bracket that question

MR

1   off if you think that Fokker isn't as categorical as I do

2   because there's nothing like that here.  And I don't think

3   you can leverage that, Judge Wilkins, to say, well, if we

4   can inquire --

5          JUDGE WILKINS:  Then what does leave of court mean

6   then?

7          MR. WALL:  So --

8          JUDGE WILKINS:  What work at all does leave of

9   court do then?

10          MR. WALL:  Well, it does work, of course, with

11   respect to opposed motions to dismiss.  And the work that it

12   does for the far smaller set of unopposed motions in a

13   situation like this is it allows the Court to make sure that

14   it's the considered decision of the Executive.  You don't

15   have a prosecutor who has been bribed, and it's the

16   considered position of the defendant, the defendant hasn't

17   been poorly counseled.

18          Imagine a situation where a defendant agrees to a

19   dismissal without prejudice even when the Government has

20   repeatedly been bringing charges and then dismissing them on

21   eve of trial.  I think certainly a district court is

22   warranted in asking the defendant are you sure about this,

23   because it sure seems like the Government keeps yanking your

24   chain.

25          JUDGE WILKINS:  So why isn't it the case that if

MR

1 the Government makes a considered but racist decision that

2 it just does not want to have a white officer stand trial

3 for excessive force on a black victim that the district

4 court can deny the motion, and then the political chips can

5 fall where they may, and perhaps under pressure from the

6 public or Congress or whatever, the district court may not

7 be able itself to force the Government to prosecute the

8 case, but maybe through the operation of the Legislative

9 Branch or other pressures from the public and the media, a

10 new prosecutor is appointed and the case proceeds?  Why

11 isn't that exactly what leave of court should operate to do?

12          MR. WALL:  Judge Wilkins, your question, I think,

13 recognizes the answer, which is, as you say, there's no

14 power to make the Executive move forward to trial, which I

15 think goes to show why this isn't the concern of Rule 48.  A

16 district court can't deny --

17          JUDGE WILKINS:  But if the Government can't make

18 the case go away, and the case is in limbo, then while it's

19 in limbo, pressure could be brought to bear on the

20 Government to reconsider its decision, right?

21          MR. WALL:  So let me say two more things, Judge

22 Wilkins.  First, I think as Judge Kavanaugh explained in

23 Aiken, the remedy for that kind of an equal protection

24 violation is to dismiss other cases.  It's not to compel the

25 Government to move forward with this prosecution.  And

MR

1  second, even if you disagree with the reasoning of <u>Aiken</u>, if

2  you had that kind of a case where the prosecutor put forward

3  on its face in the motion evidence, clear evidence under

4  <u>Armstrong</u> of an unconstitutional motive, I think you could

5  bracket off that case, and as a constitutional matter.

6       We don't have anything like that here.  And just

7  to square the circle, you can't leverage that back, I think,

8  to say that even if you could inquire in some <u>Armstrong</u> type

9  case because the face of the motion disclosed a possible

10 constitutional violation that then you can inquire in every

11 case.  That, then, would just eat the rule.

12      So I think <u>Aiken</u> is right that there are other

13 remedies for the equal protection violation.  It's not meant

14 to be taken care of under Rule 48, but you don't have to

15 agree with me on that because here, no one, I think, is

16 arguing, not even respondent, that on the face of the motion

17 to dismiss that the Government filed, there's any

18 unconstitutionality, there's any evidence that we violated

19 the equal protection clause or anything like that.

20      JUDGE WILKINS:  Thank you.

21      JUDGE HENDERSON:  Mr. Wall, let me ask you, you

22 threw out a question probably 30 minutes ago.  What would be

23 the harm in going ahead and mandating the granting of the

24 motion to dismiss?  The harm is, to me anyway, regular

25 order.  And mandamus is a drastic remedy.  You know that.

MR

1  We all know that.  Nobody has been able to find a case in

2  which mandamus has issued where the district court has not

3  acted in the sense of a ruling, an order, something that we

4  can review.

5       Now, this district judge has taken two actions.

6  He's appointed an amicus, and he's set a hearing.  Now,

7  unless you agree with Ms. Powell that the setting of a

8  hearing is something that's ultra vires, that leaves the

9  appointment of the amicus, and granted, he may have chosen

10  an intemperate amicus, but that doesn't mean that he is

11  going to deny this motion.  And considering the drastic

12  remedies that mandamus is, considering there's no precedent

13  that allows us to move without an order, I don't see -- and

14  considering that there's a hearing then set for July 16th, I

15  don't see why we don't observe regular order and allow him

16  to rule.  For all we know, he will say this amicus brief is

17  over the top, the dismissal motion is granted.

18       MR. WALL:  So, Judge Henderson, a few points.

19  Yes, it's an extraordinary writ.  We would say this is an

20  extraordinary case.  I think we're well past a regular

21  order.

22       JUDGE HENDERSON:  I agree with that.  I agree.

23  It's an extraordinary case.

24       MR. WALL:  And I think if, I would say at a

25  minimum, at a minimum, in order to have the sort of regular

MR

1   order you were talking about, the Court should still issue a

2   more limited form of mandamus.  That takes off the table

3   these evidentiary questions they want, probe the Executive's

4   motives, and we'll have to defend against that.  You know,

5   they say in their brief, quote, affidavits and declarations,

6   end quote.  And it seems to me that they want some

7   evidentiary or discovery process.  I think that clearly

8   should be off the table, and contempt should be off the

9   table.

