UNITED STATES COURT OF APPEALS
                 FOR THE DISTRICT OF COLUMBIA CIRCUIT


- - - - - - - - - - - - - - X
                            :
IN RE:                      :
MICHAEL T. FLYNN            :     No. 20-5143
                            :
- - - - - - - - - - - - - - X
                                    Tuesday, August 11, 2020

                                    Washington, D.C.


     The above-entitled matter came on for oral
argument pursuant to notice.

     BEFORE:

          CHIEF JUDGE SRINIVASAN, AND CIRCUIT JUDGES
          HENDERSON, ROGERS, TATEL, GARLAND, GRIFFITH,
          MILLETT, PILLARD, WILKINS, AND RAO

     APPEARANCES:

          ON BEHALF OF THE PETITIONER:

          SIDNEY POWELL, ESQ.

          ON BEHALF OF THE U.S. DEPARTMENT OF JUSTICE:

          JEFFREY B. WALL (DOJ), ESQ.

          ON BEHALF OF THE HON. EMMET G. SULLIVAN:

          BETH A. WILKINSON, ESQ.

**Deposition Services, Inc.**
12321 Middlebrook Road, Suite 210
Germantown, MD  20874
Tel: (301) 881-3344 Fax: (301) 881-3338
info@DepositionServices.com  www.DepositionServices.com

C O N T E N T S

ORAL ARGUMENT OF:                                      PAGE

        Sidney Powell, Esq.
        On Behalf of the Petitioner                    3, 166

        Jeffrey B. Wall, Esq.
        On Behalf of the U.S. Department of Justice    47, 168

        Beth A. Wilkinson, Esq.
        On Behalf of the Hon. Emmet G. Sullivan         122

```
 1                        P R O C E E D I N G S
 2              THE CLERK:  Case number 20-5143, In Re: Michael T.
 3    Flynn.  Ms. Powell for the Petitioner, Michael T. Flynn.
 4    Mr. Wall for the U.S. Department of Justice.  Ms. Wilkinson
 5    for the Honorable Emmet G. Sullivan.
 6              JUDGE SRINIVASAN:  Thank you.  This is Chief Judge
 7    Srinivasan.  Before we begin with argument this morning, I
 8    note on behalf of the Court that our colleague, Stephen
 9    Williams, passed away last Friday in his 34th year of
10    service on our court.  Please join the Court in observing a
11    moment of silence in honor and remembrance of Judge
12    Williams.
13              Thank you.  We'll now proceed with argument in
14    today's case to be conducted as follows.  Each counsel will
15    give an opening statement to be followed by questioning by
16    the judges in order of seniority, and then a second round of
17    questioning for any judge who has a follow-up question.
18    We'll follow the same process for each of the three counsel
19    presenting argument today, and we'll then end with a brief
20    rebuttal and closing time for Mr. Flynn's counsel and
21    counsel for the United States.
22              Ms. Powell, we're ready to hear from you.  Please
23    proceed.
24                   ORAL ARGUMENT OF SIDNEY POWELL, ESQ.
25                      ON BEHALF OF THE PETITIONER
```

1        MS. POWELL:  Thank you, Chief Judge.  And may it

2   please the Court.  General Flynn is a defendant without a

3   prosecutor in litigation now without any controversy between

4   the actual parties to the case.  Instead of promptly

5   granting dismissal as required on these facts as a matter of

6   law, Judge Sullivan denied two defense motions opposing any

7   amicus at all, appointed Mr. Gleason to usurp the job of the

8   prosecutor, raised the sword of perjury and contempt charges

9   over Flynn's head, and impermissibly sallied forth to right

10  the wrongs he perceived.

11       But as Judge Posner noted in In re: United States, the

12  job of the United States Attorney is otherwise occupied.  In

13  adding the unconstitutional burdens of process to punish

14  Michael Flynn, Judge Sullivan discarded any semblance of the

15  unbiased, impartial adjudicator this Court extolled in Al-

16  Nashiri, the 2019 chapter of that case saga as the

17  cornerstone of any system of justice worth the label.  Four

18  rulings are required to conclude this novel Article III

19  excess.  Judge Sullivan's petition for rehearing must be

20  flatly denied with clear Ligon-like (phonetic sp.) language

21  the judge has no injury and no standing to seek relief in

22  this Court of this Court's rulings.

23        Second, because Judge Sullivan has so invested

24  himself in his own prosecution of General Flynn, Al-Nashiri

25  mandates his disqualification for the now-glaring appearance

1    of bias to millions of citizens.  Third, <u>Cheney</u>, <u>Sineneng-</u>

2    <u>Smith</u>, and <u>Bond</u> require a mandamus issue to vacate the

3    unconstitutional appointment of Mr. Gleason for intrusion

4    into the sole Article II functions of the Executive Branch.

5    And fourth, mandamus must issue to compel the district court

6    to grant the dismissal as a matter of law.  Only the

7    Department of Justice can decide the public interest and

8    myriad factors inherent in pursuing a prosecution.

9            This is not an ordinary motion on which there can

10   be factual development or debate.  This is a Rule 48(a) case

11   dispositive motion as to which the Executive Branch has sole

12   discretion and determinative authority.  The Government must

13   drop the case, and every 48(a) decision in the country

14   requires this motion be granted.

15           JUDGE SRINIVASAN:  Thank you, Ms. Powell.  I'll

16   begin the questioning.  And can I ask you the following

17   question.  And assume with me that I'm focused primarily on

18   the request to require the district court to grant the 48(a)

19   motion, and just put aside for one moment the other forms of

20   relief that you're requesting.  I'm focused on the one that

21   the panel decided the case on, which is the requiring the

22   district court to grant the motion for dismissal under Rule

23   48(a).  Now you agree that you're entitled to mandamus as to

24   that form of relief only if there's no other adequate means

25   to obtain the relief?

1              MS. POWELL:  Yes, Your Honor.  And there is no

2    other adequate means to obtain the relief because of the

3    usurpation of power and intrusion in the Article II branch

4    by the process he suggested and the fact that there's no

5    discretion involved in the district court, on the district

6    court's part in addressing a 48(a) motion.

7              JUDGE SRINIVASAN:  But are you aware of any other

8    case in which mandamus has been granted to compel a district

9    court to decide a pending motion in a particular way, either

10   by granting or denying it before the district court itself

11   has decided whether it's going to grant or deny the motion?

12             MS. POWELL:  Well, now that we have Fokker

13   Services, which of course you know as you wrote it, that the

14   law is clear that this motion has to be granted.  Every

15   48(a) motion in the history of the country has ultimately

16   been granted.  He could have had a hearing.  He has had

17   ample time that he could have had counsel appear in front of

18   him, but there's nothing --

19             JUDGE SRINIVASAN:  I'm not even focused -- if I

20   can just stop you for one second.  I'm not even focused on

21   48(a) motions as such.  And I take your point about Fokker.

22   And, in fact, for purposes of this question, I'll assume,

23   and it's just for purposes of this question, I'll assume

24   that everything you've said about the Fokker decision all

25   along is correct.  And I'll assume further that the en banc

1    court agrees with Fokker, even though Fokker was a panel

2    decision.  But I'm focused on the prong of mandamus that

3    deals with other adequate means.  And whatever you might

4    think about the clarity of Fokker, that's going to be true

5    of all kinds of decisions that are on the books.  And I'm

6    not even focused exclusively on 48(a) motions.  I'm asking

7    just for any kind of motion, any kind of motion pending

8    before a district court.  Are you aware of any situation in

9    which a district court has been compelled under mandamus to

10   grant or deny the motion before the district court itself

11   has decided whether to grant or deny the motion?

12              MS. POWELL:  No, sir, because I don't know of any

13   other case where a district court has set about the process

14   that this district court did that went outside the

15   boundaries of Article III from its very inception, from the

16   minute he requested amicus, which is not provided for in the

17   rules of the court at all in a criminal district court case.

18              JUDGE SRINIVASAN:  Well, if the district court

19   grants the motion, then that would be adequate alternate

20   means, would it not?

21              MS. POWELL:  Well, no, sir, because the process

22   here is the problem.  The process is what violates both

23   Article III and Article II.  He should have granted or

24   denied the motion months ago, three months ago to be

25   precise.  But instead, we've had the unconstitutional burden

MR                                                                    8

1   that Cheney talks about being imposed on us by the process

2   he created, that he has absolutely no authority to create.

3   All he is entitled to do, even if he'd done it timely, would

4   be to review this motion on its face and grant it.

5            JUDGE SRINIVASAN:  Okay.

6            MS. POWELL:  There is no precedent whatsoever for

7   denying it.

8            JUDGE SRINIVASAN:  Thank you, Ms. Powell.  I'll

9   let my colleagues answer questions and follow up in the

10   follow-up round with anything more.  I appreciate your

11   answers.

12            MS. POWELL:  Thank you.

13            JUDGE SRINIVASAN:  Judge Henderson.

14            JUDGE HENDERSON:  No questions.  Thanks.

15            JUDGE SRINIVASAN:  Thank you.  Judge Rogers.

16            JUDGE ROGERS:  I'll follow up briefly.  To what

17   extent do you understand Fokker to the extent you could rely

18   on it within the Chief Judge's assumption and the panel

19   opinion.  Was Fokker not a case where mandamus was granted

20   after the district court had ruled?

21            MS. POWELL:  Yes.  Mandamus was granted in Fokker

22   after the district court had ruled on the deferred

23   prosecution agreement.  And because we have Fokker now, we

24   know that Judge Sullivan has to grant this motion.  And

25   because he went through the guardrails of any bridge of

1    Article III construction whatsoever, he has to be reined

2    back in.

3            And at a very minimum, mandamus must be issued to

4    vacate the appointment of Mr. Gleason as an amicus.  And

5    there are no circumstances now under which Judge Sullivan

6    can continue on this case because his bias demands his

7    disqualification.  Just the very appearance of bias is

8    enough to demand his disqualification.  And here, we have a

9    long history of decisions made on the basis of extrajudicial

10   compact and the blistering op-ed in the Washington Post that

11   led him to choose the amicus he appointed.  He even waived

12   the requirement of local counsel for him.  He's added

13   additional perjury and contempt charges over General Flynn's

14   head, that perjury is now teed up for additional punishment

15   at the recommendation of the amicus.  Judge Sullivan failed

16   to follow this Court's mandamus itself for 15 days and then

17   took the unprecedented step of seeking rehearing by filing

18   his own petition for rehearing in this Court when he has

19   absolutely no standing to do so.  Taking on the mantel of an

20   active litigant has to disqualify him from proceeding any

21   further in this case if all the things that happened before

22   were not already sufficient.

23           JUDGE ROGERS:  Now, in <u>Will</u> (phonetic sp.), the

24   Supreme Court stated that it had never approved the use of a

25   writ to review an interlocutory procedural order in a

1    criminal case, which did not have the effect of a dismissal.

2    It acknowledged, though, that it wasn't saying there that it

3    could never be used, but it noted that mandamus had been

4    invoked successfully where the action of the trial court

5    totally deprived the Government of its right to initiate a

6    prosecution or where the Court overreached its judicial

7    power to deny the Government the right (indiscernible) of a

8    valid conviction.

9         Neither of these situations apply here, so why is

10   it appropriate to use mandamus to review the procedural

11   steps the district court took in connection with

12   consideration of the Government's motion?

13        MS. POWELL:  Your Honor, the usurpation of power

14   does apply here.  That's exactly what Judge Sullivan did

15   when he appointed Mr. Gleason in the stead of the Government

16   as soon as the Government moved to dismiss the prosecution.

17   There's no authority whatsoever for a judge to pile on and

18   add on his own prosecutor against a criminal defendant.  The

19   fact that this is a Rule 48(a) motion, as opposed to the

20   Bill of Particulars issue in Will makes all the difference

21   in the world because only the Government can decide when to

22   stop a prosecution.  And that's the authority he is

23   intruding on.  He's not entitled to ask any questions about

24   that whatsoever when more than a mere conclusory statement

25   has been made.  And in this case, we have a 100-page motion

MR

1  to dismiss supported by stunning exculpatory evidence that

2  was suppressed for three years or more.  This is an

3  extraordinary case.  The process he's created is beyond the

4  pale, as Judge Ginsberg would say in Sineneng-Smith.  And if

5  nothing other than Sineneng-Smith requires that it be ended

6  and mandamus issued.

7            JUDGE SRINIVASAN:  Thank you, Ms. Powell.  I want

8  to make sure that Judge Rogers has no further questions

9  before proceeding.

10            JUDGE ROGERS:  Thank you, Judge.

11            JUDGE SRINIVASAN:  Judge Tatel.

12            JUDGE TATEL:  Ms. Powell, just a quick question.

13  You argue that Judge Sullivan has no standing to file on

14  that petition.  Does that make any difference if we en banc

15  this case sua sponte, that is on our own?

16            MS. POWELL:  Well, according to the Court's order,

17  it considered his petition for --

18            JUDGE TATEL:  Of course we considered his

19  petition.  We consider all petitions.  But I don't see

20  anything in the order that says we granted it or denied it.

21  If we --

22            MS. POWELL:  Well, to avoid --

23            JUDGE TATEL:  My question, though, is.  My

24  question, though, is if we in fact en banc the case sua

25  sponte, it doesn't really make any difference whether Judge

1   Sullivan is a party or has standing.

2            MS. POWELL:  It does in terms of the

3   disqualification issue, Your Honor, because it shows --

4            JUDGE TATEL:  I was only asking you about our

5   ability to hear the case en banc.

6            MS. POWELL:  The Court can always take a case sua

7   sponte.

8            JUDGE TATEL:  Thank you.  Thank you.  I have no

9   further questions.

10           JUDGE SRINIVASAN:  Thank you.  Judge Garland.

11           JUDGE GARLAND:  Yes, thank you.  So, imagine the

12  Supreme Court has decided an issue that is in the district

13  court squarely.  And the -- without any doubts, completely

14  on fours, on all fours.  And the person who moves for

15  summary judgment based on that case says I don't have to

16  wait.  You have to decide this before you decide whether or

17  not it applies.  And if you don't decide in advance of the

18  motion, I'm going to mandamus you.  Why isn't that the same

19  as this case?  Well, first of all, I assume you agree that

20  even if the Supreme Court had decided an issue that's not on

21  the district court directly on point, that would not be

22  enough to mandamus the judge before the judge decides.  Do

23  you agree?

24           MS. POWELL:  No.  It would not, Your Honor,

25  because it wouldn't be a 48(a) situation that involved the

1  core powers of the Executive Branch.

2          JUDGE GARLAND:  Well, what if it was a separation

3  of powers case about the core powers of the Executive

4  Branch, and the Supreme Court had decided that the Executive

5  Branch has this power.  The plaintiffs were claiming that it

6  doesn't.  And the judge has not made up his mind yet.  Would

7  you agree that that still the district court has to make the

8  decision before you can appeal or before you can seek

9  mandamus or before you can do anything else?

10         MS. POWELL:  Well, he's effectively made a

11  decision here.  He denied two motions opposing any amicus at

12  all and denied our request the motion to dismiss be granted

13  before he even appointed Mr. Gleason and then started the

14  whole process and intrudes into the Article II Executive

15  power that he simply cannot do.

16         JUDGE GARLAND:  Do you disagree with Judge Rao's

17  statement that the district court currently presiding over

18  the case has yet to decide the Government's motion?

19         MS. POWELL:  Yes, I do.  I do at this point

20  disagree with that because I went back and looked at the

21  record again and realized we had filed our request for him

22  to grant that and oppose the amicus twice before he even

23  appointed Mr. Gleason.

24         JUDGE GARLAND:  That's on the amicus question.

25  What about the dismissal of the case question?

MR

1        MS. POWELL:  In that motion, around Docket 200 I

2   think, we requested again the dismissal be granted.

3        JUDGE GARLAND:  I see.  So the panel just got that

4   wrong?

5        MS. POWELL:  Well, it was my failure to point out

6   to the panel that that motion had previously been granted,

7   but we corrected that in our opposition to his petition for

8   rehearing, something that was so different from the summary

9   judgment context or anything like that is.  It's a criminal

10  case in which the defendant, all the constitutional rights

11  are supposed to benefit the defendant.

12        JUDGE GARLAND:  We have lots of cases, don't we,

13  where we have reversed a district court for clear or plain

14  error in a criminal case.  And yet, there was no ability of

15  that defendant to do anything other than appeal the

16  conviction.  They could not mandamus the court.  Imagine

17  that the Supreme Court had decided a Fourth Amendment case

18  and clearly applicable to that particular defendant in that

19  defendant's favor, and then the district court ruled the

20  other way.  The defendant would still have to appeal even

21  though the defendant's liberty was restricted and a

22  conviction stood.  Isn't that right?  That's the normal way

23  criminal cases go, isn't it?

24        MS. POWELL:  That's the normal way criminal cases

25  go when they're dealing with solely legal issues and the

MR

1   Government hasn't walked in and said I quit when the

2   Government is the only entity that can pursue a prosecution.

3           JUDGE GARLAND:  So it's not just the question of

4   the clarity of the law at the time?

5           MS. POWELL:  No, it's not just a question of the

6   clarity of the law at the time.  It's a function of the sole

7   authority of the Executive Branch being the one to

8   prosecute.  All the discretion is vested in it to weigh all

9   the factors that go into dropping a prosecution.  And the

10  Court can't continue a prosecution on its own, which is

11  essentially what Judge Sullivan has tried to do here and has

12  done very effectively for three months.

13          JUDGE GARLAND:  So if all that the district court

14  had done was ask Mr. Flynn and the Government to brief and

15  orally argue the scope of Rule 48 and any separation of

16  power arguments and permitted amicus but did not appoint

17  amicus you would not have the argument?  Is that right?

18          MS. POWELL:  No.  I think we still would.  I think

19  that's far more procedure and process than is allowed by

20  precedent on any 48(a) motion in the history of the country.

21          JUDGE GARLAND:  Okay.  Thank you very much.

22          JUDGE SRINIVASAN:  Thank you.  Judge Griffith.

23          JUDGE GRIFFITH:  Thank you, Ms. Powell.  As I see

24  it, the question before us is not whether the district court

25  must grant the 48(a) motion.  The question is whether the

MR

16

1  district court may appoint an amicus and hold a hearing

2  before deciding that motion.  Now, in your view, what is it

3  in Rule 48(a) itself or that in our cases that prevents the

4  district court from conducting a hearing before deciding the

5  motion?

6           MS. POWELL:  Well, the Supreme Court and this

7  Court has said that the court has no substantial role

8  whatsoever in ruling on a 48(a) motion.  The leave of court

9  provision is not a license for him to investigate behind the

10 stated reasons the Government has for dismissing the case.

11          JUDGE GRIFFITH:  What is the role of the leave of

12 court language then?  From your comments today, you make it

13 sound as if it's ministerial.

14          MS. POWELL:  It almost is ministerial.  It allows

15 the Court --

16          JUDGE GRIFFITH:  But what does almost is

17 ministerial mean?  Is it ministerial or not?  Yes or no?

18          MS. POWELL:  It's pretty ministerial.  It's --

19          JUDGE GRIFFITH:  Well, that's not, Ms. Powell,

20 that's not helpful.  It's not ministerial.  You know it's

21 not.  The case law doesn't say it's ministerial.

22          MS. POWELL:  Well, no.  Rinaldi says --

23          JUDGE GRIFFITH:  So it's not ministerial.  So that

24 means that he judge has to do some thinking about it, right?

25 The judge just is not seeking a rubber stamp.  The language

MR

```
 1   of the rule itself and the history of the rule shows the
 2   judge is not a rubber stamp.  So aren't you just arguing
 3   about what the judge must do to educate himself or herself
 4   to be able to rule on the motion?  And I take it --
 5           MS. POWELL:  That --
 6           JUDGE GRIFFITH:  I take it your point is that the
 7   rule itself forbids the conducting of a hearing before the
 8   motion.  Is that your position?
 9           MS. POWELL:  No, sir.  It's the Constitution and
10   the Supreme Court's decision in Rinaldi and this Court's
11   decision in --
12           JUDGE GRIFFITH:  That prevents, that prevents any
13   hearing before the motion?
14           MS. POWELL:  It prevents any inquiry behind the
15   Government's stated reasons for the motion.
16           JUDGE GRIFFITH:  What is the --
17           MS. POWELL:  It prevents any substitution of Judge
18   Sullivan's opinion of --
19           JUDGE GRIFFITH:  What type of --
20           MS. POWELL:  (Indiscernible).
21           JUDGE GRIFFITH:  What type of hearing is
22   permissible, Ms. Powell?
23       MS. POWELL:  He could have called the parties in and
24   said does the Government move to dismiss, and the Government
25   says yes, and he could have said well is this Brady
```

1  material?  Like, they could have said yes or no, or _Giglio_

2  like he pushed them a bit on the _Stevens_ case.  But to have

3  any evidence, any contrary testimony, to ask the, quote,

4  plausible questions he had that he's mentioned in his briefs

5  that he wants to ask, none of that is permissible whatsoever

6  because _Rinaldi_ makes it clear that the leave of court

7  provision is only to protect the defendant from being

8  harassed by the Government.  So the only discretion he has

9  is whether to make sure it is with prejudice as Judge

10  Sullivan himself did in his decision in the _Pitts_ (phonetic

11  sp.) case.  The Government wanted to dismiss it without

12  prejudice, and he said no, it has to be with prejudice.  And

13  that's what he did in the _Stevens_ case too.  On just a two-

14  page motion to dismiss filed by the Government.

15          JUDGE GRIFFITH:  Ms. Powell, you've stated in your

16  oral argument today that you believe that you have a very

17  strong case before the district court on Rule 48(a), right?

18  (Indiscernible.)

19          MS. POWELL:  Yes.

20          JUDGE GRIFFITH:  Right.  You have a strong case.

21  In that case, why mandamus?  Why not simply appeal if Judge

22  Sullivan does not grant the motion to dismiss under Rule 48,

23  why not seek an appeal to us?

24          MS. POWELL:  Because the process he has started

25  and intends to pursue violates the Article II powers of the

MR

1   Executive Branch.  And Bond entitles General Flynn to stand

2   on those constitutional principles of separation of powers

3   and allege the harm that also occurs to him by the violation

4   of his constitutional rights.  And I think it was In re:

5   Peru or Ex Parte Peru said to a prompt termination of these

6   proceedings instead of a trial upon a trial of the

7   Government's decision to dismiss, which he has no discretion

8   or authority to inquire behind whatsoever.  Every case in

9   this country that has ever addressed Rule 48(a) motion has

10  required it be granted.  Every one.

11          JUDGE GRIFFITH:  And you don't think that's what

12  will happen on this one?

13          MS. POWELL:  It's the --

14          JUDGE GRIFFITH:  We don't know.  We don't know, do

15  we?  We haven't checked because we don't know.  Judge

16  Sullivan hasn't ruled yet.

17          MS. POWELL:  We know the process he has proposed

18  is unconstitutional.  We know that the process he's proposed

19  tramples all over the Executive Branch's independent

20  authority to do it, as well as its, what went into its

21  decision-making.  Nothing about what he has done since he

22  got the motion to dismiss has been done in any other case we

23  could find.  Not one, single step of the procedure.  And to

24  add on someone to prosecute the defendant, as Mr. Gleason

25  wants to do when --

1          JUDGE GRIFFITH:  I don't understand your

2   statement.  I mean, the appointment of amicus is for a court

3   to argue a view that's not going to be presented by the

4   parties.  That's common.

5          MS. POWELL:  Not in --

6          JUDGE GRIFFITH:  That --

7          MS. POWELL:  Not in district court in criminal

8   cases, Your Honor.  There's no rule or provision for it.  It

9   violates Hollingsworth v. Perry.  He can't just go out on

10  its own and do this, and it steps all over the Article II

11  Executive Branch authority.

12          JUDGE GRIFFITH:  Okay, thank you very much, Ms.

13  Powell.

14          MS. POWELL:  There's nothing there about aligning

15  people against a defendant in a criminal case, as if there

16  weren't enough already.

17          JUDGE SRINIVASAN:  Thank you, Ms. Powell.  Thank

18  you.

19          JUDGE GRIFFITH:  Thank you.

20          JUDGE SRINIVASAN:  Judge Millett.

21          JUDGE MILLETT:  Yes.  Good morning, Ms. Powell.

22          MS. POWELL:  Good morning.

23          JUDGE MILLETT:  Just a few questions for you.

24  Where in the district court did you raise the separation of

25  power arguments?

1          MS. POWELL:  It was a motion we filed in

2     opposition.  Amicus started because of an email sent to

3     chambers by the Robbins Russell firm on behalf of the self-

4     described Watergate prosecutors in which they copied me

5     evidencing their intent to seek the --

6          JUDGE MILLETT:  I'm aware of that.  And so you say

7     your opposition to that amicus filing, which was before the

8     appointment of Mr. Gleason and before the briefing schedule

9     was issued and this whole process for a hearing was.  That

10    was your opposition to orders that the district court issued

11    later.

12         MS. POWELL:  Yes.  And we requested --

13         JUDGE MILLETT:  Okay.  Just to be clear.  So your

14    answer is that you --

15         MS. POWELL:  Yes.  I think it's around Docket

16    Number --

17         JUDGE MILLETT:  That's before the court even did

18    it.  Yes, no, I know.  That's the opposition to the

19    Watergate prosecutors.  But there was no Gleason, no

20    appointment yet of Mr. Gleason, correct?

21         MS. POWELL:  No.  He did not enter that order --

22         JUDGE MILLETT:  Yes, and there was no briefing --

23         MS. POWELL:  -- until after he filed the petition

24    for mandamus that he --

25         JUDGE MILLETT:  Right.

MR

1           MS. POWELL:  That he was going to do it.

2           JUDGE MILLETT:  Okay.  And then after the district

3 court issued that order appointing Mr. Gleason, where is

4 your objection raising the separation of powers concerns or

5 any concerns?  Where is your objection?

6           MS. POWELL:  Well, the separation of powers

7 objection --

8           JUDGE MILLETT:  In the district court?

9           MS. POWELL:  -- was already on file with respect

10 to --

11           JUDGE MILLETT:  No, no, no.  That was with a

12 different amicus.  Where is, because the argument here does

13 not mention once the brief about the Watergate prosecutors.

14 It's all about Mr. Gleason's appointment to take over the

15 prosecution, to inquire and scrutinize the Government's, Mr.

