**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MICHAEL T. FLYNN,<br><br>                       Defendant. | Case No. 17-cr-232 (EGS) |

**REPLY BRIEF FOR COURT-APPOINTED *AMICUS CURIAE***

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

ARGUMENT .................................................................................................................... 1

I.  The Court Has Discretion Under Rule 48(a) to Deny the Government's Motion
    for Leave to Dismiss ............................................................................................ 1

    A.  There Is a Live "Case or Controversy" Before the Court ......................... 1

    B.  The Court Has Discretion to Deny Leave Under Rule 48(a) .................... 2

    C.  Denial of a Rule 48(a) Motion Is Appropriate Where the Statement of
        Reasons Is Deficient or Where There Is Evidence of Gross Abuse ....... 7

II. The Court Should Deny the Government's Motion for Leave to Dismiss
    Under Rule 48(a) ............................................................................................... 10

    A.  The Government's Statement of Reasons Is Deficient and Pretextual ............ 11

        1.  Materiality ................................................................................... 11

        2.  Falsity ......................................................................................... 16

        3.  Interests of Justice ...................................................................... 18

    B.  The Government's Motion Reflects a Gross Abuse of Prosecutorial Power ........ 20

III. The Court Should Account for Flynn's Perjury in Sentencing Him on the
     False Statements Offense ................................................................................. 21

CONCLUSION ............................................................................................................... 24

## TABLE OF AUTHORITIES

CASES

*Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891 (2020) ..........................9

***Foster v. Chatman**, 136 S. Ct. 1737 (2016)..................................................................11, 16, 19

*Geleta v. Gray*, 645 F.3d 408 (D.C. Cir. 2011) ..........................................................16

*In re Flynn*, 961 F.3d 1215 (D.C. Cir. 2020), *rev'd en banc*, No. 20-5143, 2020 WL 5104220 (D.C. Cir. Aug. 31, 2020) (per curiam) ....................................................4

*In re Michael T. Flynn*, No. 20-5143, 2020 WL 5104220 (D.C. Cir. Aug. 31, 2020) (en banc) (per curiam)........................................................................................2

*In re Richards*, 213 F.3d 773 (3d Cir. 2000) ..........................................................8

*In re United States*, 345 F.3d 450 (7th Cir. 2003) ..........................................................10

*Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749 (5th Cir. 2001) (en banc) ................................5

*Rinaldi v. United States*, 434 U.S. 22 (1977) ..........................................................2, 4

*St. Regis Paper Co. v. United States*, 368 U.S. 208 (1961) ..........................................................9

*United States ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228 (D.C. Cir. 2012)..........................4, 5

***United States v. Ammidown,** 497 F.2d 615 (D.C. Cir. 1973)............................................. *passim*

*United States v. Carrigan*, 778 F.2d 1454 (10th Cir. 1985) ..........................................................2

***United States v. Cowan**, 524 F.2d 504 (5th Cir.1975)..........................................................4, 5

*United States v. Dale*, 782 F. Supp. 615 (D.D.C. 1991) ..........................................................15

*United States v. Derr*, 726 F.2d 617 (10th Cir. 1984) ..........................................................8

***United States v. Fokker Servs. B.V.**, 818 F.3d 733 (D.C. Cir. 2016)................................. *passim*

*United States v. Goodson*, 204 F.3d 508 (4th Cir. 2000)..........................................................2

*United States v. Hamm*, 659 F.2d 624 (5th Cir. 1981)..........................................................2, 5

*United States v. Jacobo-Zavala*, 241 F.3d 1009 (8th Cir. 2001) ..........................................................2

*United States v. James*, 861 F. Supp. 151 (D.D.C. 1994)..........................................................8

*United States v. KPMG LLP*, No. 05 Crim. 903, 2007 WL 541956 (S.D.N.Y. Feb. 15, 2007) ...................................................................................................................8

*United States v. Pitts*, 331 F.R.D. 199 (D.D.C. 2019) ....................................................6

*United States v. Rosenberg*, 108 F. Supp. 2d 191 (S.D.N.Y. 2000) ..............................8

*United States v. Salinas*, 693 F.2d 348 (5th Cir. 1982) .................................................8

*United States v. Scantlebury*, 921 F.3d 241 (D.C. Cir. 2019).......................................3

*United States v. Smith*, 55 F.3d 157 (4th Cir. 1995) .................................................2, 10

*United States v. Stanchich*, 550 F.2d 1294 (2d Cir. 1977)...........................................20

*United States v. Strayer*, 846 F.2d 1262 (10th Cir. 1988) .............................................2

*United States v. Verrusio*, 762 F.3d 1 (D.C. Cir. 2014)...............................................11

*United States v. Wallace*, 848 F.2d 1464 (9th Cir. 1988) ..............................................2

*United States v. Wecht*, No. 06 Crim. 26, 2008 WL 65605 (W.D. Pa. Jan. 4, 2008) ....................8

**CONSTITUTIONAL PROVISIONS, STATUTES, AND RULES**

U.S. CONST. art. II.........................................................................................................6, 8

U.S. CONST. art. III .................................................................................................*passim*

18 U.S.C. § 3553............................................................................................................21

31 U.S.C. § 3730..............................................................................................................4

Fed. R. Crim. P. 48 ..................................................................................................*passim*

**OTHER AUTHORITIES**

Max Cohen, *Trump Says He Would Welcome Michael Flynn Back to His Administration*, POLITICO (July 15, 2020, 11:08 AM), https://perma.cc/3QFP-ZXH7. ...................................20

Transcript of Oral Argument, *In re Michael T. Flynn,* No. 20-5143 (D.C. Cir. Aug. 11, 2020). ....................................................................................................................8, 9

*Oversight of the Department of Justice: Political Interference and Threats to Prosecutorial Independence: Hearing Before the H. Comm. on the Judiciary*, 116th Cong. 2 (2020) (statement of Aaron S.J. Zelinsky, Assistant United States Att'y)...........23, 24

Paul Le Blanc et al., *White House Admits Trump Was Involved in Firing of Top US Attorney After Trump Claimed He Wasn't*, CNN (June 22, 2020), https://perma.cc/TPB5-ZXGQ. ....................................................................................24

Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court,"* 73 STAN. L. REV. ONLINE 28 (2020). ...............................................................5, 9

U.S. DEP'T OF JUSTICE, MISSION STATEMENT, https://perma.cc/Z64L-6P44.............................22

## PRELIMINARY STATEMENT

To describe the Government's Motion to Dismiss as irregular would be a study in understatement. In the United States, Presidents do not orchestrate pressure campaigns to get the Justice Department to drop charges against defendants who have pleaded guilty—twice, before two different judges—and whose guilt is obvious. And the Justice Department does not seek to dismiss criminal charges on grounds riddled with legal and factual error, then argue that the validity of those grounds cannot even be briefed to the Court that accepted the defendant's guilty plea. Nor does the Justice Department make a practice of attacking its own prior filings in a case, as well as judicial opinions ruling in its favor, all while asserting that the normal rules should be set aside for a defendant who is openly favored by the President.

