# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | )   Case No.: 17-cr-00232-EGS |
| | ) |
| MICHAEL T. FLYNN, | ) |
| | ) |
| Defendant. | ) |

## MOTION TO DISQUALIFY JUDGE EMMET SULLIVAN
## AND FOR OTHER RELIEF

HARVEY & BINNALL PLLC
Jesse R. Binnall
Abigail C. Frye
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
afrye@harveybinnall.com
Admitted *Pro Hac Vice*

SIDNEY POWELL, P.C.
Sidney Powell
  *Counsel of Record*
Molly McCann
2911 Turtle Creek Blvd., Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted *Pro Hac Vice*
molly@federalappeals.com
Admitted *Pro Hac Vice*

**Attorneys for Lt. Gen. Michael T. Flynn (USA) (Retired)**

# TABLE OF CONTENTS

1.  Judge Sullivan's Immediate Disqualification is Mandatory. .............................1

2.  Judge Sullivan's Prejudicial Statements and Conduct
    Have Become Increasingly Shrill, Unprecedented, and
    Prejudicial—and Apparently Influenced by
    Extra-Judicial Sources..........................................................................4

    a. His false and defamatory comments at the
       December 18, 2018 hearing echoed those of Rachel Maddow............................4

    b. Judge Sullivan issued an order inviting anyone
       to participate as amicus after receiving an email from
       Robbins Russell firm on behalf of Former Watergate Prosecutors. .................5

    c. Judge Sullivan read John Gleeson's WaPo op-ed and
       adopted the procedure recommended therein to delay and derail the
       government's motion to dismiss. ..........................................................6

    d. Judge Sullivan's ex parte involvement of his personal
       counsel Beth Wilkinson. ....................................................................8

    e. Judge Sullivan has flouted his own standards of justice
       by refusing to enforce his Brady order and obstinately ignoring
       the merit of the shocking new evidence produced by the government............10

3.  The Court has Failed to Proceed with Dispatch. ...............................................12

4.  The Court's Bias and Rancor Was Palpable
    at the September 29, 2020, Hearing. ...............................................................13

    a. The Court repeatedly tortured law and procedure
       to prosecute General Flynn. ...............................................................16

    b. Straw #1:  sentencing commenced in 2018......................................................17

i

c. Straw #2: The Court repeatedly denounced the failure
of the parties to seek reconsideration of prior orders......................................18

d. Straw #3: Looking for future prosecution of uncharged conduct
—despite the fact there was no FARA offense by General Flynn—and
Straw #4:  The court falsely stated Flynn refused to cooperate
in the EDVA. ...................................................................................................18

e. Straw #5:  Dismissal without prejudice—evincing his
political interest in prosecution by a new attorney general. ..........................20

f. Straw #6: Repeated invocation of having pled guilty twice. ..........................20

g. Additional documents of ex parte communications
must be produced to the defense. ...................................................................21

ARGUMENT ........................................................................................................23

I.   Judge Sullivan's disqualifying conduct escalated
and compounded the appearance of bias from December 18, 2018,
through the hearing on September 29, 2020. ...................................................23

II.  A court that appears to be taking its marching orders
from extra-judicial sources undermines the public confidence
in the judicial system that section 455(a) was designed to protect. ...............23

III. The Gleeson Appointment is Further Evidence
of Antagonism and Bias Requiring Recusal. ..................................................24

IV. The Court's Improper Reliance on Ex Parte
and Extra Judicial Communications Require its Disqualification. ...............28

V.  Section 455(a), 455(b)(1), and (b)(5)(i) require
disqualification when the judge effectively becomes a party
to the case and usurps the role of the prosecutor..........................................30

CONCLUSION...................................................................................................32

# TABLE OF AUTHORITIES

<span style="font-variant:small-caps">Cases</span>

*Berger v. United States*, 255 U.S. 22 (1921). ------------------------------------------- 23

*Brown v. Baden*, 815 F.2d 575 (9th Cir. 1987).------------------------------------- 12, 27

*Burton v. Am. Cyanamid*, 690 F. Supp. 2d 757 (E.D. Wis. 2010) ----------------------- 30

*Caterpillar Inc. v. Lewis*, 519 U.S. 61 (1996)------------------------------------------- 18

*Greenlaw v. United States,* 554 U.S. 237 (2008) ------------------------------------------ 28

*Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199 (D.D.C. 2013) --------------- 15

*Hollingsworth v. Perry*, 558 U.S. 183 (2010) ---------------------------------------------- 7

*In re Al Nashiri*, 921 F.3d 224, 237 (D.C. Cir. 2019)-------------------- 1, 2, 21, 31, 32, 33

*In re Flynn*, 961 F.3d 1215 (D.C. Cir. 2020) ---------------------------------------------- 12

*In re Flynn*, No. 20-5143, 2020 WL 5104220 (D.C. Cir. Aug. 31, 2020) ------------ 13, 32

*In re Murchison*, 349 U.S. 133 (1955) ----------------------------------------------------- 3

*In re United States*, 345 F.3 450 (7th Cir. 2003) (Posner, J.)------------------------------ 30

*Ligon v. City of New York,* 736 F.3d 171 (2d Cir. 2013)-------------------------------- 12, 27

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)-------------------------- 2

*Rinaldi v. United States*, 434 U.S. 22 (1977). -------------------------------------------- 20

*Roberts v. Bailar*, 625 F.2d 125 (6th Cir. 1980) ----------------------------------------- 31

*United States v. Cooley*, 1 F.3d 985 (10th Cir. 1993)------------------------------------ 30, 31

*United States v. Cordova*, 806 F.3d 1085 (D.C. Cir. 2015) --------------------------------- 31

*United States v. Ford*, 993 F.2d 249 (D.C. Cir. 1993)------------------------------------------- 17

*United States v. Heldt*, 668 F.2d 1238 (D.C. Cir. 1981) ----------------------------2, 24, 31

*United States v. Holland*, 519 F.3d 909 (9th Cir. 2008) ------------------------------- 31

*United States v. Microsoft Corp.*, 253 F.3d 34 (D.C. Cir. 2001)-------------------------- 31

*United States v. Ortega-Ascanio,* 376 F.3d 879 (9th Cir. 2004)--------------------------- 17

*United States v. Pitts*, 331 F.R.D. 199 (D.D.C. 2019) -------------------------------------- 20

*United States v. Sineneng-Smith*, 140 S. Ct. 1575 (2020) ------------------------------ 10, 28

*Williams v. Pennsylvania*, 136 S. Ct. 1899 (2016) ----------------------------------------3

## STATUTES

28 U.S.C. § 455(a) -------------------------------------------------------------------------------1

28 U.S.C. § 455(b)(1)----------------------------------------------------------------------------1

28 U.S.C. § 455(b)(5)(i) --------------------------------------------------------------------------2

## OTHER AUTHORITIES

Byron Tau, *FBI Gave Two of Clinton's Attorneys
    Immunity as Part of FBI's Email Probe*, WSJ (Sept. 23, 2016, 2:07 PM)
    https://www.wsj.com/articles/two-clinton-attorneys-granted-immunity-as-part-of-
    fbis-email-probe-1474653809. ----------------------------------------------------------9

Code of Conduct for United States Judges Canon 3(4), Commentary. ----------------- 27

Code of Conduct for United States Judges Canon 3(A)(4) -------------------------------5, 27

Jeffrey Toobin, *A Case from a Judge's Past May Offer a Clue*
*About How the Michael Flynn Inquiry Will Proceed*, THE NEW YORKER, May 20,
2020------------------------------------------------------------------------------------------- 24

