Leave to file GRANTED

*Emmet G. Sullivan*

United States District Judge

*10 - 16 - 2020*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

)
)
UNITED STATES OF AMERICA )
)
    v. )     No. 17-cr-00232 (EGS)
)
MICHAEL T. FLYNN, )
)
    Defendant. )
)
)

---

## BRIEF OF FEDERAL PRACTITIONERS AS *AMICI CURIAE*

---

Leslie McAdoo Gordon, #456781
McAdoo Gordon & Associates, P.C.
1140 19th Street, N.W.
Suite 602
Washington, DC 20036
(202) 293-0534
leslie.mcadoo@mcadoolaw.com

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

*TABLE OF AUTHORITIES* .................................................................................. *ii*

*INTEREST OF AMICI CURIAE* ......................................................................... *1*

*FACTUAL BACKGROUND* .............................................................................. *1*

*ARGUMENT* .................................................................................................... *4*

I.   THE COURT LACKS DISCRETION TO DENY A RULE 48 MOTION TO
     WHICH THE DEFENDANT CONSENTS ...........................................................4

     A.   The constitutional separation of powers precludes a court from overriding
          a prosecutor's decision to dismiss a prosecution. ...............................................5

     B.   The arguments that the court has discretion to deny the Rule 48 motion in
          this case are flawed and unpersuasive. ..............................................................9

II.  THERE IS NO BASIS FOR THE COURT TO CONSIDER A
     CONTEMPT CHARGE AGAINST GEN. FLYNN ...........................................17

III. THIS CASE HIGHLIGHTS AN IMPORTANT *BRADY* ISSUE.................19

i

# TABLE OF AUTHORITIES

<u>Cases</u>

*Brady v. Maryland,*

    373 U.S. 83 (1963) ........................................................................22

*Brady v. United States,*

    392 U.S. 742 (1970) .....................................................................12

*Cmty. for Creative Non–Violence v. Pierce,*

    786 F.2d 1199 (D.C. Cir. 1986)......................................................7

*Coleman v. Burnett,*

    477 F.2d 1187 (D.C. Cir. 1973 .....................................................12

*Ex parte Hudgings,*

    249 U.S. 378 (1919) ...............................................................17, 18

*Heckler v. Chaney,*

    470 U.S. 821 (1985) .......................................................................5

*I.C.C. v. Brotherhood of Locomotive Eng'rs,*

    482 U.S. 270 (1987). ....................................................................10

*In re Brown,*

    454 F.2d 999 (D.C. Cir. 1971)......................................................18

*In re United States,*

    345 F.3d 450 (7th Cir. 2003) .......................................................6, 7

*Kercheval v. United States*,

    274 U.S. 220 (1927) ...................................................................................13

*Lewis v. Exxon Corp.*,

    716 F.2d 1398 (D.C. Cir. 1983)..................................................................12

*Newman v. United States*,

    382 F.2d 479 (D.C. Cir. 1967)..................................................................7, 8

*Rinaldi v. United States*,

    434 U.S. 22 (1977). ........................................................................ 4, 5, 8, 13

*U.S. v. Fokker Services B.V.*,

    818 F.3d 733 (D.C. Cir. 2016).................................................... 4, 7, 8, 9

*United States v. Ammidown*,

    497 F.2d 615 (D.C. Cir. 1973)................................................... 5, 7, 8, 9

*United States v. Armstrong*,

    517 U.S. 456 (1996) .....................................................................................8

*United States v. Cowan*,

    524 F.2d 504 (5th Cir. 1975) .......................................................................5

*United States v. Hundley*,

    858 F.2d 58 (2d Cir. 1988) ........................................................................13

*United States v. Stevens*,

    744 F. Supp. 2d 253 (D.C. Cir. 2010) .......................................................13

*Wayte v. United States,*

   470 U.S. 598 (1985) ...........................................................................5, 9

*Young v. United States,*

   315 U.S. 257 (1942) .......................................................................... 14,15

Statutes

18 U.S.C. § 401 ....................................................................................17

Other Authorities

Article III of the Constitution ......................................................... 14, 15

Federalist 78 .......................................................................................16

Hon. Emmet G. Sullivan, *ENFORCING COMPLIANCE WITH*

   *CONSTITUTIONALLY REQUIRED DISCLOSURES: A PROPOSED RULE,*

   Cardozo Law Review De•Novo, (2016)...............................................19

Justice Manual § 9-27.230. ..................................................................11


Rules

Fed.R.Crim.P 11.......................................................................... 1, 13, 17

Fed.R.Crim.P 28.................................................................................8

Fed.R.Crim.P 29.................................................................................8

Fed.R.Crim.P 32.............................................................................8, 12

