UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

Leave to file GRANTED

*Emmet G. Sullivan*

United States District Judge

9-28-2020

---

UNITED STATES OF AMERICA

v.

MICHAEL T. FLYNN,

*Defendant.*

Case No. 17-cr-00232 (EGS)

---

**BRIEF *AMICI CURIAE* OF SEPARATION OF POWERS SCHOLARS LAURENCE H. TRIBE, PHILIP BOBBITT, LEE C. BOLLINGER, LEA BRILMAYER, ERWIN CHEMERINSKY, GEORGE T. CONWAY III, MICHAEL C. DORF, BRUCE FEIN, JOSHUA A. GELTZER, JEANNIE SUK GERSEN, DAVID M. GOLOVE, OONA A. HATHAWAY, HAROLD HONGJU KOH, MARTHA MINOW, RICHARD W. PAINTER, ROBERT POST, TREVOR POTTER, JUDITH RESNIK, GEOFFREY R. STONE,  and DAVID A. STRAUSS, SUPPORTING DENIAL OF THE GOVERNMENT'S MOTION TO DISMISS**

---

Jonathan S. Massey
D.C. Bar 457593
Massey & Gail LLP
1000 Maine Ave. SW
Suite 450
Washington, D.C. 20024
(202) 652-4511
jmassey@masseygail.com

Laurence H. Tribe
*pro hac vice pending*
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
(617) 495-1767
larry@tribelaw.com

Dated:  May 22, 2020

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTEREST OF AMICI CURIAE ......................................................................................... 1

INTRODUCTION ............................................................................................................. 12

ARGUMENT ..................................................................................................................... 15

CONCLUSION .................................................................................................................. 24

# TABLE OF AUTHORITIES

### Cases

*Bank Markazi v. Peterson,*
   136 S. Ct. 1310 (2016) ................................................................................................... 23

*Boumediene v. Bush,*
   553 U.S. 723 (2008) ...................................................................................................... 19

*Brady v. United States,*
   397 U.S. 742 (1970) ...................................................................................................... 17

\* *Calder v. Bull,*
   3 U.S. (3 Dall.) 386 (1798) ........................................................................................... 23

*Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.,*
   333 U.S. 103 (1948) ...................................................................................................... 22

*Clinton v. City of New York,*
   524 U.S. 417 (1998) ...................................................................................................... 19

*Department of Commerce v. New York,*
   139 S. Ct. 2551 (2019) ................................................................................................... 19

*Department of Transp. v. Association of American Railroads,*
   575 U.S. 43 (2015) ................................................................................................... 18, 22

*Frank v. Gaos,*
   139 S. Ct. 1041 (2019) ................................................................................................... 20

*Free Enterprise Fund v. Public Co. Accounting Oversight Bd.,*
   537 F.3d 667 (D.C. Cir. 2008) ...................................................................................... 18

*Hastings v. Judicial Conference of U.S.,*
   770 F.2d 1093 (D.C. Cir. 1985) .................................................................................... 19

\* *Hayburn's Case,*
   2 U.S. (2 Dall.) 409 (1792) ........................................................................................... 22

*I.N.S. v. Chadha,*
   462 U.S. 919 (1983) ...................................................................................................... 18

*In re North (George Fee Application),*
   62 F.3d 1434 (D.C. Cir. 1994) ...................................................................................... 14

*Marek v. Lane,*
   134 S. Ct. 8 (2013) ........................................................................................................ 20

*McMann v. Richardson,*
   397 U.S. 759 (1970) ...................................................................................................... 17

*Morrison v. Olson,*
   487 U.S. 654 (1988) ........................................................................................... 18

*Parker v. North Carolina,*
   397 U.S. 790 (1970) ........................................................................................... 17

\* *Plaut v. Spendthrift Farm, Inc.,*
   514 U.S. 211 (1995) ........................................................................................... 23

\* *Rinaldi v. United States,*
   434 U.S. 22 (1977) ............................................................................................. 17

*Robertson v. Seattle Audubon Society,*
   503 U.S. 429 (1992) ........................................................................................... 23

*Rosales-Mireles v. United States,*
   138 S. Ct. 1897 (2018) ....................................................................................... 20

*U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership,*
   513 U.S. 18 (1994) ............................................................................................. 21

\* *United States v. Ammidown,*
   497 F.2d 615 (D.C. Cir. 1973) ..................................................................... 17, 18

*United States v. Fokker Services, B.V.,*
   818 F.3d 733 (D.C. Cir. 2016) ..................................................................... 21, 22

\* *United States v. Klein,*
   80 U.S. (13 Wall.) 128 (1872) ........................................................................... 23

*Young v. United States,*
   315 U.S. 257 (1942) ........................................................................................... 18

**Statutes & Rules**

18 U.S.C. § 1001 ....................................................................................... 12, 15, 16

Fed. R. Crim. P. 48(a) ............................................................................... 17, 18, 19

**Constitutional Provisions**

\* U.S. Const. art. III, § 1 ...................................................................................... 22

**Other Authorities**

1 Baron de Montesquieu, The Spirit of Laws 181 (Nugent trans., 10th ed. 1773) ...................... 18

Antonin Scalia, *The Rule of Law as a Law of Rules,* 56 U. Chi. L. Rev. 1175 (1989) ................. 22

The Federalist No. 47 .......................................................................................... 18

The Federalist No. 78 ...................................................................................... 18, 24

## INTEREST OF AMICI CURIAE

Amici share a strong academic and professional interest in the separation of powers and the rule of law.[1]

