Leave to file GRANTED

*Ernest G. Sullivan*

United States District Judge

9-28-2020

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

MICHAEL T. FLYNN,

           Defendant.

Crim. No. 17-232 (EGS)

---

## BRIEF OF WATERGATE PROSECUTORS AS *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY

Lawrence S. Robbins
Alan E. Untereiner
Lee Turner Friedman
D. Hunter Smith
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
2000 K Street, NW, 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
lrobbins@robbinsrussell.com

William W. Taylor, III
Ezra B. Marcus
ZUCKERMAN SPAEDER LLP
1800 M Street NW Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
wtaylor@zuckerman.com

*Counsel for* Amici Curiae *Watergate Prosecutors*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................................ ii

STATEMENT OF INTEREST ........................................................................................................ 1

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.      THE COURT HAS BROAD AUTHORITY TO INQUIRE INTO, AND, IF
        WARRANTED, DENY A POST-CONVICTION RULE 48(A) MOTION ...................... 2

II.     EVEN UNDER THE NARROWEST CONCEPTION OF THE COURT'S
        AUTHORITY, THERE IS AMPLE REASON TO DENY THE GOVERNMENT'S
        RULE 48(A) MOTION ...................................................................................................... 8

        A.      The reasons the Government advances for its motion are insubstantial ................ 9

        B.      The Government has failed to consider factors required by the public interest ... 16

        C.      The Government's effort to dismiss the information is a gross abuse of
                prosecutorial discretion ...................................................................................... 19

III.    SEVERAL PROCEDURAL AVENUES ARE AVAILABLE TO THE COURT .......... 22

CONCLUSION .............................................................................................................................. 25

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Berger v. United States,*
295 U.S. 78 (1935)..................................................................................................................19

*Berman v. United States,*
302 U.S. 211 (1937)..................................................................................................................5

*\*Boykin v. Alabama,*
395 U.S. 238 (1969)..........................................................................................................4, 5, 22

*Brady v. United States,*
397 U.S. 742 (1970)..............................................................................................................4, 6

*Brogan v. United States,*
522 U.S. 398 (1998)................................................................................................................10

*Coleman v. Burnett,*
477 F.2d 1187 (D.C. Cir. 1973).............................................................................................3

*Communist Party v. Subversive Activities Control Bd.,*
351 U.S. 115 (1956)................................................................................................................17

*In re Extradition of Liuksila,*
133 F. Supp. 3d 249 (D.D.C. 2016).......................................................................................6

*Florida v. Nixon,*
543 U.S. 175 (2004).............................................................................................................4, 9

*Fox v. Ryan,*
462 F. App'x 730 (9th Cir. 2011) ........................................................................................24

*Garris v. Lindsay,*
794 F.2d 722 (D.C. Cir. 1986)...............................................................................................4

*Jackson v. U.S. Parole Comm'n,*
703 F. Supp. 2d 33 (D.D.C. 2010).......................................................................................22

*Joiner v. United States,*
No. 3:17-CV-2692-S, 2018 WL 6727085 (N.D. Tex. Dec. 21, 2018), *aff'd,*
955 F.3d 399 (5th Cir 2020) .................................................................................................13

---

\* Authorities on which *Amici* chiefly rely are marked with an asterisk.

*Kercheval v. United States,*
    274 U.S. 220 (1927)...................................................................................................4

Kokkonen v. Guardian Life Ins. Co. of Am.,
    511 U.S. 375 (1994).................................................................................................23

Mesarosh v. United States,
    352 U.S. 1 (1956)....................................................................................................17

Mistretta v. United States,
    488 U.S. 361 (1989).................................................................................................22

Neder v. United States,
    527 U.S. 1 (1999)....................................................................................................10

In re Richards,
    213 F.3d 773 (3d Cir. 2000)....................................................................................23

Rinaldi v. United States,
    434 U.S. 22 (1977).....................................................................................................6

Rosales-Mireles v. United States,
    138 S. Ct. 1897 (2018).............................................................................................19

Santobello v. New York,
    404 U.S. 257 (1971).................................................................................................22

Schick v. United States,
    195 U.S. 65 (1904).....................................................................................................4

Smith v. Allwright,
    321 U.S. 649 (1944).....................................................................................................2

United States v. Aliotta,
    199 F.3d 78 (2d Cir.1999)........................................................................................24

*United States v. Ammidown,*
    497 F.2d 615 (D.C. Cir. 1973)......................................2, 3, 4, 5, 6, 7, 8, 16, 18, 19, 21, 23

United States v. Benz,
    282 U.S. 304 (1931).................................................................................................22

United States v. Booker,
    543 U.S. 220 (2005).................................................................................................22

United States v. Borges,
    153 F. Supp. 3d 216 (D.D.C. 2015) .......................................................................7, 24

*United States v. Brayboy,*
    806 F. Supp. 1576 (S.D. Fla. 1992) .................................................................5, 23

*United States v. Caceres,*
    440 U.S. 741 (1979)...............................................................................................11

*United States v. Carrigan,*
    778 F.2d 1454 (10th Cir. 1985) ...............................................................................7

*United States v. Christie,*
    624 F.3d 558 (3d Cir. 2010)...................................................................................11

*United States v. Clark,*
    787 F.3d 451 (7th Cir. 2015) .................................................................................10

*United States v. Cowan,*
    524 F.2d 504 (5th Cir. 1975) ...................................................................................7

*United States v. Fokker Servs. B.V.,*
    818 F.3d 733 (D.C. Cir. 2016)................................................................3, 4, 8, 18

*United States v. Hamm,*
    659 F.2d 624 (5th Cir. Unit A Oct. 1981) (en banc)......................................3, 6, 7

*United States v. Hyde,*
    520 U.S. 670 (1997)..................................................................................................5

*United States v. James,*
    861 F. Supp. 151 (D.D.C. 1994) ..............................................................................7

*United States v. Karake,*
    No. CRIM.A. 02-00256 ESH, 2007 WL 8045732 (D.D.C. Feb. 7, 2007) ..............................24

*United States v. Leyva,*
    916 F.3d 14 (D.C. Cir. 2019)...................................................................................6

*United States v. McIntosh,*
    580 F.3d 1222 (11th Cir. 2009) ........................................................................24, 25

*United States v. McIntosh,*
    704 F.3d 894 (11th Cir. 2013) ...............................................................................25

*United States v. Microsoft Corp.,*
    56 F.3d 1448 (D.C. Cir. 1995)..................................................................................3

*United States v. Nixon,*
    418 U.S. 683 (1974)................................................................................................18

*United States v. Patterson,*
    381 F.3d 859 (9th Cir. 2004) ............................................................................24, 25

*United States v. Smith,*
    467 F.3d 785 (D.C. Cir. 2006) ...................................................................................6

*United States v. Smith,*
    55 F.3d 157 (4th Cir. 1995) .......................................................................................6

*United States v. Stadd,*
    636 F.3d 630 (D.C. Cir. 2011) ...........................................................................10, 15

*United States v. Strayer,*
    846 F.2d 1262 (10th Cir.1988) .................................................................................7

*United States v. Thomas,*
    541 F. Supp. 2d 18 (D.D.C. 2008) ............................................................................5

*United States v. Timmreck,*
    441 U.S. 780 (1979)...................................................................................................4

*United States v. Wheeler,*
    753 F.3d 200 (D.C. Cir. 2014) ...................................................................................6

*Weinstock v. United States,*
    231 F.2d 699 (D.C. Cir. 1956) ...................................................................................9

*Young v. United States,*
    315 U.S. 257 (1942)...................................................................................................7

*Young v. United States ex rel. Vuitton et Fils S.A.,*
    481 U.S. 787 (1987)..................................................................................................24

**Statutes and Regulations**

18 U.S.C. § 1001 .............................................................................................................10

