**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

Leave to file GRANTED

*[signature]*

United States District Judge

9-28-2020

---

UNITED STATES OF AMERICA,

v.

MICHAEL T. FLYNN,

         *Defendant.*

Case No. 17-cr-00232 (EGS)

---

## BRIEF OF CRIMINAL LAW PROFESSORS AS *AMICI CURIAE* IN SUPPORT OF NEITHER PARTY

Elizabeth B. Wydra
Brianne J. Gorod
Dayna J. Zolle*
CONSTITUTIONAL ACCOUNTABILITY CENTER
1200 18th Street NW, Suite 501
Washington, D.C. 20036
(202) 296-6889
brianne@theusconstitution.org

*Counsel for Amici Curiae*

*Not admitted in D.C. (application pending);
supervised by principals of the firm;
*pro hac vice* motion pending



# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................... ii

INTEREST OF *AMICI CURIAE* .................................................................................. 1

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

I.  The Text and History of Rule 48(a) Demonstrate that the Rule Was Adopted to
    Abrogate the Preexisting Common-Law Rule and Give Courts the Authority to
    Prevent Politically Motivated Dismissals.......................................................... 2

    A.  At Common Law, Federal Prosecutors Enjoyed Unchecked Authority to
        Dismiss Criminal Cases, with Problematic Results..................................... 2

    B.  Rule 48(a) Was Designed to Give Courts the Authority to Deny the
        Government Leave to Dismiss When Such Dismissal Is Improperly
        Influenced by a Defendant's Political Connections..................................... 4

II. The Government's Argument that the Court Lacks Discretion to Deny Its Motion
    to Dismiss Is Unpersuasive ............................................................................... 10

CONCLUSION.............................................................................................................. 13

APPENDIX: LIST OF *AMICI* ..................................................................................... 1A

# TABLE OF AUTHORITIES

**Page(s)**

<u>CASES</u>

*Confiscation Cases,*
 74 U.S. (7 Wall.) 454 (1868) ................................................................... 3

*In re Richards,*
 213 F.3d 773 (3d Cir. 2000) ................................................................... *passim*

*In re United States,*
 345 F.3d 450 (7th Cir. 2003) ................................................................... 11

*Rinaldi v. United States,*
 434 U.S. 22 (1977) ................................................................... 7, 10, 11

*United States v. Ammidown,*
 497 F.2d 615 (D.C. Cir. 1973) ................................................................... 3, 6, 10, 11

*United States v. Carrigan,*
 778 F.2d 1454 (10th Cir. 1985) ................................................................... 11

*United States v. Cowan,*
 524 F.2d 504 (5th Cir. 1975) ................................................................... 10

*United States v. Fokker Servs. B.V.,*
 818 F.3d 733 (D.C. Cir. 2016) ................................................................... 2, 10, 11

*United States v. Woody,*
 2 F.2d 262 (D. Mont. 1924) ................................................................... 3, 4, 9

*Young v. United States,*
 315 U.S. 257 (1942) ................................................................... 6

<u>RULES</u>

Fed. R. Crim. P. 11 (1944) ................................................................... 7

Fed. R. Crim. P. 11(c)(3) ................................................................... 7

Fed. R. Crim. P. 11(c)(4) ................................................................... 7

Fed. R. Crim. P. 11(c)(5) ................................................................... 7

Fed. R. Crim. P. 48(a) ................................................................... 1, 9

## TABLE OF AUTHORITIES – cont'd

**Page(s)**

OTHER AUTHORITIES

Advisory Committee Hearing Minutes (Feb. 1943) ...................................................... 7

Advisory Committee Meeting Minutes (Jan. 13, 1942) ................................................ 5

Advisory Committee Meeting Minutes (May 19, 1942) ............................................... 5

ALI Code of Criminal Procedure (1930) ...................................................................... 3

Fed. R. Crim. P. 48(a) advisory committee's notes ...................................................... 9

Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*,
73 Stan. L. Rev. Online (forthcoming 2020)............................................................ *passim*

