*Leave to file GRANTED*

Emmet G. Sullivan

United States District Judge

9-28-2020

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**UNITED STATES OF AMERICA**

v.

**MICHAEL T. FLYNN**

                Defendant

**Crim. No. 17-232 (EGS)**

**Assigned to Judge
Emmet G. Sullivan**

## UNIFORMED SERVICES LEAGUE'S
## AMICUS CURIAE BRIEF IN SUPPORT
## OF DEFENDANT MICHAEL T. FLYNN

[Proposed] *Amicus Curiae*, the Uniformed Services League and the members of its Retired Military Officers Advisory Board, by and through attorney Todd M. Mosser, Esq., respectfully files this Brief as a friend of the Court. The Brief is filed in support of the Defendant former National Security Advisor Lt. General (Ret.) Michael T. Flynn ("Flynn") in furtherance of the Government's Motion to Dismiss the Criminal Information Against the Defendant Michael T. Flynn (Docket No. 198) ("Government's Motion to Dismiss"). This Brief argues that the Government's Motion should be GRANTED, and moreover that Flynn is not in contempt and has not committed perjury.

# TABLE OF CONTENTS

TABLE OF CONTENTS   ..................................................................... ii

TABLE OF AUTHORITIES   ................................................................ iii

CORPORATE DISCLOSURE STATEMENT   ......................................................v

INDEPENDENCE DISCLOSURE STATEMENT ................................................v

INTRODUCTION AND STATEMENT OF THE CASE   .................................... 1

INTEREST OF AMICUS CURIAE AND REASONS FOR BRIEF ..................... 4

ARGUMENT:  ........................................................................................ 7

    A. The Government's Motion to Dismiss Advances the Public Interest and

       Should Be Granted  .................................................................  7

      i.      Rule 48(a)  .....................................................................  7

      ii.    The Government's Motion Advances the Public Interest  ..........  10

      B. Flynn Has Not Committed Perjury  .......................................  17

      C. Flynn Has not Committed Contempt of Court .......................... 20

CONCLUSION ................................................................................ 21

CERTIFICATE OF SERVICE ............................................................. 23

CERTIFICATE OF CONSULTATION  ................................................. 25

CERTIFICATE OF COMPLIANCE ...................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Berger v. United States*, 295 U.S. 78, 88 (1935). ....................................................10

*Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004) ............................16

*Brady v. United States*, 397 U.S. 742, 397 U.S. 742, 90 S.Ct. 1463 (1970) .. 1, 4, 21

*Ex Parte Hudgings*, 249 U.S. 378 (1919), ...............................................................20

*In re Government of Virgin Islands*, D.C. Civil App. No. 2004-69, Re: Super. Ct. Crim. No. 33/04 (D.V.I. Feb. 24, 2006) ...................................................................8

*In re Richards,* 213 F.3d 773, 785 (3d Cir. 2000) .....................................................8

*Kungys v. United States,* 485 U.S. 759, 772 (1988) .................................................18

*Newman v. United States*, 382 F.2d 479, 480 (D.C.Cir.1967) .................................11

*Rinaldi v. United States*, 434 U.S. 22, 30-31 (1977) ............................................7, 8

*Rodriguez v. Vill. of Sleepy Hollow*, 13-CV-8465 (NSR), at *14 (S.D.N.Y. Jul. 29, 2015) .......................................................................................................................16

*Sinclair v. United States*, 279 U.S. 263, 298 (1929)................................................19

*U.S. v. Jacobo-Zavala*, 241 F.3d 1009, 1011 (8th Cir. 2001) ...................................8

*United States v. Ammidown,* 497 F.2d 615, 620 (D.C. Cir. 1973) ............................9

*United States v. Aquart,* 912 F.3d 1 (2d Cir. 2018) .................................................18

*United States v. Armstrong* 517 U.S. 456 (1996) .....................................................11

*United States v. Endo*, 635 F.2d 321 (4th Cir. 1980),...............................................18

*United States v. Fokker Servs. B.V.*, 818 F.3d 733 (D.C. Cir. 2016).......... 10, 11, 15

*United States v. Hamm*, 659 F.2d 624 (5th Cir. 1981) ........................................9, 12

*United States v. Moore*, 612 F.3d 698, 702 (D.C. Cir. 2010)..................................14

*United States v. Ring,* 811 F. Supp. 2d 359, 384 (D.D.C. 2011).............................14

*United States v. Salinas*, 701 F.2d 41, 42 (5th Cir.1983) ..........................................8

*United States v. Scantlebury*, 921 F.3d 241, 249 (D.C. Cir. 2019) .........................15

*United States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995)....................................9, 12

*United States v. Strayer*, 846 F.2d 1262, 1266 (10th Cir. 1988) ..............................8

*United States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983).............................. 12, 15

*Zimmerman v. Corbett*, No. 1:13-cv-02788, at *12 (M.D. Pa. Feb. 10, 2015) .......16

