UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,                )
                                         )
            v.                           )
                                         )
MICHAEL T. FLYNN,                        )
                                         )
            Defendant.                   )
                                         )
                                         )

Leave to file GRANTED

*Emmet G. Sullivan*

United States District Judge

9-29-2020

**Crim Number 17-232 (EGS)**

**AMICUS BRIEF FOR THE STATES OF OHIO, ALABAMA, ALASKA, ARKANSAS, FLORIDA, GEORGIA, INDIANA, LOUISIANA, MISSISSIPPI, MISSOURI, OKLA-HOMA, SOUTH CAROLINA, TEXAS, UTAH, AND WEST VIRGINIA IN SUPPORT OF THE UNITED STATES**

DAVE YOST
Attorney General of Ohio

BENJAMIN M. FLOWERS
Ohio Solicitor General
30 E. Broad St., Floor 17
Columbus, OH 43215
Tel: 614.466-43215
Email: bflowers@ohioattorneygeneral.gov

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................ .......................... ii

STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT ........................... 1

ARGUMENT ............................................................................................................................. 2

I.    The decision to charge a crime is a critically important function, deliberately left to
      the executive branch alone. ......................................................................................... 2

II.   The Court lacks authority to exercise judgment over a decision that constitutionally
      belongs to the executive branch. ................................................................................. 4

III.  The Court ought not offer personal comment on the wisdom of the United States'
      decision not to continue prosecuting General Flynn. ................................................... 7

CONCLUSION ........................................................................................................................ 8

CERTIFICATE OF SERVICE ............................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**                                                                                                           **Page(s)**

*In re Aiken Cty.,*
  725 F.3d 255 (D.C. Cir. 2013) ............................................................................................3, 4, 5

*Alderson v. State,*
  273 S.W.3d 533 (Mo. 2009) ...................................................................................................4

*City of Norwood v. Horney,*
  110 Ohio St. 3d 353 (Ohio 2006) ...........................................................................................4

*Confiscation Cases,* 7 Wall. 454 (1869) ........................................................................................5

*DOC v. New York,*
  139 S. Ct. 2551 (2019)...........................................................................................................8

*In re: Donald J. Trump,*
  — F.3d. —, No. 18-2486 (4th Cir. May 14, 2020) ..................................................................8

*Morrison v. Olson,*
  487 U.S. 654 (1988)............................................................................................................1, 9

*Rinaldi v. United States,*
  434 U.S. 22 (1977)..................................................................................................................6

*Steen v. Appellate Div. of Superior Court,*
  59 Cal. 4th 1045 (Cal. 2014)..................................................................................................4

*United States v. Abushaar,*
  761 F.2d 954 (3d Cir. 1985) ...................................................................................................5

*United States v. Armstrong,*
  517 U.S. 456 (1996) ................................................................................................................1

*United States v. Nixon,*
  418 U.S. 683 (1974).................................................................................................................5

*United States v. Pimentel,*
  932 F.2d 1029 (2d Cir. 1991)..................................................................................................6

*United States v. Sineneng-Smith,*
  590 U.S. ____ (U.S. May 7, 2020) ..........................................................................................5

*Williams v. Pennsylvania,*
  136 S. Ct. 1899 (2016) ............................................................................................................7

*Williams-Yulee v. Fla. Bar*,
  575 U.S. 433 (2015) ............................................................................................................8

**Rules and Constitutional Provisions**

U.S. Const., art. II, §1 ...........................................................................................................1

U.S. Const., art. III, §1............................................................................................................1, 4

U.S. Const., art. III, §2 ...........................................................................................................5

Fed. R. Crim. P. 48 ...............................................................................................................6, 7

**Other Authorities**

The Federalist No. 74, 501 (A. Hamilton) (Cooke, ed., 1961) ...........................................2

Robert H. Jackson, *The Federal Prosecutor*, 31 Am. Inst. Crim. L. & Criminology 3
  (1940) ...............................................................................................................................2, 3

## STATEMENT OF *AMICI* INTEREST AND SUMMARY OF ARGUMENT

"If to describe this case is not to decide it, the concept of a government of separate and coordinate powers no longer has meaning." *Morrison v. Olson*, 487 U.S. 654, 703 (1988) (Scalia, J., dissenting). Our Constitution vests the "executive power ... in a President of the United States." U.S. Const., art. II, §1. That power includes the power to prosecute. But, just as important, it includes the power *not* to prosecute. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). The judiciary has only the "judicial [p]ower," U.S. Const., art. III, §1, which includes only the power to resolve cases and controversies. Judges have no share of the executive power, and thus no say in the decision whether to prosecute.