10          If all we're talking about is the meaning of

11  Fokker and Rule 48, and the Court is going to decide that at

12  the hearing with dispatch.  We can come right back to the

13  Circuit.  I think at a minimum you need that in order to get

14  the sort of regular order you're talking about.  But then I

15  would say, Judge Henderson, and the reason I think you

16  should go a step further is it's just not true that even if,

17  as limited, he just denies the, or he grants the Rule 48

18  motion, it's still not the case that the parties haven't

19  suffered harms.  The harms to General Flynn are obvious from

20  the continued prosecution and the threat of contempt unless

21  this Court takes it away, but the harms to the Government

22  are really what I'm focused on.

23          You have, as you say, a potentially intemperate

24  amicus.  You have all of these allegations being lobbied at

25  the Executive Branch.  We're going to have to answer them in

1   a public forum, in a politicized environment.  That's

2   exactly the sort of thing that Fokker, when it walks through

3   the harms in Part 2-A says you shouldn't be doing.  It

4   invades our deliberative process.  It chills law

5   enforcement.  It sets up a conflict between the branches,

6   and so I agree with you --

7            JUDGE HENDERSON:  But we don't know that's going

8   to happen.  We have Judge Sullivan, who is an old hand.

9   He's an excellent trial judge.  And he may say to himself,

10  at least, you know, I asked for advice, and I'm ignoring it,

11  and I'm granting the motion to dismiss.  Shouldn't he be

12  allowed to do that?

13           MR. WALL:  I think, Judge Henderson, and the

14  Government respects Judge Sullivan, as you say, an

15  experienced judge on the district court.  I think because we

16  are past regular order, we have crossed into the mandamus

17  threshold.  If we had gone about this a different way, I

18  might agree with you that order ought to be maintained.  But

19  because we've reached a point where you have the district

20  court in its brief raising questions about prosecutorial

21  motives, you have the court-appointed amicus driving that

22  home in its brief.

23           The court is apparently contemplating that we'll

24  defend ourselves and lay out exactly why we've done what

25  we've done, all of this playing out against the backdrop of

1   these incredibly harmful allegations.  And I just, I think

2   if it isn't already, it is threatening to become and will

3   become the sort of public spectacle that I think mandamus is

4   warranted to foreclose at this point.

5          And I agree with you, Judge Henderson.  I wish we

6   weren't here, but we are.  <u>Fokker</u> is clear about granting

7   the Rule 48 motion.  And so there isn't, it's why would we

8   have these unnecessary proceedings when they are really

9   going to do damage to the Executive Branch at this point

10  given the way they've set up and the environment they're

11  playing out in.

12         JUDGE WILKINS:  But the Government didn't file

13  petition for writ of mandamus.  Mr. Flynn did.

14         MR. WALL:  That's very fair, Judge Wilkins.  I

15  don't want to get too much in the Government's deliberative

16  process because, of course, our whole point is that's not

17  permissible under Rule 48.  But what I can say is there was

18  uncertainty in the district court about what the district

19  court was going to do.  And on the same day the district

20  court set the briefing schedule, before we'd made any final

21  decision, General Flynn filed his mandamus petition.  And at

22  that point, we had to decide whether to support it or

23  whether to file a duplicative petition that risked slowing

24  this down.

25         And we obviously decided to support the mandamus

MR

1   petition.  And I think, honestly, it would be artificial to

2   cabin off the separation of powers harms here just because

3   we didn't file our own petition when, you know, they're

4   presented in stark relief.  And certainly, if that were

5   important to the Court, it should at least give us the

6   opportunity to file some short, mandamus petition that could

7   be consolidated with General Flynn's because we are here

8   saying there are serious, I mean, indeed grave.  I think to

9   Judge Rao's point, stark separation of powers concerns

10  playing themselves out.  These are not the sort of subtle,

11  abstract things that sometimes present themselves in these

12  Article 2 and Article 3 cases.  You have a court that is

13  considering whether to keep alive a prosecution --

14          JUDGE WILKINS:  But you're talking about regular

15  order, and then you're saying that, well, we didn't file a

16  mandamus petition, but if that's important, then give us

17  leave here after argument to file one.  I mean, that's far

18  from regular order here.  And you're arguing that, you know,

19  if you're not inclined to grant the principle relief by the

20  people who filed the motion, then grant some form of limited

21  mandamus relief.  And you're making that argument even

22  though you don't have a mandamus petition before us.  I

23  mean, none of that is regular order, counsel.

24          MR. WALL:  Judge Wilkins, I'll grant that very

25  little about this case is regular order at this point.  I

1    don't think that our not filing a mandamus petition can be

2    taken as legally relevant in any way.  We are a respondent

3    supporting petitioner.  That regularly occurs in courts,

4    including the Supreme Court.  We make the full range of

5    arguments, and our legal argument and our harms are

6    considered by those courts, as I think they should be here.

7    And my only point to Judge Henderson was, to get us back to

8    regular order, you need at least mandamus that would take

9    off the table the evidentiary proceedings and questions and

10   contempt.

11           But even if you just narrowed it to the legal

12   question of the meaning of Rule 48, which would mean that

13   most, I mean the vast bulk of the court-appointed amicus

14   brief is no longer relevant to the hearing, even then, you

15   still ought to take the additional step of granting

16   mandamus.  And the cases, Judge Henderson, I would point you

17   to are <u>Fokker</u> and <u>In Re: United States</u> themselves.  Those

18   were questions of first impression, but both this Court and

19   the Seventh Circuit said the constitutional principles are

20   so clear, we're going to give mandamus.  And here, we have

21   not just the constitutional concerns under Article 2 and

22   Article 3, but you have the decision in <u>Fokker</u> itself.  So I

23   think the key is going to be --

24           JUDGE HENDERSON:  You know, but <u>Fokker</u>, I keep

25   coming back to in <u>Fokker</u> we knew what the district court

MR

1   did.  We don't here.