16 Gleason, to be clear, is arguing for this, to scrutinize the

17 governmental motives.  Where is your opposition to the

18 appointment of Mr. Gleason in the district court?

19           MS. POWELL:  Our original opposition, I believe,

20 is at --

21           JUDGE MILLETT:  Before he was appointed.

22           MS. POWELL:  -- docket numbers 201 and 203.

23           JUDGE MILLETT:  Okay, so after his appointment

24 you've never --

25           MS. POWELL:  And that opposed the appointment of

MR

1  any amicus --

2      JUDGE MILLETT:  I'm sorry.  This works a lot

3  better with one person --

4      MS. POWELL:  -- for the same reason --

5      JUDGE MILLETT:  This works a lot better if you'll

6  just let me get my questions, because sometimes I just need

7  a quick yes or no.  So I'm just clarifying.  You didn't do

8  any, you made no opposition, no objection to the appointment

9  of Mr. Gleason.  You're just referring back to arguments you

10  made to the Watergate amicus, sua sponte moving for amicus

11  in the case.  And in his minute order on May 19th setting

12  out this whole briefing schedule and amicus, the district

13  court said the following schedule should govern the

14  proceedings subject to a motion for reconsideration.  Did

15  you ever file a motion for reconsideration?

16      MS. POWELL:  No, Your Honor.  We had already filed

17  the petition --

18      JUDGE MILLETT:  You did not.  Okay.

19      MS. POWELL:  -- for writ of mandamus --

20      JUDGE MILLETT:  Okay.

21      MS. POWELL:  -- because that's what exists.

22  That's the remedy for a usurpation of power.

23      JUDGE MILLETT:  Okay.  I thought the mandamus was

24  filed after that.  Our docket shows 5-21, and this order was

25  issued 5-19.  Am I wrong on that --

MR

1           MS. POWELL:  We filed the mandamus on --

2           JUDGE MILLETT:  -- or is the docket wrong?

3           MS. POWELL:  -- on, I think there's a mistake in

4   the order of the docket entry.

5           JUDGE MILLETT:  Okay.

6           MS. POWELL:  That's when Judge Sullivan was asked

7   to respond to it, but we had filed on the 19th.

8           JUDGE MILLETT:  So you never did the motion for

9   reconsideration.  Okay.

10          MS. POWELL:  No.

11          JUDGE MILLETT:  You mentioned --

12          MS. POWELL:  That's the purpose of mandamus.

13          JUDGE MILLETT:  Yes, okay.  Sure.  You mentioned

14  that, in a response to one of my colleagues, that the

15  district court could have brought the Government and all the

16  attorneys in, obviously, for a hearing and could have pushed

17  them a bit, I think was your phraseology, as in the Stevens

18  case.  Can you elaborate on how much pushing the district

19  court is allowed to do?

20          MS. POWELL:  Not very much.  He cannot inquire

21  into the deliberation --

22          JUDGE MILLETT:  Well what was done in the Stevens

23  case is okay.

24          MS. POWELL:  -- or the decision-making that --

25          JUDGE MILLETT:  Your pushing in the Stevens case

MR

1  was okay.  Tell me exactly what pushing was okay.

2          MS. POWELL:  He asked the Government if the

3  material that had been withheld from Senator Stevens was

4  Brady material.  And they kind of, they were a little wishy-

5  washy on that.  And then they admitted it was Giglio.  And

6  that was the virtual extent of it.

7          JUDGE MILLETT:  Okay.  And this case, a large

8  portion of the Government's explanation for its motion to

9  dismiss is the discovery of new material that would qualify

10  as Brady material, correct?

11          MS. POWELL:  That's correct.

12          JUDGE MILLETT:  Okay.  Another question is, you've

13  mentioned that courts cannot appoint an amicus to argue

14  against a defendant's interests in a case in which the

15  Government has sided with the defendant.  Correct?  Okay, so

16  there's just too much, right, once the Government's agreed

17  with it (indiscernible).

18          MS. POWELL:  Well -- at the district court level,

19  the rules have no provisions for the appointment of amicus

20  in a criminal case.

21          JUDGE MILLETT:  Is there a rule against it?

22          MS. POWELL:  No, but by the virtue of the fact --

23          JUDGE MILLETT:  Okay.

24          MS. POWELL:  -- there is a civil rule --

25          JUDGE MILLETT:  Is there --

MR

1          MS. POWELL:  -- in the district court and there's

2     not one in the criminal court.

3          JUDGE MILLETT:  Is there a Supreme Court rule that

4     says they can appoint amici in criminal cases to argue

5     against the interests of a criminal defendant when the

6     Government has aligned with him?

7          MS. POWELL:  The Supreme Court and appellate

8     courts routinely appoint amici for various purposes.

9          JUDGE MILLETT:  Is there a rule in the Supreme

10    Court saying that they can do that, and including, as you're

11    talking about, in a criminal case to align against a

12    criminal defendant?  Or is there a rule saying they can or

13    can't?

14         MS. POWELL:  I do not know.

15         JUDGE MILLETT:  Okay.  But they have done it.  The

16    Supreme Court's done it.

17         MS. POWELL:  The Supreme Court appoints amici

18    whenever it wants to.

19         JUDGE MILLETT:  Right, okay.  Just trying to

20    clarify.  One last quick question for you.  You talked about

21    the role of a court and 48(a), and one thing it can do is

22    obviously prevent harassment of a defendant.  If this had

23    been a motion to dismiss without prejudice or something, the

24    district court could have insisted that it be with prejudice

25    or at least examine that question with the Government.

MR

 1   Correct?

 2           MS. POWELL:  Correct.  That's Rinaldi and Judge

 3   Sullivan's decision --

 4           JUDGE MILLETT:  I think you agreed with, I think

 5   you agree with Judge, I think it was Judge Griffith, that

 6   this is not a purely ministerial process.  Can courts use

 7   48(a) to protect their own processes to ensure that

 8   prosecutors are not abusing and manipulating the court

 9   process?

10           MS. POWELL:  No, Your Honor, it cannot.

11           JUDGE MILLETT:  It cannot.

12           MS. POWELL:  48(a) is not for that purpose.

13           JUDGE MILLETT:  Okay, all right.  Thank you.  I'm

14   finished.

15           JUDGE SRINIVASAN:  Thank you.  Judge Pillard.

16           JUDGE PILLARD:  Good morning, Ms. Powell.

17           MS. POWELL:  Good morning. One decision that

18   seems, I think it's the only decision I've been able to find

19   that deals with the question of whether mandamus is

20   appropriate before a district judge has even had an

21   opportunity to rule on a Rule 48 motion is the Third

22   Circuit's decision In re: Richards, Judge Becker's opinion.

23   And there, the Third Circuit denied mandamus because the

24   trial court had not even had a hearing on the Rule 48(a)

25   motion.  We haven't decided this issue in our circuit, but

MR

1  Richards suggests that there is no clear and indisputable

2  right against briefing and arguments on a Rule 48(a) motion.

3  (Indiscernible.)

4        MS. POWELL:  Well, it's already been briefed.  I'm

5  sorry, Your Honor.  Go ahead.

6        JUDGE PILLARD:  Right.  You are opposing the

7  briefing, adversary briefing and argument on the motion.

8  That's why you sought mandamus.  Am I right?

9        MS. POWELL:  Well, yes.  That's because there is

10  no adversary because the parties have consented.  General

11  Flynn and the Government have agreed to the motion to

12  dismiss.  There's no longer a case or controversy for the

13  district court to adjudicate.  And 48(a) and even the In re:

14  Richards case, which is a 20-year-old case out of the Third

15  Circuit from a territorial court in the Virgin Islands in

16  which the Government just made a mere statement of it's in

17  the interest of justice.  And the Court said we need a

18  little more sunlight on the reasons for that.  That's the

19  only --

20        JUDGE PILLARD:  Right.  And Richards, you do try

21  to distinguish Richards on the ground that there was only a

22  conclusory interest in Footnote 3 of your panel briefing.

23  But in Richards, the prosecution's joint motion to dismiss

24  had supporting affidavits from potential witnesses saying

25  they wouldn't testify.  The court there was entitled to read

1    the briefs, listen to argument, consider contrary arguments

2    before granting leave.  Do you disagree with that?  Do you

3    think that they wrongly decided that case?

4              MS. POWELL:  Given the particular circumstances of

5    that case and a witness, a key witness who recanted, if I

6    recall, in a sexual misconduct case that was extremely high-

7    profile now 20 years ago, there's been a substantial

8    development in the law, not the least of which --

9              JUDGE PILLARD:  Do you disagree with Richards

10   on --

11             MS. POWELL:  (Indiscernible) improper service.

12             JUDGE PILLARD:  Ms. Powell, do you disagree with

13   Richards on its own terms in that case?  Is the only

14   distinction that you're trying to draw appointment of

15   amicus, that there it was premature.  The Third Circuit held

16   it was premature.  Mandamus was inappropriate because the

17   Court could listen to argument and look at the motion and

18   supporting affidavits and consider whether to grant leave.

19   You don't have any quibble with that, do you?

20             MS. POWELL:  As of 20 years ago, no.  As of now,

21   yes.

22             JUDGE PILLARD:  So under the law as it currently

23   stands, you think that they should have granted mandamus in

24   Richards, and that's why?

25             MS. POWELL:  If Richards were now, then yes.

MR

1          JUDGE PILLARD:  Yes.  Why?

2          MS. POWELL:  If Richards were now, then yes.

3          JUDGE PILLARD:  Why?

4          MS. POWELL:  I would say because there is a 100-

5   page motion to dismiss here with 80 pages of exculpatory

6   evidence that wasn't produced to the defendant.  The fact

7   that Brady evidence was suppressed alone is sufficient to

8   vacate the guilty plea.  We also have other motions on file

9   with multiple reasons why the plea is not valid.  And --

10          JUDGE PILLARD:  I mean your --

11          MS. POWELL:  The bottom line is that a 48(a)

12  motion leaves no discretion in the district court even more

13  than an ex parte U.S.  The Court said that the discretion to

14  grant or issue a bond or a bench warrant is not the

15  discretion to deny it.

16          JUDGE PILLARD:  But we don't know whether this

17  district judge was going to exercise his discretion to grant

18  or deny this motion.  We would assume, given the precedent

19  that we've read and that you've read, that he would grant

20  it.  That would be the assumption, right?

21          MS. POWELL:  We know that the process he has

22  established by --

23          JUDGE PILLARD:  So it's the process.  It's the

24  process that you're objecting to because we don't have a

25  merits ruling, right?

1                    MS. POWELL:  Well, we have a ruling on --

2                    JUDGE PILLARD:  The process that you're objecting

3    to.

4                    MS. POWELL:  -- appointing the amicus, it would

5    have to be vacated at a minimum.  And then it would have to

6    be remanded to a different district judge because of all of

7    his actions that now amount to the egregious appearance of

8    bias that prohibit him --

9                    JUDGE PILLARD:  But the reason --

10                   MS. POWELL:  -- from ruling on this case any

11   further.

12                   JUDGE PILLARD:  Excuse me, Ms. Powell.  So, Judge

13   Sullivan showed bias by appointing an amicus, but Gleason

14   wasn't being chosen as the judge.  He was invited to argue

15   one side in an adversary system.  An adversary system is so

16   that we get the law right.  It's the core of any judge's job

17   to assess cases and deal with the strongest arguments that

18   can be made on both sides.  And your position is no, he

19   can't hear both sides on the law.  He has to drop the case

20   like a hot potato without an adversary pitching an argument.

21   That's your position.

22                   MS. POWELL:  There is no provision for amicus in a

23   criminal case in the federal district court, and certainly

24   not to take the position of the Government when it has

25   decided to drop the case.  When the Government signs off,

MR

1   the case is over.  The Article III branch cannot make the

2   Article --

3            JUDGE PILLARD:  Where --

4            MS. POWELL:  -- (indiscernible) branch prosecute a

5   case.

6            JUDGE PILLARD:  So I think that your position is,

7   correct me if I'm wrong, that to the extent that Rule 48(a)

8   requires leave of court for anything other than the

9   defendant's interests in a with prejudice dismissal is at

10  stake, that every over application for leave of court

11  requirement is unconstitutional under separation of powers.

12  Is that a fair view of your position?

13           MS. POWELL:  Yes.

14           JUDGE PILLARD:  Okay.  No further questions.

15           MS. POWELL:  It is a very limited --

16           JUDGE SRINIVASAN:  Thank you.  Thank you.

17           MS. POWELL:  -- review.

18           JUDGE SRINIVASAN:  Judge Wilkins.

19           JUDGE WILKINS:  Yes.  Good morning, Ms. Powell.

20           MS. POWELL:  Good morning.

21           JUDGE WILKINS:  I have a hypothetical.  So suppose

22  in the future in a different administration you have a 48(a)

23  motion that was filed and that was unopposed and the

24  prosecution said, you know, it's because of this exculpatory

25  evidence that we're moving to dismiss.  And a Catholic

1    University law professor asks the appointed amicus because a

2    group of nuns and bishops happened to witness the prosecutor

3    taking a briefcase full of cash from the defendant in the

4    case, and they made a videotape using their smart phones of

5    the transaction.  And they presented that to him along with

6    sworn declarations.  And so he wants to file an amicus brief

7    and attach that evidence.  Is that improper?

8              MS. POWELL:  Well, that would certainly be

9    improper behavior by the prosecutor and worthy of

10   prosecution itself by the Department of Justice.

11             JUDGE WILKINS:  Is appointment of amicus, that

12   professor as amicus improper?

13             MS. POWELL:  I believe it would be if the

14   Government had already filed a 48(a) motion and had decided

15   through its appropriate channels to drop the case.  That's a

16   decision that has to go all the way up to the Attorney

17   General and the Solicitor General, I believe, for a 48(a)

18   motion to be filed.  And whatever the considerations that

19   were that go into that are, belong to the Department of

20   Justice, not the Article III judiciary, although it could

21   certainly make a criminal referral, and should.

22             JUDGE WILKINS:  Well, so if the district judge

23   said, okay, I'm not going to appoint amicus because the

24   defendant has objected to that, but I want to hold a

25   hearing, and I'm going to ask that those witnesses come to

MR

1   the hearing and bring their video footage of this alleged

2   bribe.  The district judge, because it's an unopposed 48(a)

3   motion, cannot hold that hearing?

4           MS. POWELL:  He cannot go behind the prosecutor's

5   decisions to dismiss a case.  And he certainly can't on the

6   facts of this case.  I mean, one of the reasons I think --

7           JUDGE WILKINS:  I'm asking you about my

8   hypothetical, that it would be improper for the district

9   judge to hold a hearing under the facts of my hypothetical.

10          MS. POWELL:  I believe under the facts of your

11  hypothetical, what the district judge would have to do is

12  refer the matter to the Department of Justice for

13  prosecution.

14          JUDGE WILKINS:  All.  I have no further questions.

15  Thank you.

16          JUDGE SRINIVASAN:  Thank you.  Judge Rao.

17          JUDGE RAO:  Thank you.  Good morning, Ms. Powell.

18  So, I guess one of the questions that my colleagues seem to

19  be focusing on, and I want to maybe just hear from you again

20  on this is, you know, what is the, what is the most that a

21  district court judge can do then considering leave of court

22  under Rule 48.  It seems that you think he can hold a

23  hearing.  Is there anything else that he can do?

24          MS. POWELL:  Well, according to all the existing

25  authority, it's described his role as extremely limited,

MR

1   virtually no role.  It's not -- there's just not much he can

2   do in the face of the Government's decision not to prosecute

3   a case because the law is clear that it's up to them to

4   weigh all the myriad factors that go into deciding whether

5   something should be prosecuted, including the allocation of

6   existing resources.

7           I mean, it can be something as simple as -- in

8   fact, in one of the cases, just the fact they didn't agree

9   with the sentence was grounds enough to grant a mandamus.  I

10  think that was the Hamm (phonetic sp.) case, the en banc

11  Sixth Circuit case.  So it's up to the prosecutor to weigh

12  all of the factors that go into deciding whether a case

13  should continue or be prosecuted at all.  And once it makes

14  that decision, the Article III branch, it's simply to

15  protect the defendant from being harassed further.

16          JUDGE RAO:  And, okay.  So to what extent would

17  reassignment, if the Court were not to grant writ of

18  mandamus, to what extent would reassignment to a different

19  judge cure the problems that you've identified?

20          MS. POWELL:  Well, that would certainly cure the

21  bias and recusal-slash-disqualification problem.  And it

22  would also vacate the appointment of the amicus according to

23  this Court's decision in Al-Nashiri because of the fact that

24  the decision had been made by a judge who was disqualified.

25  And that would have to be dropped, or, it should probably be

MR

1   made clear, though, that the amicus appointment has to be

2   vacated because that's a severe Article II intrusion and

3   also tramples on the defendant's rights to not have the

4   world piling on against him when the Government's decided to

5   drop the case.  That would go a long way toward solving the

6   problem.

7           JUDGE RAO:  Okay, thank you.  No further

8   questions.

9           JUDGE SRINIVASAN:  Thank you.  Ms. Powell, I just

10  have one question for you as a follow-up.  Suppose again

11  that we're dealing only with the 48(a) question and the

12  issue is whether mandamus should be granted to require the

13  district judge to grant the 48(a) motion.  And suppose also

14  just for purposes of argument that I agree with everything

15  you have said about what Fokker means.  If the district

16  judge says, if the district judge receives the 48(a) motion

17  filed by the Government requesting dismissal and the

18  district judge says I want to schedule a hearing for two

19  weeks.  I just want to make sure I understand the

20  Government's reasons for requesting a dismissal, at that

21  point is it, would you be entitled to mandamus relief

22  because the district judge has scheduled a hearing for the

23  stated purpose of understanding the Government's reasons for

24  requesting a dismissal?

25          MS. POWELL:  No, sir.

MR

1              JUDGE SRINIVASAN:  Okay, thank you.  Judge

2    Henderson.

3              JUDGE HENDERSON:  Yes.  I'd like to just ask you a

4    rhetorical question.  Are you familiar with, I believe it

5    was Ezra Pound who said some circumstantial evidence is so

6    strong as when you find a fish in the milk.  Do you think

7    that applies in this case?

8              MS. POWELL:  I think it might, Your Honor.

9              JUDGE HENDERSON:  Thank you.  That's all I have.

10             JUDGE SRINIVASAN:  Judge Rogers.

11             JUDGE ROGERS:  No questions.

12             JUDGE SRINIVASAN:  Thank you.  Judge Tatel.

13             JUDGE TATEL:  No questions.

14             JUDGE SRINIVASAN:  Thank you.  Judge Garland.

15             JUDGE GARLAND:  Yes, thank you.  Good morning

16   again, Ms. Powell.  One thing I want to do is clarify a

17   record point.  I had asked you whether the district court

18   had actually decided against General Flynn's motion to

19   dismiss, and you said that the panel had been in error, not

20   the panel's fault but your own, and that you found that the

21   district court did decide against.  I have the docket sheet

22   in front of me. I don't see a ruling on it.  I assume what

23   motion you're talking about is your docket number 202.  But

24   I don't see any denial of that motion.  Could you help me

25   with where that is?

MR

1          MS. POWELL:  He did not enter a docket entry for

2   denying that.  It was -- let's see.  And what's missing as

3   docket entry number 201, we made a sealed filing objecting

4   to the process discussed in the emails that was sent to

5   chambers by the Watergate prosecutors.  And then at docket

6   204, we filed a motion to strike and opposition of notice of

7   intent to file motion for leave to file amicus brief on the

8   record with some modifications to alleviate the problem that

9   was in the sealed filing.  And then he denied, and it was in

10  that motion that we also requested that the motion to

11  dismiss be granted.  Well, he denied both of those, the

12  sealed and the 204 the next morning.

13          JUDGE GARLAND:  So you're saying that the 204

14  included a motion to dismiss.  His ruling on 204 says he

15  denied the motion to strike and opposition to notice of

16  intent to file motion for leave to file amicus.

17          MS. POWELL:  204 included a request at the end of

18  the motion that he grant the Government's motion to dismiss.

19          JUDGE GARLAND:  Well, he denied this motion as

20  moot because he had denied the additional amicus, isn't that

21  right?  Are there some words where he said I deny the motion

22  to dismiss?  I just don't find that.

23          MS. POWELL:  No.  No, I'm sorry.  No.  There's not

24  a separate order in which he denies the motion to dismiss.

25  No, sir.

MR

1          JUDGE GARLAND:  All right.  And two other quick --

2          MS. POWELL:  I misspoke or was less than clear if

3   I implied that.  I apologize.

4          JUDGE GARLAND:  I might have misheard, so, in

5   which case I would apologize.  On the bias question, so the

6   panel majority found that the district court's conduct did

7   not indicate a clear inability to decide this case fairly.

8   Do you want us to reverse the district court, the panel's

9   finding on bias at that point or does your claim only arise

10  out of the filing of the petition for rehearing en banc, the

11  bias claim?

12         MS. POWELL:  Our request now goes back and

13  includes the comments that the district judge made at

14  sentencing or what was supposed to have been the sentencing

15  that would indicate bias, but also carries forward more into

16  the facts that the panel did not consider.  That was what

17  they focused on, the statements that were made in the course

18  of the litigation, which as we know are usually excused.

19  But in this case, there's been a lot more since then, and

20  that includes receiving the email from the Watergate

21  prosecutors and agreeing to appoint the amicus at their

22  suggestion is an exorable determination to go forward with

23  these intrusive proceedings, including denying our motions

24  objecting to any amicus and raising the separation of powers

25  issue.

MR

1          JUDGE GARLAND:  Okay.

2          MS. POWELL:  So --

3          JUDGE GARLAND:  Hold for just one minute.  I'm not

4    clear.  Are you saying that you didn't argue these points to

5    the panel, and therefore they didn't consider it, or that

6    these events occurred after the panel concluded that there

7    was not the kind of bias that would disqualify a judge?

8    Which is it?

9          MS. POWELL:  I think it may be a little bit of

10   both.  The panel definitely considered these statements made

11   at sentencing.  It's unclear to what extent they considered

12   any other factor because the way the opinion reads is --

13         JUDGE GARLAND:  Did you argue the other factors?

14         MS. POWELL:  I don't believe we actually even had

15   time to argue the disqualification issue itself in the

16   original panel hearing.  But the point now is definitely

17   that Judge Sullivan failed to follow this Court's mandamus

18   for 15 days and then filed his own, unprecedented rehearing

19   petition.  That reveals he's so invested in this litigation

20   that there are no circumstances under which he can dispel

21   the appearance of bias from that.

22         JUDGE GARLAND:  Okay --

23         MS. POWELL:  He inserted himself as if he were a

24   party.

25         JUDGE GARLAND:  Thank you.  Appreciate the

MR

1  answers.

2          MS. POWELL:  Thank you.

3          JUDGE SRINIVASAN:  Thank you.  Thank you.  Judge

4  Griffith.

5          JUDGE GRIFFITH:  Yes.  Ms. Powell, I just have a

6  question or two.  Throughout the argument this morning,

7  you've been stressing that Rule 48(a) has as its primary

8  purpose the protection of defendants against vexatious

9  prosecutions.  And I can understand your emphasis on that.

10  But that's not the sole purpose of 48(a), right?  And we

11  know something about the history of it.  And the history of

12  48(a) as I understand it, and I'm asking you to correct me

13  if I'm wrong, is that it was also created by the Supreme

14  Court to examine cases of favoritism for politically

15  powerful defendants.  And that seems to be of the wheelhouse

16  of what is going on here.  Is that not one of the purposes

17  of 48(a)?

18          MS. POWELL:  Not according to the Supreme Court.

19  It certainly never addressed that.  Rinaldi makes clear that

20  48(a) is to protect the defendant from harassment.  And

21  there's no other --

22          JUDGE GRIFFITH:  Well, there's no question that's

23  one of the purposes of it, but that's not the sole purpose

24  of it, is it?

25          MS. POWELL:  As best I can tell from the law right

MR

1   now, Your Honor, that's the sole purpose that it's been

2   given any definition whatsoever by any of the cases because

3   they --

4           JUDGE GRIFFITH:  We have a record of the history

5   of the creation of 48(a), and I thought that one of the

6   purposes was to allow a district judge to examine favoritism

7   for politically powerful defendants.

8           MS. POWELL:  Well, I think courts have --

9           JUDGE GRIFFITH:  Do you disagree with that

10  history?

11          MS. POWELL:  Well, I mean, the history is whatever

12  the history is.  But the courts have not interpreted it that

13  way because, as Judge Posner noted in In re: United States,

14  there's no 48(a) motion that's been denied.  Courts --

15          JUDGE GRIFFITH:  So just to be clear, have courts

16  rejected that reasoning, or they just haven't addressed it?

17          MS. POWELL:  To my knowledge, it has not been

18  addressed.

19          JUDGE GRIFFITH:  Well, that's different from

20  rejecting it, right?

21          MS. POWELL:  Yes.

22          JUDGE GRIFFITH:  Okay.  Thank you very much.

23          JUDGE SRINIVASAN:  Thank you.  Judge Millett.

24          JUDGE MILLETT:  Yes, just a couple questions.

25  Just to follow up on Judge Garland's question about your

MR

1   document 204 filing, the opposition to the Watergate amicus.

2   And you had a proposed order that went with that motion,

3   commonplace.  And that proposed order doesn't mention

4   granting the Government's motion to dismiss, does it?

5             MS. POWELL:  No, because --

6             JUDGE MILLETT:  No, it does not.

7             MS. POWELL:  -- there was an order attached to the

8   Government's motion that --

9             JUDGE MILLETT:  I'm just asking about your brief.

10            MS. POWELL:  Right.

11            JUDGE MILLETT:  I'm just asking about arguments

12   you made, so.

13            MS. POWELL:  Yes.

14            JUDGE MILLETT:  And then, of course there was one

15   attached to the Government's motion to dismiss.  You just

16   don't even ask for that in the proposed order, that relief

17   in your proposed order.  And the document itself only talks

18   about the Watergate brief and talks, and specifically says

19   they want to file an uninvited amicus brief on page 2.  Is

20   that correct?