Yet that is exactly what has unfolded here. There is clear evidence that the Government's Motion to Dismiss the case against Defendant Michael T. Flynn rests on pure pretext. There is clear evidence that this motion reflects a corrupt and politically motivated favor unworthy of our justice system. In the face of all this, the Government makes little effort to refute (or even address) the evidence exposing its abuses—and the arguments it does advance only further undermine its position. Instead, the Government invokes a parade of false formalities that would reduce this Court to a rubber stamp. The Government's motion should therefore be denied.

## ARGUMENT

## I.   THE COURT HAS DISCRETION UNDER RULE 48(A) TO DENY THE GOVERNMENT'S MOTION FOR LEAVE TO DISMISS

### A.   There Is a Live "Case or Controversy" Before the Court

The Government claims that there is no longer a live dispute between the parties because "the United States and [Flynn] agree that the information should be dismissed." ECF No. 227 at

12. Flynn echoes this view. *See* ECF No. 228 at 2, 6–7. Yet neither the Government nor Flynn has identified any case finding that the mere *submission* of an unopposed Rule 48(a) motion divests a court of Article III jurisdiction. And as the D.C. Circuit has now held, both parties are mistaken: "While the Government has filed a motion to dismiss and Petitioner (defendant below) consents, there remains a case or controversy unless and until that motion is granted by the District Court." *In re Michael T. Flynn*, No. 20-5143, 2020 WL 5104220, at *1 n.2 (D.C. Cir. Aug. 31, 2020) (en banc) (per curiam) (citing *Rinaldi v. United States*, 434 U.S. 22, 31–32 (1977) (per curiam)).

### B.    The Court Has Discretion to Deny Leave Under Rule 48(a)

The Government appears uncertain whether this Court has discretion to deny an unopposed Rule 48(a) motion. The clear gist of the Government's brief is a categorical "no," but at times it veers closer to "maybe." *See, e.g.*, ECF No. 227 at 9 (stating that Rule 48 "ordinarily" limits discretion to protecting defendants' interests); *id*. at 12 (contending that protecting defendants is the "*principal* object" of the rule) (emphasis added). Regardless, to the extent the Government would reduce this Court to a rubber stamp, its arguments must be rejected.

That is true, first and foremost, because the Government's contentions conflict with the text and history of Rule 48(a). *See* ECF No. 225 at 26–29. They also conflict with considered decisions from many courts of appeals. *See, e.g.*, *United States v. Jacobo-Zavala*, 241 F.3d 1009, 1012 (8th Cir. 2001); *United States v. Goodson*, 204 F.3d 508, 512 (4th Cir. 2000); *United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995); *United States v. Wallace*, 848 F.2d 1464, 1468 (9th Cir. 1988); *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir. 1988); *United States v. Carrigan*, 778 F.2d 1454, 1463 (10th Cir. 1985); *United States v. Hamm*, 659 F.2d 624, 629–30 (5th Cir. 1981). Finally, they conflict with the D.C. Circuit's influential opinion in *United States*

*v. Ammidown*, which explained that Rule 48(a) still "gives the court a role" when "the defendant concurs in the dismissal." 497 F.2d 615, 620 (D.C. Cir. 1973).

The Government fails to refute these arguments. Instead, it mistakenly presents *United States v. Fokker Servs. B.V.*, 818 F.3d 733 (D.C. Cir. 2016), which addressed a motion to exclude time under the Speedy Trial Act, as conclusively answering every question at stake here. Much of the Government's reading of *Fokker*'s *dicta* is unobjectionable. Like *Ammidown* and many other cases, *Fokker* affirmed the primacy of the Executive with respect to charging and dismissal decisions. *See Fokker*, 818 F.3d at 742–43. It made clear that Rule 48(a) motions cannot be denied on the basis of mere disagreements with prosecutorial charging policies, *accord United States v. Scantlebury*, 921 F.3d 241, 250 (D.C. Cir. 2019), and reiterated that the Executive enjoys a strong presumption of regularity and good faith when seeking to dismiss charges, *see Fokker*, 818 F.3d at 741. *Fokker* also joined many other courts in emphasizing the constitutional separation of powers principles that structure the judicial role under Rule 48(a). *See id.* at 742–43. I have no quarrel with any of those principles, and indeed I embrace them.

But the Government falls short in its apparent effort to wring from *Fokker* a categorical rule that this Court has no authority to review the exercise of discretion that led to the instant Motion to Dismiss. *Fokker* did not silently "eviscerate[]" *Ammidown*, which it cited with approval. *Contra* ECF No. 227 at 14–15. Nor did it impliedly sideline text, history, and decades of cases. *Contra id.* at 18–19. Neither its holding nor its reasoning created an atextual asymmetry in Rule 48(a) by holding that courts *may* deny opposed motions—but *may not* deny unopposed ones. *Contra id. Fokker* indeed described protecting defendants as the "principal object" of the rule (not the "exclusive object"), but it also stated that "clear evidence" may overcome "the presumption of regularity" that prosecutors enjoy in wielding their charging power. 818 F.3d at

741–42. In these respects, *Fokker* cohered with precedent; it was not the sea change the Government claims it was. *See generally In re Flynn*, 961 F.3d 1215, 1229–30 (D.C. Cir.) (Wilkins, J., dissenting), *rev'd en banc*, No. 20-5143, 2020 WL 5104220 (D.C. Cir. Aug. 31, 2020) (per curiam).