John Gleeson, David O'Neil, and Marshall Miller, *The Flynn Case*
*Isn't Over Until the Judge Says It's Over*,
WASH. POST (May 11, 2020, 6:52 PM),
https://www.washingtonpost.com/opinions/2020/05/11/flynn-case-isnt-over-until-
judge-says-its-over/---------------------------------------------------------------------------6, 26

Rowan Scarborough, *Sidney Powell's private letter to AG Barr*
*pressed for action on Michael Flynn case*, THE WASH. TIMES (Feb. 16, 2020),
https://www.washingtontimes.com/news/2020/feb/16/secret-letter-to-william-barr-
set-stage-for-indepe/ ------------------------------------------------------------------------- 14

The Rachel Maddow Show Transcript 12/17/18, *Russia Targeted*
*Mueller*, MSNBC (Dec. 17, 2018, 9:00 PM),
http://www.msnbc.com/transcripts/rachel-maddow-show/2018-12-17------------------5

Tierney Sneed, *Flynn's New Lawyer Asked Barr Directly*
*to Throw Out Flynn's Case*, TPM (Oct. 1, 2019, 4:00 PM),
https://talkingpointsmemo.com/muckraker/flynn-powell-barr-justice-department-
discovery-------------------------------------------------------------------------------------- 14

Pursuant to 28 U.S.C. §§ 455(a), (b)(1), and (b)(5)(i), General Michael T. Flynn moves to disqualify Judge Emmet G. Sullivan from further participation in this case. At least by the time of his failure to follow the mandamus of the D.C. Circuit panel and his decision with his own retained counsel to take the unprecedented and improper step of filing his petition for rehearing en banc, Judge Sullivan "cast an intolerable cloud of partiality over his subsequent judicial conduct" and "risk[ed] [] undermining the public's confidence in the judicial process." *In re Al Nashiri*, 921 F.3d 224, 237, 239 (D.C. Cir. 2019). ""[A]ll that must be demonstrated to compel recusal," then, is "a showing of an appearance of bias...sufficient to permit the average citizen reasonably to question a judge's impartiality."" *Id.* at 234. Judge Sullivan satisfied that standard when he actively litigated against General Flynn. He has since far exceeded it—rising to the level of demonstrating actual bias. The court's contempt and disdain for the defense was palpable throughout the hearing on September 29, 2020, including when defense counsel made an oral motion for his immediate disqualification, which he refused to allow even to be fully stated for the record. Hr'g Tr., *United States v. Flynn*, No. 17-232, (D.D.C. Sept. 29, 2020) at 64-65 (hereinafter "Hr'g Tr. 09-29-20"). Accordingly, the defense files this motion to confirm the oral motion made at the hearing.

1. **Judge Sullivan's Immediate Disqualification is Mandatory.**

28 U.S.C. § 455(a) requires that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned," and § 455(b)(1) states that a judge "shall disqualify himself... where he has a personal bias or

prejudice concerning a party…"  In both instances, the test is objective, because "what matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994).  And "a showing of an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question a judge's impartiality is all that must be demonstrated to compel recusal under" § 455(a).  *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981).

Because "unbiased, impartial adjudicators are the cornerstone of any system of justice worthy of the label, [a]nd because '[d]eference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges,' jurists must avoid even the appearance of partiality." *Al Nashiri,* 921 F.3d at 233-234.  The court jettisoned any appearance of neutrality before and throughout the hearing.  Judge Sullivan's words and conduct prior to and during the hearing have had a profound negative affect on "public confidence in the integrity of the judicial process" and require him to recuse himself under §455(a) and §455(b)(1).  *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).  *See* Ex. A (a random sample of tweets of citizens in response to the hearing).

28 U.S.C. § 455(b)(5)(i) requires a judge to disqualify himself when "he is a party to the proceeding."  When the district judge aggressively petitioned for rehearing *en banc* as if he were a party, it invoked the application of this section sufficiently to trigger the application of 455(a) for the appearance of bias and 455(b)(1) for personal bias against General Flynn himself.  Indeed, by the time of the en banc oral argument, the court's conduct was so far afield from all precedent, the Solicitor

General was compelled to arrive at "the view that there is now at least a question about appearance of impartiality." *In re Flynn*, No. 20-5143, (D.C. Cir. Aug. 11, 2020) Hr'g Tr. at 54 (herein after "Hr'g Tr. 08-11-20"). Any question that might have existed then has since been resoundingly answered.

Even more fundamentally, due process guarantees "an absence of actual bias" on the part of a judge. *In re Murchison*, 349 U.S. 133, 136 (1955). Because bias is "easy to attribute to others and difficult to discern in oneself," the Supreme Court has imposed an objective standard here, too, that asks whether "as an objective matter, the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.'" *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (internal citations omitted). Even more, "the Court has determined that an unconstitutional potential for bias exists when the same person serves as both accuser and adjudicator in a case." *Williams*, 136 S. Ct. at 1901. As described in *Williams*, *Murchison* dealt with a judge who "became convinced that two witnesses were obstructing the proceeding" and who therefore charged and convicted the two of perjury and contempt respectively. The Court determined that "[h]aving been a part of [the accusatory] process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused." *Murchison*, 349 U.S. at 137. Judge Sullivan became an accuser in this case no later than when he sought charges against General Flynn for perjury or contempt, and it is a violation of General Flynn's due process right for him to remain the judge.

The circumstances of this case lead any reasonable observer to believe that the current judge has a personal interest in the outcome, is irreparably biased against General Flynn, and is actively litigating against him. His continued presence in the case has become a national scandal undermining confidence in the impartiality of the federal judicial system and faith in the rule of law writ large. The Constitution compels, and all statutory bases require ("*shall* recuse"), that Judge Sullivan recuse himself from any further proceedings even if he has granted the motion to dismiss with prejudice.

### 2. Judge Sullivan's Prejudicial Statements and Conduct Have Become Increasingly Shrill, Unprecedented, and Prejudicial—and Apparently Influenced by Extra-Judicial Sources.

### a. His false and defamatory comments at the December 18, 2018 hearing echoed those of Rachel Maddow.

At what was scheduled as a "sentencing hearing" but became an "extended colloquy," Judge Sullivan expressed his "disdain" and "disgust" for General Flynn's conduct, stated that he "sold [his] country out," and suggested that General Flynn had committed "treason." Hr'g Tr., *United States v. Flynn*, No. 17-232, (D.D.C. Dec. 18, 2018) at 33, 36 (herein after "Hr'g Tr. 12-18-18"). There was no factual basis for these defamatory comments. Neither General Flynn's plea to a violation of 18 U.S.C. 1001 nor the statement of offense made such allegations. Indeed, the prosecution never suggested nor considered that General Flynn committed treason. Hr'g Tr. 12-18-18 at 36. Judge Sullivan's defamatory characterizations became instant international news—before he returned to the bench and partially walked them back.

4

Remarkably, Judge Sullivan's most abusive word choices seem to have originated from the Rachel Maddow show on MSNBC the night before the hearing. Rachel Maddow made the charge that General Flynn "sold his country out" and "was a national security advisor to a presidential candidate who was secretly also a foreign agent" for the Turkish government. The Rachel Maddow Show Transcript 12/17/18, *Russia Targeted Mueller*, MSNBC (Dec. 17, 2018, 9:00 PM), http://www.msnbc.com/transcripts/rachel-maddow-show/2018-12-17 ("Maddow Tr."). Ms. Maddow also spent considerable time discussing the Eastern District of Virginia indictment that was unsealed that day against Flynn's former business partner related to their company's FARA filing. *Id.* She wondered aloud whether the indictment "cuts for [Flynn] or against him" and promised her audience that "[w]e should get clues to that both by the length of the sentence that Flynn gets tomorrow, but also hopefully by any remarks the judge may make in court explaining the sentencing decision." *Id.* It was improper for the court to allow extra-judicial media commentary to affect his conduct. Code of Conduct for United States Judges Canon 3(A)(4) ("a judge should not… consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers").