Fed.R.Crim.P 33................................................................................12

Fed.R.Crim.P 48.................................................... 1, 2, 3, 4, 6, 7, 9, 12, 13, 14, 16, 19

Fed.R.Evid. 410 ........................................................................................................17

## INTEREST OF *AMICI CURIAE*

*Amici curiae* are a bipartisan group of attorneys with extensive experience in the federal court system, including many who practice criminal law in this and other federal courts. Some were prosecutors, government attorneys, or judges. They have an interest in: (1) the proper application of Fed.R.Crim.P 48 in light of Separation of Powers principles, and (2) the potential triggering of a contempt proceeding for perjury in cases where a client moves to withdraw a guilty plea or in cases, civil or criminal, where a client provides testimony which a court may consider to be false.[1]

## FACTUAL BACKGROUND

On December 1, 2017, Lt. General Michael Flynn entered a plea of guilty to a one count information charging him with making materially false statements during an FBI interview. On that date, Judge Contreras accepted Gen. Flynn's guilty plea after conducting the inquiry mandated by Rule 11.

Thereafter, the case was transferred to this Court, which entered its Standing Order requiring the Government to produce exculpatory information to the

---

[1] Throughout this brief, any reference to a "rule" without further definition is to the Federal Rules of Criminal Procedure.

defense.  As updated by the Court on February 16, 2018,[2]  this Order directs that exculpatory material be provided to the defense in connection with any plea negotiation.

The case proceeded to a sentencing hearing on December 18, 2018, at which the Court made a further plea inquiry, and ultimately continued the case for sentencing at a later date.

Gen. Flynn subsequently changed counsel and moved to withdraw his plea. He also moved to dismiss the information on the grounds that exculpatory information had been withheld from him and his former counsel prior to the plea hearing.

On May 7, 2020, after an independent review of Gen. Flynn's case by the U.S. Attorney for Eastern District of Missouri, Jeffrey Jensen, the Government filed a 20-page motion to dismiss Gen. Flynn's case under Rule 48(a).  The Government explained that it had determined, "based on an extensive review and careful consideration of the circumstances, that continued prosecution of this case would not serve the interests of justice." (Doc. 198 at 1.)  "The Government is not persuaded that the [FBI] interview was conducted with a legitimate investigative

---

[2] The Court explained in its Minute Order of February 16, 2018, that its initial Order regarding the disclosure of exculpatory information, entered in the case on December 12, 2017, had inadvertently been a prior version of the Order and entered in error.

basis and therefore does not believe Mr. Flynn's statements were material even if untrue.  Moreover, we do not believe that the Government can prove either the relevant false statements or their materiality beyond a reasonable doubt."  (*Id.* at 2.)

The Government concluded that Gen Flynn had entered his plea "without full awareness of the circumstances of the newly discovered, disclosed, or declassified information as to the FBI's investigation of him. Mr. Flynn stipulated to the essential element of materiality without cause to dispute it insofar as it concerned not his course of conduct but rather that of the agency investigating him, and insofar as it has been further illuminated by new information in discovery." (*Id.* at 19.)

This new information had not been previously disclosed to Gen. Flynn, his counsel, or the Court.

# ARGUMENT

## I.   THE COURT LACKS DISCRETION TO DENY A RULE 48 MOTION TO WHICH THE DEFENDANT CONSENTS

The issue presented in this case is whether the court has discretion to deny a motion to dismiss to which the defendant consents, as Gen. Flynn has done here. The answer is no. Rule 48 must be construed in light of the Constitutional separation of powers. The D.C. Circuit has done so and has concluded that "the 'leave of court' authority gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority." *U.S. v. Fokker Services B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016).

Rule 48 provides that "[t]he government may, with leave of court, dismiss an indictment, information, or complaint." "The words 'leave of court' were inserted in Rule 48(a) without explanation." *Rinaldi v. United States*, 434 U.S. 22, 29 n. 15 (1977).[3]

In *Rinaldi*, the Supreme Court explained that "[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e. g.*, charging, dismissing, and recharging, when the

---

[3] The Supreme Court did not infer the purpose of the added language based on the "legislative history" of the amendment of the Rule in the 1940s, as some *amici* now do.

4

Government moves to dismiss an indictment over the defendant's objection." *Id.*
The Court noted that, in some courts of appeals, "the Rule has also been held to
permit the court to deny a Government dismissal motion to which the defendant
has consented if the motion is prompted by considerations clearly contrary to the
public interest." *Id. (citing United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975);
*United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)).  The Supreme
Court found it unnecessary to decide in *Rinaldi* "whether [a] court has discretion
under these circumstances." *Id.*  But the Court's subsequent decisions on the
separation of powers have resolved the issue.