**Laurence H. Tribe** is the Carl M. Loeb University Professor at Harvard University and Professor of Constitutional Law at Harvard Law School, where he has taught since 1968 and where, in 2016, he gave the keynote address on separation of powers. The title "University Professor" is Harvard's highest academic honor, awarded to just a handful of professors at any given time and to just 72 professors in all of Harvard University's history. Professor Tribe helped draft the constitutions of South Africa, the Czech Republic, and the Marshall Islands. He has written more than 115 books and articles, including the treatise, American Constitutional Law, cited more than any other legal text since 1950. Former U.S. Solicitor General Erwin Griswold wrote: "[N]o book, and no lawyer not on the [Supreme] Court, has ever had a greater influence on the development of American constitutional law," and the Northwestern Law Review opined that no one else "in American history has... simultaneously achieved Tribe's preeminence . . . as a practitioner and . . . scholar of constitutional law." The New York Times has described him as "arguably the most famous constitutional scholar and Supreme Court practitioner in the country." He was appointed in 2010 by President Obama and Attorney General Holder to serve as the first Senior Counsel for Access to Justice. He has testified before the U.S. Congress approximately 47 times and has argued 36 cases before the U.S. Supreme Court, as well as dozens of cases before many other courts, prevailing in approximately three-fifths of those cases. He has received 11

---

[1] Pursuant to Local Rule 7(o)(5) and FRAP 29(a)(4), counsel state that no party's counsel authored the brief in whole or in part; no party or a party's counsel contributed money that was intended to fund preparing or submitting the brief; and no person contributed money that was intended to fund preparing or submitting the brief.

honorary degrees and has been elected to the American Academy of Arts and Sciences and to the American Philosophical Society.

**Philip Bobbitt** is Herbert Wechsler Professor of Federal Jurisprudence and Director of the Center for National Security at the Columbia Law School.  After clerking for the Hon. Henry J. Friendly, he taught for many years at the University of Texas Law School.  He has served in several administrations, both Republican and Democratic, as Associate Counsel to the President, Legal Counsel to the Senate Iran-Contra Committee, the Counselor on International Law at the State Department, Strategist in Residence in the Office of the Secretary to the Navy, and Director for Intelligence, Senior Director for Critical Infrastructure, and Senior Director for Strategic Planning at the National Security Council.  He is the author of ten books including *Constitutional Fate: Theory of the Constitution* and *The Shield of Achilles: War, Peace and the Course of History*.  He is a member of the American Academy of Arts & Sciences and a Life Member of the American Law Institute.

**Lee C. Bollinger** became Columbia University's 19th president in 2002 and is the longest serving Ivy League president. Bollinger is Columbia's first Seth Low Professor of the University, a member of the Law School faculty, and one of the nation's foremost First Amendment scholars. His latest book, *The Free Speech Century*, co-edited with Geoffrey R. Stone, was published in the fall of 2018 by Oxford University Press. Bollinger is a director of Graham Holdings Company (formerly The Washington Post Company) and serves as a member of the Pulitzer Prize Board. From 2007 to 2012, he was a director of the Federal Reserve Bank of New York, where he also served as Chair from 2010 to 2012.  From 1996 to 2002, Bollinger was the President of the University of Michigan. He led the university's historic litigation in *Grutter v. Bollinger* and *Gratz*

*v. Bollinger*, Supreme Court decisions that upheld and clarified the importance of diversity as a compelling justification for affirmative action in higher education.

**Lea Brilmayer** is the Howard Holtzmann Professor of International Law at Yale Law School. She is the country's foremost authority on conflict of laws and has written eight books and dozens of articles on that subject, as well as on American civil procedure and federal jurisdiction, international tribunals, international jurisprudence, U.S. Constitutional law, and contracts (her favorite course to teach). She has authored numerous briefs on cases in a variety of domestic and international tribunals, including the U.S. Supreme Court and the international Permanent Court of Arbitration. Her most recent book is the forthcoming *Contracts: The Five Essential Concepts*.

**Erwin Chemerinsky** became the 13th Dean of Berkeley Law on July 1, 2017, when he joined the faculty as the Jesse H. Choper Distinguished Professor of Law. Prior to assuming this position, from 2008-2017, he was the founding Dean and Distinguished Professor of Law, and Raymond Pryke Professor of First Amendment Law, at University of California, Irvine School of Law, with a joint appointment in Political Science. Before that he was the Alston and Bird Professor of Law and Political Science at Duke University from 2004-2008, and from 1983-2004 was a professor at the University of Southern California Law School, including as the Sydney M. Irmas Professor of Public Interest Law, Legal Ethics, and Political Science. He also has taught at DePaul College of Law and UCLA Law School. He is the author of twelve books, including leading casebooks and treatises about constitutional law, criminal procedure, and federal jurisdiction. His most recent books are, *We the People: A Progressive Reading of the Constitution for the Twenty-First Century* (Picador Macmillan) published in November 2018, and two books published by Yale University Press in 2017, *Closing the Courthouse Doors: How Your*

*Constitutional Rights Became Unenforceable* and *Free Speech on Campus* (with Howard Gillman). He also is the author of more than 200 law review articles. He is a contributing writer for the Opinion section of the Los Angeles Times, and writes regular columns for the Sacramento Bee, the ABA Journal and the Daily Journal, and frequent op-eds in newspapers across the country. He frequently argues appellate cases, including in the United States Supreme Court. In 2016, he was named a fellow of the American Academy of Arts and Sciences. In 2017, National Jurist magazine again named Dean Chemerinsky as the most influential person in legal education in the United States.

**George T. Conway III** was a litigator in private practice at a major law firm in New York City for over three decades. He has litigated and drafted briefs on a variety of constitutional matters in federal and state courts, including separation-of-powers questions before the Supreme Court of the United States. He is a founder of Checks & Balances, a group of conservative and libertarian lawyers devoted to the defense of the rule of law and is a member of the Board of Visitors of the Federalist Society for Law & Public Policy Studies. He is also a contributing columnist for *The Washington Post*, and has written extensively for the *Post* and other publications on constitutional questions, including the authority of the executive and the role of the judiciary.