Ethics in Government Act of 1978, Pub. L. 95-521, 92 Stat. 1824 (1978) ....................17

28 C.F.R. §§ 600.1-600.10...................................................................................17, 18

**Other Authorities**

64 Fed. Reg. 37,038 (July 9, 1999)................................................................................17

@realDonaldTrump, TWITTER (Apr. 20, 2018, 6:34 AM),
    https://tinyurl.com/y7o7xagw ..................................................................................20

@realDonaldTrump, TWITTER (Oct. 26, 2019, 7:02 AM),
    https://tinyurl.com/y8p2xffv ................................................................................20

@realDonaldTrump, TWITTER (Mar. 15, 2020, 1:29 PM),
    https://tinyurl.com/y9us35j2 ................................................................................21

@realDonaldTrump, TWITTER (Apr. 30, 2020, 7:47 AM),
    https://tinyurl.com/yc5j8s5j ................................................................................21

*The Attorney General's Guidelines for Domestic FBI Operations* (Sept. 29,
    2008), https://bit.ly/3c8CZUQ ......................................................................11, 12

Ryan Teague Beckwith, *Michael Flynn Led a 'Lock Her Up' Chant at the
    Republican Convention.  Now He's Charged with Lying to the FBI*, TIME
    (Dec. 1, 2017), https://tinyurl.com/y9fkejwj ................................................20

Priyanka Boghani, *How Michael Flynn Changed Trump's Campaign and His
    Presidency*, PBS FRONTLINE (Dec. 1, 2017), https://tinyurl.com/y7vm7jpc.....................20

CBS, *Face the Nation* (Jan. 15, 2017), https://cbsn.ws/2Xvo3f7 ...................................13

Department of Justice Mission Statement, https://bit.ly/2WJMANl ...........................17

DOJ OIG, *Review of Four FISA Applications and Other Aspects of the FBI's
    Crossfire Hurricane Investigation* (Dec. 2019), https://bit.ly/3coodJJ; ....................12

Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of
    Court"?*, 73 Stan. L. Rev. (forthcoming 2020), https://bit.ly/2WFEwNE ...................7, 8, 21

Robert H. Jackson, *The Federal Prosecutor*, 24 J. Am. Jud. Soc'y 18 (1940)..............................17

*James Comey's prepared testimony*, CNN POLITICS (June 8, 2017),
    https://tinyurl.com/y9zkxywg (James B. Comey, Statement for the Record,
    Senate Select Committee on Intelligence). ..................................................20

Mary B. McCord, *Bill Barr Twisted My Words in Dropping the Flynn Case.
    Here's the Truth*, N.Y. TIMES (May 10, 2020), https://nyti.ms/3cj25kB.............................23

*Michael Flynn leads 'lock her up' chant at 2016 RNC*, CNN (YouTube),
    https://tinyurl.com/y7dy2259......................................................................20

Office of the Attorney General, Order No. 3915-2017 (May 17, 2017),
    https://bit.ly/2LFt7Xw ...........................................................................17

Order, *United States v. Stevens*,
    No. 08-cr-231 (D.D.C. Apr. 8, 2009), ECF No. 375 .........................................23

Donald C. Smaltz, *The Independent Counsel: A View from Inside*, 86 Geo. L.J.
    2307 (1998)........................................................................................17

Barbara Starr & Ryan Browne, *Will Trump's favorite general become his national security adviser?*, CNN POLITICS (Nov. 16, 2016), https://tinyurl.com/ycbo2r7d..................................................................................20

S. Rep. No. 95-170 (1977).............................................................................................19

Justin Wise, *Trump calls FBI investigators in Russia probe 'human scum'*, THE HILL (Apr. 20, 2020)............................................................................................21

## STATEMENT OF INTEREST

*Amici Curiae* are 17 individuals who served on the Justice Department's Watergate Special Prosecution Force ("Watergate Prosecutors").  The Special Prosecution Force was created to investigate politically connected individuals in an objective, non-partisan way.[1]  By virtue of that experience, they have unique insight into prosecutorial independence and the respective responsibilities of the Executive and Judicial Branches when close associates of the President are suspected of crimes.

In this case, the prosecution was commenced, and the defendant's conviction (in the form of a guilty plea) was secured, by the office of a Special Counsel who was likewise appointed to ensure an objective and impartial investigation.  The Watergate Prosecutors seek to present legal argument that may assist the Court in analyzing the issues presented by the Government's motion to dismiss.

## INTRODUCTION

Defendant Michael T. Flynn stands convicted of making false statements to the FBI in violation of 18 U.S.C. § 1001.  On May 7, 2020, after Flynn had twice pled guilty, the Government moved to dismiss the underlying information.  *See* ECF No. 198 ("Mot.").  Although Federal Rule of Criminal Procedure 48(a) requires "leave of court" before federal charges may be dismissed, the Government tells the Court that its discretion is "narrow" and "circumscribed," and that federal judges may not "second-guess" the Government's prosecutorial judgment.  Mot. 10-11.

---

[1] The Watergate Prosecutors are Nick Akerman, Richard Ben-Veniste, Richard J. Davis, Carl B. Feldbaum, George T. Frampton, Jr., Kenneth S. Geller, Gerald Goldman, Stephen E. Haberfeld, Henry L. Hecht, Paul R. Hoeber, Philip Allen Lacovara, Michael Lehr, Paul R. Michel, Robert L. Palmer, Frank Tuerkheimer, Jill Wine-Banks, and Roger Witten.  No person other than the Watergate Prosecutors and their counsel authored any part of this brief or contributed money intended to fund its preparation or submission.  The Watergate Prosecutors have sought the Court's leave to file this brief.

The motion ignores this Court's clear and essential authority under Article III, and its discretion under Rule 48(a), to deny a motion to dismiss after the Court has accepted a defendant's guilty plea. And the motion provides no good reason for this Court to exercise that discretion in the Government's (or Flynn's) favor: It relies on a definition of materiality that the Department of Justice has persuaded the courts to reject in every other case but this one. It takes profuse liberties with the factual record. More astonishing still, the motion asks the Court to find that the FBI should not have interviewed, on a voluntary basis, an incoming National Security Advisor whose lies to other Administration officials left him open to Russian compromise. By making arguments on Flynn's behalf that the Government would oppose (and has opposed) in every other setting, the motion is little more than the proverbial "restricted railway ticket, good for this day and train only." *Smith v. Allwright*, 321 U.S. 649, 669 (1944) (Roberts, J., dissenting).

Nothing in Rule 48(a) or the Constitution requires this Court to punch that ticket. Where a defendant has pleaded guilty to charges brought by a duly appointed Special Counsel, and the Government thereafter seeks to undo the conviction, the Court has power under Rule 48(a) to scrutinize and, if warranted, deny the motion.

## ARGUMENT

## I.   THE COURT HAS BROAD AUTHORITY TO INQUIRE INTO, AND, IF WARRANTED, DENY A POST-CONVICTION RULE 48(A) MOTION

1. A district court is not "a rubber stamp for the prosecutor's decision" to dismiss an information. *United States v. Ammidown*, 497 F.2d 615, 622 (D.C. Cir. 1973). Instead, by its terms, Rule 48(a) requires "leave of court" before federal charges may be dismissed. A Rule 48(a) motion calls upon courts to "balance the constitutional duty of . . . the Executive Branch[] to take care that the laws are faithfully executed with the constitutional powers of the federal courts."

*United States v. Hamm*, 659 F.2d 624, 628 (5th Cir. Unit A Oct. 1981) (en banc) (quotation marks omitted); *see United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741-42 (D.C. Cir. 2016).