Letter of Chief Justice Stone (Apr. 11, 1944)................................................................ 7, 8

Letter to the Secretary (Aug. 31, 1943) ........................................................................ 8

Mark S. Rhodes, *Orfield's Criminal Procedure Under the Federal Rules*
(2d ed. 1987).............................................................................................................. 6

2 Madeleine J. Wilken & Nicholas Triffin, *Drafting History of the Federal Rules of
Criminal Procedure* (1991).......................................................................................... 8

4 Madeleine J. Wilken & Nicholas Triffin, *Drafting History of the Federal Rules of
Criminal Procedure* (1991).......................................................................................... 6

3 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (1969).. 3, 6

Supreme Court Memorandum (June 10, 1942)............................................................... 6

Hon. Leon R. Yankwich, *Increasing Judicial Discretion in Criminal Proceedings*,
1 F.R.D. 746 (1941)..................................................................................................... 4, 5

## INTEREST OF *AMICI CURIAE*[1]

*Amici* are law professors whose teaching and research focus on criminal law and criminal procedure, including the Federal Rules of Criminal Procedure. They therefore have a substantial interest in ensuring that this Court is aware of the role the "leave of court" provision is supposed to play in Federal Rule of Criminal Procedure 48(a). In particular, they have a strong interest in responding to the government's argument that Rule 48(a) was intended primarily to protect defendants from prosecutorial harassment and that this Court has little to no discretion in determining whether to allow the government to dismiss this case. As *amici* know, the text and history of Rule 48(a) demonstrate that the "leave of court" requirement was in fact designed to prevent corrupt or politically motivated dismissals that would harm the public interest.

A full listing of *amici* appears in the Appendix.

## INTRODUCTION

On May 7, 2020, the government filed a motion to dismiss the criminal information against defendant Michael T. Flynn, who had previously pleaded guilty to one count of making false statements in violation of 18 U.S.C. § 1001(a)(2). U.S. Mot. to Dismiss the Criminal Information (Dkt. No. 198). The government's motion, however, critically mischaracterizes Federal Rule of Criminal Procedure 48(a), which requires that the government obtain "leave of court" to dismiss an indictment, information, or complaint. Specifically, the government states that Rule 48(a)'s "leave of court" provision "serves 'primarily to guard against the prospect that dismissal is part of a scheme of prosecutorial harassment of the defendant' through repeated prosecutions"—a prospect that, the government emphasizes, is not at issue in this case. U.S.

---

[1] *Amici* state that no counsel for a party authored this brief in whole or in part, and no person other than *amici* or their counsel made a monetary contribution to the brief's preparation or submission.

Mot. to Dismiss 10-11 (quoting *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742 (D.C. Cir. 2016)) (internal quotation marks omitted).  Accordingly, the government suggests that in this case, where there is no allegation of prosecutorial harassment—indeed, the defendant has consented to the government's motion to dismiss, Notice of Consent to Gov't's Mot. to Dismiss (filed May 12, 2020) (Dkt. No. 202)—the Court's role in granting leave is "'narrow' and circumscribed," U.S. Mot. to Dismiss 10 (quoting *Fokker Servs.*, 818 F.3d at 742).

But the text and history of Rule 48(a) demonstrate that the Rule's "leave of court" provision was not solely, or even primarily, intended to protect defendants from prosecutorial harassment, as the government contends.  Instead, it was designed to protect against corrupt or politically motivated dismissals that might undermine the fairness and integrity of our nation's criminal justice system.  *See* Thomas Ward Frampton, *Why Do Rule 48(a) Dismissals Require "Leave of Court"?*, 73 Stan L. Rev. Online, at 2, 11 (forthcoming 2020), https://bit.ly/2WFEwNE.  Therefore, in considering the government's motion, this Court should take into account the effect dismissal here would have on the public interest.