STATUTES

18 U.S.C. § 1001(a)(2)------------------------------------------------------------------ 1

RULES

ABA Code of Professional Responsibility, Final Draft, 1969, Ethical Consideration
  7-13, at 79------------------------------------------------------------------------------ 10

Fed.R.Cr.P. 42(a)(1)(C) ------------------------------------------------------------------ 1

H. Drinker, Legal Ethics 148 (1953)------------------------------------------------------ 10

Rule 12.4 of the Federal Rules of Criminal Procedure --------------------------------- v

Rule 48(a) of the Federal Rules of Criminal Procedure -------------------------- 7, 8, 9

Rule 7.1 of the Federal Rules of Civil Procedure --------------------------------------- v

TREATISES

1944 Advisory Committee Notes on Adopting Rule 48; 3A Wright, Fed. Practice
  Procedure § 812 (2d ed. 1982) ------------------------------------------------------- 8

Vida B. Johnson, Federal Criminal Defendants Out of the Frying Pan and Into the
  Fire? Brady and the United States Attorney's Office, 67 Cath. U. L. Rev. 321
  (2018). ---------------------------------------------------------------------------------- 1

*Anna Stolley Persky, "A Cautionary Tale: The Ted Stevens Prosecution,"*
Washington Lawyer, *October 2009.* ---------------------------------------------------1

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 7.1 of the Federal Rules of Civil Procedure, and Rule 12.4 of the Federal Rules of Criminal Procedure, *Amicus Curiae* USL states the following:  The Uniform Services League ("USL") is a project of the U.S. Public Policy Council ("USPPC"), which is a nonprofit public policy corporation.  Except for USL being a project of USPPC, neither have a parent corporation, nor does any publicly held company own any part of them, and no publicly held company has a direct financial interest in their participation in this case.[1]

## INDEPENDENCE DISCLOSURE STATEMENT

Amicus Curiae further state that this brief was authored by counsel for USL, without the involvement of counsel for any party in this matter.  No party or counsel for such party requested that the Amicus Curiae file a brief nor suggest any arguments, messages, or points to be argued (other than in the public news coverage).   No party or counsel for such party contributed money that was intended to fund preparing or submitting this brief. A draft of the brief was provided to counsel for the main parties only on May 29, 2020, to ask whether they consent to or oppose the filing of the brief by Amicus Curiae.  The DoJ and counsel for Flynn has advised that each of them take no position.

---

[1] Mr. Mosser is providing *pro bono* services in this matter.

# I.   **INTRODUCTION AND STATEMENT OF THE CASE**

This case involves misconduct by investigators at the FBI and prosecutors, including the very kind of *Brady* violations the Government has heretofore long been chastised for. *See*, *Brady v. Maryland*, 373 U.S. 83 (1963); *Vida B. Johnson, Federal Criminal Defendants Out of the Frying Pan and Into the Fire? Brady and the United States Attorney's Office*, 67 Cath. U. L. Rev. 321 (2018).[2] *See also, Anna Stolley Persky, "A Cautionary Tale: The Ted Stevens Prosecution,"* Washington Lawyer*, October 2009.* [3]

Flynn was criminally charged by Information for making false statements primarily on January 24, 2017,  to agents of the Federal Bureau of Investigation (FBI) in violation of 18 U.S.C. § 1001(a)(2).

After discovering and revealing new *Brady* material that is demonstrative of, *inter alia*, improper motive, the Government has moved to dismiss the Information prior to this Court's imposition of sentence.  In response to that motion that has been consented to by Flynn's defense team, this Court asked *amicus curiae* to argue against dismissal and also asked whether Flynn could be held in contempt for purported perjury.[4]

---

[2] Available at: https://scholarship.law.edu/lawreview/vol67/iss2/8

[3] Available at:  https://www.dcbar.org/bar-resources/publications/washington-lawyer/articles/october-2009-ted-stevens.cfm

[4] This Court has not specified the "essential facts constituting the charged criminal contempt and describe it as such" pursuant to Fed.R.Cr.P. 42(a)(1)(C).

In effect, Flynn pleaded "guilty" to the facts of the conversations in the January 24, 2017, interview with two FBI agents, but did not knowingly plead guilty to circumstances having legal consequences that Flynn did not know about. Flynn was led to believe that these conversations were "material," which is a legal term of art that required him to defer to others in deciding whether he was "guilty." Having learned what is known now, it is apparent that contrary to Flynn's prior belief, the materiality element in this case is non-existent, and thus Flynn is not guilty after all. Essentially, Flynn could not plead guilty to the law rather than merely the facts as known to him.

In fact, as this Court argued on June 1, 2020, in response to Flynn's Petition for Writ of Mandamus to the Court of Appeals, on page 14, "Mr. Flynn agreed with the government's recitation, and that he 'in fact [did] what the government has stated that it can prove at trial[.]' Id. at 19." But doing the acts is different from being guilty. Amicus and its Board are greatly concerned that uniformed servicemen and servicewomen may readily admit that they "did what the government has stated" under intense pressure after a foreign incident, even though under the law they are not guilty. We ask the Court to remember that servicemen and servicewomen are different because they are trained to, among other things, accurately and promptly report to superiors what happened in after-action reports. This lifestyle includes retired Lt. Gen. Michael Flynn.