What the Constitution has put asunder, let no judge join together. Here, the President, through his agents, has decided not to prosecute. Yet this Court has appointed an *amicus curiae* "to present arguments in opposition to the government's Motion to Dismiss"—implying that the Court may order the prosecution to continue. Order Appointing *Amicus Curiae*, Doc. 205 (May 13, 2020). This Court may not order the commencement of any prosecution, and therefore may not order the continuation of what it could not initiate. The Court should grant the United States' motion without delay and without irrelevant or personal comment.

The State Attorneys General who signed this brief are executive officers, who—like the United States Attorney General—oversee all or some of their States' prosecutorial functions. Some have significant experience prosecuting cases in court. Each understands the complex nature of the decision to pursue, or not to pursue, a criminal conviction. And each understands the importance of allowing prosecutors to make this decision—a decision that may well be immensely unpopular—free from judicial interference. This short brief will elaborate on the problems this

1

Court has created by inserting itself into the Justice Department's exercise of prosecutorial discretion.

## ARGUMENT

The Court should immediately grant the federal government's motion to dismiss the information against General Flynn because the federal judiciary has no authority to make the executive branch pursue (or continue to pursue) a criminal conviction. And the Court should grant the motion without commentary on the decision to charge or not to charge, because such punditry disrobes the judiciary of its cloak of impartiality.

I.      **The decision to charge a crime is a critically important function, deliberately left to the executive branch alone.**

State and federal prosecutors have an awesome responsibility: to decide whether to charge their fellow citizens with crimes, initiating a process that, if successful, will deprive another human being of his liberty. The decision to charge is often a prosecutor's most-noticed act, but the most-consequential decision is often the decision *not* to pursue charges. Our system depends on prosecutors' ability to make this decision unimpeded.

Consider first a practical point. Every prosecutor swears an oath to uphold the law, but that cannot mean charging every criminal act. "With the law books filled with a great assortment of crimes, a prosecutor stands a fair chance of finding at least a technical violation of some act on the part of almost anyone." Robert H. Jackson, *The Federal Prosecutor*, 31 Am. Inst. Crim. L. & Criminology 3, 5 (1940). Even technical or seemingly minor violations may carry severe penalties. Thus, "without an easy access to exceptions in favor of unfortunate guilt, justice would wear a countenance too sanguinary and cruel." The Federalist No. 74, at 501 (A. Hamilton) (Cooke, ed., 1961).

One such exception comes in the form of prosecutorial discretion. In making the decision not to charge a crime, prosecutors may account for innumerable considerations. For example, and relevant here, a prosecutor might validly decline to pursue a conviction if investigators, instead of "discovering the commission of a crime and then looking for the man who has committed it," set about "picking the man and then searching the law books ... to pin some offense on him." Jackson, *The Federal Prosecutor*, 31 Am. Inst. Crim. L. & Criminology at 5. More typically, a prosecutor will consider the deterrent effect a conviction would send; the community's legitimate interest in retribution; the harms a prison sentence would impose on the accused's family or community; and so on. In all cases, the prosecutor can account for case-specific factors—factors unknowable to a legislature promulgating generally applicable laws—that justify turning the other cheek.

The discretion not to charge a crime, in addition to being a practical necessity, is also a bulwark of liberty. Indeed, it is just as important to protecting liberty as the many procedural protections secured by the Bill of Rights and by state constitutions. As the D.C. Circuit recognized in speaking of the federal system (in an opinion by then-Judge Kavanaugh), one of the "greatest *unilateral* powers a President possesses under the Constitution, at least in the domestic sphere, is the power to protect individual liberty by essentially under-enforcing federal statutes regulating private behavior—more precisely, the power either not to seek charges against violators of a federal law or to pardon violators of a federal law." *In re Aiken Cty.*, 725 F.3d 255, 264 (D.C. Cir. 2013). The discretion to not pursue a charge serves as a vital check on *legislative* authority. Before the government may take a citizen's liberty, it must identify an executive officer willing to bring charges. Prosecutorial discretion thus "operate[s] as an independent protection for individual citizens against the enforcement of oppressive laws that Congress may have passed (and still further