2           MR. WALL:  Oh, I agree.  And I think it's

3   possible, then, that if you'd come up at an earlier stage in

4   Fokker, this Court wouldn't have granted mandamus.  But once

5   it grants mandamus in Fokker and explains why it's doing it,

6   and it explains how it reads Rule 48, and it says a dozen

7   different times that there's prosecutorial discretion,

8   courts can't scrutinize.  There's no oversight.  It's not

9   just imputing the decision of the district court there, it's

10  impeding everything the district court was doing that lead

11  up to it because courts, it says, don't have any substantial

12  role.  They have, quote, no oversight power, end quote.

13          And so once you know that from Fokker, then I take

14  the point that, you know, if -- look, this is not briefs and

15  a hearing.  That's not what this is right now.  That is not

16  how this is shaping up in the district court.  But even if

17  we were somehow to limit it to a more normal type of

18  proceeding without all of the stuff that respondent in its

19  brief says it wants to get into, that's all now squarely

20  foreclosed by Fokker.  So I understand pre-Fokker why it

21  might not have been enough, but it seems to be now it

22  indisputably is.

23          JUDGE RAO:  Mr. Wall, I'm concerned about your

24  fallback position that we could grant some kind of partial

25  relief.  I mean, wouldn't that require the Court to

MR

1    articulate, actually, far more legal standards about what

2    precisely is on and off the table?  That seems to be a lot

3    of law to be making in the mandamus posture.  And seems much

4    less clean than just, you know, issuing a writ of mandamus

5    in full.  I'm just wondering whether what -- I mean if you

6    really think that this partial mandamus would actually be

7    more minimalist than a clean writ of mandamus?

8             MR. WALL:  No, Judge Rao.  Let me be very clear

9    about this.  The writ of mandamus is warranted here.  It is

10   clear and indisputable that the Rule 48 motion has to be

11   granted under Rule 48.  And if we're right about that, there

12   is no reason to let these harmful proceedings play

13   themselves out in the district court.

14            So we completely agree that the cleanest way to

15   resolve the case under _Fokker_ is to grant the writ.  I was

16   just explaining to Judge Henderson that if the Court sort of

17   has these concerns about granting the writ, it seems a

18   little but unfair to the petitioner and the Government to

19   say you should observe regular order because nothing about

20   these proceedings threatens to be regular.  To put them back

21   on a regular track, you have to grant at least some kind of

22   mandamus.

23            But I completely agree with you that that does

24   require you to say, look, _Fokker_ is clear that it doesn't

25   have evidence, and it does require you to address the

MR

1 contempt piece.  The cleaner way to do it is just to say

2 Fokker is clear that the Court has to grant the Rule 48

3 motion.  And so given the harms to the defendant and the

4 Government, the writ should issue.  And I will fully grant,

5 Judge Henderson, that it's an extraordinary writ.  And we do

6 not ask for it in ordinary cases and in an ordinary dispute

7 between private parties, it wouldn't be appropriate here.

8         But this is a separation of powers case.  I mean,

9 if you take a case like Cheney, where you just think about

10 discovery bringing the branches into possible conflict, and

11 the Supreme Court grants mandamus, this case, it seems to

12 me, is two steps beyond that.  You have actual conflict

13 between the branches where the court wants to inquire into

14 why we did this in the face of allegations that there was

15 some impropriety.  And I understand that to be exactly what

16 Chief Judge Srinivasan said in Fokker courts may not do.

17 And I really don't think it's hard to see what the harms are

18 going to be to the Government over the next couple of months

19 if we and the defendant are put through that process, which

20 is all for naught if at the end of the day the district

21 court is required by law to grant our motion.

22         JUDGE HENDERSON:  Well, let's drop the phrase

23 regular order, and let's talk about one of the requirements

24 I don't think I've heard anybody mention, and that is the

25 adequate remedy at law.  That's what I'm talking about as

1    far as regular order.  You granted, assuming you have an

2    indisputable right, and that, to me, seems pretty clear.

3    You still have to say why there is no adequate remedy at

4    law, and I'm not going to repeat myself, but why is there

5    none if on July 16th Judge Sullivan grants the motion to

6    dismiss?

7              MR. WALL:  So I'll take one more stab, Judge

8    Henderson, and I think it's this.  Even if, you know, a

9    month or two from now the Court grants our Rule 48 motion,

10   in the meantime you have a proceeding that's forcing us to

11   explain ourselves to do it apparently through affidavits,

12   declarations, some kind of an evidentiary process in the

13   district court.  I don't know whether, I mean the district

14   court is very careful in its briefs not to say exactly what

15   it envisions, but, you know, the district court has left

16   itself room for not just documents of that kind but

17   witnesses and all the rest.  And that is going to intrude,

18   it's going to -- all the harms in Part 2-A of Fokker.  It's

19   going to intrude on our deliberative process.

20             And I think the Court has to take account of the

21   fact that both respondent's briefs and the court-appointed

22   amicus, they're impugning the motives of the Attorney

23   General of the United States, and it's going to pull the

24   judiciary into a fight that should play out in a public,

25   political, arena.  And I think those are real harms to the

MR

1    Executive Branch, even if, at the end of having been put

2    through that whole process, and what I think threatens to be

3    a spectacle in the district court, the district court

4    ultimately grants the Rule 48 motion.

5           And if we're right, as you've started, that Fokker

6    says that district courts shouldn't be doing these things,

7    it's hard to imagine a case where a district court would do

8    something foreclosed by Fokker that would be more harmful

9    than what we're facing on the circumstances here.  If ever

10   the court were going to say a district court needs to grant

11   the Rule 48 motion, that's what Fokker clearly and

12   indisputably requires, it seems like this would be the

13   classic case.