21            MS. POWELL:  I believe that's correct.

22            JUDGE MILLETT:  Okay.  And then, I also have a

23   question following up on Judge Wilkins's hypothetical about

24   the nuns or I guess the nuns or priests that witnessed the

25   bribery.  Could the district court in a case like that where

MR

1   the Government said its motion to dismiss was based on <u>Brady</u>

2   evidence, and then there's information called to the court's

3   attention that it may have been based on bribery, can the

4   district court when it calls the parties in to discuss the

5   Rule 48(a) motion, does it have the right to press the

6   Government to see if it was lied to?

7           MS. POWELL:  I think the recourse for the district

8   court in that instance --

9           JUDGE MILLETT:  I don't want to hear about

10  referring someone for prosecution.  I'm asking you a yes or

11  no question.  Can the district court ask the Government

12  referencing this information that's come to its attention

13  whether it was lied to, whether the Court was lied to in a

14  filing made to the district court?

15          MS. POWELL:  Yes, I would think it could do that.

16          JUDGE MILLETT:  Can they ask -- yes.  All right.

17  That's all my questions.  Thank you.

18          JUDGE SRINIVASAN:  Thank you.  Judge Pillard.

19          JUDGE PILLARD:  Ms. Powell, on the question

20  whether Rule 48(a) protects anything other than a

21  defendant's interest against harassment and just probing

22  further on Judge Griffith's question about whether it's

23  actually open what Rule 48(a) protects, including, for

24  example, the abuse of prosecutorial power to favor

25  defendants that the Government wants to protect, the Supreme

MR

1  Court in Rinaldi, and I think it clarifies as Footnote 15,

2  cites Ammidown and cites Cowan, and really leaves open the

3  question whether Rule 48(a) speaks more broadly and whether

4  a court can deny a consented-to motion to dismiss if it

5  thought the motion was prompted by consideration clearly

6  contrary to the public interest.  And there it's crystal

7  clear that the court means other than the defendant's

8  protection against harassment.  So you may be right that

9  there's not a case allowing a court to deny a Rule 48(a)

10  motion based on these other public interest concerns, but it

11  isn't a clear and indisputable right against such inquiry,

12  is it, in light of Rinaldi, in light of Ammidown and

13  references to Cowan?  There's not a clear and indisputable

14  right against application of Rule 48(a) in the circumstance

15  in which a motion to vacate a plea has been prompted by

16  improper considerations, bribery, whatever.

17          MS. POWELL:  Well, there's a clear and

18  indisputable right to the 48(a) when the Government decides

19  to drop the prosecution because that's the only outcome that

20  can rise from that.  Now whether --

21          JUDGE PILLARD:  And that's really a constitutional

22  separation of powers argument rather than an interpretation

23  of the intention of Rule 48(a)?

24          MS. POWELL:  It is.  It has to be read together.

25          JUDGE PILLARD:  Rule 48(a) itself in its history

MR

1    may -- right.  Rule 48(a) in its history, under your view,

2    may indeed invite that kind of superintendence by a district

3    court.  But it's your view that if it does,

4    unconstitutional.

5              MS. POWELL:  Exactly.

6              JUDGE PILLARD:  Is that right?

7              MS. POWELL:  Yes.

8              JUDGE PILLARD:  Thank you.  No further questions.

9              JUDGE SRINIVASAN:  Thank you.  Judge Wilkins.

10             JUDGE WILKINS:  Yes.  Just following up on my

11   earlier hypothetical just so that we're clear.  If in that

12   situation the district judge said I want to have a hearing

13   on the 48(a) motion, which is unopposed, and I want to have

14   the nuns and priests testify and view their videotape

15   showing these alleged handing over of cash from the

16   defendant to the prosecutor, you would say that the judge

17   has no authority under Rule 48(a) to hold a hearing and

18   proceed in that fashion?

19             MS. POWELL:  I would say he does not have that

20   authority under Rule 48(a), that he would need to refer it

21   for prosecution by the Department of Justice.

22             JUDGE WILKINS:  And you base that on Fokker?

23             MS. POWELL:  Fokker, separation of powers,

24   Rinaldi, every 48(a) case that's ever been decided.

25             JUDGE WILKINS:  Okay, thank you.

MR

1          JUDGE SRINIVASAN:  Thank you.  Judge Rao.

2          JUDGE RAO:  No further questions.

3          JUDGE SRINIVASAN:  Thank you.  Thank you for your

4    argument, Ms. Powell.  We'll give you a bit of time for

5    rebuttal.  We'll now hear from the acting Solicitor General

6    on behalf of the United States, Mr. Wall.

7             ORAL ARGUMENT OF JEFFREY B. WALL, ESQ.

8         ON BEHALF OF THE U.S. DEPARTMENT OF JUSTICE

9          MR. WALL:  Good morning, Your Honor, and may it

10   please the Court.  In our constitutional system, a defendant

11   may not be convicted of an ordinary crime without the

12   concurrence of all three branches.  When the Executive

13   Branch no longer wishes to prosecute and the defendant

14   agrees, the criminal case should be at an end.  That is why

15   Fokker says at least seven times that the decision whether

16   to dismiss charges is a core Executive duty that is not

17   suited to judicial review.  Under Articles II and III and

18   Fokker, the Government's unopposed Rule 48 motion must be

19   granted.

20             If we're clearly right about that, then there's no

21   adequate alternative to mandamus.  The district judge's

22   rehearing brief makes clear what will happen next.

23   Ammidown's public interest standard remains good law, he

24   says, and assessing whether the motion serves, quote,

25   legitimate prosecutorial interests, end quote, requires a,

1    quote, developed factual record, end quote, based on

2    investigations in the, quote, the facts and circumstances,

3    unquote of the dismissal.  The district court thus plans to

4    conduct an intrusive inquiry into the Executive's dismissal

5    decision which will result in every one of the harms

6    detailed in Fokker, regardless of whether the court

7    eventually grants the motion.

8              The district judge says this Court should ignore

9    those harms.  But the Government is a party that filed a

10   brief at the Court's invitation urging mandamus.  Under

11   Cobell (phonetic sp.) and Exxon Mobile, it's the fact and

12   substance of that filing that matters, not its caption.

13   Even apart from the Government under cases like Bond,

14   General Flynn can invoke the separation of powers harms in

15   defense of his own, individual liberty.  And of course,

16   courts routinely consider third party interests in assessing

17   equitable relief, so it would be patently strange if this

18   Court could not consider the harms to the Government, a

19   party that expressly supported mandamus.

20             In the end, the criminal charge against petitioner

21   must be dismissed.  The only question is how much further a

22   harmful and unnecessary process will be allowed to play out.

23   The answer in our constitutional scheme should be no

24   further.  Thank you.

25             JUDGE SRINIVASAN:  Thank you.  Mr. Wall, can I ask

MR

1  you the following question.  So in your opening, you focused

2  on the brief that was filed by Judge Sullivan at the

3  mandamus stage before our Court.  If you take out of the

4  field of vision that brief, then would you still say that

5  based on what we know, mandamus needs to be granted and

6  there's no adequate alternative means for relief with

7  respect to the dismissal of the 48(a) motion?

8          MR. WALL:  I would, Chief Judge Srinivasan,

9  because in some sense I think the panel briefs were more

10 concerning than the rehearing petition because in the panel

11 briefs, Judge Sullivan is explicit that he wanted, quote,

12 affidavits and declarations on both Rule 48 and contempt.

13 And so it was --

14         JUDGE SRINIVASAN:  In the panel brief, sorry.  No,

15 but that's still a post-mandamus petition.  I meant to

16 include that, so I may not have been clear.  I'm saying if

17 you take out of the field of vision what Judge Sullivan's

18 briefing has said before this Court, either at the panel

19 stage or at the en banc stage, would you still say that we

20 know enough such that mandamus should be granted on the

21 theory that there's still no other adequate alternative

22 means?

23         MR. WALL:  I would, Your Honor.  I want to both

24 answer the question and I don't want to affect the premise

25 too much, but I do think the very purpose of ordering the

1    court to respond to the mandamus petition was to understand

2    the basis for the court's actions.  So I'm not sure how this

3    Court can discount the district court's explanation for what

4    it wants to do.  But even if you looked only at what had

5    gone on in front of the district court, I do think we'd be

6    here saying the same thing because we'd be implicating the

7    separation of powers in the same way.  The district court

8    has set up a process to probe into the Government's motives

9    for exercising its prosecutorial discretion.  We think it's

10   clear both under Fokker and the constitutional backdrop on

11   which Fokker relied that that's precisely what a district

12   court may not do in adjudicating a Rule 48(a) motion.

13           JUDGE SRINIVASAN:  And in Fokker itself, the

14   district judge held a bunch of proceedings before the denial

15   of the deferred prosecution agreement.  And would you say

16   that in Fokker itself, those types of proceedings should

17   have never happened, and if a mandamus petition had been

18   filed, a mandamus should have been entered because the

19   district judge had telegraphed the kinds of questions he was

20   concerned with?

21           MR. WALL:  So I want to separate and talk about

22   the proceedings that went on before the court granted

23   mandamus and the proceedings that went on after.  Maybe I

24   misunderstand Fokker.  I did not think that there were very

25   substantial remand proceedings that went on in Fokker after

MR

1   the grant of mandamus.  If they --

2           JUDGE SRINIVASAN:  I mean before the grant of

3   mandamus.  I'm saying that before the petition for mandamus

4   was even filed --

5           MR. WALL:  Right.

6           JUDGE SRINIVASAN:  -- which was before the

7   deferred prosecution agreement was rejected, the district

8   judge scheduled a number of proceedings to ask about the

9   proposed deferred prosecution agreement.  Is it your view

10  that in Fokker, if a mandamus petition had been filed when

11  those proceedings were announced, before the district judge

12  entered a ruling on whether he was going to accept the

13  deferred prosecution agreement, that mandamus should have

14  been granted because the district judge had telegraphed

15  where he was going?

16          MR. WALL:  Yes.  And I think it would be harder

17  case.  It would be a little, it would be more like Richards

18  because you wouldn't have binding circuit precedent.  But

19  all of the reasoning in Fokker, Chief Judge Srinivasan,

20  suggests that it would have been impermissible, that the

21  decision to dismiss pending criminal charges is within the

22  can of prosecutorial discretion, and the district court

23  can't probe that, whether or not it's made a final decision.

24          This case is easier because now that we have

25  Fokker on the books, if a district court tomorrow said, well

MR

1  look, maybe I am required to approve the DPA under Fokker,

2  but I still want to have a hearing to cast light on what I

3  think may have been improper conduct by a United States

4  Attorney, I would be very surprised if that were not

5  mandamus-able in this circuit now in light of Fokker.  So

6  I'll grant (indiscernible).

7        JUDGE SRINIVASAN:  Last question along these

8  lines.  Thank you.  Last question along these lines, which

9  is if the Government has filed the exact same 48(a) motion

10  that is filed, and the district judge had said thanks for

11  the submission.  I want to make sure I understand the

12  Government's reasons further.  I'll schedule a hearing in X

13  number of weeks, would there be grants for mandamus on the

14  theory that there's nothing for the district judge to do

15  other than grant the dismissal?

16        MR. WALL:  Well, I'm not certain about that, Your

17  Honor.  If the district court said I just want to understand

18  the reasons in your motion.  There's ambiguity.  I'm not, I

19  don't understand why it is you want to dismiss, I'm not

20  saying that mandamus would rely for that.  But that isn't

21  what the district court is doing here, obviously.  This is

22  meant to probe the Executive's reasons, and that's exactly

23  what Fokker takes off the table.

24        JUDGE SRINIVASAN:  Thank you, Mr. Wall.  Judge

25  Henderson.

MR

1          JUDGE HENDERSON:  Yes.  Let me put a correction on

2   the record so I don't get any aftermath on it.  My clerks

3   have informed me that it was Henry David Thoreau who made

4   the remark about circumstantial evidence.  Mr. Wall, we

5   asked you to be prepared to address the effect, if any, of

6   455(a) and 455(b)(5)(i).  Are you waiting to do that in

7   response to questions?  Have you waived it?  What's your

8   position?

9          MR. WALL:  No, I'm happy to address it now, Judge

10  Henderson.  The Government's view, as you know, that Judge

11  Sullivan is not a party, under the rules, entitled to file a

12  petition.  We would say the same thing under 455.  I don't

13  see a reason to differentiate the rules from statute, so I

14  don't think there is a (b)(5)(i) problem.  Though for those

15  who think that Judge Sullivan is entitled to file under the

16  rules, I don't understand why it isn't also a statutory

17  problem because, of course, Rule 55(d) said that if you're a

18  party at any state of the proceedings, then that I think

19  would include the mandamus proceeding.  But we aren't urging

20  that, though I'm not sure what Judge Sullivan's counsel will

21  say about that.

22          I do think it's a harder question on 455(a).  As

23  you know, we did not agree with General Flynn before the

24  panel that disqualification was warranted even though what

25  had happened in the district court to that point was unfair

MR

1   and irregular.  I do think we're in a bit of a different

2   posture now because the district court has filed a petition

3   that is not permitted under the rules, which suggests, as

4   Ms. Powell said, a level of investment in the proceedings

5   that is problematic and has gone further than the district

6   court did in the panel briefing to decide the legal standard

7   and has now definitively said that, and this is pages 14 to

8   16 of the petition, that Fokker has nothing to say about the

9   separation of powers considerations on these facts.  That's

10  page 14.  And that Ammidown remains good law.  That's page

11  16.  And that the district court can undertake its own,

12  independent examination of the public interest.  That's

13  Footnote 3.

14         And, I'm sorry, I think now the district court has

15  prejudged part of what I understood the proceedings below to

16  be designed to accomplish.  So I do think that we've

17  reluctantly come to the view that there is now at least a

18  question about appearances of impartiality.

19         JUDGE HENDERSON:  Thank you.

20         JUDGE SRINIVASAN:  Thank you.  Judge Rogers.

21         JUDGE ROGERS:  Well, I suppose, Mr. Wall, is your

22  position that the filing by the district court in urging

23  that mandamus was in effect impermissible at this stage,

24  that that is the bias that would require reassignment?

25         MR. WALL:  No, Judge Rogers.  I'm not saying that

MR

1   it actually suggests that the district court is biased.  I

2   want to be clear about that.  We're not saying we think

3   there's an actual partiality problem, but I do think that --

4            JUDGE ROGERS:  (Indiscernible.)

5            MR. WALL:  Oh, but no, we do think that there is

6   an appearance problem from having filed a petition that, as

7   we read the rules, is not permitted, and the substance of

8   that petition, as I said, which goes, I think, an awfully

9   long way, if it doesn't cross the finish line, towards

10  saying what Rule 48, what the legal standard is.  I think

11  that brief essentially says that the district court does not

12  think Fokker sheds light on this.  It says nothing about the

13  separation of powers consideration on these facts and that

14  Ammidown is good law and it's going to conduct a public

15  interest examination.  And so I think the district court has

16  decided what the legal standard would be, and if the Court

17  is going to deny mandamus, I would hope that it would

18  provide some guidance to the district court on what we see

19  as its limited role under the Constitution and Fokker.

20           JUDGE ROGERS:  Now, I understand the argument

21  about the amendments to (indiscernible) but particularly the

22  Supreme Court (indiscernible) indicated the situation that

23  the district court may find itself in.  I didn't see any

24  suggestion that that would create an appearance of

25  partiality problem.

1            MR. WALL:  No, Judge Rogers.  I don't think that

2    somebody can create a recusal problem for a judge by filing

3    a mandamus petition.  And Rule 21, as you say, solves that

4    problem by allowing the Court of Appeals to invite the

5    district court to respond almost by way of an amicus.  It

6    specifically doesn't list the district court as a party.  I

7    think the problem here is that because the district court

8    has reached out despite those rules and filed a petition

9    without being invited to do so by the Court, it at least

10   raises a question about whether the district court is

11   invested in what should be its official authority to a point

12   where we have an appearance problem.  After all, I mean,

13   we've only been able to identify one en banc petition filed

14   by a district judge ever, and that was a situation where the

15   district court's personal reputation was really at issue

16   because of comments that the district judge had made

17   (indiscernible).  This is very different.  This is just

18   about the scope of the district judge's official authority.

19   It isn't the sort of thing that you would normally think

20   would trigger an en banc petition.

21           JUDGE ROGERS:  Well, I'm just trying to understand

22   the scope of your position here because the Supreme Court

23   cases (indiscernible) do not appear to have (indiscernible)

24   that.  And by saying the questions he wants to ask, as the

25   Chief Judge framed it, in order to understand the

MR

1  Government's motion, that that alone is sufficient?  In

2  other words, originally, all I was going to ask you about

3  was, you know, why should the Court consider harm to the

4  Government, to the Executive Branch when it never filed for

5  mandamus and it never filed any sort of interlocutory

6  appeal.  It just, as in Cobell, it has simply waited until

7  it was invited to comment.  And then I thought, well even

8  assuming the Court should consider the injuries to the

9  Executive.  At this point, why aren't the injuries just

10 speculative, or are you adopting Mr. Flynn's argument about

11 the process itself that signals the extraordinary actions by

12 the appellate court reassigning a case to another district

13 court judge is appropriate here.

14         MR. WALL:  Three quick points, Judge Rogers.

15 Again, I'm just responding to a question that the Court has

16 put to me about 455(a).  We do think that we're in uncharted

17 waters.  We think it raises a question.  But if the Court

18 disagrees with us on that, we think it is important if the

19 case goes back that this Court provides some guidance to the

20 district court on its role under Rule 48(a) and that it take

21 off the table some of this factual inquiry that the district

22 court seems to want to engage in.

23         My second point is, I just want to be clear in my

24 answer related to the Chief Judge.  There's a difference

25 between trying to understand the motion and the kinds of

MR

1  questions that the district court raised in its panel briefs

2  why we didn't charge with respect to the Turkey statements,

3  why we have handled related prosecutions the way that we

4  have, why certain attorneys signed the briefs and others,

5  not the probing behind the motion.  It's not an attempt to

6  understand the motion.  And so my third point, Judge Rogers,

7  is there's nothing speculative about the injury to the

8  separation of powers from that.  No matter how we ultimately

9  answer those questions in the district court, and no matter

10 how it ultimately disposes of the motion, probing the

11 Executive Branch in that way is what Wayte and Fokker

12 quoting Wayte, says is constitutionally impermissible.

13 Those aren't speculative injuries.  Those are certain

14 injuries from the process itself.

15         JUDGE ROGERS:  I have a dozen questions, but Chief

16 Judge, I'll let my colleagues speak.

17         JUDGE SRINIVASAN:  Thank you.  Judge Tatel.

18         JUDGE TATEL:  Yes, good morning.  I have two

19 questions.  The first is, I'd like to ask you the same

20 question that Judge Srinivasan asked Ms. Powell, which is

21 are you aware of any case at all in which a Court of Appeals

22 has issued a writ of mandamus to prevent a district court

23 from conducting a hearing of any kind?

24         MR. WALL:  I believe that there may have been some

25 of the writ of prohibition cases like that, Judge Tatel.

MR

1    I'd have to go back and look and we'd have to supplementary

2    brief it.  I think the closest case I could give you is

3    Cheney where the district court ordered a discovery plan.

4    It was just a process for setting up discovery, and no

5    documents had changed hands.  And obviously this Court in a

6    divided panel said there were adequate alternatives to

7    mandamus because the Executive could assert its Executive

8    privilege.  And the Supreme Court disagreed.  And so the

9    harm was to requiring the Executive to engage in that

10   process in the first instance.  And I think the same is true

11   here.  Now granted, that's discovery rather than a hearing

12   on a motion, but I think the reasoning is, is parallel, that

13   it is where the, where, it's the hearing itself that

14   implicates the separation of powers, just like there it

15   would be assertion of privilege.  I don't think we have to

16   wait for the process to play itself out.  The process is,

17   itself, part of the constitutional harm.

18            JUDGE TATEL:  Right, but from a mandamus point of

19   view where the relief has to be clear and indisputable,

20   there is no case where a, at least I don't know what those

21   prohibition cases are you're mentioning, but setting those

22   aside, there isn't one where mandamus was granted before the

23   district court actually held the hearing that you know of,

24   right?

25            MR. WALL:  No, Judge Tatel.  But I would say what

MR

60

1    I said earlier about that which is if a district court
2    tomorrow said it wanted to have a hearing like that on the
3    DPA, I would think that would be mandamus-able in this
4    Circuit under Fokker.

5            JUDGE TATEL:  Yes, okay.  My second question has
6    to do with, which is related.  In your brief, you argue that
7    it, and I'm quoting here, is a usurpation of judicial power
8    to double, to second-guess the Government's justification.
9    And you also argue, quote, the Executive is entitled to
10   confidentiality in its decision-making process.  But don't
11   courts regularly scrutinize the Executive's stated
12   justifications?  Like, take for example, a Batson hearing
13   where the Court will review the Government's proffered
14   justification, or in Department of Commerce v. New York, the
15   census case where the question was whether they could have,
16   the district court could have a hearing to consider external
17   evidence of pretext.  Isn't that this case?  The Court said
18   in Department of Commerce, a court is ordinarily limited to
19   evaluating the agency's contemporaneous explanation in light
20   of the existing record.  It says we have recognized a narrow
21   exception to that general rule on a strong showing of bad
22   faith.  And isn't that what this case is about?  Isn't the
23   district judge here simply looking into whether there's been
24   such a strong showing?

25            MR. WALL:  So two points, Judge Tatel.  The first

MR

1   is, that's not just our view.  That's quoting <u>Fokker</u>, which

2   says courts may not, quote, second-guess the Executive's

3   exercise of discretion over the dismissal of criminal

4   charges, end quote.  And the second thing is, no, of course

5   you are right that there are plenty of circumstances, as

6   this Court well knows, where courts can scrutinize whether

7   the Executive has complied with some statutory or regulatory

8   duty.  What makes this different, as <u>Fokker</u> explains, is

9   that the Constitution vests this kind of discretion, the

10  discretion over bringing and maintaining and dismissing

11  criminal charges in the Executive.  And so as a separation

12  of powers matter, these kinds of decisions are taken off the

13  table for judicial review that <u>Fokker</u> says not adapted to

14  judicial review under our constitutional structure.  But of

15  course that's not true of any number of other legal

16  questions that aren't the exercise of such a core Executive

17  duty.

18          JUDGE TATEL:  I have no further questions.  Thank

19  you.

20          JUDGE SRINIVASAN:  Thank you.  Judge Garland.

21          JUDGE GARLAND:  Yes.  Good morning, Mr. Wall.

22          MR. WALL:  Good morning.

23          JUDGE GARLAND:  I want to just follow up on a

24  question that Judge Tatel asked General Flynn's attorney

25  earlier on.  So in your brief, you argue that there's an

MR

1  Article III standing problem, a party standing problem, a

2  lack of Solicitor General authorization for this en banc.

3  If it were true, and I ask you to assume that I'm correct

4  about this, that the Court granted sua sponte, do you think

5  that the Court does not have the authority on its own to

6  rehear a panel's decision?

7          MR. WALL:  No, Judge Garland.  Those problems

8  wouldn't be posed.  The question would be, then, only

9  whether it was an appropriate use of the Court's sua sponte

10  authority under cases like Sineneng-Smith to go en banc in a

11  circumstance like this after the filing of a petition that

12  was defective, including constitutionally defective.  But we

13  have not argued, we did not argue in our brief, as you saw,

14  that the Court would lack the power to do that.

15          JUDGE GARLAND:  That case is nothing, is not about

16  en banc, is it?  You're talking about the Supreme Court's

17  recent decision?

18          MR. WALL:  Yes.  It's not about en banc, but it is

19  in part about a court's use of its authority sua sponte to

20  redirect a case in particular ways.

21          JUDGE GARLAND:  So if an en banc panel, if a court

22  as a whole is wondering whether the three-judge panel

23  correctly decided that there's any circumstance in which it

24  can't on its own decide to rehear that matter, or are we

25  stuck in every mandamus case with whatever three-judge panel

MR

63

1   happens to decide a case?

2            MR. WALL:  No, Judge Garland.  Sorry if I wasn't

3   clear.  You have the power to go en banc.  The defects with

4   the petition don't affect that power.  The only question

5   would be whether that's an appropriate use of the Court's

6   authority, and obviously that would be left to the Court.

7   We haven't (indiscernible).

8            JUDGE GARLAND:  I'm sorry to interrupt, but the

9   Chief has been very parsimonious about the amount of time

10  he's given us.  You, meaning the Government has already

11  given its reasons for dismissing this case, correct?  That

12  is, as the panel says, the motion explains, the Government

13  explains that in light of newly-discovered evidence of

14  misconduct, the prosecution can no longer prove beyond a

15  reasonable doubt any false statements or material.  Right?

16  That's the Government's reasons, correct?

17           MR. WALL:  That was one of the three reasons,

18  Judge Garland.

19           JUDGE GARLAND:  I'll take all three of the

20  reasons.  So, you've stated three reasons, and I assume you

21  believe that those are true, correct?

22           MR. WALL:  Yes.

23           JUDGE GARLAND:  What more is there for you to say

24  if -- well, let me put it another way.  Let me begin.

25  Wasn't that optional?  Did you not even have to say that

MR

1   much in your motion to dismiss?

2          MR. WALL:  I don't think that we did, and we often

3   don't.  But under the circumstances here, we went further

4   than we thought we were obligated to.  And by the way, Judge

5   Garland, just to drive that point home, the Attorney

6   General, of course, sees this in a context of non-public

7   information from other investigations like --

8          JUDGE GARLAND:  I'm not in any way questioning

9   anything underlying.  I'm just asking, this was the reason

10  given, and you gave this reason.

11         MR. WALL:  Yes.  I just wanted to make clear that

12  it may be possible that the Attorney General had before him

13  information that he was not able to share with the court.

14  And so what we put in front of the court were the reasons

15  that we could, but it may not be the whole picture available

16  to the Executive Branch.

17         JUDGE GARLAND:  Well, if the judge asks you what

18  your reason is, and you state this as the reason during the

19  hearing, are you saying that's not the end of, there would

20  be no problem with you saying that, would there?

21         MR. WALL:  No, not at all.  It's just we gave

22  three reasons.  One of them was that the interests of

23  justice were no longer served in the Attorney General's

24  judgment by the prosecution.  The Attorney General made that

25  decision or that judgment on the basis of lots of

MR

1  information, some of it is public and fleshed out in the

2  motion, some of it is not.