This understanding of *Fokker* honors its treatment of *Ammidown* and stays true to text and history. It also aligns *Fokker* with *United States ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228 (D.C. Cir. 2012). In that False Claims Act (FCA) case, a *qui tam* relator objected to a proposed settlement between the Government and the defendant, citing a provision of the FCA requiring district courts to review proposed settlements for fairness, adequacy, and reasonableness. *See Schweizer*, 677 F.3d at 1232 (citing 31 U.S.C. § 3730(c)(2)(B)). The defendant responded that such review is forbidden by the separation of powers, arguing that courts cannot review the Executive's dismissal or settlement of claims under the Take Care Clause. *See id*. at 1235. But the D.C. Circuit disagreed, relying on cases interpreting Rule 48(a): "Although decisions not to prosecute may be immune from review, the same cannot be said of decisions to dispose of a pending case . . . . [S]ome limitations on the Executive Branch's dismissal authority may be valid despite the separation of powers." *Id.* (citing, *inter alia*, *Rinaldi v. United States*, 424 U.S. 22, 29–30 & n.15 (1977), and *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)).[1] The D.C. Circuit added that "judicial scrutiny of settlement agreements and similar devices is fairly common," even where the Executive is a litigant. *Schweizer*, 677 F.3d at 1236. The court led off its list of examples with Rule 48(a), again citing *Rinaldi* and *Cowan*, and then referenced judicial review of plea agreements, antitrust consent decrees, class action settlements, and settlements in

---

[1] *Schweizer*'s reliance on *Cowan* is notable because *Cowan*—in the section cited and relied upon by the D.C. Circuit—squarely holds that "the history of the Rule belies the notion that its only scope and purpose is the protection of the defendant." *Cowan*, 524 F.2d at 512.

shareholder derivative suits. *See id.* In each of these contexts, even where the parties agree and even where the Executive acts pursuant to its inherent power under Article II, courts may review consented-to dispositions to uphold important public and institutional interests. *See id.*

As *Schweizer* confirmed, the separation of powers principles that support district court discretion under Rule 48(a) are familiar to our legal system. Simply put, Rule 48(a) is "a power to check power." *Cowan*, 524 F.2d at 513. "[W]hen the Executive has made the decision to initiate the criminal case, its large discretion is narrowed considerably and the power to dispose of the case is shared in part with the Third Branch." *Riley v. St. Luke's Episcopal Hosp.*, 252 F.3d 749, 756–57 (5th Cir. 2001) (en banc); *see also* ECF No. 225 at 29–31.

The Government offers two arguments in its bid to escape that conclusion. Neither of them succeeds. *First*, it asserts that the Judiciary has no interest of its own to protect under Rule 48(a) because it "never exercises its coercive power." ECF No. 227 at 19 (quoting *Fokker*, 818 F.3d at 746). Rule 48(a), however, was drafted with an express recognition that abusive dismissals imperil core interests of the Judiciary. *See generally* Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court*," 73 STAN. L. REV. ONLINE 28 (2020). These include interests in the reality and appearance of judicial integrity, as well as the fair administration of justice. *See* ECF No. 225 at 27–31. They also include the Judiciary's interest in the proper exercise of its Article III power to enter—and, only where proper, to dissolve—guilty pleas.

*Second*, the Government claims it would "violate Article II" to deny a Rule 48(a) motion "on the grounds of 'abuse,' or even 'gross abuse.'" ECF No. 227 at 16 (citing *McCray v. United States*, 195 U.S. 27, 54, 56 (1904)). This argument is mistaken on the merits. *See, e.g.*, *Schweizer*, 677 F.3d at 1235–36; *Hamm*, 659 F.2d at 628–30; *Ammidown*, 497 F.2d at 619–22. It

also proves far too much. Even the Government admits that courts may deny leave under Rule 48(a) to "guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant through repeated prosecutions." ECF No. 198 at 10–11 (quoting *Fokker*, 818 F.3d at 742) (internal quotation mark omitted). But denial in such cases does not require a showing that the Government has actually violated a defendant's constitutional rights. Instead, it turns on a fact-intensive analysis of the Government's motives for dismissal and whether the Government has acted abusively. *See* ECF No. 225 at 35 & n.34 (collecting cases); *see also United States v. Pitts*, 331 F.R.D. 199, 203 (D.D.C. 2019) (Sullivan, J.). There is no principled reason why Article II of the Constitution would allow courts to engage in such inquiries for opposed Rule 48(a) motions, while disallowing it for unopposed motions. The fact that a defendant objects to the Executive's decision does not make it any less an exercise of Article II power, and there is no basis in text or history for asserting that courts are authorized exclusively to protect defendants' interests but not their own.

The Government's final argument is a straw man. I do not argue that this Court's authority to withhold leave under Rule 48(a) is greater after a guilty plea. I agree with the Government's contention that "Rule 48(a) sets forth a unitary leave-of-court standard—not one standard for proceedings before a plea and another standard for proceedings after a plea." ECF No. 227 at 21. Indeed, whereas the Government reads this "unitary" standard differently for opposed and unopposed motions, I have explained that it is truly unitary across *all* motions.

Accordingly, courts possess discretion in adjudicating Rule 48(a) motions at every stage of a criminal case. A Rule 48(a) motion may be denied the very day after charges are filed if the motion resulted from a bribe of the prosecutor. And a Rule 48(a) motion may be granted just

before the entry of judgment against a sentenced defendant, if the Government offers a credible

reason (*e.g.*, the defendant will cooperate in counter-terrorism investigations overseas).

This understanding is consistent with a recognition that the separation of powers concerns

inherent in the exercise of the discretion vested by Rule 48(a) will vary depending on the

circumstances—including the stage of the case. When a Rule 48(a) motion is made at the first

appearance, and denial of leave will require a case to be prosecuted against the Justice

Department's expressed position, a district court should consider the practical and constitutional

consequences of that decision while exercising its discretion.[2] The critical point is that no such

concerns are present here. Because the Court has already accepted Flynn's guilty plea and only

sentencing remains, the constitutional and practical concerns that would be present only in a pre-

plea setting are absent, and thus the Court need not account for them in exercising its discretion.

### C.    Denial of a Rule 48(a) Motion Is Appropriate Where the Statement of Reasons Is Deficient or Where There Is Evidence of Gross Abuse

There are two grounds on which the Court may deny leave under Rule 48(a): (1) if there

is clear evidence that the statement of reasons supporting a motion to dismiss is merely

pretextual; and (2) if there is clear evidence of gross prosecutorial abuse in relation to the

motion. *See* ECF No. 225 at 32–38. The Government's brief fails to demonstrate otherwise.