**b. Judge Sullivan issued an order inviting anyone to participate as amicus after receiving an email from Robbins Russell firm on behalf of Former Watergate Prosecutors.**

Upon the government's unexpected Motion to Dismiss with Prejudice, ECF No. 198, the court abandoned any pretense of neutrality and became increasingly

influenced by extra-judicial sources.  By email to chambers on May 11, 2020, the "Watergate Prosecutors" advocated that Judge Sullivan investigate the reasons for the government's decision to move to dismiss the case with prejudice and argued that he could also take guidance from amici such as themselves and others.  Ex. B; *See* ECF No. 204.

This partisan group was clearly adverse and antagonistic to General Flynn, yet it served as the catalyst for Judge Sullivan to issue a de facto open invitation to the entire bar for amici—after previously denying *twenty-four* requests by others to file in the case on behalf of General Flynn.  *See* ECF No. 204-1.  In his inexorable determination to press forward with these unconstitutional, burdensome, costly, and intrusive proceedings, Judge Sullivan denied two promptly filed defense motions objecting to any amicus and requesting grant of the motion to dismiss.  ECF Nos. 202, 203.

### c. Judge Sullivan read John Gleeson's *WaPo* op-ed and adopted the procedure recommended therein to delay and derail the government's motion to dismiss.

On May 11, 2020, Mr. Gleeson—a long-time mentor and proponent of Mueller Special Counsel Office lieutenant Andrew Weissmann—published an opinion piece in the *Washington Post* and argued that:

> [Judge Sullivan] can appoint an independent attorney to act as a "friend of the court," ensuring a full, adversarial inquiry... If necessary, the court can hold hearings to resolve factual discrepancies.[1]

---

[1] John Gleeson, David O'Neil, and Marshall Miller, *The Flynn Case Isn't Over Until the Judge Says It's Over*, WASH. POST (May 11, 2020, 6:52 PM), https://www.washingtonpost.com/opinions/2020/05/11/flynn-case-isnt-over-until-judge-says-its-over/ .

Within forty-eight hours, Judge Sullivan took Gleeson's op-ed as a job application and appointed him to implement Gleeson's plan. Ignoring that prosecutions rest within the core duties of the Executive Branch, Sullivan instructed Gleeson "to present arguments against the government's Motion to Dismiss" and General Flynn and further ordered Gleeson to "address whether the Court should issue an Order to Show Cause why Mr. Flynn should not be held in criminal contempt for perjury." ECF No. 205.

As the court knows, General Flynn filed a Petition for Writ of Mandamus because, inter alia, the court exceeded the bounds of Article III and intruded into the core functions of the Executive Branch under Article II when it appointed Mr. Gleeson. Moreover, Mr. Gleeson and his partner David O'Neil of Debevoise & Plimpton LLP had a conflict of interest that should have foreclosed their participation in this case in any way—even if appointment of an amicus in a criminal case to pile on against a defendant were itself lawful.[2] Mr. O'Neill represented none other than Sally Yates—the Deputy Attorney General who oversaw the corrupt investigation and January 24, 2017 interview of General Flynn. The FBI agents reported to Ms. Yates that they believed General Flynn and that he was forthcoming, yet Ms. Yates still went to the White House twice to campaign to have General Flynn fired. Judge

---

[2] It is an entirely separate violation for the court to enlist any amici in a criminal case against a defendant—as counsel for General Flynn briefed immediately before and after the court invited their participation. ECF No. 204. It is also contrary to the Local Rules and improper for the court to solicit amicus briefs in a criminal case at all. No rule allows it—unlike in civil cases. *See Hollingsworth v. Perry*, 558 U.S. 183, 196 (2010) ("The Court's interest in ensuring compliance with proper rules of judicial administration is particularly acute when those rules relate to the integrity of the judicial process.").

Sullivan appointed Yates' lawyer and firm to oppose General Flynn and the Government.

Mr. Gleeson's conflict not only included that of his partner O'Neil, but also included his longstanding friendship with Mueller team leader Andrew Weissmann, who sought to "get Flynn." ECF No. 249-1. From every angle, Mr. Gleeson's biases and participation further impugn the integrity of the process and magnify the appearance of bias of the court. *Id.* Gleeson repeatedly referred to the other counsel as his adversary, and worse. In speaking to the court in clear political tones, he said: "It is our justice department too." Hr'g Tr. 09-29-20 at 113, 114, 130. Gleeson plainly identified with the court and reinforced their mutual and unequivocal political bias against General Flynn. Gleeson even argued against General Flynn's motion to withdraw his plea though he was not tasked to do so. Hr'g Tr. 09-29-20 at 104.

General Flynn moved at the hearing and moves again now to strike Gleeson's pleadings and arguments, and those of all amici in the district court. The defense also moves to strike the ex parte communications from counsel for Peter Strzok and Andrew McCabe. Hr'g Tr. 09-29-20 at 59-61.

### d. Judge Sullivan's ex parte involvement of his personal counsel Beth Wilkinson.

Not only did the court violate separation of powers and engage a like-minded, hostile amicus to prosecute General Flynn, but it also engaged its own personal, outside counsel to assist in the Court's continued prosecution of General Flynn—an engagement which apparently continues to this day.

8

When the FBI began its probe into the scandal that Hillary Clinton had maintained a private server for her emails while Secretary of State, Clinton aides turned to Beth Wilkinson. Overlooking conflicts of interest, Wilkinson represented four: Cheryl Mills, Jake Sullivan, Heather Samuelson, and Phillippe Reines. Mills and Samuelson were given immunity despite their roles in destroying evidence in the form of Clinton emails.[3]

On September 29, 2020, while General Flynn's counsel was still arguing in the district court against amicus Gleeson, Director of National Intelligence John Ratcliffe released a letter in which he announced the declassification of new, shocking evidence. Ex. C. In response to a request from Congress about "information related to the Federal Bureau of Investigation's Crossfire Hurricane Investigation," Ratcliffe declassified this information showing that "U.S. Presidential candidate Hillary Clinton had approved a campaign plan to stir up a scandal against U.S. Presidential candidate Donald Trump by tying him to Putin and the Russians' hacking of the Democratic National Committee." *Id.* Just as of yesterday, DNI Ratcliffe has declassified additional supporting information. Ex. D. DNI Ratcliffe also stated that the report regarding Mrs. Clinton was not Russian disinformation. Accordingly, there is evidence that Hillary Clinton approved the plan to create the fraud of Russian collusion that provided the pretext to frame General Flynn.

---

[3] Byron Tau, *FBI Gave Two of Clinton's Attorneys Immunity as Part of FBI's Email Probe*, WSJ (Sept. 23, 2016, 2:07 PM) https://www.wsj.com/articles/two-clinton-attorneys-granted-immunity-as-part-of-fbis-email-probe-1474653809.

That John Gleeson has been permitted to act as a de facto private prosecutor, and Beth Wilkinson has been advocating on behalf of the court to continue prosecuting General Flynn, has created a circus of conflicts of interest and made a mockery of what should be a court of *law*—not cheap partisan politics.