> **A.    The constitutional separation of powers precludes a court from
> overriding a prosecutor's decision to dismiss a prosecution.**

Since its 1977 decision in *Rinaldi*, the Supreme Court has ruled that "an
agency's decision not to prosecute or enforce, whether through civil or criminal
process, is a decision generally committed to an agency's absolute discretion."
*Heckler v. Chaney*, 470 U.S. 821, 831 (1985).  The Court has cautioned that "the
decision to prosecute is particularly ill-suited to judicial review. Such factors as the
strength of the case, the prosecution's general deterrence value, the Government's
enforcement priorities, and the case's relationship to the Government's overall
enforcement plan are not readily susceptible to the kind of analysis the courts are
competent to undertake." *Wayte v. United States*, 470 U.S. 598, 607 (1985).
These decisions effectively overrule *Cowan* and *Ammidown*.

5

The Seventh Circuit, relying on the constitutional separation of powers, has rejected the contention that a trial court can deny a Rule 48 motion to dismiss, to which the defendant consents, if it believes that the prosecutor is acting in bad faith or contrary to the public interest.

> The Constitution's "take Care" clause (art. II, § 3) places the power to prosecute in the executive branch, just as Article I places the power to legislate in Congress. A judge could not properly refuse to enforce a statute because he thought the legislators were acting in bad faith or that the statute disserved the public interest; it is hard to see, therefore, how he could properly refuse to dismiss a prosecution merely because he was convinced that the prosecutor was acting in bad faith or contrary to the public interest.

*In re United States*, 345 F.3d 450, 453 (7th Cir. 2003) (Posner, J.).

The Seventh Circuit noted that "[t]he Constitution does place judicially enforceable limits on the powers of the nonjudicial branches of the government—for example, the government may not make its prosecutorial decisions on racially discriminatory grounds—but they are the limits found in the Constitution and thus do not include 'bad faith' and 'against the public interest.'" *Id.* [4]

The Seventh Circuit concluded its analysis with this significant point: "Paradoxically, the plenary prosecutorial power of the executive branch safeguards

---

[4] In this regard, most claims of selective prosecution raised by defendants are denied by trial courts precisely because they challenge the exercise of prosecutorial discretion by the executive branch, rather than raising a genuine equal protection claim.

liberty, for, in conjunction with the plenary legislative power of Congress, it assures that no one can be convicted of a crime without the concurrence of all three branches (again, criminal contempt of judicial orders constitutes a limited exception). When a judge assumes the power to prosecute, the number shrinks to two." *Id.* at 454.

The D.C. Circuit recently adopted the same separation-of-powers approach in construing a trial court's authority under Rule 48 and cited the Seventh Circuit's decision with approval. *See Fokker*, 818 F.3d at 742.[5] The court explained that "[d]ecisions to initiate charges, or to dismiss charges once brought, 'lie[ ] at the core of the Executive's duty to see to the faithful execution of the laws.'" *Id.* at 741 (quoting *Cmty. for Creative Non–Violence v. Pierce,* 786 F.2d 1199, 1201 (D.C. Cir. 1986)). "Correspondingly, 'judicial authority is ... at its most limited' when reviewing the Executive's exercise of discretion over charging determinations." *Id.* (quoting *Pierce*, 786 F.2d at 1201). Thus, "[f]ew subjects are less adapted to judicial review than the exercise by the Executive of his discretion in deciding when and whether to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a proceeding once brought." *Id.* (quoting *Newman v. United States,* 382 F.2d 479, 480 (D.C. Cir. 1967)). "As a

---

[5] The issue presented in *Fokker* concerned the Speedy Trial Act, but the court carefully analyzed Rule 48 in the course of reaching its decision.

result, 'the presumption of regularity' applies to 'prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties.'" *Id.* (quoting *United States v. Armstrong,* 517 U.S. 456, 464 (1996)).

The D.C. Circuit emphasized that these "settled principles counsel against interpreting [Rule 48] in a manner that would impinge on the Executive's constitutionally rooted primacy over criminal charging decisions." *Id.* at 742. Accordingly, the Rule's "leave of court" requirement has not been construed "to confer any substantial role for courts in the determination whether to dismiss charges." *Id.* Instead, its purpose "has been understood to be a narrow one—'to protect a defendant against prosecutorial harassment ... when the [g]overnment moves to dismiss an indictment over the defendant's objection.'" *Id.* (quoting *Rinaldi,* 434 U.S. at 29 n. 15).[6]  The *Fokker* court explained that, "[s]o understood, the 'leave of court' authority gives no power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss charges based on a disagreement with the prosecution's exercise of charging authority." *Id.*

---

[6] Examples of such prosecutorial abuse are practices such as charging, then dismissing, then re-charging a case, or dismissing a charge to defeat a defendant's pending Rule 29 Motion for Judgment of Acquittal.