**Michael C. Dorf** is the Robert S. Stevens Professor of Law at Cornell Law School, where he teaches constitutional law, federal courts, and related subjects. He has authored or co-authored six books and over one hundred scholarly articles and essays for law journals and peer-reviewed science and social science journals. He also frequently writes for the general public. In addition to occasional contributions to The New York Times, USA Today, CNN.com, The Los Angeles Times, and other wide-circulation publications, Professor Dorf has been writing a bi-weekly column since 2000 and publishes a popular blog, Dorf on Law. Dorf received his undergraduate

and law degrees from Harvard. He served as a law clerk for Judge Stephen Reinhardt of the U.S. Court of Appeals for the Ninth Circuit and then for Justice Anthony M. Kennedy of the U.S. Supreme Court. He maintains an active pro bono practice mostly consisting of writing Supreme Court briefs. Before joining the Cornell faculty, Professor Dorf taught at Rutgers-Camden Law School and at Columbia Law School, where he was Vice Dean and the Isidor & Seville Sulzbacher Professor of Law.

**Bruce Fein** was associate deputy attorney general and general counsel of the Federal Communications Commission under President Reagan. He served as research director for House Republicans on the Joint Congressional Committee on Covert Arms Sales to Iran. Mr. Fein has testified on scores of occasions before the House and Senate Judiciary and Foreign Relations Committees. He is author of *Constitutional Peril: The Life and Death Struggle for Our Constitution and Democracy and American Empire Before the Fall*. He is founding partner of Fein & DelValle, PLLC.

**Joshua A. Geltzer** serves as the founding Executive Director of the Institute for Constitutional Advocacy and Protection as well as Visiting Professor of Law at Georgetown University Law Center. He is involved in litigating major separation-of-powers issues and also teaches about the separation of powers in multiple contexts, including that of national security law. He is an International Security Program Fellow at New America and an Executive Editor at *Just Security*. Geltzer served from 2015 to 2017 as Senior Director for Counterterrorism at the National Security Council staff, having served previously as Deputy Legal Advisor to the National Security Council and as Counsel to the Assistant Attorney General for National Security at the U.S. Department of Justice. He is the author of *US Counter-Terrorism Strategy and al-Qaeda: Signalling and the Terrorist World-View*, published by Routledge; and his writings have appeared

in a wide range of scholarly and popular publications including *The Atlantic*, the *Berkeley Journal of International Law*, *Defense One*, *Foreign Policy*, the *Journal of Constitutional Law*, the *New York Times*, *Parameters*, *Politico*, *Studies in Conflict & Terrorism*, and the *Washington Post*. He has testified before Congress on multiple occasions and has appeared on BBC, Bloomberg TV, CBS, CNN, C-SPAN, Fox News, MSNBC, National Public Radio, and more. Geltzer is a life member of the Council on Foreign Relations, a member of the American Law Institute, and a member of the American Bar Association's Rule of Law Initiative board.

**Jeannie Suk Gersen** is the John H. Watson, Jr. Professor of Law at Harvard Law School, where she teaches Constitutional Law, Criminal Law, and Criminal Adjudication. The author of three books and many scholarly articles, Professor Gersen also writes for the general public as a Contributing Writer to the New Yorker. Her honors include the Guggenheim Fellowship, the Law and Society Association's Herbert Jacob Book Prize, the National Asian Pacific American Bar Association's Best Under 40 Award, and Harvard Law School's Sacks-Freund Teaching Award. She clerked for Judge Harry T. Edwards of the United States Court of Appeals for the D.C. Circuit and for Justice David H. Souter of the Supreme Court of the United States, and then served as an Assistant District Attorney at the Manhattan District Attorney's Office. She has testified before congressional committees in the House and the Senate, and is an elected member of the American Law Institute.

**David M. Golove** is the Hiller Family Foundation Professor of Law at New York University School of Law, where he has been teaching since the year 2000. He teaches Constitutional Law and Federal Courts, as well as courses in constitutional history and foreign relations law, and has written extensively in these areas, including (with Bruce Ackerman), *Is NAFTA Constitutional?* (Harvard University Press 1995) and (with Daniel Hulsebosch), *A*

6

*Civilized Nation: The Early American Constitution, the Law of Nations, and the Pursuit of International Recognition*, 85 NYU L. Rev. 932 (2010). Most of his research and writing focuses on the separation of powers and the historical role of the courts, especially in delicate disputes like those involving national security and foreign affairs.

**Oona A. Hathaway** is Gerard C. and Bernice Latrobe Smith Professor of International Law and Counselor to the Dean at Yale Law School and Professor of Political Science at the Yale University Department of Political Science. She teaches a number of topics, including Constitutional Law, Intelligence Law, and Foreign Relations Law, and she has written extensively on separation of powers issues. From 2014 until 2015, she served in the Office of the General Counsel of the Department of Defense as Special Counsel for National Security Law. Since 2005, she has served on the Advisory Committee on International Law for the Legal Adviser, U.S. Department of State. She is a member of the American Society of International Law (Vice President (2018-2020); Strategic Initiatives Committee Chair (2018-2020); Judicial Outreach Committee (2019-)), the Council on Foreign Relations (since 2010), the American Law Institute (since 2017), the Board of Editors, Yale Journal of International law (since 2009), and the Board of Editors, J. of International Law & International Relations (since 2006). She is a Reviewer for International Organization, International Studies Quarterly, Journal of Conflict Resolution, Journal of Peace Research, Human Rights Quarterly, Oxford University Press, Princeton University Press, Yale University Press.

**Harold Hongju Koh** is Sterling Professor of International Law at Yale Law School, where he served as Dean from 2004-09. He has served as Assistant Secretary of State for Democracy, Human Rights and Labor (1998-2001) and Legal Adviser (2009-13) of the U.S. Department of State, as well as Attorney-Adviser in the Office of Legal Counsel, U.S. Department of Justice

7

(1983-85).  He is the author of numerous articles and books on separation of powers issues, has testified frequently before Congress on such topics, and has appeared as counsel on such matters in numerous courts, most recently as co-Director of Yale Law School's Peter Gruber Rule of Law Clinic.  He has been elected to the American Academy of Arts and Sciences and the American Philosophical Society.