That balance—and the relative weight accorded to the Article II and Article III interests at stake—necessarily depends on the procedural posture of a case. "[D]ecisions to dismiss *pending* criminal charges . . . lie squarely within the ken of prosecutorial discretion." *Fokker Servs.*, 818 F.3d at 742 (emphasis added). Thus, during "the plea bargaining process," the Executive Branch's decision to dismiss charges "is to be followed in the overwhelming number of cases." *Ammidown*, 497 F.2d at 621. Even then, a district judge may withhold approval if he is not "satisfied that the reasons advanced for the proposed dismissal are substantial," or "if he finds that the prosecutor [either] has failed to give consideration to factors that must be given consideration in the public interest" or has otherwise "abused his discretion." *Id.* at 620, 622.[2]

In withholding approval, a district judge must provide a "reasoned exercise of discretion" that addresses "one or more" of three factors: (a) "fairness to the defense;" (b) "due and legitimate prosecutorial interests" and (c) protection of the court's Article III authority. *Id.* at 622. But, even before a conviction, nothing in either the Constitution nor Rule 48(a) obligates a district court to place its imprimatur on a motion "that, on its face and even after government explanation, appears to make a mockery of judicial power." *Fokker Servs.*, 818 F.3d at 743 (quoting *United States v. Microsoft Corp.*, 56 F.3d 1448,1462 (D.C. Cir. 1995) (per curiam)).

After a guilty plea is accepted, judicial scrutiny of a Rule 48(a) motion is necessarily even more searching. "A plea of guilty . . . bring[s] the prosecution to a[n] . . . end[.]" *Coleman v.*

---

[2] Though Rule 48(a) did "not apply as such" in *Ammidown*, the D.C. Circuit thoroughly canvassed the Rule's purposes and history before setting forth the "appropriate doctrines governing trial judges in considering whether to deny approval . . . to dismissals of cases outright" under Rule 48(a). *Ammidown*, 497 F.2d at 619-22.

*Burnett*, 477 F.2d 1187, 1193-94 (D.C. Cir. 1973). It "is a conviction," *Boykin v. Alabama*, 395 U.S. 238, 242 (1969), after which "nothing remains but to give judgment and determine punishment," *id.*; *Kercheval v. United States*, 274 U.S. 220, 223 (1927); *Schick v. United States*, 195 U.S. 65, 82 (1904). A guilty plea is therefore "an event of signal significance," *Florida v. Nixon*, 543 U.S. 175, 187 (2004), which marks a criminal proceeding's transition from the domain of "the Executive's traditional power over charging decisions" to that of "the Judiciary's traditional authority over sentencing decisions," *Fokker Servs.*, 818 F.3d at 746.

Because a guilty plea is a conviction, the denial of a post-plea Rule 48(a) motion will not intrude upon any Article II prerogatives, nor require courts to perform inquiries that they are not "competent to undertake." *Fokker Servs.*, 818 F.3d at 741. The conviction has already been obtained, so the Court need not second-guess the Executive's decisions regarding the relative "strength" of its cases or its overall "enforcement plan." *Id.* Nor is a court, under those circumstances, asked to superintend the Executive's allocation of its limited "prosecution resources." *Ammidown*, 497 F.2d at 621.[3]

Conversely, granting a post-plea Rule 48(a) motion implicates several core Article III values. Article III courts have a strong interest in the "conservation of judicial resources and the finality of judicial decisions." *Garris v. Lindsay*, 794 F.2d 722, 726 (D.C. Cir. 1986) (per curiam). These concerns have "special force with respect to convictions based on guilty pleas," *United States v. Timmreck*, 441 U.S. 780, 784 (1979), which courts accept only with "care and discernment," *Brady v. United States*, 397 U.S. 742, 748 (1970), and "the utmost solicitude of which courts are capable," *Boykin*, 395 U.S. at 243-44. Here, the Court exercised such care and

---

[3] Despite its extensive reliance on the case for its Rule 48(a) standard (*see* Mot. 10-11), the Government nowhere mentions that *Fokker*'s discussion of Rule 48(a) concerned a hypothetical *pre*-conviction motion to dismiss "pending" charges. *See Fokker Servs.*, 818 F.3d at 742, 746.

4

expended its resources in hearing and accepting the defendant's two guilty pleas. *See* ECF No. 16 at 31; ECF No. 103 at 16. And in doing so, it determined that the defendant's plea was knowing and voluntary and that his factual admissions satisfied the elements of the crime charged, responsibilities which are committed exclusively to the court.

Article III courts also have a strong interest in "protect[ing] . . . the sentencing authority reserved to the judge." *Ammidown*, 497 F.2d at 622; *see United States v. Brayboy*, 806 F. Supp. 1576, 1580 (S.D. Fla. 1992) (holding that it would raise a separation-of-powers problem if the Executive could use Rule 48(a) to "eliminate [a] [c]ourt's authority to sentence, or if a sentence has been imposed, to set aside that result").[4] Here, the Government's motion comes more than a year after the Court first referred this case to the Probation Office for a presentence investigation, *see* Minute Order (Sept. 19, 2018), after it had accepted multiple sentencing submissions, *e.g.*, ECF Nos. 46, 50, 56, 146, 150, 156, 163, and where the only reason the Court has not yet imposed a sentence is that it has deferred to the parties' preferences on timing. *See* ECF No. 40 at 9; ECF No. 103 at 30-31.

    2.    These Article III considerations explain why trial judges must have substantial discretion in ruling on post-plea Rule 48(a) motions. Because the casual vacatur of guilty pleas "debases the judicial proceeding at which a defendant pleads and the court accepts his plea," *United States v. Hyde*, 520 U.S. 670, 676 (1997), a defendant's motion to withdraw a guilty plea is committed to "the court's discretion," *United States v. Thomas*, 541 F. Supp. 2d 18, 23 (D.D.C. 2008). That discretion is substantial, and "a defendant who fails to show some error under Rule

---

[4] To be sure, "the judgment is final for the purpose of appeal" only after the imposition of the sentence. *Berman v. United States*, 302 U.S. 211, 212 (1937). But that does nothing to diminish the fact that an accepted guilty plea "is a conviction," *Boykin*, 395 U.S. at 242, that implicates significant Article III interests.

11 has to shoulder an extremely heavy burden" to show it has been abused. *United States v. Leyva*, 916 F.3d 14, 22 (D.C. Cir. 2019). So too for both motions to reconsider and motions under Federal Rule of Criminal Procedure 33(a) to vacate a judgment in "the interest of justice": "Trial courts enjoy broad discretion" precisely because such motions seek to undo a court order following a full and fair invocation of the judicial process. *United States v. Wheeler*, 753 F.3d 200, 208 (D.C. Cir. 2014) (Rule 33 motions); *In re Extradition of Liuksila*, 133 F. Supp. 3d 249, 256 (D.D.C. 2016) (motions to reconsider).

A post-plea Rule 48(a) motion is, in all material respects, no different. After a court has exercised its "grave and solemn" responsibilities in accepting a plea of guilty, *Brady*, 397 U.S. at 748, the parties cannot expect the court's order to be undone simply because they ask for it. Instead, because of the substantial Article III values at stake, a discretionary "interests of justice" inquiry similar to that for motions to reconsider and motions under Rule 33 should apply. *See Liuksila*, 133 F. Supp. 3d at 256; *Wheeler*, 753 F.3d at 208.[5]

3. The Government cautions the Court not to "second-guess the Government's conclusion" that abandoning Flynn's prosecution is in "the public interest." Mot. 11 (quotation marks omitted). But by requiring "leave of court," Rule 48(a) "entitles the judge to obtain *and evaluate* the prosecutor's reasons." *Ammidown*, 497 F.2d at 622 (emphasis added).