## ARGUMENT

I.    **The Text and History of Rule 48(a) Demonstrate that the Rule Was Adopted to Abrogate the Preexisting Common-Law Rule and Give Courts the Authority to Prevent Politically Motivated Dismissals.**

### A. At Common Law, Federal Prosecutors Enjoyed Unchecked Authority to Dismiss Criminal Cases, with Problematic Results.

Before the adoption of the Federal Rules of Criminal Procedure in 1944, a federal prosecutor's power to dismiss criminal charges against a defendant, known as *nolle prosequi*, was "absolute." *In re Richards*, 213 F.3d 773, 791 (3d Cir. 2000) (Garth, J., dissenting).  The "traditional common law power of *nolle prosequi* . . . allowed prosecutors total discretion in determining which cases to pursue," *id.* at 777, and "no entity, including the judiciary, could

challenge the prosecutor's decision to end a criminal proceeding," *id.* at 791 (Garth, J.,

dissenting); *see United States v. Ammidown*, 497 F.2d 615, 620 (D.C. Cir. 1973) (describing "the

common law rule that the power of the prosecutor to enter a nolle prosequi in a criminal case was

unrestricted"); *Confiscation Cases*, 74 U.S. (7 Wall.) 454, 457 (1868) ("Under the rules of the

common law it must be conceded that the prosecuting party may relinquish his suit at any stage

of it, and withdraw from court at his option. . . .").[2]

     This unfettered discretion in the hands of federal prosecutors led to some dubious results.

In a particularly noteworthy case out of Montana, the government moved to dismiss an

indictment against a federal tax collector named Franklin H. Woody who had allegedly

embezzled federal funds on four separate occasions. *United States v. Woody*, 2 F.2d 262, 262

(D. Mont. 1924). Woody, as it turned out, was extremely well connected: his grandfather was

Missoula's first mayor and a district judge, while Woody's father was close friends with the

governor and had served as Montana's assistant attorney general. Frampton, *supra*, at 3. The

federal prosecutor's stated reasons for the dismissal included that the defendant "is of a

prominent pioneer family, is young, . . . is studying law in a California university," that "his

'career as a lawyer will be spoiled,'" and "that the government's losses have been reimbursed,"

*Woody*, 2 F.2d at 262, presumably by Woody or his family, Frampton, *supra*, at 3.

     The district judge decried that the government's "'reasons' . . . savor altogether too much

of some variety of prestige and influence (family, friends, or money) that too often enables their

possessors to violate the laws with impunity; whereas persons lacking them must suffer all the

---

[2] Unlike the federal government, most states required a prosecutor seeking dismissal to
obtain leave of court by demonstrating that the dismissal was "in furtherance of justice,"
Frampton, *supra*, at 3 (citing ALI Code of Criminal Procedure, Commentary to § 295, at 895-97
(1930)), or at least to state the reasons for the dismissal, *Ammidown*, 497 F.2d at 620 (citing 3
Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 812 n.13 (1969)).

penalties." *Woody*, 2 F.2d at 262. Nevertheless, the judge acknowledged that, at common law, "the district attorney has absolute control over criminal prosecutions, and can dismiss or refuse to prosecute, any of them at his discretion. . . . No leave of court is necessary; the court cannot prevent, and the motion is but a form to advise the court that the district attorney will not prosecute" the defendant. *Id.* Thus, despite his assessment that dismissal of the case, and the "disparity in treatment of offenders" that the dismissal would represent, was "abhorrent to justice," *id.*, the district judge had no choice but to grant the motion to dismiss, "albeit reluctantly," *id.* at 263.

### B. Rule 48(a) Was Designed to Give Courts the Authority to Deny the Government Leave to Dismiss When Such Dismissal Is Improperly Influenced by a Defendant's Political Connections.