The USL is concerned that current and former military personnel put into high-pressure situations, politicized situations, and even situations that may appear to benefit the United States in foreign policy if the uniformed service member improperly pleads guilty, may feel the need to plead guilty when in fact under legal principles no crime occurred or a lesser crime occurred. Therefore, the USL believes it is important that an accused person can plead guilty only with respect to the facts, their acts, or omissions, but cannot be held to have knowingly conceded the law or legal principles when subsequent information disproving the applicability of those principals arises. USL asserts that Flynn is actually innocent, not merely that bad acts by the FBI impermissibly tainted this prosecution.

In addition to remedying what has been revealed to be a manifestly baseless investigation, the Government now forthrightly seeks to live up to its obligations to play by the rules of the game. The Government's efforts by way of its Motion to Dismiss should be lauded and encouraged, not spurned.

Flynn pleaded guilty as a result of the Government's failure to disclose crucial *Brady* material that actually demonstrates that an essential element of the crime – materiality - does not exist.

In the Statement of the Offense (Docket No. 4) ("Statement"), pages 1-2, the Government's case depended upon its allegation that:

> 2. FLYNN's false statements and omissions impeded and otherwise had a material impact on the FBI's ongoing

3

> investigation into the existence of any links or coordination
> between individuals associated with the Campaign and Russia's
> efforts to interfere with the 2016 presidential election.

On the contrary, documents and information then already known to the FBI

and unlawfully withheld in violation of *Brady* and only recently revealed to Flynn

and the Court, reveal that Flynn's statements and alleged omissions *did not* impede

or otherwise have a material impact on any valid, ongoing investigation by the

FBI, as a decision had been made to close the investigation as being unfounded.

*See,* Motion to Dismiss, page 4; Exhibit 5 to Motion to Dismiss, Transcript of

Testimony by James Comey before the U.S. House of Representatives Permanent

Select Committee on Intelligence, March 2, 2017 (Document No. 198-6), page 6.

In section 3 of that Statement, the Government represents that the meeting

between Flynn and the FBI agents as a "voluntary interview."  We now know that

the FBI went to great lengths to conceal from Flynn that he was being interviewed

in an investigatory capacity.  *See*, interviews from the Office of Special Counsel

attached as exhibits to the Government's Motion to Dismiss.

## II.    INTEREST OF *AMICUS CURIAE* AND REASONS FOR BRIEF

The Uniformed Services League, a project of the U.S. Public Policy Council,

is a non-profit public policy organization dedicated to providing aid to current and

former members of the Armed Services who find themselves in legal jeopardy. We

are particularly concerned with politically motivated prosecutions both at home

and abroad.  The USL is recognized as a non-profit organization under Section 501(c)(4) of the IRS tax code.  It is associated with the Freedom Center Foundation, recognized under Section 501(c)(3) of the IRS Tax Code which has helped pay for expenses such as incidental costs associated with the filing of this brief and a donation for the Michael Flynn legal defense fund.

Since 2004, we have provided support for current and former members of the Armed Services who faced prosecution and have advocated for those in jeopardy to be treated with fairness. Our mission is to see to it that our nation's Soldiers, Sailors, Marines, and Airmen who are thrust into the public arena by way of serious allegations of wrongdoing are afforded the full protections of due process.

The USL also includes its Retired Military Officers Advisory Board, with Lt. Colonel Dennis Gillem, USA (Ret.) serving as its Chairman. The Board is comprised of military veterans who are concerned about current and former military personnel being at legal risk often for political reasons in carrying out the decisions of governmental leaders, and public policy issues of interest to military veterans and those concerned about the military and defense preparedness of the United States.

USL has supported servicemen unfairly accused of crimes in the past, such as Sgt. Derrick Miller; the Biden 4 group of four combat veterans jailed for

returning fire in the defense of a U.S. diplomat in Iraq; First Sgt. John

Hatley;  Navy SEAL Chief Dave Swarts; Lt. Clint Lorance; Major Matt Golsteyn;

Navy SEAL Chief Edward Gallagher; Navy Sailor Kristian Saucier; and Lt.

Michael Behenna.  The latter five (5) received a Presidential Pardon in

2019.  Support for these men was given via nationwide petition campaigns,

newsletters, and booklets reaching 1 million or more Americans; Symposia on

Capitol Hill at the House of Representatives; three premium placement (page 3 or

back page) full page ads in *The Washington Times* supporting a Presidential

Pardon; and meetings building support for these causes with Congressmen and

staff.

The Retired Military Officers Advisory Board has in the past been led by the

late former Chairman of the Joint Chiefs of Staff, Admiral Thomas Moorer, USN

(Ret.) as its Honorary Chairman and by the late Major General Richard Anson,

USA (Ret.) as its Chairman. It is currently led by Lt. Colonel Dennis Gillem, USA

(Ret.), as its Chairman.  Over the past 30 years there have been over 100 flag rank

officers on the Retired Military Officers Advisory Board, as well as additional

members at other ranks from General, Lt. Colonel and below.