3

protection comes from later review by an independent jury and Judiciary in those prosecutions brought by the Executive)." *Id.*

The same could be said about state prosecutors all around the country. State constitutions, like the federal constitution, protect liberty by dividing governmental power between co-equal branches and equipping each to check overreach by the others. *See, e.g.*, *Steen v. Appellate Div. of Superior Court*, 59 Cal. 4th 1045, 1059–60 (Cal. 2014) (Liu, J., concurring); *Alderson v. State*, 273 S.W.3d 533, 539 (Mo. 2009); *City of Norwood v. Horney*, 110 Ohio St. 3d 353, 386 (Ohio 2006). In these systems, as in the federal system, the power *not* to charge a crime is an important check that the executive branch may wield to protect against the legislature's excesses.

## II. The Court lacks authority to exercise judgment over a decision that constitutionally belongs to the executive branch.

In this case, the federal government has exercised prosecutorial discretion, opting not to continue pursuing charges against General Flynn. Rather than simply granting the United States' motion to dismiss the information against General Flynn, this Court delayed a ruling in an order that solicited *amicus* briefs from "individuals and organizations." Order of May 12, 2020. It then took the further step of appointing an *amicus curiae* "to present arguments in opposition to the government's Motion to Dismiss." Order Appointing *Amicus Curiae*, Doc. 205 (May 13, 2020).

There was no reason to issue these orders because this Court has no say in the federal government's decision not to prosecute. Simply put, the decision *not* to pursue a criminal conviction is vested in the executive branch alone—and neither the legislature nor the judiciary has any role in the executive's making of that decision. "After enacting a statute, Congress may not mandate the prosecution of violators of that statute." *Aiken Cty.*, 725 F.3d at 264. And nothing in the judicial power—the power to decide concrete cases and controversies, *see* U.S. Const., Art. III,

§§1, 2—permits courts to second-guess the executive branch's decision not to pursue a conviction. *See United States v. Nixon*, 418 U.S. 683, 693 (1974); *Confiscation Cases*, 7 Wall. 454, 458–59 (1869). Courts decide cases; they do not litigate them, as the Supreme Court reminded lower courts just a couple of weeks ago. *See United States v. Sineneng-Smith*, 590 U.S. ___, slip op. 3 (U.S. May 7, 2020).

The Court's desire to assume the role of a prosecutor evinces a total lack of regard for the role that the separation of powers plays in our system. Before the federal government may deprive a citizen of his freedom, it must navigate a number of hurdles. It must find a law that the citizen violated, a prosecutor willing to press charges, a jury of other citizens willing to convict, *and a court to uphold the legality of the prosecution*. In other words, the judiciary is supposed to function as a constitutional *check* on deprivations of liberty—it is not supposed to *remove* constitutional checks on deprivations of liberty. But that is exactly what the Court would do by second-guessing the prosecutors' decision not to continue pursuing this case.

Worse still, the Court's order calls for the views of *private* "individuals and organizations." The Ancient Greeks, to be sure, sometimes put to a vote the question whether a citizen ought to be ostracized, or banished from society. *United States v. Abushaar*, 761 F.2d 954, 959 (3d Cir. 1985). But our Framers opted against the Greek model. They put space between the People and the criminal process, including by vesting in the executive branch alone the power to decide whether to pursue state-sanctioned punishment. The People, no doubt, will still have their say at the ballot box—they can vote out of office the President or the State Attorney General whose prosecutorial decisions they disagree with. *See Aiken*, 725 F.3d at 266. But the question of what the public thinks

about the prosecution of General Flynn has no bearing on this Court's decision whether to grant leave to dismiss this case.

It is true that Criminal Rule 48(a) requires a prosecutor to seek leave of the court when dismissing a case, but that does not change the analysis. In the context of a case like this—one where the government has decided not to prosecute a defendant—the rule gives courts the merely ministerial role of granting leave and dismissing the case. The rule provides:

> The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent.