14          JUDGE HENDERSON:  All right.  Are there any more

15   questions?

16          JUDGE WILKINS:  No.

17          JUDGE HENDERSON:  If not, then we'll hear from Ms.

18   Wilkins.  Thank you, Mr. Wall.

19          ORAL ARGUMENT OF BETH A. WILKINSON, ESQ.

20      ON BEHALF OF RESPONDENT HON. EMMET G. SULLIVAN

21          MS. WILKINSON:  Thank you, Judge Henderson, and

22   may it please the Court.  The petition asks this Court to

23   grant really an extraordinary remedy for mandamus to prevent

24   this district court from even considering or questioning a

25   pending a motion.  This Court should deny that petition for

1   three reasons.

2          First, the Government's motion, as this Court has

3   already pointed out, is still pending, and it may very well

4   be granted.  Alternative relief is available below.  Second,

5   the law does not clearly and indisputably foreclose the

6   district court's consideration of the Government's motion.

7   And third, it would be inappropriate to grant mandamus in a

8   case involving open questions where the Government is

9   raising novel constitutional arguments that were not raised

10  below.  As this Court has said, it is essential for those

11  questions to be raised below to maintain the regular order.

12         No one disputes that a federal district court

13  cannot second guess a legitimate exercise of prosecutorial

14  discretion simply because it disagrees with it.  But that is

15  not the issue before the Court.  The issue here is whether a

16  federal district court judge can set an expedited briefing

17  schedule and appoint an amicus to provide adversarial

18  briefing before ruling on a motion that requires leave of

19  court.  The answer is it must be yes.

20         JUDGE RAO:  Ms. Wilkinson?

21         MS. WILKINSON:  Yes, Judge Rao.

22         JUDGE RAO:  Ms. Wilkinson, yes, so, in a case such

23  as this where both the Government and the defendant agree

24  with the motion to dismiss, I mean, isn't the appointment of

25  an amicus creating an Article 3 case or controversy where

MR

1   there isn't one?

2            MS. WILKINSON:  No, Your Honor.  There is a case

3   in controversy here for several reasons.  One, as you know,

4   the Government and the defendant are asking for the motion

5   to be dismissed with prejudice.  By definition, there cannot

6   be a ruling to dismiss those charges with prejudice if the

7   Court doesn't have jurisdiction.  And the parties want that,

8   of course, because they don't want another prosecutor to

9   come back and then look at these charges, and bring those

10  charges against Mr. Flynn.  So everyone in this case agrees

11  that this motion, if it should be granted, should be granted

12  with prejudice so the charges are ended.

13           JUDGE RAO:  Well, what happens, though, in a

14  case -- maybe another way of asking this, if the district

15  court were to determine that the motion to dismiss should be

16  denied, then what happens?  Then we go on to sentencing Mr.

17  Flynn even though the executive is no longer pressing its

18  prosecution?

19           MS. WILKINSON:  There's no reason at this point to

20  fear that the district court is going to deny the

21  Government's motion to dismiss.  But if, for some reason,

22  the facts or the answers to the questions at the hearing

23  gave some basis for that, I'm sure the parties, including

24  the Government this time, and Mr. Flynn, would file another

25  motion or another writ for mandamus, and that happened in In

MR

1    Re: Aiken, as you know.  And there, the Court said, and

2    denied the first motion for the writ because they said the

3    Government hadn't had the chance to act.  And in fact, they

4    gave years to the Government agency, the NRC, to make that

5    decision.  And only when that agency announced that it would

6    not rule did this Court issue a writ of mandamus.

7             So here, we're not in any situation similar to

8    that.  As Judge Henderson has said, the court only set a

9    briefing schedule and has a hearing for July 16th.  The order

10   to the amicus is circumscribed as only presenting arguments

11   in opposition, and there's no suggestion that the Court is

12   going to call witnesses or do anything of the parade of

13   horribles the Government and petitioner was laying out for

14   you.  All this court is doing is getting advice on --

15            JUDGE RAO:  And what standard is an Article 3

16   judge supposed to apply in this context?

17            MS. WILKINSON:  Well, I think if you --

18            JUDGE RAO:  In order to assess the motion to

19   dismiss, Rule 48 just says there must be leave of court.

20   Well, what's the standard that the district court judge must

21   apply?

22            MS. WILKINSON:  Well, the governing law here is in

23   Ammidown, which is still good law, was cited by Fokker.  And

24   there, as Fokker reiterated, I think, we have to look at

25   whether that presumption of regularity or there was a clear

MR

1  violation of the public interest for the Court to seriously

2  consider whether it can deny the motion to dismiss.  So

3  there is a presumption, as you mentioned earlier.  And the

4  question is, is there any basis to overcome that

5  presumption, and that would guide the Court's inquiry after

6  receiving the briefing and asking questions of the

7  Government and the parties.

8         JUDGE RAO:  But, I mean, isn't, I mean the public

9  interest is not a standard that's mention in the rule.  And,

10  I mean, in our constitutional system of government, isn't

11  the public interest with respect to whether a prosecution

12  goes forward, isn't that public interest one that is

13  committed firmly under Article 2 to the Executive Branch,

14  and two the politically accountable Executive Branch, not to

15  an Article 3 court?