3         JUDGE GARLAND:  All right.  So if you stood by

4  this reason when Judge Sullivan conducts the oral hearing,

5  there would be no problem in him doing that, would there,

6  from your point of view?  No separation of powers problem at

7  this point given what you've already stated to say that,

8  right?

9         MR. WALL:  If all we had to do was show up and

10 stand on our motion, no.  We've already said that to the

11 district court.

12        JUDGE GARLAND:  Yes.  And if the district court

13 goes further, at that point you could seek mandamus again.

14 But at this point, the district court has not actually gone

15 further.  I mean, there's a brief in en banc about what

16 might happen, but the district court has not ordered you to

17 do anything other than show up and brief the matter, right?

18        MR. WALL:  With all respect, Judge Garland, I

19 think I don't agree with that.  But after Judge Gleason

20 wrote his op-ed calling for a factual inquiry, he was

21 immediately appointed as amicus as part of a process that

22 the district court has now explained to this Court was meant

23 to probe our motives.  And so to say that this is just an

24 anodyne proceeding on the meaning of Rule 48, and all we

25 will have to do is stand on our motion --

MR

1          JUDGE GARLAND:  I understand that, but you can

2    refuse to answer any further.  And if you're pressed

3    further, at that point, you can again move for mandamus.

4    But there's the possibility that after all this briefing the

5    district judge will see the light in your view, and that

6    will be the end of the matter.  I mean, unless there's

7    extraneous outside information that someone other than the

8    Government presents so that there's no probing of the

9    Government's subjective motives.

10          MR. WALL:  Judge Garland, again, I go back to

11   Cheney and Fokker with all respect, I just think that under

12   values, the harms to a critical branch from compelling us to

13   respond to improper questions and accusations by the court-

14   appointed amicus about the reasons --

15          JUDGE GARLAND:  (Indiscernible.)

16          MR. WALL:  (Indiscernible) prosecutorial

17   discretion.

18          JUDGE GARLAND:  In Cheney, there actually was an

19   order of discovery, and there is no order yet here.  Isn't

20   that right?  In fact, it was the most wide-ranging discovery

21   that the Supreme Court had ever seen it said.  Something

22   along those lines.  There hasn't been a discovery order yet.

23   Is that correct?

24          MR. WALL:  No, there hasn't been a discovery

25   order, per se, but there has been an order setting up a

1  process to make us defend the exercise of a core Executive

2  duty.  And I think, to be fair, I think it doesn't take

3  seriously the harms to a co-equal branch from a situation

4  like that where we are called in to have, you know,

5  questions and accusations thrown our way that we've got to

6  respond to.  That's exactly what Fokker says --

7          JUDGE GARLAND:  In the day when I was an Assistant

8  U.S. Attorney, accusations were thrown my way by the defense

9  counsel.  This is part of the job of being a prosecutor.  I

10  don't understand how merely being a subject of accusations

11  from the other side or even from the judge who often

12  questioned what the Government was doing, if each of those

13  was a separation of powers case, we would have a large

14  number of mandamus cases in the circuit.

15          MR. WALL:  Judge Garland, in the vast majority of

16  those circumstances, there's no separation of powers

17  question at play.  In the DPA context, I think it would be

18  fairly remarkable if a district court said tomorrow that

19  even if it had to approve a DPA, it was going to have a

20  hearing so it could air out a bunch of allegations about

21  whether the prosecutors had cut a sweetheart deal with the

22  corporate defendants as part of a DPA.  That seems to me

23  exactly the harm that Fokker is discussing in Part 2-A.  And

24  again, I just think it doesn't take the harm to a co-equal

25  branch seriously to say, well, that's not really harm until

MR

1  the motion is granted or denied because those are not the

2  only harms that the separation of powers is meant to guard

3  against.  It's meant to guard against oversight and scrutiny

4  of this core Executive discretion.

5          JUDGE GARLAND:  All right.  I have the argument,

6  and I've overstayed my welcome.  Thank you.

7          JUDGE SRINIVASAN:  Thank you.  Judge Griffith.

8          JUDGE GRIFFITH:  Yes.  Good morning, Mr. Wall.

9  And thank you.  I'm struggling with the meaning of the

10  phrase that Rule 48(a) leave of court and what that means.

11  Ms. Powell for General Flynn has a very narrow view of what

12  it means.  She said I think it's almost ministerial, and

13  maybe I'm misquoting.  Ms. Powell, I don't mean to do that.

14  What is the Government's view of what that phrase leave of

15  court means?

16          And let me put it to you this way.  Is it

17  appropriate, in the Government's view, for a district court

18  judge to have a hearing before ruling on Rule 48(a)?

19          MR. WALL:  I think it depends on, as I was trying

20  to say earlier to Judge Srinivasan, what the hearing is

21  designed to do.

22          JUDGE GRIFFITH:  Okay.  So, but there's not a

23  categorical prohibition on having a hearing, right?

24          MR. WALL:  No.  I'm not saying that once one of

25  these things is filed the district court just has to stamp

MR

1   it and send it out the door.  The district court --

2            JUDGE GRIFFITH:  And that's (indiscernible).

3            MR. WALL:  (Indiscernible.)

4            JUDGE GRIFFITH:  The question then becomes what's

5   going to happen at the hearing, isn't that right?

6            MR. WALL:  I think.  But can I, if I could just go

7   back to your first question.  I think Rule 48(a) has a role

8   to play with respect to opposed motions.  We know that.

9   With unopposed motions, we know the focus is the harassment

10  to the defendant.  I would say that also the district court

11  can make sure that it's got the authoritative position of

12  the Executive Branch, which it might not if you have a

13  prosecutor that's been bribed or gone rogue.  It can make

14  sure the defendant's been counseled and is, you know, not

15  agreeing to a harassing motion to dismiss against the

16  defendant's interests.  But I think that beyond that, which

17  I'll grant is a fairly narrow conception of the rule.

18  That's what Fokker says.  I don't think that there's a

19  substantive role for the Court to play.  That's what the

20  Seventh Circuit said in In re: United States.  It's even

21  what the Third Circuit said in Richards.  It said no

22  substantive authority.  You can ask for the reasons --

23            JUDGE GRIFFITH:  Well, what if the Court is

24  concerned about favoritism being displayed to a politically

25  powerful defendant?  Is that a proper reason to have a

1  hearing?

2          MR. WALL:  No.  That is a concern that is not the

3  domain of Rule 48.  That has political --

4          JUDGE GRIFFITH:  What's your authority for that?

5          MR. WALL:  So that's, I'd say, In re: United

6  States.  I'd say Richards.  I'd say Fokker.  It doesn't

7  matter what the, the district court may believe that the

8  Government has a bad motive.  And that bad motive could be

9  all sorts of things, favoritism or something else.  But

10 everybody agrees that the United States can't be made to

11 bring a prosecution even if it should, even if it's motive

12 for not commencing one is irregular or impermissible.  And

13 the same is exactly true of dismissing or maintaining

14 prosecution.  There are checks on that, plenty of checks on

15 that in our political --

16         JUDGE GRIFFITH:  Okay, what would be an

17 appropriate hearing for Judge Sullivan to call on these

18 facts in this case?  What are the outer limits of what he

19 could do that the Government would think is appropriate?

20         MR. WALL:  Well, I don't think that there is one

21 on the facts of this case.  You have a well-counseled

22 defendant.  You have --

23         JUDGE GRIFFITH:  No hearing at all?  I'm sorry.

24 So you're saying on the facts of this case no hearing at all

25 would be appropriate?

1          MR. WALL:  Well, if he needs to understand the

2  motion, but as a substantive matter to try to get behind the

3  motion for some motive or another, no.

4          JUDGE GRIFFITH:  What do you mean if he needs to

5  understand -- I'm trying to get at what you think would be

6  an appropriate hearing for Judge Sullivan to call in this

7  case?  What would that hearing look like?

8          MR. WALL:  On these facts, I don't think there is

9  an appropriate hearing that could be had, Judge Griffith.  I

10  think in other cases, you can imagine where a district court

11  was just trying to understand the law.  But here, Judge

12  Sullivan's briefs make clear that he understands the law.

13  He thinks it's a different standard from what I read Fokker

14  to have.  But he wants a hearing to probe our motives.  No

15  sort of hearing like that is going to be permissible.

16          JUDGE GRIFFITH:  Okay.  Thank you very much.

17          JUDGE SRINIVASAN:  Thank you.  Judge Millett.

18          JUDGE MILLETT:  Yes.  Good morning, Mr. Wall.

19          MR. WALL:  Good morning.

20          JUDGE MILLETT:  So, a quick question.  First of

21  all, I thought Ms. Powell had said, and I'd just like you to

22  clarify, does the filing of the 48(a) motion by the

23  Government have to get approved by the Solicitor General

24  and/or Attorney General?

25          MR. WALL:  I don't know about the, so I think it

1   is rare that they go all the way up to the Attorney General.

2   The Solicitor General is typically not involved.   The

3   Attorney General was involved here.

4           JUDGE MILLETT:  Sure.  No, I got that.  Okay.  So

5   that's not something that routinely happens.  And I want to

6   make sure, I'm trying to figure out what the, like Judge

7   Griffith here, what that leave of court is meant to cover to

8   help understand what it doesn't allow, it helps to

9   understand what it does allow, for me at least.  And so, I

10  think you may have said this would be okay, but I just want

11  to confirm.  I had asked Ms. Powell, referring to Judge

12  Wilkins's hypothetical about information coming in from,

13  about the nuns who had seen money pass hands, a suitcase of

14  money passed from a defendant to an AUSA.  And so would it,

15  do you agree that it would be appropriate for the district

16  court under Rule 48(a) to have a hearing and ask the

17  Government what was the real reason for your decision?  You

18  said in your motion, I think his hypothetical was Brady

19  violations, evidence has come to my attention, maybe it's

20  wrong, of a bribery, but here's the video.  Can the district

21  court push and ask that question?  What's the real motive

22  here?  Was it a bribe or was it Brady?

23          MR. WALL:  I don't think in a sort of evidentiary

24  hearing way, no.  The Court can --

25          JUDGE MILLETT:  That's not what I said.  What I

1    said is have the attorneys come in for a hearing, and it's

2    evidentiary only in the sense that here's the video.  I've

3    shared it with you, counsel, both counsel.  You know what

4    video I'm talking about.  Maybe he even plays it again in

5    court.  And says what is your real reason?

6              MR. WALL:  Judge Millett, I don't think that's

7    appropriate.  Here's how I think that should be handled

8    under Rule 48(a).  I think the judge can call in a U.S.

9    Attorney and say do you --

10             JUDGE MILLETT:  No, no, no, yes, okay.  But I want

11   to, so the district court cannot ask whether it was lied to

12   by the Government in a filing?

13             MR. WALL:  Not under Rule 48(a).  It can certainly

14   ask for purposes of sanctioning an attorney before --

15             JUDGE MILLETT:  Well --

16             MR. WALL:  -- on other authorities.

17             JUDGE MILLETT:  Can it do that after it dismisses

18   the case, or does it need to do it while the case is still

19   pending?

20             MR. WALL:  No.  I think it could do it before or

21   after as a matter of sanctioning an attorney under --

22             JUDGE MILLETT:  No, but before, and just tell me.

23   I have no idea.  Can you issue sanctions or hold a

24   Government attorney in contempt after the case is dismissed?

25             MR. WALL:  I would --

MR

```
 1              JUDGE MILLETT:  Or do you need to do that before
 2   it's dismissed?
 3              MR. WALL:  I don't know the answer, Judge Millett.
 4   I would think that the answer is --
 5              JUDGE MILLETT:   Yes, I don't know that either.
 6              MR. WALL:  -- the court could continue to
 7   supervise officers of the court --
 8              JUDGE MILLETT:  Well --
 9              MR. WALL:  -- even after granting a Rule 48(a)
10   motion.
11              JUDGE MILLETT:  Okay.  So it's clearly not settled
12   whether the district court can --
13              MR. WALL:  Oh, it may be.  I just, I haven't --
14              JUDGE MILLETT:  -- granting -- right, okay.  Well,
15   I couldn't figure it out either, but that -- you'll have
16   more experience than me.  That's probably --
17              MR. WALL:  But again, I just want to say the basis
18   of that is not Rule 48(a).  The basis for that would be --
19              JUDGE MILLETT:  No.  The question is, you have a
20   motion to dismiss, and at least Ms. Powell's argument is
21   grant it and go home.  And a district court looks at that
22   motion and says I fear I'm lied to in that motion.  Your
23   position is the district court nonetheless has to grant that
24   motion in which it feels it was lied to and maybe it's a
25   violation of court rules, that very document.  It
```

MR

1  nevertheless has to grant it and can't inquire about whether

2  it was lied to.  That's the Government's position before --

3          MR. WALL:  Yes.

4          JUDGE MILLETT:  -- granting the motion sua sponte.

5          MR. WALL:  (Indiscernible) exercise of

6  prosecutorial discretion is not substantively reviewable in

7  that way.

8          JUDGE MILLETT:  Well, Rule 48(a), when it says

9  leave of court, and did you know the Supreme Court has left

10  open the question of whether there's any other public

11  interest besides harassment of a defendant and to which a

12  court can look to, and your position is protecting the

13  integrity of the court and the very process in front of it

14  is not, I'm not talking about any general public interest.

15  I'm talking about this very narrow interest of protecting

16  the integrity of the court and the court process.  That's

17  not allowed.

18          MR. WALL:  I'm saying that's the domain of

19  sanctions and contempt.  It's not relevant in a 48(a) --

20          JUDGE MILLETT:  It's not -- okay.  And is it your

21  position that there is no such interest inquiry?

22          MR. WALL:  Of the kind you're outlining, yes.  No

23  such inquiry is appropriate in Rule 48(a).

24          JUDGE MILLETT:  So it's just limited to defendant

25  harassment?

MR

1          MR. WALL:  It is defendant harassment and ensuring

2    that the parties have reached counseled, authoritative

3    positions.  But when they no longer want to proceed, and

4    that's a counseled, considered choice by both parties, yes,

5    the court cannot keep the criminal prosecution alive.

6    Article II and Article III do not permit that.

7          JUDGE MILLETT:  And then, did the United States

8    raise an objection to the appointment of Mr. Gleason as the

9    court-appointed amicus in the district court?

10          MR. WALL:  No.  May I explain why?

11          JUDGE MILLETT:  I'm going to give you a couple

12    questions because maybe it will explain them together

13    because I'm getting benched by the Chief Judge here.  And

14    did you object to the briefing order, the schedule the

15    district court laid out, which is subject to motion for

16    reconsideration?  You didn't do that either?

17          MR. WALL:  No, not other than the arguments we

18    made in our motion to dismiss.

19          JUDGE MILLETT:  Right.  Got that.  Okay.  And

20    then, and, but go ahead and answer that.  And I'm sorry,

21    Chief Judge Srinivasan, but I have one more quick procedural

22    question.  But I don't want to cut you off on your full

23    answer.  Those two are I think --

24          MR. WALL:  I'll be very brief.  That the court

25    didn't provide notice that it was going to appoint an

MR

1   amicus.  I mean, it did it immediately after the publication

2   of Judge Gleason's op-ed.  It seemed to us a considered

3   decision, and it did not seem worth moving for

4   reconsideration.  And we were not aware of any requirement

5   to ask for reconsideration of a sua sponte decision,

6   especially a considered one.  So, no, we did not go and tell

7   the district court that it should not have done that.

8           JUDGE MILLETT:  Okay.  And then one last thing.

9   There's been some talk about recusal and the judge's bias or

10  interest, self-interest in the case.  Is it in the

11  Government's view, just generically, is mandamus appropriate

12  to raise recusal issues if the district court judge has, if

13  the parties haven't first asked the district court judge to

14  recuse?

15          MR. WALL:  I think that would be an odd

16  requirement where part of what gives rise to the potential

17  appearance of impartiality is the conduct in the mandamus

18  proceeding itself.

19          JUDGE MILLETT:  Well, I think the mandamus

20  petition itself, even before there was any filing by Judge

21  Flynn already asked for disqualification of the judge.  So

22  I'm asking are you aware of any case that has granted, on

23  mandamus has granted recusal without someone first asking

24  the district court to recuse?

25          MR. WALL:  No, I'm not aware that a court has ever

MR

1   been faced with a situation like this one.  I mean this is

2   an unprecedented en banc petition.

3            JUDGE MILLETT:  All right, thank you.

4            JUDGE SRINIVASAN:  Thank you.  Judge Pillard.

5            JUDGE PILLARD:  Good morning, Solicitor General

6   Wall.

7            MR. WALL:  Good morning.

8            JUDGE PILLARD:  I think we all agree we owe huge

9   deference to the United States Government, and there's not a

10  judge in the city that questions that.  And I think it's

11  clear that courts owe virtually complete deference to the

12  Government under Rule 48(a).  And I appreciate that it was

13  General Flynn and not the United States that initiated the

14  mandamus petition, and that General Flynn alone sought

15  recusal of the district judge, at least at the, at the panel

16  stage.  But, you know, the integrity and independence of the

17  Court is also (indiscernible) here, and the separation of

18  powers is protecting Article II courts also.  And in this

19  case, the district judge was also skeptical in, as you know,

20  in the plea colloquy, accepting the plea in the first place.

21  And in fact, Flynn would have been sentenced long ago but

22  for Judge Sullivan's skepticism in saying if you don't want

23  to do this right now, take more time, talk to your counsel.

24  I have a room for you.

25            But then the district judge at your urging, at the

MR

1  Government's urging, expected the plea as factually

2  supported by the Government's evidence, the Government

3  urged, he didn't dream up this order.  He didn't dream up

4  the plea of guilty.  And the Government demonstrably has

5  said we can meet our burden of proof beyond a reasonable

6  doubt.  He looked at that.  He scrutinized that.  And now

7  you're insisting that the district court contradict an order

8  that she previously granted.  She previously got on board,

9  and you're saying, actually, never mind.  Rule 48 requires

10  leave of court.  She has to participate.  The rule calls on

11  him to play a role.

12       And I just, what self-respecting Article III

13  district judge would simply jump and enter an order without

14  doing what he could do to understand both sides, to

15  understand both sides.  He wasn't appointing Gleason to be

16  the judge.  He was appointing Gleason to make the strongest

17  arguments.  And he understood and trusted that the

18  Government was making its strongest arguments, and he was

19  therefore in the adversarial system have the strongest

20  understanding of what was before him.

21       And I appreciate, listening to counsel, I

22  appreciate that your arguments today have focused almost

23  entirely on the prospect of a factual inquiry that I think

24  you said the district judge seems to want to engage in.  But

25  all of the schedule was briefing and argument on the law,

MR

1  right?  It was briefing and argument.  He never, he never

2  said factual development is necessary.  Yes, Gleason asked

3  for it, but there's no order of discovery here.

4        So if it's just lawyers' arguments about the

5  existing record, just lawyers' arguments about the existing

6  record, what is the intrusion on General Flynn's clear and

7  indisputable rights?

8        MR. WALL:  Two points, Judge Pillard, and they're

9  really critical.  The first is that you are certainly right

10  that the Government no longer wants to prosecute, and that's

11  true for any case in which we have got Rule 48 and, you

12  know, for a small subset of them you actually have a plea.

13  But we're not asking the district court to contradict

14  anything that it's done earlier.  As <u>Fokker</u> says, the Rule

15  48 motion, like approving a DPA, says it involves no formal

16  judicial action and the Court never exercised its coercive

17  power.  So accepting a plea is different from simply

18  allowing the Executive to let a case go as a constitutional

19  matter.

20        And to take the second part of your question,

21  you're right that the district court below never entered an

22  order per se and said there'll be fact development.  He just

23  appointed an amicus that it called for and has now filed

24  briefs asking for it.  But he has said that to this Court,

25  both in his briefs to the panel and even more explicitly at

MR

1  various points in his rehearing petition.  Now, at argument

2  below, I think the district court's counsel backed away from

3  that and said he just wants to have a hearing and ask some

4  questions, and the dissent accordingly believed that

5  discovery and evidence and this kind of factual probing

6  wasn't at issue.

7          If the Court really thinks that's not at issue,

8  then I think that should be among the limits that it should

9  place on the district court when the case goes back.  If all

10  we're doing is arguing about Rule 48, it's hard for me to

11  see, then, what we're going to do below because the district

12  court has explained what its legal view is, there's no basis

13  for looking behind what we've done on the face of the motion

14  itself.  So then I'd say it's even clearer that we ought to

15  get mandamus because there's no reason to have any

16  unnecessary proceeding if it's not meant to probe behind

17  what we've said.  And if what we've said satisfies, as you

18  agree, is a very deferential standard, it's hard for me to

19  see what the point of these further proceedings is at all.

20  Then I think the panel is clearly correct to enter mandamus.

21          JUDGE PILLARD:  But doesn't it cut exactly the

22  other way, that, that you haven't even asked the district

23  court to rule yet.  The district court hasn't ruled.  I

24  think that's just the basic differential between this case

25  and every other case except for Richardson.  And just one

MR

1   follow-up.  You said you're not asking the district court to

2   contradict himself.  But you are asking him to accept, and

3   if you weren't asking him to do anything, you wouldn't be

4   here to mandamus him, right?  You needed the judge to sign

5   off on the Rule 48(a).  And, right?  I mean, right now

6   there's a plea in play.  He could call a sentencing hearing

7   tomorrow, presumably.

8           MR. WALL:  That's right, Judge Pillard.  So two

9   points.  One, in a motion to dismiss, quoting Fokker and a

10  number of the Supreme Court cases, we laid out the fact that

11  we felt we were entitled to have the motion to dismiss

12  granted.  Rather than accepting that argument, the district

13  court has convened to this entire proceeding, invited the

14  public to participate, and raised the specter of contempt.

15  But in moving forward with it, we're not asking the district

16  court to contradict itself.  It found before that there was

17  a factual basis for the plea.  We're not asking the district

18  court to say anything different.

19          We are only asking the district court to say the

20  Attorney General has now made a policy judgment that it is

21  no longer in the interests of the United States to

22  prosecute, whether or not the Government could move forward

23  and there's an adequate factual basis.  And I am bound to

24  that decision because that decision was vested in him under

25  the Constitution.  There's no inconsistency between those

MR

1    two things, and that's why the Court says in Fokker that

2    signing off on the DPA or allowing a court to dismiss a

3    prosecution is not like accepting a plea under Rule 11.  It

4    doesn't invoke the court's coercive power.  It doesn't

5    involve formal judicial action adopting or imposing

6    anything. It just agrees to let a case go --

7              JUDGE PILLARD:  Exactly.  Exactly.  It's just

8    really striking and remarkable.  What is the Government

9    worried about if none of the inquiry that you're

10   highlighting has even been scheduled.  He wanted an

11   argument.  Anyway, I'm --

12             MR. WALL:  With all respect --

13             JUDGE PILLARD:  -- making sure I understand.  The

14   only last question I had for you.  Do you agree with Ms.

15   Powell that it's not the reading of Rule 48(a) that imposes

16   the severe limitation on the court being able to deliberate

17   about the separation of powers overlay?  The history of the

18   rule seems to be that there actually was quite a robust

19   contemplation that judges would scrutinize whether there

20   was, for example, political favoritism.  And is it also your

21   view that that doesn't matter if that's the right way to

22   read the rule because separation of powers would render that

23   unconstitutional?

24             MR. WALL:  I think that overstates the history.

25   There are some members of the drafting committee that

MR

1  mention favoritism as a concern, but they didn't put any

2  mechanism in the rule for allowing the Court to superintend

3  prosecutions in that way, so I'm not sure the history is as

4  clear on this as --

5         JUDGE PILLARD:  But just leave of court, yes --

6         MR. WALL:  Yes, it is --

7         JUDGE PILLARD:  (Indiscernible) leave of court.

8         MR. WALL:  It is, just as Fokker said, it's

9  reading that language in light of constitutional principles

10 and avoidance.  And just to go to your other question very

11 quickly, when you say, look, what are the real harms, I

12 think that's Cheney all over again.  It's what are the

13 harms?  You can assert Executive privilege.  What are the

14 harms?  If you want to show up and you want to have these

15 questions, you don't have to answer them.  You can stand on

16 your motion.  Or if the district court is frustrated, he can

17 hold you in contempt, he can grant it, he can deny the

18 motion.  What's the big deal?  And I think just as in

19 Cheney, that understates the harm to separation of powers.

20 I would say the same is true here.  It's hard for me to read

21 Fokker and think that's not among the harms that Fokker is

22 talking about to the Executive Branch.

23        JUDGE PILLARD:  Okay, Mr. Wall, just a very last.

24 Shouldn't the district court be able to hear and consider in

25 light of the strongest argument.  We're not talking about

MR

1  facts.  Whatever's in the record now, period, assume that

2  that is all that there is.  Shouldn't the district court be

3  able to hear and consider in light of the strongest

4  arguments on both sides why the Government believes the

5  evidence is now, doesn't support going forward?  It's your

6  view that he should not be able, that Rule 48(a) does not

7  authorize him to have a lawyers talking kind of hearing and

8  guide him in exercising the leave of court authority?

9         MR. WALL:  We haven't said that a district court

10  doesn't have the power to appoint amici in criminal cases

11  generally.  The problem with the appointment here is that

12  like everything else the Court is doing, it is designed to

13  entrench on Executive power.  So if a court tomorrow said,

14  look, I'm not sure whether I'm going to approve this DPA.  I

15  think maybe it's too lenient on the corporate defendants.  I

16  want the best arguments from both sides about whether I

17  should approve this or whether it's too lenient, and so I'm

18  going to appoint an amicus.  I think Fokker squarely

19  forecloses that.  It says there's no substantial rule for

20  the courts.  And whatever the district court --

21         JUDGE PILLARD:  He didn't say that, though.  He

22  says that I want to understand.  I'm sorry I'm interrupting.

23  It's my feeling of urgency because I know the Chief wants me

24  to move on.  But if he just wants to understand what the

25  Government's position is, and he thinks the adversary system

1   is the way to get there, and he's going to appoint the

2   devil's advocate on one side and have the Government argue

3   strongly on the other, that, you don't have any objection to

4   that?

5          MR. WALL:  Judge Pillard, just to be clear, that's

6   not what this is.  The district court needs --

7          JUDGE PILLARD:  I understand that that's, we have

8   a difference of opinion on that.  But what we've been asked

9   to mandamus is where to draw the line.