The Government first asserts the Court must accept at face value whatever reasons appear

in a Rule 48(a) motion and that it would cause "grave harm to the Executive Branch" if the Court

asked any follow-up questions. *See* ECF No. 227 at 17, 31. This argument is foreclosed by the

---

[2] Of course, the judge may decide those concerns are not insurmountable. After all, there are other settings in which the need to vindicate the independent interests of the Judiciary empowers a judge to appoint a prosecutor despite the unwillingness of the Justice Department to be involved. *See* Fed. R. Crim. P. 42(a)(2). On the other hand, the judge might conclude that case-specific concerns weigh in favor of granting leave to dismiss, as judges frequently exercise discretion in ways designed to avoid constitutional doubt or administrative burdens.

same precedents that sink the Government's broader claim of complete unaccountability.[3] A requirement that the Government provide "the real grounds upon which the application is based," *United States v. Rosenberg*, 108 F. Supp. 2d 191, 204–05 (S.D.N.Y. 2000)—and that "the reasons advanced for the proposed dismissal [be] substantial," *Ammidown*, 497 F.2d at 620—is inconsistent with a rule that forbids any judicial inquiry into the Government's stated reasons. Every purpose served by the reason-giving requirement of Rule 48(a) would be gutted if the Government were free to mislead the Court, or to proffer explanations that do not withstand even cursory consideration, or to declare that the Court is powerless to even inquire about any of the Government's asserted rationales. *See* ECF No. 225 at 32–34. For that reason, the Third Circuit has squarely held in the context of an unopposed motion that Rule 48(a) "allows inquiry into the circumstances surrounding a dismissal." *In re Richards*, 213 F.3d 773, 777 (3d Cir. 2000). In insisting otherwise, and in describing prosecutorial decisionmaking as cloaked by comprehensive Article II immunity, the Government advances radical arguments that would transform run-of-the-mill courtroom interactions into separation of powers violations. *See* Transcript of Oral Argument at 67:7–14, *In re Flynn*, No. 20-5143 (D.C. Cir. Aug. 11 2020) (Garland, J.) ("In the day when I was an Assistant U.S. Attorney, accusations were thrown my way by the defense counsel. This is part of the job of being a prosecutor. I don't understand how merely being a subject of accusations from the other side or even from the judge who often questioned what the Government was doing, if each of those was a separation of powers case, we would have a large number of mandamus cases in the circuit.").

---

[3] *See, e.g.*, *In re Richards*, 213 F.3d 773, 788 (3d Cir. 2000); *United States v. Derr*, 726 F.2d 617, 619 (10th Cir. 1984); *United States v. Salinas*, 693 F.2d 348, 352 (5th Cir. 1982); *United States v. James*, 861 F. Supp. 151, 155 (D.D.C. 1994) (Richey, J.); *United States v. Wecht*, No. 06 Crim. 26, 2008 WL 65605, at *4 (W.D. Pa. Jan. 4, 2008); *United States v. KPMG LLP*, No. 05 Crim. 903, 2007 WL 541956, at *5 (S.D.N.Y. Feb. 15, 2007).

While the Executive is entitled to protect its privileges and deliberations, it is not entitled to offer pretextual reasons and demand that the Court mechanically accept them. "[T]he Government should turn square corners in dealing with the people"—and with the Judiciary—and can be held accountable when it fails to abide by reason-giving requirements essential to the rule of law. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020) (quoting *St. Regis Paper Co. v. United States*, 368 U.S. 208, 229 (1961) (Black, J., dissenting)).

As demonstrated by history, Rule 48(a)'s requirement that the Government explain itself exists partly to smoke out the corrupt dismissal of criminal charges against the politically well-connected precisely because they are well-connected. *See* ECF No. 225 at 27–29, 34–38. The Government offers no refutation of this evidence, apart from citing cases saying that the "principal object" of Rule 48(a) is to protect defendants. *See* ECF No. 227 at 12. But this begs the question of what *other* objects Rule 48(a) might have—particularly in cases where there is no risk of harassment. History and case law afford a clear answer to that question, while the Government offers none. *See* Frampton, *Rule 48(a) Dismissals*; *Ammidown*, 497 F.2d at 620–21.

In passing, the Government suggests that Rule 48(a) might allow courts to deny unopposed motions only where the prosecutor accepts a bribe, or takes vacation instead of conducting a trial, and thus the request for leave of court does not reflect "the authoritative position of the Executive Branch." ECF No. 227 at 23. *But see* Transcript of Oral Argument at 90:5–18, *In re Flynn*, No. 20-5143 (Deputy Solicitor General Wall denying any "substantial role for courts to perform . . . scrutiny and oversight" in a case where there is irrefutable evidence of the Attorney General being bribed by the defendant to submit a Rule 48(a) motion). This argument about "authoritative" positions has no basis in text, history, or precedent, and appears

to have been specially invented by the Government for this proceeding. That alone justifies setting it aside.[4] But there is more: the Government's proposed limitation is also inconsistent with decisions explaining that "examples" of abuse justifying denial of leave include "personal dislike of the victim" and "dissatisfaction with the jury impaneled." *Smith*, 55 F.3d at 159. Neither these examples nor any other judicial account of discretion to deny leave under Rule 48(a) is bounded by the Government's newly minted theory. Rule 48(a) is therefore properly read as guarding against corrupt, politically motivated dismissals—the very concern that motivated adoption of the rule in the first place.

## II.    THE COURT SHOULD DENY THE GOVERNMENT'S MOTION FOR LEAVE TO DISMISS UNDER RULE 48(a)

Under a correct interpretation of Rule 48(a), the Government's request for leave of court should be denied. I have already demonstrated that the Government's stated reasons for seeking dismissal are pretextual. The Government does not even respond to most of my points. Instead, it ignores the heart of my argument, makes several key concessions, and adheres to a few notable errors. It also pivots away from its earlier reasons, proposing a new ground for dismissal—"the interests of justice"—that it addresses in just one short paragraph that fails to actually explain anything. *See* ECF No. 227 at 25–26. All this irregularity is still more evidence of pretext— which itself is a basis to deny the motion—and also reinforces my second argument for denying the Government's motion: clear evidence of a corrupt, politically motivated decision.

---

[4] The Government implies these examples, and the "authoritative" position theory, have some basis in a Seventh Circuit decision. But Judge Posner's opinion discussed bribed and vacationing prosecutors only to suggest that in such cases the Government would presumably intercede and continue with the prosecution. *See In re United States*, 345 F.3d 450, 454 (7th Cir. 2003).