The defense also moves to strike the unsolicited and improper letters to the court by counsel for Peter Strzok and Andrew McCabe.  Neither has any role in this case, nor should they be seeking to influence it.  Their complaints should have been presented to the Government that provided the documents to General Flynn.  Facts are presented to a court by the parties through the adversarial system, not by counsel for the culprits implicated in targeting and framing the defendant.  The Supreme Court just months ago held that trial courts and appellate courts alike are bound by the principle of party presentation.  *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020).  Parties present evidence and courts decide based on that evidence.  McCabe and Strzok are not parties, and their letters are not evidence and must be stricken.  *See* Canon 3(4) of the Code of Conduct for United States Judges.

**e.  Judge Sullivan has flouted his own standards of justice by refusing to enforce his *Brady* order and obstinately ignoring the merit of the shocking new evidence produced by the government.**

Perhaps the most baffling "special treatment" of General Flynn that exemplifies the court's stunning bias is the court's refusal to enforce its own *Brady* order—even in the face of government admissions of suppressed *Brady* evidence recently produced.  Hr'g Tr. 09-29-20 at 87.  In fact, the court has not expressed the *slightest* concern about the long-standing suppression of extraordinary *Brady*

evidence by the FBI and Special Counsel members Brandon Van Grack and Zainab Ahmad.  Inexplicably, the court has repeatedly minimized and discounted its *Brady* orders, which required production of *Brady/Giglio* evidence despite a guilty plea. ECF Nos. 10, 20.  Despite the importance of the order and the court's public claims to champion the *Brady* obligation, in both public hearings in this case, the court has been dismissive of its *Brady* orders.[4]  When General Flynn requested production of evidence even Mr. Van Grack had identified as exculpatory, this court responded with a scathing 92-page opinion denying production of a single document.  ECF No. 144. Showing no concern for the government's refusal to produce documents identified as exculpatory to the defense by Mr. Van Grack himself, the court began its tome with a baseless attack on defense counsel for "plagiarism" for including sections of argument from a brief in one of her own cases that she cited and linked.  ECF Nos. 109, 144.

Even more troubling is the court's blatant refusal to review and acknowledge the magnitude of the stunning exculpatory evidence the government has produced in the last several months—which completely belies the court's 92-page denial of *Brady* and defeats any prosecution of General Flynn.  ECF Nos. 230, 231, 235, 237, 248, 249,

---

[4] "And let me just say -- and I think I said this at the last hearing -- I issue *Brady* -- my standing *Brady* order in every case. I was not the judge who took the plea, but even after the plea was entered, I issued a Brady order because that's what I do. I issue *Brady* orders in every case. And it wasn't because I thought anything, suggested anything, knew anything, it's just because that's what I do, and no one should read anything else into it." Hr'g Tr., *United States v. Flynn*, No. 17-232, (D.D.C Sept. 10, 2019) at 5-6; "It's significant to note that in this case as in every other case before this Court, the Court issues a standing *Brady* order regardless of the stage of the proceeding that's come before the Court. It was immaterial to this Court that Mr. Flynn had already entered a plea of guilty at the time the Court entered its standing order. The Court was not going to depart from its standard practice and that's the reason, the sole reason why the Court entered its standing *Brady* order." Hr'g Tr. 09-29-20 at 6-7.

251, 255, 257. There are only two material differences between the government misconduct here and that in the *Stevens* case. The first is that the government misconduct against General Flynn is far worse—and it goes all the way to the Obama oval office. ECF No. 248; Exs. D, E. The second is the name of the Attorney General. As the court noted on the record last week, "Eric" moved to dismiss the wrongful *Stevens* case—with prejudice—and the court granted it immediately on a two-page motion. Hr'g Tr. 09-29-20 at 90.

### 3. The Court has Failed to Proceed with Dispatch.

Most courts would have granted the motion to dismiss as a matter of routine on the record within days of its filing. Not only does all precedent require granting the motion to dismiss, but none warranted so much as a hearing because the government's motion was documented with multiple productions of long suppressed *Brady* material. Even when ordered to dismiss by writ of mandamus, this court did not grant the motion. Instead, it litigated the issues itself. [5]

---

[5]      A three-judge panel of the Court of Appeals granted the mandamus, vacated Gleeson's appointment, and ordered Judge Sullivan to grant the government's Motion to Dismiss with prejudice. *In re Flynn*, 961 F.3d 1215 (D.C. Cir. 2020). A federal district court is supposed to follow the orders of the Court of Appeals. As *Ligon v. City of New York* quoted from the Ninth Circuit: "In the scheme of the federal judicial system, the district court is required to follow and implement our decisions just as we are oath-and-duty-bound to follow the decisions and mandates of the United States Supreme Court." 736 F.3d 166, 171 n.12 (2d Cir. 2013) (quoting *Brown v. Baden*, 815 F.2d 575, 576 (9th Cir. 1987).

         The court not only failed to follow the order of the Court of Appeals, but it also delayed an additional fifteen days and in an unprecedented move, petitioned for rehearing *en banc*. If the court had not crossed the line earlier, it should be beyond dispute that assuming the mantle of an active litigant, filing a petition for rehearing *en banc* as if he were a party, to protract litigation against a defendant in his courtroom, triggered the application of 455(a), 455(b)(1), and 455(b)(5)(i). Disqualification was mandatory upon that act—a point with which the Solicitor General agreed at oral argument before the *en banc* court. Hr'g Tr. 08-11-20 at 54. In any rational world, the *en banc* D.C. Circuit's refusal to disqualify Judge Sullivan must be reversed. It is wrong. A federal judge in this

This court's protraction of the process further evinces its bias.  Despite the en banc D.C. Circuit's reminder that "[a]s the underlying criminal case resumes in the District Court, we trust and expect the District Court to proceed with appropriate dispatch," this judge has done anything but this.  *In re Flynn*, No. 20-5143, 2020 WL 5104220, at *7 (D.C. Cir. Aug. 31, 2020).  Its September 1 minute order did not even request a status report until September 21.   Sept. 1, 2020 Min. Order.  To short-cut that unnecessary delay, the Government and General Flynn promptly filed a Joint Motion to Expedite and Status Report.  ECF No. 238.  In this motion, the parties requested four dates for a hearing.  The court predictably chose the last date offered by the parties to conduct a hearing.  Sept. 4, 2020 Min. Order.

### 4.  The Court's Bias and Rancor Was Palpable at the September 29, 2020, Hearing.

The hearing on the Government's Motion to Dismiss marked the first time a federal judge has presided over a hearing regarding a defendant against whom he personally litigated to prolong his prosecution—not to mention defying the writ of mandamus issued by an appellate court.  His antipathy for defense counsel Sidney Powell was evident as he grasped at straws in his attempt to create a false narrative of the case itself, conjure up the political bias he and his amicus claim motivated the dismissal motion, and manufacturing non-existent ethical issues.

---

country cannot preside over a case involving a defendant against whom he has actively litigated.  At a minimum, the appearance of bias is overwhelming.

First the court insinuated Ms. Powell had committed an ethical violation by writing a letter to the Attorney General on June 6, 2019, requesting an independent review of the Flynn file.  The court expressly stated he wanted to bring this to the attention of the public—that it had been "under the radar screen."[6]  Hr'g Tr. 09-29-20 at 47-58.  The court said:

> But what I want to ask you to address is the propriety of this letter.  I mean this letter has been somewhat under the radar screen.  *There's not been a lot of public discussion about this letter.*  But one must wonder just what the public's reaction would have been had the public known that here's a person, *she doesn't represent someone*, reaching out to the Attorney General of the United States, which in my opinion would probably be highly unusual, to request that new attorneys be appointed by the Attorney General to prosecute a case that she intends to enter her appearance in.  Hr'g Tr. 09-29-20 at 50 (emphasis added).