The D.C. Circuit concluded its analysis by stressing two final points.  First, "the court's withholding of approval [under Rule 48] would amount to a substantial and unwarranted intrusion on the Executive Branch's fundamental prerogatives." *Fokker*, 818 F.3d at 744.  Second, the "Judiciary[] lack[s] competence to review the prosecution's initiation and dismissal of charges." *Id.* (citing *Wayte*, 470 U.S. at 607-08).

The applicable precedents are clear and unambiguous:  There is simply no basis upon which this Court can review and deny the Government's motion to dismiss, to which the defense has consented.

**B.    The arguments that the court has discretion to deny the Rule 48 motion in this case are flawed and unpersuasive.**

*Amici* who oppose the granting of the Government's Rule 48 motion rely heavily on the D.C. Circuit's 1973 decision in *Ammidown*.[7]  But that decision did not address the profound separation of powers issue implicated by its theory of judicial power.  In the almost half century since, the Supreme Court—and the D.C. Circuit—have substantially developed the separation of powers jurisprudence.  Although *Ammidown* has not been expressly overruled, it has been superseded by subsequent teaching, and it can no longer reasonably be considered as the law of the Circuit.

---

[7] The *Ammidown* decision, like the D.C. Circuit's subsequent decision in *Fokker*, did not turn on Rule 48 but discussed the rule as part of its analysis.

In addition, some *amici* contend that this Court should deny the motion to dismiss because the Government's rationale for the dismissal – that it cannot establish the materiality of the alleged false statement to which Gen. Flynn entered his plea – is erroneous. They analyze the issue of materiality at length in an effort to prove their point. But their argument is fundamentally flawed because the Supreme Court has squarely rejected the notion that "if [an] agency gives a 'reviewable' reason for otherwise unreviewable action, the action becomes reviewable." *I.C.C. v. Brotherhood of Locomotive Eng'rs*, 482 U.S. 270, 283 (1987). The Court illustrated this principle by explaining that "a common reason for failure to prosecute an alleged criminal violation is the prosecutor's belief (sometimes publicly stated) that the law will not sustain a conviction. That is surely an eminently 'reviewable' proposition, in the sense that courts are well qualified to consider the point; yet it is entirely clear that the refusal to prosecute cannot be the subject of judicial review." *Id.*

Thus, *amici*'s argument runs headlong into the separation of powers. They are urging this court to do exactly what the Supreme Court has specifically said it cannot do.

The other arguments against dismissal advanced by *amici* are equally spurious. For example, it is contended that Gen. Flynn's admissions of guilt establish his culpability and furnish a basis for the Court to require the case to

proceed.  But Gen. Flynn had moved to withdraw his plea prior to the

Government's motion to dismiss, and the Government, in moving to dismiss, has

explained in detail why it no longer believes that the evidence supports a criminal

conviction in this case.

In any event, a defendant's *culpability* is irrelevant to the legal issue

presented here because prosecutors have discretion to drop charges *regardless* of

the guilt of a defendant or the strength of the evidence.  Indeed, the Department of

Justice Manual lists a series of additional considerations, other than guilt, which

may lead prosecutors to decline a prosecution.  *See* Justice Manual § 9-27.230.

The separation of powers precludes a court from second-guessing the prosecutor's

exercise of discretion regardless of the considerations that prompt the executive

branch's decision.

Taking a different tack, some *amici* contend that, because Gen. Flynn has

entered a guilty plea, this Court has enhanced authority to deny the Government's

motion to dismiss.[8]  They attempt to equate the entry of a guilty plea to a conviction

and argue that a guilty plea "completes" the prosecution, thus, in their view, giving

the court a stake in the decision concerning whether the case should proceed to

sentencing.  Accordingly, they contend, the Court has substantial discretion under

_____

[8] This argument ignores the fact that Gen. Flynn had previously moved to
withdraw his guilty plea and proceed to trial.

Rule 48, similar to the discretion it enjoys in deciding whether to permit a defendant to withdraw his plea or to vacate a judgment of conviction under Rule 33.  There are multiple flaws in this argument.

First, the entry of a guilty plea is <u>not</u> a conviction; a conviction occurs only when sentence is imposed and a judgment is entered.[9]  "[C]onviction in various legal contexts typically means a judgment of guilt *entered upon* the jury verdict, trial court finding, or guilty plea." *Lewis v. Exxon Corp.*, 716 F.2d 1398, 1399 (D.C. Cir. 1983) (emphasis added).  A plea of guilty provides a basis for a conviction (as does a jury or bench verdict), but it is not, itself, the conviction.