**Martha Minow** is the 300th Anniversary University Professor at Harvard University. Since 1981, she has taught at Harvard Law School, where she was previously the Carter Professor of General Jurisprudence and served as Dean from 2009 to 2017.  Her honors include the Sargent Shriver Equal Justice Award (2016); the Joseph B. and Toby Gittler Prize, Brandeis University (2016); nine honorary degrees (in law, education, and humane letters); the Gold Medal for Outstanding Contribution to Public Discourse, awarded by the College Historical Society of Trinity College, Dublin; and the Sacks-Freund Teaching Award, awarded by the Harvard Law School graduating class.  She served for eight years as Vice-Chair of the Legal Services Corporation, the bipartisan, government-sponsored organization that provides civil legal assistance to low-income Americans.  She also previously served on the board of the American Bar Foundation.  After completing her undergraduate studies at the University of Michigan, Minow received a master's degree in education from Harvard and her law degree from Yale.  She clerked for Judge David Bazelon of the United States Court of Appeals for the D.C. Circuit and then for Justice Thurgood Marshall of the Supreme Court of the United States.

**Richard W. Painter** is the S. Walter Richey Professor of Corporate Law at the University of Minnesota and was the chief White House ethics lawyer under President George W. Bush from 2005 to 2007.  He is a member of the American Law Institute (ALI) and associate reporter for the ALI Principles of Government Ethics.  Professor Painter is the author of many law review articles

and books on ethics in banking, in the legal profession and in government, including *Getting the Government America Deserves:  How Ethics Reform Can Make a Difference* (Oxford University Press 2009) and *Professional and Personal Responsibilities of the Lawyer* (with the late Judge John T. Noonan, Jr., USCA 9) (Foundation Press, 3rd ed. 2011).  He received his B.A. in history from Harvard University and his J.D. from Yale University.

**Robert Post** is Sterling Professor of Law at Yale Law School. He served as the School's 16th dean from 2009 until 2017. Before coming to Yale, he taught at the University of California at Berkeley School of Law. He specializes in constitutional law, with a particular emphasis on the First Amendment. He is also a legal historian who is currently writing Volume X of the Oliver Wendell Holmes Devise History of the Supreme Court of the United States, which will cover the period 1921-30 when William Howard Taft was Chief Justice. Post has written and edited numerous books, including *Citizens Divided: A Constitutional Theory of Campaign Finance Reform* (2014), which was originally delivered as the Tanner Lectures at Harvard in 2013; *Democracy, Expertise, Academic Freedom: A First Amendment Jurisprudence for the Modern State* (2012), which was originally delivered as the Rosenthal Lectures at Northwestern University; *For the Common Good: Principles of American Academic Freedom* (with Matthew M. Finkin, 2009), which has become the standard reference for the meaning of academic freedom in the United States; and *Prejudicial Appearances: The Logic of American Antidiscrimination Law* (2001), which was original delivered as the Brennan Lectures at Berkeley. Professor Post publishes regularly in legal journals and other publications; exemplary articles and chapters include "Data Privacy and Dignitary Privacy: Google Spain, The Right to be Forgotten, and the Construction of the Public Sphere" (*Duke Law Journal*, 2018); "The Politics of Religion: Democracy and the Conscience Wars," in *The Conscience Wars: Rethinking the Balance Between Religion, Identity,*

*and Equality* (Susanna Mancini and Michel Rosenfeld, eds., Cambridge University Press 2018); "Theorizing Disagreement: Reconceiving the Relationship Between Law and Politics" (*California Law Review*, 2010); "Roe Rage: Democratic Constitutionalism and Backlash" (with Reva Siegel, *Harvard Civil-Rights Civil-Liberties Law Review*, 2007); "Federalism, Positive Law, and the Emergence of the American Administrative State: Prohibition in the Taft Court Era" (*William & Mary Law Review*, 2006); "Foreword: Fashioning the Legal Constitution: Culture, Courts, and Law" (*Harvard Law Review*, 2003); and "Subsidized Speech" (*Yale Law Journal*, 1996). He is a member of the American Law Institute and a fellow of both the American Philosophical Society and the American Academy of Arts and Sciences.

**Trevor Potter** is a former commissioner and chairman of the United States Federal Election Commission. He is the Founder and President of the Campaign Legal Center, a nonprofit organization which works in the areas of campaign finance and elections, political communication and government ethics. His government experience includes service as assistant general counsel of the United States Federal Communications Commission (1984-1985) and attorney with the United States Department of Justice (1982-1984). He served as General Counsel to the 2000 and 2008 Presidential campaigns of Senator John McCain and Deputy General Counsel to the George H.W. Bush 1988 campaign.

**Judith Resnik** is the Arthur Liman Professor of Law at Yale Law School and the Founding Director of the Liman Center for Public Interest Law. She teaches courses on federalism, procedure, courts, prisons, equality, and citizenship. Her scholarship focuses on the relationship of democratic values to government services such as courts, prisons, and post offices; the roles of collective redress, class actions, and arbitration; contemporary conflicts over privatization; the relationships of states to citizens and non-citizens; the forms and norms of federalism; and equality

and gender.  Professor Resnik's books include *Representing Justice: Invention, Controversy, and Rights in City-States and Democratic Courtrooms* (with Dennis Curtis, Yale University Press, 2011); *Federal Courts Stories* (co-edited with Vicki C. Jackson, Foundation Press, 2010); and *Migrations and Mobilities: Citizenship, Borders, and Gender* (co-edited with Seyla Benhabib, NYU, 2009).  In 2014, Resnik was the co-editor (with Linda Greenhouse) of the Daedalus volume, *The Invention of Courts*.