---

[5] Courts have occasionally granted post-plea Rule 48(a) motions, but without any meaningful attention to the procedural posture. *See, e.g.*, *Hamm*, 659 F.2d at 628-29; *United States v. Smith*, 55 F.3d 157, 160 (4th Cir. 1995). Likewise, in *Rinaldi v. United States*, 434 U.S. 22 (1977) (per curiam), the Supreme Court reversed the denial of a post-conviction Rule 48(a) motion, but in doing so it held only that the rationale adopted by the district court was an abuse of discretion. *See id.* at 30-32. As the D.C. Circuit has since observed, that narrow holding did not require the Court to address the "implications" of the case's procedural posture. *United States v. Smith*, 467 F.3d 785, 789 (D.C. Cir. 2006).

Indeed, the Supreme Court added Rule 48's leave-of-court requirement precisely "to prevent abuse of the uncontrolled power of dismissal previously enjoyed by prosecutors," and "to assure protection of the public interest." *Id.* at 619-20, 622.[6] Members of the Advisory Committee charged with drafting the rule were concerned "that improper political influence might spur a prosecutor's decision to drop a case," and thought that a leave-of-court requirement would "provide[] a salutary check against the prosecutor whose independence was compromised by orders from 'Washington.'" Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan. L. Rev. (forthcoming 2020) (manuscript at 6, 9), https://bit.ly/2WFEwNE. When the Committee nonetheless sent the Supreme Court a draft rule *without* a leave-of-court requirement, the Supreme Court returned the draft, citing its recent holding that a confession of error by the Government "does not relieve this Court of the performance of the judicial function." *Id.* at 8 (quoting *Young v. United States*, 315 U.S. 257, 258 (1942)); *see Young*, 315 U.S. at 258 ("[O]ur judicial obligations compel us to examine independently the errors confessed."). When the Committee's final proposed rule *still* lacked a

---

[6]  *See also United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015) (Rule 48(a) is "intended to allow courts to consider the public interest, fair administration of criminal justice and preservation of judicial integrity" (quoting *United States v. Strayer*, 846 F.2d 1262, 1265 (10th Cir.1988))); *United States v. James*, 861 F. Supp. 151, 155-56 (D.D.C. 1994); *United States v. Carrigan*, 778 F.2d 1454, 1463 (10th Cir. 1985); *Hamm*, 659 F.2d at 629-30; *United States v. Cowan*, 524 F.2d 504, 512 (5th Cir. 1975).

Other *amici* (*see, e.g.*, D.C. Cir. Br. of 11 House Members at 8-9) have asserted that an argument made in *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), differs from the Watergate Prosecutors' position here. But *Cowan* did not involve a motion to dismiss charges to which the defendant had pled guilty. Further, the Fifth Circuit held that Rule 48(a) "should and can be construed to preserve the essential judicial function of protecting the public interest in the evenhanded administration of criminal justice," and concluded that "[n]othing in this record overcomes the presumption that [the Government sought to dismiss the charges] in good faith for substantial reasons sufficiently articulated in the motion to dismiss." *Cowan*, 524 F.2d at 512, 514. That is the same inquiry that we urge this Court to conduct.

"leave of court" requirement, the Supreme Court exercised its prerogative to add one, precisely to "vest[] district judges with the power to limit unwarranted dismissals by corruptly motivated prosecutors." Frampton, *supra*, at 5-6, 10-11.

Thus, there is ample basis for this Circuit's rule that even *pre-conviction*, a district court may deny a Rule 48(a) motion if it is not "satisfied that the reasons advanced for the proposed dismissal are substantial," or if it "finds that the prosecutor has failed to give consideration to factors that must be given consideration in the public interest," or believes that the prosecutor has otherwise "abused his discretion." *Ammidown*, 497 F.2d at 620, 622. And, after a court has "exercise[d] its coercive power," *Fokker Servs.*, 818 F.3d at 746, the bar the Government must clear is necessarily much higher.

## II. EVEN UNDER THE NARROWEST CONCEPTION OF THE COURT'S AUTHORITY, THERE IS AMPLE REASON TO DENY THE GOVERNMENT'S RULE 48(A) MOTION

Even if the Government had filed its Rule 48(a) motion before Flynn pleaded guilty (twice), this Court would have the discretion to deny it. *First*, the motion is premised on several egregious mischaracterizations of the relevant facts and the governing law, and thus the "reasons advanced for the proposed dismissal are [not] substantial," *Ammidown*, 497 F.2d at 620. *Second*, "the prosecutor has failed to give consideration to factors that must be given consideration in the public interest," *id.* at 622, including the prospect that the public may perceive the decision to drop a successful prosecution, previously entrusted to a special counsel, as an act of pure political partisanship. And, *third*, there is reason to believe that the prosecutor has in fact "abused his discretion," *id.*, by making a decision based on political loyalties, and not the facts and law.

### A. The reasons the Government advances for its motion are insubstantial

1. The procedural context alone warrants skepticism. The Government professes that—after years of prosecuting this case and making contrary arguments—it no longer believes that it "can prove either the relevant false statements or their materiality beyond a reasonable doubt." Mot. 2. But Flynn stood before two judges of this District on two separate occasions and *admitted* that he committed the crime, expressly acknowledging that his conduct satisfied *all elements* of the crime charged, including materiality and falsity. ECF Nos. 16, 103. The Court accepted the plea under Rule 11, "satisfied that Mr. Flynn . . . understood . . . the nature of the charges against him and the consequences of pleading guilty," and satisfied "that there was and remains . . . a factual basis for Mr. Flynn's plea of guilty." ECF No. 103 at 16. This plea was "itself a conviction." *Nixon*, 543 U.S. at 187.

It is odd, to say the least, that the Government, having already obtained such a conviction, now has doubts that it could do so, if put to the test. It is even odder that the Government premises its doubts on what it calls "newly discovered" evidence, Mot. 18, none of which it would even disclose to an ordinary defendant in an ordinary case, *see, e.g.*, ECF No. 144 at 23 (denying Flynn's *Brady* motion for "deliberative" evidence), and all of which appears to have been available to the Government when Flynn pled guilty for the second time.

2. The legal rationale for the motion is absurd. Relying on a single, sixty-four-year-old decision, the Government asserts that Flynn's lies were not "material" because they were not "reasonably likely to influence [a] tribunal in making a determination *required to be made*." Mot. 1, 13 (quoting *Weinstock v. United States*, 231 F.2d 699, 701 (D.C. Cir. 1956) (emphasis added by the Government)). But the Court of Appeals has rejected that very argument when it was advanced by a criminal defendant, holding that the Supreme Court has "adopted a different definition of

9

materiality under section 1001." *United States v. Stadd*, 636 F.3d 630, 638 (D.C. Cir. 2011) (citing *Neder v. United States*, 527 U.S. 1 (1999)). A false statement is material, the Court of Appeals held, if it has "a natural tendency to influence, or is capable of influencing, the decision of the decisionmaking body to which it was addressed," full stop. *Id.* (quoting *Neder*, 527 U.S. at 16).