The court's forced judgment in *Woody* "was well known in legal circles when the Rules of Criminal Procedure were developed (1941-1944)," and it sparked a backlash. Frampton, *supra*, at 4. After the Supreme Court appointed an Advisory Committee to draft the Federal Rules of Criminal Procedure in February 1941, Judge Yankwich, a federal district judge from California, denounced the bind the *Woody* judge had faced. *Id.* at 4-5. He argued that judges should have "greater 'control . . . over criminal proceedings' so they would not be similarly 'compelled to grant the dismissal of an indictment [when such a dismissal] savored too much of favoritism.'" *Id.* at 4-5 (alteration in original) (quoting Hon. Leon R. Yankwich, *Increasing Judicial Discretion in Criminal Proceedings*, 1 F.R.D. 746, 752 (1941) (remarks before the Judicial Conference of the Ninth Circuit, June 19-21, 1941)). Judge Yankwich reasoned that judges "are responsible for the errors which the zealous prosecutor induces [them] to commit," and he therefore urged that they "should have a control commensurate with this responsibilty, in

order that the action taken in continuing or discontinuing a prosecution can be truly said to be the action of the court. It is not such at the present time." Yankwich, *supra*, at 752.

Thus, in considering whether a district court should have the power to deny a motion to dismiss, the Advisory Committee tasked with drafting the Criminal Rules focused "[f]rom the outset . . . on the possibility that improper political influence might spur a prosecutor's decision to drop a case." Frampton, *supra*, at 6. In a 1942 debate with fellow members of the Advisory Committee, Harvard Law School professor Murray Seasongood first addressed the issue of "whether it shall be necessary to get the approval of the judge before the indictment may be nolled" (that is, dismissed). Advisory Committee Meeting Minutes (Jan. 13, 1942, at p. 300). He stated, "I understand in many States it is necessary to get the consent of the judge. I have seen cases nolled which in my opinion should not have been nolled. I have seen some cases nolled after intercession from Washington . . . . ," *id.*, referring to cases dismissed due to political influence. Former Assistant Attorney General Alexander Holtzoff pushed back, however, arguing that federal prosecutors did not face the same political pressures as local prosecutors, and the Committee's first vote on whether to require the court's approval for a dismissal resulted in a 7-7 tie. Frampton, *supra*, at 6.

A few months later, the Committee revisited the issue. "[A]gain the conversation focused on dismissals motivated by corrupt purposes, not protection of the accused." *Id.*; *see id.* at 6-7 (reviewing the transcript from the Committee's May 19, 1942 meeting). The Committee ultimately struck a compromise: the original version of what is now Rule 48(a) (then Rule 24), presented to the Supreme Court as an unpublished draft, "*did not* contain the phrase 'with leave of court,'" *In re Richards*, 213 F.3d at 793 (Garth, J., dissenting), but instead provided that a prosecutor seeking dismissal must supply the court "with a statement of the reasons therefor," *id.*

5

(citing Mark S. Rhodes, *Orfield's Criminal Procedure Under the Federal Rules* § 48:11, at 251

(2d ed. 1987), and 4 Madeleine J. Wilken & Nicholas Triffin, *Drafting History of the Federal*

*Rules of Criminal Procedure* 178 (1991)), a requirement that was already prevalent in state

practice, *see Ammidown*, 497 F.2d at 620 (citing 3 Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 812 n.13 (1969)).

The Supreme Court, however, rejected that formulation. Frampton, *supra*, at 8. The

Court observed that the draft rule "apparently gives the Attorney General or the United States

Attorney unqualified authority to nolle pros [that is, dismiss] a case without consent of the

court." *Id.* (quoting Supreme Court Memorandum (June 10, 1942)). The Court inquired, "Is this

now the law, and in any event should it be the law, any more than that the Government can

confess error in a criminal case without the consent of the court?" *Id.* In presenting the latter

query, the Court cited *Young v. United States*, a case it had decided earlier that term, in which the

Court noted that a confession of error by the government "does not relieve this Court of the

performance of the judicial function" and that the Court's "judicial obligations compel us to

examine independently the errors confessed." 315 U.S. 257, 258-59 (1942). The Court had

explained in *Young* that "[t]he public interest that a result be reached which promotes a well-

ordered society is foremost in every criminal proceeding. . . . Furthermore, our judgments are

precedents, and the proper administration of the criminal law cannot be left merely to the

stipulation of parties." *Id.* at 259. In other words, the Supreme Court suggested that the same

rationale that requires the government to obtain the court's consent to confess error in a criminal

case should require the government to secure the court's consent to dismiss the case altogether.[3]