Leaders of the organization have in the past helped Lt. Colonel Oliver North

and Secretary of Defense Caspar Weinberger with direct financial assistance to

help defray their legal expenses when they were unfairly accused of crimes, and

donated $5,000 to help with General Michael Flynn's legal expenses, with additional support pledged.

Our counsel (Mr. Mosser) has served as either a prosecutor or criminal defense attorney for nearly two decades, and as a defense lawyer, has exposed government misconduct in other criminal cases. Mr. Mosser is also a former Captain in the United States Army Reserve, JAG Corps, and as such has an interest in seeing to it that a vaunted military hero such as Flynn be vindicated, as the Government now seeks.

We respectfully submit that we can aid this Court in addressing the two crucial questions it has asked in this unique case of high import because we are prepared to make arguments that heretofore have not been raised by the parties.

## III.   **ARGUMENT**

### A. The Government's Motion to Dismiss Advances the Public Interest and Should Be Granted.

#### i.      Rule 48(a) of the Federal Rules of Criminal Procedure

"The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent." *See,* Fed. R.Cr.P. 48(a). As explained in *Rinaldi v. United States*, 434 U.S. 22, 30-31 (1977) (per curiam):

> The words "leave of court" were inserted in Rule 48(a) without explanation. While they obviously vest some discretion in the court, the circumstances in which that discretion may properly be exercised

have not been delineated by this Court. **The principal object of the "leave of court" requirement is apparently to protect a defendant against prosecutorial harassment, e. g., charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection.** *See, e. g., United States v. Cox*, 342 F.2d 167, 171 (CA5), cert. denied, sub nom. *Cox v. Hauberg*, 381 U.S. 935 (1965); *Woodring v. United States*, 311 F.2d 417, 424 (CA8), cert. denied, sub nom. *Felice v. United States*, 373 U.S. 913 (1963). **But the Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest.** *See United States v. Cowan*, 524 F.2d 504 (CA5 1975); *United States v. Ammidown*, 162 U.S.App.D.C. 28, 33, 497 F.2d 615, 620 (1973).

*Rinaldi* at 31 (emphasis added) .[5]

Rule 48(a) is commonly seen as affecting the common law power of prosecutors, irrespective of whether it is authorized solely as a procedural rule. *See In re Richards,* 213 F.3d 773, 785 (3d Cir. 2000), *citing* 1944 Advisory Committee Notes on Adopting Rule 48; 3A Wright, Fed. Practice Procedure § 812 (2d ed. 1982). "Courts generally must grant [a] prosecutor's motions to dismiss. The Third Circuit has observed that 'refusal to dismiss is appropriate only in the rarest of cases.'" *In re Richards*, 213 F.3d at 786, *quoted in In re Government of Virgin Islands*, D.C. Civil App. No. 2004-69, Re: Super. Ct. Crim. No. 33/04 (D.V.I. Feb. 24, 2006). The Fifth Circuit has aptly noted that:

---

[5] *See also*, *U.S. v. Jacobo-Zavala*, 241 F.3d 1009, 1011 (8th Cir. 2001) (applying abuse of discretion standard) *citing United States v. Smith*, 55 F.3d 157, 158 (4th Cir. 1995); *United States v. Salinas*, 701 F.2d 41, 42 (5th Cir.1983) (same); *United States v. Strayer*, 846 F.2d 1262, 1266 (10th Cir. 1988) (same).

> In balancing the rights and powers of the Executive Branch with those
> of the Judiciary, we must keep in mind that the exercise of
> prosecutorial discretion is to be given great deference by the courts.
> As Chief Justice (then Circuit Judge) Burger said in *Newman v.
> United States*, 382 F.2d 479, 480 (D.C. Cir. 1967), "[f]ew subjects are
> less adapted to judicial review than the exercise by the Executive of
> his discretion in deciding when and whether to institute criminal
> proceedings, or what precise charge shall be made, or whether to
> dismiss a proceeding once brought." The Chief Justice later noted that
> **"[t]he President has abundant supervisory and disciplinary
> powers — including summary dismissal — to deal with
> misconduct of his subordinates**; it is not the function of the judiciary
> to review the exercise of executive discretion . . . ." Id. at 482.

*United States v. Hamm*, 659 F.2d 624, 628, n.13 (5th Cir. 1981) (reversing district

court's denial of Government's Rule 48(a) motion, which was filed after the

defendant pleaded guilty).