This rule is unconstitutional if it is applied to mandate the continued prosecution of a defendant the federal government has chosen *not* to prosecute. When applied in that manner, the ruling court exercises executive power, and thus exceeds the limits of Article III, which permits courts to exercise *only* the judicial power. So it is perhaps unsurprising that the Supreme Court, in describing the purpose of the leave-of-court requirement, explained that the requirement was never intended to be used to override the government's decision not to prosecute. "The principal object of the 'leave of court' requirement," the Court explained, was "apparently to protect a defendant against prosecutorial harassment, *e.g.,* charging, dismissing, and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v. United States*, 434 U.S. 22, 29 n.15 (1977). In other words, the rule exists to *stop* the government from prosecuting a defendant in an abusive manner. Applied that way, the rule is consistent with the judicial role: it gives courts a negative power to stop abusive prosecutions that are "clearly contrary to manifest public interest," *United States v. Pimentel*, 932 F.2d 1029, 1033 n.5 (2d Cir. 1991) (quoting *United States v. Cowan*, 524 F.2d 504, 513 (5th Cir. 1975)), but it does not confer a positive power to compel prosecutions. The judicial power includes the power to ensure that prosecutions comport with law; it

6

does not, however, include the power to ensure that prosecutions occur in the first place. Here, the only reason to deny the government's motion would be to compel the prosecution of General Flynn. The Court has no power to do that.

Even aside from the separation-of-powers issues, there are insurmountable practical problems with using Rule 48(a) to mandate the continued prosecution of a defendant the government has decided not to pursue. First, suppose a court were to deny the prosecution's request. What would the prosecution, at that point, do? Presumably, if forced to litigate, it would stand up at trial and immediately rest its case without putting on evidence. Could the court avoid this outcome by appointing a special prosecutor and ordering the special prosecutor to continue the case? No; once a court orders the prosecution, it aligns itself with the prosecution and can no longer serve as a neutral arbiter. "The due process guarantee that 'no man can be a judge in his own case' would have little substance if it did not disqualify a former prosecutor from sitting in judgment of a prosecution in which he or she had made a critical decision," including the decision to charge. *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1906 (2016). By ordering a court-appointed prosecutor to carry on with the prosecution of General Flynn, this Court would, in essence, make the critical decision to charge a crime, disqualifying itself from presiding over this case.

## III.   The Court ought not offer personal comment on the wisdom of the United States' decision not to continue prosecuting General Flynn.

Perhaps the Court is soliciting the views of *amici* so that it may chastise or praise the Department of Justice's decision in this case. It should refrain from doing so. It has become trendy in recent years for courts to weigh in on the wisdom of this administration's policy decisions. Too often, that commentary comes in grandiose terms more appropriate for an op-ed than a judicial opinion. These opinions leave the public with the impression that courts apply "administration-

specific standard[s]" in deciding what this President may do and what may permissibly be said about this President's policies. *DOC v. New York*, 139 S. Ct. 2551, 2576 (2019) (Thomas, J., dissenting). "When partisan fevers grip the national government, the judiciary must operate as a non-partisan counterweight and discourage suits whose inevitable denouement will make [the courts] part of the political scrum." *In re: Donald J. Trump*, — F.3d. —, No. 18-2486, slip op. 29 (4th Cir. May 14, 2020) (Wilkinson, J., dissenting). The steady stream of overwrought commentary encourages such suits, and further inserts the judiciary into the partisan scrum.

This trend is disastrous for the Judiciary, because it erodes public confidence in the courts' ability to serve as neutral arbiters in politically sensitive cases. "The importance of public confidence in the integrity of judges stems from the place of the judiciary in the government. Unlike the executive or the legislature, the judiciary 'has no influence over either the sword or the purse; … neither force nor will but merely judgment.'" *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 445–46 (2015) (quoting The Federalist No. 78, at 465 (A. Hamilton) (C. Rossiter ed. 1961)). "The judiciary's authority therefore depends in large measure on the public's willingness to respect and follow its decisions." *Id.* The frequent commentary on the *wisdom* of this administration's decisions leaves the public, however unfairly, with the perception that the judiciary is just another political combatant whose decisions are entitled to no special respect.

The Court should leave the commentary to the commentariat. It should grant the United States' motion without elaboration.