16         MS. WILKINSON:  Generally yes, Your Honor.  The

17  prosecutorial prerogatives protect and consider the public

18  interest.  But in Rinaldi, the Supreme Court specifically

19  held out that standard, I think you know, in Footnote 15

20  where they said they aren't ruling.  They are allowing the

21  motion to dismiss be reviewed as the abuse of discretion,

22  and they found that it did abuse discretion.  But they said

23  we have not decided whether you could consider a Rule 48 in

24  light of the public interest.  And, in fact, the dissent,

25  led by Justice Rehnquist, said he thought it was clearly an

MR

1    independent basis to review a Rule 48 motion.

2           But in any event, that law is not clear here.

3    There's no clear and indisputable standard for this Court to

4    issue a writ of mandamus based on the fact that the standard

5    is unclear as to how you determine leave of court and any

6    kind of abuse of discretion or discretion.  What we do know

7    is in this Court, in this Circuit Court, in <u>Fokker</u> and

8    <u>Ammidown</u>, both provided for a review by the court of the

9    Government's motion and allowed for questioning.

10          When you decided the case in <u>Fokker</u>, Judge Leon

11   questioned the parties, including the Government, in open

12   court on several occasions, and he had conferences.  When

13   <u>Fokker</u> was decided, no one stated in that opinion you cannot

14   ask questions, you cannot have a hearing.  And in fact, the

15   Government never took Judge Leon up on a mandamus.  There's

16   no situation in <u>Ammidown</u> --

17          JUDGE WILKINS:  The Government argues that <u>Fokker</u>

18   necessarily rebuked that approach by the district court.

19   What's your response to that?

20          MS. WILKINSON:  That's not what <u>Fokker</u> says.  What

21   <u>Fokker</u> says is that the district court judge abused his

22   discretion when he denied the motion, which was the speedy

23   trial motion, necessary for the deferred prosecution

24   agreement when he stated that he disagreed with the

25   Government's prosecutorial decisions.  That, indeed, is an

MR

1   improper basis to deny a motion to dismiss.  And that was

2   the circumscribed ruling of Fokker.  Fokker does not deal

3   with Rule 48, as you've talked about, but it certainly

4   doesn't say that you can't have consideration or scrutiny.

5   In fact, it says just the opposite.

6            Throughout the opinion, they talk about the

7   scrutiny, and they talk about it being circumscribed, but

8   they certainly don't say the court has no right to ask

9   questions.  And here, all the judge is doing is receiving

10  briefing and having a hearing.  And the parties, the

11  petitioner and the Government didn't object to that below.

12  They had no --

13           JUDGE RAO:  Well, but --

14           MS. WILKINSON:  Yes, Your Honor.

15           JUDGE RAO:  I mean, how does the presumption of

16  regularity, then, apply in a situation like this?  I mean,

17  before asking questions, you know, appointing amicus,

18  doesn't the district court have to determine that the

19  presumption is overcome?

20           MS. WILKINSON:  No, Your Honor.  The court could

21  not determine whether the presumption had been overcome

22  without at least questioning the Government about its

23  motion.  I think Judge Wilkins was pointing that out when he

24  was saying if you had a pleading and the Government didn't

25  include all the facts because they only wanted to present

MR

1   certain facts, the court, by definition, would have to

2   inquire to determine whether that presumption was overcome.

3   The court was clear that there is a presumption.  So it is a

4   long hill to climb to overcome that presumption, but there's

5   nothing in Fokker that says you may not question the

6   Government.

7           And in fact, the Government answers these kinds of

8   questions all the time.  If you look at Rinaldi, then-Chief

9   Judge King of the Southern District of Florida's court

10  called the prosecutors in and asked questions.  The Supreme

11  Court in Rinaldi didn't say that kind of questioning was

12  improper.  That happens every day in district courts when a

13  party files a motion and the judge asks questions.  That's

14  all that's happening here.

15          JUDGE RAO:  Well what about --

16          MS. WILKINSON:  There's nothing more, nothing

17  less.

18          JUDGE RAO:  I mean, there is more here.  There is

19  an appointment of an amicus to oppose the motion to dismiss.

20  I mean, that is, that, I don't believe, is an everyday

21  occurrence.

22          MS. WILKINSON:  You're absolutely right, Your

23  Honor, because normally parties are opposed, but here,

24  there's unusual circumstance where both parties agree.  All

25  the district court did was appoint an amicus to present

MR

1   arguments in opposition to the Government's motion to

2   dismiss.  And we know, because at least some time has

3   passed, that the amicus filed that brief and did not ask for

4   any witnesses, did not request any fact-finding.  So to go

5   to Judge Henderson's point about the regular order, if this

6   Court doesn't step into the fray and allows the district

7   court to do its job, it may well be that the court reads

8   both sides, both briefings, asks the Government questions,

9   and grants the motion to dismiss.

10         JUDGE RAO:  But who is the amicus representing

11   here?  I mean, you know, where the Government decided to

12   drop a prosecution, and the defendant agrees, what is the

13   standard that they're arguing?  I mean, who are they arguing

14   on behalf of?

15         MS. WILKINSON:  They're arguing on behalf of the

16   adversarial position just like this Court does often or the

17   Supreme Court does.  I mean, one of the most famous cases is

18   Dickerson where the Government was not going to challenge

19   the Miranda standard, and the Court appointed an amicus

20   there to argue because the Government chose not to take that

21   position.

22         JUDGE RAO:  Right, but so what is the, so you're

23   saying that there is some kind of judicial right or judicial

24   powers here that the amicus is representing?

25         MS. WILKINSON:  No.  I think, I mean, I think as

MR

1  Mr. Wall stated, there is an inherent power, and it occurs

2  at the district court level, not frequently, for the Court

3  to appoint an amicus when it needs advice or legal briefing

4  on an issue.  But here, it's even more important because you

5  need adversarial briefing.  The Government and Mr. Flynn are

6  aligned.