10         MR. WALL:  That's right.  But the district court

11  told you in its briefs, if you look at the rehearing

12  petition on pages 14 to 16 in 703, it says it wants to see

13  whether the public interest is served.  And what it says is,

14  quote, legitimate prosecutorial interests.  This is not a

15  lack of understanding on the part of the district court.

16  The briefs from the district court are very good.  The

17  district court fully understands the United States'

18  position.  What it wants to inquire into is whether that

19  position is in its view, quote, legitimate.  And that is

20  exactly what Articles II and III do not allow.

21         JUDGE PILLARD:  Thank you.

22         JUDGE SRINIVASAN:  Thank you.  Judge Wilkins.

23         JUDGE WILKINS:  Yes.  Good morning, General Wall.

24         MR. WALL:  Good morning.

25         JUDGE WILKINS:  So, in your view, Fokker

MR

1  forecloses may factual development at a Rule 48(a) hearing,

2  yes or no?

3      MR. WALL:  Beyond ensuring that you have the

4  authoritative positions of the parties, yes.  You can make

5  sure the defendant is counseled.  You can make sure that the

6  prosecutor hasn't gone rogue or been bribed.  But outside of

7  that, yes.

8      JUDGE WILKINS:  So if in my hypothetical there is

9  a videotape of the U.S. Attorney taking a suitcase full of

10  cash and the judge wants to have a hearing on that because

11  that same U.S. Attorney signed the motion, you would say

12  that that hearing is appropriate or not appropriate on the

13  Rule 48(a)?

14      MR. WALL:  I would say the hearing to make sure

15  that the Executive Branch actually wants to dismiss is not a

16  problem.  But if a U.S. Attorney shows up and says I want to

17  dismiss; we'll deal separately with whether the AUSA

18  committed bribery, no, the Court cannot --

19      JUDGE WILKINS:  No.  My hypothetical is that --

20      MR. WALL:  (Indiscernible.)

21      JUDGE WILKINS:  Excuse me, sir.  My hypothetical

22  is that the U.S. Attorney is the one in the videotape taking

23  a bribe, and the judge makes that factual finding that the

24  person standing in front of him, the U.S. Attorney, is the

25  person in the videotape.

MR

1          MR. WALL:  Again, that's the toughest case at the

2    margin, I'll give you, but my answer's still the same.  The

3    Court can ask the AG or the Deputy Attorney General whether

4    they really want to dismiss.  If the answer from the

5    Executive Branch is yes, then whether some individual in the

6    Executive Branch has committed a crime is not the domain of

7    Rule 48(a).  The Executive Branch could prosecute, and the

8    Court could sanction or have contempt under separate

9    authorities, but it would not be a basis for denying the

10   Rule 48(a) motion.  It would be a separate criminal

11   proceeding involving the corrupt United States Attorney.

12          JUDGE WILKINS:  And that is based on Fokker?

13          MR. WALL:  And the constitutional backdrop on

14   which Fokker relied.  If the Attorney General said in your

15   hypothetical yes I want to dismiss.  I have lots of good

16   reasons.  I will separately look into whether the United

17   States Attorney took a bribe.  I think the Court would be

18   required to grant the motion and dismiss the prosecution.

19   It couldn't keep it alive.

20          JUDGE WILKINS:  So suppose there's a hypothetical,

21   again, hypothetical situation 10 years from now, different

22   administration where the Attorney General is in the

23   videotape by the nuns taking the bribes.  No authority under

24   48(a) to dismiss that case?

25          MR. WALL:  No.  My answer's still the same, and

MR

1  the political and public remedies for that are I think sort

2  of so obvious that it wouldn't need to be the domain of Rule

3  48(a).  And I don't think anybody has contemplated that Rule

4  48(a) is meant to aim at that sort of public corruption.

5          JUDGE WILKINS:  Well, so the case would still get

6  dismissed as to that defendant who bribed the Attorney

7  General.

8          MR. WALL:  Yes, and --

9          JUDGE WILKINS:  The Attorney General might be able

10  to be prosecuted or impeached, but the defendant would still

11  get off scot-free as a result of committing a bribe.

12          MR. WALL:  Maybe if I --

13          JUDGE WILKINS:  That's the way 48(a) works?

14          MR. WALL:  Maybe if I could come at it a different

15  way, Judge Wilkins.  In the vast majority of cases where

16  what we're talking about is not commencing charges, I take

17  it everyone, even the district court agrees that there's no

18  rule for courts to play under Rule 48(a) even if they think

19  that the Executive has failed to prosecute for some improper

20  reason like bribery, like favoritism, like corruption.

21  Everyone agrees that the Executive can't be made to

22  prosecute the case no matter how impermissible its motives

23  for declining to do so.

24          And all we're saying is that as a rule-based

25  matter, the same rule applies to Rule 48(a) if we have

1   brought the charge.  Fokker says dismissing is the same as

2   bringing as a constitutional matter.  It's bad conduct to be

3   sure.  It should be punished to be sure.  There are other

4   remedies for it.  But they don't concern Rule 48(a).

5           JUDGE WILKINS:  Well, a 48(a) motion can be made

6   after sentencing.  So you're saying that the Attorney

7   General is bribed by the defendant after the sentence

8   because the defendant didn't like the sentence that he got,

9   the Court would still have to vacate the conviction based on

10  48(a) even with the videotape evidence of a bribe to the

11  Attorney General?

12          MR. WALL:  As Fokker says, there is no substantial

13  role for courts to perform that sort of judicial scrutiny

14  and oversight.  The Executive Branch's conduct of

15  prosecutions is governed, but it is governed by the

16  Legislative Branch and the public through means like

17  legislative oversight, impeachment, and arrest.  It is not

18  governed by courts under Rule 48(a), that's right.

19          JUDGE WILKINS:  Okay, thank you.  That's all I

20  have.

21          JUDGE SRINIVASAN:  Thank you.  Judge Rao.

22          JUDGE RAO:  Thank you.  So, Mr. Wall, I guess my

23  first question to you is in light of the dissent

24  accompanying the panel opinion which rested in significant

25  measure on the failure of the Government to file a separate

MR

1    mandamus petition, and then the subsequent grant of

2    rehearing en banc, why has the Government not filed a

3    separate mandamus petition at this point?

4             MR. WALL:  So I think, Judge Rao, I understand the

5    arguments about sort of the timing on the harms.  I don't

6    really understand the argument that the Court can't look at

7    the harms or that we needed to file a separate petition.

8    We're a party.  We filed a brief for the United States.  We

9    articulated at length our harms, and in conclusion, we urged

10   mandamus.  I take the line between cases like Cobell and

11   ExxonMobil to be whether we have filed and sought the

12   relevant relief, not how we captioned the brief.  Nothing

13   here would have been different if we had filed exactly the

14   same brief but we had said it's a brief for the United

15   States and a mandamus petition.  And we haven't been able to

16   find any case from any court where an appellee supported an

17   appellant or respondent supported a petitioner and the court

18   didn't look at the arguments that that party was making in

19   support of the relief.  So I think --

20            JUDGE RAO:  I may agree with you as to that

21   argument, but at this point it seems that at least some

22   members of the Court do not.

23            MR. WALL:  I understand that there may be

24   disagreement over that, but I just think that it would, to

25   have come in now and to have filed a late-breaking

MR

1   mandatory, a mandamus petition that would have been word-

2   for-word what we had already put in front of the Court is

3   exactly what I understand Cobell and ExxonMobil to say isn't

4   necessary.  And I think it would have been distracting.  It

5   arguably would have been dilatory in the same eyes of the

6   members who think that we should have filed earlier.

7           And again, even if you thought that there was some

8   problem with our raising those harms as a party, as a

9   respondent-supporting petitioner, which we do routinely in

10  the courts of appeals.  Indeed, there's a Supreme Court rule

11  expressly designed to allow this.  I still think General

12  Flynn can raise the harms under cases like Bond because

13  after all it's not an abstract separation of powers we're

14  talking about.  It's meant to protect individual liberty.

15  He has his own Article III in jury, hence he can raise the

16  separation of powers violation.

17          And even more generally, with respect to equitable

18  relief, courts look at the time at the interests of third

19  parties in deciding whether to grant or deny equitable

20  relief.  So it's hard for me to understand how the Court, if

21  it can do that, can't in granting mandamus look at the harms

22  to a party that actually filed and requested mandamus.  I

23  think it would come down, then, to saying we didn't caption

24  our brief a particular way.  And I don't understand anything

25  in the rules or common sense to recommend that approach.

1              JUDGE RAO:  Okay.  So, no one here seems to be

2    suggesting that the district court can deny the Rule 48

3    motion on the facts here.  And we accept your argument, you

4    know, that probing the reasons behind the Executive's

5    decision about whether to prosecute infringes on Article II

6    and that harm is pretty clearly established by Fokker and

7    other cases.  It seems that in our cases, you talk about

8    Cheney.  When the Court has found a harm to the Executive

9    Branch or found a separation of powers violation, that an

10   appeal is not considered an adequate means of protecting the

11   Executive power.  And I think that is also what the 1998

12   sealed case stands for involving the independent counsel and

13   Cobell.  And I'm just wondering if you are aware of any

14   cases in which we've found a separation of powers violation

15   or a harm to the Executive power, and has not granted

16   mandamus because we've waited for the Executive Branch to

17   appeal?

18            MR. WALL:  I am not aware of any case, Judge Rao,

19   where the resolution of a motion was compelled by clear law

20   and the conduct of hearing the motion would violate Articles

21   II and III or any other constitutional principle but

22   mandamus was denied.  The closest example, of course, is the

23   Seventh Circuit where the Seventh Circuit granted mandamus.

24   So, no, I'm not aware of anything like that.

25            I understand that there is some skepticism on the

MR

1   Court about doing it at this stage.  We do think that Cheney

2   and other cases make clear, Fokker among them, that an

3   appeal is not going to be an adequate remedy for the

4   Government because of the harms it faces from the process.

5   But if the Court disagrees with that, I think at least

6   whether we need to do or to place on it the limits that the

7   panel dissent thought were implicit in the proceeding and

8   that the Court (indiscernible) have indicated.  I think it

9   would need to indicate to the district court that it needs

10  to take a harder look at Rule 48 and Fokker because it's

11  role is a limited one.  I think it needs to take off the

12  table the sort of fact development that the district court

13  is trying to hold open, notwithstanding the panel dissent.

14  And I think the district court would need to make a quick

15  decision so that we could come back to the mandamus panel in

16  a timely way.

17          JUDGE RAO:  Thank you.

18          JUDGE SRINIVASAN:  Thank you.  Mr. Wall, just one

19  quick question.  The Seventh Circuit case, that's the In re:

20  United States case?

21          MR. WALL:  Yes, sir.

22          JUDGE SRINIVASAN:  And that one the Rule 48

23  motion, Rule 48(a) motion, excuse me, was denied by the time

24  mandamus was granted.  Is that right?

25          MR. WALL:  Yes, that's right.

MR

1          JUDGE SRINIVASAN:  Okay, thank you.  Judge

2     Henderson.

3          JUDGE HENDERSON:  Yes.  I just have a quick

4     question, Mr. Wall.  When the trial judge appointed amicus,

5     he also asked that amicus to opine on whether Flynn had

6     committed perjury or contempt.  And you referred to it as

7     the specter of contempt.  But aren't there two ways to look

8     at it?  In other words, it protects the Article III

9     interests because if a trial judge thinks he's been

10    hoodwinked or dealt with dishonestly, he can hold whoever's

11    responsible for it in contempt.  On the other hand, it could

12    also indicate that Judge Flynn is thinking -- I'm sorry,

13    Judge Sullivan is thinking well I may have to dismiss the

14    charges, but I'm not through with him yet.  Do you have a

15    position on that?

16         MR. WALL:  Judge Henderson, I will say, although

17    it's not our goose being cooked on the contempt piece of it,

18    I do, I find that maybe the most troubling part of the case,

19    because as the National Association of Criminal Defense

20    Lawyers explained in their brief in the district court, it

21    is not an uncommon occurrence for a defendant to plead

22    guilty because he thinks that's the best deal he can get,

23    and then to later decide that he wants to withdraw his plea

24    and maintain his innocence.  That is a fairly common

25    proceeding in the district court.

MR

1          As far as the folks in the Criminal Division are

2    aware at the Department of Justice, no district judge has

3    ever raised the specter of contempt for that.  It's happened

4    in front of this district court before.  I'm not aware he's

5    ever raised the specter of contempt for any other defendant.

6    And the reason is that the Supreme Court's cases are clear

7    that that may be perjury, but it's not contempt.  And even

8    the court-appointed amicus hasn't tried to make an argument

9    that it is under cases like Hudgings and Michael.

10          And so it's, I think that raising that creates a

11   real question about why now and why this defendant.  Again,

12   it's not a harm to the separation of powers, so it's not

13   something we focused on in our brief.  But my own, I do,

14   Judge Henderson, think it's fairly troubling.  And in terms

15   of your dichotomy more the latter than the former.  It seems

16   more a sword over the defendant's head than the sort of

17   thing that this district court is legally entitled to do.

18   I'm not even sure how it's arguable under cases like

19   Hudgings and Michael.  No one has tried to make the case.

20   The district court has never even addressed that in its

21   briefs to this Court.

22          JUDGE HENDERSON:  Thank you.

23          JUDGE SRINIVASAN:  Thank you.  Judge Rogers.

24          JUDGE ROGERS:  I'll pass.

25          JUDGE SRINIVASAN:  Thank you.  Judge Tatel.

MR

1          JUDGE TATEL:  Mr. Wall, I just have a quick more

2   or less summary type of question.  Could you just tell us,

3   what's your very, very best argument, your very best

4   argument, given there are so few Rule 48(a) cases, what is

5   your very best argument that it's clear and indisputable

6   that the district court has no substantial Rule 48(a) role

7   under the circumstances of a case like this where, one, the

8   Government seeks to drop a prosecution after the district

9   court accepted a plea of guilty, and number two, the

10  district court has not acted on your motion to dismiss?

11  What's your best argument that it's clear and indisputable

12  under those two circumstances together?

13          MR. WALL:  So I fear this is not going to persuade

14  you, Judge Tatel, but I'm reading it from Fokker --

15          JUDGE TATEL:  I ask the question because I'm

16  always open to persuasion.

17          MR. WALL:  Decisions to dismiss pending criminal

18  charges lie squarely within the can of prosecutorial

19  discretion.  To that end, the Supreme Court has declined to

20  construe Rule 48(a)'s leave of court requirement to confer

21  any substantial role for courts in the determination whether

22  to dismiss charges --

23          JUDGE TATEL:  Right.

24          MR. WALL:  And the court in Fokker went on, by the

25  way, Judge Tatel, to distinguish Rule 48 from something like

MR

1   Rule 11.  So it's, I think it specifically objects to --

2              JUDGE TATEL:  Right.  But that case involved

3   neither of the two circumstances present here.

4              MR. WALL:  Well, two things.  One, I think I

5   granted earlier, or I meant to, that it would have been a

6   harder case, but I think it should have come out the same

7   way if there had been no hearing there.  Once it's on the

8   books, I don't understand what difference the hearing can

9   make because that's part of the process that's foreclosed,

10  as we know, by the constitutional backdrop.  And so that

11  just leaves the distinction between the pre-plea and the

12  post-plea situation.  But I understand Fokker to reject

13  that.  Rule 48 does not, like Rule 11, set up different

14  standards for stages of the proceeding.  And of course, the

15  constitutional principles that led Fokker to interpret the

16  rule in the way that it did are the same because you need

17  the adversity and you have to respect the prosecutorial

18  discretion throughout the case.  There's nothing magical

19  about the plea.  It doesn't enter a judgment of conviction

20  even, and there's still many things that go on in front of

21  the district court.  There would be many things that went on

22  here if this Rule 48 motion were denied before we got to a

23  final judgment.  So, the text of the rule doesn't

24  distinguish, the cases don't distinguish, the constitutional

25  principles are the same.  So once we know that Rule 48 is

1  not meant to do this for the pre-plea situation, I don't see

2  how the Court could say that as a rule-based matter it's

3  meant to do it for the post-plea situation.

4          JUDGE TATEL:  I have no further questions.  Thank

5  you.  Thank you.

6          JUDGE SRINIVASAN:  Thank you.  Judge Garland.

7          JUDGE GARLAND:  Yes, thank you.  Hello again,

8  General Wall.  So you were asked about how often we grant a

9  mandamus in separation of powers cases.  And you sort of

10  amended the question by saying what really matters here was

11  the process.  And in answering Judge Tatel's question, you

12  said the real problem here is just the hearing itself.  So

13  I'm trying to figure out how we draw a line between this

14  kind of separation of powers claim leading to mandamus and

15  the many other ones that we have in the district court not

16  leading to mandamus, unless we're going to have a flood.

17          So there are a lot of separation of powers cases

18  that challenge actions of various administrations under the

19  separation of powers.  And in fact, the argument in the

20  appropriations clause case that we just heard en banc, our

21  last en banc, was that the allegedly unauthorized spending

22  by the Executive, if permitted to go forward, would

23  constitute a violation of separation of powers.

24          So here's my hypothetical.  Assuming there's

25  standing, and assuming that that claim is indisputable,

MR

1  would it be appropriate for a plaintiff to petition this

2  Court to mandamus a district court to rule in its favor and

3  not wait for the district court to ever rule?

4          MR. WALL:  In a case between private parties,

5  Judge Garland, I'm not sure that it would.  I would limit in

6  three ways that I think cabin your concern.  First --

7          JUDGE GARLAND:  A party, the House of

8  Representatives or the Congress as a whole.  In other words,

9  the Congress claims, in my hypothetical, the Congress claims

10  that the Executive Branch in disregard of the Appropriations

11  Clause is spending money.  In fact, imagine that the

12  Executive Branch just says we don't care about the

13  Appropriations Clause.  We're going to spend it anyway.  Why

14  is that kind of separation of powers claim remedial while

15  the having to go to a hearing claim that you have here is

16  non-remedial?  I'm only looking at that adequate

17  alternatives ground.

18          MR. WALL:  Right.  And so if we've assumed away

19  all the threshold questions like standing and all the rest.

20          JUDGE GARLAND:  Yes, yes.  Understand I'm not

21  trying to decide the other case today.

22          MR. WALL:  Right, right.  I guess I'd say a few

23  things.  One, the constitutional principles have got to be

24  crystal clear.  And here they are under Fokker.  You've got

25  to have a clear and indisputable right, not just be correct

MR

1   on the merits, as you know.

2            JUDGE GARLAND:  (Indiscernible) I'm giving you the

3   hypothetical the Constitution says appropriations are made

4   by the Congress, and the Executive says I don't care, I'm

5   going to spend the money anyway.

6            MR. WALL:  Right.  And --

7            JUDGE GARLAND:  It's indisputable that there's

8   a -- I'm not saying that's the circumstance we're in.  I'm

9   just asking you, if it's -- or imagine now the Supreme Court

10  has also held in another case that the Executive can't,

11  which hardly seems necessary, the Executive can't spend

12  money without appropriations from the Congress.  Does that

13  not even have to be heard by the district court?

14           MR. WALL:  No.  So I'd say two other things, Judge

15  Garland.  First, there, it's not the district court imposing

16  the injury.  It's an interbranch dispute.  But the writ of

17  mandamus is about confining a district court within the

18  bounds of its lawful authority.  So this is much more

19  squarely within (indiscernible).

20           JUDGE GARLAND:  (Indiscernible.)

21           MR. WALL:  And of course here you have the

22  Executive Branch in the case raising the harms from what the

23  district court is doing.  In your hypothetical, you can pay

24  back money, of course.  But here, you can't undo the

25  scrutiny from the district court's process that it has set

1    up which usurps our exercise of prosecutorial discretion.

2    There's no way to undo that harm.

3            JUDGE GARLAND:  In looking at the alternative

4    remedies, paying back money where it's been spent on various

5    laborers to do things is not a realistic answer to that

6    question.  The claim in the hypothetical I'm raising is that

7    the money is being spent, and that is, or is about to be

8    spent, and that will constitute an irreparable injury to the

9    congressional branch, and the money can't be obtained in any

10   practical way because it's being spent on goods and services

11   that can't be given back by anyone.  So, why is your going

12   to a hearing, you meaning the Executive Branch, more

13   important or more remedial than Congress's authority to

14   determine spending?

15           MR. WALL:  Well, I assume that's a situation there

16   where a party is coming in and asking for an injunction

17   against the spending of the money.  But mandamus, as you

18   know, is a writ directed to the district court because the

19   district court is opposing.  There, it's an Executive

20   injury.  So, yes, you'd have to run the equitable factors on

21   likelihood of success on the merits and equitable interest

22   in all the rest, but I don't think it's a problem for the

23   Court in terms of if it were to grant mandamus here, why not

24   mandamus in every other case?  Because here, what you have

25   is you've got clear Circuit law, and you've got a district

MR

1  court that's put in place a process which, where the harms

2  really can't be remedied later.

3        JUDGE GARLAND:  Let me adjust the hypothetical one

4  more time.  What I'm asking is whether the judge can be

5  mandamused to make a ruling.  So imagine the district court

6  says, somebody applies for a preliminary injunction, and the

7  court says all right, well, I'll hear it.  We're going to

8  have a big hearing.  I don't care what the Supreme Court

9  said about this.  I want to have a big hearing and, you

10 know, I want a bunch of facts.  And the Congress's argument

11 is every day separation of powers is being violated.  So the

12 mandamus would be directed against the district court to

13 make a decision it has not yet made, which is what you're

14 asking the district court to do here -- asking us to do

15 here, order the district court to make a decision it has not

16 yet made.

17       MR. WALL:  I don't think so, Judge Garland.  I

18 think the difference between a case like that one and a case

19 like this one or Cheney is that the separation of powers

20 doesn't itself require federal courts to stop injuries

21 imposed by the Executive.  You've got to satisfy whatever

22 the legal requirements for an injunction and all the rest.

23 It does, as Cheney says, prohibit federal courts from

24 injuring the Executive in particular ways.  That is the

25 traditional function of a writ of mandamus, or at least one

MR

1  of them.  So I think that's the difference between your

2  hypothetical and this case.  Cheney and this case could be

3  on one side of the line without sweeping in all of the kinds

4  of cases that you're concerned about.

5       JUDGE GARLAND:  Okay.  Thanks very much.

6  Appreciate the answer.

7       JUDGE SRINIVASAN:  Thank you.  Judge Griffith.

8       JUDGE GRIFFITH:  Yes.  General Wall, I just have

9  one quick question, I think.  You're right to point us to

10  the separation of powers concerns here.  I mean, that's

11  critical.  But help me understand, how is it a breach of the

12  separation of powers for the Government to be asked

13  questions?  Why can't it be the case that at this hearing if

14  an inappropriate line of inquiry is followed the Government

15  objects, and in posing the objection it doesn't answer.  And

16  then that gets appealed, and then we follow the normal

17  course?  Isn't that how we normally deal with claims that

18  separation of powers are being violated by asking questions

19  that are inappropriate?

20       MR. WALL:  So, Judge Griffith, that was exactly

21  the Court's reasoning, this Court's reasoning in Cheney.

22  Look, all the Executive needs to do is assert the privilege,

23  and then we can deal with the harms from if the district

24  court requires you to turn over something that you say is

25  privileged, but what's the harm, this Court said, in simply

1   requiring the assertion of the privilege.  And the Supreme

2   Court said that was insufficiently respectful of the harms

3   to the Executive Branch, and I'd say the same thing here,

4   and Fokker supports this.  There is a harm that I think this

5   Court should not undervalue to making the Executive come in

6   and respond to the kinds of accusations that this court-

7   appointed amicus has put in a 70-page brief that by now the

8   Court has read.  And simply, I think it diminishes the

9   interests of a co-equal branch to say, well, what's the harm

10  in being called to account like that?  What's the harm in

11  having to answer all of those?  If you don't want to put on

12  evidence, you can decline.  If he wants to hold you in

13  contempt, he can.  That entire proceeding, which I think

14  threatens to be a spectacle in front of the district court,

15  frankly, is what Articles II and III are meant to place off

16  limits.  Once the Executive wants to dismiss and the

17  defendant agrees, there's no controversy left between the

18  parties, and the Court's injecting itself in a way that, as

19  I say, creates real harms to the Executive.

20              JUDGE GRIFFITH:  Okay, thank you.

21              JUDGE SRINIVASAN:  Thank you.  Judge Millett.

22              JUDGE MILLETT:  Yes, following up on that question

23  from Judge Griffith.  In other criminal cases, and Cheney

24  wasn't a criminal case.  In other criminal cases when

25  there's been a question to dismiss or not, and courts have,

MR

1    I'm thinking of <u>United States v. Armstrong</u>, crack cocaine

2    and whether there was racial bias in the prosecution.  And

3    when the district court insists that over the Government's

4    objection on discovery that the Government didn't want to

5    do.  It just said no, we cannot comply.  Go ahead and enter

6    a judgment against us, and we'll appeal.

7         And when I'm trying to understand your harms here,

8    sometimes in the briefs it sounds like you want mandamus

9    against Mr. Gleason and his arguments.  But at these points,

10   at this point, we don't know what the district court would

11   ask.  We don't know what the district court would insist

12   upon.  Even if the district court asks something and you say

13   we're not going to answer because of privilege or separation

14   of powers, you can just do that.  There's nothing that

15   compels you, as in <u>Cheney</u>, to start turning over documents.

16        Really, you can just say we refuse to comply as

17   the Government does, I won't say commonly but not

18   uncommonly.  It says fine; rule against us and we'll take

19   our appeal.  Why isn't that?  There's nothing here that

20   requires you to disclose.  You don't have to respond to

21   every argument made by Mr. Gleason.  The Government doesn't

22   respond to every argument in opposing amicus or a party

23   makes.  So do you say what you said already, we stand on our

24   filing; we will say no more?  And if the Court things that's

25   a basis to rule against us, rule against us.  We'll take our

MR

1   appeal.  Does that not, would that process not protect you

2   against any separation of powers injury?

3          MR. WALL:  I don't --

4          JUDGE MILLETT:  (Indiscernible) Armstrong?

5          MR. WALL:  I don't think it would, Judge Millett.

6   Two points.  One, as you know, Armstrong is an exception

7   among the rules justified by the Equal Protection Clause.