### A.     The Government's Statement of Reasons Is Deficient and Pretextual

If the Government's reasons for moving to dismiss the case against Flynn were legitimate and not pretextual, "we would expect at least *one* of the two purportedly principal justifications for the [motion] to withstand closer scrutiny." *Foster v. Chatman*, 136 S. Ct. 1737, 1752 (2016) (emphasis in original). Instead, the Government's half-hearted, largely incomplete opposition to my filing confirms that neither of the reasons it offered for dismissal was credible. And its attempt to advance a brand-new rationale for dismissal in a reply brief only further underscores the pretextual nature of the original motion and demonstrates that its reasons crumble upon scrutiny.

### 1.     Materiality

The primary rationale set forth in the Government's motion was a claim that it does not believe it can prove Flynn's lies were material to the FBI's investigation. *See* ECF No. 198 at 2, 13–18. In response, I identified a host of extraordinary legal and factual errors in the Government's position, as well as arbitrary departures from its prior positions in this case and its positions in many other cases. As to each point, the Government has either offered no response at all or responded with the same errors and irrelevancies evident in its original motion. I will identify four particularly striking examples of the Government's failure to defend its own claims.

*First*, and most fundamentally, I have explained that the Government's motion misstated the legal standard governing materiality. *See* ECF No. 225 at 40–41. This was no minor error: it went to the core of an element that the Government now supposedly doubts it can prove. Contrary to the Government's motion, which inverts the position it routinely takes elsewhere (and previously took here), the materiality standard is an objective one. The correct standard asks only whether the kind of statements Flynn made were "capable of affecting" the "general function" that the FBI was carrying out when it interviewed him. *United States v. Verrusio*, 762

11

F.3d 1, 21 (D.C. Cir. 2014). And on the facts of this case, the materiality analysis could not be more straightforward. Flynn lied about the nature and extent of his communications with a senior official of a hostile foreign power that had been sanctioned for interfering with the U.S. presidential election. He lied to FBI agents carrying out the FBI's general function of investigating potential threats to national security. Lies about such communications could adversely affect the ability of the FBI to perform this function. Those lies were obviously material.

Although the Government attempts to respond to other arguments in my brief, it offers no response here. It does not claim I have misapprehended or misapplied the law. It never explains why one legal rule—the one set forth in its motion—applies to Flynn, while a different legal rule applies to everyone else. It never explains why its own lawyers erred so grievously in stating the law. It never explains why Flynn's statements, in this setting, were not even *capable* of affecting the FBI's general function. The Government's silence on these crucial points is, by itself, sufficient to establish that its claims about materiality are pretextual.

*Second*, I have explained that the evidence demonstrating materiality here is so strong that the Government could satisfy an even tougher standard than the law requires—specifically, by demonstrating that Flynn's statements had an *actual* effect on a *specific* FBI investigation. *See* ECF No. 225 at 41–42, 48–49. The Court need not take my word alone for this point. It can take the Government's own word, as set forth in briefs submitted (unlike the Rule 48(a) motion) by the prosecutors who actually investigated this case, explaining that Flynn's lies in fact affected the FBI's investigation into contacts between the Trump campaign and the Russian government (a.k.a. "Crossfire Hurricane"). *See* ECF No. 132 at 10–11 (stating that Flynn's "false statements to the FBI . . . were absolutely material"). The Court has already reached that same

conclusion in an opinion upholding the Government's original position. *See* ECF No. 144 at 49–53.[5]

In yet another irregular move, the Government disavowed all this in a single footnote, *see* ECF No. 198 at 18 n.6, the incoherence of which I have described in detail, *see* ECF No. 225 at 47–49. As I explained, Flynn's lies distorted the Crossfire Hurricane investigation by preventing the FBI from pursuing leads that would have been exposed to scrutiny if he had answered truthfully (and that were in fact later opened to scrutiny, once Flynn decided to cooperate). *See id.* at 48–49, n.42. These leads included questions like the following: Whom else did Flynn consult about the requests he made of Kislyak? What did they say to Flynn about his contacts with Russian officials? And why did Flynn lie to Vice President-Elect Mike Pence and other administration officials about the calls? *See id.* at 49.[6]

Here, too, the Government has no real answer. Rather than show that Flynn's statements were not material to the FBI's overall national security investigation, it asks only whether Flynn's lies were material to the FBI's discrete investigation of bad acts by Flynn himself. *See* ECF No. 227 at 26–27. But as the Government is aware, this artificially distorts the materiality analysis, especially if Flynn's falsehoods were capable of affecting (and did in fact affect) the

---

[5] In its bipartisan report assessing Russia's interference with the 2016 presidential election, the U.S. Senate Intelligence Committee similarly concluded that the "series of communications between Flynn and Kislyak" on sanctions was relevant to assessing "what Moscow sought to gain and the counterintelligence vulnerabilities associated with the Transition." REPORT OF THE SELECT COMMITTEE ON INTELLIGENCE UNITED STATES SENATE ON RUSSIAN ACTIVE MEASURES CAMPAIGNS AND INTERFERENCE IN THE 2016 U.S. ELECTION, VOLUME 5: COUNTERINTELLIGENCE THREATS AND VULNERABILITIES, S. Doc. No. 116-XX, at 702 (1st Session 2020).

[6] The Government used to recognize this. *See* ECF No. 132 at 11 ("It was imperative that the FBI determine whether and why such communications with the Russian Ambassador had occurred. The defendant's false statements inhibited the FBI's ability to obtain that critical information, raised questions about why the defendant would lie to the FBI about such communications, and fundamentally influenced the FBI's investigative activity going forward.").

FBI's broader investigation. It is hard to imagine another case in which the Government has employed such specious reasoning to cast doubt on its own case. Its efforts to marginalize its own prior views and, just as importantly, the Court's prior holding on materiality are similarly remarkable. While it is true that a jury will ultimately decide materiality—and in that respect the Court's opinion is not dispositive—the jurors will do so within the legal framework established by this Court, which establishes the law of the case. Yet the Government assiduously ignores that framework, and doubles down by ignoring this Court's conclusions as to materiality. These contortions further confirm pretext.

*Third*, even accepting the Government's mistaken view of the law and the facts, I have shown that the supposed difficulties cited by the Government are either irrelevant, nonexistent, or both. *See* ECF No. 225 at 42–50. That is especially true regarding (1) the legally meaningless bureaucratic formalities that the Government advances as all-important in this case (but not in any other), *see id.* at 42–44, and (2) the Government's claim that Flynn's lies were not material because he did not commit any other provable crime before uttering them to the FBI (a claim the Government could not believe is legally relevant and that courts have rejected), *see id.* at 44–45.