He questioned the government about it first.  Government counsel saw no impropriety and pointed out that anyone can write such a letter.  Hr'g Tr. 09-29-20 at 51.  When the court had a string of questions for Government counsel, demanding information about any response Ms. Powell received from her letter—information Government counsel would have had no way of knowing—the court angrily cut Ms. Powell off when she offered to provide answers to those questions.  Hr'g Tr. 09-29-20 at 53.  There was no neutral arbiter in these proceedings.  The hearing reeked of the court's bias.

---

[6] This was not only improper for the court to seek to draw public attention to it, but it was also false. The letter was attached to one of the Government's early pleadings on the public docket, and it was commented on extensively in the press last year.  ECF No. 122-2.  *See* Tierney Sneed, *Flynn's New Lawyer Asked Barr Directly to Throw Out Flynn's Case*, TPM (Oct. 1, 2019, 4:00 PM), https://talkingpointsmemo.com/muckraker/flynn-powell-barr-justice-department-discovery;     Rowan Scarborough, *Sidney Powell's private letter to AG Barr pressed for action on Michael Flynn case*, THE WASH. TIMES (Feb. 16, 2020), https://www.washingtontimes.com/news/2020/feb/16/secret-letter-to-william-barr-set-stage-for-indepe/.

The court hinted at a bar complaint against defense counsel for the letter, and it repeatedly stated she did not then represent General Flynn at the time the letter was sent.  Hr'g Tr. 09-29-20 at 49, 58.  That, too, was false.  General Flynn had terminated Covington & Burling as stated in their withdrawal motion.  ECF No. 87. She was representing General Flynn, and whether her appearance had been formally entered into this court is immaterial to when her attorney-client relationship was established with General Flynn.   It is well established that an attorney-client relationship is formed when a client and an attorney "explicitly or by their conduct, manifest an intention to create the attorney/client relationship."  *Headfirst Baseball LLC v. Elwood*, 999 F. Supp. 2d 199, 209 (D.D.C. 2013).

Covington filed its withdrawal motion on June 6, 2019, stating that "General Flynn has notified the undersigned that he is terminating Covington & Burling LLP as his counsel and has already retained new counsel for this matter."  ECF No. 87. That same day, Sidney Powell sent her letter to the Attorney General's office.  ECF No. 122-2.

The second aggressive attack and outside the bounds of the motion to dismiss was to question Ms. Powell about communications with the President.   Judge Sullivan demanded an answer as if communicating with the President in itself was some kind of violation of ethics or of law, when, in fact, it is neither.[7]  Hr'g Tr. 09-29-

---

[7] As Ms. Powell told the court, she recently asked the President not to issue a pardon to General Flynn. She did this because it is critical to the health of the nation that the justice system work—that it provide equal justice and that it exonerate the innocent.  It should never be used to further a corrupt political strategy or weaponized to deliver retribution to political enemies, and no one should have to hope for a presidential pardon despite facts that prove his or her innocence.

20 at 54- 58.  In this instance, and throughout the hearing, Judge Sullivan's remarks reflected his personal view that both the President and Attorney General Barr are corrupt and simply protected a friend of the President—never mind the hundreds of pages of newly-disclosed evidence, the three IG Reports of the agents' lies under oath, their assorted misconduct concocting the "case" against Flynn, or their terminations for cause.

The bias of the court and accompanying assumptions are so thoroughly accepted on "the Left" that the bias does not even register to them.  Yet it is just that—a bias with no basis in anything but prejudice against another political party or persons.  The evidence that the Government has produced recently shows the Democrats' "Russia collusion" narrative was the ultimate political fraud by the Clinton campaign.  Ex. C.  Judge Sullivan's obvious, firmly held, and preconceived belief that—contrary to the evidence—the Russian collusion hoax is real, is absolute proof he has no business presiding over this case.  The Flynn persecution springs from the improper actions of government actors as shown in their own words, notes, and actions.

### a. The Court repeatedly tortured law and procedure to prosecute General Flynn.

Never has a court worked so hard or stretched the facts and law so far to smear a defendant and his counsel—and to try to deny an undeniable motion to dismiss. The court's overall tone and conduct of the hearing of September 29, 2020, varied significantly from the representations of his counsel during the en banc argument. Ex. F.  The court's hostile tenor made its abject bias resounding to thousands who

listened or who read the transcript.  Countless tweets from Americans who were watching what became a circus reflect their view of the federal judiciary.  Ex. A.  It was apparent that the court was desperate to find something wrong.

### b.  Straw #1: sentencing commenced in 2018.

Grasping for any straw that might allow him to deny the motion to dismiss, the court repeatedly claimed that "sentencing commenced" in December of 2018.  Hr'g Tr. 09-29-20 at 5-7.  However, what was scheduled to be a "sentencing hearing" on December 18, 2018, became an "extended colloquy" instead—by the court's own actions.  The court itself suggested that it "postpone" the sentencing.  Hr'g Tr. 12-18-18 at 48.  Even if sentencing "commenced" then, it would not change the legal standard.  General Flynn has never been sentenced.  That is indisputable.  No sentence has been imposed.  No judgment of conviction was ever entered.

Sentence has either been imposed or it has not; there is no in-between.  This is evident from the manner in which courts approach a motion to withdraw. The standard to withdraw a plea is very lenient pre-sentencing.  *United States v. Ford*, 993 F.2d 249, 251 (D.C. Cir. 1993) "withdrawal of a guilty plea before sentencing is liberally granted."  Even after the court has held a sentencing hearing—and the sentencing has been continued—the court will use the pre-sentencing standard to analyze the withdrawal of a guilty plea. *See United States v. Ortega-Ascanio*, where the court applied the pre-sentence standard to analyze the defendant's request to withdraw his plea, even after eleven sentencing continuances, "because Ortega–Ascanio had not yet been sentenced."  376 F.3d 879, 884 (9th Cir. 2004).  General

17

Flynn has not been sentenced and the fact that sentencing was postponed is legally irrelevant. The court's emphasis on this point, therefore, sounded of desperation to hold the case and proceed to sentencing rather than anything approximating a neutral explanation of the case history.

### c. Straw #2: The Court repeatedly denounced the failure of the parties to seek reconsideration of prior orders.

At the motion to dismiss hearing, the court repeatedly denounced the failure of the parties to seek reconsideration of his *Brady* order and his scheduling order— even though the scheduling order was entered after General Flynn filed his petition for writ of mandamus. May 19, 2020 Min. Order; Hr'g Tr. 09-29-20 at 9. Yet, there is no requirement for a party in a criminal case to file a motion for reconsideration to repeat itself. The court maintains inherent authority to correct its own errors sua sponte, and there is no point in relitigating issues unnecessarily. Having already moved for the production of *Brady*, General Flynn was not obliged to file a motion for reconsideration with this court after it denied him that motion. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996) (Respondent, "by timely moving for remand, did all that was required to preserve his objection to removal.")

### d. Straw #3: Looking for future prosecution of uncharged conduct—despite the fact there was no FARA offense by General Flynn—and Straw #4: The court falsely stated Flynn refused to cooperate in the EDVA.