The very cases cited by *amici* demonstrate this point.  A plea "is the defendant's consent that judgment of conviction may be entered without a trial." *Coleman v. Burnett*, 477 F.2d 1187, 1193 (D.C. Cir. 1973) (quoting *Brady v. United States*, 392 U.S. 742, 748 (1970)).  Likewise, the Supreme Court described a plea as a "conviction" in equating it to a jury verdict and pointing out that, thereafter, all that remains is for the trial court to impose judgment and sentence.

---

[9] *Amici* who style themselves as "Former Watergate Prosecutors" incorrectly assert at least twice in their brief to the D.C. Circuit that an "order" of conviction has been entered in this case, *e.g.*, "the court has issued an order accepting Flynn's plea" (p.11).  The docket is devoid of any such order.  This is because the court never enters an order for the entry of a guilty plea.  Rather, the order of conviction – the judgment based on the plea -- is entered at the conclusion of the case, after the imposition of sentence, pursuant to Rule 32(k).

*See Kercheval v. United States*, 274 U.S. 220, 223 (1927).  The Court went on to note, however, that "Courts frequently permit pleas of guilty to be withdrawn." *Id.* at 225.  Rule 11(e) specifically provides that a plea does not become final until sentencing.  Thus, a plea does not complete a prosecution; sentencing does.  "Indeed, sentencing orders are themselves the final judgments in criminal cases, and [t]he sentencing process is the inevitable culmination of a successful prosecution; it is an integral aspect of a conviction." *United States v. Hundley*, 858 F.2d 58, 65 (2d Cir. 1988) (internal quotations and citations omitted).

Second, the premise of *amici's* argument that a plea constitutes a conviction and thus confers power on the court to review a Rule 48 motion is at odds with the Supreme Court's decision in *Rinaldi*.  That case had proceeded even farther through the judicial process than this one before the Government filed its motion to dismiss – the defendant had already been convicted and sentenced.  Yet the Supreme Court did not suggest that the *timing* of the Government's motion to dismiss gave the trial court greater leeway over whether to grant it, as *amici* urge.[10] *See* 434 U.S. at 24-25 & n. 8.

_____

[10] Some *amici* argue that the Government's Rule 48 motion comes "too late in the day" and that there is no precedent for dismissing after a guilty plea has been secured.  *Rinaldi* constitutes ample precedent.  Further, in *United States v. Stevens*, No. 08-231, this Court granted the Government's Rule 48 motion to set aside the jury's verdict and dismiss the case.

Third, and fundamentally, *amici's* argument fails because a court's authority with respect to approving a consented motion under Rule 48 is completely different from its authority in adjudicating other motions, such as a motion to withdraw a guilty plea or to vacate a conviction. From a separation of powers perspective, these situations are "apples and oranges." When a court decides contested legal issues in a criminal case, the court is performing its judicial function under Article III of the Constitution. Even if the court's ruling affects whether the case proceeds, the court is not deciding whether the defendant *should* be prosecuted. A Rule 48 motion is fundamentally different – and unique among the criminal rules -- because it is the tool by which the Executive exercises its post-indictment discretion as to whom shall be prosecuted. Where a court denies a consented motion to dismiss under Rule 48, it is overriding the Executive's exercise of discretion and thereby is usurping the Executive's authority.

*Amici* stubbornly resist the conclusion that the separation of powers requires a court to grant a consented motion to dismiss. They cite the Supreme Court's statement in *Young v. United States* that the public interest in criminal proceedings "is entrusted to [the Court's] consideration and protection as well as that of the enforcing officers. . . . [T]he proper administration of the criminal law cannot be left merely to the stipulation of parties." 315 U.S. 257, 259 (1942). *Amici* misread *Young*. The Court held that the Government's *confession of error* on a legal issue

"does not relieve this Court of the performance of the judicial function. The considered judgment of the law enforcement officers that reversible error has been committed is entitled to great weight, but our judicial obligations compel us to examine independently the errors confessed." *Id.* at 258-59.