**Geoffrey R. Stone** is the Edward H. Levi Distinguished Professor of Law at the University of Chicago.  Professor Stone has served as Dean of the University of Chicago Law School and as Provost of the University of Chicago.  He is one of our nation's preeminent constitutional scholars and has been elected a member of the American Law Institute, the American Academy of Arts and Sciences and the American Philosophical Society.  He is the co-author of one of our nation's leading Constitutional Law casebooks and has written several important and influential books in the field of Constitutional Law, including *Perilous Times: Free Speech in Wartime* (2004), *War and Liberty: An American Dilemma* (2007); *Top Secret: When Government Keeps Us in the Dark* (2007), *Sex and the Constitution* (2018) and *Democracy and Equality: The Enduring Constitution Vision of the Warren Court* (2020).  In addition, he has served as an editor of *The Supreme Court Review* for almost thirty years and is the editor of a twenty-volume series with Oxford University Press titled *Inalienable Rights*.

**David A. Strauss** is the Gerald Ratner Distinguished Service Professor at the University of Chicago Law School and the Faculty Director of the Law School's Supreme Court and Appellate Clinic. He worked in the Department of Justice, in the Office of Legal Counsel and as an Assistant to the Solicitor General, in both Democratic and Republican Administrations, and he has been Special Counsel to the Committee on the Judiciary of the United States Senate. He is the

author of *The Living Constitution* (Oxford University Press, 2010) and several influential articles on constitutional law and other subjects. He was elected to the American Academy of Arts and Sciences in 2001. He was a visiting professor at Harvard Law School in 2011, 2017, and 2019. He has won the graduating students' award for teaching excellence at the University of Chicago Law School five times. He has been an editor of the *Supreme Court Review* since 1989, and he has argued nineteen cases before the U.S. Supreme Court.

## INTRODUCTION

This case is ultimately about judicial independence and the integrity of the Judicial Branch and therefore about the rule of law in our constitutional democracy. The government's motion to dismiss the case against Michael Flynn, after he twice pled guilty to violating 18 U.S.C. § 1001, asks this Court to place its imprimatur on the Executive Branch's virtually unprecedented decision to dismiss a prosecution after the case has been won. This Court should deny that invitation.

Some have suggested that the Executive Branch's prosecutorial discretion and the separation of powers compel this Court to grant the government's motion. Such suggestions are profoundly misguided. If anything, the separation of powers militates in the opposite direction and protects this Court's authority to complete the resolution of this case, free from the interference of the Executive Branch. By denying the government's motion, this Court would not be invading the prosecutorial discretion of the Executive Branch but rather ensuring the independence and integrity of the judiciary, which are fundamental values safeguarded by the separation of powers.

This case does not involve a decision by the Executive Branch simply to "drop" a prosecution. The prosecutors brought this case against Mr. Flynn in November 2017 and won it. They secured two guilty pleas and made their sentencing recommendations in the form of two

sentencing memoranda. All that remains is for this Court to decide what sentence to impose,[2] and sentencing is a core judicial (not executive) power. In fact, this Court was fully prepared to sentence Mr. Flynn on December 18, 2018, until he requested a continuance after this Court explained to him its usual practice of postponing sentencing until a defendant's cooperation with prosecutors is complete.

Where (as here) the Executive Branch has formally commenced a criminal proceeding, secured a guilty plea, and filed its sentencing recommendation, the judiciary acquires an independent stake in the matter. Both Judge Contreras and this Court held extensive colloquies with Mr. Flynn, ensuring that his guilty pleas were knowing, adequately counseled, fully voluntary, and properly predicated. This Court has already held a sentencing proceeding. It has made a significant commitment of the Article III Judicial Power in this proceeding. Under the separation of powers, courts do not simply do the bidding of the Executive Branch. Rather, they have a constitutionally established interest in their own integrity and independence, and a constitutional *duty* to protect that interest.

The government's motion improperly seeks to make this Court complicit in the Executive Branch's inexplicable about-face in the Flynn prosecution, by asking this Court to issue an order certifying that dismissal is in the "public interest." In addition, the government seeks to nullify this Court's determination formally accepting Mr. Flynn's guilty plea. The motion, in effect, seeks to reduce this Article III Court to a subordinate of the Article II Department of Justice, treating the federal judiciary as though it were an agency located on the Executive Branch organization chart headed by the President.

---

[2] Although Mr. Flynn has sought to withdraw his plea of guilty, the Court has not resolved that request, and the government's motion to dismiss does not depend on the motion for withdrawal of the plea. Rather, the government seeks to dismiss the prosecution entirely.

Nothing required the Executive Branch to prosecute Michael Flynn in the first place, and nothing but possible hesitation to accept the political consequences prevents the President from pardoning him.[3] Although Mr. Flynn has twice admitted under oath that he lied to the FBI, and although members of the administration, including the President himself, agreed publicly that he lied, the Executive Branch enjoys wide discretion over charging decisions. And the President has wide latitude in using his pardon power.

But the flipside of the proposition that there is no judicial power to direct the Executive Branch to initiate a prosecution (or, for that matter, to direct the Legislative Branch to legislate) is that there is no political power, legislative or executive, to oversee or direct the Judicial Branch in its final disposition of a fully prosecuted case. The Department of Justice may recommend a sentence, but it cannot impose one itself. Nor can it prevent this Court from imposing a lawful sentence on Michael Flynn. And just as this Court may reject a plea agreement proposed by a prosecutor, it has the authority – and arguably the duty, given the circumstances of this case and the separation of powers – to deny the government's motion to dismiss.

Other amicus filings will no doubt document the troubling facts raised by the Department of Justice's switch in positions in this case. However those facts are viewed, and however any controversies surrounding them might be resolved, this much is plain: the judiciary has a constitutionally cognizable interest in resisting the Executive Branch's request to place a judicial imprimatur on the government's request for dismissal in this case.