The Government knows this full well. Only seven months ago, it recited the *correct* materiality standard in opposing Flynn's *Brady* motion, with no mention of the (superseded) "required to be made" element it now resurrects. *See* ECF No. 132 at 10-11 (arguing that "a false statement is material if it has a natural tendency to influence, or is capable of influencing, the decision of the decision making body to which it was addressed" (quotation marks omitted)). And, of course, in prosecutions in every district in the country (indeed, perhaps in every case save this one), it is the Justice Department that advocates a low materiality standard.[7]

3. The Government also argues that Flynn's false statements to the FBI were not "material" because the FBI had no "legitimate investigative basis" to conduct the January 24, 2017, interview. Mot. 2. Thus, the Government says, the interview was not sufficiently "predicated." *Id.* But that simply has no bearing on whether Flynn's statements had "a natural tendency to influence, or [were] capable of influencing, the decision of the decisionmaking body to which [they were] addressed." *Stadd*, 636 F.3d at 638. The Supreme Court has expressly rejected the argument that 18 U.S.C. § 1001 applies only where necessary to "protect the *authorized* functions of governmental departments and agencies." *Brogan v. United States*, 522 U.S. 398, 403 (1998)

---

[7] *See, e.g.*, *United States v. Clark*, 787 F.3d 451, 460 (7th Cir. 2015) ("The government . . . points out that [the threshold for materiality is] a fairly low bar for the government to meet." (quotation marks omitted)); Br. of Appellee at 15, *United States v. Golden*, 284 F. App'x 646 (11th Cir. 2008) (No. 07-12107), 2007 WL 2329426 (calling the threshold for materiality "conspicuously low"); Br. of Appellee at 5, *United States v. Kinton*, 217 F.3d 842 (4th Cir. 2000) (No. 00-4090), 2000 WL 33990617, at *5 (same).

(emphasis added).  What is more, the very Guidelines setting forth the predication requirements for FBI investigations state:

> These Guidelines are set forth *solely for the purpose of internal Department of Justice guidance*.  They are not intended to, do not, and may not be relied upon to create any rights, substantive or procedural, enforceable by law by any party in any matter, civil or criminal, nor do they place any limitation on otherwise lawful investigative and litigative prerogatives of the Department of Justice.

*The Attorney General's Guidelines for Domestic FBI Operations*, at 14 (Sept. 29, 2008) (emphasis added), https://bit.ly/3c8CZUQ.  Not surprisingly, then, we are unaware of a single case in which a defendant has successfully challenged a statement as immaterial because the interviewing agents neglected to check the right internal boxes before interviewing the defendant.  *Cf. United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010) (internal government policies "do not themselves create rights for criminal defendants").  *Accord United States v. Caceres*, 440 U.S. 741, 754 (1979).[8]

In any event, even a cursory review of the record leaves little doubt that the Government's new "predication" theory lacks any basis in fact.  As an initial matter, *voluntary* interviews may be conducted as part of so-called "[a]ssessments," which do not require "any particular factual predication."  The Attorney General's Guidelines, *supra*, at 17, 20.  Because Flynn voluntarily participated in the interview with the FBI, it does not matter whether it was part of a predicated investigation.  Further, even if predication might have been required, the "Deputy Director of the

---

[8] For much the same reasons, it is irrelevant, even if true, that Flynn's communications with Ambassador Kislyak may have been "appropriate" (Mot. 13) or that the Department has never charged anyone with a Logan Act violation (*id.* at 15 n.4).  It is quite doubtful, in any event, that Flynn's communications with Mr. Kislyak were, in fact, "appropriate."  Flynn was not yet the National Security Adviser, and his actions may have undermined U.S. policy at the time.  And because he failed to disclose his supposedly "appropriate" efforts, the intelligence community devoted considerable investigative resources to understanding why Russia had not responded to President Obama's sanctions for election interference.  The dubious propriety of Flynn's conversations, and his failure to disclose them to the administration, gave Flynn plenty of motive to lie to the FBI when asked about them.

FBI" is authorized to allow agents to depart from the Guidelines. *Id.* at 14. As the Government's motion makes clear, the Flynn interview was not only approved, but *arranged*, by Deputy Director McCabe. Mot., Ex. 11.

But even if it were required, there was ample factual predication for the interview. A predicated investigation may be initiated if "[a]n activity constituting . . . a threat to the national security has or may have occurred" or if "[a]n individual . . . is or may be a target of . . . infiltration[] or recruitment in connection with . . . a threat to the national security and the investigation may obtain information that would help to protect against such activity or threat." *The Attorney General's Guidelines*, *supra*, at 21.

This "low threshold" was easily satisfied here. DOJ OIG, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation*, at iii (Dec. 2019), https://bit.ly/3coodJJ; *see id.* (concluding that the FBI's investigation of Flynn was sufficiently predicated). As the Government itself argued in this very case, "[h]ere, there were multiple bases for the FBI to interview the defendant. The defendant's false statements publicly attributed to him by White House officials about his communications with Russia were alone a sufficient and appropriate basis for conducting the investigative step of interviewing the defendant." ECF No. 132 at 12.

The Government's own exhibits make clear that, by the time the FBI interviewed Flynn on January 24, 2017, it knew that (i) Flynn had had pre-inauguration foreign policy discussions with Russian Ambassador Sergey Kislyak on December 29, 2016, during which Flynn discussed the Obama administration's sanctions on Russia, Mot., Ex. 3 at 4-5; (ii) Vice President-elect Michael Pence stated on CBS's *Face the Nation* on January 15, 2017, that Flynn had informed him that his

conversations with Kislyak "had nothing whatsoever to do with those sanctions,"[9] Mot., Ex. 4 at

2; (iii) incoming White House spokesman, Sean Spicer, recounted Flynn's similarly untrue account

of his conversation to the press, Mot., Ex. 4 at 4-5; and (iv) FBI and DOJ officials were concerned

that, because "Pence had said something untrue to the American people, and the Russians knew it

was untrue," there was a serious risk of a "compromise situation for Flynn," Mot., Ex. 3 at 4, 7.

It is hard to conjure a more substantial "predicate" to conduct a voluntary, counter-intelligence interview.  Indeed, it defies comprehension to suggest (as the Government does now)

that an incoming National Security Advisor, whom Russia knew to have misled both the Vice

President and the President's Press Secretary about his conversations with the Russian

Ambassador, should not have been interviewed by federal agents concerned about potential

Russian blackmail.

The Government insists, however, that the interviewing agents could not have been "deeply

concerned" by Flynn's false statements to the Vice President and the Press Secretary because they

did not seek to interview either of those individuals.  Mot. 16.  We doubt that the Government

would tolerate so paltry an argument if any other defendant were sitting in the dock.  After all, as

the Government has said elsewhere, the FBI has "'wide discretion to determine the operational

details of how to conduct an investigation[,]' including 'how to communicate and interact with

subjects of investigation.'" *Joiner v. United States*, No. 3:17-CV-2692-S, 2018 WL 6727085, at

*5 (N.D. Tex. Dec. 21, 2018) (alteration in original) (quoting Gov't Br., App'x at 40), *aff'd*, 955

F.3d 399 (5th Cir. 2020).  And it scarcely takes much imagination to suppose why competent

investigators might wish to interview Flynn before speaking with other high-ranking

---

[9] CBS, *Face the Nation* (Jan. 15, 2017), https://cbsn.ws/2Xvo3f7.

Administration officials.   Among other things, proceeding in the opposite order might have jeopardized the investigation, by prompting senior officials to block any interview of Flynn.

What's more, putting aside the investigation into Flynn ("Crossfire Razor"), Flynn's statements were material to the FBI's broader investigation into possible links between the Trump campaign and Russia's efforts to interfere in the 2016 election ("Crossfire Hurricane").   The Government now professes that Flynn's statements were not material to that broader investigation, but that would surely be news to the attorneys who signed the Government's sentencing memorandum and the statement of offense, both of which say the exact opposite. *See* ECF No. 46 at 3 (sentencing memorandum arguing that statements "were material to the FBI's investigation into the nature of any links or coordination between the Russian government and individuals associated with the Trump campaign"); ECF No. 4 at 1-2 (statements "had a material impact on the FBI's ongoing investigation into the existence of any links or coordination between individuals associated with the Campaign and Russia's efforts to interfere with the 2016 presidential election").   Whatever it may now say about "Crossfire Razor," the Government does not claim to have unearthed any new evidence that the broader "Crossfire Hurricane" investigation was not sufficiently "predicated."

4. None of the remaining supposed improprieties alleged in the motion has any bearing on whether Flynn's statements were material.