---

[3] Notably, Federal Rule of Criminal Procedure 11 also expressly allows a court to review and
either consent to or reject some plea agreements, including some in which the government agrees

After receiving the Supreme Court's feedback, the Advisory Committee continued its debate, where "one contingent (led by Holtzoff) insisted that prosecutors could be entrusted . . . to wield their dismissal power responsibly, free from judicial oversight, while the other (led by Seasongood) insisted that a 'leave of court' requirement provided a salutary check against the prosecutor whose independence was compromised by orders from 'Washington.'" Frampton, *supra*, at 9 (citing Advisory Committee Hearing Minutes at 1120 (Feb. 1943)).  Critically, throughout the debate, "[n]either side . . . evinced any concern for 'protect[ing] a defendant against prosecutorial harassment.'"  *Id.* (quoting *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977) (per curiam)).  Despite the Supreme Court's prompting, however, the Advisory Committee again failed to add a "leave of court" requirement when it circulated a "First Preliminary Draft" of the rules to the larger legal community the following year.  Frampton, *supra*, at 9.

Unsurprisingly, then, when the Committee submitted a Second Preliminary Draft to the Supreme Court in which the proposed dismissal rule remained unchanged, the Court again pushed back and continued to advocate for the addition of a "leave of court" requirement.  *Id.*  It explained that "[t]wo members of the Court think that the United States Attorney should not be permitted to dismiss an indictment without the consent of the court."  *Id.* (quoting Letter of Chief Justice Stone (Apr. 11, 1944)).  The Court presented these comments as "suggestions . . . which should be seriously considered before the final draft is submitted."  *Id.* (quoting Letter of Chief Justice Stone (Apr. 11, 1944)).

---

to dismiss charges. *See* Fed. R. Crim. P. 11(c)(3)-(5); *see also* Fed. R. Crim. P. 11 (1944) (similarly providing that "[a] defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere*").

7

Meanwhile, hundreds of lawyers and judges submitted comments in response to the circulated drafts of the rules. *Id.* at 10. These comments focused on whether to limit prosecutorial discretion in dismissals and whether continuing not to do so would allow for improper influence and corruption to play a role in the criminal justice system. *Id.* Voicing the latter concern, the Chief Justice of the Supreme Court of Texas cautioned that if the Committee omitted a "leave of court" provision, "[o]ne corrupt United States attorney could dismiss an indictment and defeat the judicial process." *Id.* (quoting 2 Madeleine J. Wilken & Nicholas Triffin, *Drafting History of the Federal Rules of Criminal Procedure* 269 (1991) (Letter to the Secretary (Aug. 31, 1943))).[4] Again defying the Court's instructions, however, the Committee submitted a final draft of the Rules in July 1944 that once again would have granted federal prosecutors an unrestricted right of dismissal so long as they provided "a statement of the reasons therefor." *Id.* at 9.

Ultimately, the Supreme Court largely adopted the final version of the rules the Advisory Committee proposed, with one notable exception: the Court deleted the proposed requirement in Rule 48(a) that the government produce a "statement of reasons" and replaced it with the requirement currently found in the Rule—that the government obtain "leave of court" for a dismissal. *Id.* at 10-11; *see In re Richards*, 213 F.3d at 793 (Garth, J., dissenting). In doing so, the Court "resolved years of debate by taking the path championed by Seasongood and the Advisory Committee's dissenters: it armed the district judge with a powerful tool to halt corrupt or politically motivated dismissals of cases." Frampton, *supra*, at 11.

---

[4] Significantly, in light of the government's argument, "the plight of the defendant never registered as a concern" in comments about the rule on dismissal. Frampton, *supra*, at 10; *see id.* ("Not a single correspondent suggested that . . . 'leave of court' language was necessary to protect the rights of the defendant.").