Moreover, "in the exercise of its responsibility, the court will not be content

with a mere conclusory statement by the prosecutor that dismissal is in the public

interest, but will require a statement of reasons and underlying factual basis." *See,

United States v. Ammidown,* 497 F.2d 615, 620 (D.C. Cir. 1973) (multiple citations

omitted). "The disposition of a government's motion to dismiss an indictment

should be decided by determining whether the prosecutor acted in good faith at the

time he moved for dismissal. A motion that is not motivated by bad faith is not

clearly contrary to manifest public interest, and it must be granted." *See, United

States v. Smith*, 55 F.3d 157, 159 (4th Cir. 1995)

Given the foregoing well-settled authority that establishes the Government's

broad discretion in moving to dismiss, and the court's circumscribed authority to

deny such a motion, the question in this case is whether the circumstances

attendant thereto warrant this Court's denial of the Government's Motion to

Dismiss.  They do not.

### ii.     The Government's Motion Advances the Public Interest.

The Government seeks to dismiss this case based on the newly revealed

facts that demonstrate that Flynn has not committed a crime.  It is the duty of

the prosecutor to "seek justice, not merely to convict." ABA Code of

Professional Responsibility, Final Draft, 1969, Ethical Consideration 7-13, at

79. See H. Drinker, Legal Ethics 148 (1953).[6]  Therefore, as is the case here,

Government prosecutors are "seeking justice" consistent with their

professional obligations when, upon discovering that the prosecution should

not have been undertaken in the first place, they seek to dismiss charges.

*United States v. Fokker Servs. B.V.*, 818 F.3d 733 (D.C. Cir. 2016)

provides useful guidance on the role of the Judiciary in these circumstances.

There, the Circuit Court recognized that:

> The Executive's primacy in criminal charging decisions is long
> settled. That authority stems from the Constitution's delegation
> of "take Care" duties, U.S. Const. art. II, § 3, and the pardon

---

[6] While a prosecutor "may strike hard blows, he is not at liberty to strike foul ones.
It is as much his duty to refrain from improper methods calculated to produce a
wrongful conviction as it is to use every legitimate means to bring about a just
one." *Berger v. United States*, 295 U.S. 78, 88 (1935).

> power, id. § 2, to the Executive Branch. See United States v.
> Armstrong, 517 U.S. 456, 464, 116 S.Ct. 1480, 134 L.Ed.2d 687
> (1996) ; In re Aiken Cnty., 725 F.3d 255, 262–63
> (D.C.Cir.2013). Decisions to initiate charges, or to dismiss
> charges once brought, "lie[ ] at the core of the Executive's duty to
> see to the faithful execution of the laws."

*Id* at 741 (citations omitted). "Indeed, '[f]ew subjects are less adapted to

judicial review than the exercise by the Executive of his discretion in deciding

when and whether to institute criminal proceedings, or what precise charge

shall be made, or whether to dismiss a proceeding once brought.'" *Newman v.*

*United States*, 382 F.2d 479, 480 (D.C.Cir.1967). "The presumption of

regularity" applies to "prosecutorial decisions and, in the absence of clear

evidence to the contrary, courts presume that [prosecutors] have properly

discharged their official duties." *Fokker Servs. B.V.* 818 F.3d at 741 (*quoting*

*United States v. Armstrong* 517 U.S. 456 (1996)).

    This strong, presumptive deference to the Executive branch necessarily

militates against denying the Government's Motion to Dismiss.  Thus, to

justifiably proceed to sentencing in this case, there ought to be a manifestly

compelling reason.

    There is no appellate authority that affirms any justification for denying

a motion to dismiss that the defense has consented to. In fact, the opposite is

true. In *Smith*, *supra*, the district court refused to grant the Government's

consented to Rule 48(a) motion based on its assessment that dismissal would

not be in the public interest. Its reasoning was that Smith's guilty plea,

combined with the evidence of his guilt, required that the motion be denied.

The district court also noted that the government had not acted in "bad faith."

>The Fourth Circuit reversed, noting that:

>>Fair and efficient administration of the criminal laws by the Executive Branch and punishment of the guilty by the Judicial Branch are both in the public interest. **Nevertheless, balancing these considerations to determine which interest prevails does not govern the disposition of the prosecutor's motion to dismiss an indictment.** Weighing these interests does not give adequate recognition to the Executive in the context of the Separation of Powers Doctrine as it exercises its duty in good faith to take care that the laws are faithfully executed.

*Smith*, 55 F.3d at 160 (emphasis added, and citation omitted). The Fourth

Circuit went on to hold that "[a] substantial, reasonable doubt about the guilt

of a defendant that arose after conviction is evidence of good faith. Denial of

a motion based on this reason is error, because it is the duty of the United

States Attorney 'not simply to prosecute but to do justice.'" *Id. citing United*

*States v. Weber*, 721 F.2d 266, 268 (9th Cir. 1983). *Accord*, *United States v.*

*Hamm*, 659 F.2d 624 (5th Cir. 1981) (reversing district court's denial of

consented to Rule 48(a) motion that was filed after a guilty plea).

Here, the Government has articulated a good faith reason for dismissing

the case. In particular, the Government has explained that the FBI itself had

doubts as to whether Flynn had committed a crime. *See*, Government's

Motion to Dismiss (Docket No. 198) at 9. The FBI's own internal notes

describe the investigating agents' doubts as to whether Flynn's statements were material.[7]  Director Comey himself said that this case was a "close one." *See*, Government's Motion to Dismiss (Docket No. 198) at 10.