## CONCLUSION

Decisions to grant leave are routinely granted, and this one should be as well, without needless comment. A judge who abandons the bench for the prosecutor's table can serve credibly in neither role. Just as the executive must respect the decisions the Constitution leaves to the

judiciary, so must the judiciary respect the decisions the Constitution leaves to the executive—

that is what gives meaning to the "concept of a government of separate and coordinate powers."

*Morrison v. Olson*, 487 U.S. 654, 703 (1988) (Scalia, J., dissenting).

|  |  |
|---|---|
| May 18, 2020 | Respectfully submitted, |
| STEVE MARSHALL<br>Attorney General of Alabama | |
| KEVIN G. CLARKSON<br>Attorney General of Alaska | |
| LESLIE RUTLEDGE<br>Attorney General of Arkansas | DAVE YOST<br>Attorney General of Ohio |
| ASHLEY MOODY<br>Attorney General of Florida | */s/ Benjamin M. Flowers*<br>BENJAMIN M. FLOWERS<br>Ohio Solicitor General |
| CHRISTOPHER M. CARR<br>Attorney General of Georgia | 30 E. Broad St., Floor 17<br>Columbus, OH 43215<br>Tel: 614.466-43215 |
| AARON NEGANGARD<br>Chief Deputy Attorney General of<br>Indiana | Email: bflowers@ohioattorneygeneral.gov |
| JEFF LANDRY<br>Attorney General of Louisiana | ALAN WILSON<br>Attorney General of South Carolina |
| LYNN FITCH<br>Attorney General of Mississippi | KEN PAXTON<br>Attorney General of Texas |
| ERIC SCHMITT<br>Attorney General of Missouri | SEAN D. REYES<br>Attorney General of Utah |
| MIKE HUNTER<br>Attorney General of Oklahoma | PATRICK MORRISEY<br>Attorney General of West Virginia |

## CERTIFICATE OF SERVICE

I hereby certify that, on May 18, 2020, I electronically filed the foregoing with the Clerk of

the Court using the CM/ECF email system and copied parties to the case.

Jesse R. Binnall
HARVEY & BINNALL, PLLC
717 King Street
Suite 300
Alexandria, VA 22314
(703) 888-1943
Email: jbinnall@harveybinnall.com

Robert K. Kelner
COVINGTON & BURLING LLP
850 Tenth Street, NW
One City Center
Washington, DC 20001
(202) 662-5503
Fax: (202) 778-5503
Email: rkelner@cov.com

W. William Hodes
THE WILLIAM HODES LAW FIRM
3658 Conservation Trail
The Villages, FL 32163
(352) 399-0531
Fax: (352) 240-3489
Email: wwh@hodeslaw.com

Lindsay R. McKasson
HARVEY & BINNALL, PLLC
717 King Street
Suite 300
Alexandria, VA 22314
(703)888-1943
Email: lmckasson@harveybinnall.com

Molly McCann
SIDNEY POWELL, PC
2911 Turtle Creek Boulevard
Suite 300
Dallas, TX 75219
(214)707-1775

Zainab Naeem Ahmad
U.S. DEPARTMENT OF JUSTICE
950 Pennsylvania Avenue NW
Room B-103
Washington, DC 20530
(202) 616-0800
Email: zna@usdoj.gov

Deborah A. Curtis
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 Fourth Street, NW
Washington, DC 20530
(202) 252-6920
Email: deborah.curtis@usdoj.gov

Jocelyn S. Ballantine
U.S. ATTORNEY'S OFFICE FOR THE
DISTRICT OF COLUMBIA
555 4th Street, NW
Suite 11-445
Washington, DC 20001
(202) 252-7252
Email: jocelyn.ballantine2@usdoj.gov

John Edward Hall
COVINGTON & BURLING LLP
One CityCenter
850 Tenth Street NW
Washington, DC 20001
202-662-5104
Fax: 202-778-5104
Email: jhall@cov.com

Email: mccann.mol@gmail.com

Sidney Powell
SIDNEY POWELL, P.C.
2911 Turtle Creek Blvd
Ste 300
Dallas, TX 75219
214-707-1775
Email: sidney@federalappeals.com

                                           */s/ Benjamin M. Flowers*
                                           BENJAMIN M. FLOWERS
                                           Ohio Solicitor General
                                           30 E. Broad St., Floor 17
                                           Columbus, OH 43215
                                           Tel: 614.466-43215
                                           Email: bflowers@ohioattorneygeneral.gov