7          JUDGE RAO:  I know, but so, but that's, in a

8  criminal case, that is the adversarial process.  It's the

9  Government against a criminal defendant.  What does it even

10  mean to have an adversary where the Government and the

11  defendant agree?  Like, I mean, is it representing some kind

12  of an inherent authority of the court?

13          MS. WILKINSON:  It's representing the authority of

14  the court to understand the opposing arguments.  Just like

15  here, Your Honor.  You have the Government and the

16  petitioner aligned.  And the district court was brought in

17  to argue the other side.  It doesn't mean that the district

18  court thinks this motion under Rule 48 should be denied.

19  All we're doing coming forward is arguing the other side.

20          And all the district court was doing is appointing

21  an amicus to say what is the scope of the authority?  Can a

22  motion, an unopposed motion under Rule 48 be denied?  And if

23  so, what is the standard, as you've just asked me?  The

24  standard is not clear.

25          So what are the outlines?  What are the cases, and

MR

1   what do they say about the court's authority to ask

2   questions and to make that decision?

3           JUDGE RAO:  So then the amicus isn't an adversary.

4   You're not, then, you're saying the amicus is to just

5   provide understanding about the law to the district court?

6           MS. WILKINSON:  I think it's, the amicus is an

7   adversary in the sense that he was directed to take

8   positions opposing the Government's motion to dismiss, so I

9   believe the Government and the petitioner would surely see

10  the amicus as an adversary.  And that's important because

11  the Court doesn't have to listen to the amicus, as Judge

12  Henderson said, the Court is an experienced judge.  He can

13  ignore the amicus.  He can take some of the points under

14  consideration.  And then he can ask his questions and make

15  his ruling.  But he wanted to hear --

16          JUDGE RAO:  But I --

17          MS. WILKINSON:  Yes, Judge.

18          JUDGE RAO:  I'm sorry.  I guess I think here, as

19  you've also recognized, right, I mean there is a core

20  Article 2 power over prosecution.  Even the weakest

21  understandings of Article 2 admit that the Executive power

22  includes control over prosecutions.  But it's hard --

23          MS. WILKINSON:  Absolutely.

24          JUDGE RAO:  I think you have to articulate here

25  what is the countervailing Article 3 issue at stake?  So for

MR

64

1    instance, in the <u>Nixon</u> case, right, there was a conflict

2    between Article 2 and Article 3, and the Article 3 power

3    there that the Court articulated was the district court's

4    essential function in protecting individual liberty in a

5    criminal trial.  But here, I think, I guess I'm wondering if

6    you can articulate what is the countervailing Article 3

7    power at stake in a case where the Government and the

8    defendant agree on the motion to dismiss?

9              MS. WILKINSON:  <u>Fokker</u> laid that out by saying the

10   Court is allowed to question the presumption of regularity

11   of the prosecutorial decision even when the defendant and

12   the Government agree.  <u>Ammidown</u> says the same thing.  And

13   even in <u>Nixon</u>, Your Honor, the Court, citing the Framers,

14   made clear that even though you're dividing and allocating

15   the sovereign powers among three, co-equal branches, the

16   Framers of the Constitution sought to provide a

17   comprehensive system, but the separate powers were not

18   intended to operate with absolute independence.

19              And here, you had the Government exercising its

20   Article 2 powers coming in and asking the Court to make an

21   independent finding for a plea.  It had the Court make a

22   legal finding and a factual finding, and by, as <u>Fokker</u> says,

23   the Court has exercised its coercive power and convicted the

24   defendant.  There's a public conviction in lieu of a trial,

25   so the Government didn't have to go through that.  And

MR

1  that's very important for Article 3 power that you're

2  stepping into the shoes of the jury and saying, based on

3  this finding, we can adjudicate this defendant guilty.

4          And now, the Government is coming back and saying

5  we want you to dismiss those charges, and, apparently,

6  vacate your findings of guilt.  It's not clear what they

7  want to do about the actual plea because that's not the

8  subject of this mandamus.  The plea agreement that is

9  between the Government and the defendant, and what the

10  effect of that is if the charges are dismissed.  But they're

11  asking the Court, the Executive Branch, to come in and

12  reverse or vacate its findings.  And so the Court has the

13  right, the duty, and the language under leave of court to

14  ask the Government questions.  The Rule 48 language that's

15  been in the statute for over 80 years that the Supreme Court

16  suggested and Congress approved, there's not a case since

17  that language went in that says leave of court is

18  meaningless when the parties agree.

19          And that's the Government and the petitioner's

20  position.  To be clear, they are saying those words mean

21  nothing when the defendant and the Government agree.  And

22  that makes no sense under all of the cases, starting with

23  Rinaldi.  It makes no sense in light of all the cases around

24  the country where every panel has at least considered

25  whether the Court below abused its discretion when they

MR

1    denied a motion to dismiss.

2            JUDGE RAO:  Right.  Well, perhaps, I mean, leave

3    of court may not be a kind of rubber stamp, but leave of

4    court is, those words on its own are also, it's hard, I

5    think, to fit into leave of court the ability for a court to

6    keep sentencing a person where the Executive Branch wants to

7    drop the prosecution.  I mean, leave of court may not mean

8    that much, even if it means something more than a rubber

9    stamp.