8   And even that exception is a very tightly cabined one.  It

9   sets up a very high hurdle.  And only where you got clear

10  evidence of an unconstitutional motive, we don't have

11  anything like that here, so --

12         JUDGE MILLETT:  But you're talking about the

13  process for the Government to avoid injury.  We're not

14  talking about the constitutional issue there versus here.

15  I'm talking about the process for the Government to avoid

16  injury.  If you get a question, you ignore arguments you

17  feel like you don't have to answer.  You just say we refuse

18  to answer.  They're not relevant.  They're not legally

19  relevant.  We will not address them.

20         MR. WALL:  Right.  So that was going to be my

21  second --

22         JUDGE MILLETT:  (Indiscernible) information.

23  Right.  And you just say that to the district court.

24         MR. WALL:  Well, my first point was just that

25  probing the Executive in the way that Armstrong allows is a

1   very narrow exception required by the --

2            JUDGE MILLETT:  That was the ultimate Supreme

3   Court holding.  Again, I'm talking about the process by

4   which the Government responded.

5            MR. WALL:  Right.

6            JUDGE MILLETT:  Right.  That was the Government's

7   position in the lower court in Armstrong.  And the process

8   we used there, and it could be used here and avoid any harm.

9   No one makes you, right?  I guess the worst that could

10  happen, I suppose, is throw an attorney in contempt, and you

11  get immediate appeal of that too.  But wasn't even, no one's

12  even mentioned that.  So that would completely protect you

13  against disclosing anything that you don't think you should

14  have to disclose.

15           MR. WALL:  But I guess what I've been trying to

16  say, Judge Millett, is that I think the process itself is

17  harmful.  And if a district court said tomorrow I want you

18  to justify this DPA, and if you don't want to explain to me

19  why you've entered into it or why you've taken a sweetheart

20  deal then, you know, you can stand there as the amicus says

21  various things and I create a record on your silence, and I

22  take that to be the sort of harm that Fokker says is not

23  permissible because you're extending the criminal process.

24  You're exposing or asking the Executive to expose its

25  deliberative process.  You're threatening to reveal

MR

1   sensitive information because --

2          JUDGE MILLETT:  Wait, wait, wait.  No one's

3   threatening to reveal.  You've got complete control over

4   that.  And so asking the Government to reveal something that

5   the Government considers to be privileged, and maybe the

6   district court's wrong as rain, but the district court

7   thinks is an open question, that's mandamus-able every time

8   a question like that is asked in a district court across

9   this country?  That's mandamus-able?

10          MR. WALL:  No, Judge Millett.  When a district

11  court in this Circuit begins to probe in that way with

12  respect to a DPA or a Rule 48 motion, it is mandamus-able

13  under Fokker.  And the reason, and I may not persuade you,

14  but the reason is that the harm from usurping a

15  constitutionally vested power in another branch is not

16  undone --

17          JUDGE MILLETT:  Yes, okay.  Well, just to be

18  clear, I'm just asking questions (indiscernible).  Just to

19  be clear, your position is no one's forcing you to answer.

20  You have control over your answer or non-answer.  So asking

21  the question is the constitutional violation.  Just to be

22  clear, just so I understand your position.

23          MR. WALL:  Yes.  That's not a price or cost that's

24  imposed by Rule 48(a).

25          JUDGE MILLETT:  Okay.  And then I want to ask you

MR

1    again because just to be clear.  I was a little surprised

2    about your response about lying to the Court.  So let me

3    make things absolutely crystal clear.  You have a, and this

4    is a hypothetical case, capital H, criminal case.  District

5    court has said, and it's the standard order on Brady

6    disclosures.  The Government says we've complied, we've

7    turned over.  District court again before trial goes I want

8    to make sure you've done everything under Brady.  You've

9    given them everything you have.  You've asked everyone who

10   would know or have information.  You've checked every file.

11   The Government says yes, yes, yes.  There's nothing else.

12   We've done an open file process in this case.  We've given

13   the defendant everything.

14           Third time, the district court confirms right

15   before trial, you have done everything Brady requires,

16   everything has been disclosed?  Absolutely, Your Honor.

17   It's now the first day of trial.  In the presence of the

18   Court, the defendant hands to the defendant's attorney who

19   then hands to the prosecutor a briefcase filled to

20   overflowing with $20 bills, falling out at the seams.  It's

21   handed to the prosecutor, who is the U.S. Attorney, and the

22   Attorney General is sitting right there next to her.  And

23   the Government upon receipt of that briefcase submits to the

24   district court a Rule 48 motion to dismiss.  And it's 10

25   pages long, and it has affidavits, and it says there was a

1   Brady violation in this case.

2           So in the presence of the district court, money

3   has exchanged hands.  Previous representations about Brady

4   are now being undermined.  And your position, as I

5   understood it from your prior answer to me, is that the

6   district court has no choice but to grant that motion to

7   dismiss.  And that would be true even if it is unclear

8   whether the district court could prosecute criminal

9   contempt, contempt in the court's presence after a case is

10  dismissed.

11          MR. WALL:  Yes, but if I may explain my answer.

12  The Court can impose sanctions and pursue the Brady

13  violation.  It may be even be able to pursue the bribery --

14          JUDGE MILLETT:  I understand you --

15          MR. WALL:  -- or the (indiscernible).

16          JUDGE MILLETT:  No, I understand you said that.

17  No, no.  But look, you're saying the district court --

18          MR. WALL:  But yes, it is --

19          JUDGE MILLETT:  -- has to play a part in this, has

20  to finish the bribe and make it effective, has sullied the

21  court's reputation by closing the deal between the two

22  parties.  What is your clear authority for that?  Because

23  Fokker says on page 743, to be sure, a district court judge

24  is not obliged to accept a proposed decree that on its face

25  and even after Government explanation appears to make a

MR

1  mockery of judicial power.  So you can't point to Fokker.

2  So what's your clear and undisputable authority that Rule

3  43(a) compels dismissal even if it's unclear, even if it

4  was, there's a risk that it will strip the Court of its

5  criminal contempt and sanctions power once the case is

6  dismissed?

7          MR. WALL:  So three things, Judge Millett.  The

8  first is I take everyone to agree that that is the situation

9  in the pre-plea situation.  I take it even Judge Sullivan

10  agrees with that.  So the only question is whether the plea

11  somehow triggers a different regime.  And under Rule 48, we

12  don't think it does.  It's all bad conduct, to be sure.  But

13  if it --

14          JUDGE MILLETT:  Just to be clear, I don't agree

15  that that would be true pre-plea if a bribe was executed in

16  the presence of the Court.  But go ahead.

17          MR. WALL:  All right.  Well, I didn't understand

18  anyone to dispute that.  But second, I do actually rely on

19  Fokker.  First, when the Court's talking about the mockery

20  of justice, it's talking about the consent decree context

21  where you are invoking judicial power in an ongoing judicial

22  role.  Obviously you couldn't involve the Court in that kind

23  of a mockery.  But in any event, here, it has to be a filing

24  (indiscernible).

25          JUDGE MILLETT:  Okay.  So Rule 43 does allow

MR

113

1   involving the Court in a mockery?

2           MR. WALL:  Well, it has to be a filing that on its

3   face makes a mockery.  Here, one of the Attorney General's

4   reasons is a policy judgment.

5           JUDGE MILLETT:  I'm asking only for an answer to a

6   hypothetical question.  That did not on its face make a

7   mockery of justice, my hypothetical?  I am not, it is a

8   hypothetical.  I am not for a minute suggesting that's

9   what's going on in this case, to be absolutely clear.

10          MR. WALL:  No.  The motion, and I didn't

11  understand the motion in your hypothetical on its face to be

12  a mockery.  The question was what the Government's actual

13  motive was that might underlie what it was saying was a

14  Brady violation.  The motion on its face seemed fine.  It

15  seemed like the kind of thing that could be granted in lots

16  of other cases where there was no evidence of a bribe

17  without any question at all, routinely granted.  I took it

18  just to be that the judge has a question about what the real

19  motives are of the prosecutor who has otherwise filed a

20  motion that's false on its face.

21          JUDGE MILLETT:  No.  I will restate the

22  hypothetical.  The district court does not wish to be privy

23  and party to closing the deal, which is what granting the

24  motion will do.

25          MR. WALL:  I thought the -- yes, if the motion

MR

1  just comes in and says, look, we think there's a <u>Brady</u>

2  violation, we want to dismiss, but the Court thinks maybe

3  that's not the motive, there was bribery, or --

4        JUDGE MILLETT:  You got the hypothetical.  It's

5  clear as rain what's going on.  Three representations about

6  <u>Brady</u>.  I'm just trying to be, I'm trying to make sure, and

7  maybe it's just your position, sometimes the Government has

8  to take hard positions.  But there's nothing ambiguous.

9  It's in the presence of the Court.  And the Court wants to

10 protect the integrity of the Court and not grant the motion.

11 And the Government's position, as I take it, I mean, you can

12 just confirm yes, is that Rule 43 does not allow the

13 district court to not participate in that activity to

14 preserve the integrity of the judicial process.

15        MR. WALL:  No.  I think if you're asking about the

16 consent decree context, it may be different --

17        JUDGE MILLETT:  No.  I am asking about the

18 hypothetical I gave you, which is a criminal prosecution.

19        MR. WALL:  I'm sorry.  When you said Rule 43 --

20 no.  Rule 48 does not --

21        JUDGE MILLETT:  I'm sorry, 48.  I'm so sorry.

22 Rule 48.  I do apologize.  Yes, Rule 48(a).

23        MR. WALL:  No, I don't think it leaves that role

24 to the Court.  And again, if I could just make one point.

25 Everyone agrees that is true if that exact same bad conduct

MR

1    went on at any other earlier stage of the criminal

2    proceeding.  And maybe the Court doesn't agree, but I think

3    that's been fairly well accepted throughout the litigation

4    that you can't force the Executive to bring a prosecution or

5    to keep one alive pre-plea.  And all we're saying is nothing

6    changes in the plea circumstance.  There are lots of outlets

7    for it, and there is, it's not that the Court is powerless,

8    but it still has to, it still has to let the prosecution go

9    if that's the considered authoritative position of the

10   Executive Branch, yes.

11            JUDGE MILLETT:  Okay, thank you.

12            JUDGE SRINIVASAN:  Thank you.  Judge Pillard.

13            JUDGE PILLARD:  Hi, Mr. Wall.  On the lines of the

14   same line of inquiry, what the Government is asking of the

15   Court and how the Court is implicated.  If there were no

16   rule 48(a) at all, which is sort of, I gather, how you're

17   reading the rule to apply here, and there were a plea

18   entered before a district judge and the Government decided

19   that it didn't want to pursue that prosecution, what do you

20   envision would happen?

21            MR. WALL:  So it's not, Judge Pillard, that we

22   think there's no role under Rule 48 or that I'm reading it

23   out.  It has more to do for opposed motions and even for

24   unopposed motions to protect the defendant in cases of

25   harassment and of course to make sure you've got --

1            JUDGE PILLARD:  So in a case like this, if there's

2    no Rule 48(a), the Government wants to walk away, is there a

3    conviction?  Is there not a conviction?  Is there a private

4    settlement between the Government and the defendant?  What

5    if then the district judge scheduled a sentencing?  I mean,

6    because I'm trying to, I think I'm trying to probe my

7    impulse that the Judicial integrity is at stake here

8    together with your impulse that Executive integrity is at

9    stake and the extent to which you'll recognize that there is

10    any judicial integrity at stake here.  I'm just, I'm

11    literally, I don't know.  And so I'm trying to understand

12    what role you think if any the court plays.

13            MR. WALL:  I think in the absence of Rule 48(a),

14    the plaintiff could dismiss its case, here that's the

15    prosecution, as in any other context.  Rule 48(a) does set

16    up a hurdle to that.  It does require leave of the court.

17    It's just a hurdle that has to be understood is a relatively

18    low one in light of the constitutional backdrop.  And I

19    don't want to say that it doesn't involve judicial integrity

20    in any sense, but not in the relevant sense.  Because we're

21    not asking Judge Sullivan in granting this motion, there's

22    nothing, he could file a simultaneous opinion saying he

23    doesn't agree.  He thinks there's a factual basis.  He, you

24    know, he's not signaling at all.  And indeed, a district

25    court might strongly agree that the prosecution should be

1    let go.  So there's nothing about deferring to the

2    Executive's judgment that means the courts independently

3    agree with that judgment.

4           JUDGE PILLARD:  Exactly.  But you didn't even wait

5    to see whether he would defer.  But anyway, that was

6    helpful.  So if there were no Rule 48, the Government could

7    just stop pursuing the case and send a letter to the court

8    and that would be done.  In your view, that would be

9    effective in ending, even though there was a plea that was

10   accepted?

11          MR. WALL:  I think so because there'd no longer be

12   any Article III controversy between the parties, and there

13   wouldn't be any authority beyond Rule 48 for the district

14   court to keep it alive.  And that seems to me at least as

15   important, maybe more important, on the criminal side where

16   you're not just talking about an adversarial contest between

17   private parties.  You're talking about an adversarial

18   contest between a private citizen and a branch of

19   government.  And what the district court has never explained

20   is how it could keep alive a controversy over the

21   Executive's objection, which means that if the Rule 48(a)

22   motion has to be granted at the end of the day, then the

23   real question is what is the purpose of allowing unnecessary

24   proceedings to play themselves out if the Court thinks that

25   there are no harms to the Executive.

MR

1          JUDGE PILLARD:  Yes.  And I think it's, this has

2    been clarifying for me because I think, you know, our Court

3    has seen there to be a role under Ammidown, for example, on

4    page 620 where we refer to Rule 28(a)'s requirement of

5    judicial leave, which gives the Court a role in dismissals.

6    And there it's just following indictment, you know, in

7    exercising its responsibility, the Court will not be content

8    with a mere conclusory statement by the prosecutor.  It will

9    require a statement of reason, the role of guarding against

10   abuse of prosecutorial discretion.  So there's a discussion

11   of the role of the Court.

12          And as I took Judge Tatel's questions of you to

13   also focus on, it feels like the Court's role is

14   particularly robust where there is a plea that has been

15   accepted.  And Ammidown specifically talks about the

16   imposition of a sentence which is a matter for discretion

17   for a trial judge.  And so to the extent that there is a

18   balance between Executive authority and Judicial authority,

19   the Judicial authority becomes more prominent when there is

20   a conviction still, you know, none of which is to speak

21   ultimately to the merits of this 48(a), but just to, as I

22   said, to probe your position that there is --

23          MR. WALL:  Right.

24          JUDGE PILLARD:  -- no role on these facts.

25          MR. WALL:  But even --

MR

1          JUDGE PILLARD:  (Indiscernible) that the Court --

2          MR. WALL:  Sorry.

3          JUDGE PILLARD:  Go ahead.

4          MR. WALL:  But even Ammidown at 622 says, well,

5   sure, the Executive has got to supply a reason.  But Judge

6   Leventhal says but the Court can't deny the Rule 48 motion

7   because its conception of the public interest differs from

8   that of the prosecutor.  I don't know how to square that up

9   with Footnote 3 of the rehearing petition which makes clear

10  that the district court is going to conduct an independent

11  inquiry into whether in its view we've satisfied the public

12  interest.

13          So even if the Court disagrees with what the panel

14  did, I still think in sending it back to the district court,

15  as I said earlier, it would be helpful to provide the

16  district court some guidance on what I take to be the fairly

17  limited role for the district court in this context because

18  of course the Court was aware in Ammidown, in Fokker, it

19  relied on the statements in Ammidown that rejected judicial

20  oversight, and it cited all of the intervening separation of

21  powers cases from the Supreme Court.  I mean, it's not a

22  blank slate.  You have Armstrong, BLE, Wayte, Heckler v.

23  Cheney.  So I understand that --

24          JUDGE PILLARD:  None of which involved mandamus

25  before a ruling, so --

MR

1           JUDGE SRINIVASAN:  Thank you, Mr. Wall.  I just

2    want to make sure we have a chance --

3           JUDGE PILLARD:  Yes.

4           JUDGE SRINIVASAN:  -- to get through the follow-

5    up, and --

6           JUDGE PILLARD:  Yes, yes, yes.

7           JUDGE SRINIVASAN:  -- get to Ms. Wilkinson.

8           JUDGE PILLARD:  Right.  And on page 622, just to

9    circle back, of Ammidown, the requirement of judicial

10   approval requires the judge to obtain and evaluate the

11   prosecutor's reasons, close quote.  Thank you.

12          JUDGE SRINIVASAN:  Thank you.  Judge Wilkins.

13          JUDGE WILKINS:  Yes, one question.  Why isn't it a

14   proper interpretation of Rule 48(a) and Rule 48(b) in Judge

15   Millett's hypothetical, if the district judge observes what

16   he finds to be a bribe occur in her courtroom, and decides

17   that she does not want to be a party to it, why can't the

18   judge deny the 48(a) motion.  And yes, the judge can't force

19   the Government to continue with the prosecution.  But then

20   the defendant just moves to dismiss because of impermissible

21   delay under 48(b), and the judge grants that motion.  Why

22   isn't that an appropriate way for that to play out?

23          MR. WALL:  So three quick points, Judge Wilkins.

24   The first is that there's no mechanism in Rule 48, as your

25   question recognizes, to force the Executive to proceed,

MR

1  which I think is strong evidence that that's not the purpose

2  of the rule.  Second, there are other ways to expose and

3  respond to the Executive misconduct that you were talking

4  about, legislative oversight, impeachment, elections, all

5  the rest.  And the third is, I just think, you don't have

6  to, you may disagree with me on this hypothetical.  I think

7  it goes to whether you have the considered position of the

8  parties.  But even if you think that it's not the sort of

9  the thing that, or it is the sort of thing Rule 48(a) ought

10  to cover, it does highlight, I think, how far we are from

11  that in this case.  Even if you thought that maybe a crime

12  committed in front of the district court by the prosecutor

13  would be the sort of thing that would allow the court to

14  probe the Government's motives, all that underscores is how

15  far we are away from a case like that.  There's no Armstrong

16  allegations here of unconstitutionality.  There's no

17  allegation of unlawful conduct of the kind that you are

18  talking about.  There's a question about whether there's

19  been improper political influence, as the court-appointed

20  amicus has said.  But that's not the sort of thing that the

21  hypo gets at.  That seems like clearly the sort of thing

22  that should be taken care of through political channels.

23          JUDGE WILKINS:  Nothing further.

24          JUDGE SRINIVASAN:  Thank you.  Judge Rao.

25          JUDGE RAO:  No further questions.  Thank you.

MR

1          JUDGE SRINIVASAN:  Thank you.  Thank you, General

2    Wall.  We'll give you a bit of time for rebuttal as well.

3    We'll now hear from Ms. Wilkinson.

4               ORAL ARGUMENT OF BETH A. WILKINSON, ESQ.

5               ON BEHALF OF THE HON. EMMET G. SULLIVAN

6          MS. WILKINSON:  Thank you, Chief Judge Srinivasan,

7    and may it please the Court.  The extraordinary remedy of

8    mandamus is unwarranted when a district judge has yet to

9    decide a pending motion.  By appointing amicus, scheduling a

10   hearing, and receiving legal briefing from the parties, the

11   district court is doing what district courts do, preparing

12   to rule on a motion.  The judge has not asked any questions

13   of the Government or anyone else.  No fact-finding has been

14   requested, and briefing by the parties is not finished.

15          Once that process is complete and the judge

16   studies the papers, there may be little left to discuss at

17   the hearing.  The parties' speculation and fears about what

18   the district court might do are not a proper basis for

19   mandamus.  Indeed, all agree that this Court has never

20   granted mandamus before giving a district court an

21   opportunity to rule.  The petition for mandamus should be

22   denied for the simple reason that petitioner has adequate

23   alternative means of relief.

24          Three reasons support this commonsense conclusion.

25   First, the district court could very well grant the motion

MR

1   to dismiss, which is the outcome petitioner desires.

2   Second, as the panel appeared to recognize, there's no

3   irreparable harm to petitioner from permitting the district

4   court to receive briefing and argument on a pending motion

5   nor can the Government, which did not petition for mandamus,

6   show irreparable harm.  The Government's entire argument

7   comes down to speculation about what might happen, but

8   speculation cannot be the rationale for such an intrusive

9   mandate from a reviewing court.

10          Finally, for purposes of recusal, Judge Sullivan

11  is not a party.  Deciding whether to hear a case en banc is

12  solely within the power of this Court.  What we did as

13  counsel was to suggest something this Court can do on its

14  own, and did. Our suggestion is consistent with the Supreme

15  Court's definitive statement in Western Pacific giving

16  litigants and counsel the ability to request en banc review,

17  but the power remains with this Court.  Thank you, Your

18  Honor, and I'm happy to answer questions.

19          JUDGE SRINIVASAN:  Thank you.  Ms. Wilkinson, I

20  have a couple questions.  First, in your view, is there

21  anything that a district judge could do in advance of ruling

22  on a motion in terms of setting out the grounds on which the

23  district judge wants to hear further that would result in an

24  entitlement to mandamus?

25          MS. WILKINSON:  I think it would be very

MR

1  difficult, Your Honor, in a vacuum to say he could do

2  anything because, as in this case, the judge has just

3  ordered briefing and is determining what the issues are.

4  But I could see the Government objecting, for example, and

5  there's no reason to believe this would ever happen, but if

6  you're asking me a hypothetical, for example, if the

7  Attorney General was ordered to appear, I would think that

8  would be something the Government would object to, would

9  move to quash, and the district court might easily say

10  you're right, I'm not going to do that.  And that's the

11  problem with all of the arguments you've heard from the

12  Government.  It's not only that they can say no when asked

13  these questions that they fear are going to be asked.  But

14  the judge could accept their no, could accept their answer

15  that this is privileged, this is part of the deliberative

16  process, and move on.  It's not clear that when they explain

17  that the court would continue.

18           JUDGE SRINIVASAN:  If we take out of play the harm

19  that ensues from asking a particular official to appear, and

20  we just stay within the cannon of cases that involved the

21  normal give-and-take between counsel for the Government and

22  the court, even in the scope of the hearing itself, you

23  think there's nothing that the court could ask of counsel

24  that would entitle the Government to mandamus at that time?

25  Your view is that even in the scope of the hearing itself,

1  the Government always has a remedy because they can decline

2  to answer, and then if that occasions a ruling against the

3  Government, then that can be appealed?

4          MS. WILKINSON:  Yes.

5          JUDGE SRINIVASAN:  And then what do you do with

6  the acting Solicitor General's explanation of Cheney, the

7  proposition that, well, that was effectively what was at

8  issue in Cheney, and the Supreme Court set down a different

9  type of understanding in indicating that, no, it's not

10 always enough that somebody can show up and decline to

11 answer a particular question.  Sometimes mandamus is

12 warranted even to keep a district court from going down that

13 road.

14         MS. WILKINSON:  Cheney was different for two

15 reasons.  One, there was an actual order from the court

16 ordering broad discovery and ordering the Government to turn

17 over the documents.  And there, the Government did assert

18 Executive privilege before the case and gave the district

19 court judge the chance to reconsider his ruling.  So none of

20 that has happened here.  If there's any questions that the

21 Government thinks are improper, again, they can --

22         JUDGE SRINIVASAN:  (Indiscernible) in Cheney in

23 some sense was that the regime that the Supreme Court was

24 reviewing was one in which the ostensible fail-safe was that

25 the Government could show up and decline to answer specific

MR

1   questions.

2          MS. WILKINSON:  The reason that's not relevant

3   here, Your Honor, is the Government has answered many

4   questions already.  The Government hasn't taken that clear,

5   specific, and full assertion of Executive privilege.  I

6   think the Government misspoke when they said that they

7   shouldn't have to answer, or they are not going to answer

8   the 70-page brief by the amicus during the pendency of these

9   proceedings.  They have filed a response in the lower court

10  to the amicus brief, and they haven't asserted in that

11  response any Executive privilege, any deliberative process

12  privilege, or that they can't turn over certain kinds of

13  information.  So they haven't, the facts of this case are

14  not similar to Cheney.  The Government's had that

15  opportunity.  It has responded, and it has not claimed any

16  privilege or any irreparable harm when they've actually

17  answered the questions or responded to the motion or the

18  pleadings.

19          JUDGE SRINIVASAN:  Okay.  Thank you, Ms.

20  Wilkinson.  Judge Henderson.

21          JUDGE HENDERSON:  No questions.

22          JUDGE SRINIVASAN:  Thank you.  Judge Rogers.

23          JUDGE ROGERS:  So your reading of Cheney is that

24  absent the elements you just decided with the Chief Judge,

25  that the Supreme Court would not have ruled as it did?  In

MR

1 other words, I thought some of the language in Cheney was

2 very broad.

3         MS. WILKINSON:  I believe you're right, Judge

4 Rogers, that the language was broad.  But as it was applied,

5 and it was because the Government asserted the privilege

6 generally, and the Court said it should not have to go

7 through each response or each discovery request and make

8 those assertions because that itself on the specifics would

9 reveal some Executive privilege, and they shouldn't have to

10 do that.  And that was a very different case than here where

11 the Government has chosen to respond and started with a

12 motion to dismiss that contained an application of and an

13 explanation of the facts and the law.

14         But you've heard the arguments today, as well as

15 in the pleadings for the en banc court in terms of the

16 process and more or less the burdens and the signaling, as

17 it were, that the district court has given in terms of what

18 it intends to pursue.  And it's not framed in terms of

19 trying to understand the Government's decision, although it

20 could be framed that way if we apply the normal presumption

21 that the district court will act in accordance with the law.

22         So, where you answered the Chief Judge by saying

23 you couldn't see a situation with a process itself before

24 the district court has ruled would give rise to an

25 appropriate issuance of mandamus.  Do you think that the

MR

1  Supreme Court's application of Cheney is sufficiently

2  limited?

3         MS. WILKINSON:  With regard to this case, I do,

4  Your Honor.  And perhaps I didn't make it clear that of

5  course the Court would follow the law, which starts with a

6  very narrow scope of any argument or hearing on a Rule 48(a)

7  motion in these circumstances.  So the Government has, I

8  believe, misread or over interpreted the pleadings in this

9  case where the legal issues are being raised.  Nowhere has

10  the trial judge said that he's going to collect evidence or

11  require affidavits.  He pointed out where some of these

12  issues are, but there's nothing that suggests he's going to

13  do other, anything other than have a hearing where the

14  lawyers argue the motion.  There can be follow-up questions

15  by him on the motion, and he'll decide the motion.  That

16  process, which occurs all the time in a district court,

17  would not invade the separation of powers, would not usurp

18  the power of the Executive Branch, and there's no signaling

19  to them that there are going to be these onerous or invasive

20  questions.