As to the first point, the Government now abandons *any* discussion of the supposedly "critical"—but actually irrelevant—"predication threshold" that formed the backbone of its original motion. *See* ECF No. 198 at 16; *see also id.* at 2–5, 13–18. Instead, the Government refers vaguely to an irrelevant internal draft closing memorandum, "disagreement" about protocol, and other supposed "procedural irregularities," ECF No. 227 at 2, 26–27, none of which is either particularly irregular or has any legal significance in proving materiality, *see* ECF No. 225 at 42–44. The Government seeks to conceal its retreat by kicking up administrative dust, but the bottom line is that it no longer stands by its own motion's implausible reasoning.

14

Turning to the second point, the Government implies—inconsistently with the law, logic, and its own positions elsewhere—that Flynn's false statements could be material only if he was "an agent of Russia" at the time he made them. *See* ECF No. 227 at 26. But even here, the Government remains unwilling to say—and surely does not believe—that guilt of some other crime is a prerequisite for false statements liability, particularly in the counterintelligence arena, where the goal is often to rule out or neutralize possible national security threats. *See* ECF No. 225 at 44–45; *see also United States v. Dale*, 782 F. Supp. 615, 625–26 (D.D.C. 1991). And so the Government's arguments on this point are window dressing, lacking any legal significance and serving only to confirm that its supposed concern about materiality is pretextual.

The Government retreats on other points as well. For example, it acknowledges (as it must, in the face of its own positions) that the agents' knowledge of what was said on the call does not absolve Flynn of liability. ECF No. 227 at 29. It then characterizes this fact as bearing indirectly on "the jury's assessment of the significance a reasonable decisionmaker would attach to the information." *Id.* Of course, as explained above, a jury would not hesitate to conclude that "reasonable decisionmaker[s]" who knew what Flynn said on the call would still be affected by his lie, as the FBI was here: those decisionmakers would have many questions about *why* Flynn decided to lie to others in the White House (and, for that matter, to the FBI) about his contacts with a senior official of a hostile foreign government that had just been sanctioned for interfering in the U.S. presidential election.

*Finally*, the Government trots out a new explanation for its materiality rationale. The Government previously claimed to believe that the available evidence, taken at face value, showed Flynn's statements to be immaterial. But it now says it has a different concern: that the witnesses it would rely upon to *introduce* the evidence might lack credibility with a jury. ECF

No. 227 at 27–28. As this Court well knows, shifting explanations are classic red flags of pretext. *See, e.g.*, *Foster*, 136 S. Ct. at 1751; *Geleta v. Gray*, 645 F.3d 408, 413 (D.C. Cir. 2011).

In any event, this claim makes no sense. The Government asserts without explanation that it "would need to prove its case" by calling as witnesses individuals from the FBI whose credibility could be impeached.  ECF No. 227 at 27. But two of these "witnesses" were not present for Flynn's false statements, so it is entirely unclear why their testimony would be required or even permitted (under evidentiary rules) in the Government's case-in-chief. And more generally the Government's professed credibility concerns are not plausible. They center on professed evidence of political bias by an interviewing agent that both the Government and Flynn have known about from the start of the case, *see* ECF No. 122 at 8–9; ECF No. 144 at 25–34 (this Court discussing, at length, the history of the referenced text messages and why they do not cast doubt on Flynn's guilty plea), and two pages after assailing the agents' credibility, the Government does a back-flip to proclaim the very same agents "highly experienced investigators" whose assessment of the interview should be credited, *see* ECF No. 227 at 30. As I previously explained—without response from the Government—"[n]o competent lawyer thinks this way." ECF No. 225 at 55.

In sum, the Government has offered no response at all to most of my explanation of the many errors, irrelevancies, and arbitrary departures in its Rule 48(a) motion—and it offers wholly deficient responses to the remainder. This is powerful confirmation that its professed concerns about materiality are insubstantial, manufactured, and deficient under Rule 48(a).

## 2.    Falsity

The same is true of the Government's supposed concerns about proving falsity. In my brief, I pointed out that Flynn has *repeatedly* confessed (including under oath and penalty of perjury) that he knew full well he was lying to the FBI. ECF No. 225 at 18–21, 51. Moreover, he

has made such confessions in a multitude of settings, and to multiple investigators and officials, before and after his guilty plea. *See id.* Those numerous and consistent confessions should all but settle the question of whether the Government can prove falsity. The Government has no response. It does not clarify the nature or extent of those past admissions of guilt. It does not discuss the circumstances under which they could be used against Flynn or explain why they would lack probative force. It does not even try to explain how they are consistent with the Government's professed doubts that Flynn is in fact guilty. If the Government doubted its ability to prove falsity, it would have said something here. Instead, it said nothing.

As if that were not enough to dismiss the Government's Rule 48(a) motion as pretextual, the Government affirmatively rejects Flynn's own principal account of why his prior admissions of falsity should not be credited: namely, that prosecutors had threatened him with charges against his son. *Compare* ECF No. 160-23 at 8 ¶ 34 (Flynn Declaration describing "intense pressure," including "a threat to indict my son Michael"), *and id.* at 11 ¶ 46 ("I allowed myself to succumb to the threats from the government to save my family . . . ."), *with* ECF No. 227 at 28 n.1 ("[T]he [G]overnment's motion is not based on defendant Flynn's broad allegations of prosecutorial misconduct. Flynn's allegations are unfounded . . .").

Given that Flynn repeatedly admitted to lying—and given that the Government is unwilling to accept Flynn's claims about why those admissions were untrue—the Government struggles to offer a coherent account of why it doubts its ability to prove falsity. So it simply asserts, once again, that the FBI agents' notes of Flynn's interview statements might be partially inaccurate and that Flynn might have forgotten the conversations with Kislyak here at issue. This

claim is not credible for many reasons, which I set out in my brief and which the Government wholesale fails to address, let alone refute. *See* ECF No. 225 at 52–55.[7]

The Government has now had two chances to explain why its sudden doubt that Flynn lied is worthy of credence. It has failed. It is not entitled to leave of court on this basis.

### 3.     Interests of Justice

The Government's Rule 48(a) motion stated that "continued prosecution of Mr. Flynn would not serve the interests of justice." ECF No. 198 at 12. It then elaborated on the reason: "the Government does not have a substantial federal interest in penalizing a defendant for a crime that it is not satisfied occurred and that it does not believe it can prove beyond a reasonable doubt." *Id.* The Government thus asserted that the "interests of justice" would not be served by pursuing a case in which the Government doubts it could prove materiality or falsity. *See id.* at 12–20. No free-standing "interest of justice" policy reason is apparent in the Government's motion.