The court scraped the bottom of the barrel looking for a path forward to prosecute General Flynn for the purported false statements in the FARA filing. Hr'g Tr. 09-29-20 at 75-77. This reflected both the court's bias and its failure to read the

defense's filings.  There was no FARA violation by General Flynn or anyone else in Flynn Intel Group's ("FIG's") registration.  The defense fully briefed those issues at ECF Nos. 151, 156, and our charts and the evidence the Government just produced show the FBI and DOJ knew in March 2017 that Flynn had "satisfied the registration obligation," and there was "no evidence of any willfulness."  ECF No. 248 at 10.  As Government counsel Kohl advised the court, General Flynn "never admitted under oath that he knowingly filed a false FARA filing."  Hr'g Tr. 09-29-20 at 78.

Nonetheless, in remarkable reflection of its bias, the court announced early in the proceedings that General Flynn had refused to cooperate in the Eastern District of Virginia FARA-related case against Flynn's former business partner after the court postponed his sentencing.  That was false.  Former prosecutor Van Grack suddenly pressured General Flynn to give specific testimony in the EDVA case—testimony Van Grack knew was demonstrably false.  When General Flynn refused to lie—because he did not knowingly make any false FARA filing—Van Grack began a series of retaliatory measures culminating in the Government's breach of the plea agreement. That was fully briefed for the court at ECF Nos. 151 and 153, but ignored.

The Government admitted at the September 29, 2020, hearing that the prosecution (Van Grack) had removed language from the statement of offense that would have made the alleged FARA statements an "offense."  ECF No. 151-1.  General Flynn did NOT then and there know any statements were false.  Mr. Van Grack himself removed that language from the statement of offense.  ECF No. 153; Hr'g Tr. 09-29-20 at 65, 77-78.

19

**e. Straw #5: Dismissal without prejudice—evincing his political interest in prosecution by a new attorney general.**

This judge asked whether he could dismiss the case *without* prejudice, thereby permitting a future attorney general or a future administration to reopen the prosecution of General Flynn.  Hr'g Tr. 09-29-20 at 76.  He also wanted to know if a new attorney general could pursue General Flynn for uncharged conduct.  *Id.*  The court pushed this issue despite well-knowing the purpose of Rule 48(a) to foreclose prosecutorial harassment and the government's unequivocal motion to dismiss *with* prejudice.  *Rinaldi v. United States*, 434 U.S. 22 (1977).

Judge Sullivan himself noted in *United States v. Pitts*, 331 F.R.D. 199, 202 (D.D.C. 2019), "the principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection."  Again, this court shut down defense counsel's discussion of *Pitts*.  Hr'g Tr. 09-29-20 at 145.  It could not be more obvious even to the untrained observer that this judge, amicus Gleeson, Ms. Wilkinson, and those politically aligned with them, are delaying, posturing, and briefing this case as a political tool hoping that Democrats will win the election and a Democratic administration will continue the political persecution of General Flynn. That is the very abuse a Rule 48(a) dismissal is to prevent.

**f.  Straw #6: Repeated invocation of having pled guilty twice.**

The court and Gleeson repeatedly stated that General Flynn pled guilty twice. Hr'g Tr. 09-29-20 at 5, 71, 103, 104, 124, 125, 136.  In truth, neither plea proceeding

nor "plea" was valid for multiple reasons—again outlined in briefs the court ignored. ECF Nos. 151, 153, 160-2, 226 at 12-19, n.8; *In re Flynn*, No. 20-5143, Michael T. Flynn Opposition to Rehearing *En Banc*, at 10-11.  The plea before Judge Contreras was not valid because General Flynn's prior counsel labored under a non-consentable conflict of interest, provided ineffective of assistance of counsel, and Judge Contreras had his own untenable appearance of bias because of his mention in the Strzok-Page text messages.  ECF Nos. 160-2, 228 at n.8.  The Government knew that information, but General Flynn did not.  Contreras should have recused immediately.  Pursuant to the D.C. Circuit's decision in *Al Nashiri*, 921 F.3d at 274, the proceedings he conducted are void.

On December 18, 2018, when this court conducted its surprise "extended colloquy" and postponed sentencing, General Flynn was still represented by the same conflicted and ineffective counsel—tantamount to no counsel at all.  ECF No. 160-2. Moreover, as the government conceded at the hearing, this court did not conduct a full Rule 11 colloquy.  It did not inquire into coercion by the government's threats of indicting Michael G. Flynn, nor of the conflict of interest prior defense counsel possessed.  Hr'g Tr. 12-18-18 at 69-70.  Mr. Van Grack hid both issues from the court. The coercion and the conflict of interest are documented in emails of former counsel— reviewed and admitted by the government.   ECF No. 181; Hr'g Tr. 12-18-18 at 69- 70.

**g. Additional documents of ex parte communications must be produced to the defense.**

The conduct of this judge since appointing amicus Gleeson and litigating against General Flynn—as if the judge were a party; his multiple unjust and unprecedented procedures to enlist other lawyers all conflicted by their representation of other people now implicated in the illegal and corrupt effort to investigate and destroy General Flynn; the court's blatant animosity against the defense; and, its relentless and inappropriate effort to make this case a political assault against President Trump and Attorney General Barr, mandate production to the defense of the following records in support of this motion and the judge's immediate disqualification.

General Flynn requests production to the defense of the following documents and information in support of this motion:

1. The names of all persons listening on the court's line for the hearing on September 29, 2020 that were not clerks of the court.

2. All communications by and between Beth Wilkinson and any members of her firm with any other persons about General Flynn or this case since the panel of the D.C. Circuit issued the writ of mandamus. Communications after the mandamus issued would amount to ex parte communications about strategy and tactics to use against General Flynn and his counsel in a criminal prosecution. Counsel further has reason to believe Ms. Wilkinson was either in the courtroom off camera for the hearing or otherwise communicating with the Court before, during, and after the hearing. All evidence of these communications must be produced to the defense and violate Judicial Canon of Ethics 3(A)(4).

3. All communications between Ms. Wilkinson or any member of her firm, any member of Chambers, and Mr. Gleeson and any member of his firm about Mr. Gleeson's role, briefing, strategy, questions, and preparation for the hearing regarding General Flynn. The court and Gleeson denied communicating with each other, but obviously someone communicated with Gleeson on behalf of the court.

4. All communications and visits with Eric Holder about this case or General Flynn, identification of the number of visits Eric Holder has made to Chambers about this case or General Flynn, or other personal meetings regarding General Flynn with Eric Holder to whom Emmet Sullivan referred as "Eric" on the record in the hearing. Hr'g Tr. 09-29-20 at 89.

5. All communications by Emmet Sullivan about General Flynn or this case with anyone outside chambers since the Motion to Dismiss was filed that would evidence Emmet Sullivan's own intent or desire to continue the prosecution of General Flynn as any and all ex parte communications about this case would further mandate his immediate recusal.

## **ARGUMENT**

### I. **Judge Sullivan's disqualifying conduct escalated and compounded the appearance of bias from December 18, 2018, through the hearing on September 29, 2020.**

Although the D.C. Circuit held the court's remarks at the December 2018 hearing insufficient alone to require his recusal, Judge Sullivan's open "disdain" and "disgust" for General Flynn, allegation that he "sold [his] country out," and suggestion that he committed treason were only the beginning of an ever-escalating onslaught of words and deeds which mandate the court's disqualification because they ultimately "reveal such a high degree of . . . antagonism as to make fair judgment impossible." *Liteky*, 510 U.S. at 555. "Recusal is required whenever there exists a genuine question concerning a judge's impartiality," regardless of whether the question arises from an extrajudicial source. *Id.*, citing *Berger v. United States*, 255 U.S. 22, 28 (1921).