Reviewing a record for reversible error is assuredly a judicial function. Thus, *Young* upheld the constitutional principle of separation of powers by ruling that *the Executive* cannot control the outcome of a task assigned to *the Judiciary* – determining whether a conviction must be set aside because of an alleged legal error in the judicial proceedings. The converse is equally true: the Judiciary cannot control a task assigned to the Executive - deciding whether to initiate or continue the prosecution of a particular individual. [11]

*Amici* confuse the confession of error with the exercise of prosecutorial discretion. They are plainly not the same things. While a prosecutor may advise a trial or appellate court that it believes error has occurred in the judicial proceedings, that is merely the position of the Executive branch. It is not conclusive on the court because it is the constitutional role of the judiciary to determine such legal questions. In contrast, a prosecutor's determination that a

---

[11] *Amici* argue that, under Article III, the judiciary has a strong interest in the *finality* of judicial decisions. While this is true, a plea does not become final – and thereby implicate this interest – until sentencing, which has not yet occurred in this case.

case should not proceed is the exercise of Executive branch discretion, not a
confession of error. It is an entirely different concept. It rests entirely on
executive power, which the court may not constitutionally usurp.

The ultimate flaw in the analyses of *amici* is that they are result-driven. The
Court must be guided by neutral principles of law. Here, the law is clear; unless
the Government is abusing the defendant – which is certainly not the case here –
the Court has merely a ministerial act to perform: it grants leave to dismiss.

Under the Constitution and the Federal Rules of Criminal Procedure, the role
of the court in a criminal case is to safeguard the integrity of the judicial process, to
act as a neutral umpire in contested legal issues, to protect the rights of the
defendant,[12] and at sentencing to act as a voice for the community. The court is
never a partisan for either the prosecution or the defense; it must never assume the
mantle of prosecutor or defense counsel. Moreover, the separation of powers
precludes the court from exercising Executive powers. Conversely, the
Constitution and the Rules of Criminal Procedure require the court to protect the
defendant from governmental overreach.[13] Rule 48 fits comfortably within this

---

[12] Calling the federal judiciary "faithful guardians of the Constitution," Alexander
Hamilton in Federalist 78 declared that an essential role of the judiciary is to guard
"the rights of individuals."

[13] Significantly, while the court may dismiss a criminal case or direct the acquittal
of a defendant at trial, the court cannot direct a verdict of guilty. Only where the
defendant consents to a bench trial, may the court find the defendant guilty.

paradigm. The "leave of court" requirement authorizes a court to deny a motion to dismiss if it concludes that granting the motion may result in prosecutorial harassment of the defendant. But where the defendant consents to the dismissal, the court lacks discretion to deny the motion.

## II.  THERE IS NO BASIS FOR THE COURT TO CONSIDER A CONTEMPT CHARGE AGAINST GEN. FLYNN

The court has the authority to punish, as contempt of court, "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice." 18 U.S.C. § 401. However, there is no basis for the Court to order Gen. Flynn to show cause why he should not be held in contempt for perjury.

Withdrawing a plea, or attempting to do so, is not contemptuous conduct as a matter of law. Rule 11(d) expressly gives a defendant a right to move to withdraw a plea. Exercising that right obviously cannot constitute contempt.

Statements made by a defendant during plea proceedings, under oath, on the record, and with counsel present, can be used in a subsequent criminal proceeding for perjury or false statement. Fed.R.Evid. 410. But the Supreme Court decided long ago that alleged perjury committed in the presence of the court does not constitute contempt.

In *Ex parte Hudgings*, 249 U.S. 378 (1919), a judge held a witness in criminal contempt for giving what, in the judge's view, was perjured testimony. The Supreme Court held that to convict for contempt for alleged perjury, "there

must be added to the essential elements of perjury . . . the further element of obstruction to the court in the performance of its duty." *Id.* at 383. The Court faulted prior decisions treating perjury, without any other element, as adequate to sustain punishment for contempt. Those case "either overlook[] or misconceive[] the essential characteristic of the obstructive tendency underlying the contempt power, or mistakenly attribute[] a necessarily inherent obstructive effect to false swearing." *Id.* at 383-84. The Court voided the contempt conviction because "the punishment was imposed for the supposed perjury alone without reference to any circumstance or condition giving it an obstructive effect." *Id.* at 384.

The D.C. Circuit has reinforced the limitation laid down in *Hudgings* and emphasized that "actual, not theoretical, obstruction is the test, and that any claimed obstruction must be proven precisely." *In re Brown*, 454 F.2d 999, 1005 (D.C. Cir. 1971). That case involved a person who falsely claimed to be, and acted as, an attorney in a criminal proceeding before the district court. The D.C. Circuit ruled that this conduct, however fraudulent, had not obstructed the proceeding and so did not constitute contempt.

Gen. Flynn's statements in connection with his plea plainly did not obstruct this Court in the performance of its duty. Thus, they simply cannot constitute contempt of court under long-standing precedent. The Court should therefore not embark on any contempt proceeding against Gen. Flynn.