Indeed, even if the Department had a valid reason for its unprecedented abandonment of the Flynn prosecution, separation of powers principles would still protect this Court's authority to

---

[3] Of course, "a pardon does not blot out guilt or expunge a judgment of conviction." *In re North (George Fee Application)*, 62 F.3d 1434, 1437 (D.C. Cir. 1994) (per curiam). It does not establish innocence but relieves the offender of the consequences of conviction.

deny the government's motion and complete the resolution of this case. For what matters –
regardless of *why* the Department is seeking to undo this Court's acceptance of Mr. Flynn's two
guilty pleas – is that the political branches do not have, and cannot be given, any role in overseeing
the adjudication of individual cases by the courts and in the final disposition of cases that already
have been fully prosecuted. This Court need not find any improper purpose in order to conclude
that the government's motion should be denied.

## ARGUMENT

This case involves a motion to dismiss a case in which this Court has been heavily invested,
at the request of the Department of Justice, over the past two and a half years. The Executive
Branch made the decision to commence its prosecution of Michael Flynn in November 2017 and
to charge him with violating 18 U.S.C. § 1001. Nothing compelled the Executive Branch to file
its criminal information in the first place; separation of powers principles properly recognize the
Executive Branch's wide latitude with respect to charging decisions. Similarly, the President's
virtually limitless pardon power would allow him to relieve Mr. Flynn of the consequences of a
criminal conviction, without any participation by the Judicial Branch.

But this case involves neither a charging decision nor an exercise of the pardon power.
Rather, the Executive Branch made the choice to enlist the Judicial Branch in the prosecution of
Michael Flynn and to trigger the judicial machinery established pursuant to Article III of the
Constitution. This Court has already (twice) gone through the formal and solemn process of
accepting Mr. Flynn's guilty plea and ensuring that it met all preconditions for validity.

On November 30, 2017, Mr. Flynn signed a sworn statement attesting to the Statement of
Offense and Plea Agreement filed with the Court: "I make this statement knowingly and
voluntarily and because I am, in fact, guilty of the crime charged. . . . I have read every word of
this Statement of Offence, or have had it read to me," and "declare under penalty of perjury that it

15

is true and correct." (Dkt. 4, at 6). On December 1, 2017, Judge Contreras held a plea agreement

hearing at which Mr. Flynn formally entered a plea of guilty as to the charged violation of 18

U.S.C. § 1001.

On December 18, 2018, the Court held a sentencing hearing in which Mr. Flynn again

acknowledged his offense, under penalty of perjury:

> THE COURT: Do you wish to challenge the circumstances on which you were interviewed by the FBI?
>
> THE DEFENDANT: No, Your Honor.
>
> THE COURT: Do you understand that by maintaining your guilty plea and continuing with sentencing, you will give up your right forever to challenge the circumstances under which you were interviewed?
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you have any concerns that you entered your guilty plea before you or your attorneys were able to review information that could have been helpful to your defense?
>
> THE DEFENDANT: No, Your Honor.

Dkt. 103, 12/18/18 Tr. 8:8-19. This Court offered Mr. Flynn additional time to reconsider his plea,

as well as the opportunity to have an independent counsel appointed to provide him with a "second

opinion." Mr. Flynn declined. *Id.* at 9:8-10:20. The Court asked Mr. Flynn numerous questions

to ensure his plea was knowing, adequately counseled, fully voluntary, and properly predicated,

and this Court made clear that it would proceed only if Mr. Flynn were prepared to admit his guilt:

> THE COURT: Mr. Flynn, anything else you want to discuss with me about your plea of guilty? This is not a trick. I'm not trying to trick you. If you want some time to withdraw your plea or try to withdraw your plea, I'll give you that time. If you want to proceed because you are guilty of this offense, I will finally accept your plea.
>
> THE DEFENDANT: I would like to proceed, Your Honor.

*Id.* at 15:23-16:4.[4]

This Court formally accepted Mr. Flynn's guilty plea.[5]

Two and a half years after filing a criminal information, and after securing two guilty pleas under penalty of perjury, the Executive Branch has now made the virtually unheard-of decision to seek to dismiss the prosecution.

But the Executive Branch does not have unilateral authority to do so. As the government's motion acknowledges, its request for dismissal needs this Court's approval pursuant to Federal Rule of Criminal Procedure 48(a), which requires "leave of court." The government's motion therefore raises two fundamental issues under the separation of powers.

(1) In order to grant the government's motion under Rule 48(a), this Court must make an independent determination that dismissal would be in the "public interest" and issue an order to that effect. *Rinaldi v. United States*, 434 U.S. 22, 29, n. 15 (1977) (citing *United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973)). "When this rule was promulgated by the Supreme Court in 1944, it substituted the requirement that dismissal be obtained only by leave of

---

[4] In the Defendant's Memorandum in Aid of Sentencing filed in December 2018, Mr. Flynn reiterated that he "accepted responsibility for his conduct." (Dkt. 50, at 1). The memorandum informed the Court that "General Flynn does not take issue with the description of the nature and circumstances of the offense contained in the Government's sentencing memorandum and the Presentence Investigation Report." *Id.* at 7. "As General Flynn has frankly acknowledged in his own words, he recognizes that his actions were wrong and he accepts full responsibility for them." *Id.* "Even when circumstances later came to light that prompted extensive public debate about the investigation of General Flynn, including revelations that certain FBI officials involved in the January 24 interview of General Flynn were themselves being investigated for misconduct, General Flynn did not back away from accepting responsibility for his actions." *Id.* at 10. "On the day he entered his guilty plea, he said he was 'working to set things right.'" *Id.* at 13.