- The supposed dispute between the DOJ and FBI concerning whether and when to alert the White House to the potential compromise of the incoming National Security Advisor, *see* Mot. 6-7;
- whether agents "breached the common practice" of arranging for the interview through the White House Counsel, Mot. 16;

14

- whether agents gave Flynn the "common" warning that lying to the FBI is a crime, *see* Mot. 16;[10]
- how much advance notice of the interview agents gave Acting Attorney General Yates, *see* Mot. 16-17;
- whether Agent Strzok and Ms. Page "celebrated" the opportunity to interview Flynn without having to seek further authorization from "the '7th Floor,'" *see* Mot. 15-16; and
- whether FBI officials all agreed about the best way to conduct the Flynn interview or whether to confront Flynn with transcripts of his calls with Kislyak, *see* Mot. 17,

all have *nothing whatsoever* to do with whether Flynn's false statements had "a natural tendency to influence, or [were] capable of influencing, the decision of the decisionmaking body to which [they were] addressed," *Stadd*, 636 F.3d at 638.  To our knowledge, no defendant in a federal criminal case has ever succeeded in leveraging such internal agency disagreements into dismissal of otherwise meritorious charges.

5.  The Government asserts in the alternative that it does not believe it could prove beyond a reasonable doubt that Flynn's statements to the FBI were actually false.  In its view, Flynn gave at worst "equivocal . . . or indirect responses, or claim[s] to not remember the matter in question." Mot. 18.  Tellingly, the Government does not assert that Flynn's statements to the FBI during the January 24, 2017, interview were in fact true, only that it doubts it could carry its burden to prove them intentionally false.  Of course, the fact that Flynn has already admitted that they were intentionally false means that the Government would not actually have to prove *anything*.  What is more, the very purpose of a Rule 11 inquiry is to ensure that a plea is well founded; and the fact that Flynn entered such a plea *twice* calls into question the Government's professed anxiety about its capacity to prove its case.

---

[10] Moreover, Flynn, a three-star general and the former Director of the Defense Intelligence Agency, was no naïf.  As he has told this Court under oath, he was perfectly aware that lying to the FBI was a crime.  *See* ECF No. 103 at 8.

In any event, the Government's newly minted account of the Flynn interview is simply wrong. When the FBI asked Flynn if he had any conversations with Kislyak concerning the United States' expulsion of Russian diplomats, he gave a flat denial. *See* Mot., Ex. 6 at 4 ("Flynn stated that he did not."). In fact, as he later admitted, Flynn had called Kislyak and "requested that Russia not escalate the situation and only respond to the U.S. Sanctions in a reciprocal manner." ECF No. 4 ¶ 3.d. As the Principal Deputy Assistant Attorney General for the National Security Division Mary McCord has noted, "it is hard to believe he would forget talking about something he raised himself," Mot., Ex. 3 at 4—especially given the prominence of this issue in national media at the time. Flynn gave a similarly unequivocal (and similarly false) denial to the FBI's question as to whether he had asked Kislyak to have Russia vote a certain way or take any particular action on a United Nations Security Council resolution. Mot., Ex. 6 at 4. Yet, in fact, as he later admitted, Flynn had "contacted the Russian Ambassador about the pending vote . . . and requested that Russia vote against or delay the resolution." ECF No. 4 ¶ 4.c.

Moreover, the dubious propriety of Flynn's conversations (*see supra* n.8), and the national media's focus on Russian sanctions, further support the inference that Flynn was knowingly and willfully lying. Whether or not the FBI agents who conducted the interview were certain Flynn was knowingly lying, there can be no doubt that the senior FBI and Justice Department officials who reviewed the evidence believed that he was. *Compare* Mot. 18 (citing Ex. 13 at 4), *with* Ex. 3 at 10; Ex. 4 at 6; Ex. 5 at 70. That he has since twice admitted to this Court to having done so confirms that they were right.

## B. The Government has failed to consider factors required by the public interest

Leave of court may also be denied because the Government has "failed to give consideration to factors that must be given consideration in the public interest." *Ammidown*, 497 F.2d at 622.

"The untainted administration of justice is . . . one of the most cherished aspects of our institutions." *Mesarosh v. United States*, 352 U.S. 1, 14 (1956) (quoting *Communist Party v. Subversive Activities Control Bd.*, 351 U.S. 115, 124 (1956)).  As Attorney General (and later Supreme Court Justice) Robert Jackson explained, the safety of both citizens and of the Republic "lies in the prosecutor who . . . serves the law and *not factional purposes*."  Robert H. Jackson, *The Federal Prosecutor*, 24 J. Am. Jud. Soc'y 18, 20 (1940) (emphasis added).  The very mission of the Justice Department is to ensure the "fair and impartial administration of justice for all Americans."  Department of Justice Mission Statement, https://bit.ly/2WJMANI.

In this case, the Acting Attorney General, recognizing that an investigation "by a United States Attorney's Office or litigating Division of the Department of Justice would present a conflict of interest for the Department or other extraordinary circumstances," 28 C.F.R. § 600.1, properly concluded that the "public interest" would be served by the appointment of a special counsel, *id.*; *see* Office of the Attorney General, Order No. 3915-2017 (May 17, 2017), https://bit.ly/2LFt7Xw. The regulations under which he appointed the Special Counsel are the latest in a long tradition of efforts to ensure that the Nation's laws are applied without regard to factional favor or political connection. *See, e.g.*, Donald C. Smaltz, *The Independent Counsel: A View from Inside*, 86 Geo. L.J. 2307, 2311-2317 (1998) (describing appointments of special prosecutors during the Grant, Garfield, Roosevelt, Coolidge and Truman administrations).  *Amici* themselves served under special counsel who were likewise accorded independence to ensure the public's confidence in their investigation of wrongdoing by President Nixon and many of his associates.[11]

---

[11] Later, Congress created statutory protections for prosecutors investigating criminal wrongdoing by high-ranking government officials. Ethics in Government Act of 1978, Pub. L. 95-521, § 601, 92 Stat. 1824, 1867-73 (1978).  The current regulatory regime, *see* 28 C.F.R. §§ 600.1-600.10, "replace[d]," 64 Fed. Reg. 37,038 (July 9, 1999), that statutory scheme.

Yet, the former Acting United States Attorney—in a motion signed only by him—seeks to unwind the work of the Special Counsel's Office *without so much as addressing* the risk that his decision will be perceived as conflicted or politically motivated.   Even before a court has "exercise[d] its coercive power" by accepting a guilty plea, *Fokker Servs.*, 818 F.3d at 746, a judge "may withhold approval [to dismiss an information] if he finds that the prosecutor has failed to give consideration to factors that must be given consideration in the public interest," *Ammidown*, 497 F.2d at 622.   The Government's failure even to *discuss* the risk of perceived favoritism in its seeking to drop a prosecution—brought by the Special Counsel's Office—of a close political ally of the President would be reason enough to deny the Government's motion.

What is more, there is reason to doubt the Attorney General even has authority to second-guess the Special Counsel on so fundamental a question as the propriety of a charging decision. Although the special counsel regulations permit the Attorney General to countermand an action "proposed" by the Special Counsel, 28 C.F.R. § 600.7(b), they nowhere permit the Attorney General to override a prosecutorial judgment that has already been made and executed.   And even if they authorized such retroactive second-guessing, the Attorney General must first find that the decision is "inappropriate or unwarranted under established Departmental practices." *Id.*  But it is the motion itself that reflects a dramatic departure from settled prosecutorial principles.   There is certainly no indication that the Attorney General gave "great weight to the views of the Special Counsel" in abandoning this prosecution, as the regulations also require.  *See United States v. Nixon*, 418 U.S. 683, 695 (1974) (regulations governing authority of special prosecutors have "force of law").