Indeed, the Advisory Committee Notes published alongside the final version of the Rules confirm that the primary purpose of the "leave of court" requirement was to prevent corrupt or politically motivated dismissals. The Committee Notes recognized that "[t]he first sentence of [Rule 48(a)] will change existing law," explaining that although the federal common-law rule had permitted "the public prosecutor [to] enter a nolle prosequi in his discretion, without any action by the court," the new Rule "will permit the filing of a nolle prosequi only by leave of court." Fed. R. Crim. P. 48(a) advisory committee's notes. Notably, in discussing the common-law rule that Rule 48(a) was deliberately replacing, the Committee Notes cited *Woody*, the case in which a district judge had been powerless to prevent the dubious dismissal of an indictment against a politically well-connected defendant. *See id.* (citing *Woody*, 2 F.2d 262). The drafters of the Rule had clearly reflected on that case and concluded that even requiring a statement of reasons would not have been enough to prevent the politically motivated dismissal—indeed, the government in *Woody* had stated its reasons for dismissal, but the district judge had remained powerless to do anything other than lament their inadequacy. *See Woody*, 2 F.2d at 262. The situation demanded a "leave of court" requirement.[5]

---

[5] The text of the second sentence in Rule 48(a) provides further support for the view that the Rule's primary purpose is to protect the public interest and maintain the integrity of the criminal justice system. That sentence provides that "[t]he government may not dismiss the prosecution during trial without the defendant's consent." Fed. R. Crim. P. 48(a). If Rule 48(a) were designed solely, or even primarily, to protect defendants from harassment, as the government contends, one might expect it to require a defendant's consent to *all* dismissals, not just those sought during trial. Instead, the Rule's inclusion of a "leave of court" requirement in the first sentence, rather than a defendant-consent requirement, reflects the fact that the Rule's principal object was not to protect the accused from harassment.

## II. The Government's Argument that the Court Lacks Discretion to Deny Its Motion to Dismiss Is Unpersuasive.

Without addressing this history, the government argues that a district court's role in reviewing a motion to dismiss is "'narrow' and circumscribed," U.S. Mot. to Dismiss 10 (quoting *Fokker Servs.*, 818 F.3d at 742), and that a court should not "second-guess the Government's 'conclusion that additional prosecution or punishment would not serve the public interest,'" *id.* at 11 (quoting *Fokker Servs.*, 818 F.3d at 743). As the previous section demonstrated, there is no basis for such a view in the text or history of the Rule, *see supra*, and the cases the government cites do not support such a claim.

To be sure, in a footnote in *Rinaldi v. United States*, the Supreme Court stated (incorrectly, *see supra* at 9) that "[t]he words 'leave of court' were inserted in Rule 48(a) without explanation," and then speculated that "[t]he principal object of the 'leave of court' requirement is apparently to protect a defendant against prosecutorial harassment, *e.g.*, charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." 434 U.S. at 29 n.15. Importantly, however, even the *Rinaldi* Court recognized in that same footnote that the Rule's "leave of court" requirement "obviously vest[s] some discretion in the court" and noted that, in addition to applying in cases involving alleged prosecutorial harassment, Rule 48(a) "has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." *Id.* (citing *United States v. Cowan*, 524 F.2d 504 (5th Cir. 1975), and *Ammidown*, 497 F.2d at 620).

And while some courts have latched onto *Rinaldi*'s "principal object" language, even those courts do not go so far as to say that Rule 48(a)'s "leave of court" provision exists *only* to prevent harassing dismissals. Instead, they have simply reiterated *Rinaldi*'s language that

preventing harassing dismissals is the *principal* object of the rule. *See, e.g., Fokker Servs.*, 818 F.3d at 742 ("A court thus reviews the prosecution's motion under Rule 48(a) *primarily* to guard against the prospect that dismissal is part of a scheme of 'prosecutorial harassment' of the defendant through repeated efforts to bring—and then dismiss—charges" (emphasis added) (quoting *Rinaldi*, 434 U.S. at 29 n.15)); *In re United States*, 345 F.3d 450, 452-53 (7th Cir. 2003) ("But the purpose, *at least the principal purpose*, is to protect a defendant from the government's harassing him by repeatedly filing charges and then dismissing them before they are adjudicated." (emphasis added) (citing *Rinaldi*, 434 U.S. at 29 n.15)); *Ammidown*, 497 F.2d at 620 ("The *primary* concern, at least as discerned by subsequent decisions of other federal courts, was that of protecting a defendant from harassment. . . ." (emphasis added) (citing circuit court decisions)).