The Government has also revealed that the materiality issue here is unprovable because the point of the interview was to "get [Flynn] to lie or get him fired."  *See,* Government's Motion to Dismiss, Exhibit 11 (Docket No. 198-11). In fact, the Government has now revealed that the "investigation" at issue was not even properly predicated.  There was no legitimate investigative purpose for interviewing Flynn, particularly after the government had found "no adverse information" about him. The interview thus served no legitimate

---

[7] The newly disclosed information also reveals that the investigating agents' focus on the Logan Act was specious at best.  Acting Attorney General Sally Yates and relevant leaders of the FBI passionately argued to White House Counsel Don McGahn that the Logan Act criminalized any difference in policy between outgoing and in-coming administrations.  *See*, Exhibit 4 to Government's Motion to Dismiss, Interview by the Office of Special Counsel of Sally Yates, August 15, 2017, pages 8-9.   Of course, because there have been no successful prosecutions under the Logan Act and only two attempts, judicial construction of the Logan Act is left wanting.

Indeed, the Government concedes that Flynn was acting at all relevant times under the authority of and at the direction of the President-Elect, not as a private citizen. A Logan Act violation is therefore not a valid basis for any investigation during the January 24, 2017, interview of Flynn by the FBI.  See,  Exhibit 3 to Government's Motion to Dismiss, Interview by the Office of Special Counsel of Mary McCord, August 10, 2017,  page 3 (Docket No. 198-4) ("It seemed logical to her that there may be some communications between an incoming administration and their foreign partners, so the Logan Act seemed like a stretch to her.")

"investigative" goal at all. *See*, Government's Motion to Dismiss at 17

(stating that the investigation "seems to have been undertaken only to elicit

those very false statements and thereby criminalize Mr. Flynn").[8]

Under these circumstances, there is no way that Flynn's purported

misstatements were "capable of influencing an agency decision or function,"

which is a crucial element of the crime that Flynn pleaded guilty to. *Accord*,

*United States v. Moore*, 612 F.3d 698, 702 (D.C. Cir. 2010) (citations and

quotation mark omitted). Thus, the Government's Motion is well-founded and

brought in "good faith."

Even if this Court disagrees with the Government's assessment of its

ability to prove guilt in light of the newly revealed evidence, that is not a

---

[8] Of course, the FBI already knew what Flynn said on the phone calls that he was subsequently interrogated about. Based on the transcripts of the calls that were released on May 29, 2020, we now know that Flynn never discussed, promised, or offered that sanctions imposed by President Obama would ever be reduced or cancelled. Flynn's *suggestions* concerned cooperation with problems in the Middle East. Flynn's comments assumed that Obama's sanctions would go into effect and that Russia would retaliate. Flynn's only mentions were to *suggest* that if Russia retaliated too excessively then the newly inaugurated President Trump might be hindered from seeking cooperation in the Middle East. But Flynn never made any request and certainly did not seek or receive any favor from Russia. The narrative that Russia delivered Flynn a favor is inconsistent with the transcripts.

Flynn was also charged with "falsely stat[ing] that he did not remember a follow-up conversation." But "a 'faulty memory' is not enough to establish a 'willful' lie absent proof the defendant indeed remembered the matter in question." *See, United States v. Ring,* 811 F. Supp. 2d 359, 384 (D.D.C. 2011).

reason to deny the Government's motion.[9] *See, Smith, supra. See also,*

*United States v. Weber,* 721 F.2d 266 (9th Cir. 1983) (reversing denial of

consented to motion to dismiss).  Moreover, as stated in *United States v.*

*Hamm,* 659 F.2d 624 (5th Cir. 1981):

> "[a]s Cowan and Rinaldi point out, and as the district judge
> acknowledged, the determination of the public interest in the first
> instance is for the prosecutor to make. We are not in a position to
> second-guess his determination…"

*Hamm*, 659 F.2d at 632.

To hold otherwise would be to impute charging decisions to the

Judiciary, which is manifestly improper.  *United States v. Scantlebury*, 921

F.3d 241, 249 (D.C. Cir. 2019) ( "[T]he 'leave of court' authority gives no

power to a district court to deny a prosecutor's Rule 48(a) motion to dismiss

charges based on a disagreement with the prosecution's exercise of charging

authority")  *citing United States v. Fokker Servs. B.V.*, 818 F.3d 733, 742

(D.C. Cir. 2016).

In order to deny the Government's Motion, this Court must be left to

---

[9] "The language of this court in *Cowan* and the Supreme Court in *Rinaldi* makes it
clear that the motion should be granted unless the trial court has an affirmative
reason to believe that the dismissal motion was motivated by considerations
contrary to the public interest. As the district judge acknowledged, **the prosecutor
is the first and presumptively the best judge of where the public interest lies.**"
*See, Hamm,* 659 F.2d at 631 (emphasis added).

conjure up some kind of unstated reason for the Government's motive here.[10]

Invariably, appointed *Amicus* will argue that the Government's stance is

motivated by nothing more than partisan politics. But even if true, that would

not be a "compelling public interest" justifying a denial of the Government's

Motion to Dismiss. For example, prosecutorial decisions that are intertwined

with political considerations are still protected by absolute immunity.