10           MS. WILKINSON:  True, Your Honor.  And I think

11   every case has said that it's a circumscribed review, a

12   limited inquiry that a court can do under that standard, but

13   it doesn't say no review.  It doesn't say no questions.  And

14   the Government's position is somehow, by the Court asking

15   the Government questions about the motion that it filed,

16   that somehow that's some irreparable harm.  If it is, that

17   goes on in a district court every day of the week.  It went

18   on in Fokker.  It went on in Ammidown.  It went on in

19   Rinaldi.

20           The district court in each of those cases asked

21   the prosecutors questions, and they didn't stand up and say

22   we don't have to answer them; Leave of court means nothing.

23   They answered the questions.  They gave the court the

24   information, and the Government certainly knows how to

25   refuse to answer or refuse to provide information if it

1  thinks it's appropriate.  And this is the reason why this

2  case, all of these issues should have been brought up with

3  the district court below.  If the Government did not like

4  the process of the amicus or the briefing, or the petitioner

5  didn't, they should have raised it with Judge Sullivan.  And

6  instead --

7              JUDGE WILKINS:  Counsel --

8              MS. WILKINSON:  -- they've end-run the district

9  court and come to you.

10             JUDGE WILKINS:  Counsel, the Government says that

11 with respect to kind of the case or controversy and the

12 Article 2 prerogatives, and how Rule 48(a) is supposed to

13 work, that even if the Government in a motion says, you

14 know, we're moving to dismiss because we don't want to

15 prosecute this white defendant for beating and using

16 excessive force against a black victim, that the Court would

17 still be compelled under Rule 48(a) to grant the motion to

18 dismiss, and that the remedy, if any, for that sort of

19 unconstitutional bias would be, you know, defendants in

20 other cases filing some sort of Armstrong motion, or I guess

21 some, I guess action by other branches, you know, after the

22 dismissal to reprimand the Executive, what's your response

23 to that point of view of Rule 48(a)?

24             MS. WILKINSON:  It won't surprise the Court that I

25 strongly disagree with that.  The case law that's already

1  well-known by this Court, starting with Rinaldi, and the

2  cases around the country give examples of where a court can

3  move, can deny a motion, which include bribery.  That's not

4  even a constitutional violation.  You just heard Mr. Wall

5  mention it a few minutes ago.  And all of those cases

6  provide, that could be an example where a prosecutor was

7  bribed, and likely, if that were true, he's not going to put

8  that in the pleading, in the motion to dismiss, and that

9  could cause a court concern and could be the basis for a

10  motion to dismiss.

11        So if the Government was acting in a racist way

12  and either gave those bases to the court or the court was

13  able to uncover them through questioning, yes, that would be

14  a basis to dismiss.  The next question is, then what could

15  the court do?  It would depend on the posture of the case.

16  If it was an early decision in the case and the defendant

17  actually hadn't pled guilty, then there's more limited

18  options.

19        But as you've said, there's still public pressure

20  that can come as a result of the court's issuing that

21  motion.  But if the defendant has pled guilty, the more

22  difficult question, or the more interesting question is, the

23  Article 3 court now has supervisory power over that

24  defendant.  As Fokker says, once you have a guilty plea, the

25  court has jurisdiction over sentencing.  So the question is,

1  if that police officer has pled guilty and the Government

2  disagrees with moving to the dismissal, and the court denies

3  it, could the court sentence that defendant?  I don't know

4  the answer to that question, but there's certainly a basis

5  for the judge to deny the motion to dismiss on those

6  grounds.

7          JUDGE WILKINS:  Thank you.

8          MS. WILKINSON:  The district court is not asking

9  as a prosecutor, Your Honor.  Nor has he made up his mind

10 about the pending issues.  He is considering the

11 Government's motion and receiving briefing from all the

12 parties.  After hearing the arguments, Judge Sullivan will

13 do what he is called on to do on a daily basis.  He'll

14 decide the motion.  With such a combined inquiry, there is

15 no clear and indisputable justification for this Court to

16 enter the fray now and stop a federal district court judge

17 from carrying out his Article 3 responsibilities.  Thank

18 you.

19          JUDGE HENDERSON:  All right.  Any more questions?

20 All right.  Madam Clerk, neither counsel has any time left,

21 right?

22          THE CLERK:  Correct.  Correct.

23          JUDGE HENDERSON:  All right.  Ms. Powell, why

24 don't you take two minutes.

25              ORAL REBUTTAL OF SIDNEY POWELL, ESQ.

MR

1                    ON BEHALF OF THE PETITIONER

2             MS. POWELL:  Your Honor, first, there were no

3    valid Rule 11 proceedings in this case to take the guilty

4    plea.  But mainly, the first judge who took it should have

5    recused already.  He mysteriously recused a few days later,

6    but for the same reasons that would have existed when he

7    recused seven days later, he should have recused

8    immediately.  And the Government knew that information, but

9    General Flynn didn't.  The second guilty plea colloquy that

10   Judge Sullivan did was not a full colloquy at all.  In fact,

11   he ended it by asking repeated questions and saying he had

12   many, many, many questions, including about how this was

13   material and how it impeded the Government's investigation.

14            All of that is now refuted completely by the

15   extraordinary exculpatory evidence that Mr. Jensen disclosed

16   that has been hidden from the defendant for three years.

17   That's what makes this case different from every other case.

18   When that happened in Stevens, Judge Sullivan had no problem

19   dismissing the case at all.  He didn't inquire behind the

20   Government's two-page motion to dismiss.  They simply

21   produced the evidence and dismissed the case.

22            Why we're making a special exception here for

23   General Flynn is beyond my capacity to understand the law

24   when every case in the country has affirmed a grant of a

25   motion to dismiss and not denied one in any way, shape, or

1   form.  I mean, every appellate case in the country has

2   affirmed the grant of a motion to dismiss or has said the

3   case has to be dismissed.  They don't have any ability to go

4   question behind the Government's perspective on why it made

5   the decision absent an Armstrong problem which clearly

6   doesn't exist here or clear evidence, not plausible

7   questions, not musings, not imaginings, but clear evidence

8   of some serious wrongdoing that indicates bad faith on the

9   part of the Government.  And Rinaldi makes clear that the

10  leave of Court provision was included to protect the

11  defendant from prosecutorial harassment.