21         JUDGE ROGERS:  Thank you.

22         JUDGE SRINIVASAN:  Thank you.  Judge Tatel.

23         JUDGE TATEL:  Ms. Wilkinson, your argument, your

24  argument is that mandamus is premature because the judge has

25  simply scheduled a hearing and hasn't yet acted on the

1   motion to dismiss.  That's your argument.

2          MS. WILKINSON:  Yes, Your Honor.

3          JUDGE TATEL:  My question is this.  Let's assume

4   you're right that under Rule 48(a), there is some

5   substantive role for the district court.  Does the judge

6   actually have discretion to deny a Rule 48(a) motion?  Is

7   that included in his, can he deny it?  In other words, even

8   if he has a substantial role, does that role include the

9   discretion to deny the Rule 48(a) motion?  Because if it

10  doesn't, then I don't understand what the purpose of the

11  hearing is going to be.

12          MS. WILKINSON:  I think there's very limited

13  discretion to turn, or to deny that motion, but there is, in

14  the case law, examples like the one, I believe, that, I

15  don't remember who first started, but Judge Millett or Judge

16  Pillard used about bribery of the prosecutor.  And in Fokker

17  itself, the Court recognized there's a presumption of

18  regularity, but that could be overcome, and that could be a

19  basis to deny the motion.

20          JUDGE TATEL:  Well, play that out for me, then.

21  Let's assume you're right, that there is some discretion to

22  deny the motion.  Then what happens?

23          MS. WILKINSON:  In this case, it is different from

24  when a prosecution is initiated.  If it were denied, there's

25  no role for the Executive Branch any further because

MR

1    sentencing is the only thing that's left.  Now the

2    Government and Mr. Flynn could take the position that

3    they're going to mandamus after that.  That's obviously what

4    I believe they think would be their next step.  But if that

5    didn't happen, the defendant would go on to sentencing, and

6    then there would be an appeal, I assume, by either one or

7    both of the parties.

8            JUDGE TATEL:  And how would that appeal come out?

9    What would be the result of that?

10           MS. WILKINSON:  Well, if I'm reading the tea

11   leaves properly, Your Honor, depending on who the panel is,

12   this Court appears to, and the Fokker decision suggests that

13   there's very limited discretion for a judge to turn down or

14   deny that motion to dismiss --

15           JUDGE TATEL:  (Indiscernible).

16           MS. WILKINSON:  -- but there could be --

17           JUDGE TATEL:  I asked you a question, and I did,

18   which is if in the end, either because the district court

19   reads Rule 48 as giving him no discretion, or if because

20   this Court later views Rule 48 as leaving the district court

21   no discretion, what's the purpose of going through all of

22   this?

23           MS. WILKINSON:  Well, two, Your Honor.  First of

24   all, that doesn't mean it's clear and indisputable now and

25   that mandamus is appropriate now because you're talking

MR

1    about what would this Court do.  But the process itself of

2    the judge participating with leave of court, which is

3    receiving the briefing so he understands the scope of the

4    Government's motion and the law and allowing lawyers to

5    argue it and make a decision is not, even if the answer is

6    predictable, is not an error and is certainly not the basis

7    for a mandamus for this reviewing court to come in and

8    direct him to what you're suggesting.  And the hypothetical

9    is inevitable.

10             JUDGE TATEL:  Thank you.  I have no further

11   questions.

12             JUDGE SRINIVASAN:  Thank you.  Judge Garland.

13             JUDGE GARLAND:  Yes.  So as I read what happened

14   in the district court, all that the judge did was order

15   responsive briefs and an oral argument to be held.  But the

16   panel decision focuses, and your opposing counsel focused on

17   what was done in the briefs in this Court.  And the panel

18   says, before this Court, the district court explains that he

19   plans to question the bona fides of the Government's motion,

20   inquire about the Government's motions and representations,

21   illuminate the full circumstances surrounding the proposed

22   dismissal, and probe whether the presumption of regularity

23   for prosecutorial decisions is overcome in the unusual facts

24   of this case.

25             Is this different than what happened in the

MR

1   district court?  Are you forecasting what the district court

2   plans to be doing?  What is your answer to these statements

3   in the panel's decision?

4           MS. WILKINSON:  We are not forecasting anything,

5   Your Honor, and that starts with what we said in the

6   conclusion of our brief on page 18.  All the district court

7   has done is ensure adversarial briefing and an opportunity

8   to ask questions about a pending motion.  That's all the

9   Court has planned to do.  That's all the Court plans to do.

10  And the briefing, when this whole process started, the

11  briefing wasn't completed.  It's still not completed.  The

12  Government is going to have a chance, as well as Mr. Flynn,

13  to file surreplies and lay out all of these issues, if

14  appropriate.

15          So there's no basis in the pleadings for en banc

16  to suggest that the Court has specific questions it's going

17  to answer.  Counsel referred to Footnote 3, which is really

18  talking about what the law says.  It doesn't say, of course,

19  that these are the questions that Judge Sullivan plans to

20  answer.  And in our initial briefing, we pointed out that

21  when the Government signed the motion to dismiss, it was

22  only the acting U.S. Attorney.  There were no declarations.

23  There were no affidavits.  We did not say that therefore

24  there needs to be some and there's going to be any

25  requirement.  Again, the parties are speculating, and I

MR

1   think even said this might turn in, they suspect it will

2   become a circus.  There's absolutely no basis for that.

3   There's nothing in anything that the court has done below or

4   has done in its pleading to suggest it will do anything than

5   follow the law and listen to the arguments of the parties,

6   ask any follow-up questions, and rule on the motion to

7   dismiss.

8         JUDGE GARLAND:  Is there?  I mean, opposing

9   counsel suggests, both opposing counsels suggest there's a

10  contemplation that you intend to get underlying documents

11  about other charging decisions, why the Government did or

12  did not make other charging decisions.  Maybe you'll call in

13  the Attorney General and ask what's the real reason that you

14  did this.  Are these things contemplated or not?

15        MS. WILKINSON:  They are not contemplated, Your

16  Honor.  I believe that the reason the parties are suggesting

17  that is because Judge Gleason, excuse me, Mr. Gleason in his

18  pleadings suggested there might be a basis for that.  But

19  when he filed his pleading, he said he's not requesting any

20  fact-finding.  So Judge Sullivan surely has not entertained

21  any of those issues, and even Mr. Gleason in his pleading

22  has said that won't be required.  So there's nowhere, again,

23  anywhere in the record that suggests that that would be

24  anything that Judge Sullivan intends to do at a hearing.

25        JUDGE GARLAND:  Thank you.

MR

1              JUDGE SRINIVASAN:  Thank you.  Judge Griffith.

2              JUDGE GRIFFITH:  Yes.  Thank you, Ms. Wilkinson.

3    Are you then telling us that such questions won't be asked

4    at the hearing?  You said you don't want to forecast the

5    hearing.  Maybe you should forecast the hearing a little

6    bit.  And are you telling us that those lines of inquiry

7    will not be pursued?

8              MS. WILKINSON:  Judge Griffith, I can't tell you

9    exactly what won't be pursued, again, because the briefing

10   is not completed, and Judge Sullivan hasn't decided all of

11   the questions.  He may or may not ask.  And even during the

12   oral argument, that could address a question that he has,

13   and there may be no questions.  I'll give you one example.

14   When the issue was raised about the acting U.S. Attorney

15   signing the pleading by itself.  The Government answered in

16   one of its pleadings saying well that was signed off by the

17   entire Department of Justice.  That answers that question.

18   The Court may disagree.  Other people may disagree.  But

19   there's no need to pursue that because the Government's

20   answered that, explained that and answered that question.

21   So I see no basis, if all of these pleadings are available

22   to the Court, the other filings are made, there's no reason

23   to believe the Court won't ask anything but what's narrowly

24   prescribed in this hearing, which is listening to the

25   arguments and asking any follow-up questions to those

MR

1    arguments.

2                   JUDGE GRIFFITH:  Do you have a view on the scope

3    of Rule 48(a), what is meant by leave of court?  We've had

4    some discussion today about whether it's limited to

5    protecting defendants from vexatious prosecution and other

6    views that it is designed to allow, one of its purposes is

7    to allow a district court judge to probe dismissal that he

8    or she suspects might involve some favoritism.  Do you have

9    a view on that matter?

10                  MS. WILKINSON:  Well, I start like you did with

11   the history of the rule, which is quite clear there was much

12   debate about this and most of it was focused not on

13   protecting the defendant from harassment.  I think that was

14   already accepted.  But it was on protecting the public

15   interest when there might be favoritism rewarding or

16   dismissing a prosecution.  And as the courts have gone along

17   and developed a law here, there's been very little.  But

18   where they have, everyone has said the primary reason or the

19   substantial, major reason for the rule is because of

20   protecting the defendant.

21                  But no one has said, what I think we heard today,

22   that that's the only purpose of a Rule 48(a) motion when the

23   two parties agree.  So I think the courts have left that

24   open.  Ammidown commented on that and suggested that.

25                  JUDGE GRIFFITH:  What would happen if, we were at

MR

1    a late stage of this prosecution, obviously, but what would

2    happen if this had taken place in an earlier stage of the

3    prosecution, before sentencing and so forth?  And Rule 48(a)

4    motion is made --

5              UNIDENTIFIED FEMALE:  I'm sorry.  There's been an

6    internal error.  You will be disconnected now.  Goodbye.

7              (Off the record at 3:00:32.)

8              (On the record at 3:02:37.)

9              THE CLERK:  Judge, Ms. Wilkinson is back on the

10   line.

11             JUDGE GRIFFITH:  Okay.

12             MS. WILKINSON:  Judge Griffith, I'm so sorry.  I

13   don't know how I got disconnected.  I apologize.

14             JUDGE GRIFFITH:  No.  I'm not certain it's your

15   fault at all.  My question was, if we were earlier in a

16   proceeding and a judge denied a motion to dismiss, what

17   would happen then?

18             MS. WILKINSON:  Are we assuming, Your Honor, that

19   it's the same basis, that they thought they were going to

20   pursue charges and decided they couldn't because, or

21   shouldn't?

22             JUDGE GRIFFITH:  Yes.  Yes.  I'm just wondering

23   how, would it be inappropriate for the Judicial Branch to

24   compel the Executive Branch to proceed with prosecution.

25             MS. WILKINSON:  Yes.  It would be much more

1    difficult, obviously.  You can't compel them to bring the

2    prosecution.  I think you could inquire about the reasons

3    because you still may have a public interest in the

4    integrity of the court, but it isn't -- the standard for

5    48(a) is the same, but the totality of the circumstances one

6    would consider are different because you now in the post-

7    plea phase have involved the court.  And as other judges

8    have referred to, you're bringing the power of the court,

9    the integrity of the court and the --

10            JUDGE GRIFFITH:  Okay.  Could you respond to the

11    criticism of Judge Sullivan for appointing Judge Gleason in

12    light of the fact that right before the appointment he had

13    staked out a public position on the matter?  How do you

14    respond to that criticism?

15            MS. WILKINSON:  In appointing any amicus, the

16    Court is looking for the opposite viewpoint from what the

17    two parties agree on and looking for full adversarial

18    briefing.  So the fact that Mr. Gleason announced that he

19    had a position that was adverse to the Government and to the

20    defendant makes sense that he would be one of the candidates

21    because he is being appointed, not to be neutral but to

22    flesh out those legal arguments on the other side of the

23    case.  So one wouldn't, you know, the best analogy I know is

24    professor Paul Cassell, who's quite famous and has, you

25    know, pursued Miranda issues for almost his entire career,

MR

1   asked the Supreme Court to be the amicus and argued against

2   the Government, and the Court listened and ruled against Mr.

3   Cassell's position.  And no one thought it was inappropriate

4   for him, even though it was publicly known that his

5   positions were adverse to the Government.

6           JUDGE GRIFFITH:  Okay, thank you.

7           JUDGE SRINIVASAN:  Thank you.  It appears we may

8   have lost Judge Millett momentarily.  Judge Pillard.

9           JUDGE PILLARD:  Hi, can you hear me?

10          MS. WILKINSON:  Yes, Judge Pillard.

11          JUDGE PILLARD:  Thank you.  So on the mandamus

12  standard, we could decide that if we were to rule against

13  the petition, we could decide that there were alternative

14  remedies or that there was no clear and indisputable right.

15  And I wonder if you have a view on which is the narrower

16  ground.  Is there an alternative remedy?  If so, what is it?

17  Or do you think the narrower ground is to say that there's

18  no clear and indisputable right at this point to

19  (indiscernible) the proceeding?

20          MS. WILKINSON:  It's a real contest, but I believe

21  the narrower ground is the alternative relief below because

22  the judge has not yet ruled.  So the easiest remedy would be

23  for the judge to grant the motion to dismiss, and there

24  would be nothing even for a reviewing court to do.  So that

25  seems to me to be the narrowest and the most commonsensical

MR

1   basis to deny the petition because the court has not made

2   its decision yet.

3          JUDGE PILLARD:  And so there, the alternative

4   remedy, just to be clear, is if the judge grants the Rule

5   48(a) motion, is the district judge gave the Government what

6   it wanted and General Flynn what he wanted.  What if the

7   judge were to deny the motion or postpone the motion?  Is

8   there an alternative remedy?

9          MS. WILKINSON:  I'm not sure postponing changes

10  that, but once the decision is made, if somehow he denied

11  the motion, then the parties could appeal.

12         JUDGE PILLARD:  Right away.  Now, I thought we

13  said in Fokker anyway, there was no interlocutory appeal

14  from a denial of a deferred prosecution agreement.  Would

15  there be an interlocutory appeal, or would you say there was

16  mandamus then, or would you have to wait for after

17  sentencing?  And I realize these are hypothetical issues

18  because they're not before us.  But I'm just trying to get a

19  sense of what you're envisioning in terms of alternatives.

20  And let me just lay it out.  It seems to me that really the

21  flip side of or wedded to the point about whether there's an

22  alternative remedy is what is the right that's being

23  remedied.  And so in order to think that once the 48(a) is

24  denied or at least postponed that there would be some

25  appeal, then one has to think that there's a right against

MR

1    that postponement.  You see what I'm saying?  I'm not sure

2    that, unless we envision an outright denial, which seems

3    almost (indiscernible) very likely course, what the

4    alternative remedy would be and whether one can decide that

5    without deciding it, and how to right it.

6              MS. WILKINSON:  I'm sure you'll let me know if I'm

7    not addressing your question.  But if the first point is the

8    postponement, I believe this Court in In Re: Aiken at least

9    gave, the participants there was an agency, multiple chances

10   to act.  And when they ordered mandamus, or ordered the

11   writ, the agency had said specifically they were refusing to

12   act, and therefore that was considered by the Court an

13   action.

14             Here, I don't know that a, you know, delay of some

15   sort would be warranted, a mandamus would be warranted for

16   that.  I mean, this matter could have been over on July

17   16th, ironically, if the judge had been able to have his

18   hearing.  But assume you go forward with the hearing, they

19   could appeal.  There could be sentencing that could all

20   happen very quickly, and there could be a direct appeal.  If

21   the parties think that a mandamus is appropriate, at least

22   there is an order from the Court.  So they would then be

23   able to remedy that because the remedy would be, they would

24   be asking for would be to reverse his decision, which is

25   when you look at the law of mandamus in this Circuit, that's

MR

1   99 percent of the cases are, there's a decision by the court

2   that the parties disagree with, and then this Court comes in

3   and says either that decision was appropriate or it should

4   be reversed.

5           JUDGE PILLARD:  Right.  And if the judge were to

6   deny the Rule 48(a) or postpone it in some -- or let's say

7   just to make it complicated given today's argument, if the

8   judge were to say I want an in-depth, factual hearing, not

9   just an argument by lawyers, but in-depth hearing with new

10  fact-finding, that would be a different, that would be an

11  open question whether there's a clear and indisputable right

12  against that that could be remedied somehow, although

13  that -- I'm sorry.  I'm garbling.  That would present a

14  separate mandamus question.

15          MS. WILKINSON:  Yes, because you have the two

16  prongs, not just the alternative relief but the clear and

17  indisputable.

18          JUDGE PILLARD:  Right, right.

19          MS. WILKINSON:  And both would have to be met.

20          JUDGE PILLARD:  So here, the reason that you say

21  the alternative remedies is the narrowest is because the

22  clear and indisputable right that is missing is the right to

23  the relief before the judge rules.

24          MS. WILKINSON:  Yes.

25          JUDGE PILLARD:  And we just don't have to go

1    further than that.  We don't have to inquire whether there's

2    fact-finding, how broad the judge's authority is to deny a

3    Rule 48(a) motion or anything else.  You just have to say

4    that the judge gets to rule and as long as it's a simple

5    argument.  And --

6            MS. WILKINSON:  Yes.  Premised upon the

7    understanding the judge will follow the law.  And there's no

8    reason to believe that this --

9            JUDGE PILLARD:  Right.

10           MS. WILKINSON:  -- judge who has over 25 years of

11   experience on the district court would do anything but

12   follow the law.

13           JUDGE PILLARD:  Right. Thank you.  That's helpful.

14           JUDGE SRINIVASAN:  Thank you.

15           JUDGE PILLARD:  No further questions.

16           JUDGE SRINIVASAN:  Thank you.  We'll go back to

17   Judge Pillard -- I'm sorry, we'll go back to Judge Millett.

18           JUDGE MILLETT:  Yes.  Sorry.  Good afternoon.  I

19   apologize.  I've been off for about five minutes.  So if I

20   ask you something that someone else has already asked, you

21   have the liberty just to say we already discussed that, and

22   I will read the transcript.  So I think Judge Pillard was

23   talking about this, but again, I missed the beginning.  If

24   this district order had said, if the district court's order

25   said and on July 16th there will be an evidentiary hearing

1    to address the grounds for the Government's position, the

2    Government's filing, is your position that that could not be

3    mandamused?

4         MS. WILKINSON:  I don't think it would be

5    mandamused because I don't think it's clear and indisputable

6    that that's inappropriate and that's forbidden by the law.

7    If you look at Fokker or you look at Seyna (phonetic sp.),

8    which is Judge Sullivan's own case where -- I'm sorry.

9         JUDGE MILLETT:  No, go ahead.

10         MS. WILKINSON:  Where looking at and asking

11    questions of the Government was never held by the Court to

12    be in appropriate.  It was the actual decision --

13         JUDGE MILLETT:  Well, this would be beyond asking

14    questions of the Government.  This is, it will be an

15    evidentiary hearing to examine the real grounds for the

16    Government's decision.  I think a fair inference from that

17    is that somebody from the Government's going to be having to

18    put in evidence on the basis for their decision-making.  Do

19    you think a district court can do that, and the Government

20    still has to go through the whole hearing and wait for the

21    district court to rule before it can file mandamus?

22         MS. WILKINSON:  It depends on what we mean by an

23    evidentiary hearing.  When you're still talking about the

24    Government prosecutors --

25         JUDGE MILLETT:  I'm telling you that's all we know

MR

1    from the order that an evidentiary hearing to examine the

2    genuine grounds for the Government's decision.

3              MS. WILKINSON:  I think the Government should

4    attend the hearing, and if there's anything inappropriate,

5    if that's all we know, if there's anything inappropriate

6    about the hearing, they shouldn't, they should refuse to

7    present witnesses, if that's what they're being asked for.

8    If they're supposed to put evidence that they think somehow

9    impinges upon their Article II power --

10             JUDGE MILLETT:  Well, they say that's what _Cheney_

11   said they don't have to do.

12             MS. WILKINSON:  Well, I don't think that is what

13   _Cheney_ told them they don't have to do.  _Cheney_ said if you

14   think it is surely part of the executive privilege and you

15   object and shouldn't have to even make those distinctions,

16   then you should claim that privilege, and that's it, and the

17   court then should stop.  And the court did not stop.  The

18   court still ordered discovery.

19             Here, the Government never took that position.

20   The Government never said we absolutely don't have to answer

21   any questions.  We don't have to make any explanation.  In

22   fact, they chose to make a 17-page explanation.  They chose

23   to respond to the amicus brief.  And they haven't made any

24   of those arguments below.  That's why technically I'm not

25   sure I understand why it may not matter to some people

MR

1    technically that they didn't file a petition for mandamus,

2    but it is indicative of what their position was at the time,

3    whether this was such protected Article II power that was

4    being usurped by the court.  They didn't say that to the

5    court at the time.

6              JUDGE MILLETT:  I'm sorry, just in the interest of

7    time here.  In this case, all that's going to be held, all

8    that we know on July 16 is a hearing.  And who knows how

9    long after that it would take a district court to rule.

10   Let's imagine it's a different case where at the same

11   procedural stage, after a plea, pre-sentencing, the

12   Government comes up and says, with a filing that says, uh-

13   oh, we have to dismiss because DNA evidence just came in and

14   it completely exonerates the defendant.  This needs to be

15   dismissed.  And this defendant is incarcerated at the time,

16   pre-trial.  Or, I'm sorry, pending sentencing.  Post-plea,

17   pending sentencing.  The defendant is incarcerated, DNA,

18   complete exoneration according to the Government.  Can the

19   district court take six, seven weeks to have a hearing and

20   then a month to issue a decision, keeping a defendant under

21   the custody of the United States when the United States says

22   we're done; we don't want to have this person in custody; we

23   don't want to prosecute them?

24             MS. WILKINSON:  Yes, Your Honor.  That happens all

25   the time in the district court.  I mean, that happens.  When

1    the Government comes in --

2              JUDGE MILLETT:  When the Government states that we

3    don't want to prosecute them?  We'll let them, you know, let

4    them go.  We're done.  We're not prosecuting.  And the

5    Government has said in my hypothetical the person's

6    innocent.

7              MS. WILKINSON:  Your Honor, with DNA evidence like

8    that, there are examples where the district court has a

9    hearing.  Now, the exact weeks, obviously most courts would

10   like to schedule that as soon as possible.  They may ask for

11   briefing.  But that, the court doesn't release the --

12             JUDGE MILLETT:  But doesn't it seem like, if you

13   have someone, and I understand that Mr. Flynn is not

14   incarcerated, but he's still under custodial restrictions.

15   And if the Government says someone should be at liberty, we

16   should not be prosecuting them, don't you think the district

17   court should go as fast as possible if it's going to have

18   even just briefing and an argument in this circumstance as a

19   matter of the liberty interest of defendants?  I can't

20   imagine keeping someone incarcerated for a few more months

21   when the Government says they're totally exonerated.  We

22   don't want to prosecute them.

23             MS. WILKINSON:  Well of course everyone --

24             JUDGE MILLETT:  (Indiscernible) shouldn't they?

25             MS. WILKINSON:  The court should go as fast as

MR

1    possible.  And here, there's no suggestion that there was

2    any delay.

3            JUDGE MILLETT:  This is as fast as possible, seven

4    weeks just for the hearing, not even the decision?

5            MS. WILKINSON:  Yes.  The order, the briefing --

6            JUDGE MILLETT:  I think district courts go much,

7    much faster even with amicus briefing.  We see it all the

8    time.  Why shouldn't --

9            MS. WILKINSON:  And courts go much, much longer,

10   Your Honor, in district court.  They can --

11           JUDGE MILLETT:  Well, I understand,  But that's

12   all I'm saying.  That's why I'm asking.  They may do it.  It

13   may not be right.  I'm asking whether it's right.

14           MS. WILKINSON:  Well, I don't think the custodial

15   restrictions here are any, in any way comparative to

16   incarceration.  The examples are --

17           JUDGE MILLETT:  He's not at liberty --

18           MS. WILKINSON:  -- Mr. Flynn had some --

19           JUDGE MILLETT:  Under our Constitution, he's not

20   under liberty.  I understand he's on, you know, has been

21   released on his recognizance and the district court has been

22   very understanding of him.  But he's still not at liberty.

23   And the principle here of the district court's right to hold

24   hearings and take, you know, take its time and examining

25   things, getting around to decide it is going to apply in

MR

1    every case.

2              MS. WILKINSON:  But that's never been a basis for

3    irreparable harm, Your Honor.  There's no case that says

4    that when a 48(a) motion is pending a defendant is under ROR

5    and has been allowed to travel overseas even by the court --

6              JUDGE MILLETT:  I know, but --

7              MS. WILKINSON:  -- that somehow that's an

8    irreparable harm.

9              JUDGE MILLETT:  -- my hypothetical is someone

10   who's incarcerated.  So my hypothetical is someone who's

11   incarcerated, completely exonerated --

12             MS. WILKINSON:  This Court has had that --

13             JUDGE MILLETT:  (Indiscernible.)

14             MS. WILKINSON:  This Court has had that in Al-

15   Nashiri, and the defendants were detained.  They were

16   incarcerated, and there were separation of powers issues

17   raised.  And this Court still said --

18             JUDGE MILLETT:  Did the Government say there they

19   are completely, they're innocent.  The evidence exonerates

20   them.  We no longer wish to prosecute them?  That's my

21   concern.

22             MS. WILKINSON:  No, no, no.

23             JUDGE MILLETT:  Yes.  There's all kinds of other

24   times --

25             MS. WILKINSON:  No.

MR

1          JUDGE MILLETT:  Yes, other issues that come up in

2   criminal prosecutions.  I'm talking about this circumstance.

3          MS. WILKINSON:  Well, there's no clear and

4   indisputable rule that the court has to rule within a week

5   or within 10 days.  And it may depend upon the particular

6   facts.  But here, Mr. Flynn has as much freedom as any

7   defendant.  And the United States says when they've pled

8   guilty to a crime, and the Government now comes and says

9   they no longer want to prosecute, there's briefing and a

10  hearing.  That's it.