But the Government now insists otherwise, asserting that it has always advanced a third "separate" and "alternative" reason for dismissal wholly unrelated to the difficulty of proving the elements of its case. ECF No. 227 at 23, 25–26. While this conclusion would come as a surprise

---

[7] With respect to the notes of Flynn's statements, as I explained previously, there is nothing unusual about the fact that certain questions that appear in the agents' detailed FD-302 may not be readily apparent from their contemporaneous handwritten notes, which are non-verbatim aids of the agents' independent recollections. ECF No. 225 at 54 (citing ECF No. 144 at 41). The Government now concedes that such minor "discrepancies would not always be significant" in other cases, *see* ECF No. 227 at 31—presumably those not involving the President's political allies—and thus that these purported concerns have no independent force. But the Government now implies that the jury would have to "trust the interviewing agents' account" of the questions it says do not appear in the notes in order to convict Flynn. *Id.* That is wrong. Even if a jury were to disregard aspects of the FD-302 that lack a direct analog in both agents' contemporaneous notes, it would *still* have before it multiple material false statements on which to convict Flynn on the counts to which he has twice pleaded guilty. ECF No. 132 at 4–6; ECF No. 144 at 42–49.

to any careful reader of the Government's motion, it would not surprise anyone familiar with doctrines designed to uncover pretext. *See Foster*, 136 S. Ct. at 1751 (where a party's "principal reasons" have "shifted over time," it can be inferred "that those reasons may be pretextual").

And what exactly is the Government's non-merits reason for dismissal? The answer is unclear, since the Government never quite explains its newly minted rationale in the sole paragraph devoted to it. *See* ECF No. 227 at 25–26. It gestures vaguely at "enforcement priorities" and "policy assessments," *id.* at 24, then rattles off a disjointed string of allegations regarding "circumstances surrounding the interview," *id.* at 25. But these are just the same facts that are legally irrelevant to its materiality and falsity assertions. The Government does not explain what additional supposed significance it has suddenly "assess[ed]" those facts to have, or why Flynn's conviction disserves the "interests of justice," *see id.* at 23, given that his guilt is both conceded and readily provable. While the Government conveniently asserts that these "policy assessments" are "quintessentially unreviewable," *id.* at 24, it never actually explains what the policy is, what judgment it made, or why the conduct of the FBI agents in question would warrant dismissal of this case given Flynn's demonstrable and confessed guilt. *See id.* at 23–26.

As I have already shown, Rule 48(a) requires the Government to explain its reasons; a conclusory assertion that dismissal advances the public interest does not suffice. Decorating such an assertion with several unexplained and legally irrelevant facts does not transform it into a "policy judgment." That is particularly true where the rationale appears nowhere in the Government's Motion to Dismiss and does nothing more than reflect the Government's inability to sustain its pretexts. The Government's attempt to dress up a politically motivated dismissal that smacks of impropriety as a "policy judgment" should be rejected.

19

**B.       The Government's Motion Reflects a Gross Abuse of Prosecutorial Power**

The Government's failure to defend its own pretextual reasoning is matched by its silence on the subject of abuse of power. The Government makes virtually no effort to deny or rebut the powerful evidence that its Rule 48(a) motion improperly seeks to place this Court's imprimatur on a corrupt, politically motivated favor for the President's friend and ally.

As detailed in my opening brief, Flynn is a close ally of President Trump, who personally pressured the FBI director to "let this go" within weeks of Flynn's crime, who has since repeatedly made clear his desire for Flynn to avoid criminal liability, *see* ECF No. 225 at 17, 56–59, and who has expressed a desire to re-hire Flynn within his administration, *see* Max Cohen, *Trump Says He Would Welcome Michael Flynn Back to His Administration*, POLITICO (July 15, 2020, 11:08 AM), https://perma.cc/5EG4-CLTQ. Allowing dismissal for these "irregular" reasons would necessarily "implicate this Court" in denigrating "settled, foundational norms of prosecutorial independence." ECF No. 225 at 59.

The Government does not disagree with any of this—presumably because it cannot. Indeed, the Government nowhere even *mentions* the President's personal lobbying, let alone his virulent attacks on those previously involved in this prosecution. Based entirely on evidence already in the public view, the only coherent explanation for the Government's exceedingly irregular motion—as well as its demonstrable pretexts—is that the Justice Department has yielded to a pressure campaign led by the President for his political associate. This Court need not "exhibit a naiveté from which ordinary citizens are free" by pretending otherwise. *United States v. Stanchich*, 550 F.2d 1294, 1300 (2d Cir. 1977). It should instead deny the Government's request for leave under Rule 48(a) and proceed to sentencing.

III.    **THE COURT SHOULD ACCOUNT FOR FLYNN'S PERJURY IN SENTENCING HIM ON THE FALSE STATEMENTS OFFENSE**

My opening brief explained why the Court should adhere to standard practice in handling Flynn's perjury. In a case in which the Government is trying to give special treatment to a criminal defendant because he is favored by the President, the Court would send an important message about the rule of law by refusing to accord special treatment to that defendant's perjury. Rather, as it would in other like cases, the Court should take Flynn's perjury into account in applying the U.S. Sentencing Guidelines and in considering the sentencing factors set forth in 18 U.S.C. § 3553(a) when Flynn is sentenced. *See* ECF No. 225 at 60–72.

The Government does not respond to that recommendation. It instead argues at length against a different approach—issuing an Order to Show Cause for criminal contempt—that is available but unnecessary here. *See* ECF No. 227 at 32–41. In opposing an argument that I do not make, however, the Government concedes several important points.

*First*, the Government evidently agrees (because it could not dispute) that district courts regularly calculate a defendant's sentence based upon—and make adjustments to account for— the submission of false testimony in an attempt to withdraw a plea. *See* ECF No. 225 at 71 n.70 (collecting cases); ECF No. 227 at 32–41.

*Second*, the Government does not challenge the fact that Flynn has deliberately made multiple false statements to this Court. While the Government phrases that concession in the hypothetical—"[e]ven assuming that Flynn committed perjury"[8]—the conclusion is inescapable. After all, Flynn himself has admitted under oath on multiple occasions that he knowingly lied to

---

[8] ECF No. 227 at 33; *see also id.* at 32 ("Even if Flynn committed perjury before this Court"), 38 ("Even assuming that Flynn had the intent to commit perjury"), 40 ("[E]ven if Flynn committed criminal contempt"), 40 ("Even if Flynn made false statements before this Court").

the FBI in multiple ways—but has then claimed under oath that he never lied to the FBI. *See* ECF No. 225 at 18–25, 62–65. Flynn argues that he should not be held accountable because his statements were the product of "stunning" prosecutorial misconduct and "wrongful pressure . . . applied to coerce" the first set of statements under oath. ECF No. 228 at 17. But the Government categorically rejects these accusations, assuring the Court that Flynn's "broad allegations of prosecutorial misconduct" are "unfounded." ECF No. 227 at 28 n.1.