### II. **A court that appears to be taking its marching orders from extra-judicial sources undermines the public confidence in the judicial system that section 455(a) was designed to protect.**

While it is not required that a recusal action be based on a bias or prejudice that originated from a source outside of the judicial proceeding, the appearance that judicial remarks reveal "an opinion that derives from an extrajudicial source" support a partiality challenge. *Liteky*, 510 U.S. at 555. Thus, when a judge's remarks and actions are so closely aligned with and echo the remarks of Rachel Maddow, and his actions directly follow the roadmap laid out by an opinion piece in a national newspaper from which he appointed his amicus, the extrajudicial influence is obvious. There is no doubt that, given Judge Sullivan's comments and actions appointing Mr. Gleeson from his *Washington Post* opinion piece, the average citizen might reasonably question his impartiality. *Heldt*, 668 F.2d at 1271.

The connection between Gleeson's *Washington Post* opinion piece and his appointment is so obvious that even the "Left" in the media acknowledged it. "Sullivan clearly read the piece, because he promptly appointed Gleeson himself, who is now in private practice, to argue against the dismissal of the case against Flynn." Jeffrey Toobin, *A Case from a Judge's Past May Offer a Clue About How the Michael Flynn Inquiry Will Proceed*, The New Yorker, May 20, 2020. Gleeson's op-ed also forecasted for the court the conclusion that Gleeson would, and did come to, as a 'friend of the court.' The lack of impartiality inherent in this choice and this process is not credibly debatable.

### III. The Gleeson Appointment is Further Evidence of Antagonism and Bias Requiring Recusal.

The chain of events that led to the appointment of Mr. Gleeson as amicus also suggests an *untoward*, outside influence. On May 11, 2020, (the same day Gleeson's

op-ed ran) at 4:58 p.m., the Robbins Russell firm emailed Judge Sullivan directly, the clerk of the district court, and lead counsel for General Flynn—attaching documents noticing intent to oppose dismissal on behalf of amici "former Watergate Prosecutors." Ex. B.  Although the next day General Flynn promptly opposed any amicus and urged granting the government's motion to dismiss, ECF No. 201 (sealed), Judge Sullivan ignored that filing and instead issued a minute order a few hours later.

Judge Sullivan styled the minute order as if sua sponte, stating: because of "the current posture of this case, the Court anticipates that individuals and organizations will seek leave of the Court to file amicus curiae briefs." May 12, 2020 Min. Order.  The court's order recognized no rule allowed it, recited the standard (which would foreclose amicus here), and said it would enter a scheduling order "at the appropriate time."

On May 13, 2020, after General Flynn had publicly renewed his objection to the appointment of a hostile amicus, Judge Sullivan denied his two opposition motions as moot and appointed Gleeson as amicus.

Any reasonable observer could see the probable result of Gleeson's appointment.  In his May 11, 2020 opinion piece Gleeson made baseless allegations of political corruption as the motivation behind the Government's motion to dismiss and impugned the integrity of the Attorney General and the Department of Justice. Gleeson made clear what his position was and even coached the court on the options he thought it had: "[the court] can deny the motion, refuse to permit withdrawal of

the guilty plea and proceed to sentencing."[8]  When Gleeson was appointed amicus, he officially made the same recommendation to the court:

> deny[] the government's Rule 48(a) motion to dismiss, adjudicat[e] any pending motions, proceed[] to sentencing, and factor[] the defendant's contemptuous conduct into the appropriate punishment.

ECF No. 232-2.  This was the very conclusion Gleeson urged in his opinion piece.  It is now officially on the docket of the case.  This cake was already baked when Gleeson first laid out his ingredients in the opinion piece well before Judge Sullivan put it in the oven two days later.   Judge Sullivan's "disgust" and "disdain" are driving this case to a predetermined end, and from the Robbins Russell correspondence that took place quietly behind the scenes[9] to the very public job application Gleeson ran in the *Washington Post*, the outside influence here is scandalous.

This court's bias became increasingly apparent when he failed to grant dismissal as a court should after receiving the panel decision of the D.C. Circuit.  Like a party in the case rather than the judge presiding over it, this judge petitioned for en banc rehearing.  At this point, he exuviated any pretense of impartiality.  He was actively litigating against the defendant in his courtroom.

And, it appears he is still enlisting the help of outside counsel—his personal counsel—to strengthen his offense against General Flynn.  At the end of the September 29, 2020, hearing, the court made a cryptic reference to seeking input from his "attorneys."  Hr'g Tr. 09-29-20 at 163.  Since the court was represented by counsel

---

[8] Ibid.
[9] The firm did copy one counsel for the defense on the email to chambers.

in the mandamus proceeding to file its response as ordered by the Circuit, and then sua sponte used that same counsel to seek rehearing en banc on its own behalf—personally litigating against General Flynn—it is important to know whether the court has communicated about this case, procedurally or substantively, with any outside counsel or non-court personnel since the August 11, 2020, argument in the D.C. Circuit.  Actually, any such communication after the panel issued its mandamus should be a violation of this court's duties under Canon 3(A)(4).[10]

The court should have followed that mandamus order and promptly dismissed the case with prejudice upon receipt of the Court's opinion.  As *Ligon v. City of New York* quoted from the Ninth Circuit: "In the scheme of the federal judicial system, the district court is required to follow and implement our decisions just as we are oath-and-duty-bound to follow the decisions and mandates of the United States Supreme Court."  *Ligon*, 736 F.3d at 171 n.12 (2d Cir. 2013) (quoting *Brown v. Baden*, 815 F.2d 575, 576 (9th Cir. 1987)).

When this judge used retained counsel at taxpayer expense to seek rehearing en banc and prolong a prosecution the Department of Justice dropped, he abandoned any semblance of the neutrality required of a federal judge.  As the Government itself admitted during the en banc argument, by affirmatively and actively litigating

---

[10] A judge may not consider any unauthorized communication "or consider other communications concerning a pending or impending matter that are made outside the presence of the parties or their lawyers."  Code of Conduct for United States Judges Canon 3(A)(4). "The restriction on ex parte communications concerning a proceeding includes communications from lawyers, law teachers, and others who are not participants in the proceeding.  A judge may consult with other judges or with court personnel whose function is to aid the judge in carrying out adjudicative responsibilities."  Code of Conduct for United States Judges Canon 3(4), Commentary.

against General Flynn, the district court created at least the "appearance of bias" that mandated its disqualification. The court's conduct since then—including and especially at the "hearing" on the motion to dismiss on September 29, 2020—proved not only its bias but also abject rancor for the defense.

### IV. The Court's Improper Reliance on Ex Parte and Extra Judicial Communications Require its Disqualification.

The United States uses an adversarial adjudicative system; courts are bound by the principle of party presentation. *United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579 (2020). "In both civil and criminal cases, in the first instance and on appeal…, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Id.* (quoting *Greenlaw v. United States,* 554 U.S. 237 (2008)). Courts are not to "sally forth each day looking for wrongs to right." *Sineneng-Smith*, 140 S. Ct. at 1579.

On September 28, 2020, Aitan Goelman, counsel to former FBI Deputy Assistant Director Peter Strzok, who was fired from the Bureau after he was exposed for his own bias and extraordinary malfeasance, emailed a letter to the court regarding documents on the record. He did not copy counsel for the parties, nor did he seek leave to intervene. Upon receiving the ex parte communication, the court failed to follow the procedures required by Canon 3(A)(4). Instead, it promptly filed the letter on the docket and substantively considered it, saying at the hearing that it was "floored" by the letter's allegations. Hr'g Tr. 09-29-20 at 92. Indeed, it considered

the ex parte communication from counsel for Strzok even before reviewing crucial submissions of the parties. *Id.*

Mr. Strzok may one day become a party to a criminal case. When and if that happens, he can submit all the evidence and arguments he wishes to the appropriate court. Until then, it is improper for his counsel to interject himself directly in this case. Moreover, this court is prohibited from considering the factual representations and arguments of outside parties.