### III.    THIS CASE HIGHLIGHTS AN IMPORTANT *BRADY* ISSUE

From a larger perspective, this case highlights the importance of disclosure of exculpatory information in connection with plea negotiations. All of the foregoing issues likely could have been avoided had the information about the FBI investigation that has now spurred the Government's Rule 48 motion been disclosed to Gen. Flynn and his counsel before he originally entered his guilty plea.

This Court has become a leader in promoting the disclosure of exculpatory information by developing its Standing Order and by requiring the Government to disclose exculpatory information in connection with plea negotiations and proceedings as well as trials. The Court recognizes "that the overwhelming majority of criminal cases are resolved by plea agreements," and thus "it is imperative that the government interprets its constitutional obligation broadly and discloses exculpatory evidence to defendants during plea negotiations." Hon. Emmet G. Sullivan, ENFORCING COMPLIANCE WITH CONSTITUTIONALLY REQUIRED DISCLOSURES: A PROPOSED RULE, Cardozo Law Review De•Novo, at 139 (2016).

Of course, the Court's Standing Order did not apply when Gen. Flynn's plea was originally taken by another judge. It appears that the only information the Government provided to Gen. Flynn's original defense counsel before the plea was the FBI "302" report summarizing its interview of Gen. Flynn and the alleged false

statements, and an oral report that the FBI agents who had conducted the interview had the impression at the time that he was not lying or did not think he was lying. (Doc. 123 at 1.)[14] The Government apparently did not provide disclosure of any evidence "proving up" the false statements prior to the plea.

Once this case was reassigned to this Court, it promptly entered its Standing Order, which evidently had a significant effect on the subsequent proceedings. In March 2018, the Government provided to the defense 1,160 pages of documents relating to the alleged false statement to the FBI agents and 21,142 pages relating to alleged false statements in a filing under the Foreign Agents Registration Act (FARA) that was included as relevant conduct in the Statement of Offense. (*Id.*) In May 2018, the Government provided a draft of the FBI 302 report; summaries of the interviews of four individuals related to the false statement; a summary of a document in which the FBI advised the DOJ that it did not believe that Gen. Flynn was acting as an agent of Russia; a summary of interviews of other officials concerning Gen. Flynn's conversations with Ambassador Kislyak; and more documents related to the FARA filings. (*Id.*)

In November 2018, the Government provided the defense a summary of its

---

[14] Gen. Flynn's present counsel asserts that not all of this information was clearly conveyed to Gen. Flynn himself, and it appears both parties agree that the FBI 302 report provided to the defense prior to Gen. Flynn's plea is not an original.

investigation into whether: (i) the FBI 302 report was altered to strengthen a false

statement charge; and (ii) the interviewing agents were pressured to "get"

Gen. Flynn.  In December 2018, before the original scheduled sentencing, the

Government provided the defense with a summary of an interview of another

individual related to the alleged false statement.  (*Id.*)

Because the Government's disclosures raised questions about changes made

to the FBI 302 report in the course of drafting it, this Court ordered the parties to

file the various versions with it.  Subsequently, in May 2019, the Court also

directed the Government to file a transcript of Gen. Flynn's call with Ambassador

Kislyak, which the Government declined to do.

In June 2019, Gen. Flynn changed counsel.  In August 2019, and again in

October 2019, his new attorney filed motions to compel the disclosure of various

categories of allegedly exculpatory information.  Although the Court denied these

motions in December 2019, the Government continued to provide additional

discovery.

In January 2020, Attorney General Barr directed Jeffrey Jensen, the

U.S. Attorney for the Eastern District of Missouri, to review the investigation of

Gen. Flynn that the FBI had conducted.  (Doc. 180-1.)  Mr. Jensen had been an

FBI agent for ten years and an Assistant U.S. Attorney for another ten years before

becoming the U.S. Attorney.  On April 24, 2020, the Government made an initial

21

disclosure of documents that had been obtained and reviewed by Mr. Jensen. (*Id.*) On April 29, 2020, the Government made a second disclosure of documents. (Doc. 187-1.)  On May 5, 2020, the Government made a third disclosure of documents.  (Doc. 193-1.)  On May 7, 2020, the Government filed its motion to dismiss, and on May 18, 2020, the Government made a fourth disclosure. (Doc. 210-1.)

The information which the Government disclosed about the FBI's conduct of the investigation was within its *exclusive* possession.  There is simply no way that Gen. Flynn could have known or uncovered these facts, which undermined an essential element of the charge against him, without the Government providing them to him.  This is the paradigm of why the Constitution requires the Government to disclose such information to the defense.  *See Brady v. Maryland*, 373 U.S. 83 (1963).