[5] The Supreme Court has made clear, in a trilogy of decisions authored by Justice White, that a knowing, voluntary, adequately counseled guilty plea waives the right to attack irregularities in the government's case. *See McMann v. Richardson*, 397 U.S. 759, 771-74 (1970); *Brady v. United States*, 397 U.S. 742, 748, 756-58 (1970); *Parker v. North Carolina*, 397 U.S. 790, 796-98 (1970).

court," rejecting a provision allowing unlimited prosecutorial discretion. *Ammidown*, 497 F.2d at

620. The Court's communication to the Advisory Committee on the Rules of Procedure included

a citation to *Young v. United States*, 315 U.S. 257 (1942), which held that a prosecutor's confession

of error "does not relieve th[e] Court of the performance of the judicial function" because "the

proper administration of the criminal law cannot be left merely to the stipulation of parties." *Id.*

at 258-59.

      The history of Rule 48 reflects a deeper principle: the Constitution highly disfavors

unchecked power rather than checks and balances. Accordingly, the Rule should not be construed

as conferring limitless power or discretion on the Executive Branch, absent clear and express text

to the contrary. "Our constitutional structure is premised" on the notion that "unaccountable power

is inconsistent with individual liberty." *Free Enterprise Fund v. Public Co. Accounting Oversight

Bd.*, 537 F.3d 667, 688 (D.C. Cir. 2008) (Kavanaugh, J., dissenting). "The purpose of the

separation and equilibration of powers" was "not merely to assure effective government but to

preserve individual freedom." *Morrison v. Olson*, 487 U.S. 654, 727 (1988) (Scalia, J., dissenting).

The Constitution was crafted "by men who had lived under a form of government that permitted

arbitrary governmental acts to go unchecked." *I.N.S. v. Chadha*, 462 U.S. 919, 959 (1983). Thus,

James Madison famously warned that "[t]he accumulation of all powers, legislative, executive,

and judiciary, in the same hands, . . . may justly be pronounced the very definition of tyranny."

The Federalist No. 47, at 301. Alexander Hamilton wisely noted, "there is no liberty if the power

of judging be not separated from the legislative and executive powers." The Federalist No. 78, at

466 (quoting 1 Baron de Montesquieu, The Spirit of Laws 181 (Nugent trans., 10th ed. 1773)); *see

also Department of Transp. v. Association of American Railroads*, 575 U.S. 43, 75 (2015)

(Thomas, J., concurring in the judgment) ("At the center of the Framers' dedication to the

separation of powers was individual liberty."); *Boumediene v. Bush*, 553 U.S. 723, 742-43 (2008) ("[Separation of powers] serves not only to make Government accountable but also to secure individual liberty. . . . '[E]ven before the birth of this country, separation of powers was known to be a defense against tyranny.'") (citation omitted); *Clinton v. City of New York*, 524 U.S. 417, 450 (1998) (Kennedy, J., concurring) ("Liberty is always at stake when one or more of the branches seek to transgress the separation of powers.").

This Court therefore has the responsibility under Rule 48(a) as well as the separation of powers to scrutinize the government's motion closely. And such review must recognize that the government's motion requests the *active participation* of this Court in the termination of the Flynn prosecution – a role that implicates the independence of the judiciary and the integrity of this Court. The determination required by Rule 48(a) gives this Court an institutional stake in the dismissal sought by the government, because granting the motion would entail an official certification by this Court as to where the public interest lies in this proceeding. Given the extraordinary factual and legal circumstances presented by the Department's abandonment of the Flynn prosecution, such a certification is fraught with political risks to the Judicial Branch. In assessing the perils of the step the government asks the judiciary to take, this Court should heed the instruction of Chief Justice Roberts, who opined for the Court just last Term that courts are "not required to exhibit a naiveté from which ordinary citizens are free." *Department of Commerce v. New York*, 139 S. Ct. 2551, 2575 (2019) (quoting Judge Friendly). "[I]n order to fulfill its designated constitutional role, the judiciary must be independent in all ways that might affect substantive decisionmaking." *Hastings v. Judicial Conference of U.S.*, 770 F.2d 1093, 1104 (D.C. Cir. 1985) (Edwards, J., concurring).

It is "crucial" that courts "maintain[] public perception of fairness and integrity in the justice system." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907 (2018). Thus, the Chief Justice has expressed concerns about the participation of federal courts in approving questionable settlement terms in civil litigation. *See Marek v. Lane*, 134 S. Ct. 8 (2013) (opinion of Roberts, C.J., respecting the denial of certiorari). Justices Alito and Kavanaugh voiced similar concerns in a subsequent case.[6] Placing the imprimatur of the federal judiciary on the dismissal of the Flynn prosecution would carry even greater risks to the integrity – and, candidly, to the public credibility – of the Article III Judicial Branch.

(2) Second, the separation of powers and respect for the Executive Branch's prosecutorial discretion do not compel this Court to grant the government's motion. Rather, the separation of powers protects this Court's authority to render a final disposition in a fully prosecuted case. This Court has already (twice) formally accepted Mr. Flynn's guilty plea. The Department of Justice has already filed a sentencing memorandum (twice). Dkts. 46, 150. All that remains is a sentencing determination entirely within the purview of this Court. In fact, Mr. Flynn asked this Court to proceed with sentencing, and this Court held a sentencing proceeding at his request in December 2018. Dkt. 103. This Court was fully prepared to sentence Mr. Flynn on December 18, 2018, and refrained from doing so only after Mr. Flynn changed his mind and sought a last-minute continuance (after this Court explained to him its usual practice of deferring sentencing until a defendant's cooperation with prosecutors is complete). Dkt. 103, 12/18/18 Tr. 38:24-39:1, 48:1-12.