But even if the motion somehow complied with the letter of the regulations, the Acting U.S. Attorney's attempt to reverse the Special Counsel's conviction of the President's confederate

18

undermines their very purpose and the value of non-partisan, independent prosecutorial judgment

that they serve. Congress recognized, in enacting the statutory scheme that preceded the current

regulations, that just "[t]he appearance of conflict" in prosecutions of "high-level officials of the

executive branch . . . is as dangerous to public confidence in the administration of justice as true

conflict itself." S. Rep. No. 95-170, at 5-7 (1977). Although the Executive Branch now seems

unconcerned about such apparent conflicts, courts have a strong interest in "maintaining public

perception of fairness and integrity in the justice system." *Rosales-Mireles v. United States*, 138

S. Ct. 1897, 1907 (2018). And it is hard to imagine what could undermine the public's confidence

in the institutions of the criminal law more than the perception that naked political favoritism can

undo a criminal conviction. Because the Government has not even addressed this issue, the Court

may deny the motion on this basis alone. *See Ammidown*, 497 F.2d at 620.

### C. The Government's effort to dismiss the information is a gross abuse of prosecutorial discretion

The Government's flimsy reasoning (*see supra* II.A) and conspicuous silences (*see supra*

II.B) all strongly suggest what is really going on here: a politically motivated attempt to shield a

close political ally of the President from prosecution. This abdication of the United States'

obligation to apply the laws "impartially," *Berger v. United States*, 295 U.S. 78, 88 (1935), and

without regard to "factional purposes," Jackson, *supra*, at 20, "is such a departure from sound

prosecutorial principle as to mark it an abuse of prosecutorial discretion." *Ammidown*, 497 F.2d

at 622. If the Court does not deny the motion outright for one of the reasons described above, it

could use appropriate procedures to establish whether the Government has abused its discretion.

Even the facts already publicly available suggest that it has:

- Flynn "was the most senior person in uniform out there campaigning for Trump throughout a campaign in which Trump was having trouble enlisting real,

meaningful support from people with stars on their shoulders."[12] "He was willing to campaign for Trump in a really intense way,"[13] even leading a national party convention in a chant calling for Trump's rival to be "lock[ed] . . . up."[14]

- Throughout the 2016 campaign, then-Candidate Trump referred to Flynn as his "favorite general."[15]

- The day after accepting Flynn's resignation, the President told the FBI Director, "I hope you can see your way clear to letting this go, to letting Flynn go. He is a good guy. I hope you can let this go."[16] The Director "understood the President to be requesting that we [the FBI] drop any investigation of Flynn in connection with false statements about his conversations with the Russian ambassador in December."[17]

- In April, 2018, the President tweeted: "So General Michael Flynn's life can be totally destroyed while Shadey [sic] James Comey can Leak and Lie and make lots of money from a third rate book (that should never have been written). Is that really the way life in America is supposed to work? I don't think so!"[18]

- In October, 2019, President Trump tweeted that the prosecution was "a complete setup of Michael Flynn" and that the Department of Justice was "withholding a lot of evidence & information."[19]

[12] Priyanka Boghani, *How Michael Flynn Changed Trump's Campaign and His Presidency*, PBS FRONTLINE (Dec. 1, 2017), https://tinyurl.com/y7vm7jpc.

[13] *Id.*

[14] Ryan Teague Beckwith, *Michael Flynn Led a 'Lock Her Up' Chant at the Republican Convention.  Now He's Charged with Lying to the FBI*, TIME (Dec. 1, 2017), https://tinyurl.com/y9fkejwj (video) ("We do not need a reckless president who believes she is above the law. Lock her up, that's right. Yes, that's right -- lock her up! [Claps]  I'm going to tell you what, it's unbelievable, unbelievable. Yeah. I use hashtag Never Hillary, that's what I use."); *Michael Flynn leads 'lock her up' chant at 2016 RNC*, CNN (YouTube), https://tinyurl.com/y7dy2259.

[15] Barbara Starr & Ryan Browne, *Will Trump's favorite general become his national security adviser?*, CNN POLITICS (Nov. 16, 2016), https://tinyurl.com/ycbo2r7d.

[16] *READ: James Comey's prepared testimony*, CNN POLITICS (June 8, 2017), https://tinyurl.com/y9zkxywg (James B. Comey, Statement for the Record, Senate Select Committee on Intelligence).

[17] *Id.*

[18] @realDonaldTrump, TWITTER (Apr. 20, 2018, 6:34 AM), https://tinyurl.com/y7o7xagw.

[19] @realDonaldTrump, TWITTER (Oct. 26, 2019, 7:02 AM), https://tinyurl.com/y8p2xffv.

- On April 19, 2020, the President elaborated that the prosecution "turned out to be a scam on" Flynn.[20] "[T]he top of the FBI was scum. And what they did to General Flynn and you know it and everybody knows it, was a disgrace."[21]

- And then, only one week before the Government moved to dismiss the information, the President bemoaned that "[w]hat happened to General Michael Flynn, a war hero, should never be allowed to happen to a citizen of the United States again!"[22]

On March 15, 2020, the President tweeted that he was "strongly considering a Full Pardon!"[23] But what the Government proposes here is not a pardon; it is, by all available evidence, a transparent effort to spare the President the political costs of having to use that power. *Amici* cannot know what happened within the walls of the Department of Justice or the United States Attorney's Office before the Government filed its motion. But there is more than enough here to suggest "a departure from sound prosecutorial principle," *Ammidown*, 497 F.2d at 622, warranting further inquiry by the Court before it grants "leave," Rule 48(a). Indeed, preventing such politically motivated dismissals was the very reason the Supreme Court added the "leave of court" requirement to Rule 48(a). *See Frampton*, *supra*.

If the Court determines that the Government is motivated by a desire to exempt the President's friends from the routine application of the criminal law, it should deny the Rule 48(a) motion. "I would prefer not to" may be a sufficient rationale for Melville's scrivener, but it is a scarcely a basis for undoing a criminal conviction of one of the President's associates.

---

[20] Justin Wise, *Trump calls FBI investigators in Russia probe 'human scum'*, THE HILL (Apr. 20, 2020), https://tinyurl.com/y86atx62 (video).

[21] *Id.*

[22] @realDonaldTrump, TWITTER (Apr. 30, 2020, 7:47 AM), https://tinyurl.com/yc5j8s5j.

[23] @realDonaldTrump, TWITTER (Mar. 15, 2020, 1:29 PM), https://tinyurl.com/y9us35j2.

## III.   SEVERAL PROCEDURAL AVENUES ARE AVAILABLE TO THE COURT

1. There is adequate basis to deny the motion without further inquiry.  The Government has not offered "substantial" reasons for the dismissal (*see supra* II.A) and has "failed to give consideration to factors that must be given consideration in the public interest" (*see supra* II.B). The Court might deny the Government's motion without prejudice to refiling, or it might do so with prejudice and proceed to sentencing.[24]

Proceeding to sentencing is entirely within this Court's authority.  After a guilty plea, "[n]othing remains but to give judgment and determine punishment." *Boykin*, 395 U.S. at 242. Each "is strictly a judicial function." *Jackson v. U.S. Parole Comm'n*, 703 F. Supp. 2d 33, 35 (D.D.C. 2010); *United States v. Benz*, 282 U.S. 304, 311 (1931).  Prosecutors, in fact, sometimes "make no recommendation as to the sentence," *Santobello v. New York*, 404 U.S. 257, 258 (1971), and even when they do, the district judge retains "broad discretion" to depart from them, *United States v. Booker*, 543 U.S. 220, 233 (2005); *see also Mistretta v. United States*, 488 U.S. 361, 391 n.17 (1989) (noting the potential constitutional problems if the Executive Branch had a more significant role in sentencing).  Here, the Government may choose to recommend no sentence, or