Moreover, many courts have explicitly recognized that Rule 48(a) may serve other purposes besides preventing prosecutorial harassment, including preventing corrupt or politically motivated dismissals. In *United States v. Carrigan*, for instance, the Tenth Circuit explained that, in addition to protecting defendants from harassment, Rule 48(a) "also permits courts faced with dismissal motions to consider the public interest in the fair administration of justice and the need to preserve the integrity of the courts." 778 F.2d 1454, 1463 (10th Cir. 1985); *see also Ammidown*, 497 F.2d at 622 (noting that, under Rule 48(a), "the judge should be satisfied that [a plea agreement to dismiss charges] adequately protects the public interest" (citation omitted)). Courts have recognized that a dismissal may be "contrary to the public interest" if, for example, "the prosecutor appears motivated by bribery, animus towards the victim, or a desire to attend a social event rather than trial." *In re Richards*, 213 F.3d at 787; *see In re United States*, 345 F.3d

at 453 (acknowledging that this "'bad faith or contrary to the public interest' formula is also found, though not necessarily in those words, in *Rinaldi*").

*     *     *

In short, despite the government's suggestion that the sole, or at least principal, object of Rule 48(a)'s "leave of court" requirement is to protect defendants from prosecutorial harassment, "the historical record makes clear that what became Rule 48(a) had almost nothing to do with the rights of the accused; instead, the final text was understood as vesting district judges with the power to limit unwarranted dismissals by corruptly motivated prosecutors." Frampton, *supra*, at 5-6 (footnote omitted).  Thus, under Rule 48(a), this Court should consider the public interest in determining whether to grant the government's motion to dismiss in this case.

## CONCLUSION

For the foregoing reasons, this Court should consider the public interest in resolving the government's motion to dismiss.

Respectfully submitted,

/s/ Brianne J. Gorod
Elizabeth B. Wydra (DC Bar No. 483298)
Brianne J. Gorod (DC Bar No. 982075)
Dayna J. Zolle*
CONSTITUTIONAL ACCOUNTABILITY
    CENTER
1200 18th Street NW, Suite 501
Washington, D.C. 20036
(202) 296-6889
elizabeth@theusconstitution.org
brianne@theusconstitution.org
dayna@theusconstitution.org

Counsel for *Amici Curiae*

*Not admitted in D.C. (application pending);
supervised by principals of the firm; *pro hac vice*
motion pending

Dated: June 2, 2020

# APPENDIX:
## LIST OF *AMICI*

Gabriel J. Chin
    Edward L. Barrett Jr. Chair & Martin Luther King Jr. Professor of Law
    University of California, Davis School of Law

Morgan Cloud
    Charles Howard Candler Professor of Law
    Emory University School of Law

Thomas Frampton
    Climenko Fellow and Lecturer on Law
    Harvard Law School

David Gray
    Jacob A. France Professor of Law
    University of Maryland, Francis King Carey School of Law

Carissa Byrne Hessick
    Anne Shea Ransdell and William Garland "Buck" Ransdell, Jr. Distinguished Professor of Law
    University of North Carolina School of Law

Thea Johnson
    Associate Professor of Law
    University of Maine School of Law

Michael J. Zydney Mannheimer
    Professor of Law
    Northern Kentucky University, Salmon P. Chase College of Law

Ion Meyn
    Assistant Professor of Law
    University of Wisconsin Law School

David Rossman
    Professor of Law
    Boston University Law School