*Accord, Bernard v. County of Suffolk*, 356 F.3d 495, 504 (2d Cir. 2004)

(absolute immunity still applies even when prosecution is commenced based

on an improper political motive); *Zimmerman v. Corbett*, No. 1:13-cv-02788,

at *12 (M.D. Pa. Feb. 10, 2015) ("[i]t is irrelevant that Plaintiff alleges that

the Defendants conspired to maliciously prosecute Plaintiff, and that they

allegedly had ulterior, political motives" (*citation omitted*). *See also*

*Rodriguez v. Vill. of Sleepy Hollow*, 13-CV-8465 (NSR), at *14 (S.D.N.Y.

Jul. 29, 2015) (improper political motive as impetus for prosecution was

insufficient to state an abuse of process claim).

     Moreover, even if this Court were to find that the Government's

---

[10] "As Judge Hill pointed out in his dissent to this court's en banc opinion which was reversed in *Rinaldi*, 'if it should appear that the prosecutor is motivated to dismiss because he has accepted a bribe or because he desires to attend a social event instead of attend upon the court in the trial of the case or because he personally dislikes the victim of the crime, the court should withhold leave.'" *United States v. Hamm,* 659 F.2d 624, 629 (5th Cir. 1981). Nothing of the sort is present here.

Motion is motivated solely by "improper" political considerations, the appropriate remedy for that is at the ballot box, not a judicial decree. In a case such as this one, it is the *public* that should decide the *public* interest. Here, the only true political motivations were those of the FBI agents involved in the investigation into Flynn, as has been well documented and is not in dispute. The public may very well decide that it prefers the FBI not engage in political hackery by launching partisan witch hunts.

The Executive Branch has evaluated Flynn's case considering newly disclosed evidence that it deems dispositive of his innocence and has chosen to exercise its considerable discretion in moving to dismiss this case. Nothing rises to the high threshold required to interfere with the Executive Branch's right to do so. The Motion should be granted.

### B. Flynn Has Not Committed Perjury.

This Court has queried whether Flynn has committed perjury. He has not. The Court has not specified where or how it thinks Flynn committed perjury, but presumably it is referring to Flynn's decision to plead guilty juxtaposed with his later request to withdraw that plea.

Among other things, Flynn swore under oath that he had made false statements that were "material." *See*, N.T. 12/1/17 at 14, 19. He subsequently moved to withdraw his plea, averring that, in light of the newly

revealed evidence, his statements were not in fact "material." This is not perjury.

In *United States v. Endo*, 635 F.2d 321 (4th Cir. 1980), the Court held that defendant's inconsistent answers to the question "are you guilty?" could not sustain a perjury conviction because statements which present legal conclusions are considered opinion, and cannot form the basis of a perjury conviction. *Id* at 323. The *Endo* court observed that permitting the conviction to stand "would effectively place any defendant under the sword of Damocles whenever he or she might seek to assert a recognized procedural right to withdraw a plea." Id. at 324. "A criminal conviction for false declaration simply because of the inconsistent answers of "guilty" and "not guilty" would infringe severely on the defendant's right to withdraw a guilty plea ..." *Id. See also, United States v. Aquart,* 912 F.3d 1 (2d Cir. 2018) (quoting *Endo* at 323, "[t]o be false, the statement must be with respect to a fact or facts...).

The Supreme Court has held that:

> "[A]lthough the materiality of a statement rests upon a factual evidentiary showing, the ultimate finding of materiality turns on an interpretation of substantive law. Since it is the court's responsibility to interpret the substantive law, we believe [it is proper to treat] the issue of materiality as a legal question." *United States v. Abadi*, 706 F.2d 178, 180, cert. denied, 464 U.S. 821 (1983).

*See, Kungys v. United States,* 485 U.S. 759, 772 (1988) (holding that misrepresentation was not material). Consequently, "[T]he materiality of

18

what is falsely sworn, when an element in the crime of perjury, is one for the court." *Sinclair v. United States*, 279 U.S. 263, 298 (1929).

Here, Flynn does not dispute the statements he made on the phone call. He has not, for example, said in one instance that he fed his cat, and in the next instance, claimed he did not feed his cat. Rather, Flynn conceded what was necessarily a legal opinion, i.e. materiality.  He did so because the prosecutor and his prior defense lawyers told him that his misstatements were material.  At the time he pleaded guilty, Flynn had no way of knowing that his prior statements did not and could not influence an agency decision.  Having learned what we know now, then, Flynn's motion to withdraw his guilty plea based on his discovery that his misstatements were not material was entirely appropriate.  There was no perjury committed here.