12          There is neither a case nor controversy here any

13  longer.  The Government and the defendant have agreed that

14  the case must be dismissed.  The Government is not going to

15  carry on the prosecution.  It cannot be forced to by an

16  Article 3 court.  That's outside its bounds.  And the motion

17  for writ of mandamus should be granted on all counts.

18          JUDGE HENDERSON:  All right.  Thank you, Ms.

19  Powell.  Mr. Wall, why don't you take two minutes?

20          MR. WALL:  Judge Henderson, can you hear me?

21          JUDGE HENDERSON:  Yes.

22           ORAL REBUTTAL OF JEFFREY B. WALL, ESQ.

23          ON BEHALF OF U.S. DEPARTMENT OF JUSTICE

24          MR. WALL:  Thank you.  So, just a couple of very

25  brief points.  I didn't hear respondent address what I think

MR

1  is the central point on the merits, which is that once they

2  have conceded that Fokker does not allow the court to go any

3  further with respect to the pre-plea situation, because

4  there's no way to make the Executive proceed with the

5  prosecution.  Once we know that it's a Rule 48 and a

6  constitutional matter, there's no way to force the

7  Government in that situation.  They don't have any argument

8  either as a matter of reading the rule in interpretive

9  principles or constitutional concerns that would distinguish

10  the post-plea situation.  That's just not what Rule 48 is

11  meant for, and I think Fokker is clear about that.

12         So then really they've hung their hat on just the

13  notion that it's too early in time.  And as I tried to say

14  earlier, I think, Judge Henderson, there are a real harms

15  that are going to come from the kinds of questions they want

16  to ask.  I mean, in the brief they say they want to ask

17  about the uncharged conduct.  So not just why do we no

18  longer want to maintain this prosecution but why we haven't

19  brought separate charges against this defendant.  Everybody,

20  I thought even respondent conceded, commencement of the

21  prosecution is off the table, but they want to ask about

22  uncharged conduct.

23         They want to ask about related prosecutions.  They

24  want to ask about why certain prosecutors signed particular

25  briefs, whether they agreed with our position, whether they

MR

1    didn't.  They want to ask questions on the reasons that the

2    Attorney General gave, like his policy judgment that the

3    federal interest is no longer warranted.  And if the Court

4    thinks about the manner in which we are going to have to

5    answer those questions in the district court, what we are

6    going to have to say whether as a factual or as a legal

7    matter in terms of disclosing our own, deliberative

8    processes and the like, I think it's fairly clear why Fokker

9    said courts were not supposed to go down this road.

10           And I take the point that the train isn't at the

11    end of the line, that it's only partially left the station.

12    But I think that's why Fokker said the train is never

13    supposed to leave in the first place.  In order to respect

14    the division of constitutional authority being the Executive

15    and the Judiciary in light of these Article 2 and Article 3

16    concerns like the ones Judge Rao was raising.  There are

17    real harms here, and if we know what has to happen at the

18    end of the day, with all respect, the district court should

19    be directed to do it now rather than have some unnecessary

20    and very harmful further proceedings.

21           JUDGE HENDERSON:  Mr. Wall, let me ask you

22    something that is I think in your brief but I don't think

23    you mentioned it this morning.  And that is the harm to

24    Article 2, perhaps not harm, but the benefit of self-

25    correction.  On this record before us, if there was bad

MR

1    faith, it occurred in the original prosecution.  And

2    shouldn't we allow Article 2 to self-correct?

3          MR. WALL:  Absolutely, Judge Henderson.  And I

4    think, and this goes to the question Judge Wilkins was

5    asking earlier.  Even if we could legally come in and not

6    give any reasons for the motion, we did give fairly fulsome

7    reasons, and the Attorney General had two, independent

8    rationales.  And, or sorry, three independent rationales.

9    And although they have challenged two of them on sort of

10   legal bases, no one, not the court-appointed amicus and not

11   the respondent, has said a word about the portion of the

12   motion where the Attorney General says that looking at the

13   circumstances surrounding the FBI's interview of General

14   Flynn and the fact, the way it went on, and the way it

15   wasn't communicated to others at the White House and all the

16   rest, that he concluded that it was no longer in the

17   interest of justice to proceed with the prosecution.

18          Now, the reason they don't say a word about it is

19   because I think no one disputes that that is the kind of

20   judgment that is at the core of Article 2 power.  It's

21   difficult to imagine, at least outside the military context,

22   a more core Article 2 judgment.  And yes, Judge Henderson,

23   when we put that forward in the motion, whether we were

24   required to or not, absolutely, I think that at that point,

25   the district court is required to grant the Rule 48 motion.

MR

75

1              JUDGE HENDERSON:  All right, thank you.  Do my

2    colleagues have any questions?

3              JUDGE WILKINS:  No.

4              JUDGE RAO:  No further questions.

5              JUDGE HENDERSON:  All right.  Counsel, your case

6    is submitted, and Madam Clerk, if you'll adjourn court.

7              (Whereupon, the proceedings were concluded.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MR

## DIGITALLY SIGNED CERTIFICATE

        I certify that the foregoing is a correct transcription of the electronic sound recording of the proceedings in the above-entitled matter.

_____        ___June 16, 2020___
Mary Rettig                                Date

DEPOSITION SERVICES, INC.