11          JUDGE MILLETT:  All right.  My time is up.

12          JUDGE SRINIVASAN:  Thank you.  Judge Wilkins.

13          JUDGE WILKINS:  Yes.  Good morning, Ms. Wilkinson.

14          MS. WILKINSON:  Good morning, Your Honor.

15          JUDGE WILKINS:  What is your position as to the

16  range of public interest factors that a district judge can

17  properly consider in whether to grant or deny a motion under

18  Rule 48(a)?

19          MS. WILKINSON:  I'll answer your question, Your

20  Honor, but it's easier to say what they're not.  Of course,

21  the court cannot second-guess the prosecutorial decision

22  made by the Government.  So the public interest factors have

23  not been fully explored by courts, but they have given

24  examples of misconduct by the prosecutor like bribery or

25  even failure to appear at the hearing.  And other courts

MR

1   have talked about the integrity of the Judicial Branch and

2   the public interest in the integrity of the system.  So it

3   would be fact-specific, but it certain doesn't include

4   second-guessing the prosecutorial decisions.

5          JUDGE WILKINS:  All right, thank you.  I don't

6   have any further questions.

7          JUDGE SRINIVASAN:  Thank you.  Judge Rao.

8          JUDGE RAO:  Thank you.  Ms. Wilkinson, I'm

9   wondering if you can help me to understand what precisely

10  the district judge's interest is in pursuing rehearing at

11  this stage.  I mean, so we have a situation where the

12  Executive Branch wishes to drop the prosecution because it

13  has confessed a number of errors in the process.  And so we

14  have the interest of the Executive Branch in controlling

15  prosecutions, which I think you admit is a well-established

16  part of the Article II power.  And then, you know, so the

17  separation of powers between the Executive and the courts in

18  this case relates also not just in some abstract way to

19  individual liberty but really directly to the liberty

20  interests of an individual criminal defendant, namely

21  General Flynn.  So where we have here an unopposed motion to

22  dismiss, what interest does the district judge have in

23  continuing to scrutinize the dismissal of a prosecution?

24  What is the district judge seeking to vindicate on rehearing

25  and with the inquiries that, you know, have been represented

MR

1   will be made below?

2          MS. WILKINSON:  The rehearing, Your Honor, is

3   meant to protect the process and the mandamus standard

4   because under the panel's decision, although written to be

5   fact-specific, could open the floodgates to other people who

6   are unhappy with a district court not ruling on a motion

7   thinking that they know what the answer should be, that the

8   answer is clear from the case law or the precedent, and

9   moving to mandamus a district court whenever they think

10  they're in that position.  So it's broader than just this

11  particular Rule 48(a) issue.

12         JUDGE RAO:  But does a district judge have a right

13  to litigate on behalf of legal standards generally?  Does

14  that make him a party to the case?  Does it make him a free-

15  wheeling amicus?  I mean, what precisely is the judge's

16  interest in this any more than there would be in any case

17  where the panel issues an opinion where a district judge may

18  disagree with the a court of appeals' legal analysis?

19         MS. WILKINSON:  He doesn't have a right to

20  litigate or is not a party, Your Honor.  This Court made him

21  a respondent.  What that means for purpose of mandamus I

22  don't think is totally clear, but the Court ordered him to

23  respond and participate in the process.  He didn't volunteer

24  to participate.

25         JUDGE RAO:  Right.  And that process played out at

1    the panel level.  So what is the interest in seeking

2    rehearing by a district judge?  I mean, he's not deciding, I

3    mean judges have an Article III power to decide cases and

4    controversies.

5              MS. WILKINSON:  Well there's --

6              JUDGE RAO:  What exactly is the district judge

7    doing in this context?  I mean, I think it's not surprising

8    that it's so unusual that there are virtually no cases in

9    which a district judge has appeared in this posture.  I

10   think the Government found only one case and rehearing was

11   denied.  So what exactly is being vindicated here?  I mean,

12   maybe you can help me understand that.

13             MS. WILKINSON:  Well, first, there are cases, Your

14   Honor, where district courts have moved for cert at the

15   Supreme Court and review there and either been granted or

16   denied.  And parties, I mean the judge has not been seen as

17   a participant nor, you know, reassigned when the case went

18   back to the district court.  But there's not a vindication

19   of any right.  The panel made its decision with three able

20   judges, and now the respondent is asking for all 10 judges

21   in this Court to reconsider and to review and make its

22   decision again on what the law should be in this Circuit.

23   It's the same posture he was in with in front of three

24   judges.  Most respectfully, we're just now arguing in front

25   of 10 judges.  And you all will make that decision.  But he

MR

1   doesn't have an interest.  We made a suggestion, like I

2   said, consistent with Western Pacific, which has been clear

3   for 70 years that that doesn't mean that the judge or anyone

4   else is a litigant or a party.  It's that if you can make a

5   suggestion to the Court for something they can do

6   themselves, which you can do yourselves and in essence did

7   by voting to accept this petition.  Then all he's interested

8   in is that the 10 of you decide whether mandamus is

9   appropriate or not.

10          JUDGE RAO:  So can district judges in other cases,

11  not mandamus cases, simply file briefs suggesting that we

12  reconsider cases en banc where we disagree with the district

13  court's ruling below?

14          MS. WILKINSON:  In cases where the Circuit has not

15  made them a respondent, I doubt that would be appropriate,

16  but this is a very unique situation where the Court was

17  ordered to defend its judgment below, which was a process

18  not a decision.  It was ordered to say, explain why it was

19  doing what it was doing.

20          JUDGE RAO:  Okay.  One of the things we haven't

21  talked about that much is the presumption of regularity

22  here.  And so the Government here has submitted a fairly

23  significant amount of information about the irregular

24  behavior and its reasons for wanting to dismiss this

25  prosecution.  So I guess I'm wondering, you know, how does

MR

1    the Government motion here not meet the standards for

2    regularity?  Because it seems that there have to be some

3    overcoming of the presumption of regularity for the district

4    judge to continue on the path that has been contemplated.

5              MS. WILKINSON:  I don't think that's correct, Your

6    Honor.  The path contemplated is just a hearing with

7    argument from lawyers.  And the presumption of regularity

8    applies.  And in the absence of clear evidence to the

9    contrary, the courts presume that the prosecutors have

10   properly discharged their official duties.  That's from

11   Fokker.  That doesn't say that it can't be tested whether

12   there was a presumption of regularity because, if so, then

13   there would be a rule of regularity, not a presumption of

14   regularity.  It may be that, again, when the briefing is

15   completed, there's no real question about that, and the

16   court doesn't even ask about that.  The hearing is

17   completed, and the decision is issued.  So there's not a

18   path that's suggesting that the court is somehow saying it

19   can and will overcome the presumption of regularity.

20             JUDGE RAO:  I think what you're now classifying as

21   just a hearing, and that's what you've repeatedly said here

22   at oral argument, it doesn't really match up with what was

23   filed in the briefs before this Court both at the panel

24   level and on the hearing.  And it seems like there is some

25   much greater scrutiny that is contemplated that goes well

MR

1  beyond, you know, just a hearing to evaluate the motion to

2  dismiss.

3          MS. WILKINSON:  Well, Your Honor, if we suggested

4  in our pleadings specifically what the questions would be,

5  then that's my error.  There is no basis to believe that

6  there is any specific even questions that are contemplated

7  yet.  And I think in your panel decision, you said the

8  questions would likely reveal internal deliberative process

9  and other Executive Branch discussions.  It's not clear that

10  that's true, but again if that happens or if it had happened

11  based on the briefing, the Government can make that point to

12  the Court, and the Court could say, okay, I'm not going to

13  pursue those questions any further.

14          And you also said that the questioning could

15  threaten to chill law enforcement by subjecting the

16  prosecutors' motives and decision-making to outside inquiry.

17  And I understand that.  So far, the Government hasn't taken

18  that position when actually confronted with the issues, when

19  they responded to Mr. Gleason's brief.  But again, if the

20  Government believes that questions by the Court somehow

21  invade or usurp their power, that's all they need to say.

22  And it shouldn't be presumed that the court will overrule

23  that or make a record and say I'm going to rule against you.

24  The court may be persuaded that the Government has every

25  right to give that answer and move on.

MR

1          JUDGE RAO:  Let me just ask you one final

2   question.  Yes, I'm over my time, but.  So if we were to not

3   provide the relief here, would we be setting out a rule that

4   this Court can never issue a writ of mandamus absent a

5   district court's ruling on a dispositive motion?  Is that

6   the rule that would have to come out of it?

7          MS. WILKINSON:  No.

8          JUDGE RAO:  I mean, is that the rule that you're

9   advocating?  Because that rule seems to me inconsistent with

10  Cheney and Cobell and the sealed case.

11         MS. WILKINSON:  No.  I don't think that's the

12  rule, and I don't think, I think In re Aiken makes that

13  clear.  There can be lack of action that's tantamount to an

14  action.  So I don't think, however this Court fashioned its

15  decision, it would have to say that in no circumstances can

16  there be mandamus when there's a hearing scheduled.

17         JUDGE RAO:  Well, it says that there was an

18  adequate means because, you know, the Government could

19  always appeal, isn't that suggesting that that's, you know,

20  a categorical rule?

21         MS. WILKINSON:  Well, again, there's a presumption

22  that the district court will do its job and follow the law.

23  So yes, I think generally there would be little or no basis

24  for mandamus for a district court judge who's scheduling a

25  hearing.  But as Judge Srinivasan asked me could there be

MR

 1  something that happened even in the order for that hearing

 2  that suggested totally improper conduct outside the clear,

 3  you know, law of this Circuit, there could be.  And of

 4  course that could be a basis for mandamus.  But the

 5  presumption here, in front of this Court, is that district

 6  courts do their job and follow the law.

 7            JUDGE RAO:  Thank you.

 8            JUDGE SRINIVASAN:  Thank you.  Judge Henderson,

 9  any follow-up questions?

10            JUDGE HENDERSON:  I do have one question, and that

11  is, the trial judge was ordered not to defend any action by

12  the three-judge panel.  He was directed to file a response

13  addressing the motion to dismiss.  And that was at our

14  invitation.  Rule 21 makes clear there is a very limited

15  role for the trial judge in a mandamus proceeding.  I'd like

16  to know why Rule 35 suddenly allows him without any

17  invitation from us, to petition for rehearing en banc.

18            MS. WILKINSON:  I don't think it is Rule 35, Your

19  Honor.  My understanding in reading Western Pacific is

20  that --

21            JUDGE HENDERSON:  Well you --

22            MS. WILKINSON:  -- an en banc --

23            JUDGE HENDERSON:  Excuse me.  That was the

24  procedure your petition followed, was Rule 35.  You invoked

25  Rule 35.

MR

1          MS. WILKINSON:  Yes, Your Honor.  But I think it

2   depends on how you interpret the word party.  I don't think

3   he's a party for having a vested interest in the outcome, as

4   you said.  The way you required him to respond was I don't

5   think trying to make him a party.  But in terms of

6   interpreting that term and that process in light of Western

7   Pacific, the whole purpose of the rule was to allow anyone

8   who's involved to make that request.  It's this Court's

9   decision, and you have your own authority to do so.  It's a

10  power of the court.  It's not a power of the litigant or the

11  participant.  And I think you may be asking me, you know,

12  does that make him look like he has a vested interest or an

13  inappropriate interest in the outcome.  And I do not think

14  that's true because it's -- we're making the --

15          JUDGE HENDERSON:  I agree with you, Ms. Wilkinson.

16  He is not a party.  I agree with you.  But you're the one

17  who invoked a rule limited to a party.  So that's all I want

18  to know.  And now you've answered my question so I'm done.

19          JUDGE SRINIVASAN:  Thank you.  Judge Rogers.

20          JUDGE ROGERS:  I wonder if you want briefly to

21  address the reassignment issue and the invocation of Section

22  455.

23          MS. WILKINSON:  Thank you, Judge Rogers.  As the

24  panel found, there was no basis to reassign this case from

25  Judge Sullivan, and therefore the only change since that

MR

1  panel decision was the filing of the request for en banc and

2  the pleadings themselves, which talk about the law.  So,

3  explaining your views on the law of the district court again

4  in the same proceeding, the same mandamus proceeding that

5  you were in before does not seem to show any basis of bias

6  or appearance of impropriety.  It's the same process.  It's

7  the same proceeding.  It's not the same as the underlying

8  criminal proceeding, but it's the same mandamus proceeding

9  with the judge making the same arguments he did to the

10  original panel of three, and so there's no reason to

11  reassign the case to another judge.  He will follow whatever

12  this panel says, or whatever this full court says he should

13  do.

14         JUDGE ROGERS:  Well, you heard the acting

15  Solicitor General argue that even where the en banc Court to

16  deny the petition, it should include in its opinion

17  instructions to the district court.  I gather from your

18  argument that you take it that, A, some aspects of the

19  record have not been fully appreciated, and secondly, that

20  the concerns expressed are largely hypothetical or

21  speculative.  Other than the delay that's involved as a

22  result of the seeking of mandamus, the process was

23  proceeding.  Whether as fast as possible, I'm not going to

24  get into.

25         But I'm trying to understand, the acting Solicitor

MR

1  General's position is very strong in terms of his emphasis

2  on not only the Cheney concerns but on the process

3  contemplated by the district court.  If you care to respond

4  to that, some of your earlier answers I realize have said

5  that there appears to be some over-reading of what's

6  contemplated were this to go forward before the district

7  court.  Is it your view, then, that even if the Court does

8  not need to instruct the district court to follow the law as

9  we see it, that no further instruction is required?

10        In other words, there's been a question from the

11  beginning about what does leave of court mean.  And is it

12  simply a courtesy?  The prosecutor's decided it has no case

13  or it does not want to proceed with the case, and that's the

14  end of the matter.  And we're just here to let you know,

15  judge, that's where we are.  Then there are the other

16  hypotheticals that have been posed this morning which goes

17  beyond anything I'm aware of in the record here.

18        So, that's a lot of issues in one statement, but

19  I'm just curious about what instructions you think would be

20  appropriate, if any, and why the concerns expressed by the

21  acting Solicitor General and General Flynn's attorney should

22  not be of concern to the Court or that the Court need not

23  address them were it to deny the petition for mandamus.

24        MS. WILKINSON:  Judge Rogers, I'll answer.  I

25  think those are two questions, and I'll start with the first

MR

1   one of whether any instructions are necessary for the

2   district court.  They are not.  But I think in part that's

3   because there's been expansive briefing in this case

4   underlying, which has not finished, as you point out, in the

5   district court.  But quite a bit here that has been

6   instructive about the scope of Rule 48(a) and leave of

7   court.  So I don't see any need for instructions from this

8   Court on what that means.

9           And I certainly don't see any reason to think that

10  there's going to be this invasive questioning.  There is

11  nothing in the record, as I stated earlier, to suggest any

12  question that Judge Sullivan intends to ask.  But certainly

13  there's been no request for evidence.  There's been no

14  request for declarations or affidavits or witnesses or any

15  of the things that were kind of weaved into some of the

16  parties' pleadings to suggest that the judge was somehow

17  going to go beyond the narrow scope of a legal hearing on a

18  motion to dismiss.

19          So, speculating about hypothetical questions that

20  could be asked certainly isn't a basis for mandamus.  But

21  there's also a cure below if for some reason that occurred

22  where the Government doesn't have to answer those questions

23  and can explain to the court why it's inappropriate.  So for

24  all those reasons, I don't think any instructions are

25  necessary.

MR

1          JUDGE ROGERS:  Thank you.

2          JUDGE SRINIVASAN:  Thank you.  Judge Tatel.

3          JUDGE TATEL:  I have no questions.

4          JUDGE SRINIVASAN:  Thank you.  Judge Garland.

5          JUDGE GARLAND:  No further questions.  Thank you.

6          JUDGE SRINIVASAN:  Thank you.  Judge Griffith.

7          JUDGE GRIFFITH:  Yes, just to follow upon that,

8  Ms. Wilkinson.  What would be permissible questioning under

9  Rule 48(a) and Article II?

10          MS. WILKINSON:  Generally, Your Honor, especially

11  with regard to this case, I think it would be following up

12  on the briefing that the parties have submitted him.

13  Because there's still surreplies to come and there's

14  argument, I can't say that there might be a lot of

15  questioning.  It depends on how the Government and the

16  parties address those issues.  If you just start with where

17  we were a couple weeks ago before Mr. Gleason filed his

18  brief, there was speculation, oh, there's going to be a

19  request for evidence and fact-finding.  And then when we

20  waited or, you know, we came to the point where Mr. Gleason

21  filed his brief, he said he's not requesting any fact-

22  finding.  So I think it's, I think the general scope would

23  be narrow, but it may be even, an even thinner reed or a

24  smaller list of questions when all of the briefing is

25  finished.  And that's just hard to predict --

MR

1          JUDGE GRIFFITH:  But you agree, are you saying

2    fact-finding would be categorically inappropriate?

3          MS. WILKINSON:  No, but I don't, without some

4    basis for it, yes.  I can't predict that there won't be any

5    basis.  It's certainly, we haven't seen that thus far.  But,

6    you know, again, I can't tell you what's going to happen,

7    what the Government is going to say or Mr. Flynn's going to

8    say in his surreply.  But it doesn't seem like there's any

9    basis for that right now.

10          JUDGE GRIFFITH:  Okay.  Thank you very much.

11          JUDGE SRINIVASAN:  Thank you.  Judge Millett.

12          JUDGE MILLETT:  Yes, thank you.  Two questions.  I

13   think you said in your brief that these separation of powers

14   concerns on behalf of the Government shouldn't be considered

15   because they didn't file a mandamus petition.  But I don't

16   understand why they can't be raised by a criminal defendant

17   in a case because to the extent, you know, a district court

18   is charged with or the concern is the district court is

19   violating the separation of powers by intruding on the

20   prosecutorial judgments, it's the criminal defendant

21   (indiscernible).

22          You know, in my hypothetical, it would be the guy

23   has been exonerated by DNA, continuing to sit in a prison

24   cell for weeks if not months.  And separation of powers

25   protects the liberty of individuals.  So I don't understand

MR

1   why it matters whether the Government did or did not file a

2   mandamus petition in this case for purposes of the

3   separation of powers arguments.

4           MS. WILKINSON:  I think that raises two points,

5   Your Honor.  First, the incarcerated defendant in your

6   hypothetical could claim he is suffering irreparable harm

7   himself and not have to rely on the Government's irreparable

8   harm or basis for irreparable harm.  But I think <u>Bond</u> does

9   give an argument to say that another party can raise the

10  Government's, you know, irreparable harms.  The difference

11  here is whether that's true or not.

12          JUDGE MILLETT:  They're not raising the

13  Government's.  Right?  They're saying, look, the

14  Constitution divides power to protect individual liberty

15  including mine.  And if a district court is in a

16  hypothetical case blowing past those lines and it has

17  consequences on that defendant in that case, then the

18  defendant gets to argue about it.  It's not that they're

19  making the Government's argument.  It's that they're making

20  a liberty argument about separation of powers.

21          MS. WILKINSON:  I don't understand, I didn't

22  understand, and maybe I'm incorrect, that that was Mr.

23  Flynn's position that his liberty was a separation of powers

24  or constitutional argument.  He was saying it was

25  irreparable harm under Rule 48(a) and under mandamus.  But I

MR

1   don't, I didn't understand that.

2          JUDGE MILLETT:  Well if he's in custody, his

3   status as a criminal defendant has been prolonged.  He's not

4   as free as you and I are to come and go.

5          MS. WILKINSON:  Well, he's pretty darn close.

6   He's been able to do everything he wants to do with

7   permission of his --

8          JUDGE MILLETT:  We can all say that, but what, if

9   I have governmental constraints on my liberty for one day

10  that makes me different.

11         MS. WILKINSON:  That's true.  And in terms of the

12  length of this process, Mr. Flynn could have gone down and

13  asked for reconsideration, could have asked for expediting

14  the briefing, expediting the hearing, parties do that all

15  the time at the district court.  No one did that here.  No

16  one made the argument you're making that this is not

17  happening quickly enough and I would like the process to go

18  more quickly.  Mr. Flynn now says through counsel that it's

19  been dragging on forever.  But he had a basis to go back to

20  the court and say I want this decided more quickly.  And

21  that would have been the easiest way to speed up the time

22  frame if he thought it was inappropriate, but he didn't do

23  that.  He didn't choose to do that despite the court's

24  specific request or willingness to accept a motion to

25  reconsider everything that he had done when he issued his

1  order around May 20th.

2         JUDGE MILLETT:  Okay, thank you.  I'm afraid my

3  time is up, so thank you.

4         JUDGE SRINIVASAN:  Thank you.  Judge Pillard.

5         JUDGE PILLARD:  I have no questions.

6         JUDGE SRINIVASAN:  Thank you.  Judge Wilkins.

7         JUDGE WILKINS:  No questions.

8         JUDGE SRINIVASAN:  Thank you.  Judge Rao.

9         JUDGE RAO:  No further questions.

10        JUDGE SRINIVASAN:  Thank you.  Thank you, Ms.

11 Wilkinson.

12        MS. WILKINSON:  Thank you, Your Honor.

13        JUDGE SRINIVASAN:  We will now hear rebuttal from

14 Ms. Powell and General Wall.  In light of the lateness of

15 the hour, let's hear two minutes of rebuttal, but that time

16 will be uninterrupted.  Ms. Powell.

17        MS. POWELL:  Thank you, Your Honor.

18        JUDGE SRINIVASAN:  Welcome back.

19        FURTHER ORAL ARGUMENT OF SIDNEY POWELL, ESQ.

20              ON BEHALF OF THE PETITIONER

21        MS. POWELL:  Thank you.  This is a criminal case

22 in which a man's liberty and entire life has been consumed

23 by four years of litigation that the Executive has now

24 determined within its sole discretion should never have been

25 brought against him.  He has been under the scourge of this

MR

1  criminal process now for almost four years.  Mr. Gleason has

2  no valid role here whatsoever.  It's the process itself

3  since May 7th that has been part of the abuse that General

4  Flynn has suffered.

5        These are completely unprecedented proceedings,

6  and the reason they are is because they should never have

7  happened.  Mandamus doesn't need to have an order to seek

8  review of.  Its very purpose and existence is to correct a

9  usurpation of power or the district judge exceeding his

10  authority, which he did the very minute he appointed Mr.

11  Gleason to step into this case in the role of a prosecutor

12  essentially when the Executive Branch in its sole discretion

13  decided this case should never have been brought to begin

14  with.

15        So he's been through this for almost four years

16  now, cost him millions of dollars, had to sell his house

17  because of it, been called a traitor and treasonous for

18  absolutely no reason.  And not any of this should have

19  happened.  So it is imperative that this Court restore the

20  rule of law and issue the writ of mandamus to compel the

21  judge to grant the motion to dismiss and disqualify Judge

22  Sullivan.  Because the very thought, the very fact that he

23  thinks he has an interest that he can petition for rehearing

24  to this Court on is sufficient evidence of the appearance of

25  bias that mandates his disqualification under this Court's

MR

1   decision in <u>Al-Nashiri</u>.

2           The appointment of the amicus has to be vacated,

3   and the order must be dismissed immediately as a matter of

4   law on the face of the motion itself.  To borrow from the

5   Second Circuit decision in <u>HSBC</u>, put simply, the court's

6   role is not as a super prosecutor to second-guess a core

7   function of the Executive Branch but as a mutual arbiter of

8   law.  He's lost that neutrality.  If not sooner, then at

9   least by the time he filed a petition for rehearing in which

10  he has no standing and which has required an additional

11  thousand hours of defense work to deal with.  So we ask --

12          JUDGE SRINIVASAN:  Thank you, Ms. Powell.  Please

13  finish.

14          MS. POWELL:  I was just going to say we ask that

15  the petition for rehearing be flatly denied with clear

16  <u>Ligon</u>-like language and the order of dismissal entered and

17  stamped by this Court itself as it has the authority to do.

18          JUDGE SRINIVASAN:  Thank you, Ms. Powell.  General

19  Wall.

20          FURTHER ORAL ARGUMENT OF JEFFREY B. WALL, ESQ.

21          ON BEHALF OF THE U.S. DEPARTMENT OF JUSTICE

22          MR. WALL:  Thank you, Your Honor.  To be honest, I

23  feel a bit rope-a-doped.  The district court appointed an

24  amicus who had urged an intensely factual inquiry.  In its

25  panel briefs, the district judge raised a host of specific

1  factual questions and noted the Government had not put in

2  affidavits and declarations.  Even the rehearing petition

3  calls for a developed factual record.  Before the panel,

4  counsel backed away from factual development.  Today,

5  counsel steps back even further and suggests there's not

6  much the court can ask, and we can decline to answer.

7          Counsel seems to be defending the process on the

8  ground that it might be meaningless.  I think that tepid

9  defense gives away the game.  Either the process is exactly

10  what we have all understandably feared, in which case

11  mandamus is warranted, or the process could not possibly

12  call into question the reasons on the face of the motion to

13  dismiss, in which case mandamus is warranted.

14          In the event this Court disagrees, yes, we think

15  it should provide clear guidance for further proceedings in

16  three ways.  First, it should reiterate that the

17  Constitution and Fokker leave a very limited role for the

18  district court, which does not mean an independent, non-

19  deferential public interest analysis.  Second, we think the

20  Court should, as the panel dissent did, make clear that the

21  parties are not required to engage in discovery or put on

22  evidence.  Third and finally, the Court should require a

23  quick decision so that the defendant and Government may, if

24  necessary, return to this Court for relief.

25          But to be clear, none of this should be necessary.

MR

1    When Fokker says that dismissing charges is an Executive

2    decision and that there is no substantial role for courts,

3    it's impossible to square that with an invitation to the

4    public to participate, the appointment of a hostile amicus

5    to oppose the Government's motion, a full four-brief

6    schedule and hearing, all backed by the threat of contempt

7    and all in the face of a judgment by the Attorney General of

8    the United States that a prosecution here is no longer in

9    the interests of justice.  Yes, this is an extraordinary

10   (indiscernible), but the district court has teed up an

11   extraordinary conflict with the separation of powers.  The

12   United States respectfully submits that the writ should

13   issue.  Thank you.

14            JUDGE SRINIVASAN:  Thank you, General Wall.  And

15   thank you to all counsel for your arguments this morning and

16   this afternoon.  We will take the case under submission.

17            (Whereupon, at 1:19 p.m., the proceedings were

18   concluded.)

19

20

21

22

23

24

25

MR

### DIGITALLY SIGNED CERTIFICATE

I certify that the foregoing is a correct transcription of the electronic sound recording of the proceedings in the above-entitled matter.

_____          __August 17, 2020___
Mary Rettig                                          Date

DEPOSITION SERVICES, INC.