*Third*, and most telling, the Government does not address Flynn's perjurious sworn statement that the Justice Department engaged in misconduct that coerced him into pleading guilty by threatening to prosecute his son.[9] *See* ECF No. 225 at 64. But in refuting Flynn's claims of prosecutorial misconduct as "unfounded," the Government makes clear there was no prosecutorial misconduct, coercion, or secret deals. Thus, in defense of its Rule 48(a) motion, the Government confirms that Flynn not only lied to this Court but is now doubling down by continuing to submit false allegations of prosecutorial misconduct to excuse his false denial of guilt.

Ultimately, the Government's efforts to dodge the key facts and legal issues applicable to Flynn's lies under oath are emblematic of its broader effort to scuttle this case, in a stark abdication of its own Mission Statement: to "seek just punishment for those guilty of unlawful behavior[,] and to ensure fair and impartial administration of justice for all Americans."[10] The Court can now restore fairness and impartiality to the administration of justice by denying the Government's motion and accounting for Flynn's perjurious conduct at the sentencing stage.

*     *     *     *     *

---

[9] Of course, this allegation of misconduct directly contradicts Flynn's repeated statements under oath that there were no such threats. *See* ECF No. 225 at 18–21, 63–64.

[10] U.S. DEP'T OF JUSTICE, MISSION STATEMENT, https://perma.cc/Z64L-6P44.

At bottom, the Government's understanding of Rule 48(a) is not fundamentally different from mine. We both agree that Rule 48(a) motions should be granted in the ordinary case because prosecutors can be presumed to act consistently with their duty as officers of the Court and stewards of the public interest. This presumption is grounded in our separation of powers and in the finest traditions of federal prosecution. But as the Government is loath to admit here, that principle includes a corollary: in the extraordinary case, where the Justice Department seeks to mislead the Court and the public about its reasons for dismissing criminal charges, and where clear evidence indicates that corrupt motives have undermined the Justice Department's proper role, this Court has an independent obligation to guard against such abuse. That duty arises from the text and history of Rule 48(a)—it is, quite literally, why Rule 48(a) exists—and that duty is grounded firmly in Article III of the Constitution.

The record before the Court demonstrates conclusively that this case is extraordinary. No other evidence is necessary or need be relied upon to reach that conclusion. Yet this motion does not arise in a vacuum. Each passing day brings troubling indications of improper interference with criminal cases involving the President's personal and political associates.

Most notably, there is now concrete evidence of another prosecutorial decision infected by "heavy pressure from the highest levels of the Department of Justice . . . based on political considerations." *See Oversight of the Department of Justice: Political Interference and Threats to Prosecutorial Independence: Hearing Before the H. Comm. on the Judiciary*, 116th Cong. 2 (2020) (statement of Aaron S.J. Zelinsky, Assistant U.S. Att'y), https://perma.cc/48ZV-23EK. This prosecutorial decision concerned the Government's sentencing recommendation for Roger Stone, another well-connected political ally of the President who committed serious crimes. There, as here, the President publicly assailed the Department of Justice for pursuing the

prosecution. And there, as here, the Department of Justice succumbed to that corrupt pressure—though only after all four career prosecutors resigned from the case. As one of those career prosecutors later testified, senior officials at the Department of Justice exerted "significant pressure" to go easy on Stone, against the record of the case, customary prosecutorial practice, and departmental policy. *Id.* at 2. This occurred "because of [Stone's] relationship to the President," *id.*, and "because the U.S. Attorney"—who also signed the Rule 48(a) motion in these proceedings—"was 'afraid of the President,'" *id.* at 10.[11]

Of course, those examples merely provide context. In resolving the Government's request for leave, the only evidence that ultimately matters is the record I have outlined above: a record replete with patently pretextual attempts to justify what is plainly a corrupt political errand for the President. Given this evidence, the Court should not allow itself to become an instrument of the Government's abuse of the judicial process or the public trust. That would sully Article III. Under Rule 48(a), the Court can—and should—deny the Government's motion, adjudicate any other pending motions, and then proceed to sentence Flynn for his crime.

## CONCLUSION

For the foregoing reasons, the court-appointed *amicus curiae* respectfully submits that the Government's Motion to Dismiss should be denied and no Order to Show Cause should issue.

---

[11] Perhaps those officials had reason to worry: the President recently fired a prominent and well-respected U.S. Attorney who was investigating his associates. *See* Paul Le Blanc et al., *White House Admits Trump Was Involved in Firing of Top US Attorney After Trump Claimed He Wasn't*, CNN (June 22, 2020), https://perma.cc/TPB5-ZXGQ.

Dated:   New York, NY
September 11, 2020

Respectfully submitted,


 _/s/ John Gleeson_ _____
John Gleeson[12]
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
jgleeson@debevoise.com

*Court-appointed* Amicus Curiae

Marshall L. Miller
Joshua Matz
KAPLAN HECKER & FINK LLP
350 Fifth Avenue
Suite 7110
New York, New York 10118
(212) 763-0883
mmiller@kaplanhecker.com
jmatz@kaplanhecker.com

Daniel Aun
Elizabeth Nielsen
Tara P. Ganapathy
Natascha Born
DEBEVOISE & PLIMPTON LLP
919 Third Avenue
New York, New York 10022
(212) 909-6000
daun@debevoise.com
enielsen@debevoise.com
tganapathy@debevoise.com
nborn@debevoise.com

David A. O'Neil (D.C. Bar No. 1030615)
DEBEVOISE & PLIMPTON LLP
801 Pennsylvania Avenue NW
Suite 500
Washington, DC 20004
(202) 383-8000
daoneil@debevoise.com

---

[12] On May 18, 2020, the Court ordered that I be admitted *pro hac vice* to appear in this matter, be conferred full privileges to file and receive papers through the Court's CM/ECF system in this proceeding, and be excused from the local counsel requirement of Local Criminal Rule 44.1(c)(1). *See* Minute Order of May 18, 2020.