Judge Sullivan's substantive consideration of the Goelman ex parte communication spurred other lawyers to seek to influence the court. On October 2, 2020, Michael Bromwich and Rachel Peck, lawyers for former FBI Deputy Director Andy McCabe, emailed a similar letter to the court. While Bromwich and Peck did copy counsel on their letter, it was still an improper, extra judicial communication that sought to induce the court to violate Canon 3(A)(4). When confronted about his improper communication, Bromwich justified his action by specifically relying on the court's statements from the bench in favor of the Goelman letter. Ex. G.[11] As it stands now, in a prosecution the Government has dropped, General Flynn is forced to litigate against this court, his amicus and his firm, the court's personal counsel and her firm, and now counsel for McCabe and counsel for Strzok and their firms— not to mention the many amici—all in unprecedented procedures created by this court to accomplish its patently biased agenda.

---

[11] The filing complained about by Goelman, Bromwich, and Peck was filed by counsel for General Flynn as it was received by the Department of Justice. While prosecutors did inadvertently leave a sticky note on the document when it was scanned for production, it was unintentional and immaterial. Moreover, the error was unknown by counsel for General Flynn when he filed the documents.

Judges are to decide cases based solely upon the facts and arguments presented by the parties' counsel through the judicial process—not by emails to chambers from counsel for the miscreants that caused this travesty of justice, tirades of television talking heads, or the opinion columns of intemperate former judges. This court's continual failure to abide by multiple rules and precedents, not to mention the specific requirements of Canon 3(A)(4) have substantively and materially prejudiced General Flynn.

Defendants are supposed to be confronted, if at all, only by prosecutors at the Department of Justice—not the left-wing mob. Here, the DOJ has decided it no longer has a dispute with General Flynn. It is highly improper and evidence of egregious bias for the court to allow any and everyone else with partisan axes to grind to make and argue their accusations and "conspiracy theories" to the court.

## V.   Section 455(a), 455(b)(1), and (b)(5)(i) require disqualification when the judge effectively becomes a party to the case and usurps the role of the prosecutor.

Disqualification is required when a judge either becomes or even seems to be an active participant in the litigation. *See In re United States*, 345 F.3 450, 453 (7th Cir. 2003) (Posner, J.) ("The judge . . . is playing U.S. Attorney"); *United States v. Cooley*, 1 F.3d 985, 995 (10th Cir. 1993) ("unavoidably created the appearance that the judge had become an active participant in bringing law and order to bear on the protesters"); *Burton v. Am. Cyanamid*, 690 F. Supp. 2d 757, 764 (E.D. Wis. 2010) ("created the appearance that [the judge] had become an active participant in the case instead of a detached adjudicator"). The judge's actual state of mind or underlying

motives are not dispositive of the disqualification; the mere appearance of questionable activity is all that is needed to compel disqualification. *Cooley*, 1 F.3d at 993 ("judge's actual state of mind, purity of heart, incorruptibility, or lack of partiality are not the issue" … rather "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality") (internal citation and quotations omitted).

To protect the appearance of judicial integrity, where the question is close, disqualification should be granted. *United States v. Cordova*, 806 F.3d 1085, 1093 (D.C. Cir. 2015) ("If it is a close case, the balance tips in favor of recusal."), *quoting, United States v. Holland*, 519 F.3d 909, 912 (9th Cir. 2008); *Heldt*, 668 F.2d at 1271 ("we join our sister circuits in concluding that a showing of an appearance of bias or prejudice sufficient to permit the average citizen reasonably to question a judge's impartiality is all that must be demonstrated to compel recusal"); *Roberts v. Bailar*, 625 F.2d 125, 129 (6th Cir. 1980) ("Even where the question is close, the judge whose impartiality might reasonably be questioned must recuse himself.").

Here, there can be no question that this judge has created the *appearance* of bias that mandates his disqualification. This court has assumed the mantle of a party, affirmatively litigating and seeking to prosecute the defendant before him.

"Deference to the judgments and rulings of courts depends upon public confidence in the integrity and independence of judges." *In re Al Nashiri*, 921 F.3d at 234 (alteration in original) (quoting *United States v. Microsoft Corp.*, 253 F.3d 34, 115 (D.C. Cir. 2001) (*en banc*) (per curiam)). The public confidence in the

independence of this court is long gone.  His filings, the appointment of Gleeson, his conduct of and during the hearing, lacked any semblance of neutrality.  Millions of citizens are now aghast the at the conduct of this court.  There is no confidence in any ability of this judge to impartially rule on the case—thus triggering recusal under 455(a).  As Judge Henderson wrote in her dissenting opinion:

> [H]is petition for *en banc* review with no legal support whatsoever therefor manifests, first, that he plainly appears to view himself as a "party"; second, and more important, that his attempted action removes any doubt that the appearance of impartiality required of all federal judges has been compromised beyond repair. *In re Flynn,* No. 20-5143, 2020 WL 5104220, at *9 (D.C. Cir. Aug. 31, 2020).

Because this unprecedented act "cast an intolerable cloud of partiality over his subsequent judicial conduct," *Al Nashiri*, 921 F.3d at 237, and made the judge a party to the litigation, Judge Sullivan shall recuse himself under 455(a).  The stunning lengths to which the court has been willing to go to delay its ruling, to deny the government's motion, or to grant it in such a way as to leave General Flynn open to future harassment by purely political enemies, is evident to the public.  That is not the role of a court in this country.

## CONCLUSION

Judge Sullivan's increasingly hostile and unprecedented words and deeds in what has become his own prosecution of General Flynn mandate his disqualification from further participation in these proceedings and the referral of his conduct to the D.C. Circuit Judicial Council.  As written in *Al Nashiri*, "'It is axiomatic,' of course, that due process demands an unbiased adjudicator, and the Supreme Court has

therefore identified several circumstances in which 'the probability of actual bias on the part of the judge ... is too high to be constitutionally tolerable.'" 921 F.3d at 243 (2019). "[A]ll that must be demonstrated to compel recusal," then, is "a showing of an appearance of bias ... sufficient to permit the average citizen reasonably to question a judge's impartiality." *Id.* The appearance of bias here is terrifying and mandates disqualification.

Dated: October 7, 2020                    Respectfully submitted,


/s/ Jesse R. Binnall                      /s/ Sidney Powell
Jesse R. Binnall                          Sidney Powell
Abigail C. Frye                           Molly McCann
Harvey & Binnall, PLLC                    Sidney Powell, P.C.
717 King Street, Suite 300                2911 Turtle Creek Blvd., Suite 300
Alexandria, VA 22314                      Dallas, Texas 75219
Tel: (703) 888-1943                       Tel: 214-707-1775
Fax: (703) 888-1930                       sidney@federalappeals.com
jbinnall@harveybinnall.com                Admitted *Pro Hac Vice*
afrye@harveybinnall.com                   molly@federalappeals.com
Admitted *Pro Hac Vice*                   Admitted *Pro Hac Vice*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 7, 2020, I electronically filed the Motion for Disqualification using the CM/ECF system. I further certify that the participants in the case are registered CM/ECF users and that service will be accomplished by the court's CM/ECF system.

Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall, VSB# 79272
HARVEY & BINNALL, PLLC
717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com