Viewed from a "big picture" perspective, the Government's motion to dismiss was a product of the Court's ongoing effort, through its Standing Order, to promote justice by requiring the Government, at all stages of a criminal proceeding, to examine its case and disclose information that may affect a defendant's guilt or punishment.  As such, the Government's motion is a successful, and just, outcome.

Respectfully submitted,


_____/s/_____
Leslie McAdoo Gordon, #456781
McAdoo Gordon & Associates, P.C.
1140 19th Street, N.W.
Suite 602
Washington, DC 20036
(202) 293-0534
leslie.mcadoo@mcadoolaw.com


## CERTIFICATE PURSUANT TO FRAP 29(a)(4)(E)

Counsel hereby certifies that no party's counsel authored the preceding brief in whole or in part, that no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief; and that no person—other than the *amicus curiae*, its members, or its counsel—contributed money that was intended to fund preparing or submitting the brief.


_____/s/_____
Leslie McAdoo Gordon

# APPENDIX
## List of *Amici Curiae*

| | |
|---|---|
| Dan Backer | Federal trial and appellate lawyer |
| Roy Barrera, Jr. | Federal trial and appellate lawyer |
| Robert J. Bittman | Federal trial and Appellate lawyer |
| | Former Deputy Independent Counsel – Whitewater |
| John Stuart Bruce | Federal trial and appellate lawyer |
| | Former (The) United States Attorney, EDNC |
| Jackie Bennett | Federal trial lawyer |
| | Former Deputy Independent Counsel – Whitewater |
| | Former DOJ Attorney (Public Integrity Section) |
| | Former Assistant United States Attorney, SDIN |
| Margot Cleveland | Retired career federal law clerk (7th Circuit) |
| Ronald D. Coleman | Federal trial and appellate lawyer |
| Eric Evenson | Former Assistant United States Attorney, EDNC |
| | Former Chief – Organized Crime/Drug Enforcement Tas Force, EDNC |
| Jack C. Frels | Former Assistant United States Attorney, SDTX |
| | Former Chief – Criminal Division, SDTX |
| | Former Assistant United States Attorney, WDTX |
| | Former Chief OCDETF/Narcotics Section, WDTX |
| Chris K. Gober | Federal trial lawyer |

| | |
|---|---|
| Steven D. Gordon | Federal trial and appellate lawyer |
| | Former Assistant United States Attorney, DDC |
| | Former Chief of Felony Trial, DDC |
| Trey Gowdy | Former Assistant United States Attorney, DSC |
| Robert Harvey | Federal trial and appellate attorney |
| | Former Judge Advocate General, USN |
| Kenneth Julian | Federal criminal trial attorney |
| | Former Assistant United States Attorney, CDCA |
| | Former Deputy Chief, CDCA |
| Joseph T. Knott, III | Federal trial and appellate lawyer |
| | Former Assistant United States Attorney, EDNC |
| Douglas McCullough | Retired Judge, NC Court of Appeals |
| | Former Assistant United States Attorney, EDNC |
| | Former Acting United States Attorney, EDNC |
| Marina Medvin | Career criminal defense attorney |
| John M. Reeves | Federal trial and appellate lawyer |
| | Former Missouri Assistant Attorney General |
| Wayne A. Rich, Jr. | Former (The) United States Attorney, SDWV |
| | Former Principal Deputy Director of the Executive Office of the United States Attorneys |
| | Former Military Judge, Col USMCR (ret.) |

| | |
|---|---|
| John P. Rowley, III | Federal trial and appellate lawyer |
| | Former Assistant United States Attorney, EDVA |
| Kevin H. Sharp | Federal trial and appellate lawyer |
| | Former United States District Judge, MDTN |
| William Shipley | Federal criminal trial and appellate lawyer |
| Matthew H. Simmons | Federal trial and appellate lawyer |
| Kenneth W. Starr | Former Solicitor General of the United States |
| | Former Independent Counsel – Whitewater |
| Carla Kerr Stearns | Federal trial and appellate lawyer |
| William A. "Bill" Webb | Mediator |
| | Former United States Magistrate Judge, EDNC |
| | Former (The) Public Defender, EDNC |
| | Former Chief, OCDETF, EDNC |
| | Former Assistant United States Attorney, EDNC |
| | Former Assistant United States Attorney, WDPA |
| Solomon L. Wisenberg | Federal trial and appellate lawyer |
| | Former Deputy Independent Counsel – Whitewater |
| | Former Assistant United States Attorney, WDTX |
| | Former Chief -Financial Institution Fraud, WDTX |
| | Former Assistant United States Attorney, EDNC |

3

Ronald G. Woods                     Former (The) United States Attorney, SDTX

                                    Former Assistant United States Attorney, SDTX

                                    Former Special Agent, FBI