Even if the government had a proper purpose for seeking dismissal of the Flynn prosecution, the government's motion comes far too late in the day. The case already has been

---

[6] *See* No. 17-961, *Frank v. Gaos*, Tr. Oral Arg. 50, 56, 59, 61, 63 (U.S. S. Ct.).

fully prosecuted. Neither the government nor Mr. Flynn can point to any case in which the Executive Branch has moved to dismiss a prosecution after a guilty plea has been secured (let alone two guilty pleas) and a sentencing proceeding has already been commenced. The absence of precedent is telling; it confirms the constitutional defect in the government's motion.

When this Court (twice) went through the formal and solemn process of accepting Mr. Flynn's guilty plea and ensuring its validity through extensive colloquies, it rendered a decision with Article III significance. And, as Justice Scalia remarked, rulings by Article III courts are not the "property" of litigants, to be erased or vacated at the parties' request. *U.S. Bancorp Mortg. Co. v. Bonner Mall Partnership*, 513 U.S. 18, 26 (1994) (internal quotation marks and citation omitted). Rather, such rulings "are presumptively correct and valuable to the legal community as a whole." *Id.*

Moreover, the sentencing phase of a criminal proceeding is uniquely within this Court's purview. As the D.C. Circuit explained, in a decision that has been repeatedly mischaracterized by Mr. Flynn and his supporters, "the Executive's traditional power over *charging decisions*" exists simultaneously with "the Judiciary's traditional authority over *sentencing decisions*." *United States v. Fokker Services, B.V.*, 818 F.3d 733, 746 (D.C. Cir. 2016) (emphasis added). The Court of Appeals noted (and approved of) "a district court's authority to 'accept' or 'reject' a proposed plea agreement under Rule 11" as "rooted in the Judiciary's traditional power over criminal sentencing." *Id.* at 745. By recognizing the court's role in the sentencing context, which is part of the judiciary's authority protected by the separation of powers, *Fokker Services* exposes

the lacuna in the government's motion, which entirely fails to appreciate this Court's supremacy at the sentencing phase.[7]

The government's motion would override this Court's acceptance of Mr. Flynn's guilty plea and short-circuit this Court's role in sentencing him. Yet executive officers may not exercise judicial power. Article III, Section 1 vests "the judicial Power" exclusively in the federal courts. *See Department of Transp.*, 575 U.S. at 67-68 (Thomas, J., concurring in the judgment) ("These [constitutional] grants are exclusive. When the Government is called upon to perform a function that requires an exercise of legislative, executive, or judicial power, only the vested recipient of that power can perform it.").

Nearly 230 years ago, the Supreme Court made clear that the Constitution does not authorize the Executive Branch to engage in the judicial function of superintending the determinations of federal courts. In *Hayburn's Case*, 2 U.S. (2 Dall.) 409 (1792), Chief Justice Jay and Justice Cushing opined that "by the Constitution, neither the Secretary at War, nor any other Executive officer . . . are authorized to sit as a court of errors on the judicial acts or opinions of this court." *Id.* at 410. Justices Wilson and Blair likewise concluded that the "revision and control" of judicial judgments by the Executive Branch would conflict "with the independence of that judicial power which is vested in the courts." *Id.* at 411; *see also Chicago & Southern Air Lines, Inc. v. Waterman S.S. Corp.*, 333 U.S. 103, 114 (1948). As Justice Scalia observed, "judges" – not executive officers – "handle individual cases." Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev. 1175, 1176 (1989).

---

[7] The D.C. Circuit's decision in *Fokker Services* supplies no authority for the government's motion to dismiss; it involved a deferred prosecution agreement rather than a guilty plea (let alone two).

Even when both political branches act together, they must respect the independent and final authority of the judiciary to adjudicate individual cases. Hence, the separation of powers prevents the political branches "from requiring federal courts to exercise the judicial power in a manner that Article III forbids," or from "usurp[ing] a court's power to interpret and apply the law to the circumstances before it." *Bank Markazi v. Peterson*, 136 S. Ct. 1310, 1322-23 (2016) (brackets, citations, and internal quotation marks omitted). More than two centuries ago, Justice Chase explained that the political branches may "command what is right and prohibit what is wrong; but they cannot change innocence into guilt." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 388 (1798). Nor, he might have added, may they transmute judicially determined guilt into innocence.

Article III grants the judiciary "the power, not merely to rule on cases, but to *decide* them." *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 218-19 (1995) (emphasis in original). The political branches may not "comman[d] the federal courts to reopen final judgments," *id.* at 219, or "prescribe rules of decision to the Judicial Department ... in [pending] cases." *United States v. Klein*, 80 U.S. (13 Wall.) 128, 146 (1872). Thus, in *Klein*, the Court held that a post-Civil War statute invaded the province of the judiciary by providing that no pardon should be admissible as proof of loyalty on the part of former Confederates and directing the Court of Claims and the Supreme Court to dismiss for want of jurisdiction any claim based on a pardon. If the judiciary is protected from the incursions of both political branches, acting together, then a fortiori, the courts are protected from the unilateral actions of the Executive Branch. *See also Robertson v. Seattle Audubon Society*, 503 U.S. 429, 438 (1992) (political branches may not "compel[] . . . findings or results under [preexisting] law").

The separation of powers protects this Court's authority to complete the resolution of this case, free from the interference of the Executive Branch. As Alexander Hamilton recognized,

"[t]he complete independence of the courts of justice is peculiarly essential in a limited Constitution." The Federalist No. 78, at 466.

## CONCLUSION

The government's motion should be denied.

Respectfully submitted.

/s/ *Jonathan S. Massey*

Jonathan S. Massey
D.C. Bar 457593
Massey & Gail LLP
1000 Maine Ave. SW
Suite 450
Washington, D.C. 20024
(202) 652-4511
jmassey@masseygail.com

/s/ *Laurence H. Tribe*

Laurence H. Tribe
*pro hac vice pending*
Harvard Law School
1575 Massachusetts Ave.
Cambridge, MA 02138
(617) 495-1767
larry@tribelaw.com

Dated:  May 22, 2020

24