---

[24] In addition, the Court could seek additional explanation or assurance that the Government has "give[n] consideration to factors that must be given consideration in the public interest" in dropping this prosecution. *Ammidown*, 497 F.2d at 622.  Among other things, the motion, despite being based on a purported review of "all the facts and circumstances of this case" (Mot. 2), says nothing about Flynn's admitted false statements to FBI agents concerning "a resolution submitted by Egypt to the United Nations Security Council on December 21, 2016," ECF No. 4 ¶ 4, or those in materials submitted to the Department of Justice concerning Flynn's dealings with Turkey, ECF No. 4 ¶ 5.  In fact, in the days since it filed its motion to dismiss, the Government re-affirmed its prosecution of another (less politically connected) defendant for having conspired with Flynn in connection with the latter set of false statements. *See, e.g.*, Br. of United States at 7, *United States v. Rafiekian*, No.19-4803 (4th Cir. Jan. 24, 2020) ("Rafiekian, Flynn, and Alptekin . . . conspired to make materially false statements to the U.S. Department of Justice[.]"); Reply Br. of United States at 19-20, 22-23, *Rafiekian* (4th Cir. June 7, 2020) (describing the "substantial evidence," including Flynn's own statements, of the conspiracy).  Its desire to pursue that prosecution, but to let Rafiekian's alleged co-conspirator go free, at a minimum, requires explanation.

it might choose not to participate in the sentencing at all. But it does not have the power to prevent this Court from exercising its Article III function of selecting a sentence and entering judgment. Indeed, there would be serious constitutional problems with Rule 48(a), if it could be used to prevent the Judicial Branch from imposing a sentence after a conviction has been obtained. *See Brayboy*, 806 F. Supp. at 1580.

2. If the Court believes that further factual development is warranted, it may pursue it. "The requirement of judicial approval [under Rule 48(a)] entitles the judge to *obtain* and evaluate the prosecutor's reasons." *Ammidown*, 497 F.2d at 622 (emphasis added). A trial court may hold a hearing to "inquire into whether there were any improprieties attending the Government's petition to dismiss," especially where its "suspicions . . . have been aroused by the Government's shift in position as to the merits" of a prosecution. *In re Richards*, 213 F.3d 773, 789, 787 (3d Cir. 2000). And to conduct the appropriate inquiry, the Court might require the production of documents (or authorize its already appointed *amicus* to do so). *Cf., e.g.*, Order, *United States v. Stevens*, No. 08-cr-231 (D.D.C. Apr. 8, 2009), ECF No. 375 (Sullivan, J.) ("[T]he government shall cooperate with Mr. Schuelke, including providing him with access to investigative files, witnesses, and other information as requested."). The Court might also seek to hear directly from former members of the Special Counsel's Office who resigned from the prosecutorial team or from former officials cited in the Government's motion. The title alone of a recent article written by one such former official suggests there are at least grounds to investigate. *See* Mary B. McCord, *Bill Barr Twisted My Words in Dropping the Flynn Case. Here's the Truth*, N.Y. TIMES (May 10, 2020), https://nyti.ms/3cj25kB.

Even apart from Rule 48(a), courts have "inherent authority to appoint counsel to investigate and *prosecute* violation of a court's order." *Kokkonen v. Guardian Life Ins. Co. of Am.*,

511 U.S. 375, 380 (1994) (citing *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987)). A court necessarily has the less drastic power of investigating—or appointing counsel to investigate—whether one of its orders, *i.e.*, Flynn's accepted guilty plea, should be vacated.

3. Finally, in no event should the Court grant the Government's motion without (i) making clear that any such dismissal is *without* prejudice and (ii) also granting Flynn's still pending motion to withdraw the guilty plea.

Dismissal of an information *with* prejudice should be reserved for "exceptional" circumstances, such as where a dismissal without prejudice "would result in harassment of the defendant or would otherwise be contrary to the manifest public interest." *United States v. Borges*, 153 F. Supp. 3d 216, 219 (D.D.C. 2015). Here, nothing any party has said overcomes the "strong presumption in favor of a no-prejudice dismissal." *United States v. Karake*, No. CRIM.A. 02-00256 ESH, 2007 WL 8045732, at *1 (D.D.C. Feb. 7, 2007). A dismissal without prejudice would help ensure that a future Attorney General can revisit, once the partisan pressures of the moment have receded, whether the crime to which Flynn has twice pled guilty is worth prosecuting.

To make certain that a future Attorney General has that option, the Court should also grant Flynn's still pending motion to withdraw his guilty plea. *See* ECF No. 151. Some courts have held that double jeopardy "attaches when the court unconditionally accepts a guilty plea." *United States v. McIntosh (McIntosh I)*, 580 F.3d 1222, 1227 (11th Cir. 2009); *United States v. Patterson*, 381 F.3d 859, 865 (9th Cir. 2004); *United States v. Aliotta*, 199 F.3d 78, 83 (2d Cir.1999); *cf. Fox v. Ryan*, 462 F. App'x 730, 732 (9th Cir. 2011) (noting the "split of authority in the circuits" on this issue).[25] "Where the defendant has the plea set aside, however, the general rule is that double

---

[25] Indeed, under the rationale of at least one of these courts, this Court could proceed to sentencing, *even if* it grants the Government's motion to dismiss. That is because the motion seeks only to

jeopardy is not implicated by his subsequently being recharged and tried on that same count." *Patterson*, 381 F.3d at 864 (quotation marks omitted).

The Court of Appeals for this Circuit has not issued a definitive ruling on whether double jeopardy attaches after a guilty plea. But Flynn, presumably hoping to get the dual benefits of a dismissed information and double-jeopardy immunity from future prosecution, has moved to withdraw his pending motion to withdraw his guilty plea. ECF No. 199. There is no reason he should be allowed to have his cake and eat it too. If the Court does not proceed to sentence Flynn based on his guilty plea, it should grant Flynn's motion to withdraw that plea so that a future Attorney General will not be bound by the transparently partisan conduct of the incumbent.

## CONCLUSION

There are several grounds on which the Government's motion may be denied, further investigated, or, at a minimum, granted but only without prejudice. The best course is to deny the motion and proceed to sentencing.

Dated: June 10, 2020

/s/ Lawrence S. Robbins
Lawrence S. Robbins (D.C. Bar No. 420260)
Alan E. Untereiner (D.C. Bar No. 428053)
Lee Turner Friedman (D.C. Bar No. 1028444)
D. Hunter Smith (D.C. Bar No. 1035055)
ROBBINS, RUSSELL, ENGLERT,
ORSECK, UNTEREINER & SAUBER LLP
2000 K Street, NW, 4th Floor
Washington, DC 20006
Tel: (202) 775-4500
lrobbins@robbinsrussell.com

Respectfully submitted,

/s/ William W. Taylor, III
William W. Taylor, III (D.C. Bar No. 84194)
Ezra B. Marcus (D.C. Bar No. 252685)
ZUCKERMAN SPAEDER LLP
1800 M Street NW Suite 1000
Washington, DC 20036
Tel: (202) 778-1800
wtaylor@zuckerman.com

---

"dismiss . . . the criminal information," Mot. 1; *see also* ECF No. 198-1 (proposed order), not Flynn's guilty plea. Dismissal of an information, however, does not "effectively withdr[aw] [a] guilty plea." *McIntosh I*, 580 F.3d at 1228. Instead, a guilty plea is a conviction that would "still exist[] and await[] a sentence," even after dismissal of the information. *Id.*; *see also United States v. McIntosh* (*McIntosh II*), 704 F.3d 894, 901-905 (11th Cir. 2013) (holding that there is no requirement of a pending information or indictment at the time of sentencing).