Of necessity, whether Flynn's admission that his statements to FBI agents were material could only be based upon facts and circumstances *known to Flynn at the time of his plea.*  The Government's Motion to Dismiss makes clear that the FBI sought to trap Flynn by concealing from him the reasons for the January 24, 2017, interview.  Thus, Flynn could not aver to the materiality of his statements without exclusively relying upon the representations of the Government in seeking to prosecute him.

Flynn had no first-hand knowledge of the materiality of the interview

or his statements.  Flynn could only concede that at the time of his guilty plea
the Government represented that it had sufficient evidence to prove
materiality.  Upon discovering that the Government, particularly, the FBI,
was lying and actively deceiving Flynn, he was well within his rights to seek
to withdraw his guilty plea.

### C. Flynn Has not Committed Contempt of Court.

Even if this Court were to somehow find that Flynn has committed
perjury by seeking to withdraw his guilty plea (said motion having now been
withdrawn), that is not a sufficient basis to find him in contempt.

In *Ex Parte Hudgings*, 249 U.S. 378 (1919), the Court reversed a
finding of contempt based on perjury and held:

> "[i]n order to punish perjury in the presence of the court as a
> contempt there must be added to the essential elements of perjury
> under the general law the further element of obstruction to the
> court in the performance of its duty."

*Id* at 383.

Here, Flynn exercised his procedural right to seek to withdraw his
guilty plea.  This cannot be an "obstruction to the court."  To hold otherwise
would send a damaging, chilling effect on future litigants, who, like Flynn,
validly seek to withdraw wrongfully induced guilty pleas.  This Court has not
specified exactly how it suspects that Flynn committed contempt, nor,
respectfully, can it.  That should end this inquiry.

20

The events in this case are complicated, but the circumstances are driven almost entirely by the Government.  The Government concealed *Brady* material, inducing Flynn to plead guilty.  This wrongful withholding was later discovered, creating a difficult and time-consuming series of problems.

Therefore, however concerned the Court may be by possibly unruly proceedings, it is the Government – not Flynn – who has created this problem.

## IV.    CONCLUSION

This Court should GRANT the Government's Motion to Dismiss pursuant to Rule 48(a) and should HOLD that Flynn has not contempted the Court and that he has not committed perjury.

Dated:   June 2, 2020                    Respectfully submitted,

/s/     Todd Michael Mosser
Todd M. Mosser
Pennsylvania Bar ID# 87534
448 North 10th St., Suite 502
Philadelphia PA, 19123
todd@mosserlegal.com
215-567-1220
Pro Hac Vice Admission Pending
*On behalf of the Uniformed Services League*

*Jonathon Moseley*
*Local Counsel*
*Virginia State Bar # 41058*
*Admitted to this Court*
*3823 Wagon Wheel Lane*

*Woodbridge, Virginia 22192*
*Email Contact@JonMoseley.com*
*Phone number (703) 656-1230*
*On behalf of the Uniformed Services League*

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing motion and proposed brief will be delivered electronically on June 2, 2020, to counsel for Defendant and the Government through the District's Electronic Case Filing system, by electronic mail, and by physical mail by the U.S. Postage Service, first class mail, postage prepaid.

TIMOTHY J. SHEA
United States Attorney
D.C. Bar 437437

Jocelyn Ballantine
Assistant United States Attorney
555 4th Street NW
Washington, D.C. 20530
jocelyn.ballantine2@usdoj.gov

Sidney Powell
Molly McCann
Sidney Powell, P.C.
2911 Turtle Creek Blvd., Suite 300
Dallas, Texas 75219
Tel: 214-707-1775
sidney@federalappeals.com
Admitted Pro Hac Vice
molly@federalappeals.com
*Admitted Pro Hac Vice*

W. William Hodes
The William Hodes Law Firm
3658 Conservation Trail
The Villages, Florida 32162
Tel: (352) 399-0531
Fax: (352) 240-3489
Admitted Pro Hac Vice

Jesse R. Binnall
Lindsay R. McKasson
Harvey & Binnall, PLLC

717 King Street, Suite 300
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jbinnall@harveybinnall.com
lmckasson@harveybinnall.com
Admitted Pro Hac Vice

Jonathon A. Moseley, Esq.

## CERTIFICATE OF CONSULTATION

I hereby certify that on May 29, 2020, at 5:12 PM  EST, USL at my

direction  I sent a draft copy of the *Amicus Curiae*'s proposed brief to the counsel

of record for the parties in this case asking if they opposed or consented with the

filing of the brief.  The Government and counsel for Lt. Gen. Flynn have

responded that each of these parties take no position.

Jonathon A. Moseley, Esq.

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief is in Times New Roman in 14 point font size,

and totals 5,249 words, including the Statement of Interest of Amicus Curiae.

Following the rules direction that an *Amicus Curiae* brief be one-half of the

number of words of a principal brief, the *Amicus Curiae* understands that 6,500

words are available for its brief.

Jonathon A. Moseley, Esq.

25